```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                         ATLANTA DIVISION

 3   UNITED STATES OF AMERICA,          :
                                        :
 4            PLAINTIFF,                 :
                                        :
 5   vs.                                :   DOCKET NUMBER
                                        :   1:18-CV-5774-AT
 6   NANCY ZAK, ET AL.,                 :
                                        :
 7            DEFENDANTS.               :

 8


 9


10          TRANSCRIPT OF MOTION HEARING PROCEEDINGS

11           BEFORE THE HONORABLE AMY TOTENBERG

12             UNITED STATES DISTRICT JUDGE

13                     JUNE 10, 2019

14                       2:12 P.M.

15


16


17


18


19


20


21     MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

22                    TRANSCRIPT PRODUCED BY:


23
     OFFICIAL COURT REPORTER:          SHANNON R. WELCH, RMR, CRR
24                                     2394 UNITED STATES COURTHOUSE
                                       75 TED TURNER DRIVE, SOUTHWEST
25                                     ATLANTA, GEORGIA  30303
                                       (404) 215-1383
```

```
1              A P P E A R A N C E S   O F   C O U N S E L

2

3   FOR THE PLAINTIFF:

4
        ERIN R. HINES
5       RICHARD G. ROSE
        OFFICE OF THE UNITED STATES ATTORNEY - TAX DIVISION
6

7
    FOR THE DEFENDANT NANCY ZAK:
8

9       MATTHEW D. LERNER
        NATHAN E. CLUKEY
10      SIDLEY AUSTIN, LLP - DC

11      SAMUEL FENN LITTLE, JR.
        S. FENN LITTLE, JR. P.C.
12

13

14  FOR THE DEFENDANT CLAUD CLARK III:

15
        MATTHEW C. HICKS
16      ROSS R. SHARKEY
        CAPLIN & DRYSDALE, CHARTERED
17
        ROBERT C. KHAYAT, JR.
18      THE KHAYAT ALW FIRM

19
    FOR THE DEFENDANTS ECOVEST CAPITAL, INC., ALAN N. SOLON, ROBERT
20  M. MCCULLOUGH, AND RALPH R. TEAL, JR.:

21
        BENJAMIN J. RAZI
22      SEAN M. AKINS
        COVINGTON & BURLING, LLP - D.C.
23
        ELIZABETH L. CLACK-FREEMAN
24      ANDERSEN, TATE & CARR, P.C.

25
```

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | **(Atlanta, Fulton County, Georgia; June 10, 2019.)** |
| 3 | THE COURT:  Have a seat.  We're here in the United |
| 4 | States of America vs. Zak, 1:18-CV-5774.  And the purpose of |
| 5 | the conference is both to hear some argument on the motions to |
| 6 | dismiss, as well as to discuss the preliminary report and |
| 7 | discovery plan and the significant disputes regarding the scope |
| 8 | of discovery in this case. |
| 9 | I would appreciate if counsel would introduce |
| 10 | themselves first. |
| 11 | MS. HINES:  Good afternoon, Your Honor.  Erin Hines |
| 12 | for the United States. |
| 13 | MR. ROSE:  Good afternoon, Your Honor.  Richard Rose |
| 14 | for the United States. |
| 15 | MR. LERNER:  Good afternoon, Your Honor.  Matt Lerner |
| 16 | for Ms. Zak. |
| 17 | MR. CLUKEY:  Hello, Your Honor.  Nathan Clukey for |
| 18 | Ms. Zak. |
| 19 | MR. LITTLE:  Fenn Little for Ms. Zak, Your Honor. |
| 20 | MR. KHAYAT:  Good afternoon, Your Honor.  Robert |
| 21 | Khayat for Claud Clark.  And with me are my co-counsel, Matthew |
| 22 | Hicks and Ross Sharkey from the Caplin & Drysdale firm. |
| 23 | THE COURT:  I'm sorry.  Which one is Mr. Hicks? |
| 24 | Which is Mr. Sharkey? |
| 25 | MR. HICKS:  I'm Matt Hicks. |

```
 1              MR. SHARKEY:  Ross Sharkey.

 2              THE COURT:  Very good.

 3              MR. RAZI:  Good afternoon, Your Honor.  Benjamin Razi

 4     from Covington & Burling on behalf of several of the defendants

 5     who are here in the courtroom, Alan Solon, Bob McCullough,

 6     Ralph Teal, and EcoVest, a real estate company based in D.C.

 7              MR. AKINS:  Good afternoon, Your Honor.  Sean Akins

 8     with Covington & Burling on behalf of the EcoVest defendants.

 9              THE COURT:  This is a lot of material that you have

10     filed with the Court as a whole and still a relatively

11     specialized area of the law.  So excuse me for perhaps asking

12     some basic questions during the course of this.  But I tried to

13     get a grasp on what is going on in this case.

14              And I'm going to listen to argument first on the

15     motion to dismiss first.  But it is really not clear to me from

16     the filings exactly what is the -- you know, the closest case

17     that the Government contends is like this case.

18              I mean, I know that you have had these -- provided me

19     with materials about how much discovery has been authorized in

20     several other cases.  But I did not have an opportunity to go

21     and see whether there have been any substantive rulings in any

22     of those cases at this point and whether they had gone up on

23     appeal.

24              So before we start talking about the motion itself,

25     tell me is this -- are those other cases just like this.  Where
```

1    have they gone?  And then the defendants can also address that,

2    as well.  Or is there some other case that is the bellwether

3    for this, or is this the bellwether?

4            MS. HINES:  Your Honor, the United States brought

5    this case pursuant to three different code sections under the

6    Internal Revenue Code.  They are injunction statutes.  So we

7    have the first one, which is the Internal Revenue Code Section

8    7402.  And that is, the district court is authorized to enter

9    an order as appropriate or necessary for the enforcement of the

10   Internal Revenue laws.

11           The second code section is 7408, which is an

12   injunction suit section.  It authorizes the Court to issue an

13   injunction when the persons have engaged in specified conduct

14   which includes a number of penalty sections, including 6700,

15   which is one of the primary statutes at issue in this case, and

16   that the Court finds that it is necessary to prevent recurrent

17   conduct.

18           The third section is 7407, which deals with an

19   injunction to be issued when a person engages in specified

20   conduct again, but it is different conduct than the 7408 count.

21   And it deals with conduct that involves return preparation.

22   The person needs to be a tax return preparer.

23           So the United States brought this case because it

24   is -- the action is penalty conduct and enjoinable conduct.  So

25   we submit that those cases that we cited in the joint

1   preliminary report and discovery plan that are closest to this

2   are those that are injunction cases.

3        Now, the injunction cases that we cited don't

4   necessarily involve the same underlying transaction.  It is a

5   different type of transaction.  For example, the first one in

6   the document, ECF 80 that we filed this morning, *United States*

7   *of America vs. RaPower-3*.  That was a promoter injunction suit

8   dealing with the sale of solar energy tax credits.  So it is

9   slightly different than a syndication of conservation

10  easements.  But the case was brought pursuant to the same

11  injunction statute, 7402, 7408, and dealing with penalty

12  conduct under 6700.

13       And just to talk a little bit more about 6700, 6700

14  describes the conduct that is subject to penalty as the

15  organizing or selling of a plan or arrangement and the making

16  of a statement during that organizing and selling with either a

17  false or fraudulent statement that defendants knew or had

18  reason to know was false or fraudulent or a gross valuation

19  overstatement, which is a strict liability standard and doesn't

20  impact their state of mind when they made it.  It is strict

21  liability.

22       The second case that we have cited, *United States vs.*

23  *Tarpey*, is another promoter injunction suit dealing with the

24  donation of time shares and charitable contributions under 170.

25  So some similar aspects in the sense that it dealt with real

1  property and the donation of fraudulent interest in -- or

2  interest in real property.

3          THE COURT:  What's the name of the case?

4          MS. HINES:  *Tarpey*, T-A-R-P-E-Y.

5          THE COURT:  Where was that one brought?

6          MS. HINES:  It is in the District of Montana.

7          THE COURT:  Where was the first one with the Ra?

8          MS. HINES:  *RaPower*?  District of Utah.

9          The third case that we cited is *United States vs.*

10  *Meyer*.

11          THE COURT:  I'm sorry.  I missed it.  You said real

12  property.  And what was the issue with the real property?

13          MS. HINES:  It was the donation of time shares and

14  whether the time shares were overvalued.  And the qualified

15  appraiser issue was at issue.  So several similar aspects to

16  this case where we've got issues with donation of real property

17  and issues regarding valuation.

18          The third case, *United States vs. Meyer*, was a

19  promoter injunction suit dealing with the donation into

20  charitable -- I'm sorry -- donor-advised funds.  So charitable

21  donations dealing with 170.  It also dealt with valuation

22  issues as well and the appraiser issues.

23          *United States vs. Sunderlage* was a promoter

24  injunction suit.  Hold on.  We'll tell you exactly what this

25  theme was.

1          *Estate of Siegal*, the fifth case, was a refund suit

2     for Section 6700 penalties dealing with oil and gas

3     partnerships, also involving some issues about the structure of

4     the scheme, and some valuation issues.

5          As for whether there had been any substantive

6     decisions, *RaPower* has been decided.  It went to trial.  The

7     Court issued findings of fact and conclusions of law.  Two of

8     the decisions in that case are currently on appeal in the Tenth

9     Circuit.

10          *Tarpey* went to summary judgment as to the chief

11     appraiser.  The other ones, I believe, settled and was resolved

12     in favor of the Government.

13          *Meyer* settled.  And an injunction was issued by the

14     Court.  *Siegal* settled.

15          And we'll -- I will have to get you a little more on

16     *Sunderlage*.  That was handled by one of our other team members.

17          So there are several dispositive or substantive

18     decisions that have come out of these cases dealing with some

19     of the subsidiary issues that we're here on today, as well the

20     ultimate decision of whether or not an injunction should issue.

21     And, in fact, in *RaPower* there was also a disgorgement issue

22     that was granted in favor of the United States.

23          THE COURT:  Well, let me ask you one other underlying

24     issue.  The Government seems to suggest that almost by

25     definition the use of a partnership in the context of this case

is unlawful or alternatively suggestive of unlawfulness but seems to say point-blank unlawful because the conservation partnerships here are developed for the sole purpose of basically purchasing an interest in this -- in the conservation easement and obtaining also the benefit of a tax credit and tax deduction for the buyers and the members of the partnership.

But I don't really see any authority for your proposition.  And I think that -- that doesn't mean that the other claim contentions are necessarily without merit as to the appraisal or their being improperly done or that they were fraudulently done arguably.

But I'm bothered by -- I have to say just to sort of start off I'm bothered by the contention that the partnerships are basically inherently a scheme that is unlawful when the entire sort of purpose of the easement -- of the statute and the allowance of this seems to be, in fact, to permit this. And I don't see anything that would say that it was unlawful. And I don't think the Government pointed me to anything that said the partnerships kind of by definition are unlawful.

MS. HINES:  The United States takes issue with how defendants conducted themselves and how they have structured this scheme and that their use of a partnership structure is improper.

The landscape of conservation easement law as it is doesn't really contain a case that now currently talks about

1    the structure and supports this position.  But in line with

2    every other economic substance and sham case, which has been

3    around for decades -- it is the same kind of analysis.  It is

4    whether these partners came in together to join in the conduct

5    of carrying on a business or a joint venture.  That has been

6    around -- courts have ruled on it.  It is not --

7         THE COURT:  Well, it is different though, isn't it?

8    Because, in fact, I mean, basically if we were only -- your

9    position would essentially mean that only the very richest, who

10   is an individual, would be able to buy the conservation

11   easement.  You are saying it couldn't be a collection of

12   individuals.

13        But the whole purpose of the law is in some ways to

14   allow people to get the benefit of a tax credit and to help to

15   conserve the land.  So -- but it is not because they are

16   altruistic that they are doing this.  It is not just a donation

17   without a benefit to them.  So it is different than many other

18   situations where it is just a sham as a partnership or a

19   corporation.

20        MS. HINES:  I don't think it is, Your Honor.  In

21   fact, I think one of the cases we cited to you, the *Merryman

22   vs. Commissioner* case out of the Fifth Circuit, deals with a

23   similar kind of issue where the underlying transaction, which

24   was dealing with the lease of an oil rig, was a legitimate

25   transaction.  But the setting up of the LLC itself for the

1    purpose of having partners come in and share in the deduction

2    was found to be a sham.  The partners themselves didn't really

3    come in with the intent to join in a trade or business.  They

4    came in with the intent --

5          THE COURT:  But there is no trade or business with

6    conservation trusts.  The trade or business is basically

7    getting the money together so that there is a pool of people

8    who are funding the purchase of the land and having an interest

9    in it and getting a credit.

10          And I think that is very different than the situation

11   in *Merryman*.  We have a statutory structure that's set up to in

12   some ways incentivize this conduct.  Now, it may not be being

13   handled properly in some way here.  But I don't think that it

14   just makes the partnership per se a sham.

15          What would be legal in the Government's view?

16          MS. HINES:  Well, Your Honor, I do think that there

17   are instances where a partnership may participate in a

18   conservation easement and share that deduction.  We take issue

19   with how the defendants have structured --

20          THE COURT:  All right.  What is the situation -- what

21   would be -- I mean, I'm just trying to be educated about this

22   in terms of when I look at this sort of I understand what they

23   are arguing.  But I don't really understand what the Government

24   is arguing in terms of, well, is it just simply that I actually

25   have to have Mr. Rockefeller himself buy the land.  Obviously,

1    the Rockefellers, the Fords, the Steve Jobs or his heirs could

2    buy the land.

