IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES,                          :
                                        :
                                        :
                                        :
        Plaintiff,                      :
                                        :
v.                                      :
                                        :
NANCY ZAK, *et al.*,                    :        CIVIL ACTION NO.
                                        :        1:18-CV-5774-AT
                                        :
                                        :
        Defendants.                     :

## ORDER

On December 18, 2018, the United States filed the instant action against Defendants Nancy Zak, Claud Clark III, Ecovest Capital, Inc., Alan N. Solon, Robert M. McCullough and Ralph R. Teal Jr., based upon Defendants' alleged involvement and participation in a "highly structured – and abusive – tax scheme involving the syndication of conservation easement donations." Complaint ("Compl.") (Doc. 1) ¶ 1. Based upon Defendants' alleged conduct, the United States "brings this complaint pursuant to 26 U.S.C. §§ 7402, 7407 and 7408," requesting injunctive relief as well as the disgorgement of all "gross receipts received from any source as a result of the conservation easement syndication scheme . . . together with prejudgment interest thereon." *Id.* ¶¶ 6-7.

On June 10, 2019, the Court held an in-person Status Conference / Motion Hearing to address all pending motions filed by various parties in this action.  At that hearing, the Court also took up the many issues set forth in the parties' Joint Preliminary Report and Discovery Plan ("JPRDP") to ensure that this case, which contains a number of complex issues, remains on track.

While the Court intends to issue an Order in the near term concerning the pending motions to dismiss (filed by Defendants Zak and Clark) as well as the motion to strike the EcoVest Defendants' Answer as filed by the United States, the instant Order relates solely to the pending motions to stay discovery in this case filed by Zak and Clark (Docs. 53 and 57 respectively).[1]  Both Zak and Clark's motions to stay effectively seek the same relief – an order staying all discovery as to them until the Court rules on their respective underlying motions to dismiss. *See generally* (Docs. 53, 57).

As an initial matter, at the conclusion of the June 10, 2019 hearing, the Court directed that the global discovery stay, as previously ordered on May 10, 2019, remain "in place until further order of the Court."  (Doc. 81).  However, the Court granted a limited exception with respect to the Government and the EcoVest Defendants whereby "the Government and the Eco[V]est Defendants are authorized to exchange documentary discovery."  *Id.*  In addition, during the hearing, counsel for Clark indicated that his client would be amenable to participating in a limited amount of deposition discovery to ensure that no

---

[1]     The Court points out that in its May 10, 2019 Order it *sua sponte* stayed all discovery through the June 10, 2019 hearing date.

duplicative efforts would be necessary following the Court's ruling on the respective motions to dismiss.  June 10, 2019 Transcript ("Tr.") (Doc. 85) at 81 (stating that "if we can stick to the default of four months and ten, my client will agree to it.  Our concern is cost.  Right.  So if we can get to it, fine.  We'll get to it, despite our motion to dismiss").

It is beyond dispute that "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650, 137 L. Ed. 2d 945 (1997).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936).

The Court has reviewed the parties' briefs as well as applicable law and, on balance, does not find that a discovery stay, limited in scope to Defendants Zak and Clark, is warranted notwithstanding their pending motions.  Indeed, the Court finds merit in Plaintiff's assertion that a stay "would create an inefficient and unfair situation [as] the United States would be forced to conduct discovery with respect to some but not all Defendants" which would, in effect, require the discovery phase of this case to "proceed on separate tracks, one track for Zak and Clark, and another track for the rest of the Defendants." (Doc. 62 at 6).  The

3

Court likewise agrees that a stay limited only to Zak and Clark could create "duplication of effort" and otherwise create uncertainty as to "whether the individual stays apply to non-party discovery of witnesses and entities associated with Zak and Clark, including any potential overlap with the EcoVest Defendants." *Id.* at 7.

While some of the above issues may be mitigated by imposition (or continuation of) a global stay, the Court does not find that such a global stay — which would effectively put the brakes on even a limited amount of discovery by all parties pending the Court's decision on the pending motions to dismiss — would best serve the overarching interests of all parties to this litigation. This is especially true where, as here, the EcoVest Defendants are interested in moving this case forward prior to the Court issuing a ruling on Zak and Clark's motions to dismiss.

Likewise, given the Plaintiff's claims, there is a significant probability that much of the discovery required among the parties will involve a large degree of overlap thereby militating in favor of ensuring global participation in the discovery process from an early stage. Moreover, the Court has previously authorized that the Government and the EcoVest Defendants may press forward with documentary discovery which itself would prove more beneficial to all parties if there were global participation in this effort.

Notwithstanding the above, the Court is nevertheless concerned that, given the potential depth and scope of this matter, as set forth in Plaintiff's Complaint

and the JPRDP, the discovery universe — including both fact and expert discovery — may be quite extensive and require significant time and monetary expenditures on the part of all parties. Thus, given the pending motions by Zak and Clark, the Court finds it prudent to cabin this early phase of discovery solely to the exchange of documents among all parties. Once the Court has ruled on the pending motions to dismiss, which will provide both the parties and the Court additional clarity as to the scope of the claims that will be moving forward, the discovery universe will, at that time, be appropriately expanded to include interrogatories, requests for admission and depositions, to the extent the parties seek to utilize any or all of these discovery devices.

