IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NANCY ZAK, et al., | : | CIVIL ACTION NO. |
| | : | 1:18-cv-05774-AT |
| | : | |
| Defendants. | : | |

## **ORDER**

This matter is before the Court on Defendant Zak's Motion to Dismiss [Doc. 31], and Defendant Clark's Motion to Dismiss [Doc. 41]. For the reasons stated below, Defendant Zak's Motion [Doc. 31] is GRANTED in part and DENIED in part. Defendant Clark's Motion to Dismiss [Doc. 41] is DENIED.

## I.   **PROCEDURAL HISTORY**

The United States brings this action against defendants, accusing them of participating in a "highly structured – and abusive – tax scheme involving the syndication of conservation easement donations." (Doc. 1 at 1–2.) Defendant Zak moves to dismiss Count I, II, IV, and V against her. (Doc. 31.) Defendant Clark moves to dismiss Counts I, III, IV, and V against him, incorporating the arguments made by Zak in reference to Counts I, IV, and V. (Doc. 41; Doc. 41-1 at 3.) The Government responded to both motions (Resp. to Zak, Doc. 47; Resp. to Clark, Doc. 50), and each defendant replied (Zak Reply, Doc. 54; Clark Reply, Doc. 59.)

On June 10, 2019, the Court held oral argument on the motions to dismiss, as well as the Government's Motion to Strike Answer to Complaint (Doc. 24), Defendant Zak's Motion to Stay Discovery (Doc. 53), and Defendant Clark's Motion to Stay Discovery (Doc. 57). (*See* Transcript of Motion Hearing Proceedings, Doc. 85.) The Court took arguments relating to the motions to dismiss and the motion to strike under advisement, and denied the motions to stay discovery,[1] but allowed only limited document discovery to proceed. (Doc. 86.)

## II. FACTUAL ALLEGATIONS AND CLAIMS

This case involves conservation easements, which are legal agreements "between a landowner and another party, generally a land trust or government agency, that permanently restricts the development and/or use of land with the purpose of achieving certain conservation or preservation goals." (Doc. 1 at 15.) The Government defines a "qualified conservation contribution" as "a contribution (A) of a qualified real property interest, (B) to a qualified organization, (C) made exclusively for conservation purposes." (Doc. 1 at 16.) To participate in this program, a landowner designates a parcel of land to become a conservation easement, preventing that parcel from ever being developed in the future. In exchange, the landowner gets a substantial tax benefit based on the valuation of

---

[1] The Court allowed the Government and defendant EcoVest to exchange documentary discovery, and also authorized the Government and defendant Clark to participate in limited documentary discovery to avoid duplicative efforts in the future. The Court also ordered that, other than documentary discovery, "no other discovery shall be permitted until further order of the Court." (Doc. 86 at 8.) The Court held that the "eight-month discovery period will commence upon the Court's resolving Zak and Clark's motions to dismiss." (*Id.*) Accordingly, the eight-month period of discovery commences now, upon entry of the instant order.

the parcel of land. This incentivizes landowners to help achieve Congressional goals relating to conservation and preservation of natural lands. However, in some instances, a landowner cannot utilize the entire possible tax benefit of converting their land to a conservation easement because their income is not high enough to allow for the full tax benefit.

The Government alleges that defendants ran a "conservation easement syndication scheme" that exploited this portion of tax law. According to the Government, the defendants formed limited liability companies ("LLC") under state law. (Doc. 1 at 16.) These entities were "pass-through" entities for federal tax purposes, meaning that the company was not liable for income tax. (*Id*.) Instead, the income or losses of the LLC "passed through" the entity to the partners of the LLC itself. (Doc. 1 at 16–17.) The purpose of the LLC was exclusively to hold ownership of the parcel of land at issue. The LLC did not conduct any other business, according to the Government. (*See* Doc. 1 at 47–48; *see also* June 26, 2019 Transcript, Doc. 85 at 11–13.)

