IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-05744-AT |
| | ) | |
| NANCY ZAK, | ) | |
| CLAUD CLARK III, | ) | |
| ECOVEST CAPITAL, INC., | ) | |
| ALAN N. SOLON, | ) | |
| ROBERT M. MCCULLOUGH, | ) | |
| RALPH R. TEAL JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT CLAUD CLARK'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT, AND COUNTERCLAIM

### RESPONSE TO ALLEGATIONS

For the Court's convenience, the allegations in the complaint are reproduced below, and the answers appear in boldface after each allegation.[1] Any allegation not specifically admitted is denied.

---

[1] Given the length of the Plaintiff's Complaint filed on December 18, 2018 (the "Complaint") and its structure, Defendant Claud Clark has interlineated the allegations of the Complaint and his responses to them in an effort to convenience the Court and all parties.

## NATURE OF THE ACTION

1.      Defendants organize, promote, or sell (or assist in the organization, promotion and sale of) a highly structured – and abusive – tax scheme involving the syndication of conservation easement donations. Defendants' "conservation easement syndication scheme" – as described herein – encourages Defendants' customers to "invest" in a conservation easement syndicate under the assumption that the syndicate will donate a conservation easement, claim a tax deduction for that conservation easement, and allocate a portion of that tax deduction to each customer who "invests" based on their "investment" in the syndicate.

**<u>Answer</u>: Deny. Claud Clark ("Mr. Clark") further denies that the so-called "conservation easement syndication scheme" has been adequately described in the Complaint or anywhere else, and avers that IRS Notice 2017-10, published January 23, 2017, identifies the following "syndicated conservation easement transactions" as tax avoidance transactions and listed transactions under 26 U.S.C. §§ 6111 and 6112 and 26 C.F.R § 1.6011-4(b)(2).**

> **SECTION 2. FACTS**
>
> A transaction described in this section is a listed transaction. An investor receives promotional materials that offer prospective investors in a pass-through entity the possibility of a charitable contribution deduction that equals or exceeds an amount that is two and one-half times the amount of the investor's investment. The promotional materials may be oral or written. For purposes of this notice, promotional materials include, but are not limited to, documents described in § 301.6112-1(b)(3)(iii)(B) of the Regulations. The investor purchases an interest, directly or indirectly (through one or more tiers of pass-through entities), in the pass-through entity that holds real property. The pass-through entity that holds the real property contributes a conservation easement encumbering the property to a tax-exempt entity and allocates, directly or through one or more tiers of pass-through entities, a charitable contribution deduction to the investor. Following that contribution, the investor reports on his or her federal income tax return a charitable contribution deduction with respect to the conservation easement.

2.      In reality, Defendants' conservation easement syndication scheme amounts to nothing more than a thinly veiled sale of grossly overvalued federal tax deductions under the guise of investing in a partnership.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this paragraph are denied.**

3.     In organizing, promoting, and selling their scheme, Defendants make (or cause others to make) statements about the allowance and amount of federal tax deductions a customer is entitled to claim based on their "investment" in the syndicate. But these statements are false, as explained in more detail below. As a result of the false statements made by or caused by Defendants, the customers claim improper and grossly overvalued federal tax deductions on their tax returns. Defendants make these statements, and cause others to make these statements, despite the fact that they knew or had reason to know that they were false.

**<u>Answer</u>: Deny.**

4.     Defendants also rely on grossly overvalued appraisals as part of their scheme. Defendants furnish, and cause others to furnish, statements regarding value to customers, including the "fair market value" of the conservation easements. Defendants' customers then use those valuations to claim highly inflated and overvalued federal tax deductions (in the form of noncash charitable contribution deductions) on their individual tax returns.

**<u>Answer</u>: Deny, and aver that none of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

5.     Collectively, since 2009, Defendants have organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 96 conservation easement syndicates that have resulted in over $2 billion of federal tax deductions (in the form of noncash charitable contribution deductions) reported by the syndicates. Of those 96 conservation easement syndicates and over $2 billion of tax deductions, each Defendant has organized, promoted, or sold (or assisted in the organization, promotion, and sale of) the following number of syndicates and associated tax deductions:

| Defendant | Number of Syndicated Conservation Easements | Federal Tax Deductions Reported by those Syndicates as "Partners' Distributive Share Items" |
|---|---|---|
| Nancy Zak | 42 | $381,268,644 |
| Claud Clark III | 58 | $1,855,235,588 |
| EcoVest Capital, Inc. | 51 | $1,708,222,000 |
| Alan N. Solon | 55 | $1,607,841,485 |
| Robert M. McCullough | 42 | $1,504,962,000 |
| Ralph T. Teal, Jr. | 45 | $1,594,323,000 |

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

6.     The United States brings this complaint pursuant to 26 U.S.C. §§ 7402, 7407, and 7408 to enjoin Defendants, and any other person or persons in active concert or participation with them, from, among other things:

**Answer: This paragraph purports to summarize relief sought by Plaintiff, and no response is required. To the extent that a response is deemed required, Mr. Clark denies the allegations in this paragraph, including all of its subparagraphs, and specifically denies that Plaintiff is entitled to any relief at all.**

a.     organizing, promoting, or selling (or assisting in the organization, promotion, or sale of) the "conservation easement syndication scheme," described herein, or any other plan or arrangement that encourages taxpayers to claim a deduction for a qualified conservation contribution under 26 U.S.C. § 170(h);

4

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.

  b.  participating (directly or indirectly) in the sale of any conservation easement syndicate, or any other plan or arrangement that encourages taxpayers to claim a deduction for a qualified conservation contribution;

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.

  c.  making or furnishing (or causing another to make or furnish) a statement about the allowance of any federal tax benefit as a result of participating in a conservation easement syndicate or any other plan or arrangement that encourages taxpayers to claim a qualified conservation contribution deduction;

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.

  d.  making or furnishing (or causing another to make or furnish) a gross valuation overstatement as to any material matter related to participating in a conservation easement syndicate or any other plan or arrangement that encourages taxpayers to claim a qualified conservation contribution deduction;

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied. None of Mr. Clark's appraisals have been found to have a gross valuation misstatement.

  e. organizing, promoting, or selling (or assisting in the organization, promotion, or sale of) any other plan or arrangement that advises or assists taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.

  f. in connection with organizing, promoting, or selling a plan or arrangement that advises or assists taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, making or furnishing (or causing another to make or furnish) false statements about the allowance of any federal tax benefit resulting from participating in the plan or arrangement;

**Answer**: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.

  g. in connection with organizing, promoting, or selling a plan or arrangement that advises or assists taxpayers to attempt to violate the internal revenue laws or unlawfully evade the

assessment or collection of their federal tax liabilities, making or furnishing (or causing another to make or furnish) a gross valuation overstatement as to any material matter related to participating in the plan or arrangement;

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied. None of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

h. preparing (or assisting in the preparation) of any federal tax return, or any document that may be filed in support of a tax return or other submission to the IRS claiming benefits resulting from a qualified conservation contribution under 26 U.S.C. § 170(h), including, but not limited to, Forms 8283 (appraisal summaries) or qualified appraisals;

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

i. preparing (or assisting in the preparation of) any federal tax return, or any document that may be filed in support of a tax return or other submission to the IRS that they know will result in the understatement of any tax liability or the overstatement of any federal tax refund;

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

> j.   facilitating any donation that is intended to qualify as a "qualified conservation contribution" under 26 U.S.C. § 170(h);

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

> k.   advising or representing any individual before the IRS with respect to any donation that is intended to qualify as a "qualified conservation contribution" under 26 U.S.C. § 170(h);

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

> l.   preparing (or assisting in the preparation of) any appraisal that is intended to be a "qualified appraisal" within the meaning of 26 U.S.C. § 170(f)(11)(E);

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

> m.   engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695A, 6700, or 6701; and

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

n.   engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this subparagraph are denied.**

7.   Further, pursuant to 26 U.S.C. § 7402, the United States seeks an order requiring, among other things, that all Defendants disgorge to the United States the gross receipts that they received from any source as a result of the conservation easement syndication scheme described herein, together with prejudgment interest thereon.

**Answer: This paragraph purports to describe other relief sought by Plaintiff, and no response is required. To the extent that a response is deemed required, Mr. Clark denies the existence of a "conservation easement syndication scheme," specifically denies that Plaintiff is entitled to any relief at all, and denies the remaining allegations of this paragraph.**

AUTHORIZATION

8.   This action has been requested by a delegate of the Secretary of the Treasury and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in this paragraph, and therefore those allegations are denied.**

JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402.

**Answer: Mr. Clark lacks knowledge or information sufficient to admit the allegations made in Paragraph 8, and therefore the allegations made in this paragraph are denied.**

10.    Venue is proper in this Court because the Defendants engaged in the penalty conduct at issue in this judicial district and a substantial part of the events giving rise to the claims herein occurred in this judicial district. 26 U.S.C. § 7408(a); 28 U.S.C. § 1391(b).

**Answer: Mr. Clark lacks knowledge or information sufficient to admit the allegations made in Paragraph 8 and therefore denies that venue is proper. The remaining allegations of this paragraph are denied.**

THE PARTIES

11.    Plaintiff is the United States of America.

**Answer: Admit.**

*Defendant Zak*

12.    Nancy Zak ("Zak") is a resident of the State of Georgia. Zak, individually and as the principal of several entities, is a conservation manager, consultant, and project manager who assists in the planning and execution of conservation easement donations and conservation easement syndicates. Zak has organized, promoted, and sold the conservation easement syndicates through several entities over the years, including Forever Forests, LLC ("Forever Forests"), Greenth, Inc., and Conservation Project Strategies, LLC.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

13.     On the website for her entity Forever Forests, Zak states that her career has focused on "conservation easements and their associated tax benefits since 1999." Zak advertises that she formed Forever Forests and "the creation of the basic structure now being followed in the industry in what are commonly called 'conservation partnerships'" after managing the preservation of several parcels of land through conservation easements for a Georgia real estate developer.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

14.     In her role as a conservation manager, consultant, and/or project manager, Zak assisted in the organization and promotion of conservation easement syndicates by providing a number of services including: providing guidance in planning of ownership structure, negotiating agreements with land trusts and appraisers, assisting in the highest and best use determination, recommending legal

counsel for legal and tax review, and managing the preparation and distribution of required IRS tax forms.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

15.    Between 2011 and 2014, Zak was a registered representative of two different broker-dealers: Strategic Financial Alliance and Arque Capital. Zak has also promoted and sold conservation easement syndicates outside of her work as a registered representative.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

16.    Zak has reaped substantial financial gain from her participation in the organization and sale of conservation easement syndicates as well as her conservation consulting services. Zak also purchased interests in several conservation easement syndicates and benefited from the improper and overvalued

conservation easement deductions she personally claimed on her federal income tax returns.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

17.    Zak is subject to this Court's jurisdiction because she resides in this judicial district.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

18.    Since 2009, Zak has been involved with at least 42 conservation easement syndicates as the conservation manager, project manager, and/or a seller of conservation easement syndicate interests.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not**

relate to any claim against Mr. Clark, no response is required. To the extent a

response is deemed required, Mr. Clark lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in this paragraph,

and therefore those allegations are denied.

_Defendant Clark_

19.     Claud Clark, III ("Clark") is a resident of Alabama. Clark is a real
property appraiser and is a certified appraiser in multiple states, including the State
of Georgia.

**Answer: Mr. Clark admits that he is an Alabama resident and an**

**appraiser who is licensed in multiple states, including Georgia.**

20.     Clark owns and operates Claud Clark, III, P.C., formerly known as
Clark-Davis, P.C., a real estate appraisal firm based in Magnolia Springs,
Alabama. Clark advertises on the Claud Clark III, P.C. website that the firm
specializes in historical preservation and conservation easement appraisals
throughout the United States.

**Answer: Mr. Clark admits the allegations in the first sentence that he**

**owns and operates Claud Clark, III, P.C., based in Magnolia Springs,**

**Alabama and formerly known as Clark-Davis, P.C. Mr. Clark denies the**

**remaining allegations of this paragraph.**

21.     Clark advertises on the Claud Clark III, P.C. website that he has
completed more than 200 conservation easement appraisals. Clark also promotes
his services and experience through speaking engagements at conservation
easement seminars. Clark has made presentations about appraisal techniques used

in valuing conservation easements and appraisal issues that have arisen in specific cases.

**Answer: Mr. Clark admits that he has completed more than 200 appraisals of conservation or historic easements and that his website has said so. Mr. Clark admits that he has spoken publicly about the appraisal of conservation easements. The remaining allegations of this paragraph are denied.**

22.    As an appraiser of conservation easements, Clark provides an opinion of fair market value of the conservation easement, which is documented in an appraisal report. Clark's statements of the fair market value of the conservation easement are used by the conservation easement syndicates in the promotion and sale of the syndicates. Specifically, Clark's opinions of value are furnished to prospective customers and used to show the anticipated return on investment a customer can expect through tax savings.

**Answer: Mr. Clark admits the allegations in the first sentence of this paragraph. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

23.    Since 2009, Clark's opinions of value as documented in appraisal reports have been used as the basis for the tax deductions reported by at least 58 conservation easement syndicates (and ultimately claimed as deductions by the individual customers of those syndicates). Copies of Clark's appraisal reports were attached to these customers' filed tax returns.

**Answer: Mr. Clark admits that he completed the "Declaration of Appraiser" in Section B, Part III, of Form 8283 for many of his clients and that he expected that his appraisals would be attached to tax returns that included the Forms 8283. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

24.     Clark has reaped substantial financial gain from his participation in the organization, promotion, and sale of conservation easement syndicates.

**Answer: Mr. Clark admits that he earned reasonable fees for his appraisals. Mr. Clark denies that such fees were "substantial" to the extent the government uses that word as a euphemism for "excessive." Mr. Clark denies the remaining allegations of this paragraph.**

25.     Clark is subject to this Court's jurisdiction because he has appraised real property and conservation easements within the State of Georgia and within this judicial district. Clark's clients include limited liability companies with their principal place of business and operational headquarters in Georgia. Clark has also participated directly or indirectly in the sale of conservation easement partnership interests to residents within this judicial district.

**Answer: Mr. Clark admits that he has appraised property in Georgia and that he has had clients in Georgia. Mr. Clark denies the remaining allegations of this paragraph.**

_Defendants Solon, EcoVest, McCullough and Teal_

26.    Alan Solon ("Solon") is a resident of the State of Georgia and a part owner of EcoVest. Solon currently serves as the President, Chief Executive Officer and a manager of EcoVest. Solon is also on the Board of Directors of EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

27.    Prior to working at EcoVest, Solon served as the Chief Marketing Officer of SFA Holdings, Inc., a holding company formed to operate financial service businesses through its subsidiaries which included: (1) The Strategic Financial Alliance, Inc., a broker-dealer for which defendant Zak was at one time a registered representative; (2) SFA Insurance Services, Inc., an insurance agency; and (3) Conservation Resources, Inc.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

28.     Conservation Resources, Inc. was formed on December 2, 2010.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

29.     From the date of its formation until at least 2012, Conservation Resources, Inc. provided conservation easement consulting services and assisted in the organization, promotion, and sale of conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

30.     Solon served as President of Conservation Resources, Inc. until August 2012.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not**

relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.

