IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | Case No. 1:18-cv-05774-AT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY ZAK, | ) | |
| CLAUD CLARK III, | ) | |
| ECOVEST CAPITAL, INC., | ) | |
| ALAN N. SOLON, | ) | |
| ROBERT M. MCCULLOUGH, and | ) | |
| RALPH R. TEAL JR., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## JOINT PROPOSED AMENDED SCHEDULING ORDER

Pursuant to the Court's December 10, 2019 Order (ECF No. 119), the parties are filing this joint proposed amended scheduling order. In addition to presenting their alternative proposed schedules, the parties have provided their position on the discovery issues currently outstanding, along with their positions on the three items outlined in the Court's Order: (1) proposed timelines for disclosure of expert witnesses and any accompanying expert reports; (2) a more specific justification from the United States for seeking an expansion in the number of depositions than

1

has already been granted; and (3) what specific documentary discovery has been accomplished and what remains outstanding.

## I.   PROPOSED SCHEDULE

The parties do not agree on the schedule for litigating and resolving this case. The table below includes the dates separately proposed by the United States and the Defendants.

| Event | United States' Proposal | Defendants' Proposal |
|---|---|---|
| United States' response to Counterclaim by Claud Clark III | February 24, 2020 | February 24, 2020 |
| Amended pleading deadline | April 16, 2020 | March 16, 2020 |
| Fact discovery deadline | November 13, 2020 | June 8, 2020 |
| Expert reports/disclosures | March 12, 2021 | June 15, 2020 |
| Rebuttal reports/disclosures | June 11, 2021 | July 15, 2020 |
| Expert discovery deadline | September 10, 2021 | August 10, 2020 |
| Settlement conference deadline | December 10, 2021 | August 24, 2020 |
| Summary judgment deadline | November 12, 2021 | September 10, 2020 |

### A.   The United States' Position on Proposed Schedule

The United States has proposed a schedule that is commensurate with the needs of this case. The United States' allegations in this case are serious, and the outcome of this case will have significant public impact. The allegations span ten years, and the alleged harm to the Treasury from these conservation easement

syndicates is over $2 billion of tax deductions claimed. To shed light on the scope of the allegations, the parties have already collectively produced (as noted below) over 3 million pages of documents, and the Defendants candidly acknowledge that the bulk of their production of responsive emails is not yet complete.

This process takes time. For example, immediately after the Court authorized the United States to begin party discovery, the United States served its first set of document requests on the EcoVest Parties (on June 17, 2019), then served document requests on Mr. Clark (on July 2, 2019), and then served document requests on Ms. Zak (on July 10, 2019). Ms. Zak served her written responses a little more than two months later (on September 16, 2019), at which point she made her first substantial production of documents. To this late date—almost seven months later—the United States is still waiting for Ms. Zak to produce emails in accordance with the parties' agreement (which the parties finally reached after several productive meet-and-confers). The same lengthy production process was repeated with respect to the other Defendants and the third-parties who have retained Defendants' counsel. The United States does not add this point to suggest that any party or counsel has been dilatory, but to illustrate how long it takes to complete simple document discovery in a case of this magnitude and complexity.

The Defendants have also disclosed dozens of fact witnesses—as is their right. But the Defendants propose a schedule that will provide only five additional months to complete fact discovery, review the enormous volume of documents exchanged, conduct the necessary nonparty discovery, depose the Defendants and their witnesses, prepare and disclose expert reports, and conduct depositions of experts. The United States contends that the work necessary to prepare a complex civil matter like this one for trial cannot realistically be accomplished on the timeline set forth by the Defendants. While the Defendants' motivations for seeking a "fast track" discovery schedule are obvious, in a matter of this significance those concerns must give way to a schedule that provides sufficient time to fully discover the case, and avoid a result that is tainted by time constraints that may assist in clouding the issues and burying the complete truth about Defendants' conduct.

The quality and quantum of evidence needed in this case is significant. To render a judgment, the Court will need to evaluate Defendants' conduct in organizing, promoting, and selling conservation easement syndicates under 26 U.S.C. § 6700. Section 6700 conduct encompasses two types of statements: gross valuation overstatements and false or fraudulent statements about tax benefits that Defendants knew or had reason to know were false or fraudulent.

A gross valuation overstatement is any statement as to the value of property or services if the value stated exceeds 200 percent of the amount determined to be the correct valuation, and the value of such property or services is directly related to the amount of any deduction or credit for federal income tax purposes. § 6700(b)(1). While it is unclear whether Defendants intend to proffer expert testimony on valuation (or on any issue given that no expert has been identified in any Defendant's initial disclosures), the United States intends to do so. The United States' proposed schedule attempts to capture sufficient time for an expert to opine on value including site visits of the real property under Rule 34.

For the second category of statements, false or fraudulent statements, the Court will be asked to first determine such statements are false or fraudulent and then determine whether Defendants knew or had reason to know the statements were false or fraudulent. Given that people rarely ever admit to knowing that their statements were false, cases involving § 6700 routinely encompass comprehensive discovery of evidence that indicates what Defendants knew at the time they made the statements. This includes a variety of third party witnesses, such as advisors, accountants, or attorneys, that may have provided opinions (favorable or not) about Defendants' proposed plan; persons who sold the plan on behalf of Defendants such as broker-dealers or registered representatives; people working in concert

with Defendants on the plan or arrangement; and, people who invested or bought the plan.

