## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NANCY ZAK, et al., | : | Civil Action No. |
| | : | 1:18-cv-05774-AT |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This matter is before the Court on the United States' Motion to Dismiss Defendant Claud Clark, III's Counterclaim. [Doc. 161.] For the following reasons, the Motion is **GRANTED**.

## I.   Background

On December 10, 2019, this Court denied Defendant Claud Clark III's ("Defendant" or "Clark") Motion to Dismiss. (*See* Order, Doc. 119; Clark Motion to Dismiss, Doc. 41.) Clark subsequently filed his Answer, and asserted a Counterclaim, alleging that the United States improperly disclosed his tax return information, in violation of 26 U.S.C. § 6103 and 26 U.S.C. § 7431. (Clark Answer and Counterclaim, Doc. 123 at 116.) Clark alleges that "IRS and DOJ Officials made public statements about Mr. Clark in formal press releases, to the press, and at speaking engagements that impermissibly disclosed 'data, received by, recorded

by, prepared by, furnished to, or collected by the Secretary . . . with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of [Mr. Clark] under [the Code] for any tax penalty, interest, fine, forfeiture, or other imposition, or other offense.'" (Doc. 123 at 118 (quoting 26 U.S.C. § 6103(b)(2)(A)) (brackets in original).)

Clark alleges that the Internal Revenue Service ("IRS") and Department of Justice ("DOJ") made at least nine statements that implicate 26 U.S.C. § 6013. (Doc. 123.) In one example, Clark alleges that on December 19, 2018, the DOJ Office of Public Affairs disclosed to the general public a press release describing the Complaint filed in the instant case. (Doc. 123 at 119.) The press release claimed that Defendants (including Clark, who is named) willfully provided false valuations of land in pursuit of fraudulent conservation easement tax shelters. (Doc. 123 at 119.) Clark further alleges that in November 2019, the IRS issued several more press releases or statements to the press that similarly described the IRS and DOJ's intent to pursue this case as part of those agencies' joint interest in stopping what they consider to be abusive tax avoidance schemes predicated upon knowingly fraudulent valuations of property. (Doc. 123 at 119–121.) In another example, Clark alleges that the Deputy Commissioner of IRS Services and Enforcement told the attendees of the American Institute of CPAs National Tax Conference or a member of the press that, "I'm very comfortable we will have wins in conservation easement cases because some of the appraisals are really bad and can't stand on their own."

(Doc. 123 at 122–23.) The other statements highlighted by Clark are similar in both tone and content, as well as their level of specificity regarding the case and Mr. Clark's involvement in it.

Clark claims that the statements made during December 2018 and November 2019 by the DOJ and IRS relating to this case violated 26 U.S.C. § 6103's prohibition of disclosure of "return information," and entitle him to relief pursuant to 26 U.S.C. § 7431. (Doc. 123 at 126.)

## II.  Standard of Review

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Great Am. Assur. Co. v. Sanchuk, LLC*, No. 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

## III.   Discussion

"26 U.S.C. § 6103(a) provides generally that tax returns and 'return information' are confidential and may not be disclosed by any officer or employee of the IRS." *Comyns v. United States*, 155 F. Supp. 2d 1344, 1348–49 (S.D. Fla. 2001), *aff'd*, 287 F.3d 1034 (11th Cir. 2002). The next subsection defines "return information" to mean:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

26 U.S.C. § 6103(b)(2)(A). The statute exempts from the definition any data which is "in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2); *cf. Long v. U.S. I.R.S.*, 395 F. App'x 472, 475 (9th Cir. 2010) ("The latter part of the definition of 'return information' is commonly referred to as the Haskell Amendment.")

4

The definition of "return information" is therefore fairly broad, encompassing, inter alia, the taxpayer's identity, or whether the taxpayer's return "was, is being, or will be examined or subject to other investigation or processing." *Taylor v. Pekerol*, 624 F. App'x 691, 694 (11th Cir. 2015) (quoting 26 U.S.C. § 6103 (b)(2)(A)); *see also Comyns*, 155 F. Supp. 2d at 1348–49 ("[R]evealing the fact that a taxpayer is the subject of a tax investigation constitutes disclosure of 'return information.'") (citing 26 U.S.C. § 6103(b)(2)). "Section 6103(b)(8) defines 'disclosure' broadly to include directly or indirectly 'making known to any person in any manner whatever.'" *Comyns,* at 1348–49. The statute grants IRS officers narrowly defined leeway to make such disclosures in pursuit of their official duties, saying that they may,

> in connection with [their] official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title.

