IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES,

     Plaintiff,

                                 CIVIL ACTION №
v.                            1:18-CV-5774-AT

NANCY ZAK, *et al*.

     Defendants.

### SPECIAL MASTER'S REPORT & RECOMMENDATION ON THE SUBMISSION OF THE PROPOSED DISCOVERY PLAN AND SCHEDULING ORDER

## I

As directed by Paragraph 4 of the Court's Order of Appointment, (Docket № 199 at 7), the Special Master submits the attached Proposed Discovery Plan and Scheduling Order ("Plan") for the Court's consideration. As part of the Plan, a Stipulation on Depositions ("Stipulation") was prepared and is also before the Court.

The Plan is the result of a sustained effort over several weeks. The Special Master undertook the work of developing the Plan in a transparent and collaborative manner. No less than five versions of the Plan, three

versions of the Stipulation, and two versions of this Report & Recommendation were prepared by the Special Master and shared with counsel. For each successive draft, the Special Master encouraged counsel to offer critiques and suggestions, which they did freely. When the parties agreed on an issue, that agreement was largely incorporated into the Plan, and where they disagreed, the Special Master resolved the disagreements based on his judgments and experience.

On behalf of their clients, counsel have indicated to the Special Master their acceptance of the Plan.

## II

The Plan contains nine sections.

- **Section I** establishes a ten-month period of discovery, seven months for fact discovery and three months of expert discovery.

- **Section II** allows each party twenty-five days after answering a request for the production of documents to produce the responsive documents, including ESI, to which no objections have been lodged. By agreement, the parties can extend the twenty-five-day period, or the Court may do so on a showing of good cause.

- **Section III** provides each side up to thirty fact depositions[1] and the right to depose all disclosed experts. During the COVID-19 public health crisis, all depositions will be conducted remotely unless the parties agree otherwise, or the Court grants leave to conduct an in-person deposition. The parties have agreed to a Stipulation on Depositions that governs the conduct of remote depositions. The

---

[1]  The thirty depositions are allocated to both party and nonparty depositions.

Stipulation is part of the Plan. Upon a showing of actual need, the number of fact depositions can be increased.

- **Section IV** sets the number of Rule 45 subpoenas to nonparties at forty. The number can be increased upon a showing of actual need for additional subpoenas.

- **Section V** concerns the method and timing the parties and the Special Master will use to resolve issues related to the disclosure of the conservation easements to be presented in Court. While the Plan holds the resolution of this issue in abeyance, it provides a timeline for addressing the matter before the end of fact discovery. Concerns attendant to this issue are complex. Working through them will require time, and to do so now will delay ongoing discovery and the resolution of pending discovery disputes for many days or weeks. The importance of this issue to the Court is well understood, and, in the absence of a future agreement, the Special Master will submit a recommendation to the Court within the time noted in Section V. If this matter is resolved through negotiation, the Court will be presented with an agreement or stipulation that will require Court approval. This is so because any such agreement will affect how the United States meets its burden for injunctive relief and how the defendants are able to defend against that relief.

- **Section VI** sets out the timing for expert reports and expert rebuttal reports.

- **Section VII** sets forth the schedule for filing summary judgment motions, *Daubert* motions, and the submission of a consolidated pretrial order. It also provides a schedule for participating in the required settlement conference.

- **Section VIII** sets out the standards to be applied in the event a party requests a modification of the Plan and makes clear that any decision by the Special Master to modify the Plan is subject to the Court's review.

- **Section IX** is a collection of miscellaneous provisions governing the production of privilege logs, the right of a party to conduct in-person inspections of the conservation easements without interference, and

3

the agreement that upon approval of the Plan the United States will withdraw its Motion for Relief From Discovery Orders, (Docket № 175).

## III

### A

This is not so much a plan to begin discovery as to end it. Discovery, particularly party-to-party discovery, has been underway for more than a year, and the parties have already produced countless pages of documents. Additionally, with the consent of the parties, expanded nonparty discovery in the form of Rule 45 document subpoenas has proceeded during the Plan discussions. Nevertheless, there is much discovery to be done.

Discovery in this case has been beset by headwinds from the outset. Early and vigorous disagreements about its scope, the effect of the COVID-19 pandemic on the ability to conduct and manage discovery, and the geographic expanse of the conservation easements at the center of the case have resulted in a protracted and at times an unproductive discovery process.  The Plan before the Court attempts to address these challenges while balancing numerous competing concerns. As with any attempt at balancing, tradeoffs and compromises are at the essence of decision making.

One of the most difficult issues has been determining the appropriate length of time for fact discovery. The seven months of fact discovery allotted in the Plan is less than the Government believes is necessary, and longer than the defendants feel is appropriate. The Special Master concludes that seven months is the proper length of time for four reasons.

*First*, some of the remaining discovery contemplated by the Government is directed toward nonparties. Given the unpredictable nature of nonparty discovery and its contemplated scope, if the proposed time is too truncated, extensions of discovery will invariably be sought as nonparties delay responding and attempts to collect documents and schedule depositions push against the end of a shorten discovery period. A sufficiently robust period to complete fact discovery should minimize this uncertain effect.