3            But I'm not clear what would be the partnership that

4    could actually do this that would be lawful.  Because they are

5    all going to still be wanting just simply the credit.  You are

6    thinking that they actually have to be all basically people who

7    say I'm totally interested in conservation and I'm only doing

8    this because I care about conservation?

9            MS. HINES:  Well, I think charitable contributions

10   require charitable intent.  They do require certain other

11   elements of the statute.  It is a statute --

12           THE COURT:  What other provision?  What other sorts

13   of things?  I mean, I think that there are lots of people who

14   are giving buildings and other such things and money.  But

15   basically they really want the -- there may be charitable

16   intent, and there may be not charitable intent.  They would

17   like to get the credit.

18           But I can't believe that the test here is whether you

19   simply have actual charitable intent.

20           MS. HINES:  Well, I think the problem, Your Honor, is

21   that this is a preordained result in defendants' case.  The

22   charitable contribution of the conservation easement is what

23   the whole thing is set up to do.  There is no real joined

24   together or trade or business.

25           The partners don't come together and actually make

1    this decision.  It is marketed as a conservation easement.  You

2    come in.  You get this deduction in very short order of four to

3    one or whatever the ratio happens to be in that situation.

4            THE COURT:  But tell me -- all I'm trying to do is

5    sort of cut to the quick so we aren't here for three hours but

6    here for two hours perhaps.  Tell me -- give me an example of

7    where the partnership -- where it would be an appropriate

8    partnership.  Because clearly there are partnerships all over

9    the country where this is happening.  And this has larger

10   repercussions than the people who are just in this room.

11           So give me an example of one that is appropriate and

12   where I'm not just going to have to go and define their intent

13   and determine how angelic they are.

14           MS. HINES:  If you have a situation where a

15   partnership is already in existence where the partners own the

16   land through a structure for some other purpose and then

17   decided that whatever that -- they no longer wanted to run a

18   farm or, you know, pursue development later and decide to

19   donate a charitable contribution in the form of a conservation

20   easement, at that juncture I believe that would be an

21   acceptable way for a partnership to claim the deduction.

22           THE COURT:  All right.  Let's go to a completely

23   different situation since most of the times what we're trying

24   to do is -- my understanding with this was that you've got

25   land.  It may be something -- land by an individual farmer or

an individual who has just simply happened to own a lot of

land.  But he or she does not or the family does not have

enough money to -- don't make enough money to make the benefit

from basically making an easement and participating in the

benefits of the statutory provision.

And so that were the circumstances as I understood

where basically they would sell it to somebody else.  Somebody

else would buy the property.  It is not a sale so that they

could actually -- so the land would be preserved.  And that is

the whole purpose of this.  Not for an individual who already

was -- or a business that already operated that was already in

a position to take advantage because of their income levels the

benefits of the taxes.

MS. HINES:  Well, I think that is what the United

States has an issue with.  They are essentially putting window

dressing on the civil tax deduction, which is prohibited under

Internal Revenue Code.  You are supposed to be only taking the

benefit of the deduction for your property.  And by doing it in

this form, they have created a structure that allows them to,

however you want to call it, share it, monetize it, whatever.

The United States takes issue with that.

THE COURT:  And you don't think that is what this

statute authorizes essentially in essence?

MS. HINES:  No.  Your Honor, 170 is very strict in

what it allows.  It allows for only limited circumstances where

1   you are allowed to get a donation and a deduction for a partial

2   interest in property.  And that conservation easement -- the

3   qualified conservation contribution is one of those limited

4   exceptions.

5        The whole focus of that is, you know, specific

6   requirements in the code that have to comply.  And the

7   defendants, as we have alleged, have taken advantage of that,

8   tried to insert this partnership structure to enable people who

9   wouldn't otherwise be entitled to that deduction to claim it.

10       THE COURT:  All right.  Thank you.  Is there any

11  other authority you have for the proposition that you cannot

12  use a partnership in this context?

13       MS. HINES:  Your Honor, there's other partnership

14  issues.  None directly on point dealing with the easement

15  deduction that we're aware of.

16       THE COURT:  All right.  Thank you.  This was the

17  motion filed on behalf -- there were motions for Ms. Zak and

18  Mr. Clark.  So I don't know who is going to take the lead on

19  this.

20       MR. CLUKEY:  I am, Your Honor.  Nathan Clukey.

21       Your Honor, should I approach the podium?

22       THE COURT:  That's fine.

23       Ms. Hines, because I threw this out of nowhere for

24  you, it is not your fault you didn't come up.  The next time

25  come up.

1    I think you are better off right here.  But you

2    are -- straight ahead.  So let me just jump and ask you this

3    question.  There are allegations in the complaint that when

4    these arrangements were made and authorized -- the arrangements

5    authorized the manager of the partnership to essentially

6    terminate the interest in the land in the conservation within

7    four years, five years and that, in fact, it was not an

8    arrangement in perpetuity, which would have been as I read it

9    required.

10    I mean, the whole purpose again was to preserve the

11    land ultimately in terms of charitable purposes here.  So I was

12    disturbed about how you-all -- how you deal with that issue.

13    And I didn't see it addressed.

14    MR. CLUKEY:  Your Honor, I would say that is a

15    contested fact as to whether that actually occurred,

16    particularly with respect to the transactions that Ms. Zak was

17    involved with.  And I know this is essentially outside the

18    complaint.  But we would submit that that was not a feature of

19    the transactions Ms. Zak was involved in.

20    THE COURT:  All right.  Did you want to respond to

21    the issues I raised with Ms. Hines, just to throw you off and

22    get you just -- simply so I can keep all this subject matter

23    together?

24    MR. CLUKEY:  I'm happy to do that, Your Honor.  What

25    specifically would you like me to address?

1        THE COURT:  Well, you obviously understand what the

2   Government's argument is about the questions that I posed.  I

3   wonder how do you respond to that.

4        MR. CLUKEY:  Your Honor, we would submit that the

5   transactions here are not like the transactions that the

6   Government cited.  I think the Court accurately stated there is

7   no law -- controlling law here.  There is no statute, there is

8   no regulation, there is no case that says you can't use a

9   conservation easement in connection with a partnership and

10  allow individuals who otherwise couldn't -- so that you can

11  conserve land that otherwise would not be conserved.

12       I think the *B.C. Ranch* decision specifically

13  addresses that very issue at least conceptually, sort of

14  broadly.  The whole point of the conservation easement statute

15  is so that you can preserve and conserve lands that would

16  otherwise be developed.  And so the conservation partnerships

17  at issue here that my client is involved with do exactly that.

18  They carry out that Congressional purpose.

19       The Government mentioned a case, *Merryman*.  We would

20  say *Merryman* is distinguishable on its facts.  I think it is

21  very clearly so.  That case although extensively involved oil

22  and gas ventures, the way that the partnership was structured

23  was very clear that all they were doing was generating

24  fictitious losses and allocating those losses out to the

25  partnership.  That is clearly not the case that we have here.

1          Here, we don't have anything that is fictitious.

2     What we have is real land that is being preserved in perpetuity

3     so that it cannot be developed clearly in line with the

4     Congressional purpose.

5          THE COURT:  So basically your argument is that

6     *Merryman* is not on point for the reasons you've articulated and

7     the other case -- types of cases that were -- the Government

8     pointed to in going on the docket, which materials were

9     provided for today, really are not analogous either?

10         MR. CLUKEY:  That is right.  That is right, Your

11    Honor.

12         THE COURT:  Why is that?

13         MR. CLUKEY:  Well, I'm afraid I didn't have the

14    benefit of looking at those as well.  So I can't give you sort

15    of chapter and verse as to why they are distinguishable.  But

16    from the very brief description that we just heard, they did

17    not sound like the type of activity where you are taking real

18    land, it is really being preserved, and simply that is being

19    done within the partnership structure.

20         THE COURT:  I, as you well know, have to take as true

21    any allegations in the complaint.  So I certainly accept your

22    representation here that you think the facts are different than

23    what is represented I think both in Paragraph 136 where they --

24    where the Government maintains that the manager of the

25    syndicate had the ability to dispose of that only asset, the

1    land, without the approval of the partners after a period of

2    years after the conservation easement is granted.

3           And I think that also is represented in Paragraph 82

4    where the term of partnership was to be five years and that the

5    manager of Partnership Y had the authority to sell or dispose

6    of the real property, Partnership Y's only asset, within four

7    years of the conservation easement being granted.

8           So that is the Government's representation.  I don't

9    know whether it is true or not.  But I have to accept it as

10   true for purposes of -- in a civil case for purposes of

11   reviewing the motion to dismiss.

12          And wouldn't that seem to void basically my capacity

13   simply to assume that this is not a scheme and a fraud?

14          MR. CLUKEY:  Your Honor, at Paragraph 62 of the

15   complaint --

16          THE COURT:  Yes.

17          MR. CLUKEY:  -- the Government alleges that the

18   transactions evolved over time.  They don't say exactly how

19   they evolved over time.  This may be one of the factors in

20   which the transactions evolved.

21          Ms. Zak was not involved in -- according to the

22   Government's allegations, there are three example transactions.

23   There is one from -- it is a span of a couple of years that the

24   Government talks about.  But 2009 to 2011.  And there is one

25   around 2012.  And then there is one that started in 2015.

```
 1              So the Government itself says in the complaint the
 2     transactions evolved over time.  It doesn't specify how they
 3     evolved, when they evolved.  So it is possible that everything
 4     the Government is talking about here relates to the 2015
 5     transaction.  There are no allegations in the complaint that
 6     the 2015 -- that Ms. Zak was involved in the 2015 transaction.
 7     And that is one of our core issues and why we filed the motion
 8     to dismiss because of this amalgamation, this conflation of
 9     various activities, and the lack of specificity throughout the
10     complaint so that it is really not clear where a lot of these
11     allegations to which transactions they actually relate.
12              When the Government alleges that Ms. Zak was involved
13     in 42 transactions, there were 96 total.  So this could relate
14     to the remaining 50 or so -- 54 transactions.  So I think there
15     actually is room for the Court there to not have to accept that
16     allegation with respect to Ms. Zak.
17              THE COURT:  So Ms. Zak's position is that the
18     Government has to make allegations as to every single one of
19     the 99, or it has to differentiate between those that she's
20     involved in versus those that some other set of the defendants
21     are involved in?
22              MR. CLUKEY:  Yes, Your Honor.  To answer the first
23     question, no.  Clearly, the case law in the Eleventh Circuit
24     would not require the Government to allege facts with respect
25     to all 96 transactions.  The case law certainly will allow the
```

1    Government to have representative transactions when you are

2    talking about conduct that has occurred over a span of time.

3    Clearly, we recognize that.

4           What our position -- what we take issue with is the

5    fact that there are only two transactions that allegedly

6    concern Ms. Zak, one that is basically a decade ago and one

7    that is seven years ago.

8           THE COURT:  Which ones are those?

9           MR. CLUKEY:  These are in the brief.

10          THE COURT:  Are they the -- they get different

11   letters here.  I'm just trying to understand which ones are

12   they here.

13          W, X -- Partnership Y, Partnership Z?

14          MR. CLUKEY:  I believe it is Partnership Y and Z,

15   Your Honor.  It is those transactions that the Government

16   alleges Ms. Zak had involvement with.  The later one -- I think

17   it is the W and -- I can find it.

18          It is Partnerships X and W.  Those begin around 2015.

19   It is those transactions.  There are no allegations in the

20   complaint that Ms. Zak had any involvement with those

21   particular transactions.

22          And then the other two transactions -- the other two

23   example transactions are the ones the Government alleges

24   Ms. Zak had some involvement with.  And the issue that we have

25   there is, you know, with respect to 9(b) and the requirements

1    there for alleging fraud the lack of specific information that

2    goes specifically to Ms. Zak and the false statements that she

3    allegedly made, to whom the statements were made, when the

4    statements were made, when the statements -- where they

5    occurred as well.  So we think all of that information is

6    missing and would contend that that level of specificity is

7    required under Rule 9(b).

8            THE COURT:  And that would be as to the particular

9    partnerships that she -- that are used as representative ones

10   from 2009 and 2012?

11           MR. CLUKEY:  Exactly, Your Honor.  And whether two is

12   enough or there should be more when you are talking about 96

13   transactions, potentially there should be more given that this

14   conduct occurred over a span of time.  And one would think that

15   the Government would also be required to give some examples

16   over a period of time.  But at a minimum, even if two were

17   enough, we don't believe that the Government has alleged enough

18   specificity with respect to those two transactions.

19           THE COURT:  Well, again as to Y, as I pointed out in

20   Paragraph 82, which was apparently before 2015 -- this is one

21   of those that deals -- that the manager had the authority to

22   sell or dispose of the real property, the only asset, within

23   four years of the conservation easement being granted.

24           And if that were true, it would be -- it would seem

25   to me to defy the notion of conservation.  Because if they

could sell the asset, the real property, then there has not

really been conservation if it could just be done within four

years.  It is just I get the credit and we sell the property.

It is not in perpetuity.

MR. CLUKEY:  Right.  And as I would just reiterate --

THE COURT:  All right.  Ms. Zak had a seminal role,

did she not, in packaging these though?  I mean, this is what

is described as a whole.  But you are saying you want to know

more specifically what she's alleged to have said to whom in

each of these?  What brochures she might have issued or letters

she might have issued under her own signature?