The Court turns next to some other discovery issues as set forth in the parties' JPRDP. Specifically, the parties are not in agreement as to the discovery period and overall number of depositions required. Specifically, Plaintiff seeks one year for discovery (nine months devoted to fact discovery and three months set aside for expert discovery) and fifty (50) depositions. (Doc. 56 at 17). The EcoVest Defendants oppose both of these requests. *Id.* at 17-18, 25-28 (advocating instead for a standard four-month discovery track).

The Court has reviewed Plaintiff's proposed topics for discovery, *id*. at 20-21, as well as its explanation for the extended discovery period sought here. In addition, the Court takes note of the EcoVest position that the full year of discovery requested by Plaintiff is "based on the incorrect premise that resolving this case will require a searching inquiry into each and every one of EcoVest's

transactions" but that given the "similarities between the EcoVest real estate projects far outweigh their differences, resolving this case will not require the parties or the Court to master each and every transaction" and, as such, "the parties and the Court should focus their attention on a subset of particular transactions and evaluate the Government's claims in the context of those transactions." *Id.* at 27.

At this early stage, the Court is not convinced that a discovery period of one year encompassing a total of fifty (50) depositions (in addition to those depositions noticed by Defendants) is either relevant or proportional to the needs of this case at this particular juncture. *See* Fed. R. Civ. P. 26(b)(1). While Plaintiff has outlined the broad contours of this action in the JPRDP, upon further inquiry during the hearing, Plaintiff was unable to articulate precisely (as opposed to generally) why it needed a total of one year of discovery as well as 50 depositions in order to meet its burden of proof in this case. *See* Tr. at 72 (advocating for 50 depositions  in part, based upon the fact that "[t]his case . . . involves people throughout the country that are going to be required to be deposed in order to make an admissible record for this Court" but nevertheless acknowledging that "[t]here is summary evidence and other types of ways that we can present evidence to this Court in a coherent manner that doesn't require us to, say, have all 96 transactions at issue"); *id.* at 73-74 (defending a total of 50 depositions because "[b]eyond experts . . . we would want to take depositions of defendants . . . customers, the ultimate investors . . . the broker/dealers and other

financial advisers . . . other appraisers . . . the people who have given advice on these transactions, [and] the lawyers or the accountants . . . who have written opinion letters").

While Plaintiff did specifically highlight at the hearing that a significant number of the requested depositions would be required in order to take testimony of a large swath of Defendants' customers, Tr. at 76 (stating that "in fact, in a lot of these promoter cases, the majority of our depositions . . . are of customers"), the Court harbors genuine concerns that the time and expense associated with these depositions pales when juxtaposed against the overarching relevance of the testimony to be procured.[2]  Moreover, there is a strong likelihood that much of the "customer testimony" sought by Plaintiff may prove cumulative and unhelpful because such customers frequently rely solely on the advice of their brokers, further diluting the overall necessity of taking a large number of customer depositions.

While the Court is mindful of both the wide-ranging allegations being levied against Defendants and the complexities inherent in prosecuting this action, it nevertheless must ensure discovery remains proportional to the needs of this case.  And at this juncture, the Court cannot say that a discovery period totaling one year and encompassing 50 depositions from Plaintiff alone is proportional at this early stage of the proceedings.  Rather, at this stage, the

---

[2]      In that regard, Plaintiff has not made a proffer as to the testimony it expects to elicit from the customers, broker-dealers and other "intermediaries" and how multiple depositions of these categories of witnesses will yield unique as opposed to cumulative information.

Court shall permit the parties to take no more than twenty (20) depositions (to include both fact and expert depositions). To the extent Plaintiff (or any other party) at a later date determines that additional depositions are required, they may file a motion with the Court for such relief or negotiate with the opposing parties regarding an expanded number of depositions. As to the overall timeframe for discovery, the Court finds that an initial discovery period of 8 months (including both fact and expert discovery) should be sufficient. However, if the parties determine that more time is required, they may file a motion containing the reasons underlying their extension request. While the parties are limited to only document discovery at this time, the Court nevertheless sets forth a deposition limit and overall discovery period in order to ensure the parties can plan their discovery strategy accordingly.

Based upon the foregoing analysis, Zak and Clark's respective motions to stay discovery in this case are **DENIED**. All parties shall begin engaging in documentary discovery forthwith. However, no other discovery shall be permitted until further order of the Court. The Court will extend the discovery period as necessary to ensure no prejudice inures to the parties based upon the timeframe within which the motions to dismiss remain *sub judice* since during that time period, the parties are only authorized to engage in limited discovery as set forth above. Therefore, eight-month discovery period will commence upon the Court's resolving Zak and Clark's motions to dismiss.

**IT IS SO ORDERED** this 28th day of June, 2019.

_____

**Amy Totenberg**
**United States District Judge**