The Government laid out eleven discrete steps that represent the "general pattern" the defendants took in enacting their conservation easement offerings. (Doc. 1 at 18–22.) In brief, according to the Government, the defendants first formed an LLC to take ownership of a piece of land, then hired an appraiser to provide an appraisal of the land, which would be used later in tax filings. (*Id*. at 18–19.) The defendants then marketed ownership interests in the LLC – whose value is derived only from the possible future tax benefit of converting the land to

a conservation easement – to wealthy persons who may seek to maximize their tax benefits. (*Id.* at 19–20.) The marketing of the LLC clearly explains how the conservation easement might benefit a person in a particular tax bracket by reducing his or her tax burden substantially. (*Id.*) Once all stakes are sold, the LLC designates the land as a conservation easement, finalizes the appraisal of the land's value, and prepares its own tax return. (*Id.* at 20–21.) The LLC is formed as a pass-through entity, so the sizable tax benefit it incurs for designation of the land is then passed through it to the investors themselves. (*Id.* at 16.) The investors list the conservation easement tax burden on their personal income tax returns, reducing their own tax liability. (*Id.* at 21–22.)

The Government characterizes defendants' conservation easements as a "syndication scheme" that violates section 6700 of the tax code. (Doc. 1 at 64.) The Government alleges that defendants collectively participated in 96 different conservation easement transactions resulting in over $2 billion of federal tax deductions. (Doc. 1 at 2–3.) The Government alleges that defendant Zak "organized, promoted, and sold the conservation easement syndicates through several entities over the years," and that she is responsible for approximately $381 million of the $2 billion in tax deductions. (Doc. 1 at 7, 3.) The Government further alleges that Zak,

> assisted in the organization and promotion of conservation easement syndicates by providing a number of services including: providing guidance in planning ownership structure, negotiating agreements with land trusts and appraisers, assisting in the highest and best

use determination, recommending legal counsel for legal and tax review, and managing the preparation and distribution of required IRS tax forms.

(Doc. 1 at 7–8.) The Government alleges that Clark provided appraisals of the land that overvalued the land substantially, knowing that the false appraisal was to be used to file for artificially-inflated tax returns. (Doc. 1 at 54–58.)

## III. STANDARD OF REVIEW

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 570).

Where a plaintiff alleges a claim of fraud, the claim must be considered

under the requirements of Rule 9(b). Fed. R. Civ. P 9(b). Rule 9(b) dictates that a plaintiff pleading a fraud claim must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007). Moreover, "in a case involving multiple defendants the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (internal citations omitted).

It is important to keep in mind the purposes of Rule 9(b). It serves to "provide defendant with fair notice of claim, to safeguard defendant's reputation, and to protect defendant against the institution of strike suits," *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 467 (5th Cir. 2015) (citation and quotations omitted), and serves a "screening function, standing as gatekeeper to discovery, a toll to weed out meritless fraud claims sooner than later." *Id.* (citation and quotations omitted); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359–60 (11th Cir. 2006) (describing purposes of Rule 9(b)). Rule 9(b) must be applied in a "nuanced" fashion on a "case-by-case" basis. *United States ex rel. Mastej v. Health Mgmt. Assoc., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014).

## IV.   DISCUSSION

In many respects, this is not a normal case. Defendants generally do not dispute participating in the activities that the Government alleges in the complaint. Rather, defendants and the Government have diametrically-opposed positions as to whether those activities are in fact lawful. Defendants believe their activities were lawful and allowed by the tax code. The Government believes the activities unlawfully exploited a portion of the tax code, and that by causing false statements to be filed in the income tax returns of their "investors," defendants have defrauded the investors and the Government itself. With that context in mind, the Court looks now to the issue at hand: whether the Government's complaint adequately pleads sufficient factual material to state a claim for relief against defendants Zak and Clark.

Defendant Zak seeks to dismiss all counts except Count III. She argues that Counts I and IV should be dismissed, "because they fail to satisfy the pleading requirements of Rule 9(b)[.]" (Doc. 31-1 at 2.) Zak further seeks to dismiss Count II, because the relevant section of the Internal Revenue Code applies only to persons who "prepare" appraisals, and therefore does not apply to her. (Doc. 31-1 at 1–2.) Lastly, Zak argues that Count V must be dismissed because it is untimely, fails to satisfy the requirements of Rule 9(b), and constitutes an excessive fine in violation of the Eighth Amendment. (Doc. 31-1 at 2.)