31.     Conservation Resources, Inc. assisted primarily on the organization, promotion, and sale of conservation easement syndicates offered through its related company, Strategic Financial Alliance, Inc.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

32.     In his role at Conservation Resources, Inc., Solon organized, promoted, and sold (or assisted in the organization, promotion, and sale of) conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

33.   After the formation of EcoVest in 2012, Solon continued to organize, promote, and sell conservation easement syndicates through EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

34.   Solon has reaped substantial financial gain from his participation in the organization and sale of conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

35.   Since 2009, Solon has organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 55 conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

36.     Solon is subject to this Court's jurisdiction because he resides in this judicial district.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

37.     In 2012 EcoVest Capital, Inc. ("EcoVest") was formed as a Delaware corporation. EcoVest has a principal place of business and operational headquarters located at 3424 Peachtree Road NE, Suite 1550, Atlanta, Georgia. EcoVest offers and sponsors real estate investments focused on conservation, including conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

38.    EcoVest functions and communicates through Alan Solon, Robert McCullough, Ralph Teal, and other individuals. EcoVest has at least 17 employees including Solon and McCullough.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

39.    EcoVest, directly and indirectly through subsidiaries, organizes, promotes, and sells conservation easement syndicates. Among other things, EcoVest provides consulting services regarding proposed conservation easement syndicates and assists in the securing of a land trust, appraiser, and the documentation used by the syndicates and customers to claim the noncash charitable contribution deductions on their tax returns.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

40.     EcoVest sponsors specific conservation easement syndicate offerings that are sold through broker-dealers. EcoVest has worked with numerous broker dealers on its conservation easement syndicate offerings, including: Strategic Financial Alliance, Arque Capital, and Triloma Financial Group.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

41.     Between 2012 and 2013, Defendant Zak was a part-owner and employee of EcoVest.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

42.     Between 2012 and 2013, Defendant Zak, when working as a registered representative of Strategic Financial Alliance and/or Arque Capital, sold conservation easement syndicate offerings sponsored by EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

43.     EcoVest has reaped substantial financial gain from its participation in the organization and sale of conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

44.     Since 2012, EcoVest or its affiliates, organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 51 conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

45.     EcoVest is subject to this Court's jurisdiction because it is a resident of and conducts business in this judicial district.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

46.     Robert McCullough ("McCullough") is a resident of the State of Georgia. McCullough currently serves as the Senior Vice President and CFO of EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph,**

**and therefore those allegations are denied.**

47.    McCullough, directly and indirectly, including through EcoVest, organizes, promotes, and sells conservation easement syndicates. McCullough has reaped substantial financial gain from his participation in the organization and sale of conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph,**

**and therefore those allegations are denied.**

48.    Since 2009, McCullough has organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 42 conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

49.    McCullough is subject to this Court's jurisdiction because he resides in this judicial district.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

50.    Ralph Teal ("Teal") is a resident of South Carolina and part owner of EcoVest. Teal currently serves on EcoVest's Board of Directors.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

51.    Teal, directly and indirectly, including through EcoVest and other companies that he owns, organizes, promotes and sells conservation easement

syndicates. Teal has reaped substantial financial gain from his participation in the organization and sale of conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

52.    Since 2009, Teal or his affiliated entities, organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 45 conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

53.    Teal is subject to this Court's jurisdiction because Teal personally and/or through agents, including EcoVest, transacts business in the State of Georgia.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

Conservation Easements Generally

54.    A conservation easement is a legal agreement between a landowner and another party, generally a land trust or government agency, that permanently restricts the development and/or use of land with the purpose of achieving certain conservation or preservation goals.

**Answer: Mr. Clark states that conservation easements, including the tax implications of such arrangements, are defined by law. To the extent that Plaintiff's summary allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

55.    In the federal tax context, while a taxpayer may take a deduction for any charitable contribution made during the taxable year (subject to certain limitations), a deduction is generally not allowed for a taxpayer's contribution of a partial interest in property. The Internal Revenue Code provides for certain exceptions where a deduction for the donation of a partial interest in property is permitted, one of which is for the donation of a "qualified conservation contribution."

**Answer:** **This paragraph contains legal assertions to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

56.    A "qualified conservation contribution" is defined as a contribution (A) of a qualified real property interest, (B) to a qualified organization, (C) made exclusively for conservation purposes. Before a deduction can be claimed, however, certain criteria must be met, as discussed further herein.

**Answer:** **This paragraph contains legal assertions to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

Defendants' Scheme Hinges Upon an Entity Taxed as a
Partnership

57.    Defendants' conservation easement syndication scheme, as described in this Complaint, hinges upon the use of an entity taxed as a partnership under subchapter K of the Internal Revenue Code. Defendants use entities organized as limited liability companies ("LLCs") under state law. Each conservation easement syndicate is a state law entity that is taxed as a partnership, a pass-through entity, for federal tax purposes. Without the use of an entity taxed as a partnership, Defendants would be unable to deliver the advertised tax deductions to their prospective customers and, as described in more detail below, Defendants knew or had reason to know that.

**Answer:** **Mr. Clark denies the existence of a "conservation easement syndication scheme" and denies that he advertised tax deductions to anyone. Mr. Clark lacks knowledge or information sufficient to form a belief as to the**

**truth of the remaining allegations in this paragraph, and therefore those**

**allegations are denied.**

58.    An entity taxed as a partnership is not liable for income tax; instead, its partners are liable for income tax in their separate or individual capacities based on the income, losses, deductions, or credits that flow from the entity. Because of the structure in which partnerships "pass through" income and losses to their partners, they are commonly referred to as "pass through" or "flow through" entities.

**Answer: This paragraph contains legal assertions to which no response**

**is required. To the extent that allegations in this paragraph are in any way**

**inconsistent with the law, those allegations are denied.**

59.    Each partner takes into account his or her distributive share of the partnership's income or loss and any "separately stated items" in computing his or her income tax liability. "Separately stated items" are specific items of income, gain, loss, deductions and/or credits that a partner must account for separately; these items are not taken into account when computing the partnership's income or loss for a tax year. Charitable contributions (as defined in section 170(c)) constitute a "separately stated item."

**Answer: This paragraph contains legal assertions to which no response**

**is required. To the extent that allegations in this paragraph are in any way**

**inconsistent with the law, those allegations are denied.**

60.    Although partnerships do not pay federal income tax, partnerships still have tax filing requirements. Specifically, partnerships are required to file an annual return, Form 1065 (U.S. Return of Partnership Income) that reports the partnership's income, deductions, gain, losses, etc. The partnership is also required to furnish statements, or Schedules K-1, to its partners (and the IRS) reporting each

partner's distributive share of partnership income or loss, and separately stated items, among other things.

**Answer: This paragraph contains legal assertions to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

The Steps in Defendants' Conservation Easement
Syndication Scheme

61.    Defendants' conservation easement syndication scheme is highly structured and typically involves multiple entities. At the very least, the scheme involves one LLC (or other state law entity) taxed as a partnership in which customers "invest." Defendants market (or assist in marketing) the LLC interests to potential "customers." Defendants' scheme has evolved over the years and been executed in different iterations and permutations, but the general pattern of the conservation easement syndication scheme is as follows:

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations in this paragraph.**

   a. Step One: A "sponsor" creates a conservation easement syndicate (LLC) or identifies an existing LLC that can be turned into a conservation easement syndicate. The LLC is taxed as a partnership. If the LLC does not own the real property at issue, the real property is contributed by its owners in exchange for the LLC interests in a transaction that is considered a "nonrecognition" transaction for federal income tax purposes. This means that the parties to the transaction do not have to recognize the gain or loss on the transaction for federal tax purposes.

**Answer: Deny.**

b.   Step Two: The LLC acts through a manager. The manager is generally the sponsor or an employee, agent, or subsidiary of the sponsor. The LLC engages the services of a conservation manager who assists in the planning, organization, and execution of a conservation easement. As part of these services, the conservation manager contacts a land trust and works in conjunction with the land trust to draft the deed of conservation easement and the baseline documentation. Baseline documentation that describes and depicts the property at the time of the donation is required. Generally, the initial services provided by the conservation manager include hiring an appraiser and assisting with the determination of the highest and best use of the property to be used in the appraisal.

**Answer:** **Deny.**

c.   Step Three: The appraiser, prepares an "initial valuation" of the proposed conservation easement. Here, in creating their initial valuation, the appraisers utilize unrealistic assumptions, violate the standards governing appraisal practice and otherwise prepare valuations that grossly overvalue the conservation easement. This initial valuation is used to market and sell the LLC interests. The appraisers know that their valuation will be used in this manner.

**Answer:** **Deny.**

d.   Step Four: The LLC or conservation manager engages a law firm to provide a tax opinion letter, confidential offering summary or private placement memorandum, and other transactional documents (subscription agreements for purchasing LLC units, operating agreement(s) of the LLC, redemption agreements, etc.) to be used in marketing and selling the LLC interests. The marketing materials include the initial valuation and typically state that the land trust has preliminarily accepted the draft deed of conservation easement.

**Answer:** **Deny.**

e.   Step Five: The LLC interests are marketed and sold as securities that are exempt from registration under Regulation D of the Securities Act. The LLC interests are generally sold in an "all or nothing" or "minimum/maximum" offering, meaning that a specific number of units must be subscribed or the closing will not take place. The LLC interests are sold either privately (through accountants, return preparers, financial advisors, and/or Defendants) or through broker-dealers. The LLC interests are generally marketed to taxpayers who, without the deductions stemming from the LLC interests, would be in one of the highest federal income tax brackets.

**Answer: Deny.**

f.   Step Six: Prospective customers are given an offering package with the marketing materials and transactional documents, including the confidential offering summary or private placement memorandum, tax opinion, operating agreement(s), subscription agreement, and redemption agreement. The offering package includes the anticipated value of the conservation easement, the anticipated value of the corresponding tax deduction (as determined by the preliminary appraisal,) and states that a draft deed of conservation easement has been approved by a land trust. Copies of the preliminary appraisal and draft deed are not provided, but are available for review by prospective customers. The offering package includes an example of the tax benefit or a "tax savings analysis" of a customer's investment. The "tax savings analysis" explains the return on investment by quantifying the amount of tax benefits to be received for every dollar "invested" like in the following example:



**SAVE YOUR TAXES—MAKE THEM GREEN!** — *page 2*
*private action preserving private lands*

*Here's a Simplified Savings Example:*

*You participate in a project that will produce $2 million in deductions and $250,000 in state tax credits for you. These tax benefits will have the following values for someone in the highest brackets (using GA as an example):*

| | |
|---|---|
| Amount of Tax Deductions | $2,000,000 |
| Combined Federal & State Tax Rates | 41% |
| Federal & State Tax Savings (cash value) | $ 820,000 |
| State Tax Credit | $ 250,000 |
| Total Federal & State Tax Savings (cash value) | $1,070,000 |
| Your Cost — varies by project, say (these are funds you would have otherwise sent to the government) | $ 750,000 |
| **Simple Return** | **43%** |

Plus your residual value in the land for recreation, hunting, limited development...

**Answer:** **Deny.**

    g.   Step Seven: Each customer who wants to purchase LLC interests must fill out certain transactional documents, including a subscription agreement, indicating the number of units to be purchased. The customer must also certify that the customer is an "Accredited Investor" as defined by securities law. Broker-dealers or the syndicate's sponsor may require prospective customers to complete additional forms.

**Answer:** **Deny.**

    h.   Step Eight: After all LLC interests are subscribed and accepted by the LLC, the closing transaction is executed. Customers wire money to the LLC through a bank designated by the LLC or the sponsor and proceeds are distributed as described in the offering documents. The LLC uses the proceeds to pay fees and expenses, redeem the membership interests of the original LLC members, and to set up an operating account and an audit reserve fund.

**Answer:** **Deny.**

  i. Step Nine: Shortly after closing, the LLC's manager makes a recommendation to the members regarding the use of the property – to place a conservation easement over the property. The LLC then executes a conservation easement over the property.

**Answer: Deny.**

  j. Step Ten: An appraiser, generally the same person who provided the initial valuation, finalizes the value of the conservation easement by preparing a "final appraisal" that purports to be a qualified appraisal (as defined in 26 U.S.C. § 170 and the regulations thereunder). The appraiser generally uses the same flawed assumptions and methodology as used in the initial valuation to arrive at approximately the same grossly overstated value. On occasion, the LLC hires a second appraiser (the review appraiser) to provide a "review" of the appraiser's initial or final valuation and support the value provided by the original appraiser.

**Answer: Deny.**

  k. Step Ten: A return preparer prepares the LLC's tax return, Form 1065 and accompanying schedules reporting the conservation easement as a charitable contribution. As part of this process, the return preparer also prepares the Schedules K-1 for each customer/LLC member on which the customer's share of the conservation easement deduction is reported. As part of the Form 1065, the LLC files a Form 8283 (appraisal summary), which must be signed by the appraiser and the land trust (or other organization to which the conservation easement was donated). The appraiser also prepares a supplemental statement to accompany the Form 8283 and submits a copy of the final appraisal to the LLC with the knowledge that it will be used to support a charitable contribution deduction reported on the Form 1065 and ultimately claimed by the individual customers.

**Answer: Deny.**

l.  Step Eleven: Customers file their income tax returns, Forms 1040, reporting overvalued charitable contribution deductions arising from the conservation easements. The customers receive copies of their Schedules K-1, Forms 8283 (appraisal summaries), supplemental statements, and appraisal reports from the LLC and submit them with their income tax returns as support for the improper and overstated deductions claimed. The improper and overstated deductions ultimately reduce the customers' reported tax liabilities.

**Answer**: **Deny.**

62.     Defendants' conservation easement syndication scheme has evolved over time and is now structured to include tiered-entities (the "tiered-entity structure"). In the "tiered-entity structure," the steps generally remain the same except that at the onset two LLCs are formed, one which will own the land and one which will own 90 percent or more of the LLC owning the land. The customers "invest" in the LLC that owns the land-holding LLC.

**Answer**: **Deny.**

The Evolution of Defendants' Relationships in the
Conservation Easement Syndication Scheme

63.     As least as early as 2009, Defendant Zak began organizing, promoting, and selling conservation easement syndicates.

**Answer**: **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied**

64.     Between 2009 and 2011, Zak worked on a series of at least 13 conservation easement syndicates that owned land outside of Savannah, Georgia. The land was all originally owned by one entity and was subdivided into smaller tracts for each of these conservation easement syndicates. Zak, through her entity, Forever Forests, provided conservation services to these syndicates and assisted in the organization, promotion, and sale of the syndicates to customers.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

65.     Starting no later than 2010, Defendant Zak began working with Defendants Clark and Solon in organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) conservation easement syndicates. Between 2010 and 2012, Solon operated through his role at Conservation Resources, Inc.