The Defendants created numerous transaction documents to organize and execute the conversation easement syndicates at issue. These transactions documents are "public-facing" documents that often reflect the Defendants' well-worn view that these transactions are not abusive. As a result, transactional documents are only one part of the story in this case; much of the email discovery and discovery of third parties in this case will focus on how the conservation easement syndicates were actually pitched—which focuses not only on Defendants' statements but also sheds light on Defendants' state of mind when selling the syndicates. To that end, the nonparty discovery already completed by the United States has yielded fruitful results in that regard.

The Court will also need to determine whether an injunction is the appropriate remedy, and the scope of that remedy. Factors bearing on this determination include the traditional equitable factors: (1) irreparable injury; (2) remedies available at law inadequate; (3) balance of hardships; (4) public interest. When deciding whether an injunction is necessary, Courts also consider: (1) the gravity of harm; (2) extent of participation; (3) scienter; (4) isolated or recurrent nature; (5) recognition of culpability; and (6) the likelihood of future violations. All these factors require the Court to consider a quantum of evidence regarding

Defendants' conduct; this case is not simply about one or two transactions, but about conduct spanning over a decade and is continuing.

The United States will defer scheduling depositions until it has received and reviewed all responsive emails from the Defendants. At this point, none of the Defendants have completed their production of responsive emails, and only one (Ms. Zak) has even proposed a date by which that production will be completed (February 15, 2020).[1] Given the length of time that has elapsed in discovery thus far and time needed to meet-and-confer on document discovery issues, this is an unrealistic proposition by Defendants. Additionally, the United States expects to conduct discovery of Defendants' reliance witnesses which include lawyers. While Defendants have waived privilege with respect to advice they relied upon in organizing, promoting, and selling the conservation easement syndicates, the United States anticipates that Defendants will raise privilege issues that may require it to seek the Court's assistance.

Lastly, the United States' proposed schedule contemplates phased discovery for fact and expert witnesses. In the United States' view, expert witnesses must have the full benefit of fact discovery before rendering their opinions. This

---

[1] The EcoVest Parties noted below that they can be prepared to substantially complete their document production by February 15, 2020. Similarly, Mr. Clark expects to produce his responsive emails within 4 to 6 weeks.

proposal is intended to avoid false conflicts among expert witnesses and will ultimately make the opinion testimony in this case most helpful to the Court.

### B.   <u>Defendants' Position on Proposed Schedule</u>

Plaintiff's latest scheduling proposal—which would delay resolution of this case for at least another **two or three years**—is a tacit admission that Plaintiff lacks the evidence necessary to prove its well-publicized claims of fraud and gross valuation overstatements with respect to the conservation easements. If Plaintiff had a good faith basis to assert that appraisals submitted to the IRS were overstated by 200% or more (*see* Complaint, ECF No. 1 at ¶¶ 92, 109, 151, 152, 166), wouldn't Plaintiff already have its own appraisals and not need 18 more months for its experts to conduct site visits and opine on the conservation easements at issue?

Plaintiff's five-page attempted justification for expanded discovery— provided to Defendants for the first time at 3:14 pm on the day this joint filing was due—does not provide sufficient reasons to extend discovery into September 2021—almost three *years* after the Plaintiff filed its complaint (ECF No. 1).

Plaintiff's extraordinary demand for more than two years of discovery is inconsistent with the Local Rules (which provide for a standard discovery period of 4 months and a maximum discovery period of 8 months) and conflicts with this Court's order from June 2019 that states, "[a]s to the overall timeframe for discovery, the Court finds that an initial discovery period of 8 months (including

8

both fact and expert discovery) should be sufficient." (ECF No. 86 at 8). That period commenced as to all discovery in December 2019, when the Court ruled on the motions to dismiss and reiterated the eight-month discovery period (ECF No. 119 at 21). In addition, the Court already provided Plaintiff with an additional 5 months of document discovery, which began in June 2019. (ECF. No. 86 at 8). Plaintiff thus will have had 13 months of combined discovery by August 10, 2020. Nothing has changed to warrant yet another extension of the schedule in this already 1-year-old case.

Plaintiff's suggested September 2021 discovery cutoff evinces a lack of a plan to bring this case to its conclusion on a reasonable timeline based on reasonable diligence. Before discovery even began in this case, Plaintiff had unlimited time to conduct pre-filing diligence based on facts available from tax filings, IRS audits, and elsewhere. The eight DOJ attorneys that have entered appearances in this case and their team should not need until September 2021 to complete discovery.

Plaintiff's scheduling request appears to be based on the mistaken belief that it needs to comprehensively vet in discovery every one of the 96 projects it put at issue when it brought this case. That is incorrect. Resolving this case will not require the parties or the Court to master each and every transaction because the similarities between the Defendants' respective projects far outweigh their

differences. The transactions are structured similarly and are all subject to the same rigorous due diligence by lawyers and other accredited professionals. The parties and the Court should focus their attention on a subset of particular transactions and evaluate Plaintiff's claims in the context of those transactions. The eight-month discovery period previously set by the Court on top of the previous period of document discovery provides ample time to do so.