26 U.S.C. § 6103(k)(6). "Return information may also be disclosed 'pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate [judge]' and subject 'to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in' (1) 'preparation for any judicial or administrative proceeding pertaining to the

enforcement of a specifically designated Federal criminal statute (not involving tax administration)'; (2) 'any investigation which may result in such a proceeding'; or (3) 'any Federal grand jury proceeding pertaining to enforcement of such a criminal statute.'" *Pekerol*, 624 F. App'x 691, 694 (11th Cir. 2015) (quoting § 26 U.S.C. § 6103(i)(1)(A)).

The subsections make clear that some nonidentifying information may still be "return information" even if it does not identify a particular taxpayer. *Church of Scientology of California v. I.R.S.*, 484 U.S. 9, 15–16 (1987). "Subsections 6103(f)(1), (2), and (4), for example, allow the release of returns and return information to congressional committees, but distinguish between return information that identifies a taxpayer and return information that does not." *Id.* However, "[return information] does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *Id.* (quoting § 6103(b)(2)).

What all this boils down to is that IRS agents, when conducting an investigation, are "presented with the following rule: Tax return information, including the fact that a taxpayer's return is under investigation may not be disclosed, *unless* such disclosure is necessary in obtaining information not otherwise reasonably available, in which case (pursuant to the Secretary's regulation) such agent may reveal 1) the taxpayer's identity, 2) the fact that the agent's inquiry pertains to an official investigation, and 3) the nature of that

investigation." *Comyns*, 155 F. Supp. 2d at 1349 (emphasis in original).

If a federal government employee improperly discloses a taxpayer's tax return information, that taxpayer may sue the United States for damages. 26 U.S.C. § 7431(a)(1). But, "[a] taxpayer may not recover damages for any disclosure of tax return information that 'results from a good faith, but erroneous, interpretation of [26 U.S.C. § 6103].'" *Comyns*, 155 F. Supp. 2d at 1349–50 (citing 26 U.S.C. 7431(b)). The good faith exception to Section 7431(a) is judged by an objective standard, which asks whether agents' conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known'" and does not explore the agent's subjective intent. *Id*. (quoting *Huckaby v. United States,* 794 F.2d 1041, 1048 (5th Cir. 1986)).

## IV.   Analysis

The first step in analyzing Clark's Counterclaim – and the United States' Motion to Dismiss – is to determine whether any of the statements in question did include return information as contemplated by 26 U.S.C. § 6103. Clark identifies nine specific statements that he alleges violate the statute. (Counterclaim, Doc. 123 at 118–123.)

The Government states in its motion that the press releases and other statements cited by Clark are not disclosures of his return information, and therefore do not violate 26 U.S.C. § 6103. (Motion to Dismiss, Doc. 161.) The Government says the first statement cited by Clark "simply parrots allegations

taken directly from the publicly filed complaint in this action[,]" and that the other eight statements cited by Clark do not even implicate section 6103 because they do not contain Clark's – or anyone else's – return information whatsoever. (Doc. 161-1 at 1–2.) The United States characterizes those statements as "general statements that inform the public of the Government's efforts to enforce the Internal Revenue Code and combat abusive syndicated conservation easement transactions." (*Id.*)

Clark responds that "the disclosures were not in fact based on information publicly available or from the public record, and that the DOJ Press Release in particular was drafted before the filing of the Complaint and discloses information not contained in the Complaint." (Response, Doc. 165 at 3–4.) Clark also points to his allegations made "on information and belief that United States officials have made other statements constituting impermissible disclosure of his return information." (Doc. 165 at 4.)

Although the definition of "return information" is broad, it is not unlimited. *Thomas v. United States*, 890 F.2d 18, 21 (7th Cir. 1989) ("the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, as these terms are defined in § 6103(b)(2).") (C. J. Posner). Return information is that which reveals, inter alia, the taxpayer's identity, or whether the taxpayer's return "was, is being, or will be examined or subject to other investigation or processing." *Taylor v. Pekerol*, 624 F. App'x 691, 694 (11th Cir. 2015) (quoting 26 U.S.C. § 6103 (b)(2)(A)); *see*