*Second*, there are several pending and emerging discovery disputes that will take time to resolve, either by party-to-party discussions or through Court intervention. Those matters must be addressed and resolved

with sufficient time in the discovery schedule to allow additional disclosures or responses, should that be necessary.[2]

*Third*, several days of fact discovery will fall within Thanksgiving and the year-end holiday season. As a practical matter conducting discovery during the holidays is at best challenging.

*Fourth*, pending before the Court is plaintiff's Motion to Amend the Complaint, Docket № 174, to add forty-two new syndicated conservation easements to the list of disputed properties. A seven-month period of fact discovery should be sufficient even if the Court grants the plaintiff's pending Motion to Amend the Complaint.

The United States has consistently questioned whether seven months of fact discovery is adequate. Experience in similar cases suggests to counsel for the plaintiff that it may not be. For their part, defendants have unfailingly pointed out that discovery has been underway for more than a year, that seven more months is in their relevant experience excessive, and that the parties will use as much or as little time as they are given.

---

[2] The Special Master intends to take up the pending discovery disputes between the parties that they cannot otherwise resolve. The prompt resolution of such disputes is a top priority, and within five business days of today's date, the Special Master will communicate with counsel to discuss the procedures he will follow to expedite the resolution of the current discovery disputes and those that might materialize in the future.

Importantly, the Plan accounts for some uncertainty by providing a means for extending the time available for fact or expert discovery if it becomes necessary. If discovery is diligently pursued, and if a party believes that additional time is needed, then under the Plan that party may ask the Court to allow an extension of the discovery calendar upon a "showing of compelling need." *See* Plan at Section VIII, Paragraph "b."

Applying the compelling-need standard ensures that any extension of fact discovery or expert discovery is tied to circumstances in the case or in the conduct of discovery that legitimately necessitate the requested extension. Being dilatory or inattentive to discovery obligations should not be grounds to secure a revision of the Plan's timelines. Application of the compelling need standard protects against an unwarranted extension that could escalate costs or delay the resolution of the case for little benefit.

**B**

Concerns have also been raised that the number of allowed depositions, thirty per side, and the number of Rule 45 subpoenas for the production of documents, forty per side, are both too many and too few. Again, on balance, the respective numbers seem sufficient, but not excessive, given the criticality of nonparty discovery.

The Plan provides a means to seek additional depositions and subpoenas to the extent the requesting party can show "actual need." *Id.* The actual-need standard is sufficiently flexible that if more depositions or subpoenas are legitimately required, they should be allowed. Conversely, the standard is suitably demanding to ensure that redundant or duplicative discovery is not pursued.

## C

The parties have opposing views about the timing for the production of discoverable ESI from the Internal Revenue Service. The Government's position is that the Plan provides inadequate time for production of relevant ESI given the legal requirement on the Government to protect taxpayer information from improper disclosure and to identify and remove nonrelevant ESI before production.

According to the Government, the process for document review in this case is a two-step procedure. First the Internal Revenue Service must gather and then review the ESI for relevance and protected taxpayer information. Only then is the information passed to counsel at DOJ who also must review the documents for privilege before providing the discovery to defendants. According to the Government, this process is made all the more difficult because defendants' ESI search terms are said to return large

numbers of documents, many of which are not relevant or contain nonparty taxpayer information, but all of which must be reviewed and culled as required by law. Defendants have a contrary view.

They believe the United States is being dilatory in the production of ESI. Defendants point out that the Court at the January 10, 2020 conference made clear that e-mails within the IRS's possession concerning the at-issue easements are relevant and needed to be produced[3] but have largely not yet been provided. Defendants also question whether the ESI document review process being followed by the Government is required to be so multilayered.

Whatever the merits of the parties' relative positions, the Plan is not the vehicle to resolve the ESI dispute. For now, the Plan reasonably requires ESI and other document discovery to be produced within 25 days of a party's answer to a discovery request indicating that such documents will be provided. If objections to a document request are raised, then the 25-day production schedule does not apply. Whether 25 days is adequate or inadequate for ESI can be better evaluated at a later time when the issue of

---

[3] *See* Docket № 143 at 27-36 (Tr. of Court Telephonic Conference, January 10, 2020).

ESI discovery and production is more precisely placed before the Court and the Special Master as it will invariably be.

## IV

In a case as complex and contentious as this, those responsible for managing discovery and those charged with its conduct must accept that any discovery plan will be imperfect. Thankfully, the goal of this Plan is not perfection, but fairness, practicality, and functionality within the dictates of the law. Because it provides for its modification and safeguards in the form of standards for any modification, the Plan should provide a workable and steady framework within which to conclude the discovery necessary to prepare this case for trial and defense.

Neither side is enamored with the Plan and a desire to "get on with it" may be the primary motivation for agreeing to its entry. There should be no doubt that the discovery issues in this case present a challenge, but the Plan represents a reasonable approach to the management of discovery and the Special Master commends it to the Court's favorable consideration.

**ACCORDINGLY**, it is recommended that the Court approve the attached Discovery Plan and Scheduling Order as well as the Plan's Stipulation on Depositions.

Comments on or objections to this Report and Recommendation must be filed with the Court within three business days of this Report & Recommendation being docketed. *See* Docket № 199 at 7, ¶4 (Order of Appointment).

IT IS SO RECOMMENDED this 7th day of October 2020.

_____

SPECIAL MASTER