MR. CLUKEY:  Your Honor, with respect to Count I and

Count IV, given that both of those counts are premised on

allegations of fraud -- you've got Section 6700.  The

Government invokes that for both of the counts.  Section 6700,

as Ms. Hines just explained, concerns tax statements that the

speaker knows or has reason to know are false or fraudulent.

Those clearly sound in fraud.

There are also general allegations of fraud

throughout the complaint that are tied to Count I and Count IV.

And the Government assumes arguendo that Rule 9(b) applies to

some of the counts in the complaint, presumably those.

Although it doesn't specify.

But given that Rule 9(b) should apply to those

counts, then yes, Your Honor, we contend that the Government

1   has not provided the level of specificity as required under

2   9(b).  And 9(b) requires more than just a general allegation of

3   fraud that is untethered in time and place and doesn't give you

4   who the speaker is and doesn't tell you who received the

5   information.

6        When you look at the count -- when you look at the

7   complaint throughout, we acknowledge that there certainly are

8   some general allegations of fraud with respect to Ms. Zak.  But

9   there is not the level of specificity that 9(b) would require

10  as to each of those various elements when you kind of walk

11  through what is required under the law in the Eleventh Circuit.

12       THE COURT:  So you have moved to stay discovery

13  pending the resolution of your motion.  It seems hard to

14  conceive that some of this isn't moving forward -- of the

15  claims here.  And even acknowledging what you have said -- and

16  certainly under the local rules, EcoVest's answer -- we can

17  have at least an answer for one or more of the defendants.  And

18  I'm certainly authorized to allow it to proceed.

19       So what is your -- sort of the essence of your

20  contention of why I should stay discovery pending that, even if

21  I allow -- even if I ordered them to -- the Government to

22  proceed to file an amended complaint but it is not specific

23  enough?

24       MR. CLUKEY:  Your Honor, the essence of our

25  contention is or the bases for our relief are really set forth

1    in the law of the Eleventh Circuit that says as a general

2    matter when you have got a motion to dismiss that is pending

3    then discovery shouldn't proceed.  But we, of course, recognize

4    that the Court has discretion to control its own docket.  And

5    this obviously would fall within that -- within that ambit.

6              We do not oppose discovery certainly continuing or

7    proceeding with respect to EcoVest.  We came up with a

8    proposal.  We met with the Government during the initial

9    conference.  And we proposed something along the lines of why

10   don't -- why doesn't discovery continue with respect to

11   EcoVest.  It wouldn't continue with respect to Ms. Zak.

12             And even things like depositions could continue.  And

13   then we would either attend or not attend the depositions.  And

14   then discovery with respect -- the depositions of Ms. Zak and

15   her employees, those would wait until the Court had had a

16   chance to resolve the issues as to her.

17             THE COURT:  And did you reach any agreement on that?

18             MR. CLUKEY:  That was our proposal.  The Government

19   did not accept our proposal, Your Honor.

20             THE COURT:  All right.  Wouldn't you just have to

21   come back if I were to accept that proposal, that you would --

22   if you weren't participating in depositions and then you ended

23   up having to cover the same territory, wouldn't it potentially

24   be very duplicative?

25             MR. CLUKEY:  Your Honor, we recognize that.  And I

1    think part of the compromise that we come up with is that we --

2    I think we would attend the depositions.  And if we didn't

3    attend them, we could concede that they could be used against

4    us or something like that in order to try and minimize the cost

5    to all the parties.

6           THE COURT:  All right.  So when I look at your motion

7    to dismiss, we have the particularity issue; we have the

8    partnership issue, which we have talked about; and then we also

9    have the issue that Ms. Zak does not prepare appraisals in

10    Count II.

11           And this is a little bit back-ended.  But I wanted

12    you to explain to me what your response to the Government's

13    position is on that -- on that count.

14           MR. CLUKEY:  So with respect to 6695A, we think that

15    the words of the statute are very clear that it doesn't apply

16    to somebody who prepares appraisals.  We understand the

17    Government obviously has alleged -- gone beyond that and says

18    Ms. Zak assists in preparing appraisals.  But the statute

19    itself does not cover persons who provide assistance.

20           So on that basis alone, we would submit that that

21    count should be dismissed.  The Government cannot insert words

22    into the statute.  There is a case I believe that we cite in

23    the brief by the Federal Circuit, *Energy East*, that says

24    exactly that and says even a Court can't insert words, even if

25    it wants to, in the statute.  And doing so would be quasi

1    legislative action.  So therefore we don't think the Government

2    can do it.

3              In addition, we think the surrounding code sections

4    right around 6695 -- that they reaffirm this notion that 6695A

5    does not apply to persons who provide assistance.  And the

6    particular code sections I'm thinking of, Your Honor, is

7    Section 6700(a)(1)(A).  And that does expressly apply to

8    somebody who, quote, assists in the organization of a

9    particular entity.  And Section 6701(a)(1) applies to any

10   person, quote, who aids or assists.

11             And we note this in the brief, Your Honor.  But a

12   well-known canon of construction, expressio unius, says, where

13   Congress has included particular language in one section of a

14   statute but then omits it in another section of the same act,

15   it is generally presumed that Congress has acted intentionally

16   and purposely in its exclusion.

17             THE COURT:  Well, I understand this argument.  I

18   guess what -- I was imprecise in my question.  The alternate

19   argument in the response brief provided by the Government is

20   that Count II was also premised on 26 U.S.C. Section 7402,

21   which does not according to the Government require a violation

22   of a specific code section before a Court is authorized to

23   issue an injunction.

24             So even -- the Government argues that even if Zak's

25   role in assisting in appraisals of conservation easements is

1    found not to be subject to Section 6695A, an injunction under

2    7402 with respect to the conduct alleged may still be necessary

3    or appropriate to enforce the Internal Revenue laws.

4         Do you have any disagreement with that is what I was

5    trying to get at.  I'm sorry for not being more precise.

6         MR. CLUKEY:  Yes, Your Honor.  We do have

7    disagreement with that.  When you look at Count II in the

8    complaint, the title to Count II says injunction against

9    defendants Zak and Clark under 26 U.S.C. 7402 for engaging in

10   conduct subject to penalty under 26 U.S.C. 6695A.  So the

11   entirety of Count II is premised on conduct subject to 6695A.

12        I understand the Government's argument that 7402 is a

13   very broad statute and they otherwise may have jurisdiction to

14   make a different claim against Ms. Zak in connection with

15   providing assistance.  But it hasn't done that in this

16   complaint.  And therefore we would request that Count II be

17   dismissed because the Government has not pled what it is saying

18   it potentially has the power to do.

19        THE COURT:  All right.  Thank you very much.

20        MR. CLUKEY:  Your Honor, would it be possible to also

21   address disgorgement and the statute of limitations?

22        THE COURT:  Yes.

23        Now, I had another case involving *Kokesh* since its

24   announcement.  So it has not been in the context of these

25   circumstances but in a securities context.

```
 1              But do you have authority for thinking that we could

 2    jump over here to this context to apply *Kokesh*?

 3              MR. CLUKEY:  Yes, Your Honor.

 4              THE COURT:  Go ahead.

 5              MR. CLUKEY:  2462 sets out a general statute of

 6    limitations, as you know -- five-year statute of limitations

 7    that applies to any case that involves the enforcement of a

 8    civil fine or penalty or forfeiture.  *Kokesh* very fortunately

 9    provided an approach that can be used by the court in any case

10    to determine whether the particular disgorgement action at

11    issue constitutes a penalty.

12              That is because the principles that underlie the

13    court's approach in *Kokesh* were not limited to the

14    securities -- to securities matters.  Two of the key

15    illustrative cases that the court relies on in *Kokesh*, *Brady*

16    *vs. Daly* and *Meeker vs. Lehigh* -- both of those occurred

17    outside of the SEC enforcement context.

18              The first one, *Brady*, was a copyright suit.  It was a

19    copyright suit against a playwright against another playwright

20    who ripped off the first playwright's -- an idea from his play.

21    And then the issue there was whether the remedy that was -- it

22    was the federal copyright statute.  And the federal copyright

23    statute provided for $50 a day or something like that for every

24    day you were infringing -- whether that constituted a penalty.

25              The other case, *Meeker*, involved a railroad company
```

1    and a shipping company.  And the ICC gave some relief to the

2    shipping company because it had been disparately treated.  And

3    the railroad argued that that relief was subject to the

4    predecessor to 2462 and constituted a penalty.

5         So *Kokesh* lays out basically a three-part test that

6    can be used.  And that -- it is effectively a three-part test.

7    The first part of the test concerns the infractions of public

8    laws.  The second part relates to whether disgorgement is

9    imposed for punitive purposes.  And the third part asks whether

10   the relief sought is purely compensatory.

11        As to the first factor, the Court looked to whether

12   the violation was against the United States or was against an

13   individual.  And the *Brady vs. Daly* case is a really good

14   example because there you had two individuals who were

15   involved.  The violation was against an individual.  And

16   although it was a federal statute that was at issue, it wasn't

17   a violation of public laws because it wasn't against the United

18   States.

19        THE COURT:  Well, you would agree here we have a

20   situation where it would be -- the Government contends this is

21   about public law.

22        MR. CLUKEY:  Absolutely, Your Honor.  So we would

23   contend that we meet the first factor under *Kokesh* as to

24   whether the disgorgement sought here is a penalty.  We would

25   meet that first test.

1          For the second factor and whether disgorgement is

2     being imposed for punitive purposes, disgorgement is being

3     brought for deterrence by the Government.  We think that is

4     evident from the fact that the Government seeks to have

5     defendants, quote, disgorge to the United States the gross

6     receipts that they received from any source as a result of the

7     conservation easement syndication, plus interest.  That is from

8     Paragraph 7 in the complaint, Your Honor.

9          The complaint therefore seeks everything that the

10    defendants have earned in connection with conservation

11    easements with no deduction for expenses, plus interest on top

12    of that.  Surely the object of the disgorgement claim is for

13    deterrence.

14         In any event, the Government acknowledges that

15    disgorgement is being sought in this case at least partly for

16    deterrence.  It says in its opposition to the motion to dismiss

17    at Page 26, disgorgement under Section 7402 can be viewed as

18    serving compensatory purposes to the United States while also

19    serving deterrent purposes.

20         Now, plaintiff claims that the fact that it is partly

21    seeking deterrence for the disgorgement claims is not fatal.

22    But we would submit it is fatal with respect to this second

23    part of the test under *Kokesh*.  That is because *Kokesh*

24    explained, quote, a civil sanction that cannot fairly be said

25    solely to serve a remedial purpose but rather can only be

1    explained as also serving either retributive or deterrent

2    purposes is punishment as we have come to understand the term.

3    And that is from *Kokesh*, 137 S. Ct. at 1645.  And that is

4    quoting an earlier Supreme Court decision, *Austin vs. U.S.*

5            And so we would contend even if disgorgement is not

6    the primary purpose, since the disgorgement here is for

7    deterrence at least in part, it is not solely remedial and

8    therefore it is punitive.  And so we would also satisfy the

9    second aspect of the test.

10           Then, finally, the disgorgement sought by the

11   Government is not compensatory, let alone purely compensatory.

12   The Government claims that the disgorgement here is, quote,

13   remedial in nature because it restores the parties to the

14   status quo.  That is at the Government's opposition, Page 26.

15           That is exactly the same argument that the Government

16   made in *Kokesh* and the Supreme Court rejected.  There, toward

17   the end of the opinion, the Supreme Court looked at that, what

18   disgorgement was providing and the various types of ways that

19   the SEC often got with disgorgement.  And it noted that in some

20   cases the SEC sought gross receipts.

21           And it noted in that case the defendant can't deduct

22   expenses and as a result the defendant would be worse off given

23   the disgorgement.  And then by its very nature, that had the

24   characteristics of a penalty.

25           That is exactly what the Government has done here.

1    The Government seeks gross receipts with no deduction for

2    expenses, plus interest.  So it is exactly what the Supreme

3    Court addressed in *Kokesh* that the Government is seeking here

4    and that by its nature is punitive.

5            In addition, the Government isn't asking for taxes

6    that it alleges have been underpaid by virtue of people

7    participating in these particular transactions.  The Government

8    acknowledges in its opposition it can go after all of the

9    individual partners if it wants to.  It can audit them, and it

10   can seek the taxes.

11           That relief if the Government were to do that would

12   be compensatory.  By contrast, here we have an entirely

13   different situation where the Government is going for gross

14   receipts.  And that is not compensatory in that sense.

15           THE COURT:  What would gross receipts look like here

16   then?  I'm just trying to understand this more.

17           MR. CLUKEY:  Your Honor, I'm afraid I'm not in a

18   position to sort of give you chapter and verse as to what the

19   --

20           THE COURT:  Well, I'm just trying to understand what

21   that would actually -- what would be the distinction here in

22   this type of operation where I don't know that there are all

23   sorts of expenses.

24           MR. CLUKEY:  So I can say that there are -- I can

25   address that issue.  There are a lot of expenses that are

1    involved.  Ms. Zak, for instance, has employees.  So she runs a

2    business.  So she has all the expenses you would have in

3    operating a normal business.  So the Government is saying here

4    you don't get to deduct any of those expenses.  Over the

5    course -- they are asking for a decade of relief.  You don't

6    get to deduct any of those expenses.