Defendant Clark moves to dismiss all counts except Count II. (Doc. 41-1 at 2.) As to Counts I, IV, and V, defendant Clark simply joins those portions of

defendant Zak's motion to dismiss, "because they apply with equal force to [defendant Clark]." (Doc. 41-1 at 3.) Clark challenges Count III, saying that it only applies to a "tax return preparer" and, because he did not prepare any tax returns, it therefore does not apply to him. (Doc. 41 at 3–10.)

The Court next addresses each Count of the complaint.

### Count I – 26 U.S.C. § 6700

 Count I of the Complaint alleges that defendants violated 26 U.S.C. § 6700. (Doc. 1 at 63.) Section 6700 imposes a penalty on any person involved in promoting abusive tax shelters, including by organizing such a shelter, participating in a sale relating to such a shelter, or "mak[ing] or caus[ing] another person to make or furnish . . . a gross valuation overstatement as to any material matter," among other acts. 26 U.S.C. § 6700.

The Government claims that defendants violated 26 U.S.C. § 6700(a)(2)(A) when they "made and furnished false and/or fraudulent statements regarding the securing of a tax benefit by reason of participating in the conservation easement syndication scheme and the amount of that tax benefit in the form of a conservation easement deduction." (Doc. 1 at 64–65.) The Government also contends that the defendants "knew and had reason to know that these statements were false or fraudulent within the meaning of 26 U.S.C. § 6700(a)(2)(A)." (Doc. 1 at 65.)

Zak challenges Count I, arguing that because Count I alleges fraud it therefore must meet the heightened pleading standard of Rule 9(b). (Doc. 31-1 at

12–18.) According to Zak, the complaint fails to distinguish between the transactions that she allegedly engaged in and the several dozen that she did not, and that the complaint did not identify *when* 40 of the transactions took place. (Doc. 31-1 at 12–13.) She further argues that the complaint alleges false statements were made, but does not identify by who, or to whom, or when, or to which transaction the statements related. (Doc. 31-1 at 13.) Zak argues that the complaint fails to apprise her of the "precise misconduct" with which she is being charged, preventing her from having "sufficient information to formulate a defense" to the counts. (Doc. 31-1 at 15 (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002).) Zak argues that the Government fails to allege the "who, what, when, where, and how" of the allegedly fraudulent conduct. (Doc. 31-1 at 11 (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).)

Zak is correct that the complaint alleges over 90 instances of alleged fraud, but only provides detailed factual averments as they pertain to three transactions. (*See* Doc. 1 at 24–38). She is also correct that the complaint does not identify with strict particularity the exact dates or parties to each and every transaction. However, the Government adequately lays out factual allegations which tend to demonstrate the main recurring aspects and elements of the scheme, sufficiently apprising defendants of the behavior in which they allegedly participated that is challenged by the Government.

The Government provides three prototypical exemplars to describe the major aspects of the scheme, with some variations to reflect the adaptation of the scheme over time and place. For example, beginning on page 24 of the Complaint, the Government outlines the steps undertaken in formation and execution of "Partnership Z." (Doc. 1 at 24–27.) In this portion of the Complaint, the Government alleges that three unnamed "Sponsors" organized Partnership Z on October 17, 2008 as a Georgia LLC with a principal place of business in Garden City, Georgia. (Doc. 1 at 24.) The Government alleges that Partnership Z owned approximately 140 acres of land in Georgia. (*Id*.) On December 29, 2009, the three Sponsors allegedly organized a private sale of 99 units of ownership in Partnership Z, selling each unit at a price of $8,620, plus an "operating reserve capital contribution" of $1,010 per unit. (*Id*. at 24–25.) On December 31, 2009, Partnership Z allegedly converted 135 acres of its land to a conservation easement. (*Id*.) The Government alleges that Zak and the Sponsors hired an appraiser to value the land, and the appraiser provided a report on January 11, 2010 as to the land's value on December 1, 2009. (*Id*. at 26.) The Government next alleges that the appraiser knowingly overvalued the land by 200 percent or more of the correct value amount. (*Id*.) The appraisal allegedly valued the land at $4,592,000. (*Id*.) This amount allegedly created a tax deduction for each partner of $4.76 per $1.00 invested in the partnership (including the operating reserve capital contribution). (*Id*.) According to the Government, this means that if a partner purchased 10 units for a total of $96,300, that partner would receive a tax deduction on their personal