**<u>Answer</u>: Deny.**

66.     Beginning in 2012, when it was formed, EcoVest began providing consulting services for conservation easement syndicates. Starting in or around 2013, EcoVest became the "sponsor" of specific conservation easement syndicates (directly or through the formation of subsidiaries) that were sold as securities exempt from registration through broker-dealers. Solon has worked at EcoVest since it was formed, assisting in the organization, promotion, and sale of the

conservation easement syndicates sponsored by EcoVest. Defendant Teal started his association with EcoVest and his role in organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) conservation easement syndicates no later than 2013. Starting no later than January 2014, when Defendant McCullough joined EcoVest, he began organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

67.    As described above, Defendant Zak was a part-owner of EcoVest between 2012 and 2013. After Defendant Zak disposed of her ownership interest in EcoVest, she continued to organize, promote, and sell conservation easement syndicates that were separate than the ones organized, promoted and sold by EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

68.    Each Defendant continues to organize, promote, and sell (or assist in the organization, promotion, and sale of) conservation easement syndicates to date.

**Answer: To the extent these allegations are directed at Mr. Clark, they are denied. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

Examples of Defendants' Conservation Easement
Syndicates

*Example 1: Partnership Z in 2009*

69.    On October 17, 2008, Sponsors A, B, and C organized Partnership Z as a Georgia LLC with a principal place of business in Garden City, Georgia.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not know what entity is "Partnership Z," and Plaintiff has not alleged that Mr. Clark was involved in any way with "Partnership Z."**

70.    Partnership Z owned real property in Georgia consisting of approximately 140 acres of vacant land.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not**

**know what entity is "Partnership Z," and Plaintiff has not alleged that Mr.**

**Clark was involved in any way with "Partnership Z."**

71.     On or about December 29, 2009, Sponsors A, B, and C initiated a
private offering of 99 ownership units of Partnership Z at a price of $8,620 per unit
plus an operating reserve capital contribution of $1,010 per unit. Ultimately,
Partnership Z sold all 99 units for a total offering of $853,380 plus a total operating
reserve capital contribution of $99,990.

**<u>Answer</u>: Mr. Clark lacks knowledge or information sufficient to form a**

**belief as to the truth of the allegations in this paragraph, and therefore those**

**allegations are denied. As further response, Mr. Clark states that he does not**

**know what entity is "Partnership Z," and Plaintiff has not alleged that Mr.**

**Clark was involved in any way with "Partnership Z."**

72.     Defendant Zak, through her entity Forever Forests, assisted in the
organization, promotion, and sale of ownership units in Partnership Z. Defendant
Zak also purchased ownership units in Partnership Z and was allocated a portion of
the federal tax deduction reported by Partnership Z from the conservation easement
donation.

**<u>Answer</u>: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph,**

**and therefore those allegations are denied.**

73.     In assisting in the organization, promotion, and sale of Partnership Z, Zak furnished, or caused others to furnish, the summary offering memorandum to prospective customers. The summary offering memorandum indicated that the granting of a conservation easement could result in substantial tax benefits to those who purchased units. The summary offering memorandum also included a copy of a tax opinion letter which stated it was "more likely than not" that Partnership Z would be treated as a partnership for federal tax purposes and that people purchasing units of Partnership Z would thus be entitled to their share of its income, loss, deductions and credits.

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

74.     On December 31, 2009, Partnership Z executed a conservation easement on approximately 135 acres of the 140-acre parcel of real property.

**<u>Answer</u>: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not know what entity is "Partnership Z," and Plaintiff has not alleged that Mr. Clark was involved in any way with "Partnership Z."**

75.     Sponsors A, B, and C, with the assistance of Zak, hired an appraiser to value the conservation easement. The appraiser completed an appraisal report

dated January 11, 2010 that valued the conservation easement at $4,592,000 as of December 1, 2009.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not know what entity is "Partnership Z," and Plaintiff has not alleged that Mr. Clark was involved in any way with "Partnership Z."**

76.     The appraiser's valuation of Partnership Z's conservation easement was based on his determination of "market value" using a pre-determined highest and best use of a residential development. The appraiser ignored relevant comparable sales, used the incorrect standard for valuation, and otherwise used flawed assumptions and unsuitable data in reaching his opinion of value. As a result of these flaws, the appraiser's valuation of the conservation easement exceeds by 200 percent or more, the correct value of the conservation easement.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not know what entity is "Partnership Z," and Plaintiff has not alleged that Mr. Clark was involved in any way with "Partnership Z."**

77.     On its Form 1065 for the short tax year ending December 31, 2009, Partnership Z reported no income or loss and the noncash charitable contribution deduction arising from the conservation easement in the amount of $4,592,000. This amount created a tax deduction for each customer of over $4.76 for every dollar invested (including both the price per unit and the operating reserve capital contribution required per unit). If, for example, a customer purchased 10 units for

$9,630 per unit (price per unit plus the operating reserve capital contribution required per unit), for a total of $96,300, Partnership Z would subsequently allocate a charitable contribution deduction of over $459,000 to that customer. Partnership Z allocated the $4,592,000 to its 16 partners on Schedules K-1 as follows:

| Partner No. | Ownership Interest | Noncash Contribution |
|---|---|---|
| 1 | 3.0% | $137,760 |
| 2 | 2.0% | $91,840 |
| 3 | 7.0% | $321,440 |
| 4 | 5.0% | $229,600 |
| 5 | 2.0% | $91,840 |
| 6 | 4.0% | $183,680 |
| 7 | 2.5% | $114,800 |
| 8 | 12.5% | $574,000 |
| 9 | 8.0% | $367,360 |
| 10 | 3.0% | $137,760 |
| 11 | 8.0% | $367,360 |
| 12 | 5.0% | $229,600 |
| 13 | 10.0% | $459,200 |
| 14 | 5.0% | $229,600 |
| 15 | 22.0% | $1,010,240 |
| 16 | 1.0% | $45,920 |
| **Total** | **100.0%** | **$4,592,000** |

**Answer:** Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied. As further response, Mr. Clark states that he does not know what entity is "Partnership Z," and Plaintiff has not alleged that Mr. Clark was involved in any way with "Partnership Z."

*Example 2: Partnership Y in 2012*

78.     In 2012, EcoVest provided consulting services to Partnership Y, a conservation easement syndicate organized as a Georgia LLC with a principal place of business in Rome, Georgia.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

79.     Partnership Y owned real property in Georgia consisting of approximately 324.90 acres of wooded unimproved land.

**Answer: On information and belief, Mr. Clark admits that Partnership Y owned an approximately 324.90 acre parcel of land in Georgia that was generally wooded. Mr. Clark denies the remaining allegations of this paragraph.**

80.     On or about December 12, 2012, Partnership Y initiated a private offering of 900 to 950 ownership units at $1,799 per unit. Ultimately, Partnership Y sold 950 units for a total offering of $1,709,050. EcoVest assisted in the organization, promotion, and sale of these 950 units of Partnership Y.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

81.    In connection with the organization, promotion, and sale of Partnership Y units, EcoVest assisted in obtaining a tax opinion letter that it subsequently furnished to prospective customers. The tax opinion letter stated that it was "more likely than not" that Partnership Y would be treated as a partnership for federal tax purposes, and that the customers who purchased ownership interests of Partnership Y would be entitled to a portion of the charitable contribution deduction arising from the conservation easement relative to their ownership interest in Partnership Y. The tax opinion letter was included as an exhibit to Partnership Y's confidential private offering summary. The tax opinion letter was based on facts and documents provided by or on behalf of Partnership Y that were not correct.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

82.    Partnership Y's confidential private offering summary stated that Partnership Y had engaged in no business activities, that Partnership Y would need additional capital if it chose to develop the property, that the offering price for a partnership unit was not an indication of the value of the unit, that Partnership Y did not expect to make any cash distributions to the customers, that the term of Partnership Y was to be five years, and that the manager of Partnership Y had the authority to sell or dispose of the real property (Partnership Y's only asset) within four years of a conservation easement being granted.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

83.    Partnership Y's offering summary and exhibits contained pages analyzing the risks associated with the investing in Partnership Y, the majority of which pertain to the tax risks and potential of an IRS audit for the anticipated conservation easement donation.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

84.    Partnership Y's confidential private offering summary also contained a "Source and Use of Funds" section as follows, which detailed how the $1,709,050 total offering would be used by Partnership Y:

| Proceeds Used For | Minimum Offering [1] | Maximum Offering [2] | |
|---|---|---|---|
| Redemption Price [3] | 677,874 | 723,867 | |
| Estimated Sales Commissions [4] | 194,292 | 205,087 | |
| Project Management / Land Planner [5] | 357,800 | 382,800 | |
| Other Estimated Offering expenses [6] | 50,000 | 50,000 | |
| North American Land Trust [7] | 35,000 | 35,000 | |
| Appraisal [8] | 20,000 | 20,000 | |
| Survey [9] | 3,580 | 3,580 | |
| Real Estate Closing Costs & Legal Expenses [10] | 20,575 | 20,575 | |
| Land Engineer [11] | 1,200 | 1,200 | |
| Soil Engineer [12] | 1,314 | 1,314 | |
| Escrow Agent [13] | 2,500 | 2,500 | |
| 2012 Property Taxes [14] | 4,033 | 4,033 | |
| Geologist [15] | 4,574 | 4,574 | |
| Working Capital [16] | 246,358 | 254,520 | |
| **TOTAL** | **$ 1,619,100** | **$ 1,709,050** | |

**Answer**: **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

85.    Of the $254,520 of working capital, $150,000 was set aside as an audit reserve for a period of five years. If, after five years, Partnership Y did not receive notice from the IRS indicating that one or more of its or its affiliates' tax returns were being audited, the audit reserve would be released to Partnership Y for its use.

**Answer**: **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

86.    In connection with the organization, promotion, and sale of its units, Partnership Y hired Clark to provide a preliminary appraisal. Clark opined that as of December 5, 2012, Partnership Y's real property had a fair market value of $6,619,788. Clark's opinion of value was included in the Partnership Y confidential private offering summary. Based on Clark's opinion, Partnership Y told prospective customers this valuation would result in a conservation easement deduction in the amount of $6,295,000 that would be allocated to the customers based on their unit ownership. Clark furnished his opinion of value to Partnership Y and EcoVest who in turn furnished this statement of value to customers.

**Answer**: **On information and belief, Mr. Clark admits that he prepared an appraisal for Partnership Y dated February 10, 2013, estimating the fair market value of a perpetual conservation easement on land owned by Partnership Y. Mr. Clark denies the remaining allegations in this paragraph.**

87.     In connection with the organization, promotion, and sale of Partnership Y units, Defendants Zak and EcoVest furnished the confidential private offering summary to prospective customers, which included Clark's opinion of value and statements to customers that "the grant of the Conservation Easement would generate a charitable contribution easement deduction [], which would inure to the Members based upon their relative ownership percentage in the Company."

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

88.     EcoVest utilized broker-dealer Strategic Financial Alliance to assist in the promotion and sale of interests in Partnership Y to customers.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

89.     After the closing of the private offering, on or about December 31, 2012, Partnership Y placed a conservation easement on approximately 322.90 acres of the 324.90 acre property.

**Answer: On information and belief, Mr. Clark admits that a Conservation Easement deed between Partnership Y and a land trust was recorded on or about December 31, 2012, and avers that the deed speaks for itself. Mr. Clark lacks knowledge or information sufficient to form a belief as**

to the truth of the remaining allegations in this paragraph, and therefore

those allegations are denied.

90.     Defendant Clark completed a subsequent appraisal for Partnership Y; his appraisal, dated February 10, 2013, valued the easement at $6,295,000 as of December 27, 2012.

**Answer: On information and belief, Mr. Clark admits that he prepared**

**an appraisal for Partnership Y dated February 10, 2013, estimating the fair**

**market value of a perpetual conservation easement on land owned by**

**Partnership Y to be $6,295,000 as of December 27, 2012. Mr. Clark denies the**

**remaining allegations in this paragraph.**

91.     Clark's appraisal of the Partnership Y conservation easement reached a pre-determined highest and best use of a rural residential development. Clark's opinion of value also relies on at least one inappropriate methodology by using a discounted cash flow analysis while ignoring relevant comparable sales, including the sale of easements or property subject to easements.

**Answer: On information and belief, the allegations in this paragraph**

**are denied.**

92.     As a result of Clark's inappropriate methodology, flawed assumptions and unsuitable data, Clark's valuation of the conservation easement exceeds by 200 percent, or more, the correct value of the conservation easement.

**Answer: Deny.**

93.     On its Form 1065 for tax year 2012, Partnership Y reported a charitable contribution deduction arising from the conservation easement in the amount of $6,295,000, creating a tax deduction for each customer of over $3.50 for

each dollar invested. If, for example, a customer purchased 10 units for $1,799 each, for a total of $17,990, Partnership Y would subsequently allocate a charitable contribution deduction of over $62,965 to that customer.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

94.    Defendant Clark knew or had reason to know that his preliminary valuation would be used by EcoVest in the marketing and sale of Partnership Y. Defendant Clark also knew or had reason to know that his final valuation and appraisal report would be used by Partnership Y and the individual customers to support the tax deductions claimed as a result of the conservation easement.

**Answer: On information and belief, Mr. Clark admits that he was hired by Partnership Y to appraise a perpetual conservation easement for federal income tax purposes, that his appraisal says so, and that he signed the "Declaration of Appraiser" in Section B, Part III, of a Form 8283 verifying the appraisal for Partnership Y. Mr. Clark denies the remaining allegations of this paragraph.**

*Example 3: Partnership X and Partnership W in 2015*

95.    In 2015, EcoVest sponsored Partnership X, a conservation easement syndicate organized as a Delaware LLC on May 18, 2015, with a principal place of business in Atlanta, Georgia. Partnership X operated through its principals, including Defendant McCullough, who served as the senior vice president and chief financial officer of Partnership X.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

96.     Partnership X was formed with the purpose of purchasing approximately 94.5% of Partnership W.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

97.     Partnership W was organized as a Delaware LLC on May 19, 2015, with a principal place of business in Atlanta, Georgia for the purpose of owning a 28.04 acre parcel of vacant and unimproved real property in South Carolina.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

98.     In December 2011, Nonprofit A acquired, by gift, the 28.04 acre parcel of real property in South Carolina that Partnership W was organized to own.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

99.     On or about June 8, 2015, Partnership X and Nonprofit A entered into a Purchase Agreement that set forth a series of transactions related to the purchase of the 28.04 acre piece of real property from Nonprofit A:

**<u>Answer</u>:** **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

      a.     Nonprofit A would contribute the 28.04 acre parcel of real property to Partnership W in exchange for 95% of the ownership units of Partnership W in a transaction intended to qualify as a nonrecognition transaction under I.R.C. § 721;

**<u>Answer</u>:** **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

      b.     Nonprofit A would contribute $52,000 (approximately 4.76% of the value of the real property assigned to the property in the Purchase Agreement as of June 8, 2015, $1,092,000) to a newly formed entity, LLC B. LLC B would then contribute the cash to Partnership W in exchange for 5% of the ownership units of Partnership W in a transaction intended to qualify as a nonrecognition transaction under I.R.C. § 721;

**<u>Answer</u>:** **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

      c.     On or before December 31, 2015, Nonprofit A would convey 95% of the ownership units of Partnership W to Partnership X for a purchase price of $1,040,000 (the remaining 95.24% of the value of the real property).