Plaintiff's extended discovery period is not proportional to the needs of this case and would unreasonably increase Defendants' expenses, while keeping them under a cloud of alleged fraud for another two years. Plaintiff brought this case. It should bear the burden of not only proving its claims, but doing so in a reasonable amount of time. Plaintiff should not be permitted to level extremely serious allegations of fraud, trumpet them publicly, and then endlessly delay Defendants' opportunity to have their day in court and clear their good names.

## II.    **DOCUMENT DISCOVERY COMPLETED**

All parties have made their initial disclosures and provided written responses to requests for production. To date, all parties but Claud Clark III ("Mr. Clark") have issued requests for production under Rule 34.

### A.    **Document Productions by the United States**

The United States has made four separate productions of documents to Defendants—three productions of documents from its own files and one

production of documents produced by third parties in response to the United

States' Rule 45 subpoenas. These productions include documents responsive to

Rule 34 requests by Defendants Nancy Zak and the EcoVest Parties, and also

include documents identified by the United States in its initial disclosures (ECF

No. 82).

Collectively, the United States has produced nearly 2 million pages of

documents, consisting of over 241,000 pages from IRS files and other documents

collected by the United States in the context of this litigation. The IRS files

produced thus far consist of the nonprivileged portions of the investigative file that

resulted in this lawsuit and the underlying examination files for the conservation

easement syndicates organized, promoted, or sold by the EcoVest Parties and/or

Ms. Zak. To date, that includes 42 examination files which contain documents

collected by the IRS and documents created by the IRS (including emails that IRS

employees included in the examination files pursuant to IRS procedures). The

specific details of the productions are set forth in detail below:

| Date Served | Documents | Page/Image Count |
|---|---|---|
| September 5, 2019 | 6,383 | 90,238 |
| October 4, 2019 | 1,338 | 20,168 |
| November 5, 2019 | 262,858[2] | 1,673,428 |

---

[2] These documents were produced to the United States by the following third
parties in response Rule 45 subpoenas: Capital Investment Brokerage, Inc. (10,548
documents); North American Land Trust (321 documents); Triloma Securities,
LLC (251,845 documents); and Jillian Wallach (144 documents).

| | | |
|---|---|---|
| November 22, 2019 | 4,029 | 130,693 |
| **Total** | 274,608 | 1,914,527 |

In response to Defendants' document requests, the United States intends to produce by January 31, 2020, a final set of documents maintained in the IRS's investigative file. Similarly, by January 31, 2020, the United States intends to make an additional production of documents maintained in six additional examination files. The IRS has an additional six examination files and is imaging those files for review and production.

### B.   Document Productions by Ms. Zak

Ms. Zak has produced approximately 20,000 documents—comprising over 240,000 pages—in response to Plaintiff's requests under Rule 34. Ms. Zak produced the documents to Plaintiff in three tranches as set forth in the following chart.

| Date | Documents | Pages |
|---|---|---|
| 8/2/2019 | 380 | 6,264 |
| 9/16/2019 | 4,999 | 75,834 |
| 10/4/2019 | 14,678 | 160,733 |

Materials produced to date include the non-privileged portions of real estate project files and other documents relevant to Plaintiff's requests which were maintained in the ordinary course of Ms. Zak's business. Ms. Zak has now produced to Plaintiff the majority of her documents that are subject to production, with the exception of certain email communications and other electronically stored

information ("ESI"). Plaintiff and Ms. Zak have met and conferred multiple times regarding the production of emails and other ESI. Consistent with those discussions, Ms. Zak has identified, reviewed and is now preparing to produce non-privileged, relevant ESI not already contained in Ms. Zak's real estate project files and select email communications. Ms. Zak anticipates completing this production before January 31, 2020. Ms. Zak also has identified and is reviewing additional email communications and is in the process of negotiating email search terms with Plaintiff. Ms. Zak anticipates completing a final production of email communications by February 15, 2020.

### C.    <u>Document Productions by Mr. Clark</u>

Mr. Clark has made two productions of documents to the United States— one on August 5, 2019, and a supplemental one on December 16, 2019. The vast majority of the documents produced in the supplemental production were appraisal files dating approximately from 2009 through 2011 that were kept in paper form and had to be scanned and converted to portable document format (PDF) files by a third party vendor in order to produce them electronically.

Mr. Clark's productions thus far, which have included approximately 100 gigabytes of data, address all of the requests made by the United States in its First Request for Production of Documents to Mr. Clark dated July 2, 2019 with the exception of electronic communications. Emails that were saved directly in Mr.