*also Comyns*, 155 F. Supp. 2d at 1348–49 ("[R]evealing the fact that a taxpayer is the subject of a tax investigation constitutes disclosure of 'return information.'") (citing 26 U.S.C. § 6103(b)(2)). Although this case overall does relate to tax conservation easements and tax return strategies, this does not mean that any utterance about the case per se discloses a specific individual's tax return information or Mr. Clark's tax return in particular. For example, Clark cites a November 12, 2019 news release in which the Commissioner of the IRS, Charles P. Rettig, says, "We will not stop in our pursuit of everyone involved in the creation, marketing, promotion and wrongful acquisition of artificial, highly inflated deductions based on these aggressive transactions." (Counterclaim, Doc. 123 at 120–21.) This statement is full of policy enforcement bravado. But it does not appear to disclose any specific individual's return information or identity – but instead, the IRS's stated goal of stopping the use of allegedly fraudulent conservation easements through litigation. To construe this statement as disclosing Mr. Clark's tax return information or that his personal return generally was the subject of investigation, one would have to know that the "aggressive transactions" upon which people are allegedly seeking the "artificial, highly inflated deductions" include specifically those that involve or implicate Mr. Clark's returns.  In other words, one would need to glean from the Complaint not simply that Clark is one of the persons who allegedly assisted the "aggressive transactions" – but also, that Clark must have been paid for his alleged assistance, and that his

tax returns would therefore include information reflecting the income he must have received in connection with his furtherance of the "aggressive transactions", and finally, that his personal tax returns were therefore one of the implicit subjects of the investigation.  As discussed further below, this series of factual inferences and conclusions is too attenuated, given the actual Counterclaim allegations as currently plead, to bring Mr. Clark's Counterclaim squarely within the realm of section 6103's prohibitions against disclosure.

The Complaint alleges that the Defendants caused and assisted other people to file false or fraudulent information as part of their tax filings related to the conservation easements. The tax returns focused upon by this case are those of the clients of the Defendants, not the Defendants themselves. Any references within the examples cited by Clark which could be construed to reference tax return information would tend to be referencing such information of a person other than Clark. (*Cf.* Complaint, Doc. 1 at 10 ("Copies of Clark's appraisal reports were attached to these customers' filed tax returns.").) In another example in the Counterclaim, Clark alleges that on December 19, 2018, the DOJ's Tax Division Principal Deputy Assistant Attorney General issued this statement for a press release: "The [DOJ] is working with our partners in the [IRS] to shut down fraudulent conservation easement shelters, which in this case were based on willfully false valuations." (Counterclaim, Doc. 123 at 119.) This statement speaks more directly to Clark, as he is one of the parties the Government alleges provided

false valuations to conservation easement clients in this case. Yet again though this statement is ultimately referring to the tax return information of the clients themselves, who used the allegedly false valuations provided by Clark to seek tax rebates. Clark does not have standing to litigate the disclosure of a third party's tax return information on the basis that the third party used information provided to them by Clark in their own tax return filings.

Beyond the specific examples provided by Clark, he also alleges on information and belief that "IRS and DOJ Officials have made other statements constituting impermissible disclosure of Mr. Clark's return information." (Counterclaim, Doc. 123 at 123.) Generally, in a wrongful disclosure action, the plaintiff "must specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made." *Bancroft Glob. Dev. v. United States*, 330 F. Supp. 3d 82, 101 (D.D.C. 2018) (quoting *May v. United States*, No. 91-0650-CV-W-9, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. Apr. 17, 1992) (collecting cases)). A plaintiff must also plead "what specific 'return or return information' an employee of the United States disclosed that violated § 6103." *Id.* This requirement for specificity does not rise to that of a heightened pleading standard. *Bancroft Glob. Dev.*, 330 F. Supp. 3d at 10 ("Complaints for the unlawful disclosure of tax information are not subject to the heightened pleading standard of Rule 9.") (citing *NorCal Tea Party Patriots v. IRS*, No. 13-cv-341, 2014 WL 3547369, at *14 (S.D.

Ohio. July 17, 2014); *and Fostvedt v. United States*, 824 F. Supp. 978, 985 (D. Colo. 1993)). The purpose of requiring some specificity in these types of claims is to allow the Government to analyze the alleged disclosure and determine whether it fell into one of the exceptions provided for in the statute. *Bancroft Glob. Dev.*, 330 F. Supp. 3d at 101.