7         The one last thing I would say, Your Honor, is the

8    Government says, well, it is compensatory because we've

9    conducted this investigation.  So we get to be compensated for

10   that investigation.  But that is exactly the same thing that

11   happened in *Kokesh*.  The SEC conducted an investigation.  And

12   all agencies conduct investigations, but that doesn't make the

13   relief that you are seeking compensatory.

14        But for all three of those reasons, Your Honor, we

15   think that we meet the effectively three-part test that *Kokesh*

16   sets out.  And therefore we would request that the Court apply

17   Section 2462 to the Government's claim for disgorgement.

18        THE COURT:  All right.  Just hold for a second

19   because I had another question regarding your argument on this

20   section.

21              **(There was a brief pause in the proceedings.)**

22        THE COURT:  Explain to me how the injunction

23   provisions and the disgorgement provisions would be reconciled

24   then in the statute with the normal IRS provisions for

25   basically requiring repayment and having the compensatory

```
 1   relief.
 2            Would there be a circumstance where you could seek
 3   disgorgement?
 4            MR. CLUKEY:  I'm sorry, Your Honor.  I'm not
 5   following you.
 6            THE COURT:  You are basically saying disgorgement is
 7   not a viable remedy in the context here, as I understood your
 8   brief.
 9            MR. CLUKEY:  So yes, Your Honor.
10            THE COURT:  Maybe I misunderstood something.  But
11   that is what I understood.
12            MR. CLUKEY:  Certainly.  I'm sorry I didn't
13   understand.
14            THE COURT:  It is not a legally viable remedy.  But
15   it is obviously identified as a viable remedy in the statute,
16   such as a regulation.  So I'm just trying to understand for
17   enforcement purposes then in what circumstances can you do
18   disgorgement if you can't do it in this context.  What am I to
19   understand from all of that?
20            MR. CLUKEY:  So, Your Honor -- right.  So in addition
21   to the -- I'm sorry I was confused.  I was thinking about the
22   statute of limitations.
23            Apart from the statute of limitations issue and more
24   broadly, we have asserted obviously that the --
25            THE COURT:  Because I could understand the statute of
```

1    limitations.  That's simple by comparison.  But you are making

2    a broader argument.

3              MR. CLUKEY:  Right.  So, Your Honor -- so I think

4    there is a good basis for us asserting that.  At this point in

5    time, what I would suggest is potentially given the possibility

6    that even if the Court were to dismiss the complaint as to

7    Ms. Zak the Government may be allowed to replead and we may

8    ultimately be still back in front of you at some point in time.

9              It might be a better time to address this issue

10   during summary judgment.  Although we brought it up at this

11   point initially, it might be better addressed when there are

12   certain facts around to support it -- that particular argument.

13             We think it is a viable argument.  I believe that

14   EcoVest -- counsel for EcoVest is going to address it because

15   the Government has moved to strike it entirely, the fact that

16   it is not a viable -- the defense of it not being available.

17   The Government's moved to strike that, and I believe EcoVest is

18   going to address that actually in full.

19             THE COURT:  All right.

20             MR. CLUKEY:  So in that sense, Your Honor, it may

21   make sense actually to defer consideration of that issue.

22             THE COURT:  All right.  Does EcoVest wish to address

23   that point or not?

24             MR. CLUKEY:  Thank you, Your Honor.

25             THE COURT:  Thank you very much.

1          MR. RAZI:  Your Honor, we certainly do within the

2     context of the Government's motion to strike all of those

3     defenses, if the Court wants to hear about that.

4          THE COURT:  Well, just while we're on it, yes, go

5     ahead and address that.  Thank you.

6          MR. RAZI:  Thank you, Your Honor.  Benjamin Razi.

7     Motions to strike defenses are disfavored in this court and

8     really all federal courts across the country.  It is sort of

9     doing litigation backwards.  You don't -- you know, you don't

10    start whittling away at a party's defenses until you put on

11    your case and get to prove your claims.

12         So this was a wasteful unnecessary motion that has

13    delayed the case.  There are a number of viable defenses to

14    this case.  So --

15         THE COURT:  That is your principle -- I'm assuming

16    we're at the general principle.  I just wanted to sort of

17    follow up:  Was there anything -- it is one thing to say *Kokesh*

18    defines a different statute of limitations potentially here,

19    which is a question of whether it wipes out disgorgement under

20    the facts here.  If there is anything else you wanted to

21    address about that.

22         MR. RAZI:  Well, I would say there is no way in the

23    world that it would be fair to strike our defense that

24    disgorgement in this case, the remedy that is sought, is

25    unconstitutional, for instance, under the Excessive Fines

1    Clause.  As the Court is well familiar, any -- any fine, any

2    penalty needs to be proportionate to the conduct.  So that is

3    one point that we have made that hasn't been addressed.  I just

4    want to be very clear before we start going too far with these

5    rulings.  There are going to need to be facts presented about

6    that.

7           And the Court alluded to another important factor.

8    There is a whole regulatory regime here.  There is a Government

9    agency that is not in the room.  But their job is to do this

10   stuff.  And that is the IRS.  And they are doing it.  They are

11   auditing the transactions that my clients were involved in.  We

12   disclosed these transactions pursuant to this IRS listing

13   notice.  We routinely disclose them, and there are assessments

14   and payments, and there is a whole regulatory process.

15          So yes, there is no way in the world you can jump

16   under the statute to just start disgorging the gross proceeds

17   of people's business before you apply the tax laws the way they

18   are written.

19          So under *Kokesh*, way premature to deal with that now.

20   And that is our argument.  I'll be happy to address it more.

21          THE COURT:  Thank you very much.

22          MR. HICKS:  Your Honor, Matt Hicks for Claud Clark.

23   So on disgorgement, I think it is important if we could get a

24   ruling on the five-year statute of limitations argument because

25   that will affect discovery.  So to the extent that there could

1     be less discovery, that would be great.

2             As for the Eighth Amendment, excessive fines, I agree

3     that is something that will have to be addressed in light of

4     the facts.

5             The one thing that I would say on -- actually, sorry.

6     An initial matter, in my papers to you, I said that my

7     colleague Sae Jin Yoon would argue.  She had a conflict at the

8     last moment that prevented her from being here.  So my

9     apologies for that.  I'm here.

10            And so to the extent that you're interested in

11    hearing why my client is not a tax return preparer, I would

12    like to have my colleague, Ross Sharkey, argue it.  He is

13    smarter than I am.  He was a tax court clerk.  He can address

14    it better.

15            But on the disgorgement front, something that I want

16    the Court to be aware of in deciding that is -- and I don't

17    think -- it is not in *Kokesh*.  I don't think it is in any case.

18    But it has to be -- in determining whether or not it is

19    punitive or there is a deterrent purpose, it has got to be an

20    objective standard.  It cannot be a subjective standard.  It

21    can't be that we're going to say to the Government, whatever

22    you say is in your mind is what we're going to accept.

23            And so, for instance, in this case, the Government

24    has admitted that there is at least a deterrent purpose.  So

25    that is the end of it under *Kokesh*.  Because as long as there

1   is some deterrent purpose, then that second part of the test is

2   met.  So we don't have to go too far into it.

3           But just as an example, there was a press release in

4   this case.  Under DOJ policy in general and under how the tax

5   division uses press releases, those are meant to have a

6   deterrent effect.  I used to be at DOJ tax.  I was on the civil

7   side.  But certainly on the criminal side and the civil side,

8   there are only so many cases brought a year.  One of the ways

9   that you keep a voluntary compliance tax system running is with

10   press releases.

11           Normally I would prefer them at the end of the case

12   after there have been findings of fact.  But that was meant to

13   have a deterrent purpose.  If the Government were to say no,

14   no, we didn't mean to deter, that would be an objective piece

15   of evidence that the Court would have to consider as to

16   questioning whether or not there are subjective -- their

17   expression of subjective intent is correct.

18           I think we can just avoid the whole thing.  And I

19   think in going forward in *Kokesh*, courts ought to be deciding

20   it on an objective basis, which objectively speaking is

21   deterrence one of the goals here.

22           All right.  You were asking about stay -- whether we

23   should stay discovery.  I agree with Mr. Clukey that at the

24   Rule 26(f) conference we tried to arrive at a compromise that

25   would allow EcoVest and the Government to continue on discovery

1    on their own grounds while holding it in abeyance until you

2    were to decide our motions to dismiss.

3              I think that it is actually possible -- what we said

4    was -- and to make clear -- Mr. Clukey said this.  But we said,

5    look, go ahead and proceed with EcoVest.  That is fine.  But

6    keep Clark out of it.  To the extent that you need to take

7    depositions, we'll show up.  We'll participate.  You're not

8    going to have to do them again.

9              Our goal was not to try to throw a monkey wrench in.

10   Our goal was to try to allow the parties to proceed who wanted

11   to proceed and the parties who didn't want to proceed could

12   wait until you made a ruling.

13             So, for instance, you have seen that we've moved to

14   dismiss all but one count.  All right.  Well, here is why it

15   matters.  So for the -- the one count is -- for us that we're

16   not moving to dismiss is that Claud Clark is an appraiser.

17   Yes, he is an appraiser, absolutely.  So we're not going to

18   move to dismiss that.

19             We do need more specificity in the pleadings.  So let

20   me state it as plainly as I can:  My client is an appraiser.

21   He appraises the value of the conservation easements.   The

22   Government says in this instance -- in this instance, he

23   appraised it at X or Y or A or B.  The complaint does not say,

24   but actually the value was this, or he used the discounted cash

25   flow method, but actually that is the wrong method, he should

1    have used this method, or, he didn't look at historical comps.

2    Which comps?

3            This injunction action has been brought against a

4    backdrop where not only has the IRS not asserted any penalties

5    against my client the things on the scoreboard are in my

6    client's favor.  So we refer to Kiva Dunes.  And people refer

7    to my client as Mr. Kiva Dunes.  It is a tax court case.  The

8    question there was whether a conservation easement was worth

9    what the taxpayer said it was.

10           Okay.  He did the appraisal.  The tax court,

11   specialist court in tax, sided with my client, said Mr. Clark

12   is right.  There is another case Pine Mountain -- Pine Barrons

13   -- Pine Mountain where his valuation was again at issue.  And

14   the Court actually decided it is worth more -- slightly more

15   than Mr. Clark said.

16           So we have a situation where there's no court

17   decision against my client's valuation.  The IRS audited my

18   client in the beginning of 2017, and I represented him during

19   that.  We gave them everything.  We were cooperative.  We said,

20   if you don't like an appraisal, if you don't like three or

21   five -- take the ones you don't like the most, we'll sit down

22   with you.  We'll hash them out.  Either there will be a

23   problem, or there won't be.  We will agree, or we won't agree.

24   We can hash it out.

25           The IRS did not do that.  They asserted no penalties

1  against my client.  And the next thing we heard after that

2  audit started and we cooperated was a call from a reporter to

3  my client saying, would you like to comment on the case that

4  was brought against you.

5          So it is not a situation -- normal situation where

6  the IRS has asserted penalties against the appraiser and the

7  appraiser is on notice that something he is doing is wrong.  He

8  is not on notice.  And this complaint doesn't make it any more

9  clear.  They just say he overvalued.

10          Well, okay, under *Iqbal* and *Twombly*, we need a little

11 bit more.  You say my client was negligent.  How was he

12 negligent?  Same thing.  You say then you overvalued.  How did

13 he overvalue?  Speaking in broad strokes isn't sufficient.  And

14 the sooner we clear that up the better because, otherwise, the

15 discovery process is going to be similarly abusive in the way

16 that the complaint is vague.

17          That is why we think you ought to stay discovery for

18 our guy.  And we'll do everything that we can.  And we think

19 that the Government and EcoVest can continue on their tracks.

20          The only other issue I think is that an appraiser is

21 not a tax return preparer.  If I may, I'm going to let -- do

22 you have any questions, Your Honor?

23          THE COURT:  Well, I think that it really only relates

24 to the Government's response here is that even -- as I

25 understand it, even if under one section of the code he is not,

1    the fact is that for purposes of relief they can still -- they

2    still reach -- his conduct is still reachable.

3           MR. HICKS:  So at the motion to dismiss stage, you

4    take their allegations as true.  And if we have a situation --

5    I can certainly imagine a set of facts where an appraiser is a

6    tax return preparer.  Right.  He is a CPA.  He is also an

7    appraiser.  He wears both hats.  He does both things.

8           And on those particular facts, you say, okay, sorry,

9    we're going to have to use a tax return preparer.

10          COURT REPORTER:  I need you to slow down, please.

11   Thank you.

12          MR. HICKS:  Absolutely.  It is the coffee.  It is all

13   I have had today.

14          So you appraise the value of the conservation

15   easement, Mr. X.  But you also help prepare the tax return.

16   But I mean, certainly on those facts, you could have an

17   appraiser who is a tax return preparer.

18          THE COURT:  Because on Page 22 of the Government's

19   response, they say, you know, an appraiser might be subject to

20   penalties under Section 6694 as a non-signing tax return

21   preparer if the appraisal is a substantial portion of the

22   return or claim for refund and the applicable standards of care

23   under 6694 are not met.

24          MR. HICKS:  So I'm going to say one last thing, and

25   that will be it so I don't get myself in trouble.  And I will

1    let my colleague answer.  It appears to be that the

2    Government's argument is this:  If the deduction is compared to

3    the rest of the return really big, then the appraiser is a tax

4    return preparer.  That absolutely can't be the answer.  The

5    appraiser prepares the appraisal report.  He doesn't render tax

6    advice.  His job is to figure out what it is worth.