income taxes of over $459,000. (*Id*. at 26–27.) The Government provides a table showing the "Ownership Interest" percentage and "Noncash Contribution" (the amount each partner received in tax refund) of sixteen individuals, alleged to be the 16 partners of Partnership Z. (*Id*. at 26–27.) The ownership percentages range from 1.0% to 22.0%, and the noncash contributions range from $45,920 to $1,010,240 among the sixteen alleged partners. (*Id*. at 27.) The Government alleges that Defendant Zak assisted in all aspects of the formation and sale of Partnership Z, and personally purchased units of ownership in the Partnership as well. (*Id*. at 25.) Defendant Zak allegedly also received a portion of the tax deduction received by Partnership Z when it converted its real property to a conservation easement. (*Id*.)

Even under the heightened standard of Rule 9(b), the Government's pleading adequately apprises defendants with sufficient specificity of the type of conduct which makes up the alleged illegality. The Government's complaint satisfies the heightened pleading standard of Rule 9(b) as it applies to these allegations of fraud which are widespread, complex, and occurring over a long period of time. Accordingly, defendants' motions to dismiss (Doc. 31, Doc. 41) as the pertain to Count I are **DENIED**.

### Count II – 26 U.S.C. § 6695A(a)

In Count II, the Government alleges that Zak violated 26 U.S.C. § 6695A(a). (Doc. 1 at 66.) Section 6695A(a) imposes a penalty on any person who "prepares an appraisal of the value of property" that they knew or reasonably should have

known was to be used in connection with a return or a claim for refund, and the claimed value of the property results in a substantial valuation misstatement or a gross valuation misstatement. (*See* Doc. 1 at 66; *and* 26 U.S.C. §6695A(a).) A substantial valuation misstatement is defined as "150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis[.]" 26 U.S.C. § 6662(e)(1)(A). A gross valuation misstatement is defined as 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis. 26 U.S.C. § 6663(h)(2)(A)(i).

The Government specifically alleges that Zak "assisted in appraising the conservation easements[, and] in making the highest and best use determinations[.]" (Doc. 1 at 67.) Zak challenges this count, saying that the Government "never avers facts stating that Ms. Zak has ever prepared an appraisal." (Doc. 31-1 at 6.) Zak contends that section 6695A only applies to a person who *prepares* an appraisal, and does not extend to a person who merely *assists* in an appraisal – as the Government alleges Zak did.

In support, Zak points to adjacent sections of the statute which expressly incorporate the "assists" language. (Doc. 31-1 at 7.) For example, she cites section 6700, which pertains to a person who "organizes . . . or assists in the organization of" certain abusive tax shelter entities or arrangements. 26 U.S.C. § 6700(a)(1)(A). Zak contends that the absence of the "assists" language in section 6695A, in light of its usage in other portions of the statute, "is a strong indication that plaintiff's addendum [of the word assists] is not what Congress meant." (Doc. 31-1 at 7.)

The Government responds by highlighting paragraphs 194 and 195 in their complaint. (Resp., Doc. 47 at 31–33; Doc. 1 at 67.) Paragraph 194 of the complaint says "Defendants Zak and Clark knew or reasonably should have known that the appraisals *they prepared* would be used in connection with a federal tax return or a claim for refund." (Doc. 1 at 67 (emphasis added).) Paragraph 195 begins "[t]he appraisals that Defendants Zak and Clark prepared . . . " (*Id.*) The Government argues that these paragraphs clearly allege that Zak not only assisted in preparing the appraisals, but that she prepared them herself, satisfying the requirement of section 6695A. (Doc. 47 at 31–33.) The Government says that paragraph 193 – which uses the "assisted" language – should not be read in "isolation, but in the context of the Complaint." (Doc. 47 at 32.)