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

100.   Without the contributions to Partnership W as described in the Purchase Agreement qualifying as nonrecognition transactions under the Internal Revenue Code, Partnership W would not have been permitted to treat the real property as long-term capital gain property. If the real property was not treated as long-term capital gain property, the amount of the charitable contribution deduction for the conservation easement permitted under the Code would have been limited to Partnership W's basis in the real property.

**Answer: This paragraph contains legal assertions to which no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

101.   On or about July 10, 2015, Clark provided a preliminary appraisal of Partnership W's real property. Clark opined that as of July 10, 2015, the conservation easement contemplated by Partnership W was valued at $38,879,000. Clark's appraisal report indicates that he intended to revise the appraisal after the execution and filing of the conservation easement. At the time Clark gave his preliminary appraisal report and opinion of value, Clark knew or had reason to know that his statement of value was to be used in the promotion and sale of interests in Partnership X. Clark furnished his statement of value and appraisal report to Partnership X and EcoVest which in turn furnished the statement of value to prospective customers.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of this**

**paragraph, and therefore those allegations are denied. Mr. Clark denies the remaining allegations in this paragraph.**

102.   On or about August 3, 2015, EcoVest, directly or indirectly, initiated a private offering of Partnership X units at a price of $9,483 per unit.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

103.   In connection with the organization, promotion, and sale of Partnership X units, EcoVest caused offering documents including a confidential private placement memorandum to be prepared and distributed to prospective customers. EcoVest included Clark's statement of value, of $38,879,000 of the conservation easement in its offering materials, telling customers that by investing in Partnership X, they would be entitled to a portion of that conservation easement deduction.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

104.   In connection with the organization, promotion, and sale of Partnership X, EcoVest furnished the confidential private placement memorandum to prospective customers or caused others to furnish the confidential private placement memorandum to prospective customers. Partnership X's confidential private placement memorandum stated that Partnership X would need additional capital if it chose to develop the property, that the offering price for a partnership unit was not an indication of the value of that unit, that the term of Partnership X was not expected to last beyond six years, and that the manager of Partnership X had the authority to sell or dispose of the real property (Partnership X's only asset) after four years of a conservation easement being recorded. Yet, Partnership X's

offering documents asserted that the customers would be entitled to a portion of the charitable contribution deduction arising from the conservation easement because Partnership X would be treated as a partnership for federal tax purposes. Specifically, EcoVest made and caused others to make the specific statement that "the donation of the conservation easement would generate a charitable contribution deduction in the approximate amount of $38,879,000, which would inure to the Members based upon their relative beneficial ownership percentage in the [Partnership X]."

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

105.   EcoVest utilized broker-dealers Strategic Financial Alliance and Triloma Securities to assist in the promotion and sale of interests in Partnership X to customers.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

106.   After the closing of the private offering, on or about December 15, 2015, Partnership W executed a deed of conservation easement to be effective on December 22, 2015, with respect to its approximately 28.04 acre parcel in South Carolina. Partnership W retained the right to build one residential building and one recreational building within an approximately four-acre building site.

**Answer: On information and belief, Mr. Clark admits that a Conservation Easement deed between Partnership W and a land trust was executed on or about December 15, 2015, to be effective on**

**December 22, 2015, and avers that the deed speaks for itself. Mr. Clark lacks**

**knowledge or information sufficient to form a belief as to the truth of the**

**remaining allegations in this paragraph, and therefore those allegations are**

**denied.**

107.   Defendant Clark completed a subsequent appraisal for Partnerships X and W; his appraisal, dated December 15, 2015, valued the easement at $39,697,000 as of December 15, 2015. Clark's final appraisal differed minimally from his original appraisal dated July 10, 2015.

**Answer: On information and belief, Mr. Clark admits that he prepared**

**an appraisal for Partnership W dated December 15, 2015, estimating the fair**

**market value of a perpetual conservation easement on land owned by**

**Partnership W to be $39,697,000 as of December 15, 2015. Mr. Clark denies**

**the remaining allegations of this paragraph.**

108.   Clark's appraisal of the Partnership W conservation easement reached a pre-determined highest and best use of a multi-family resort-like development, relied upon inappropriate methodology and assumptions and excluded pertinent facts, including:

**Answer: On information and belief, the allegations in this paragraph**

**are denied.**

> a.   Clark inappropriately used a discounted cash flow analysis while ignoring relevant comparable sales, including the sale of easements or property subject to easements.

**Answer: Deny.**

      b.  Clark's appraisal omitted mention of the Purchase Agreement between Nonprofit A and Partnership X and the stated value in that agreement of the property of $1,092,000 as of June 8, 2015.

**<u>Answer</u>: Deny.**

109.   As a result of Clark's inappropriate methodology, flawed assumptions and unsuitable data, Clark's valuation of the conservation easement exceeds by 200 percent, or more, the correct value of the conservation easement.

**<u>Answer</u>: Deny.**

110.   On its Form 1065 for tax year 2015, Partnership W reported a charitable contribution deduction arising from the conservation easement in the amount of $39,697,000 which was allocated to its partners, including Partnership X. Partnership X in turn allocated the deduction to its members based on their unit ownership, creating a tax deduction for each customer of approximately $4.12 for each dollar invested. If, for example, a customer purchased 10 units for $9,483, for a total of $94,830, Partnership X would subsequently allocate a charitable contribution deduction of over $390,699 to that customer.

**<u>Answer</u>: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

111.   Defendant Clark knew or had reason to know that his preliminary valuation would be used by EcoVest in the marketing and sale of Partnership X. Defendant Clark also knew or had reason to know that his final valuation and appraisal report would be used by Partnerships W and X and the individual customers to support the tax deductions claimed as a result of the conservation easement.

**<u>Answer</u>: On information and belief, Mr. Clark admits that he was hired by Partnership W to appraise a perpetual conservation easement for federal**

**income tax purposes, that his appraisal says so, and that he signed the**

**"Declaration of Appraiser" in Section B, Part III, of a Form 8283 verifying**

**the appraisal for Partnership W. Mr. Clark denies the remaining allegations**

**of this paragraph.**

> In Organizing, Promoting, and Selling (or Assisting in
> the Organization, Promotion and Sale of) Conservation
> Easement Syndicates, Defendants Made Statements that
> Defendants Knew or Had Reason to Know Were False

112.   Defendants' collective 96 conservation easement syndications involve real property, primarily vacant and unimproved parcels, in the states of Alabama, Georgia, Indiana, Kentucky, North Carolina, South Carolina, Tennessee, and Texas. At least 21 of those syndicates involved real property in the State of Georgia.

**<u>Answer</u>: Mr. Clark admits that he has appraised property, including**

**conservation easements, in Alabama, Georgia, Indiana, Kentucky, North**

**Carolina, South Carolina, Tennessee, and Texas. Mr. Clark lacks knowledge**

**or information sufficient to form a belief as to the truth of the remaining**

**allegations in this paragraph, and therefore those allegations are denied.**

113.   Defendants have directly or indirectly sold interests in these 96 conservation easement syndicates to thousands of customers (although some customers purchased interests in multiple conservation easement syndicates) from at least 45 different states and the District of Columbia. These 96 conservation easement syndicates reported in excess of $2 billion in charitable contribution deductions arising from the conservation easements on their federal tax returns (Forms 1065), which were intended to be passed through to the individual customers who would use these deductions to reduce their federal tax liabilities.

**Answer: To the extent these allegations are directed at Mr. Clark, they are denied. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

114.   In organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) the 96 conservation easement syndicates, Defendants Zak, EcoVest, Solon, McCullough, and Teal made statements (or caused others to make statements) regarding the availability of qualified conservation contribution deductions a customer could claim as a result of participating in the conservation easement syndication scheme. Similar to the statements outlined above in promoting the specific examples, these Defendants marketed the conservation easement syndicates as a way for a customer to participate in tax benefits by becoming a "partner" in or "part-owner" of an LLC that would donate a conservation easement.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

115.   In organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) the 96 conservation easement syndicates, all Defendants made or furnished statements about the amount of a qualified conservation contribution deduction that would be available to customers if they invested in a

conservation easement syndicate. These statements were based on the appraisals and/or opinions of value prepared by Clark or another real estate appraiser.

**Answer: Deny.**

116.   Defendants Zak, EcoVest, Solon, McCullough, and Teal marketed the conservation easement syndication scheme through word of mouth as well as through broker/dealers, financial advisors, return preparers, CPAs, and other individuals. Defendant Clark knew that his opinions of value were being used to market the conservation easement syndicates. Further, Defendant Clark knew or had reason to know how the syndicates were structured and being marketed and sold and that his statements of value and the statements of value he caused others to make were false.

**Answer: Deny.**

*Specific Statements by Zak*

117.   Defendant Zak uses websites and social media sites to promote the abusive conservation easement syndication scheme, including the website of her wholly owned entity, Forever Forests. Zak publishes "success stories" on the Forever Forests' website, all of which describe the availability of federal income tax deductions as a primary purpose for purchasing an interest in a conservation easement syndicate.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. The Forever Forests website speaks for itself. To the extent any further response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief**

**as to the truth of the allegations in this paragraph, and therefore those**

**allegations are denied.**

118.   One "success story" example Zak publicizes on her website, "The Conservation Facilitator," describes a specific transaction between Ms. A and Mr. B (the names on the website have been shortened to initials in this Complaint):

> The sale of Ms. A[ ]'s company in January generated an ordinary income windfall profit. She contacted Forever Forests who introduced her to another of their clients, Mr. B[ ]. With the help of Forever Forests, Mr. B[ ] had earlier evaluated the possibility of permanently preserving his timber tract and a qualified appraiser had estimated the amount of federal income tax deductions that could be claimed if the property were to be conserved. Unfortunately, Mr. B[ ] was unable to utilize all of the deductions. Ms. A[ ] offered to purchase a significant share of his ownership interests in the property while agreeing that Mr. B[ ] could retain managerial control. After closing, the partners agreed to preserve the property through the grant of a conservation easement. Ms. A[ ] offset 50% of her windfall profit using her share of the tax benefits whose cash value was more than 30% in excess of her purchase price. After a few years, Mr. B[ ] repurchased Ms. A[ ]'s shares and the partnership dissolved.

> *See*, http://foreverforests.net/index.php/success-stories/ last accessed on December 13, 2018.

**Answer: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. The Forever**

**Forests website speaks for itself. To the extent any further response is deemed**

**required, Mr. Clark lacks knowledge or information sufficient to form a belief**

**as to the truth of the allegations in this paragraph, and therefore those**

**allegations are denied.**

119.   Defendant Zak, in promoting her services and her company, Forever Forests, prepared promotional materials that were distributed by her and others in organizing, promoting, and selling the conservation easement syndicates. In one of these promotional documents, Zak stated that "[a]n owner who wishes to conserve their property but cannot utilize all of the deductions may choose to put the property's ownership into a partnership prior to the placement of a conservation easement on the property. The generated deductions are then shared proportionately between the partners. … Partners also receive sufficient tax benefits to offset their investment and realize a meaningful return."

**Answer: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph,**

**and therefore those allegations are denied.**

120.   In that same promotional document, Defendant Zak advises prospective customers that they can redirect some of their "tax dollars into a prestructured Conservation Partnership" allowing them to "cut [their] taxes by 30% to 50% (or more)." Zak also assures her customers that "[the Partnership] project structure allows for the tax savings to be shared among the owners in place at the time the easement is granted." Defendant Zak shared these promotional materials with prospective customers and with others who furnished the promotional materials to prospective customers.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

121.   Defendant Zak also promoted and sold specific conservation easement syndicates as a registered representative of broker-dealers, including the Strategic Financial Alliance. In selling the syndicates as a registered representative, Zak and her agents or employees told prospective customers about the tax benefits they could receive by purchasing an interest in the syndicate. Zak frequently promoted new conservation easement syndicates to individuals who had previously purchased interests in an earlier conservation easement syndicate. Zak and her agents or employees promoted and sold several conservation easement syndicates that were "all being offered at a pricing ratio of 1:4.25, so that for each dollar invested the partner receives $4.25" in tax deductions. At least one of these conservation easement syndicates offering this ratio was sponsored by EcoVest.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

122.   Defendant Zak continues to engage in the organizing, promoting, and selling (or assisting in the organization, promotion or sale of) the conservation easement syndicates. For example, Zak has been marketing a conservation easement syndicate involving real property in the state of Florida since at least December 2016. In promoting the conservation easement syndicate offering to prospective customers, Zak made the following statements:

- We've been in this business 14 years
- To date, prior to this year's efforts, we concluded 91 CE projects, spanning coast to coast
- That has resulted in over 30,000 acres preserved
- Those projects have generated $780,673,972 in Federal deductions
- They have further generated $24,520,304 in state tax credits
- Out of $780,673,972 deductions declared by our clients, **only 1% of those deductions were disallowed in appeals in an administrative adjustment, with no penalties levied to the taxpayer**.

(Emphasis in original.)

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark admits that he has seen the quoted language before, but Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

*Specific Statements by EcoVest, Solon, McCullough and Teal*

123.   Defendant EcoVest, as a sponsor of conservation easement syndicates, prepared marketing materials and offering documents outlining the structure of the transaction and tax deductions a customer could expect for purchasing an interest in a specific syndicate. Defendant EcoVest furnished these documents and the

statements contained therein to prospective customers or to broker-dealers who disseminated them to prospective customers.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

124.   Defendant EcoVest continues to sponsor conservation easement syndicates, directly or indirectly, by organizing, promoting, and selling (or assisting in the organization, promotion, or sale of) interests in more than one conservation easement syndicate in each of 2016, 2017, and 2018.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

125.   Defendants Solon, McCullough, and Teal, in their capacity as owners, directors, officers, and/or employees of EcoVest organized, promoted, and sold (or assisted in the organization, promotion, and sale of) EcoVest-sponsored conservation easement syndicates. Defendants Solon, McCullough, and Teal, directly or indirectly, prepared (or assisted in the preparation of) the marketing

materials and offering packages for EcoVest-sponsored conservation easement syndicates. Defendants Solon, McCullough, and Teal furnished (or caused others to furnish) these marketing materials and offering packages to prospective customers and made statements regarding the allowance and amount of tax deductions that a customer could receive for purchasing an interest in an EcoVest-sponsored conservation easement syndicate.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

126.   In the marketing materials and offering documents for the EcoVest-sponsored conservation easement syndicates, Defendants EcoVest, Solon, McCullough, and Teal made statements and caused others to make statements that were false or fraudulent, including:

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

a. That the syndicates would qualify as partnerships for federal tax purposes, and;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

b. That the customers would be entitled to their pro rata portion of the charitable contribution deduction arising from the conservation easement in proportion to their ownership interests in the syndicates.