Clark's appraisal files, paper or electronic, were produced with the appraisal files

in the August and December productions. Additionally, approximately 90,000

emails have been collected for review by counsel for Mr. Clark, who have agreed

to review the data set for responsiveness using search terms provided by the United

States. Responsive emails will be produced as described in Section III.A.2 below.

| Date Served | Documents | Page/Image Count |
|---|---|---|
| August 5, 2019 | 8,749 | 395,400 |
| December 16, 2019 | 638 | 12,371 |

### D.   **Document Productions by the EcoVest Parties**

The EcoVest Parties began producing documents before Plaintiff even

served its requests for production. To date, the EcoVest Parties have produced

55,183 documents, totaling 465,530 pages. The following table summarizes these

productions.

| Date Served | Documents | Page/Image Count |
|---|---|---|
| May 3, 2019 | 4,063 | 105,646 |
| May 20, 2019 | 2,151 | 110,951 |
| July 19, 2019 | 1 | 1 |
| October 7, 2019 | 1,381 | 120,821 |
| January 6, 2020 | 47,587[3] | 128,111 |
| **Total** | 55,183 | 465,530 |

By October 7, 2019, the EcoVest Parties had produced the vast majority of

their documents subject to production in this case, other than emails. On January 6,

---

[3] This production includes 12,667 documents collected in response to the United
States' Rule 45 subpoena to Graeme Black.

2020, the EcoVest Parties produced 47,587 documents consisting of responsive emails and attachments. The EcoVest Parties are continuing to review and produce additional emails and attachments that hit on the broad search terms requested by Plaintiff, and can be prepared to substantially complete their document production by February 15, 2020.

## III.   DOCUMENT DISCOVERY OUTSTANDING AS TO PARTIES

### A.   Requests by the United States

The United States issued requests to each Defendant seeking, among other things, communications regarding the transactions at issue. As to Defendants' emails, counsel for the parties agree that email communications are responsive to these requests. Because the email data set for each Defendant is large, counsel agreed that the United States would provide search terms to be used to produce responsive emails. To date, the status of email productions from each Defendant is as follows:

1.   <u>Ms. Zak</u>: Ms. Zak located and preserved email communications totaling approximately 100 GB. Ms. Zak has conducted targeted searches of that 100 GB email data set and has produced responsive email communications to Plaintiff as part of her October 4, 2019 document production. Ms. Zak has identified and is reviewing additional emails in the 100 GB email data set, has agreed to conduct further searches of the email data set using search terms

provided by the United States and to continue to meet-and-confer on the issue, if needed. Ms. Zak anticipates completing production of email communications by February 15, 2020.

2.      Mr. Clark: Mr. Clark has produced copies of email communications that were saved directly in Mr. Clark's appraisal files. Counsel for Mr. Clark has located approximately 90,000 emails and they are planning to produce responsive emails within four to six weeks. Counsel for Mr. Clark has also agreed to review search terms provided by counsel for the United States and to continue to meet-and-confer on the issue, if needed.

3.      The EcoVest Parties: Counsel for the United States and the EcoVest Parties agreed on a set of search terms and custodians for the production of emails. On January 6, 2020, the EcoVest Parties made a production of 47,587 emails and attachments. The EcoVest Parties are continuing to review and produce other emails that hit on the United States' search terms.

## B.      Requests for Electronic Communications by Ms. Zak and the EcoVest Parties

Ms. Zak and the EcoVest Parties issued requests to the United States under Rule 34 seeking, among other things, electronic communications related to this litigation.

### 1.      Ms. Zak and the EcoVest Parties' Position

Plaintiff has refused the Defendants' repeated requests that it search for and

produce responsive emails (beyond the relatively few printed out emails in administrative files) or other electronic documents. Plaintiff seeks to withhold its emails and other relevant electronic documents from discovery, while demanding broad and intrusive discovery of the same type of documents from Defendants. Plaintiff, Ms. Zak, and the EcoVest Parties met and conferred several times and exchanged written correspondence regarding the production of emails and other ESI. Defendants disagree with the United States' position.[4]

Plaintiff's proposed approach would allow it to conceal several important categories of documents, including, *inter alia*: (1) communications maintained outside of administrative files (e.g., emails and correspondence by IRS personnel other than the agents who compiled the administrative files); (2) emails and other electronic documents possessed by the engineers and/or appraisers who participated in valuations of the projects at issue in this case; (3) drafts of IRS documents not included in administrative files; and (4) responsive documents saved locally on IRS computers.

Production of the disputed communications and documents is vital because communications between and among IRS personnel, including engineers and

---

[4] Mr. Clark will soon issue discovery requests, as described in Section III.D, and notes that the emails and other ESI of the United States are particularly relevant to the counts that solely apply to him.

appraisers, relating to the IRS's examinations of conservation projects entered into by partnerships and the valuations of the properties at issue are highly relevant to Plaintiff's allegations of fraud and gross valuation overstatements in this case. Defendants have seen evidence of the existence of such materials that were not included in the administrative files that Plaintiff has produced. Conversely, the administrative files are of limited value without these omitted documents. For example, many of the documents contained in the administrative files are tax forms and project documents that originated with Defendants and their representatives, not the IRS.