Nonetheless, a plaintiff may still allege a claim only on information and belief where "the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012). District Courts have come to different conclusions regarding the exact breadth of the allowance for pleading on information and belief in tax return disclosure cases. Some Courts have held that allegations made on information and belief still must include at least who made the disclosure and when. *See, e.g.*, *May v. United States*, No. 91-0650-CV-W-9, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. Apr. 17, 1992); *Taylor v. Pekerol*, No. 14-cv-96, 2016 WL 5172829 (N.D. Fl. Aug. 12, 2016) (Report and Recommendation, adopted in 2016 WL 4618895, at *2 (N.D. Fl. Sept. 6, 2016)); *Fedele v. Harris*, 69 F. Supp. 3d 313, 321–22 (N.D.N.Y. 2014); *NorCal Tea Party Patriots v. I.R.S.*, No. 13-cv-341, 2014 WL 3547369, *13–14 (W.D. Ohio. July 17, 2014). Yet at least one other Court did not require that the Plaintiff allege who made the disclosure or when, so long as the Government was fairly on notice of the elements of the claim. *See Strong v.*

12

*United States*, No. 98-1452, 1998 WL 990581, at *2–*3 (W.D. La. Dec. 10, 1998) (even though the complaint did "not specify who made the alleged improper disclosures to whom, what information was disclosed, and when disclosures were made," "there [we]re sufficient facts from which the Government can infer and [be] put on notice of the elements of a claim of wrongful disclosure under section 7431.") In the *Strong* case, although Plaintiff did not supply those specific pieces of information, he did allege that his wife – herself an IRS employee – was informed by someone else that the Plaintiff's tax information was "being 'openly and illegally discussed and gossiped about by agents and the employees of the IRS due to her relationship with him.'" *Strong*, No. 98-1452, 1998 WL 990581, at *3. This provided adequate notice to the Government of the elements of the claim, and enough information for the Government to determine if any exception applied.

In the instant case, Clark alleges only that "IRS and DOJ Officials have made other statements constituting impermissible disclosure of Mr. Clark's return information." (Counterclaim, Doc. 123 at 123.) This allegation on its own neither identifies who made the alleged disclosure, nor when. This allegation further does not implicate facts which might be "peculiarly within the possession and control of the defendant," as it fails to provide any guideposts whatsoever for the Court or the Government to assess the potential applicability of the exceptions in the statute. *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012). The Court finds that the facts in the Counterclaim – as they are currently factually

asserted – are simply too attenuated or bare to plausibly allege a disclosure of Clark's tax return information or that he is personally under investigation based on his tax return information. As it is, the only tax return information of Clark's that might be implicated is that he presumably filed a tax return including the payment that he presumably received for providing the valuation services that were used as part of the alleged conservation easement scheme. The only factual information which therefore undergirds the allegations made on "information and belief" is that which is inherent to the specific disclosure examples provided by Clark in the preceding portions of the Counterclaim. Since the Court does not understand those statements to clearly disclose Clark's tax return information or that his personal tax return is under investigation, the add-on allegation made on "information and belief" cannot be said to be "based on factual information that makes the inference of culpability plausible." *Id.* While the Court would generally entertain a disclosure claim made on information and belief, the allegation in the instant case simply lacks a plausible factual basis. Accordingly, Clark has not stated a claim for relief in the portion of this Counterclaim that is made only on information and belief.

As the Court finds that the statements presented by Clark do not plausibly allege a factual basis for his contention that the Government impermissibly disclosed his personal tax return information or relatedly, his identity in that connection, he does not plausibly allege the Government violated of 26 U.S.C. §

6103 and 26 U.S.C. § 7431.  That said, the Court notes that this statute is not particularly oft litigated, and there is somewhat of a dearth of case law about these statutes in cases substantially factually similar to this one. The Court recognizes therefore that it is not impossible that some of the Government's statements do in fact implicate Clark's return information. In particular, those statements cited by Clark which were made by the Government about this case specifically – as opposed to those statements made about conservation easements in general – may turn out to be implicit disclosures of Clark's tax information under section 6103. However, the briefing and Counterclaim verbiage currently before the Court are insufficient to provide the foundation for the claims asserted.

For these reasons, the Government's Motion to Dismiss Counterclaim [Doc. 161] is **GRANTED**, and the Counterclaim (Doc. 123) is dismissed without prejudice. The Court grants Clark leave to file an Amended Counterclaim that directly addresses the issues raised by this Order – specifically, how the statements made by the Government disclose *Clark's* tax return information or his identity and investigation of him personally *linked* to his tax return – if he so desires. Clark's Amended Counterclaim must be filed no later than 21 days from the date of this Order. Clark does not need to re-file his Answer.

## V.    Conclusion

For the reasons stated above, the Government's Motion to Dismiss Clark's Counterclaim [Doc. 161] is **GRANTED and the Counterclaim is DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED** this 24th day of August, 2020.

**Amy Totenberg**
**United States District Judge**

16