7            Does he sign a form that goes on the tax return?

8    Absolutely.  Why does he do that? He is legally obligated to.

9    So the Government's argument is this:  If an appraiser is

10   legally obligated to sign that form and if the number is big

11   enough, then he's a tax return preparer.

12           The problem with that argument fundamentally is

13   that's not the appraiser rendering tax return -- tax advice.

14   Excuse me.  Tax advice.

15           A little bit of background, the IRS has a challenge

16   when it comes to valuation.  When it is a deduction, the IRS is

17   concerned that it has been overvalued.  When it is on an estate

18   tax return, they are concerned that is undervalued.  Right.

19   That Tiffany jewelry, that Picasso, you have undervalued it for

20   purposes of the estate tax return and you are cheating the

21   fisc.

22           So as a matter of enforcement, it is very difficult

23   for the IRS to deal with undervaluation in the estate tax

24   context or overvaluation in the charitable contribution or any

25   other contribution -- excuse me -- charitable contribution

1   deduction.  That is because valuation, at least of land, is a

2   local game.  You have got to be on the ground.  You have got to

3   know what is happening there.  You have to see what the local

4   comps are.  It is all local.

5            The IRS only has so much money to put towards

6   enforcement.  They can't have an appraiser in every county in

7   the nation.  So they do a lot of what are known as desktop

8   appraisals where the IRS appraiser in Chicago is at his desk

9   and he pulls what he can get remotely.  But he never actually

10  touches the ground.  It is an enforcement challenge for the

11  IRS.

12           It is generally one that there is no way around

13  because that is how valuation is done.  It is a local process.

14  This injunction case is a bellwether.  Okay.  We're totally

15  agnostic about whether the partnerships work.  My client is an

16  appraiser.  It is none of our business.  Okay.  He doesn't have

17  an opinion on it.  But it is a bellwether.  There is no law for

18  this.

19           May I call my colleague up?

20           THE COURT:  Yes.  But I don't need to hear much.  You

21  can say a few minutes but no more.

22           MR. SHARKEY:  Hello, Your Honor.  Ross Sharkey.

23  Yeah, I'll be quick and echo what Matt said.  The hook in being

24  a tax return preparer is rendering tax advice.  And the focus,

25  the tax return itself, in these cases is going to be the

1     individual 1040s of the partners of the conservation

2     partnerships.  And in that regard, I think the *Goulding* case,

3     which we have discussed in our papers and I won't get into too

4     much, provides a nice analog because it deals with an attorney

5     and a CPA who was the paid preparer, organized, filled out the

6     partnership return, filled out the K-1s, gave it to the

7     partners, passed it through, and said, you know, this is the

8     tax result of the transactions the partnership undertook.

9             And the Court in *Goulding* and the Seventh Circuit

10    affirmed found that he was a tax return preparer of the

11    individual partners' returns because he provided advice with

12    respect to those items.  And those were the items that led to

13    the deficiency.

14            In this case, Mr. Clark is providing an opinion of

15    value.  He's not providing tax advice.  There are enumerable

16    requirements in Section 170, in addition to there being some

17    kind of value in the property donated, that must be met and

18    satisfied for the deduction to be valid and pass through.  And

19    he doesn't opine on any of those.

20            And the Government doesn't allege that he does -- in

21    the response to our brief, the Government acknowledged that the

22    only misstatement that they allege with respect to Mr. Clark

23    has to do with valuation.

24            THE COURT:  Well, then they just simply say -- that

25    is what I'm just going after is that, again, that the Treasury

1    Department -- that there are regulations -- cited to the

2    Treasury regulations in place since 1977 whereby an appraiser

3    might be subject to penalties under 6694 as a non-signing tax

4    return preparer if the appraisal is a substantial portion of

5    the return or claim for refund.  So that seems to open a whole

6    other floodgate.

7              MR. SHARKEY:  To be clear, the regulation --

8              THE COURT:  I just was trying to understand your

9    position about that.

10             MR. SHARKEY:  Certainly.  And the regulation in place

11   doesn't mention an appraiser specifically.  They are just

12   saying we can think of an appraiser who would fit that

13   definition.  In the current regulation, the definition of a

14   substantial portion of a tax return requires that tax advice be

15   rendered.

16             So it is -- you know, that is -- the step to be a tax

17   return preparer is rendering tax advice.  And like Mr. Hicks

18   said, I could imagine a situation where an appraiser both

19   appraised property and also rendered tax advice with respect

20   to, you know, how much of the donation was deductible, that all

21   of the other requirements under 170 were met.

22             But that is not the case here.  And the Government

23   hasn't alleged it.  To the contrary, they have only focused on

24   valuation, which isn't tax advice.

25             THE COURT:  Okay.  Thank you very much.

```
 1                 MS. HINES:  Thank you, Your Honor.  I'm going to

 2      start with Zak's motion to dismiss and a few responses to

 3      that --

 4                 THE COURT:  Okay.

 5                 MS. HINES:  -- if that is all right.

 6                 THE COURT:  Fine.

 7                 MS. HINES:  So the first basis for Zak's motion to

 8      dismiss is based on Rule 9(b).  And I think that we assumed

 9      arguendo as pointed out by opposing counsel that Rule 9(b)

10      applied for purposes of responding to the motion.  But I think

11      it is important to point out that the code sections under which

12      we have sued and are seeking relief do not require the

13      Government to prove fraud.  It is an important distinction.

14                 So 7402, the standard is whether it is appropriate or

15      necessary for the enforcement of the Internal Revenue laws.

16      7408 deals with 6700, which as we talked about requires making

17      of a false or fraudulent statement that the defendant knew or

18      had reason to know.  So there is an objective standard built in

19      there that doesn't require the Government to prove a fraudulent

20      --

21                 THE COURT:  I think that even though it expressly is

22      referring to fraud it doesn't basically imply that 9(b) would

23      be applicable?  That seems to be a pretty peculiar position.

24                 MS. HINES:  Well, as Zak's motion points out, there

25      is only one case that Zak could find where it directly deals
```

```
 1    with whether 9(b) applies to 6700 cases.

 2              THE COURT:  An Eleventh Circuit case.

 3              MS. HINES:  No.  The Hempfling case was an Eastern

 4    District of California case.

 5              THE COURT:  Right.  But they do refer to an Eleventh

 6    Circuit case in terms of the applicability of a different

 7    provision, and that didn't even use the word fraud.

 8              MS. HINES:  Your Honor, they refer to Carlson vs.

 9    United States, which is a refund of a 6701 penalty suit, which

10    is not a section at issue in this case.  6701 actually does

11    require explicit fraud.  It requires knowing.  So it is a

12    distinct statute with a distinct level of proof that is

13    required.

14              Regardless of whether --

15              THE COURT:  So knowing implies fraud; but when the

16    statute says fraud, it doesn't imply fraud?

17              MS. HINES:  It says false or fraudulent statement

18    that they knew or had reason to know.  So it can be false, or

19    it can be fraudulent.

20              THE COURT:  But you've really -- but when I look at

21    your allegations, you have pled fraud at points and you have

22    said -- you have used the word fraud.

23              MS. HINES:  We used the term fraudulent eight times

24    in our complaint every time coupled with false -- false or

25    fraudulent.  And false is the primary basis under which we have
```

```
1    made the allegations and included it 17 times in our complaint.

2          But regardless of whether you have to decide that --

3    you may not.  Because the Government has pled the circumstances

4    with particularity.  This is a scheme that has lasted since

5    2009 as alleged by the Government.  We have alleged the who,

6    the what, the where, the when, the how of the conduct that we

7    think is enjoinable conduct.

8          Ms. Zak takes issue with the fact that we only have

9    two examples.  But Rule 9(b) doesn't require that we allege the

10   particulars of every single transaction nor does it require us

11   to prove our case.  In fact, opposing counsel when up here

12   arguing talked about a contested fact.  We're not at a

13   contested fact stage.  In ruling on a 9(b), we're looking at

14   the allegations of the complaint assumed as true.

15         I want to touch briefly on one of the points that

16   opposing counsel made in their motion talking about the

17   evolution of the scheme.  The United States alleges that the

18   scheme evolved over time.  And if you look at not just

19   Paragraph 61 but then Paragraph 62, we have given some context

20   of how this scheme has evolved over time.  It includes

21   involving a multitiered entity structure.

22         THE COURT:  Is that a meaningful evolution in that

23   that has been, generally speaking, a development in business as

24   a whole in the United States in terms of legal relationships?

25   Lawyers and law firms are ever more creating additional layers.
```

1    And that is -- you know, we're just simply not the way people

2    organize business legally in the '60s, '70s, or even '80s.

3              MS. HINES:  And I think it is there to give context

4    for when we go into the examples.  Because the example

5    Partnership Z starts with 2009.  You have got like the one

6    level of the tiers.  And then in 2012, you still have the one.

7              But then, you know, we got to the 2015 example, and

8    you have two partnerships.  So trying to give some guidance as

9    to why the examples look different and try to like help the

10   Court or anyone understand what we're getting at with these.

11             THE COURT:  I'm just trying to understand does it

12   actually raise any inference as it is perfectly appropriate and

13   helpful to include the information.  But I'm not sure I can

14   draw any inferences from it.  That is all.  But it is

15   appropriate to include -- have included the information.

16             MS. HINES:  And I think, Your Honor, you pointed out

17   a couple of the particulars with respect to Ms. Zak.  And in

18   the examples, there were specific allegations that relate to

19   the more general allegations of the pattern of conduct engaged

20   in by these defendants.

21             So the United States has alleged that all defendants

22   have engaged in this pattern of conduct since 2009 and then

23   laid out those specific examples.  And so by laying out both

24   the general and the specific, we have met the particularity

25   standards.

```
 1              We have told Ms. Zak, Mr. Clark, and the EcoVest
 2    parties what it is that we are complaining of.  We have met the
 3    purpose of 9(b), which is to alert the defendants as to the
 4    conduct and to give them notice and to prepare an adequate
 5    defense.
 6              And, in fact, I think the motions themselves, the
 7    motions to dismiss by Mr. Clark and Ms. Zak, they already have
 8    a defense articulated.  Their defense is we didn't do anything
 9    wrong.  So they have seen what it is we're complaining of and
10    have been able to formulate a defense.
11              I think the next issue that you took up with
12    Ms. Zak's motion was the 6695A count, Count II, injunction
13    under 7402.  The United States alleged conduct that we believe
14    satisfies that she has prepared an appraisal, that the context
15    of the complaint and all of the allegations contained therein
16    allege that she, in fact, prepared an appraisal.
17              So at this point in time, anything else in talking
18    about she didn't actually prepare it -- that is a fact that
19    would have to come through on the merits.  That is not
20    something that is appropriate at the 9(b) stage.
21              THE COURT:  I think I have the greatest problem with
22    the Government's position frankly on Count II.  I don't think I
23    can really -- you are going to have to explain to me why I
24    shouldn't basically construe the statute as written.  It
25    doesn't use the word assist.
```

1          MS. HINES:  Well, it uses the word prepares.  And the

2     way that the allegations in the complaint are written -- and

3     there was a primary focus on Paragraph 193, which talks about

4     how she assisted in the highest and best use determination,

5     which is an integral component of the appraisals.

6          The next two paragraphs after that right in context

7     talk about Defendant Zak and Clark knew or reasonably should

8     have known that the appraisals they prepared would be used in

9     connection with the federal tax return or claim for refund.

10    And then 195, the appraisals that were prepared by Zak and

11    Clark provided the basis for the value of the charitable

12    contributions deduction claimed on each conservation easement

13    syndicates' forms 1065 that passed through to the individual

14    customer's tax returns or claims for refund.

15         And the remainder of the count right in context and

16    then with the earlier paragraphs of the complaint where we have

17    made the allegations of the specific conduct again that she

18    prepared this highest and best use determination, that is part

19    of preparing an appraisal.

20         THE COURT:  So an appraiser is not a legal term of

21    art?  You don't have to be an appraiser?  Anyone can be an

22    appraiser?  I mean, the Government can call anyone an appraiser

23    under your view?