Indeed, the Court reads the complaint as a whole, and does not consider each paragraph in isolation of every other paragraph. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 n.11 (11th Cir. 2005) ("We read the complaint as a whole."). When reading the whole complaint, the Court observes extensive factual representations as to Clark's appraisal-related activities. For instance, the Government avers that Clark "is a real property appraiser and is a certified appraiser in multiple states[.]" (Doc. 1 at 9.) The Government alleges that Clark also "owns and operates" a firm that "specializes in historical preservation and conservation easement appraisals[.]" (*Id.*) Clark also allegedly speaks at conservation easement seminars and gives presentations about appraisal techniques. (*Id.*)

As to Defendant Zak, the Government does not make any similar allegations as to her appraisal activities, nor does it establish an adequate factual basis for alleging that Zak is an appraiser under the statute. Instead, the Government says that Zak "is a conservation manager, consultant, and project manager who assists in the planning and execution of conservation easement donations and conservation easement syndicates." (Doc. 1 at 7.) The Government says that Zak provides "a number of services" in her role as conservation manager, "including: providing guidance in planning of ownership structure, negotiating agreements with land trusts and appraisers, assisting in the highest and best use determination, recommending legal counsel for legal and tax review, and managing the preparation and distribution of required IRS tax forms." (Doc. 1 at 7–8.) The next reference to Zak that relates to appraisals is Paragraph 61, which, in describing the steps of the alleged scheme, states "[g]enerally, the initial services provided by the conservation manager [i.e., Zak] include hiring an appraiser and assisting with the determination of the highest and best use of the property to be used in the appraisal." (Doc. 1 at 18–19.) Immediately following this, the Government alleges that "[t]he appraiser[ ] prepares an 'initial valuation' of the proposed conservation easement."  (Doc. 1 at 19.) Further down, the Government says, "An appraiser, generally the same person who provided the initial valuation, finalizes the value of the conservation easement by preparing a 'final appraisal' that purports to be a qualified appraisal . . . . On occasion, the LLC hires a second appraiser (the review appraiser) to provide a 'review' of the appraiser's initial or

final valuation and support the value provided by the original appraiser." (Doc. 1 at 21.) The appraiser also, according to the Government, "prepares a supplemental statement to accompany the Form 8283 and submits a copy of the final appraisal to the LLC[.]" (Doc. 1 at 21.)

The next mention of any appraisal activity is in Paragraph 75, where the Government avers that "[s]ponsors A, B, and C, with the assistance of Zak, hired an appraiser to value the conservation easement." (Doc. 1 at 26.) In several other paragraphs throughout the complaint, the Government alleges that Clark was often hired as an appraiser, and that he or another unnamed appraiser made knowingly false appraisals that overvalued the land. (Doc. 1.) It is not until Paragraph 157 that the Government mentions defendant Zak in connection with appraisals. (Doc. 1 at 58.) At this paragraph, the Government avers that Zak "guided appraisal methodology and execution and assisted in highest [and] best use market determination[.]" (Doc. 1 at 58 (punctuation omitted).) She also, according to the complaint, "assisted in the preparation of IRS tax forms, including the Form 8283 and reviewed the valuation statements made in the Forms 8283 and appraisals that were then furnished to individual customers." (Doc. 1 at 58.) The next mention of Zak in connection with appraisals comes in the paragraphs associated with Count II. (Doc. 1 at 67.)

The complaint lays out several detailed paragraphs of allegations that defendant Clark is an appraiser, and that he knowingly provided appraisals that overvalued the land parcels. The complaint goes in to specifics about the method

and manner through which Clark provided these overvaluations. (*See, e.g.*, Doc. 1 at 56 ("Defendant Clark improperly used the income approach and/or the subdivision analysis in his appraisals[.]").) But, even when taken as a whole, the portions of the complaint alleging Zak's involvement in "assisting" the appraisals are conclusory. The Government repeatedly alleges that Zak "assisted" in the appraisals or "reviewed" the statements provided by Clark or other appraisers, but it does not provide any specific factual allegations as to how that qualifies her for liability as an appraiser under the statute.