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

127.   EcoVest also used marketing materials prepared by a law firm in organizing, promoting and selling its conservation easement syndicates including one document copyrighted in 2013 entitled, "Conservation Easement Overview."

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

128.   The Conservation Easement Overview, which EcoVest furnished to its customers, included background information on conservation easements and a summary of the tax benefits one could expect to receive from participating in a conservation easement syndicate because "[t]he use of partnership structures can allow, under the right circumstances, the maximum use of tax benefits attributable to a conservation easement deduction."

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

129.   In the "Conservation Easement Overview," the analysis continued, explaining that:

> Many landowners are not able to take advantage of a
> deduction for a conservation easement on their property
> because they lack sufficient income. However, there are

high-income taxpayers willing to invest in land owning entities if they can receive the benefit of a conservation easement deduction. This matching of interests allows preservation of the land on terms satisfactory to all and increases the amount of land preserved by fully utilizing the tax incentives of section 170(h).

…

…Below is an example of how this works:

*Assume that Mr. Jones [] owns the property with his son, Casey, in a partnership, and assume that Mr. Jones and Casey each have an annual adjusted gross income of only $50,000. If Mr. Jones and Casey were to donate a conservation easement over their property, they would likely be unable to fully utilize the $9 million deduction attributable to an easement donation because of the deduction limitations discussed above (Mr. Jones and Casey would each be limited to deducting $25,000 of the $9 million deduction in the year of donation, and roughly the same amount for each carryover year afterward). However, if Mr. Jones and Casey admitted other high-income investors into their partnership by selling them LLC interests, and the partnership subsequently elected to donate an easement over the property, the investors would be able to share in the deduction. Thus, the partnership structure, and the admission of additional partners, can enable the tax benefits attributable to a conservation easement donation to be fully utilized.*

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph,**

**and therefore those allegations are denied.**

> Defendants knew or had reason to know that their
> statements about securing tax benefits, namely charitable
> contribution deductions, were false.

130.   As described herein, Defendants' conservation easement syndication scheme relies upon the use of an entity taxed as a partnership to pass tax deductions through to the customers who purchase ownership units of a conservation easement syndicate.

**Answer: Mr. Clark denies the existence of a "conservation easement**

**syndication scheme." The remaining allegations of this paragraph are denied.**

131.   In organizing, promoting, selling, and/or opining on the conservation easement syndication scheme, Defendants Zak, EcoVest, Solon, McCullough, and Teal made statements regarding the allowance of the federal tax deductions that they knew, or had reason to know, were false or fraudulent as to material matters. These statements include those described herein about the syndicate qualifying as a partnership for federal tax purposes, that the donations qualify as "qualified conservation contributions," and that the customers are entitled to a portion of the charitable contribution deduction by virtue of their ownership units in the syndicate.

**Answer: This paragraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

132.   Among other things, Defendants Zak, EcoVest, Solon, McCullough, and Teal knew or had reason to know that the customers were not entitled to the charitable contribution deductions claimed because:

**<u>Answer</u>: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

a.   The conservation easement syndicates exist solely as a conduit for selling tax deductions;

**<u>Answer</u>: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

b.   The conservation easement syndicates are shams;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

    c.   The conservation easement syndicates lack economic substance;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

    d.   The conservation easement syndicates are not organized for the purpose of carrying on of a business or joint venture;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information**

sufficient to form a belief as to the truth of the allegations in this

subparagraph, and therefore those allegations are denied.

     e.  The conservation easement syndicates do not contribute a qualified
real property interest as required to be a valid "qualified
conservation contribution"; and

**<u>Answer</u>: This subparagraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not**

**relate to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this**

**subparagraph, and therefore those allegations are denied.**

     f.  The conservation easement donations are not made exclusively for
conservation purposes.

**<u>Answer</u>: This subparagraph contains allegations in support of a claim**

**against a defendant other than Mr. Clark. Because the allegations do not relate**

**to any claim against Mr. Clark, no response is required. To the extent a**

**response is deemed required, Mr. Clark lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in this**

**subparagraph, and therefore those allegations are denied.**

133.   Defendants also made or furnished gross valuation overstatements
about the value of the conservation easement syndicate units, the value of the

conservation easements and associated value of the tax benefits to be received from that easement by each customer. Defendants knew or had reason to know that their statements were based on improper and overvalued appraisals. Defendants knew or had reason to know that the appraisals relied upon inappropriate assumptions, data, and methodology and otherwise failed to comply with the Internal Revenue Code and regulations thereunder. As a result, Defendants knew or had reason to know that the valuation statements they made were false as well as gross valuation overstatements.

**Answer: Deny, and aver that none of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

*Defendants Knew or Had Reason to Know That the Conservation Easement Syndicates Lack Economic Substance and Are Shams*

134.   In the tax context, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, a corporation or a trust or estate. However, if the partnership is organized with no business purpose other than tax avoidance, the partnership lacks economic substance and/or is a sham.

**Answer: This paragraph contains legal assertions to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

135.   Defendants Zak, EcoVest, Solon, McCullough, and Teal knew, or had reason to know that: (1) the syndicates they organized, promoted, sold, and/or opined on had no business purpose other than tax avoidance; (2) the customers did not join together for the purpose of carrying on a business and sharing in the profits or losses or both of that business; and, (3) the syndicates lack economic substance and are shams.

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

136.   For example, Defendants Zak, EcoVest, Solon, McCullough, and Teal knew or had reason to know that:

**Answer:** **This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

      a.   the syndicates did not have ongoing business ventures, the syndicates did not expect to generate any profits, and the customers did not anticipate any distributions from the syndicates;

**Answer:** **This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a**

response is deemed required, Mr. Clark lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in this

subparagraph, and therefore those allegations are denied.

    b.  the partners' only return on investment came in the form of tax
benefits;

**Answer:** This subparagraph contains allegations in support of a claim

against a defendant other than Mr. Clark. Because the allegations do not

relate to any claim against Mr. Clark, no response is required. To the extent a

response is deemed required, Mr. Clark lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in this

subparagraph, and therefore those allegations are denied.

    c.  the partners were not required to make any additional capital
contributions to the syndicates and the syndicate was not funded
(and had no financing plans or capability) for anything other than
donating a conservation easement on the real property;

**Answer:** This subparagraph contains allegations in support of a claim

against a defendant other than Mr. Clark. Because the allegations do not

relate to any claim against Mr. Clark, no response is required. To the extent a

response is deemed required, Mr. Clark lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in this

subparagraph, and therefore those allegations are denied.

    d.  the only asset the syndicate had was the real property upon which the conservation easement was placed;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

    e.  the manager of the syndicate had the ability to dispose of that only asset (without the approval of the partners) after a period of years after the conservation easement is granted;

**Answer: This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

    f.  the investment risks outlined by the syndicate focused primarily on the tax consequences that could result from the IRS auditing the conservation easement donation; and

**Answer:** **This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

> g.   the syndicate had a specific term or otherwise included termination provisions or provisions for the customers to exit the syndicate after a period of years and were marketed as a limited term investment.

**Answer:** **This subparagraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph, and therefore those allegations are denied.**

137.   Defendants knew or had reason to know that the sale of federal tax deductions is prohibited and created a structure in an attempt to avoid this prohibition. Defendants' conservation easement syndication scheme is nothing more than a thinly veiled attempt to facilitate the sale of federal tax deductions by a person who cannot fully utilize them to people who can. Defendants knew or had reason to know that the use of a partnership or other pass-through entity was the only way to otherwise attempt to avoid the prohibition on selling federal tax deductions.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this paragraph are denied.**

138.   As such, Defendants knew or had reason to know that the statements they made or furnished (and the statements they caused others to make or furnish) regarding the allowance of the deductions from the conservation easement syndicates or the securing of other tax benefits by reason of purchasing interests in the conservation easement syndicates were false or fraudulent as to a material matter. This includes statements made or furnished by Defendants and others about the partnership structure being "proper," and a customer's entitlement to federal tax deductions by purchasing an interest in a conservation easement syndicate.

**<u>Answer</u>: Deny.**

<u>*Defendants Knew or Had Reason to Know that the Conservation Easement Donations Were Not "Qualified Conservation Contributions"*</u>

139.   Before a taxpayer qualifies for a noncash charitable contribution deduction arising from a "qualified conservation contribution" or conservation easement, several criteria must be met. In particular,

**<u>Answer</u>: This paragraph contains legal assertions to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

   a.   the contribution must be of a "qualified real property interest"; if the real property interest is a restriction on the use of the property, as is the case with the conservation easements at issue in this Complaint, that restriction must be granted in perpetuity;

**Answer: This subparagraph contains legal assertions to which no response is required. To the extent that allegations in this subparagraph are in any way inconsistent with the law, those allegations are denied.**

    b.  the contribution must be made exclusively for conservation purposes, and the easement must incorporate legally enforceable restrictions on the property at issue that will prevent uses of the retained interest in the property that are inconsistent with the "conservation purpose" of the contribution, and must run in perpetuity;

**Answer: This subparagraph contains legal assertions to which no response is required. To the extent that allegations in this subparagraph are in any way inconsistent with the law, those allegations are denied.**

    c.  where a donor of a conservation easement retains rights to the property subject to the easement which could impair the conservation interests, the donor is required to document the condition of the property at the time of the gift, commonly referred to as the "baseline documentation" that presents an accurate representation of the protected property at the time of the transfer; and

**Answer: This subparagraph contains legal assertions to which no response is required. To the extent that allegations in this subparagraph are in any way inconsistent with the law, those allegations are denied.**

    d.  the conservation easement's value must be determined by a "qualified appraiser," and the appraisal must be a "qualified appraisal" prepared in accordance with generally accepted appraisal standards.

**<u>Answer</u>: This subparagraph contains legal assertions to which no response is required. To the extent that allegations in this subparagraph are in any way inconsistent with the law, those allegations are denied.**

140.   Defendants knew or had reason to know that the conservation easements granted by the conservation easement syndicates did not qualify as "qualified conservation contributions." For instance, Defendants knew or had reason to know:

**<u>Answer</u>: Deny.**

    a.   the syndicates did not donate a "qualified real property interest" because the property subject to the conservation easement could be modified;

**<u>Answer</u>: Deny.**

    b.   the syndicates retained or reserved rights to the property that were inconsistent with the conservation purpose(s) of the conservation easement;

**<u>Answer</u>: Deny.**

    c.   the syndicates did not properly document the condition of the property at the time of the donation; and/or

**<u>Answer</u>: Deny.**

    d.   the appraiser was not a "qualified appraiser" and did not prepare a "qualified appraisal" as required by the Internal Revenue Code and regulations thereunder.

**<u>Answer</u>: Deny.**

141.   Defendants made or furnished statements (or caused others to make or furnish statements) regarding the allowance of the "qualified conservation contribution" or securing of other tax benefits from the "qualified conservation contribution" that they knew or had reason to know were false or fraudulent.

**Answer**: **Deny.**

*Defendants Made or Furnished or Caused Others to Make or Furnish Gross Valuation Overstatements*

142.   When valuing a conservation easement for purposes of claiming a federal tax deduction, an appraiser must determine the easement's "fair market value" as of the date of the contribution. "Fair market value" is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."

**Answer**: **Mr. Clark admits that the value of a charitable contribution of a perpetual conservation restriction is the fair market value of the perpetual conservation restriction at the time of the contribution. Mr. Clark admits that the definition of "fair market value" quoted in the second sentence of this paragraph is the general definition provided in 26 C.F.R. § 1.170A-1(c), but avers that the valuation of perpetual conservation restrictions is governed by 26 C.F.R. § 1.170A-14(h)(3). The remaining allegations of this paragraph are denied.**

143.   The Treasury Regulations set forth additional guidance for determining the fair market value of a perpetual conservation restriction on a given property as of the date of the contribution:

If there is a substantial record of sales of easements comparable to the donated easement (such as purchases pursuant to a governmental program), the fair market value of the donated easement is based on the sales price of such comparable easements. If no substantial record of market-place sales is available to use as a meaningful or valid comparison, as a general rule (but not necessarily in all cases) the fair market value of a perpetual conservation restriction is equal to the difference between the fair market value of the property it encumbers *before* the granting of the restriction and the fair market value of the encumbered property *after* the granting of the restriction.

26 C.F.R. § 1.170A-14(h)(3)(i) (emphasis added).

**Answer: Mr. Clark denies that the cited regulation sets forth "additional" guidance for determining the fair market value of a perpetual conservation restriction and avers that 26 C.F.R. § 1.170A-14(h)(3) speaks for itself.**

144.   The applicable regulations further provide that the analysis of a property's fair market value before and after the contribution of a conservation easement must be based on the property's "highest and best use." A property's "highest and best use" is the reasonable and probable use that supports the highest present value of the property. Appraisers generally determine "highest and best use" by considering uses for the property that are: (1) physically possible; (2) legally permissible; and (3) financially feasible. Then, the appraiser must determine which of those uses is the maximally productive use of the property, or creates the highest value of the property. This use is then the "highest and best use" of the property.

**Answer: Mr. Clark denies that this paragraph accurately paraphrases 26 C.F.R. § 1.170A-14(h)(3)(ii) and avers that the regulation speaks for itself. Mr. Clark admits that physical possibility, legal**

**permissibility, financial feasibility, and maximal productivity are the relevant**

**considerations for determining the highest and best use of property. The**

**remaining allegations of this paragraph are denied.**

145.   The analysis of a property's fair market value before and after the contribution of a conservation easement must also take into account "how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use." 26 C.F.R. § 1.170A-14(h)(3)(ii). Indeed, there may be instances where the grant of a conservation easement may have no material effect on the value of the property or may in fact serve to enhance, rather than reduce, the value of the property; in such instances, no deduction would be allowable. *Id.* The highest and best use analysis in an appraisal is critical in determining fair market value.

**Answer: Mr. Clark admits that 26 C.F.R. § 1.170A-14(h)(3)(ii)**

**addresses the fair market value of property before and after a perpetual**

**restriction, and avers that the regulation speaks for itself. Mr. Clark admits**

**that highest and best use analysis is an important component of before and**

**after valuation. The remaining allegations of this paragraph are denied.**

146.   Defendant Clark holds himself out as professional appraiser of conservation easements, and claims that he meets the definition of a "qualified appraiser" as defined in 26 U.S.C. §§ 170(f)(11).

**Answer: Admits.**

147.   Clark appraised at least 187 conservation easements between 2009 and 2016 in the following amounts: 61 conservation easements between 2009 and 2014, 59 conservation easements during 2015, and 67 conservation easements

during 2016. This total includes at least 58 conservation easement syndicates, as described herein.