Plaintiff says it need not produce emails and ESI because, "this is a classic case of information asymmetry," and claims Defendants have most of the information. Although that might be true in traditional tax refund case, where an individual simply seeks a refund from the IRS, it is not true in this case. The IRS and Plaintiff spent years investigating Defendants and generating huge amounts of information before bringing this suit and alleging Defendants made false statements and gross valuation overstatements. A central basis for those alleged false statements and gross valuation overstatements are the valuations produced by IRS appraisers and/or engineers. Emails to and from those IRS appraisers and/or engineers, along with other ESI created by them and other IRS agents, thus are not only relevant, but are essential to defending against Plaintiff's allegations. Nearly

six months have passed since the EcoVest Parties and Ms. Zak requested those materials. The parties have met and conferred on the issue multiple times. It is no answer for Plaintiff to say that it is "willing to continue to meet-and-confer on the issue."

### 2.   The United States' Position

As noted above, the United States has collected, reviewed, and produced approximately 241,000 pages of documents from IRS employees in response to document requests from Ms. Zak and the EcoVest Parties. Despite the dubious relevance of these materials, the United States has agreed to produce ***all*** nonprivileged portions of the investigative file that resulted in this lawsuit and ***all*** of the underlying examination files for the alleged conservation easement syndicates organized, promoted, or sold by the EcoVest Parties and/or Ms. Zak. To date, that includes 42 examination files, which contain documents collected by the IRS and documents created by the IRS in the course of an examination (including emails that IRS employees included in the examination files pursuant to IRS procedures). Thus, contrary to Defendants' suggestion, the United States has not "refused" to produce emails.

Nevertheless, Defendants seek to require the IRS to search for, collect, host, review, and produce ***additional*** documents outside these administrative and investigatory files – despite the fact that the administrative and investigatory files

are the complete record of the IRS's examination of these transactions. The burden of expending the time and expense of collecting this additional data from individual IRS employees—and then searching, reviewing and producing some of that data—far outweighs any minimal relevance it might possess. The United States has already articulated to counsel some of the burden that is involved in this process – which involves multi-layered review by the IRS for compliance with 26 U.S.C. § 6103 even before the IRS can produce the documents to the Department of Justice. The United States is willing to continue to meet-and-confer on the issue, and can provide additional metrics on the burden of collecting, searching, reviewing and producing such documents.

At bottom, this is a classic case of information asymmetry – the Defendants' conduct is at issue in this case – not the conduct of IRS employees. As a result, Defendants are in possession, custody, or control of most of the documentary evidence. Despite this asymmetry, the United States has already agreed to produce the totality of the investigative and examination files (including over 241,000 pages to date). Finally, the mere fact that Defendants have produced (or will produce) a large quantity of documents does not justify expansive and unnecessary discovery of the United States. Defendants' request for additional searching and production is nothing more than a fishing expedition.

### C.   **Other Outstanding Requests**

As to other requests issued to each Defendant by the United States, counsel have been able to resolve most of the outstanding issues in a series of meet-and-confers with each respective counsel. However, one area of disagreement appears as though it may reach an impasse: whether Defendants' documents that post-date the Complaint need to be reviewed and produced.

### 1.   <u>The United States' Position</u>

The Court will need to decide whether to issue an injunction, and if so, what the scope of the injunction should be. An important element of this analysis is whether the conduct is ongoing or likely to recur. (*See* Section I.A., supra). The United States has repeatedly explained to defendants that documents post-dating the Complaint are directly relevant to this element of the United States' case-in-chief. In addition, the evidence that is most probative—and indeed, most persuasive—of the remaining elements of the United States' case (such as how Defendants organized and sold the transactions) is just as likely to be found in post-Complaint transactions as in pre-Complaint transactions. The date that the United States actually filed the complaint does not inform the relevance or the persuasiveness of the contested discovery.

Thus far, the EcoVest Parties have refused to provide documents that post-date the complaint unless the United States agreed to the same exact time period. That is, given the overwhelming asymmetry of information and despite this case

being about Defendants' conduct, the EcoVest Parties are utilizing their own notion of "reciprocity" to improperly narrow their discovery obligations.

## 2. **Defendants' Position**

Defendants do not believe that documents that post-date the Complaint should be subject to discovery because searching for and reviewing these documents would unduly increase the burdens of discovery in light of these documents' limited probative value. Most of these documents are privileged communications that are not subject to disclosure. Nevertheless, the EcoVest Parties offered to search for and produce responsive documents—including emails—that post-date the Complaint if the United States would agree to do the same. The United States did not agree to this compromise.

## D. **Requests by Mr. Clark**

Counsel for Mr. Clark intends to issue requests for admission, interrogatories, and requests for production to the Plaintiff by the conference scheduled for January 10, 2020 or shortly thereafter. The primary focus of these discovery requests will be the alleged false or fraudulent statements made by Mr. Clark and the alleged substantial or gross valuation misstatements made by Mr. Clark, as stated in the Complaint. Based on the Plaintiff's extraordinary discovery timeline, it appears that the Plaintiff prematurely brought this action and is now

embarked on its own fishing expedition. Mr. Clark also anticipates taking discovery concerning his counterclaim filed on December 24, 2019.

## IV.   LIMITATIONS ON DISCOVERY

The parties are mindful of the Court's concern about the scope of discovery as well as the requirement under the Federal Rules of Civil Procedure that discovery needs to be relevant and proportional. With that in mind, the United States proposes the following with respect to three areas of concern that have become apparent thus far: (a) the number of depositions; (b) the nonparty document discovery under Fed. R. Civ. P. 45; and (c) the geographic scope of discovery.