24         MS. HINES:  I think the way 6695A reads talks about a

25    person who values property.  It doesn't specifically say it has

```
 1    to be an appraiser subject to state licensing or subject to
 2    USPAP.  It is a person who is valuing property.  And conducting
 3    that particular behavior and conduct is potentially subject to
 4    penalty.
 5            THE COURT:  It doesn't mean the person who actually
 6    signs the appraisal?  It has to be actually submitted?
 7            MS. HINES:  I don't think that that statute requires
 8    that.  No, Your Honor.
 9            THE COURT:  Well, didn't these individuals have to
10    have an appraisal filed as part of -- part of their tax work?
11            MS. HINES:  Yes.
12            THE COURT:  Wasn't that signed by Mr. Clark as
13    alleged?
14            MS. HINES:  Mr. Clark signed most of the appraisals
15    prepared.
16            THE COURT:  Did Ms. -- I mean, did Ms. Zak sign any
17    of them?
18            MS. HINES:  I'm not aware of any facts that suggest
19    she actually signed them.  But, Your Honor, just because you
20    are not a signing person on the appraisal doesn't mean that you
21    didn't help prepare or prepare that appraisal.
22            THE COURT:  So basically you are saying it is a
23    factual issue.  It is not a legal issue.  But you -- still
24    basically your allegations were about originally I thought as
25    assisting.  But you are saying that she actually prepared it?
```

```
 1                MS. HINES:  The allegations are that --
 2                THE COURT:  I should construe that in your favor,
 3      that she actually prepared the appraisal even though it did not
 4      have her signature on it?
 5                MS. HINES:  She is not a signing appraiser that we
 6      are aware of.  But yes, that is why the allegations don't make
 7      that allegation.  So the allegation is that she assisted in
 8      this appraisal process by preparing the highest and best use
 9      determination and that that should be under the statute
10      sufficient for meeting the allegations under 9(b).  And then as
11      a factual matter on the merits, it may turn out that she's not
12      engaged in 6695A penalty conduct.  But that is not today's
13      issue that we have to resolve.
14                THE COURT:  Do you have any more -- anything more you
15      want to say?
16                MS. HINES:  That is it on that.  Did you have any
17      more questions?
18                THE COURT:  No.  No.  I will hear from the defendants
19      in response.  But that is fine.
20                MS. HINES:  The next issue that was addressed was the
21      disgorgement with *Kokesh* and the statute of limitations issue.
22      And I think this is another important point to point out.
23      *Kokesh* and securities law with the disgorgement at issue there
24      is completely different than here where the aggrieved parties
25      is the United States Treasury.
```

1           Money is being paid out for refunds or money is going

2    uncollected as a result of defendants' conduct.  And so the

3    party being compensated is the IRS -- or I'm sorry -- the

4    United States Treasury.  So kind of where you are with the

5    disgorgement -- in the securities context where you are in

6    disgorgement with the tax laws is completely different.  You

7    are in a different situation.

8           And it is meant to be compensatory and restore the

9    status quo by restoring to the Treasury.  In *Kokesh* and you are

10   dealing with securities law, the market is harmed and the

11   investors are the ones that is out the money, not the SEC.

12          They may have this investigative component there.

13   But there is also -- that is kind of a side issue.  It is not

14   the main point here, which is the Treasury is who is harmed by

15   the refunds paid out of the taxes not collected.

16          I think the -- you know, the issue about expenses

17   versus gross receipts, I do think that is also a factual issue

18   that will come out throughout the litigation in this court and

19   doesn't have to be something that is decided today.

20          But disgorgement as it is defined typically refers to

21   gross receipts.  And then there are different instances where

22   expenses are allowed or not allowed depending on the actual

23   situation and circumstances surrounding the scheme.

24          THE COURT:  Well, do I in any event need to -- in

25   your judgment rule on the *Kokesh* issue in terms of the statute

1  of limitations at this point?  Will it make a difference in

2  terms of the litigation and scope of the discovery?

3          MS. HINES:  If the -- if it is held in abeyance at

4  this time, I think discovery could potentially encompass gross

5  receipts that go back to 2009.  So that could extend the time

6  period for which there is relevant information about the

7  receipts.

8          Now, that said, that conduct may still be at issue

9  and relevant to our claims for the injunction.  So it may not

10  unreasonably expand discovery because we would be looking at --

11  you know, for example, part of our allegations are the amount

12  of the capital contributions that the partnership gets with

13  ratio to the tax deductions that the investors get later.

14          So we're still going to be looking for that

15  information of what kind of capital is being raised by these

16  partnerships going all the way back.  And presumably some

17  amount of that is the fees that were earned by all defendants.

18          THE COURT:  All right.

19          MS. HINES:  I do think, Your Honor, there was also an

20  issue of the broader statutory authority argument under 7402.

21  And as we pointed out in our opposition, there are countless

22  cases that have allowed disgorgement in the context of the tax

23  law.  Some of which have come after *Kokesh*.  The majority of

24  the disgorgement in the tax law arena relates to tax return

25  preparers.  But there are instances of disgorgement with a

1    promoter injunction suit.  Most notably, the *RaPower* decision

2    out of Utah that we had previously talked about this afternoon

3    for the scheduling order issue.  And --

4            THE COURT:  What was the date of that decision?  Was

5    it pre-*Kokesh* or not?

6            MS. HINES:  It is post-*Kokesh*.  In fact, there is an

7    underlying order dealing with the application of *Kokesh* with

8    respect to a jury trial.  So it is a 2018 decision.  The one

9    dealing with whether *Kokesh* applied for purposes of determining

10   whether the defendants were entitled to a jury was March 7,

11   2018, and the final findings of fact and conclusions of law

12   October 4, 2018.

13           I think finally just to talk briefly about 6694, we

14   laid out most of our position in our opposition that just

15   because you are subject to penalty under one code section

16   doesn't mean you don't also meet the definition of another code

17   section.

18           And, you know, the defendants here seem to almost

19   take a position that they should be allowed to dictate how the

20   IRS proceeds and how the IRS should move forward, that they

21   didn't penalize the clients first before this injunction suit.

22   And that is not a prerequisite for filing this injunction suit.

23   Nor is it necessarily that there is always penalties with

24   injunction suits later.

25           The IRS has the ability to proceed under a multitude

1  of statutes and seek a multitude of different relief.  And the

2  IRS has directed this suit, has authorized us to file it.  This

3  is what we're here about.  These are the issues.  And the

4  statutes are written, and they cover this conduct, even if the

5  defendants wish it didn't cover this conduct.  It does.  And so

6  they should be left in the suit at this point and let it

7  proceed to fact discovery.

8         THE COURT:  You may well be right there.  But in

9  terms of assessing the value of your case and the way a fact

10  finder might react to it, the fact that somebody had never been

11  penalized, never gotten a notice might just in terms -- might

12  be offensive to many taxpayers sitting on a jury.  But it

13  doesn't mean you are wrong.  It just simply might be considered

14  as whether somebody had willfully violated the law.

15         MS. HINES:  I would agree, Your Honor, that I think

16  that, you know, the standard under 6700 is knew or had a reason

17  to know.  And that would certainly be a factor that could come

18  out.  And the fact finder takes it for what it is worth.

19         Thank you.

20         THE COURT:  I want to ask a few questions about

21  discovery, but I want to first just hear briefly back from

22  Ms. Zak's counsel in response to your contentions as to the --

23  the appraiser participating in the appraisal subject.  Just

24  briefly, if you would respond to that.  Then I want to have

25  Ms. Hines back.

```
 1              MR. CLUKEY:  Thank you, Your Honor.  As I understand
 2     it, the Government with respect to the appraisal -- the only
 3     allegations in the complaint are basically 193 through 196.  It
 4     is six or seven sentences in the entire complaint.  We would
 5     submit, Your Honor, that on the basis of Rule 8, it requires
 6     substantially more than a couple of sentences in a complaint.
 7     Under Iqbal and Twombly, you have to allege conduct that is
 8     plausible.  And these few sentence that are bereft of any kind
 9     of detail whatsoever provide absolutely no way that a person
10     could defend against these kind of allegations.
11              I also take issue with the way that the Government
12     described what it means to be an appraiser.  I don't believe
13     that the authorities -- the Government didn't cite any
14     authorities in its brief, first of all, that would support
15     that.  I don't think the authorities, if you were to look at
16     them, would support the Government's contention.
17              THE COURT:  Thank you.
18              MR. CLUKEY:  Your Honor, may I also add one -- just
19     address a couple of other points?
20              THE COURT:  All right.
21              MR. CLUKEY:  I will be very brief.  And actually,
22     Your Honor, you had asked earlier about Paragraph 82.  If I
23     could just clarify that very quickly.
24              If I understand the Court's question, Paragraph 82
25     which talks about on Page 29 the possibility of partnerships
```

1    being able to dispose of the land -- if I understand the

2    Court's questioning, you had a question about whether that

3    affected the perpetuity requirement.  So this -- as I

4    understand this paragraph here, this doesn't go to perpetuity.

5    This is simply what may happen later.  If you accept these

6    facts as true, what may happen later in connection with the

7    partnership, the land can be sold.  The conservation easement

8    is separate.  That attaches in perpetuity.  Then the land in

9    total is sold.  But the conservation easement, whoever buys it,

10   still gets the conservation easement.  They can't develop the

11   land.

12        So this paragraph doesn't go to perpetuity.  And I

13   don't believe when you read the surrounding paragraphs that

14   this paragraph really concerns that issue.

15        THE COURT:  So explain to me what you think that

16   means again.  Because I'm not sure what you -- the way you

17   construe this.

18        MR. CLUKEY:  So accepting with respect to Partnership

19   Y the land -- the underlying land could ultimately be sold, the

20   conservation easement would attach to -- and that land

21   typically has some land cut out.

22        THE COURT:  Right.

23        MR. CLUKEY:  So if the entirety of that parcel is

24   sold, the land on which the conservation easement attaches --

25   that can't ever be developed.  This doesn't go to the

1    perpetuity requirement.

2           THE COURT:  So if there was a house on the land, they

3    would be able to sell the house you are just saying and that

4    wasn't in the conservation easement area?

5           MR. CLUKEY:  Right.  So conservation easement -- so

6    the land on which conservation easements exist are sold all the

7    time for obviously a very low value.  And you can buy that land

8    because you back up to it, for instance.  But you can't ever

9    develop that land.  You can buy it.  But you can't develop the

10   land.  So I think it is two different issues, the sale versus

11   the perpetuity issue.

12          THE COURT:  That is the way you view

13   Paragraph 136(e), as well, which again said the manager of the

14   syndicate had the ability to dispose of that only asset without

15   the approval of the partners after a period of years after

16   the -- after the conservation easement was granted.

17          And I understood that to be implying at least that

18   the manager of the syndicate could dispose of the conservation

19   easement.  But you are saying that is not really --

20          MR. CLUKEY:  Right.  I think this holds true, the

21   same thing for the earlier paragraph.  The conservation

22   easement still exists on the land.  According to this

23   particular structure, you can sell the land with the

24   conservation easement but you can't ever develop the land on

25   which the conservation easement attaches.

```
 1              THE COURT:  All right.
 2              MR. CLUKEY:  With respect to the Government's point
 3    about 9(b), I think Government counsel started off with the
 4    fact that they have assumed arguendo that 9(b) applies,
 5    Number 1.  Two, they have alleged fraudulent statements
 6    throughout the complaint.  They have alleged fraud.  They have
 7    invoked the statute 6700.  Which part of it concerns false or
 8    fraudulent statements.  I don't think it is an answer to say,
 9    oh, but we said or false that that gets you out of the
10    requirements of Rule 9(b).
11              The last point just with respect to disgorgement, the
12    Supreme Court in Kokesh said that this is -- this involves a
13    public wrong.  Even though there are individual investors who
14    are armed, it is not an individual -- the violation is not
15    against the individual.  The violation is against the United
16    States in that context.
17              In addition, the damages -- and the court talks about
18    exactly what happens to the damages in the SEC context.
19    Sometimes they go to the individuals.  But the court makes -- I
20    think highlights the fact that that is not always the case.
21    The funds often go to the Treasury and exclusively to the
22    Treasury.  Sometimes the monies get paid out to individual
23    investors.  But that is not a requirement and often doesn't
24    happen.
25              So I think we're squarely on all fours with that fact
```

1    pattern with respect to what happened with the money here.  The

2    money -- the disgorgement in this context as the plaintiff has

3    pled would go to the Treasury.

4         THE COURT:  Well, let's say I agree with you so that

5    it is a shorter period of time as a statute of limitations.

6    Ms. Hines argues that it still potentially would be -- going

7    past five years still would provide relevant information,

8    wouldn't it?

9         MR. CLUKEY:  So I think if I understood Ms. Hines

10   correctly, she said with respect to gross receipts and that

11   information, that would be cut off after five years.  They

12   would not be entitled to go after gross receipts.  But that

13   wouldn't really be relevant.

14        Whether there is other conduct that might be relevant

15   past that, I understood the Government's position to be yes,

16   there might be other conduct or related conduct that would go

17   past the five-year standpoint -- the five years.  And that may

18   be possible.

19        THE COURT:  All right.  So since you are up, let me

20   just ask you this:  You-all protest the scope of the discovery

21   that the Government wants.  Let's say I even grant some portion

22   of your motion and allow the Government to replead.

23        I have got you here today.  What are you saying is an

24   appropriate scope of discovery?  You don't want 50 depositions,

25   and you don't want the same length of period of time.  But

1    obviously they have alleged a complex, far-flung set of

2    business arrangements.  And to the extent fraud is involved, of

3    course, one could argue that they need more evidence rather

4    than less in order to be able to prove their allegations.

5          MR. CLUKEY:  Your Honor, I think one thing with

6    respect to the scope of discovery, it is important to keep in

7    context what has happened prior to the filing of this case.

8    This isn't like a normal litigant.  This is the United States

9    Government.

10         First of all, you have various audits, and you have

11   the IRS engaged in audits.  Secondly, you had the IRS literally

12   for years -- approximately four years investigating the various

13   defendants here in this case.  What those IRS agents were doing

14   was obtaining information, asking various participants in the

15   transactions questions, interviewing them, deposing them in

16   some instances.

17         I believe this Court actually handled the case with

18   respect to Mr. Greenberg in which he opposed a summons that was

19   issued to him for information.  That is all related to this

20   case.

21         The Government has been involved in obtaining

22   information and discovery literally for four years.  And now it

23   is coming to the Court saying, oh, we need all this

24   information.  I think it is a little bit disingenuous to take

25   that approach.