In sum, the complaint fails to state adequate specific factual allegations to support its conclusory claim that Zak is an "appraiser" per 26 U.S.C. § 6695A. For that reason, defendant Zak's motion to dismiss Count II as to her only is **GRANTED** and Count II as it relates to defendant Zak only is **DISMISSED without prejudice**.

### Count III – 26 U.S.C. § 6694

In Count III, the Government alleges that Clark violated 26 U.S.C. § 6694. "Section 6694 imposes penalties on tax return preparers for understatements of tax liability due to unreasonable positions, as well as understatement of tax liability due to willful or reckless conduct." (Doc. 1 at 68.) The Government goes on to say that a "tax return preparer" is "any person who prepares for compensation, any return of tax or any claim for refund of tax *including the preparation of a substantial portion* of a return or claim for refund." (Doc. 1 at 69 (citing 26 U.S.C. § 7701(a)(36)) (emphasis in original).)

Clark's argument relating to Count III is very similar to Zak's argument relating to Count II. Clark contends that a "tax return preparer," as the term is used in section 6694, refers to "any person who prepares for compensation a tax return or a substantial portion of a tax return." (Doc. 41-1 at 3 (citing 26 U.S.C. § 7701(a)(36).) Clark argues that he only provides valuation services, and does not prepare tax returns or substantial portions of tax returns. (*Id.*) He is aware that his appraisal will be used as part of a tax return, but says that the Government's understanding of the term "tax return preparer" would render every appraiser a tax return preparer, and obscure the statutory schemes which govern tax return preparers and appraisers separately. (Doc. 41-1 at 4.) Clark also points to numerous other statutes, regulations, and IRS commentary that he believes show the IRS's intent to treat tax return preparers and appraisers differently. (Doc. 41-1 at 3–10.) Clark argues that the appropriate approach was the one taken by the Government in Count II as to his service as an appraiser, which he does not challenge. (Doc. 41-1 at 10).

In its response, the Government says that "[t]he preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund." (Doc. 50 at 19 (citing 26 U.S.C. § 7701(a)(36).) It is the Government's position that the appraisals provided by Clark represent a "substantial portion" of the returns claimed in this case, and that he knew his appraisals were necessary to support the tax claims. (Doc. 50 at 19–21.) The Government returns to what it views as the objective of section 6694, which is "to

penalize the person who is responsible as a substantive matter for the way in which a return is prepared." (Doc. 50 at 23 (citing *Goulding v. United States*, 957 F.2d 1420, 1426–27 (7th Cir. 1992).)

The facts alleged in the complaint lay out a scheme in which parcels of land are knowingly appraised at values far greater than their actual value. The asserted facts in the complaint also clearly allege that the appraisal of the land parcels is perhaps the single most important aspect of the scheme – without the inflated appraisals, the tax returns would not be as substantial, rendering the inducement to investors limp. The Government has adequately pleaded sufficient factual matter to state a claim that Clark's appraisals represented a "substantial portion" of the tax returns, and therefore he may be liable under section 6694.

Defendant Clark's motion to dismiss as it pertains to Count III is therefore **DENIED**. (Doc. 41.)

### Count IV – 26 U.S.C. § 7402

In Count IV, the Government seeks entry of an injunctive order to prevent defendants from continuing to engage in the conduct alleged throughout the other portions of the complaint. (Doc. 1 at 71–72.) In other words, Count IV outlines a remedy that the Government seeks to obtain if it ultimately prevails in this case, but does not actually bring an independent substantive claim under any section of the statute. (Doc. 1 at 72 (referencing 26. U.S.C. §§ 6700, 6701, 6695A, and 6694).) Each of these sections – except for section 6701 – is pleaded elsewhere in the complaint as a separate count. (Doc. 1 at ¶ 176 (26 U.S.C. § 6700); ¶ 191 (26 U.S.C.