**Answer: Mr. Clark admits that he appraised at least 187 conservation easements from 2009 through 2016. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore those allegations are denied.**

148.   Nearly all of the conservation easement appraisals referenced in paragraph 147, completed by Clark, have been submitted to the IRS to support a claimed charitable contribution deduction arising from the conservation easement. Defendant Clark claims that the appraisal reports he generates meet the definition of a "qualified appraisal" in the Internal Revenue Code and regulations thereunder.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph, and therefore those allegations are denied. Mr. Clark admits that when he prepares an appraisal for tax purposes, he claims that it is and intends for it to be a "qualified appraisal." Mr. Clark avers that the term "qualified appraisal" is defined in 26 U.S.C. § 170(f)(11)(E)(i) and that from November 13, 2006, until January 1, 2019, an appraisal that met the requirements of IRS Notice 2006-96 is a "qualified appraisal." The remaining allegations of this paragraph are denied.**

149.   Clark earned substantial fees for his appraisals.

**<u>Answer</u>: Mr. Clark admits that he earned reasonable fees for his appraisals. Mr. Clark denies that such fees were "substantial" to the extent the government uses that word as a euphemism for "excessive."**

150.   Continually and repeatedly, Defendant Clark relied upon inappropriate assumptions, utilized inappropriate methodology and used various techniques to improperly inflate the value of the conservation easements. This inflated value results in Defendants' customers claiming inflated and improper deductions from their participation in the conservation easement syndication scheme. For example:

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this paragraph are denied.**

  a.  Defendant Clark incorrectly reached unsupportable or predetermined highest and best use conclusions – usually concluding that the highest and best use is a residential subdivision that must be valued using a discounted cash flow analysis;

**<u>Answer</u>: Deny.**

  b.  Defendant Clark arrived at the unsupportable highest and best uses by ignoring local zoning rules and other legal restrictions on purported developments, physical feasibility, market conditions, and market data;

**<u>Answer</u>: Deny.**

  c.  Defendant Clark ignored the sale of conservation easements in the area of the property in determining the value of the conservation easement and ignored the proceeds garnered by the LLC by its sale of membership interests to customers;

**<u>Answer</u>: Deny.**

    d.  Defendant Clark failed to employ recent, local, or similar sales that competed with the subject property or would have been considered "substitutes" for the subject property by potential buyers when employing the "comparable sales method;"

**Answer**: **Deny.**

    e.  Defendant Clark improperly used the income approach and/or the subdivision analysis in his appraisals;

**Answer**: **Deny.**

    f.  Defendant Clark ignored relevant data about recent sales, contributions, or agreements concerning the real property that included relevant data for the value of the real property.

**Answer**: **Deny.**

151.   By using these improper methods in appraising conservation easements, Defendant Clark generated grossly overvalued appraisals, which in turn resulted in taxpayers grossly overstating their tax deductions.

    **Answer**: **Deny, and aver that none of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

152.   Continually and repeatedly, Clark overstated the fair market value of the conservation easements by hundreds of thousands, if not millions, of dollars.

    **Answer**: **Deny, and aver that none of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

153.   Clark claims that his appraisals follow the Uniform Standards of Professional Appraisal Practice ("USPAP"), but because of his flawed methodology, inappropriate data and supportable assumptions, including those errors outlined above, Clark's appraisals do not comply with USPAP. Clark's

appraisals are therefore unreliable and fail to comply with the Internal Revenue Code and regulations thereunder for valuing conservation easements and preparing qualified appraisals.

**Answer: Mr. Clark admits he claims his appraisals follow the Uniform Standards of Professional Appraisal Practice, and avers that they do follow such standards. Mr. Clark denies the remaining allegations of this paragraph.**

154.   In light of Clark's professional experience and education, he knew or should have known that the manner in which he valued the conservation easements was contrary to the internal revenue laws and regulations, violated the professional standards for real estate appraisers, and resulted in gross valuation overstatements for the easements he appraised.

**Answer: Deny.**

155.   Defendant Clark not only prepared appraisal reports for use by the conservation easement syndicates in marketing and selling their units, but also knew or had reason to know that his appraisal reports would be attached to the tax returns as required by the Code to support the charitable contribution deductions reported by the syndicates and ultimately claimed by Defendants' customers.

**Answer: Mr. Clark admits that he knew or had reason to know that appraisals he prepared for income tax purposes would be attached to tax returns of his clients. *See* 26 U.S.C. § 170(f)(11)(D). Mr. Clark denies the remaining allegations of this paragraph.**

156.   Defendant Clark also completed the required Forms 8283 for the conservation easement syndicates who engaged him to provide appraisal services, reporting the gross valuation overstatements as to the valuation of the conservation easements to the IRS. In doing so, Clark also caused others, including the conservation easement syndicates and the sponsors of those syndicates, to furnish

those gross valuation overstatements to the individual customers who used the Forms 8283 to support the charitable contribution deductions they claimed on their returns.

**Answer: Mr. Clark admits that he completed the "Declaration of Appraiser" in Section B, Part III, of Form 8283 for many of his clients. *See* 26 U.S.C. § 170(f)(11)(C); 26 C.F.R. §§ 1.170A-13(c)(2)(i)(B), (c)(4). Mr. Clark denies the remaining allegations of this paragraph, and avers that none of his appraisals have been found to contain a gross valuation misstatement.**

157.   Defendant Zak made or furnished statements (or caused others to make or furnish statements) as to the valuation of the conservation easements as she "guid[ed] appraisal methodology and execution" and "assist[ed] in highest & best use market determination" for the conservation easement syndicates.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

158.   Defendant Zak also assisted in the preparation of IRS tax forms, including the Form 8283 and reviewed the valuation statements made on the Forms 8283 and appraisals that were then furnished to individual customers.

**Answer: This paragraph contains allegations in support of a claim against a defendant other than Mr. Clark. Because the allegations do not relate to any claim against Mr. Clark, no response is required. To the extent a response is deemed required, Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore those allegations are denied.**

159.   Defendant EcoVest also assisted in the preparation of the Forms 8283 as part of the consulting and management services they provide to their specific conservation easement syndicates. Defendant EcoVest generally received copies of the draft appraisals and was permitted to provide input to the appraisers on the methodology and conclusions the appraisers reached.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph, and therefore those allegations are denied. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of this paragraph to the extent they are directed at other appraisers. Mr. Clark denies the allegations in the second sentence of this paragraph to the extent they are directed at him.**

160.   Defendants made or furnished (or caused others to make or furnish) gross valuation overstatements regarding the value of the conservation easements and associated tax deductions to the thousands of customers (and prospective customers) in the conservation easement syndicates.

**Answer: Deny, and aver that none of Mr. Clark's appraisals have been found to have a gross valuation misstatement.**

161.   Defendants also knew or had reason to know that Clark's valuations were grossly overvalued and/or false or fraudulent because:

**Answer: Deny.**

> a.   Defendants knew or had reason to know that the manner in which Clark valued the conservation easements was contrary to internal revenue laws and regulations, violated the professional standards for real estate appraisers, and resulted in improper and grossly overvalued conservation easement appraisals.

**Answer: Deny.**

> b.   Defendants knew or had reason to know that a conservation easement's fair market value derives from appropriate, timely data from the market and not conjecture or unsupported conclusions and assumptions that favor extraordinarily high property values.

**Answer: Mr. Clark admits that he knows that a conservation easement's fair market value derives from appropriate, timely data and not conjecture or unsupported conclusions and assumptions that favor extraordinarily high property values. Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph to the extent they are directed at Nancy Zak ("Ms. Zak") or EcoVest Capital, Inc., Alan N. Solon, Robert M. McCullough, and Ralph R.**

Teal, Jr. (collectively the "EcoVest Parties"), and therefore those allegations

are denied.

      c.   Defendants knew or had reason to know about prior sales attempts
          or agreements regarding the real property that was evidence of
          value and did not support the grossly overvalued appraisals
          completed by Clark.

      __Answer__: **Deny.**

    162.   Defendants also knew or had reason to know that the ultimate
customers would use the inflated values provided by Clark to claim overvalued
charitable contribution deductions on their federal income tax returns. Defendants
knew or had reason to know that these deductions would reduce the federal income
tax liabilities of the customers.

      __Answer__: **Deny.**

    163.   Defendant Clark knew or should have known that overstated
appraisals could subject him to penalty under section 6701(a) and section 6695A.

      __Answer__: **Mr. Clark admits that he knew overstated appraisals could**

**subject him to penalty under 26 U.S.C. § 6701(a) and 26 U.S.C. § 6695A, but**

**denies that any appraisals were overstated.**

Defendants' Conservation Easement Syndication Scheme<br>Causes Irreparable Harm to the United States and the<br>Public

    164.   The harm caused by this conservation easement syndication scheme is
widespread. The United States, Defendants' customers, and the taxpaying public
are all adversely affected.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this paragraph are denied.**

165.   The United States Treasury has suffered losses through tax refunds wrongfully issued and taxes uncollected. As part of their scheme, Defendants have organized, promoted, or sold (or assisted in the organization, promotion, and sale of) at least 96 conservation easement syndicates leading to over $2 billion of charitable contribution deductions reported. But the total amount of wrongful federal tax benefits claimed as a result of Defendants' abusive conservation easement syndication scheme is yet to be fully determined.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph to the extent they are directed at Ms. Zak and the EcoVest Parties, and therefore those allegations are denied. Mr. Clark denies the remaining allegations of this paragraph.**

166.   The IRS has expended considerable time and resources to address Defendants' conservation easement syndication scheme. IRS employees, including revenue agents, engineers and appraisers, have spent a substantial number of hours examining the conservation easement syndicates and the conservation easement appraisals.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent they are directed at how the IRS "expend[s]" its "time and resources," and**

**therefore those allegations are denied. Mr. Clark denies the remaining**

**allegations of this paragraph.**

167.   The IRS is harmed because it must dedicate scarce resources to detecting and examining inaccurate returns filed by the conservation easement syndicates as well as assessing and collecting unpaid tax. Defendants' scheme is highly structured and involves the use of tiered pass-through entities which can conceal the true economic nature of the transaction. Defendants continue to implement variations or permutations to their scheme, resulting in a larger chance of avoiding IRS scrutiny and IRS audit.

**Answer: Deny.**

168.   Defendants' customers have also incurred direct financial harm because they remain liable for any unpaid federal tax they owe. They will also be liable for interest that has accrued on their unpaid federal tax obligations. Defendants' customers may also be liable for substantial federal tax penalties as a result of participating in Defendants' conservation easement syndication scheme.

**Answer: Mr. Clark denies the existence of a "conservation easement**

**syndication scheme." The remaining allegations of this paragraph are denied.**

169.   Defendants' abusive conservation easement syndication scheme undermines public confidence in the fair administration of the federal tax system and encourages noncompliance with the internal revenue laws, which causes irreparable harm to the United States. Specifically, Defendants' abusive conservation easement syndication scheme inspires contempt for the system of honest, voluntary income tax reporting and undermines the public's confidence in a deduction designed to encourage preservation and conservation efforts that is instead being abused to financially benefit Defendants and their customers at the expense of the U.S. Treasury.

**Answer: Mr. Clark denies the existence of a "conservation easement**

**syndication scheme." The remaining allegations of this paragraph are denied.**

170.    Defendants have been unjustly enriched by operating their conservation easement syndication scheme because the scheme relies upon the abuse of federal tax laws.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." The remaining allegations of this paragraph are denied.**

Defendants' Continued Organizing, Promoting, and
Selling of Conservation
Easement Syndicates to Customers

171.    Despite IRS scrutiny into conservation easement syndicates, including the issuance of IRS Notice 2017-10, 2017-4 I.R.B. 544 on December 23, 2016 identifying conservation easement syndications as a "listed transaction," Defendants Zak, EcoVest, Solon, McCullough, and Teal continue to organize, promote, and sell (or assist in the organization, promotion, and sale of) conservation easement syndicates and their corresponding tax benefits. Defendant Clark also continues to appraise conservation easements for syndicates in the same manner as before the listing notice despite the IRS's scrutiny and identification of gross overvaluation as an issue with conservation easement syndicates.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent that they are directed at Ms. Zak and the EcoVest Parties, and therefore those allegations are denied. To the extent these allegations are directed at Mr. Clark, they are denied. Since publication of Notice 2017-10, Mr. Clark has protectively filed Forms 8918 with the IRS regarding any appraisal he completed for a client that could possibly be described in Notice 2017-10. Mr. Clark specifically denies that the IRS has identified gross overvaluation as a**

96

**component of the listed transaction described in Notice 2017-10, and avers**

**that potential overvaluation is a concern for all contributions. Mr. Clark**

**denies the remaining allegations of this paragraph.**

172.   A "listed transaction" is a reportable transaction that is the same as, or substantially similar to, a transaction specifically identified by the Secretary of the Treasury as a tax avoidance transaction. Once the transaction becomes "listed," certain reporting and disclosure requirements arise. The December 23, 2016 Notice created reporting obligations for participants in conservation easement syndications as well as material advisors, including appraisers, of conservation easement syndications, for transaction entered into, on, or after January 1, 2010.

**Answer: This paragraph contains a legal assertion to which no response**

**is required. To the extent that Plaintiff's summary allegations in this**

**paragraph are in any way inconsistent with the law, those allegations are**

**denied.**

173.   In response to the listing notice, Defendants Zak, Clark, and EcoVest filed Forms 8918, Material Advisor Disclosure Statements, reporting their roles with certain conservation easement syndicates which are the subject of this Complaint.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a**

**belief as to the truth of the allegations in this paragraph to the extent they are**

**directed at Ms. Zak and the EcoVest Parties, and therefore those allegations**

**are denied. Mr. Clark admits that he protectively filed many Forms 8918 in**

**response to Notice 2017-10. However, Mr. Clark denies that he is a material**

**advisor and moreover, alleges and avers that 26 C.F.R. § 301.6111-3(b), which**

**defines material advisor, is invalid and void for vagueness. Mr. Clark denies**

**the remaining allegations of this paragraph.**

174.   Collectively, Defendants continued to organize, promote, and sell (or assist in the organization, promotion, and sale of) at least 27 conservation easement syndicates that reported sale activity between November 2016 and January 2018.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a**

**belief as to the truth of the allegations in this paragraph to the extent that they**

**are directed at Ms. Zak and the EcoVest Parties, and therefore those**

**allegations are denied. Mr. Clark admits that he continues to appraise**

**conservation easements, and avers that he does so in full compliance with the**

**law. Mr. Clark denies the remaining allegations of this paragraph.**

COUNT I:
Injunction against All Defendants under 26 U.S.C. § 7408 for Engaging in Conduct
Subject to Penalty under 26 U.S.C. § 6700

175.   The United States incorporates by reference the allegations contained in paragraphs 1 through 6 and 8 through 174.

**Answer: Mr. Clark incorporates and restates by reference the**

**foregoing responses to Paragraphs 1 through 174 of the Complaint,**

**inclusive as if they were fully set forth herein.**

176.   Section 7408(a) authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6700 if injunctive relief

is appropriate to prevent recurrence of that conduct or any other activity subject to penalty under the Internal Revenue Code.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

177.   Section 6700 imposes a civil penalty on any person who: (1) either organizes or assists in the organization of a plan or arrangement or participates in the sale of any interest in a plan or arrangement; and (2) makes or furnishes, or causes another to make or furnish, certain statements.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

178.   One such statement subject to penalty is a statement with respect to the securing of a tax benefit by reason of holding an interest in an entity or participating in a plan or arrangement that the person has reason to know is false or fraudulent as to any material matter. 26 U.S.C. § 6700(a)(2)(A).