Defendants generally object to the United States' proposed expansion of discovery because it is inconsistent with the Court's prior orders, unduly burdensome, and disproportionate to the current needs of the case.

### A.   Number of Depositions

In its Order dated December 10, 2019 (ECF No. 119), the Court indicated that counsel may proceed with discovery, but shall be confined to 15 depositions per side, until further order of the Court. The Parties understand that Defendants are, collectively, confined to 15 depositions.

### 1.   The United States' Position

The United States asks that, at this juncture, the Court expand the number of depositions. The United States requests permission to conduct 40 fact depositions plus a deposition for each expert disclosed by any Defendant. The United States now provides a more specific justification for its request to expand the number of depositions from 15 to 40 – noting that it believes that 15 depositions is insufficient in a case of this complexity, for the following reasons.

First, it would not permit the United States to depose each individual disclosed by the Defendants on their initial disclosures. The Defendants have collectively identified 24 unique witnesses in their initial disclosures (12 identified by the EcoVest Parties, *see* ECF No. 55; nine additional unique identified by Mr. Clark, *see* ECF No. 97; and, three additional unique identified by Ms. Zak, *see* ECF No. 98). The United States proposes 40 fact depositions as that would permit the United States to take the depositions of all six Defendants, all witnesses upon whom Defendants intend to rely, as well as 10 additional witnesses. The United States expects that it will use the 10 additional depositions to depose broker-dealers, customers, original landowners, and/or any additional reliance witnesses identified by the Defendants in response to the United States' interrogatories. If, for example, Defendants identify yet additional reliance witnesses in response to the United States' interrogatories that have not already been disclosed, the United

States would seek permission to depose each reliance witness, even if that results in more than 40 fact depositions.

Second, the United States is not persuaded by Defendants' complaints regarding the burden that will accompany the United States' proposal. As noted above, the allegations in the case are significant. Syndicated conservation easements of the type involved in this case have caused $2 billion of tax deductions in harm to the Treasury. On the other hand, Defendants have enriched themselves by organizing, promoting, and selling these transactions. The United States estimates that Mr. Clark has earned nearly $7 million in connection with this scheme. Ms. Zak has earned a more modest (by comparison) $1.7 million. The EcoVest Parties have derived a stunning $33 million from organizing, promoting, and selling these transactions. Thus, given both the gravity of the allegations, the public impact of this litigation, and the staggering sums that Defendants have reaped from the promotion of these transactions, the United States suggests the Court should reject the Defendants' grievances regarding the burden of relaxing certain limitations on discovery.

## 2.    <u>Defendants' Position</u>

Plaintiff's attempt to re-litigate the deposition limitations previously imposed by the Court (ECF. No. 119 at 21) should be rejected. Less than one month ago, the Court ordered that the parties would be entitled to 15 depositions

per side, after Plaintiff had asked for 50 depositions. (ECF. No. 119 at 21). Plaintiff

now seeks 40-plus depositions. There is no reason at this time—when the parties

have not taken a single deposition—to permit Plaintiff to exceed the 15-deposition

limit imposed by this Court, which itself was greater than the presumptive 10-

deposition limit established by the Federal Rules of Civil Procedure. *See* Fed. R.

Civ. P. 30.

  In addition to imposing an undue burden on Defendants, Plaintiff's

continued insistence that it needs testimony from dozens of people around the

country raises serious questions about its plan to bring this case to resolution.

Plaintiff's request for 40 depositions also highlights Defendants' concerns that

Plaintiff brought this case and publicly accused the Defendants of fraud and other

misconduct before it could support such allegations. As a result, Plaintiff now

seeks to embark on an unduly broad and burdensome quest to find materials to

support its claims.

  The fact that Defendants collectively identified 24 witnesses in their initial

disclosures does not warrant another enlargement of the deposition limit—and

certainly not an expansion to 40 fact depositions. *See Tiara Condo. Assoc. Inc. v.*

*Marsh & McLennan Companies, Inc.*, No. 08-80254-CIV, 2008 WL 11321182, at

*2 (S.D. Fla. Oct. 8, 2008) (citation omitted) ("Indeed, the fact that Plaintiff named

these individuals in its witness list and initial disclosures, standing alone, is insufficient to permit depositions beyond the presumptive limit.").

With respect to Mr. Clark in particular, the evidence necessary to prove the counts brought solely against him—i.e., the existence of tax understatements allegedly attributable to his appraisals—is entirely and exclusively within the possession of the IRS, which has been examining Mr. Clark's appraisals for at least 15 years. Consequently, even an unlimited amount of additional depositions would not produce any evidence to further those claims.

Mr. Clark's counsel further propounds that permitting the Plaintiff's request for additional depositions would be tantamount to granting the Plaintiff the ultimate relief it has requested without requiring it to prove the merits of its case as the disproportionate burden of the additional depositions is likely to leave Mr. Clark, an individual in his late 60s, without the resources to mount a proper defense at trial. The Plaintiff's insinuation that Mr. Clark has endless resources to litigate this matter on the schedule it has proposed is totally disconnected from reality.