1          50 depositions to me seems somewhat shocking.  One,

2    you have the costs.  What kind of costs are going to be imposed

3    on the various defendants here if they all have to defend 50

4    depositions?  That is a crippling cost.  Secondly, what are

5    they going to do with 50 depositions?  How is that information

6    going to be presented to the Court?  What does the Government

7    think it is going to do as far as the presentation of its case?

8          It has alleged 96 transactions.  Is it intending to

9    litigate 96 transactions?  A single transaction as litigated in

10   the tax court often takes a week, sometimes more.  They are

11   talking about 96 or more weeks of trial.

12         Certainly that would be crippling to the individual

13   defendants.  And I don't think the Court would have the

14   patience or the ability to litigate this case for two years.

15   So I can't tell you -- I haven't given as much thought to what

16   the scope of discovery should be.  I think the EcoVest

17   defendants really have spent a lot of time in this and probably

18   would be a little better to address the issue.  But I think

19   just from that general standpoint what the Government has asked

20   for here is an overreach.

21         THE COURT:  All right.  Could I hear from EcoVest

22   about what you believe is the appropriate scope.

23         MR. RAZI:  Thank you, Your Honor.  I would be happy

24   to address that.  And as I do it, let's just set the stage and

25   put this in a bit of context.

1          This case was filed six months ago.  So we have been

2     at this with them for six months.  And the way it was filed was

3     it was filed and there was a press release put out accusing

4     these good people who have never done anything wrong in their

5     lives of fraud -- okay? -- and flipping their life upside down

6     and cutting off all their business activities, cutting off

7     banking relationships, freezing their life in place.  And they

8     came to us and said, what do we do?  I said -- you know, we

9     said, did you do it?  What is this all about?  They said no, it

10    is all wrong.

11         Okay.  The fundamental allegations in the complaint

12    are that they lied to people, that they knowingly made false

13    statements, and that an appraiser had these wildly excessive

14    appraisals that were 200 percent or more of the value.  Those

15    are the real two issues in the case.

16         There is some interesting legal discussion that we

17    heard this morning.  And, intellectually, I get why the Court

18    is interested in that.  But at the end of the day, at least as

19    it relates to our clients, there are fact disputes.  They have

20    been accused of fraud by the United States.  Six months ago,

21    the United States Government steps on them and accuses them of

22    that.

23         And now the United States is saying, even though we

24    did that, even though we broadcast this to the world, we are

25    not ready to prove our case.  And we came to them.  We came to

1    the Government the minute we got the complaint and said, we

2    want to talk to you.  We want to get this case moving.  If you

3    think there is this big fraud that needs to be enjoined, we're

4    ready to do it.  Let's go.  We'll bring our guys in.  They'll

5    talk to you.  We'll put them on the stand, and they'll explain

6    to you why they did what they did and why it is all legal and

7    why there is no precedent for this Government case.

8              So what is the appropriate scope of discovery?  As

9    counsel alludes to, no way we're going to have discovery or a

10   trial about 96 separate transactions.  Right?  That is

11   preposterous.  That would be an extraordinary waste of this

12   Court's resources, most importantly.

13             So there is going to need to be some selection done.

14   Right?  There is going to need to be some focus.  The lawyers

15   are going to have to look at the transactions and pick what

16   they want to show to the Court.  And that is our job as

17   advocates.

18             Certainly our clients -- I should say we produced

19   even without -- I know there was some back-and-forth with the

20   Court and people were saying we're not ready, we're not ready.

21   We just went ahead and produced all the transaction documents

22   more than a month ago.  There is no mystery about what our

23   transactions are.  For each one, there is, you know, a

24   sophisticated set of documentation, including legal opinions,

25   by the way, saying that all this is properly deductible and

1    fine.

2         So that is what the evidence is going to be.  So the

3    discovery should be -- and fortunately the Federal Rules

4    address this already, that we're not just writing from scratch.

5    We don't have to go to a solar panel tax case that counsel who

6    happens to be in the room handled.  Ten depositions, I think,

7    is the default under the rules.  Certainly that is plenty.

8    There hasn't been one taken yet.  So there is no showing that

9    more than ten is required.

10        But most importantly we don't so much care about the

11   number of depositions or the number of discovery requests.  We

12   just have to get on with it.  It needs to be done

13   expeditiously.  The United States can't accuse someone of fraud

14   and then just hang back and say, I'm busy, and I'm not ready to

15   do it, and no, we need more time.

16        If you are going to accuse someone of fraud and you

17   are going to put out a press release, you have got to be ready

18   to come to court and put up or shut up.  That is our system.

19   That is the only way it is fair.

20        So however many -- if they want 20 depositions, just

21   get them done.  The default in the rules -- again, people have

22   thought about this -- is a four-month period for fact

23   discovery.  That is 120 days.  This case is six months old.

24   There's plenty of time to do this.  We just have to do it.

25        And this idea that, you know, these big numbers that

1    we're going to have -- in a case in which there is a fact

2    dispute about intent and valuation, we're going to have this

3    long discovery period.  These issues are coming to you, Your

4    Honor, ultimately.  Nothing is going to happen in a deposition

5    that is going to win anyone's summary judgment on intent.

6    Nothing is going to happen in a deposition that is going to

7    resolve -- that is going to enable anyone to find as a matter

8    of law that any appraisal was 200 percent or more exaggerated.

9         Those are fact questions.  There is going to be a

10   trial, and we need to efficiently move through this case so we

11   can present it.  And if the Government is right, there will be

12   injunctions issued.  But I submit that the evidence will show

13   that they are wrong.  And they are wrong a million percent.

14   And we look forward to the opportunity to present that.

15        But it can't just be this indefinite thing where the

16   internet on Google the United States Government says my clients

17   are fraudsters and that just hangs out there indefinitely while

18   the Government figures out who its witnesses are for 9 months

19   or 12 months or 6 months or whatever.  We have to get on with

20   this.

21        THE COURT:  Thank you.

22        MR. RAZI:  You're welcome.

23        THE COURT:  Ms. Hines, would you talk about discovery

24   from the Government's perspective.

25        MS. HINES:  Yes, Your Honor.  From the Government's

1    perspective, we have requested a nine-month fact discovery

2    window with a three-month of additional discovery time for

3    experts.  We requested 50 depositions.  And, otherwise, I

4    believe everything else in the joint preliminary report and

5    discovery plan --

6              THE COURT:  50 depositions before experts or after

7    experts?

8              MS. HINES:  We just said 50 total.  Your Honor, you

9    know, the United States counsel in this case has done a fair

10   number of these promoter injunction suits.  And we have

11   experience with both the length of time and the number of

12   witnesses that are required in these types of cases.

13             This case doesn't involve only people in this

14   jurisdiction.  It involves people throughout the country that

15   are going to be required to be deposed in order to make an

16   admissible record for this Court.

17             In terms of how we present the evidence at trial,

18   there are lots of avenues.  And we can discuss with counsel

19   after there has been some initial discovery about the

20   transactions before we start narrowing down and deciding if and

21   what exemplars might be appropriate.

22             There is also summary evidence and other types of

23   ways that we can present evidence to this Court in a coherent

24   manner that doesn't require us to, say, have all 96

25   transactions at issue.

```
 1              And importantly for us to succeed on our claims and
 2     have an injunction issued, we don't have to show that every 96
 3     were incorrect.  We have just got to show and meet the factors
 4     required by the statutes and then the equitable factors in the
 5     Eleventh Circuit for injunctions.
 6              THE COURT:  Would you agree that this is still
 7     ultimately a fact issue -- a set of fact issues in dispute so
 8     that the depositions really are ultimately going to be focused
 9     on capturing testimony that you may or may not use at trial.
10     It is hard for me to see given what I have seen so far that I
11     would be able to rule as a matter of law.
12              MS. HINES:  Well, Your Honor, promoter cases have, in
13     fact, been susceptible to rulings on summary judgment.  There
14     have been a few of them.  The Tarpey case that we mentioned
15     earlier.  There is a case out of Ohio called Elsass that was
16     resolved on summary judgment.  There's also cases that deal
17     with fraudulent intent being resolved on summary judgment.  So
18     I don't think it is impossible for this to be resolved on
19     summary judgment.
20              THE COURT:  So what are the nature of the depositions
21     that you are looking to take in that 50 beyond the experts?
22              MS. HINES:  Beyond the experts, Your Honor, we would
23     want to take depositions of the defendants.  Then there are
24     customers, the ultimate investors in the transactions.  As
25     alleged in our complaint, there are thousands of those.
```

1    Obviously we're not going to take all thousands of those, if we

2    have only asked for 50.  There are also the broker/dealers and

3    other financial advisers who were basically kind of selling

4    this or what we would refer to in these cases as subpromoters.

5    There's other appraisers who are involved.  There's the people

6    who have given advice on these transactions, the lawyers or the

7    accountants or whatever who have written the opinion letters.

8    Those people would also be people we would be looking to

9    depose.

10          THE COURT:  You don't think you are going to walk

11   into a wall of attorney-client privilege under these

12   circumstances?

13          MS. HINES:  No.  In fact, Your Honor, in these

14   circumstances, attorney-client privilege when they use a

15   marketing opinion, which is what most of these transactions

16   are, an opinion used to market the transaction, there is a

17   limited amount that the attorney-client privilege actually

18   comes and extends into those types of work product.

19          But that is a potential issue, which is another

20   reason to have a longer discovery period.  So that when we have

21   that issue, we can try to resolve it.  And if we can't, we can

22   come to you and ask for some assistance.

23          THE COURT:  Well, you have heard the defense counsel

24   argue that the customers are really irrelevant.  This is not a

25   circumstance where the customers are -- that the claims of the

customers have been defrauded.

What is the relevance of the customers here in terms of the depositions?

MS. HINES:  So under the count with the 6700 penalties -- so that is Count I of our complaint where we have sought an injunction under 7408 -- the question is whether people have made or furnished a statement or caused others to make or furnish a statement.  And those customers are the people who received the statements.  They are the ones who are hearing from either the defendants directly or from these subpromotors who are hearing from defendants.

So their relevancy is what were you told, what were you told about this deduction, how was it marketed to you, what actually happened in the transaction, what happened after the transaction.

THE COURT:  And connect that up with the law again to me.  Because this is not about them being defrauded still.  I'm just trying to understand what you are saying because you are connecting it to a statutory provision that I don't -- I'm not going to just be able to project the clause in my mind at the moment as to how it is relevant.

MS. HINES:  Right.  So 6700 penalizes conduct which is the organizing or participating in the sale of an entity or plan or arrangement in which a statement was made and that statement is either false or fraudulent or a gross valuation

overstatement.

So the person who receives the statements, the customers, can tell us what those statements were.  Which kind of the statements is one of the key issues in this case.  What were they told?  What were they told about this transaction and how it would work?  How was it marketed to you?  That is an important part of our case.

And, in fact, in a lot of these promoter cases, the majority of our depositions or at least a good portion of them are of customers.

THE COURT:  Well, is there a difference between the promotion -- the impacted promotion schemes and these other cases where the different -- really different subject matter than here?  I mean, I can understand what the plaintiffs -- the defendants are saying here.

So I'm trying to -- I'm trying to understand what really does Susie Jones who happened to buy an interest -- what does she have to add?  Because she is getting the materials that you are aware of.  She may have had the broker say something to her.

But all of that is primarily available in documentary evidence.  I'm not sure what her recollection, which is likely dated, is going to add to anything as a reliable piece of evidence in the context of this specific case.

MS. HINES:  And to be sure, there are definitely

documents that are going to contain statements.  But the
statements under 6700 are not limited to written statements.
Oral statements, what you are told about what you are getting
if you invest in this, that could be a material matter that is
a penalizable statement under 6700.

THE COURT:  And if the broker who is not a defendant
has said it, you are going to hold these individuals
responsible?

MS. HINES:  The statute penalizes if you make or
furnish it or cause another to make or furnish it.  So
potentially, yes.  Depending on if the broker was caused to
make that statement by one of the defendants, it reaches that
conduct.

THE COURT:  All right.  Well, I think I won't approve
this -- anything that involves 50 depositions.  So I don't have
much more view about this at this point.  I'm going to look at
what you have provided.  But it seems to me that that is
excessive and not necessary for purposes of the way this has
been alleged here.

So I haven't gotten a lot of clue, frankly, from the
defendants of what you think is appropriate.  And I would -- I
would really urge the Government to rethink a discovery plan
that tells me more particularly how you are going to proceed.

It is not that the nine months is necessarily
unrealistic if it was true.  But 50 is just -- you're talking

1    about that you will take 50 depositions?

2            MS. HINES:  Yes.

3            THE COURT:  That doesn't even deal with what they are

4    going to take.  And if you put up 50, then I can well imagine

5    what happens next.  And I basically think you'll be --

6    especially if you think there are some things that are going to

7    be capable of the Court's reviewing this on summary judgment,

8    it will make an impossible load.  I basically would be in a

9    position where I would have to tell you to go to trial, unless

10   there was something terribly narrow that was clearly a matter

11   of law.

12           So I don't really think it is in your interest -- the

13   Government's interest either to have some -- create a record

14   that is so factually complex that it becomes almost undoable as

15   a matter on summary judgment.  Now, there may be some narrower

16   issue.  And I don't know what it is at this juncture because

17   I'm, you know, obviously at a very early point in the lawsuit.

18           I just have really strong concerns about

19   manageability.  I would have to understand proportionality to

20   have to know what we would really have to understand before I

21   even -- you know, in a situation where I'm seeing dozens and

22   dozens of depositions, I would have to really understand what

23   are the exemplars that you are going to use.  What's the

24   framework of the discovery?