§ 6695A); ¶ 202 (26 U.S.C. § 6694).) Count IV is a remedy, not a cause of action, and it would be premature to dismiss the remedy at the pleading stage. Accordingly, the Court **DENIES** the motions to dismiss as they relate to Count IV, with the understanding the defendants may yet challenge the remedy sought in Count IV again at a future date. (Doc. 31; Doc. 41).

### Count V – 26 U.S.C. § 7402

In Count V, the Government again lists a remedy – disgorgement – as an individual count, but does not plead any underlying substantive violation of the statute that is not already pleaded elsewhere in the complaint. (Doc. 1 at 72.) In reference to this issue, defendants argue that disgorgement is a penalty, and therefore is subject to the five-year statute of limitations in 28 U.S.C. § 2462. Defendants argue that because the only transaction dates mentioned in the complaint fall outside of five years[2] this remedy is simply unavailable to the Government, and should be dismissed. Defendants cite the Supreme Court's unanimous decision in *Kokesh v. SEC*, providing that the five-year statute of limitations should apply to claims for disgorgement, because disgorgement is a sanction and not an equitable remedy. (Doc. 31-1 at 26 (citing *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017).)

Although some of the specific transactions identified in the Complaint may be barred by the statute of limitations, the Court finds it is premature to consider

---

[2] In its complaint, the Government only specifically discusses transactions that took place in 2009, 2011, and 2012. (Doc. 1 at  ¶ 223–27; Zak Motion to Dismiss, Doc. 31-1 at 27–28.)

preventing this remedy as to other conduct falling within the alleged scheme at the pleading stage, for the same reasons as discussed relating to Count IV,. Accordingly, defendants' motions to dismiss [doc. 31; doc. 41] are **DENIED** as they pertain to Count V.

### V. CONCLUSION

Defendant Zak's Motion to Dismiss [Doc. 31] is **GRANTED** as to Count II of the complaint, and **DENIED** as to Counts I, IV, and V. Accordingly, Count II of the Complaint is **DISMISSED without prejudice** as to defendant Zak.

Defendant Clark's Motion to Dismiss [Doc. 41] is **DENIED** as to all counts.

The Court is concerned about the appropriate geographic scope of discovery for the case. The Government seeks leave to conduct 50 depositions, intending to conduct discovery in virtually every state. But the complaint itself only discusses transactions and LLCCs operating in a small number of states. Specifically, the Government alleges that "[d]efendants' collective 96 conservation easement syndications involve real property, primarily vacant and unimproved parcels, in the states of Alabama, Georgia, Indiana, Kentucky, North Carolina, South Carolina, Tennessee, and Texas." (Doc. 1 at 38.) In the next sentence, the Government alleges that the "customers" of the syndicates hale from "at least 45 different states and the District of Columbia." (*Id.*) At this stage, it seems that the Government has pleaded sufficient factual allegations to allow discovery relating to transactions in those named states (Alabama, Georgia, Indiana, Kentucky, North Carolina, South Carolina, Tennessee, and Texas). There is no specific

allegation in the complaint, however, that would justify allowing discovery in all 45 states in which the "customers" themselves live, especially if there is no allegation that the defendants transacted any conservation easement syndicates in those states. In any event, the Court is not prepared to authorize this broad scope of discovery based on the Complaint before it.

Pursuant to this Court's June 28, 2019 Order (Doc. 86), an **eight-month** discovery period commences upon entry of the instant order. Counsel may proceed with discovery, but shall be confined to fifteen (15) depositions per side, until further order of the Court.

A telephone conference is scheduled for Friday, January 10, 2020 at 10:30 a.m. to discuss case planning and any remaining discovery. Counsel are **DIRECTED** to file a joint amended scheduling order outlining what document discovery needs remain, and a plan for proceeding through the rest of discovery, **no later than January 6, 2020**. Counsel should be prepared to discuss on the January 10, 2020 telephone conference: (1) their plan and timeline for disclosure of expert witnesses and any accompanying expert reports, (2) a more specific justification for allowing any expansion in the number of depositions than has already be granted, (3) what specific documentary discovery has been accomplished and what remains outstanding.

**IT IS SO ORDERED** this 10th day of December, 2019.

**Amy Totenberg**
**United States District Judge**