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

179.   Another such statement subject to penalty is a "gross valuation overstatement as to any material matter." 26 U.S.C. § 6700(a)(2)(B). A gross valuation overstatement is "any statement as to the value of any property or services" if the value of the property or services is directly related to the amount of any tax deduction or credit and the stated value is more than 200 percent of the correct value of the property or services. 26 U.S.C. § 6700(b)(1).

**<u>Answer</u>: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

180.   Defendants' conservation easement syndication scheme is a plan or arrangement within the meaning of 26 U.S.C. § 6700.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

181.   Defendants have organized, promoted, or sold (or assisted in the organization, promotion, and sale of), the conservation easement syndication scheme to thousands of customers.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

182.   In connection with the conservation easement syndication scheme, Defendants made and furnished false and/or fraudulent statements regarding the securing of a tax benefit by reason of participating in the conservation easement syndication scheme and the amount of that tax benefit in the form of a conservation easement deduction.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

183.   Defendants knew and had reason to know that these statements were false or fraudulent within the meaning of 26 U.S.C. § 6700(a)(2)(A).

**Answer: Deny.**

184.   In connection with the conservation easement syndication scheme, Defendants made or furnished or caused another person to make or furnish gross valuation overstatements within the meaning of 26 U.S.C. § 6700(a)(2)(B).

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

185.   If Defendants are not enjoined, they are likely to continue to promote this conservation easement syndication scheme.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

186.   The United States will suffer irreparable injury if Defendants are not enjoined.

**Answer: Deny.**

187.   Enjoining Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendants' illegal conduct and the harm it causes the United States.

**Answer: Deny.**

188.   Defendants have engaged in conduct – including but not limited to the conduct described in this complaint – that is subject to penalty under 26 U.S.C. §

6700, and an injunction under 26 U.S.C. § 7408 is appropriate to prevent recurrence of such conduct.

**Answer: Deny.**

COUNT II:

Injunction against Defendants Zak and Clark under 26 U.S.C. § 7402 for Engaging in Conduct Subject to Penalty under 26 U.S.C. § 6695A

189.   The United States incorporates by reference the allegations contained in paragraphs 1 through 6, 8 through 25, 41 through 42, 54 through 121, 129, 132, and 141 through 174.

**Answer: Mr. Clark incorporates and restates by reference the foregoing responses to Paragraphs 1 through 188 of the Complaint, inclusive as if they were fully set forth herein.**

190.   Section 7402(a) authorizes a district court to issue injunctions and to render judgments that may be necessary or appropriate for the enforcement of the internal revenue laws even when the United States may have other remedies available for enforcing those laws.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

191.   Section 6695A(a) imposes a civil penalty on any person who appraises property and knows (or reasonably should have known) that the appraisal would be used in connection with a federal tax return or a claim for refund, and the claimed value of the property results in a substantial valuation misstatement or a gross valuation misstatement. A substantial valuation misstatement results when the value of any property claimed is 150% or more of the property's correct valuation (26 U.S.C. § 6662(e)), and a gross valuation misstatement results when

the value of any property claimed is 200% or more of the property's correct valuation (26 U.S.C. § 6662(h)).

**Answer:** **This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

192.   Section 6695A penalizes conduct that interferes with the enforcement of the internal revenue laws.

**Answer:** **Deny.**

193.   As alleged herein, Defendant Zak assisted in appraising the conservation easements. Among other things, Zak assisted in making the highest and best use determinations, a critical component in determining fair market value of a conservation easement.

**Answer:** **Mr. Clark lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph to the extent they are directed at appraisals conducted by appraisers other than him, and therefore those allegations are denied. Mr. Clark denies the remaining allegations of this paragraph.**

194.   Defendants Zak and Clark knew or reasonably should have known that the appraisals they prepared would be used in connection with a federal tax return or a claim for refund.

**Answer:** **Mr. Clark admits that he expected his appraisals would be used in connection with a federal tax return when he signed the "Declaration**

**of Appraiser" in Section B, Part III, of Form 8283, and avers that when he**

**appraised property for income tax purposes his appraisals said so, as required**

**by 26 C.F.R. § 1.170A-13(c)(3)(ii)(G). Mr. Clark denies the remaining**

**allegations of this paragraph.**

195.   The appraisals that Defendants Zak and Clark prepared provided the basis for the value of the charitable contribution deductions claimed on each conservation easement syndicates' Forms 1065 that passed-through to individual customers' tax returns or claims for refund.

**Answer: Mr. Clark lacks knowledge or information sufficient to form a**

**belief as to the truth of the allegations in this paragraph, and therefore those**

**allegations are denied.**

196.   Defendants Zak and Clark have consistently overvalued property by at least 150%.

**Answer: Deny.**

197.   Defendants Zak and Clark have consistently engaged in conduct – including overvaluing appraised property by at least 150% -- that is subject to penalty under 26 U.S.C. § 6695A, and an injunction under 26 U.S.C. § 7402 is appropriate to prevent recurrence of such conduct.

**Answer: Mr. Clark denies the allegations of this paragraph and avers**

**that in the one instance the IRS asserted a penalty against him under 26**

**U.S.C. § 6695A for purportedly making a substantial valuation misstatement,**

**the IRS refunded the penalty, plus interest, acknowledging that it was more**

**likely than not that Mr. Clark's appraisal reached the correct value.**

198.   The United States will suffer irreparable injury if Defendants are not enjoined.

**Answer: Deny.**

199.   Enjoining Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendants' illegal conduct and the harm it causes the United States.

**Answer: Deny.**

200.   Enjoining Defendants is also necessary as the United States otherwise lacks an adequate remedy at law.

**Answer: Deny, and aver that if the IRS believed that Mr. Clark**

**substantially or grossly overvalued property, it should have asserted penalties**

**under 26 U.S.C. § 6695A, not sued for a permanent injunction.**

<u>COUNT III:</u>
Injunction against Defendant Clark under 26 U.S.C. § 7407 for Engaging in
Conduct Subject to Penalty under 26 U.S.C. § 6694

201.   The United States incorporates by reference the allegations contained in paragraphs 1 through 6, 19 through 25, 54 through 62, 65, 68, 77 through 112, 114 through 115, 132, and 141 through 174.

**Answer: Mr. Clark incorporates and restates by reference the foregoing**

**responses to Paragraphs 1 through 200 of the Complaint, inclusive as if they**

**were fully set forth herein.**

202.   Section 7407 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6694 if injunctive relief is appropriate to prevent recurrence of that conduct or any other activity subject to penalty under the Internal Revenue Code.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

203.   Section 6694 imposes penalties on tax return preparers for understatements of tax liability due to unreasonable positions, as well as understatement of tax liability due to willful or reckless conduct.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

204.   A "tax return preparer" as used in Section 6694 is defined as any person who prepares for compensation, any return of tax or any claim for refund of tax *including the preparation of a substantial portion* of a return or claim for refund. 26 U.S.C. § 7701(a)(36) (emphasis added).

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

205.   A tax return preparer includes the individual who signed the tax return or a return preparer who did not sign the tax return but who prepared all or a substantial portion of a return or claim for refund regarding events occurring at the time the advice is rendered. 26 C.F.R. §§ 1.6694-1; 301.7701-15.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

206.   As alleged herein, Defendant Clark is a tax return preparer because he prepares tax returns or portions of tax returns for compensation and/or provides advice for positions or entries taken on federal tax returns.

**Answer: Deny. Mr. Clark does not provide tax advice nor does he prepare any portion of a tax return for compensation. He earns compensation for appraising real property.**

207.   Defendant Clark prepared portions of the conservation easement syndicates' tax returns, including the Forms 8283 (appraisal summary) and appraisal required to be attached to a tax return to support the claimed charitable contribution deduction. Defendant Clark received compensation for the preparation of the appraisal(s) and the IRS forms.

**Answer: Mr. Clark denies that signing the "Declaration of Appraiser" in Section B, Part III, of Form 8283 and having your appraisals attached to tax returns makes an appraiser a tax return preparer, and avers that an appraiser cannot be treated as a tax return preparer based only on signing those two documents. *See* 26 C.F.R. § 1.170A-13(c)(3)(iii) (signing appraisal or Form 8283 subjects appraiser to liability under 26 U.S.C. § 6701); 26 C.F.R. § 1.170A-13(c)(5)(i)(D) (same); *see also* 26 U.S.C. § 6701(f)(2) (no penalty shall be assessed under 26 U.S.C. § 6694 on any person with respect to any**

**document for which a penalty is assessed under 26 U.S.C. § 6701). The**

**remaining allegations in this paragraph are denied.**

208.   Defendant Clark has consistently engaged in conduct – including understating the federal tax liabilities on tax returns or claims for refund (or portions of tax returns or claims for refund) that he has prepared – that is subject to penalty under 26 U.S.C. § 6694, and an injunction under 26 U.S.C. § 7407 is appropriate to prevent recurrence of such conduct.

**<u>Answer</u>: Deny. Mr. Clark specifically denies that he "states" federal tax**

**liabilities on tax returns, and further denies that he "prepares" tax returns or**

**portions of tax returns.**

209.   The United States will suffer irreparable injury if Defendant Clark is not enjoined.

**<u>Answer</u>: Deny.**

210.   Enjoining Defendant Clark is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendant Clark's illegal conduct and the harm it causes the United States.

**<u>Answer</u>: Deny.**

<u>COUNT IV:</u>
Injunction against All Defendants under 26 U.S.C. § 7402 for Unlawful
Interference with the Administration and Enforcement of the Internal Revenue
Laws

211.   The United States incorporates by reference the allegations contained in paragraphs 1 through 174.

**Answer: Mr. Clark incorporates and restates by reference the foregoing responses to Paragraphs 1 through 210 of the Complaint, inclusive as if they were fully set forth herein.**

212.   Section 7402(a) authorizes a district court to issue injunctions and to render judgments that may be necessary or appropriate for the enforcement of the internal revenue laws even when the United States may have other remedies available for enforcing those laws.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

213.   Section 7402 manifests the congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws. The statute has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute.

**Answer: This paragraph contains a legal assertion to which no response is required. To the extent that allegations in this paragraph are in any way inconsistent with the law, those allegations are denied.**

214.   Defendants, through the actions described above, have engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws. Defendants have promoted an abusive tax scheme and aided and abetted understatements of tax liabilities. Defendants, through their conduct, have caused their customers to claim over 1.8 billion dollars of overvalued and improper charitable contribution deductions, resulting in hundreds of millions of dollars of tax harm.

**Answer:** **Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

215.   Defendants continue to promote the conservation easement syndication scheme, and participation in their conservation easement syndication scheme appears to be growing over the last five to seven years.

**Answer:** **Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

216.   Customers continue to claim bogus deductions as a result of the conservation easement syndication scheme.

**Answer:** **Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

217.   Defendants' conservation easement syndication scheme has caused irreparable harm to the United States.

**Answer:** **Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

218.   Defendants' conduct has caused and is causing substantial revenue loss to the United States Treasury, some of which may be unrecoverable.

**Answer**: Deny.

219.  IRS scrutiny of the conservation easement syndication scheme, including issuing a Notice identifying the conservation easement syndication scheme as a "listed transaction," has not deterred Defendants from promoting this abusive tax scheme, aiding and abetting understatements of tax liabilities, and otherwise interfering with the enforcement of the internal revenue laws.

**Answer**: **Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies that Notice 2017-10 adequately or clearly identifies the listed transaction, and avers that he has protectively filed Forms 8918 with the IRS identifying any appraisal he completed for a client that could be described in Notice 2017-10. Mr. Clark denies the remaining allegations of this paragraph.**

220.  If Defendants are not enjoined, they will likely continue to engage in conduct subject to penalty under 26 U.S.C. §§ 6700, 6701, 6695A, and 6694, and conduct that interferes with the enforcement of the internal revenue laws.

**Answer**: Deny.

221.  Enjoining Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendants' illegal conduct and the harm it causes the United States.

**Answer**: Deny.

222.  Enjoining Defendants is also necessary as the United States otherwise lacks an adequate remedy at law.

**Answer**: Deny.

<u>COUNT V:</u>

Disgorgement under 26 U.S.C. § 7402 against all Defendants as Necessary or
Appropriate to Enforce the Internal Revenue Laws

223.   The United States incorporates by reference the allegations contained
in paragraphs 1 through 174.

**<u>Answer</u>: Mr. Clark incorporates and restates by reference the foregoing**

**responses to Paragraphs 1 through 222 of the Complaint, inclusive as if they**

**were fully set forth herein.**

224.   Section 7402 of the Internal Revenue Code authorizes a district court
to issue orders, judgments, and decrees as may be necessary or appropriate for the
enforcement of the internal revenue laws.

**<u>Answer</u>: This paragraph contains a legal assertion to which no response**

**is required. To the extent that allegations in this paragraph are in any way**

**inconsistent with the law, those allegations are denied.**

225.   Defendants have unjustly profited at the expense of the United States
by charging customers fees for participating in the conservation easement scheme
which Defendants knew hinged upon the improper and overvalued tax deductions
that their customers claimed.

**<u>Answer</u>: Mr. Clark denies the existence of a "conservation easement**

**scheme." Mr. Clark denies the remaining allegations of this paragraph.**

226.   Defendants are not entitled to these ill-gotten gains. But for the
Defendants' conduct, customers would not have received the overvalued and
improper tax benefits (and corresponding refunds).

**<u>Answer</u>: Deny.**

227.   The Court should enter an order under 26 U.S.C. § 7402(a) requiring Defendants to disgorge to the United States the gross receipts that Defendants received for their participation in the conservation easement syndication scheme.

**Answer: Mr. Clark denies the existence of a "conservation easement syndication scheme." Mr. Clark denies the remaining allegations of this paragraph.**

## DEFENSES

Without assuming any burden of proof that otherwise rests with Plaintiff,

Mr. Clark asserts the following defenses:

### FIRST DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

### THIRD DEFENSE

Plaintiff's claims are barred under the doctrine of estoppel.

### FOURTH DEFENSE

Plaintiff's claims are barred because the Court lacks subject matter jurisdiction.

### FIFTH DEFENSE

Plaintiff's claims are barred because Mr. Clark's actions were at all times justified and proper under applicable law.

## SIXTH DEFENSE

Plaintiff's purported claim for relief seeking disgorgement of Mr. Clark's gross receipts and prejudgment interest would violate the Excessive Fines Clause of the Eighth Amendment of the United States Constitution.

## SEVENTH DEFENSE

Plaintiff's claims are barred because Plaintiff and/or its attorneys lack the statutory authority to seek the relief that Plaintiff's Prayer for Relief purports to seek, including at least the request for disgorgement.