## B.   **Nonparty Document Discovery**

While the motions were pending, on August 2, 2019, the Court permitted the United States to issue 10 nonparty document subpoenas. (ECF No. 99).

1.    **The United States' Position**

The United States intends to issue additional nonparty document subpoenas under Fed. R. Civ. P. 45 within the geographic scope identified by the Court or as otherwise permitted by the Court. This case requires the Court to determine, in part, that Defendants made or caused others to make false or fraudulent statements and that Defendants had reason to know that the statements were false or fraudulent. Discovery of nonparty witnesses is critical to show how Defendants pitched, marketed, and sold the transaction to others. Defendants emphasize the transaction documents used to structure the deals. But transaction documents alone do not paint a full picture of the abusive and illegal characteristics of this scheme. Many of the documents amount to nothing more than mere window dressing to disguise the true motivations of the deal—the illegal sale of tax deductions. Nonparty witnesses can and will provide evidence, such as email correspondence (of which Defendants have been reluctant to produce thus far), showing that Defendants structure and promote the transactions as a pre-packaged and unlawful way for individuals to reduce or eliminates taxes.

Defendants seek to drastically limit the number of subpoenas the United States can issue, speculating that the subpoenas would somehow delay this case and burden non-parties that have only "tangential involvement" in this case. Given the magnitude and breadth of Defendants' conduct, a drastic limit on the United

States' ability to issue subpoenas in this case would negatively impact the United States' ability to discover Defendants' false statements, and would prevent the Court from obtaining a full picture of Defendants' conduct. Moreover, Defendants' statements to customers, broker-dealers, non-profit organizations, original landowners, and others are certainly not "tangential." Rather, those statements are the heart of this case: whether Defendants made false or fraudulent statements about the tax benefits of their syndicated conservation easements.

### 2.   **Defendants' Position**

There is no need for additional third party discovery at this stage. Plaintiff has already collected more than 1.6 million pages from third parties. As of September 2019, it had served all 10 of the subpoenas that the Court allowed it the month before. Then, on December 13, 2019 (ECF No. 119), Plaintiff informed counsel of its intent to issue Rule 45 subpoenas to nine additional third parties. The EcoVest Parties objected, leading Plaintiff to pare down to 5 its second wave of subpoenas.

While there is nothing talismanic about the number 10, Defendants believe strongly that there should be limitations on the number of Rule 45 subpoenas issued in this case. Plaintiff's broad, scattershot approach threatens to needlessly

delay this case and unnecessarily burden still more non-parties with discovery obligations in a case with which they have only tangential involvement.

### C.   **Geographic Scope:**

In the Court's Order dated December 10, 2019 (ECF No. 119), the Court indicated concern about the appropriate geographic scope of discovery. Specifically, the Court identified eight states in which it would permit discovery: Alabama, Georgia, Indiana, Kentucky, North Carolina, South Carolina, Tennessee, and Texas. The United States takes the position that the geographic scope should be expanded as identified below.

Defendants do not object to the discovery identified in the United States' requests for clarification below so long as (a) any subpoenas comply with the Court's other, non-geographic limitations as to the number and scope of such subpoenas and (b) the Court's reasonable limitation on the number of depositions is respected and there is a reasonable effort by all parties to schedule all depositions in each respective location at the same time to minimize expense. Defendants otherwise object to the expansion of the geographic scope set by the Court and assert that any further request for expansion should be addressed on a deposition-by-deposition basis.

### 1.   **The United States' Request for Clarification**

The United States intends to conduct discovery within the geographic scope articulated by the Court at this juncture, but has three immediate concerns about which it requests clarification from the Court:

Request Number 1. The United States requests clarification that it is permitted to conduct discovery with respect to any witness disclosed by a Defendant that resides outside the eight states articulated by Court order. This would include the witnesses disclosed by Ms. Zak, Mr. Clark, and the EcoVest parties as follows (see ECF Nos. 55, 97, and 98):

  a.  Raymond Veal, in Florida*

  b.  The North American Land Trust ("NALT") and the its employees, Stephen T. Johnson and Steven Carter, in Pennsylvania**

  c.  Vincent Dowling, in Pennsylvania

  d.  James Sack, in Virginia

  e.  Ralph Bowden, in Virginia*

  * The United States has already issued document subpoenas under Rule 45 to these individuals.

  ** The United States has already issued a document subpoena under Rule 45 to the NALT, but not to either employee disclosed.

Request Number 2. The United States requests clarification that for any nonparty to whom a Rule 45 subpoena has already been issued, that a party is permitted to take a deposition of that nonparty even if it is outside the eight state

geographic scope and is otherwise consistent with the Court's limitation of the number of depositions.

Request Number 3. The United States requests clarification that the geographic scope of discovery does not limit discovery of an expert disclosed by any party.