25           And I'm not trying to limit you.  But I think clearly

1    the Government intends to go beyond the three examples in the

2    complaint.  So if I understood what they were and they

3    understood what they were, it would be very helpful in helping

4    you-all frame that.  Now, there may be something you can

5    proceed with now since apparently there is some willingness on

6    the part of EcoVest to at least proceed.

7            I am concerned if I grant any portion of the motions

8    to dismiss or just simply say that there are some things that

9    have to be repled that I'm going to have to at least give you a

10   very quick time frame for doing that so that we can get going.

11           But, anyway, that is my general view about the scope

12   of discovery at this point.  And I think obviously there has

13   been -- has been a lot of information collected as well.  So

14   I'm not sure it is really needed.  But I'm going to read all of

15   the materials that you provided.  And maybe I'll have a

16   somewhat different view after I review them.  But that is my

17   general thought about this.

18           Do you have a sense of how many exemplars that you

19   really would like to use?

20           MS. HINES:  Not yet, Your Honor.  I mean, I think

21   that part of what -- the EcoVest production, for example,

22   included some more recent transactions.  We have some issues

23   with the production being redacted in portions.  And so we're

24   going to have to go back to them and kind of be able to take an

25   initial look through some of that before we can have, I think,

1    a substantive conversation on that.

2          THE COURT:  Okay.  Well, I think it is something as

3    you look at the materials that they provided that you should be

4    thinking about what is -- what is the number of exemplars so

5    that -- and, of course, you should as well.

6          What would be -- from your perspective if you don't

7    think that you should be hung on three different transactions,

8    what are you saying would be sufficient without basically

9    swamping the boat but providing you fairness?

10         Yes, Counsel.

11         MR. RAZI:  Yes.  Thank you.  On that point -- and I

12   do think it is where we're going to end up is some kind of

13   sampling.  But we are flexible in terms of the number.  You

14   know, five seems to make sense to me with some input by both

15   sides.

16         But on the discovery schedule, if I could just say

17   one thing.  The Court said that defendants haven't given much

18   guidance about the schedule and what is entailed here.  And I

19   would just push back a bit on that respectfully.

20         THE COURT:  No.  You have.  We should be able to do

21   this in four months.

22         MR. RAZI:  Right.  And it is going to involve

23   depositions of our clients who are here and ready to be deposed

24   at any time.  But they are the only ones that are ready.  No

25   one else wants to do it.  It is going to involve depositions of

1    their lawyers, who are again ready to be deposed.

2            And what I would suggest on all of that though is

3    that why not wait until we actually need more.  Why not get

4    started.  The rules provide for ten depositions per side.

5    Let's take them.  And then we'll have a better understanding of

6    whether more is actually needed and why.

7            We're reasonable people.  If the Government came to

8    us and explained how there was this 11th witness out there that

9    had all this critical information that needed to be deposed, we

10   will consider that in good faith.  And the Court will certainly

11   let them do it if we ever get to that point.  So why not wait.

12   We don't need to decide in the abstract and just figure out how

13   many depositions are going to be needed.  We need to just set

14   the schedule and get on with it.

15           THE COURT:  All right.

16           MR. RAZI:  Thank you, Your Honor.

17           MR. HICKS:  Your Honor, if we can stick to the

18   default of four months and ten, my client will agree to it.

19   Our concern is cost.  Right.  So if we can get to it, fine.

20   We'll get to it, despite our motion to dismiss.

21           THE COURT:  But are you wanting to be assured that

22   there will be no more than ten?  Because I can't assure you

23   that.

24           MR. HICKS:  No.  No.  I think it is correct.  If you

25   say let's start off with ten and if somebody has good cause for

```
 1    an 11th or 12th, they come to you.  That is the way that
 2    normally works.  And I think that would be a fine way to start.
 3         THE COURT:  So is the Government interested in simply
 4    getting going at least even -- whether or not I agree with this
 5    12 business but that basically we start with some more limited
 6    framework and then we reevaluate and we determine how many --
 7    at least in the next two weeks how many exemplars you really
 8    are thinking about?
 9         MS. HINES:  Well, I think the problem with just
10    saying let's start with ten and come back if we need more is
11    that what if we don't get more and we have used our ten.  You
12    know, I mean, six defendants in this case.  That is more than
13    half of what is allowed by the rule.  And so I mean right there
14    we're going to be -- what? -- allowed one customer, one
15    broker/dealer, one attorney, and one other person.
16         THE COURT:  Well, I don't really agree with them
17    about the ten.  I'm really agreeing with them there might be a
18    value in having at least a somewhat more limited number and for
19    me knowing how many exemplars you are really thinking about so
20    that I can -- now you have identified what you want for each
21    one of these so I get a better understanding of what you are
22    really imagining that you are going to do and how many experts
23    would be involved.  Are they all around appraisal?  Or what are
24    they around?  So I can understand -- just to get a much more
25    factually textured vision of what it is that the Government
```

1    wants, other than just there is a lot of things out there who

2    are going to want a lot and it is going to be 50.  Then they

3    can take what they are going to do.  That is just it seems to

4    be a recipe, as I said, for the case not being manageable.

5          MS. HINES:  Well, Your Honor, just to give you some

6    context, we made our initial disclosures on April 22nd and

7    identified, you know, 20 either individuals or categories of

8    witnesses that may have discoverable information.  Six of whom

9    are the defendants.  Then the syndicates themselves, we

10   identified all 96 of those.  We identified a series of

11   customers.  I think it was 140 customers in the initial

12   disclosures.  And most of those relate to one transaction.  34

13   broker/dealers who were out there that we know of at this

14   point.  Two advisers.  Eight land trusts who are receiving the

15   easement donations.  Then there's employees of these entities

16   that we may want to speak with as well.

17         So I mean, we did try to look at the factual context

18   of even taking a smaller number of transactions.  How many

19   people might we actually want to talk to, especially those who

20   are outside of this district and whose testimony we want to get

21   on the record and make it admissible?

22         So I do think -- I hear what you are saying that 50

23   seems hard and a lot to ask for.  But given the scope of this

24   particular transaction that has gone on since 2009, $2 billion

25   of federal tax deductions claimed as a result of this conduct,

1    and dealing with thousands of investors, we do think 50 is

2    proportional and factually supportable.

3              THE COURT:  All right.  You can provide me with the

4    disclosures.  I don't have them.  They are not filed on the

5    docket.

6              MS. HINES:  Your Honor, we did not file them because

7    they contain the personal information.

8              May we submit them to chambers?

9              THE COURT:  Yes, you can.

10             And EcoVest did disclosures, as well?

11             MR. RAZI:  I think we filed ours, Your Honor.  We're

12   happy to email them.

13             THE COURT:  If they are on the docket, that is fine.

14   And I would just simply -- suggest simply so that I have them

15   you can move to file -- I will approve your filing them under

16   seal so that they are actually on the docket but under seal.

17             MS. HINES:  Okay.  We'll file those, Your Honor.

18             Did you have any other questions?

19             THE COURT:  I wanted to know whether the other

20   defendants had filed anything in terms of disclosures.

21             MR. CLUKEY:  We have not, Your Honor.

22             MR. HICKS:  Nor have we.

23             THE COURT:  All right.  Well, this has been helpful.

24   I'm going to spend a little more time looking at the briefs.

25   And I am thinking about discovery issues as well.

1          I don't really know how exactly -- of course, once we

2     commence discovery, how many discovery disputes there will be.

3     And I can't right now just consume all of the time of a

4     magistrate judge in discovery disputes.  And I have an enormous

5     criminal caseload at the moment.

6          So I just want to say that if you end up being in a

7     position of enormous amounts of disputes we're going to have to

8     think about whether I need -- you are going to have to pay for

9     a special master, what we're going to have to do.  I hope that

10    is not going to be necessary because it is the Government

11    involved and taxpayer funds.  And I'm being told that some of

12    the people here don't have endless resources.

13         But I want to say this just from the outset.  Because

14    even though I'm a big believer in getting involved myself in

15    the discovery issues and trying to have -- and not -- and being

16    able to head off all discovery -- formal disputes because just

17    basically it bogs a case up so much, I'm concerned given the

18    volume of discovery that we could get into that situation.

19         So it is just basically a flag to you that I do

20    require if you end up being in discovery disputes for you to

21    attempt to resolve it, to not file motions to compel or a

22    motion for protective order but to contact the Court, and that

23    we have an informal discovery dispute resolution process.  But

24    if we're basically having disputes every two weeks, I won't

25    have any alternative as to how I handle it.

 1          If we have any further questions, I will let you

 2     know.  I just want to talk to the law clerk involved in the

 3     case for a second.  All right.

 4               **(There was a brief pause in the proceedings.)**

 5               THE COURT:  Did you have something more you wanted to

 6     add?

 7               MR. RAZI:  Yes, Your Honor.  I was just going to ask

 8     whether at least EcoVest and the Government can resume

 9     discovery.  We had begun discovery.  And then the Court entered

10     a minute entry a few weeks ago stopping it.  And I would just

11     respectfully submit that I don't see any purpose that is being

12     served at this point in waiting.  In other words, if there are

13     hard questions -- hard factual questions that need to be

14     resolved, we ought to get started doing that.

15               THE COURT:  All right.  Well, this is my view about

16     that.  You certainly can exchange any documents you want and

17     continue to discuss the redaction issues, anything else like

18     that.

19          I'm concerned about proceeding with depositions

20     without really having at least made a determination as to --

21     even if I haven't issued anything as to the merits of the case.

22     Because I can just -- even though everyone says, well, we'll

23     attend and we'll be there, I can just see any number of

24     problems about that if I don't at least have a sense of where

25     I'm at in the case.

1          MR. RAZI:  The document work gives us plenty to do.

2          THE COURT:  But the document work is -- there is

3     plenty to do on the document work.

4          MR. RAZI:  Unquestionably.

5          THE COURT:  Yes.  So I'm going to continue the global

6     stay with this exception, that the Government and EcoVest is

7     fully authorized to proceed with document discovery and resolve

8     all of the documents -- any document issues, redaction issues,

9     confidentiality issues.  And I'm also available if there is any

10    need to raise any of those issues.

11         MR. RAZI:  Thank you, Your Honor.

12         THE COURT:  All right.  So you are going to -- as I

13    understand it, all of the defendants have their -- to the

14    extent you've had disclosures, they are on -- I'm going to

15    get -- the Government is going to file one under seal, and

16    EcoVest is already on the docket you believe?

17         MR. RAZI:  I'll check.  Then if it is not, we'll put

18    it there.

19         THE COURT:  All right.  Very good.  And I think that

20    would assist me, as well.  And I'll try to make some

21    determination as to how we're going to proceed with the global

22    stay and reviewing the next of your materials in the next ten

23    days.

24         There is a possibility I will require the Government

25    to file an amended complaint.  How does that impact anything?

1      I mean, that is why I am saying go ahead with the documents.

2      But I can understand why that might affect or might not affect

3      discovery proceeding.  So that is the last thing I want to

4      throw out.

5              MS. HINES:  Your Honor, to the extent that an amended

6      complaint is required, it is possible that it will impact

7      discovery.  I think though if I'm understanding at least, you

8      know, the argument of opposing counsel, if it is really just

9      the particularity issue, it may just be, you know, adding more

10     examples or whatever.  So I'm not sure that it necessarily will

11     change what we have to decide in terms of exemplars or how much

12     or how many.

13             It may expand that in the sense that, you know, if we

14     are starting with the assumption of at least three and we have

15     now more examples, it may make it a larger pool of exemplars.

16     I don't know.

17             Quick question, Your Honor.  You did ask in your

18     order this morning for hard copies of all of the materials we

19     talked about at first.

20             Do you still want those?

21             THE COURT:  The materials that were referenced in

22     your footnote?  And I think that you provided them, didn't you?

23             MS. HINES:  We electronically filed them.  But the

24     order also said to bring hard copies.

25             THE COURT:  If you have them, sure, we would like an

1    extra copy.

2              MS. HINES:  We'll get that for you.

3              THE COURT:  Anything else from other counsel?

4              MR. CLUKEY:  No, Your Honor.

5              MR. RAZI:  Only one final point.  As you peruse the

6    cases that were filed this morning, just bear in mind that in

7    many of those cases the parties agreed about the scope of

8    discovery.  And different defendants have different approaches.

9              Sometimes when the Government sues people, they just

10   sort of run and hide.  Other people come and vigorously defend

11   themselves.  And we are prepared to do that.

12             So this isn't a situation -- there is no agreement

13   here that there should be a million depositions and it should

14   go on forever.  Many defendants want cases to go on forever

15   because they would rather not come to a resolution.  That is

16   not our logic.

17             THE COURT:  All right.  Very good.  Thank you.

18             All right.  Thank you very much.  I appreciate

19   everyone -- lots of people coming from out of town and the

20   thought that was given to the discussion today.  Thank you.

21             **(The proceedings were thereby concluded at 4:25**

22             **P.M.)**

23

24

25

```
 1                   C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   89 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   26th day of June, 2019.

14

15

16

17                    _____
                       SHANNON R. WELCH, RMR, CRR
18                     OFFICIAL COURT REPORTER
                       UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```

OFFICIAL CERTIFIED TRANSCRIPT
UNITED STATES DISTRICT COURT