## EIGHTH DEFENSE

Plaintiff's claims are barred because Plaintiff has adequate remedies at law and an injunction is neither necessary, nor appropriate.

## RELIEF SOUGHT

In response to the "Relief Sought" contained in the unnumbered paragraph following paragraph 227 of the Complaint and in response to Plaintiff's unnumbered headings throughout the Complaint, Mr. Clark denies that Plaintiff is entitled to any relief in this action, and denies all liability and allegations of misconduct alleged in the "Relief Sought" and unnumbered headings.

WHEREFORE, Mr. Clark prays for the following relief against Plaintiff:

a. That this Court find that Mr. Clark has not engaged in any conduct subject to injunction, disgorgement, or other penalty under 26 U.S.C. §§ 6694, 6695A, 6700, 6701, 7402, 7407, or 7408;

b. That this Court find that Plaintiff is not entitled to the injunctive or other relief it seeks under 26 U.S.C. §§ 7402, 7407, or 7408;

c. That this Court render judgment in favor of Mr. Clark with respect to all counts and causes of action alleged against him in the Complaint, and that this Court dismiss the Complaint in its entirety with prejudice as it relates to Mr. Clark;

d. That this Court order that Plaintiff take nothing from Mr. Clark by reason of its Complaint;

e. That this Court award Mr. Clark his costs and attorneys' fees; and

f. That this Court grant Mr. Clark such other relief as the Court deems appropriate.

## **COUNTERCLAIM**

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Mr. Clark ("Counterclaim-Plaintiff"), by his undersigned counsel, hereby counterclaims against the Plaintiff ("Counterclaim-Defendant") and alleges as follows:

## JURISDICTION

1.     This counterclaim arises under section 7431 of the Internal Revenue Code (26 U.S.C.) (the "Code") and the laws of the United States for the recovery of statutory and/or actual and punitive damages for the intentional, knowing, in bad faith, grossly negligently, and/or negligent unauthorized disclosure of return information with respect to Counterclaim-Plaintiff by Charles P. Rettig, Commissioner of the Internal Revenue Service, Richard E. Zuckerman, Principal Deputy Assistant Attorney General of the Department of Justice Tax Division, Douglas O'Donnell, Commissioner of the Internal Revenue Service Large Business and International Division, Sunita Lough, Deputy Commissioner of Internal Revenue Service Services and Enforcement, and other unknown agents of the Internal Revenue Service (the "IRS") and Department of Justice ("DOJ") in violation of 26 U.S.C. § 6103.

2.     This Court has jurisdiction over this counterclaim pursuant to 26 U.S.C. § 7431(a)(1) (unauthorized disclosure by employee of United States), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1340 (claim arising under the internal revenue laws), and/or 28 U.S.C. § 1367 (supplemental jurisdiction).

3.     This Court has personal jurisdiction over the Counterclaim-Defendant as a consequence of the Counterclaim-Defendant filing the Complaint and the statements at issue being published and made available in the State of Georgia.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e). By filing a Complaint against Counterclaim-Plaintiff, Counterclaim-Defendant has also agreed that venue is proper in this District.

5.     This is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure because it arises out of transactions that are the subject of Counts I, II, III, IV, and V of the Complaint.

6.     In the alternative, this is a permissive counterclaim under Rule 13(b) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

7.     Mr. Clark, an individual and citizen of the United States, is a taxpayer of the United States of America.

8.     Mr. Clark has been the subject of an ongoing civil suit brought against him and five co-defendants by Counterclaim-Defendant in this Court (the "Ongoing Litigation") since December 18, 2018.

9.     During the pendency of the Ongoing Litigation, employees and officers of the Internal Revenue Service and the Department of Justice ("IRS and

DOJ Officials") have intentionally, knowingly, in bad faith, grossly negligently, and/or negligently made numerous statements that constitute unauthorized and unlawful disclosures of Mr. Clark's return information.

### IRS and DOJ Officials Disclosed Mr. Clark's Return Information

10.     IRS and DOJ Officials made public statements about Mr. Clark in formal press releases, to the press, and at speaking engagements that impermissibly disclosed "data, received by, recorded by, prepared by, furnished to, or collected by the Secretary . . . with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of [Mr. Clark] under [the Code] for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A).

11.     The statements described in paragraph 10 of this counterclaim, include, but are not limited to the following:

   a.     On December 19, 2018, employees of the DOJ Office of Public Affairs disclosed the following to the general public in a press release: "The United States filed a complaint seeking an order stopping Nancy Zak, Claud Clark III, EcoVest Capital Inc., Alan N. Solon, Robert M. McCullough, and Ralph R. Teal, Jr., from organizing, promoting, or selling an allegedly abusive conservation easement syndication tax scheme, the Justice

Department announced today. . . . Defendants also allegedly rely on grossly overvalued appraisals as part of their scheme. . . . [T]he defendants made or furnished gross valuation overstatements about the valuation of conservation easements and the corresponding tax deductions, or caused others to do so. . . . [The] defendants have organized, promoted, and sold at least 96 conservation easement syndicates resulting in the syndicates reporting over $2.0 billion of tax deductions from overvalued and improper 'qualified conservation contributions,' and have passed those tax deductions through to the thousands of customers of defendants' scheme, resulting in hundreds of millions of dollars of tax harm." Dep't of Justice, Press Release 18-1672 (Dec. 19, 2019) (*hereinafter*, "DOJ Press Release").

  b. On December 19, 2018, employees of the DOJ Office of Public Affairs disclosed the following statement by Richard E. Zuckerman, DOJ Tax Division's Principal Deputy Assistant Attorney General, to the general public in a press release: "The Department of Justice is working with our partners in the Internal Revenue Service to shut down fraudulent conservation easement shelters, which in this case were based on willfully false valuations." DOJ Press Release.

c.      On March 19, 2019, employees of the IRS disclosed the

following to the general public in a news release: "The promoters obtain an

inflated appraisal of the conservation easement based on unreasonable

factual assumptions and conclusions about the development potential of the

real property . . . . In December 2018, the Department of Justice sued to shut

down promoters of a conservation easement syndicate scheme. For more

see DOJ Press Release 18-1672 [hyperlink]." IRS News Release IR-2019-47

(March 19, 2019).

d.      On November 12, 2019, employees of the IRS disclosed the

following in a press release: "These audits and investigations cover billions

of dollars of potentially inflated deductions as well as hundreds of

partnerships and thousands of investors . . . . In December 2018, the

Department of Justice filed a complaint seeking to stop several individuals

and an entity from organizing, promoting or selling allegedly abusive

syndicated conservation easement transactions." IRS News Release IR-

2019-182 (Nov. 12, 2019).

e.      On November 12, 2019, employees of the IRS disclosed the

following statement by Charles P. Rettig, Commissioner of the IRS, in a

news release: "We will not stop in our pursuit of everyone involved in the

creation, marketing, promotion and wrongful acquisition of artificial, highly

inflated deductions based on these aggressive transactions." IRS News

Release IR-2019-182 (Nov. 12, 2019).

      f.     On or about November 12, 2019, employees and/or officers of

the IRS disclosed the following to Richard Rubin of the Wall Street Journal:

"The IRS said . . . its combined civil and criminal efforts include billions of

dollars in deductions and thousands of investors in the deals . . . . In some

deals, high-income people can invest $1 and claim $4 or more in deductions

within months, enough to turn a quick profit on the tax break. Those deals

have been particularly popular in the southeastern U.S. . . . Also last year,

the IRS filed suit against easement promoters in Georgia." Richard Rubin,

*IRS Pursues Criminal Cases on Land-Tax Donation Deals*, WALL STREET

JOURNAL (Nov. 12, 2019).

      g.     On November 14, 2019, Charles P. Rettig, Commissioner of the

IRS, disclosed the following to the attendees of his presentation at the

American Institute of CPAs National Tax Conference in Washington, D.C.:

"We don't appreciate the activities that have gone on with respect to the

syndicated conservation easements; there are some artificial appraisals there,

some fatal flaws." Paul Bonner, *IRS Commissioner Seeks to Enhance*

*Taxpayer Contacts, Target Enforcement*, JOURNAL OF ACCOUNTANCY: NEWS (Nov. 14, 2019).

h.      On November 14, 2019, Douglas O'Donnell, Commissioner of the IRS Large Business and International Division, disclosed the following to the attendees of his presentation at the American Institute of CPAs National Tax Conference in Washington, D.C.: "According to O'Donnell, the IRS looked for reporting gaps in the disclosures filed by investors and material advisers to determine if reporting obligations were being met. 'To the extent they aren't, we have appropriate penalties to use to bring people into compliance,' O'Donnell said. 'And we began doing that work.' . . . 'We found out that we didn't necessarily have enough appraisers or valuation specialists, so we've gotten approval to contract for a significant number of outside experts to help us with this work.'" Kristen A. Parillo, *IRS is Building Up its Easement Toolbox*, TAX NOTES (Nov. 15, 2019).

i.      On November 14, 2019, Sunita Lough, Deputy Commissioner of IRS Services and Enforcement disclosed the following to the attendees of his presentation at the American Institute of CPAs National Tax Conference in Washington, D.C. or to a member of the press: "Lough said that when litigating syndicated easement cases, the IRS will follow the successful

strategy used against microcaptive transactions. 'I'm very comfortable we will have wins in conservation easement cases because some of the appraisals are really bad and can't stand on their own.'" Kristen A. Parillo, *IRS is Building Up its Easement Toolbox*, TAX NOTES (Nov. 15, 2019).

12.    On information and belief, IRS and DOJ Officials have made other statements constituting impermissible disclosure of Mr. Clark's return information. Such statements continue to be made as of the date of this counterclaim.

13.    On information and belief, some or all of the improper disclosures described in paragraphs 11 and 12, and the subparagraphs thereunder, of this counterclaim were not based on information publicly available or from the public record.

14.    On information and belief, the DOJ Press Release was drafted before the filing of the Complaint and was released immediately thereafter.

15.    On information and belief, the DOJ Press Release contains information not based on the Complaint filed December 18, 2018.

**IRS and DOJ Officials' Disclosures Were Unauthorized**

16.    To protect taxpayers like Mr. Clark, the Code provides that return information shall be confidential except as otherwise authorized. 26 U.S.C. § 6103.

17.     No provision of the Code authorized the IRS and DOJ Officials to circumvent this statutorily mandated protection and disclose Mr. Clark's return information to the general public and members of the press.

18.     Mr. Clark did not authorize the IRS and DOJ Officials to disclose Mr. Clark's return information to the general public and members of the press. Mr. Clark takes his ethical duty as an appraiser to protect the confidential information of his clients seriously.

19.     The Code or law did not authorize, and does not authorize, IRS and DOJ Officials to disclose Mr. Clark's return information to the general public and members of the press solely on the basis that the information had/has become a matter of public record, *e.g.*, in the course of a judicial proceeding, or on any other basis.

**IRS and DOJ Officials' Disclosures Were Intentional**

20.     The IRS and DOJ Officials made the public statements described in paragraphs 11 and 12 intentionally, knowingly, in bad faith, grossly negligently, and/or negligently in order to discourage participation in what the IRS calls "syndicated conservation easement transactions" and to impugn the reputation of one of the most experienced and well-reputed conservation easement appraisers,

Mr. Clark, without first having to prove the merits of their gross valuation misstatement claims in an administrative proceeding, let alone in a court of law.

21.    The increased zeal for enforcement in the area and the strategic timing and inflammatory nature of the statements, among other facts, evidence the intent described in paragraph 20 of this counterclaim.

22.    The disclosures described in paragraphs 11 and 12 were knowingly and intentionally made by IRS and DOJ Officials.

23.    The disclosures described in paragraphs 11 and 12 were made by IRS and DOJ Officials in bad faith.

24.    The disclosures described in paragraphs 11 and 12 were made by IRS and DOJ Officials with the deliberate intent of affecting Mr. Clark's reputation and business adversely.

25.    The disclosures described in paragraphs 11 and 12 were made by IRS and DOJ Officials with reckless disregard.

26.    The disclosures described in paragraphs 11 and 12 were grossly negligently, or at the very least negligently, made by IRS and DOJ Officials.

27.    The disclosures described in paragraphs 11 and 12 have had the actual effect of adversely affecting Mr. Clark. Mr. Clark has been harmed by the disclosures described in paragraphs 11 and 12.

## COUNTERCLAIM COUNT I

28.     Counterclaim-Plaintiff incorporates the allegations of paragraphs 1 through 27, above, as if fully re-alleged here.

29.     Counterclaim-Plaintiff is entitled to statutory and/or actual and punitive damages under 26 U.S.C. § 7431 for the intentional, negligent, in bad faith, and/or grossly overzealous negligent disclosures of "return information" made by employees and officers of the United States in violation 26 U.S.C. § 6103.

## RELIEF REQUESTED

**WHEREFORE,** Counterclaim-Plaintiff hereby respectfully requests that this Court grant the following relief:

A.     At least $1,000 for each unauthorized disclosure of return information;

B.     Actual damages sustained by the Counterclaim-Plaintiff as a result of the unauthorized disclosures, the extent of which at this time cannot be completely nor accurately ascertained but which will be more fully known after the completion of discovery and include, but are not limited to, substantial professional and personal embarrassment;

C.     Punitive damages for each willful or grossly negligent disclosure of return information;

D.      Cessation of public statements relating to Counterclaim-Plaintiff and his appraisals until the completion of the Ongoing Litigation;

E.      Attorney's fees and costs; and

F.      Such other and further relief as the Court may deem just and proper.

[signature on following page]

Dated:       December 24, 2019          Respectfully submitted,

KHAYAT LAW FIRM

/s/ Robert C. Khayat, Jr.
ROBERT C. KHAYAT, JR.
Georgia Bar No. 416981
75 Fourteenth Street, N.E., Suite 2750
Atlanta, Georgia 30309
Telephone: (404) 978-2750
Facsimile: (404) 978-2901
Email: rkhayat@khayatlawfirm.com

CAPLIN & DRYSDALE, CHARTERED

NILES A. ELBER
DC Bar No. 488099
*Admitted Pro Hac Vice*

ROSS R. SHARKEY
DC Bar No. 1033405
*Admitted Pro Hac Vice*

AMANDA M. LEON
D.C. Bar No. 888273633
*Admitted Pro Hac Vice*

One Thomas Circle NW, Suite 1100
Washington, DC 20005
Telephone: (202) 862-7827
Facsimile: (202) 429-3301
Email: nelber@capdale.com

*Counsel for Defendant Claud Clark III*

## **LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing *Claud Clark's Answer and Defenses to Plaintiff's Complaint, and Counterclaim* has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt. font.


/s/ Robert C. Khayat, Jr.
ROBERT C. KHAYAT, JR.
Georgia Bar No. 416981

*Counsel for Defendant Claud Clark III*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing document was electronically filed this day with the Clerk of the Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

This 24th day of December, 2019.

/s/ Robert C. Khayat, Jr.
ROBERT C. KHAYAT, JR.
Georgia Bar No. 416981

*Counsel for Defendant Claud Clark III*