## V.   ADDITIONAL ITEMS FOR JANUARY 10, 2020 HEARING

### A.   The United States' Pending or Anticipated Motions

The United States' motion to strike affirmative defenses in the EcoVest Parties' answer is pending. (ECF No. 24). The United States anticipates filing motions to strike affirmative defenses raised by Ms. Zak and Mr. Clark in their answers filed on December 24, 2019. The United States also anticipates filing a motion with respect to Mr. Clark's counterclaim under 26 U.S.C. § 6103. The United States expects that rulings on those motions may impact the scope of discovery as those rulings will define the claims and defenses at issue in this case. The United States may also file a motion to strike the jury demand in Ms. Zak's answer.

### B.   Defendants' Anticipated Discovery Motion

Defendants anticipate requesting the Court's assistance related to Plaintiff's refusal to produce any ESI from the IRS, including emails (other than the few emails printed in hard copy and saved in administrative files). Plaintiff seeks to

withhold its emails and other relevant electronic documents from discovery while demanding broad and intrusive discovery of the same type of documents from Defendants.

As noted above, Plaintiff's proposed approach would allow it to conceal several important categories of documents, including, *inter alia*: (1) communications maintained outside of administrative files (e.g., emails and correspondence by IRS personnel other than the agents who compiled the administrative files); (2) emails and other electronic documents possessed by the engineers and/or appraisers who participated in valuations of the projects at issue in this case; (3) drafts of IRS documents not included in administrative files; and (4) responsive documents saved locally on IRS computers.[5] Production of the disputed communications and documents is vital for the reasons described above. Therefore, should Plaintiff continue to withhold responsive emails and other ESI, Defendants anticipate that they will seek the Court's assistance in resolving this dispute.

---

[5] Mr. Clark will be issuing discovery requests for similar information in the near future. To the extent the United States maintains its objection with respect to ESI, Mr. Clark will likely seek court assistance to resolve any dispute as well.

### C. **Defendants' Request for Protective Order**

Defendants intend to ask that the Court enter a 502(d) order to protect the potentially privileged or work product protected documents produced in this matter from being used in other matters. *See* Fed. R. Civ. P. 502(d).

The United States welcomes any further discussion about a potential Rule 502(d) order, although it contends that the parties must address 26 U.S.C. § 6103 and the deliberative process privilege in proposing any such order to the Court.

### D. **Defendants' Proposal to Try Case Based on Subset of Projects**

The Complaint alleges a scheme involving 96 *similar* real estate projects. The similarities between the various real estate projects at issue may indeed outweigh their differences. The parties agree that using a subset of projects—beginning at trial or earlier—will result in efficiencies.

Defendants request that the Court set a deadline for parties to submit a plan for trying the case based on a subset of projects. Defendants suggest that the date should be set before expert reports are due so that experts can focus on the subset of projects on which the case will be tried. Such a date also will result in significant cost savings to the parties.

The United States suggests that such proposal be made at the time the parties submit their proposed final pretrial order.

**E.**     **<u>The Parties' Request Regarding a Trial Date</u>**

Given the importance of the case, the severity of the allegations made by the United States, and the ongoing burden that the pendency of this case places on the abilities of Defendants to earn a living, Defendants request that the case should be set for trial at the earliest possible date after the close of discovery or a ruling on any motion for summary judgment. The United States requests that the case be set for trial in accordance with the schedule proposed above in Section I, supra

[Signatures on following page]

Dated: January 6, 2020                    */s/ Erin R. Hines*
                                          Erin R. Hines
                                          Trial Attorney, Tax Division
                                          U.S. Department of Justice
                                          P.O. Box 7238
                                          Ben Franklin Station
                                          Washington, D.C. 20044
                                          (202) 514-6619 (v)
                                          (202) 514-6770 (f)
                                          Erin.R.Hines@usdoj.gov
                                          *Attorney for the United States*


Dated: January 6, 2020                    */s/ Benjamin J. Razi*
                                          Benjamin J. Razi (*pro hac vice*)
                                          COVINGTON & BURLING LLP
                                          850 Tenth St. NW
                                          Washington, DC 20001
                                          Tel.: (202) 662-6000
                                          Fax: (202) 662-6291
                                          Email: brazi@cov.com
                                          *Attorney for the EcoVest Parties*


Dated: January 6, 2020                    */s/ Niles A. Elber*
                                          Niles A. Elber (*pro hac vice*)
                                          CAPLIN & DRYSDALE
                                          1 Thomas Circle NW
                                          Ste. 1100
                                          Washington, DC 20005
                                          Tel.: (202) 862-7852
                                          Email: nelber@capdale.com
                                          *Attorney for Claud Clark III*

Dated: January 6, 2020

*/s/ Nathan E. Clukey*
Nathan E. Clukey (*pro hac vice*)
SIDLEY AUSTIN
1501 K St. NW
Ste. 600
Washington, DC 20005
Tel.: (202) 736-8949
Email: nclukey@sidley.com
*Attorney for Nancy Zak*

    *This document was formatted in Times New Roman 14 pt., in compliance with Local Rule 5.1C.

---

SCHEDULING ORDER

Upon review of the information contained in the Joint Amended Scheduling Order filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

_____

_____

_____

    IT IS SO ORDERED, this _____ day of _____, 2020.

_____
UNITED STATES DISTRICT JUDGE