IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE |
| | : | NO. 1:18-CV-05774-AT |
| NANCY ZAK, CLAUD CLARK III, ECOVEST CAPITAL, INC., ALAN N. SOLON, ROBERT M. MCCULLOUGH, RALPH R. TEAL, JR., | : : : : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS ECOVEST, SOLON, MCCULLOUGH, AND TEAL'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED
COMPLAINT**

Defendants EcoVest Capital, Inc. ("EcoVest"), Alan N. Solon ("Mr. Solon"), Robert M. McCullough ("Mr. McCullough"), and Ralph R. Teal, Jr. ("Mr. Teal") (collectively, the "EcoVest Parties"), for their Answer to Plaintiff's Amended Complaint (ECF No. 225), state as follows:

The EcoVest Parties emphatically deny the Government's allegations of fraud and other misconduct, and look forward to clearing their good name at trial at the earliest available date for the Court.  In the two years that this case has been pending,

the Government has not identified any specific fraudulent statements or misrepresentations by the EcoVest Parties.

Federal law has long sought to encourage the preservation of natural resources and undeveloped land by providing tax deductions for conservation easements. Far from seeking to subvert the law, the evidence will show that the EcoVest Parties went to great lengths to ensure that all of their projects fully complied with the law.

EcoVest is a real estate company that balances economic, environmental, and social gains through the preservation of natural resources and promotion of sustainable business practices. Investors in projects managed by EcoVest choose whether to build on their property in accordance with comprehensive development plans, to hold it for appreciation, or to preserve it via a conservation easement, which not only protects such property in perpetuity but also provides the potential for limited development. EcoVest—through the very projects Plaintiff seeks to enjoin—has helped to preserve in perpetuity nearly 20,000 acres of undeveloped property, including forests, meadows, wetlands, streams, and coastal plains.

The EcoVest Parties comply fully with all of their legal obligations. EcoVest undertakes rigorous processes to ensure its projects, and the independent qualified appraisals of the value of conservation easements, are valid and lawful. Additionally, real estate projects managed by EcoVest are distributed by FINRA-

registered,[1] independent broker-dealers.   FINRA rules and regulations require broker-dealers to perform substantial due diligence before offering investments for sale.

EcoVest's efforts are led by Mr. Solon, who has over three decades of experience in marketing, finance, and real estate development; Mr. McCullough, who has extensive experience in finance and accounting, including with real estate investment trusts and other real estate investment programs; and Mr. Teal, who has extensive residential real estate experience, including as a founding partner in several successful homebuilding companies, and has experience investing in and managing other extensive real estate development projects.

Congress and the Internal Revenue Service ("IRS") have for decades provided tax incentives aimed at encouraging Americans to enter into conservation easements, at once conserving valuable natural resources and providing relief to taxpayers.   In fact, Congress recently enhanced these tax incentives and later enacted legislation to make such enhancements permanent.   As a result of these perfectly legal tax deductions, the amount of land preserved in perpetuity under conservation easements has grown from 500,000 acres in 1990 to more than 30 million acres

---

[1]  FINRA is the Financial Industry Regulatory Authority, a not-for-profit organization authorized by Congress to protect U.S. investors by ensuring the broker-dealer industry operates fairly and honestly.

today.  In keeping with the intent of Congress, EcoVest manages real estate projects that protect the environment and comply fully with all applicable laws.

In response to the allegations in the separately numbered paragraphs of the Amended Complaint, the EcoVest Parties respond as follows:

1.      EcoVest is a real estate company that incorporates an innovative mix of sustainable land management strategies.  While the particulars of each project differ, each generally involves research and analysis regarding the acquisition of real estate with development and/or conservation value; significant investment and planning to develop property to put it to its "highest and best use"; independent qualified appraisals; a legal opinion regarding certain tax matters; and tax and other advice from law firms and other consultants with relevant subject matter expertise. FINRA-registered, independent broker-dealers offer for sale interests in the real estate projects to accredited investors, *i.e.*, persons meeting certain financial and investment-related criteria under federal securities laws.  Investors decide by majority vote whether to (a) develop the real estate in accordance with a comprehensive development plan, (b) hold it for appreciation, or (c) donate an easement on the real estate to a land trust for the benefit of the public in perpetuity, which also provides the potential for limited development.  Messrs. Solon,

4

McCullough, and Teal are individuals involved in the management and/or ownership of EcoVest.  The EcoVest Parties otherwise deny the allegations of Paragraph 1.

2.      Denied.

3.      Denied.

4.      Denied.

5.      The EcoVest Parties admit that they have managed real estate projects, in which investors ultimately decided to donate conservation easements.  These conservation easements have resulted in the preservation of nearly 20,000 acres, which, consistent with federal tax law enacted to encourage conservation, resulted in tax deductions.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 regarding Ms. Zak and Mr. Clark, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations in Paragraph 5.

6.      Paragraph 6 purports to summarize relief sought by Plaintiff, and no response is required.  To the extent that a response is deemed required, the EcoVest Parties deny the allegations in Paragraph 6, including all of its subparagraphs, and specifically deny that Plaintiff is entitled to any relief at all.

7.      Paragraph 7 purports to describe other relief sought by Plaintiff, and no response is required.  To the extent that a response is deemed required, the EcoVest

Parties deny the allegations in Paragraph 7, and specifically deny that Plaintiff is entitled to any relief at all.

8.      The EcoVest Parties do not possess information sufficient to admit or deny the allegations made in Paragraph 8, and therefore those allegations are denied.

9.      Admitted.

10.     Admitted that venue is proper in this Court.  The EcoVest Parties deny the remaining allegations of Paragraph 10.

11.     The EcoVest Parties admit that an agency of the United States Government filed this lawsuit.  The EcoVest Parties deny the remaining allegations of Paragraph 11.

12.     The EcoVest Parties admit that, from 2012 until her shares were repurchased in August 2013, Ms. Zak owned a 12.05% interest in EcoVest, and that she provided limited consulting services to EcoVest during a portion of this time period.  As a further response, the EcoVest Parties state that Ms. Zak has had no ownership interest or other role in EcoVest since August 2013.  The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore those allegations are denied.

13.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore those allegations are denied.

14.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore those allegations are denied.

15.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore those allegations are denied.

16.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore those allegations are denied.

17.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore those allegations are denied.

18.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, and therefore those allegations are denied.

19.    The EcoVest Parties admit that Claud Clark III is an independent appraiser based in Alabama, and further state that Mr. Clark's qualifications have been recognized by the Internal Revenue Service, courts, and others.  *See, e.g.*, *Kiva Dunes Conservation, LLC v. C.I.R.*, 97 T.C.M. (CCH) 1818, 2009 WL 1748862 at *6 (U.S. Tax Court June 22, 2009) ("We conclude that Mr. Clark's testimony is credible and his assumptions are reasonable and amply supported by the evidence presented at trial and in his report.").  In fact, the U.S. Tax Court has adopted a definition of "highest and best use" consistent with the methodology Mr. Clark used in providing qualified appraisals for EcoVest projects, a definition developed by the Appraisal Institute, a global professional association of real estate appraisers, with more than 18,000 members.  *See, e.g.*, *Palmer Ranch Holdings Ltd. v. Comm'r*, 107 T.C.M. (CCH) 1408, 2014 WL 1796362 at *9 (U.S. Tax Court May 6, 2014) (citing *Whitehouse Hotel L.P. v. Comm'r*, 139 T.C. 304, 331 (2012)), *aff'd in relevant part*, 812 F.3d 982 (11th Cir. 2016).  The EcoVest Parties further admit that Mr. Clark, on a non-exclusive basis, provided independent qualified appraisals related to projects managed by EcoVest.  Mr. Clark's qualified appraisals are tested by a second qualified appraiser via peer review.  The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore those allegations are denied.

20.    The EcoVest Parties admit that Claud Clark III is an independent appraiser based in Alabama, and further state that Mr. Clark's qualifications have been recognized by the Internal Revenue Service, courts, and others.  *See, e.g.*, *Kiva Dunes Conservation, LLC v. C.I.R.*, 97 T.C.M. (CCH) 1818, 2009 WL 1748862 at *6 (U.S. Tax Court June 22, 2009) ("We conclude that Mr. Clark's testimony is credible and his assumptions are reasonable and amply supported by the evidence presented at trial and in his report.").  In fact, the U.S. Tax Court has adopted a definition of "highest and best use" consistent with the methodology Mr. Clark used in providing qualified appraisals for EcoVest projects, a definition developed by the Appraisal Institute, a global professional association of real estate appraisers, with more than 18,000 members.  *See, e.g.*, *Palmer Ranch Holdings Ltd. v. Comm'r*, 107 T.C.M. (CCH) 1408, 2014 WL 1796362 at *9 (U.S. Tax Court May 6, 2014) (citing *Whitehouse Hotel L.P. v. Comm'r*, 139 T.C. 304, 331 (2012)), *aff'd in relevant part*, 812 F.3d 982 (11th Cir. 2016).  The EcoVest Parties further admit that Mr. Clark, on a non-exclusive basis, provided independent qualified appraisals related to projects managed by EcoVest.  Mr. Clark's qualified appraisals are tested by a second qualified appraiser via peer review.  The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore those allegations are denied.

21.    The EcoVest Parties admit that Claud Clark III is an independent appraiser based in Alabama, and further state that Mr. Clark's qualifications have been recognized by the Internal Revenue Service, courts, and others. *See, e.g.*, *Kiva Dunes Conservation, LLC v. C.I.R.*, 97 T.C.M. (CCH) 1818, 2009 WL 1748862 at *6 (U.S. Tax Court June 22, 2009) ("We conclude that Mr. Clark's testimony is credible and his assumptions are reasonable and amply supported by the evidence presented at trial and in his report."). In fact, the U.S. Tax Court has adopted a definition of "highest and best use" consistent with the methodology Mr. Clark used in providing qualified appraisals for EcoVest projects, a definition developed by the Appraisal Institute, a global professional association of real estate appraisers, with more than 18,000 members. *See, e.g.*, *Palmer Ranch Holdings Ltd. v. Comm'r*, 107 T.C.M. (CCH) 1408, 2014 WL 1796362 at *9 (U.S. Tax Court May 6, 2014) (citing *Whitehouse Hotel L.P. v. Comm'r*, 139 T.C. 304, 331 (2012)), *aff'd in relevant part*, 812 F.3d 982 (11th Cir. 2016). The EcoVest Parties further admit that Mr. Clark, on a non-exclusive basis, provided independent qualified appraisals related to projects managed by EcoVest. Mr. Clark's qualified appraisals are tested by a second qualified appraiser via peer review. The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore those allegations are denied.

10

22.     The EcoVest Parties admit that Claud Clark III is an independent appraiser based in Alabama, and further state that Mr. Clark's qualifications have been recognized by the Internal Revenue Service, courts, and others.  *See, e.g.*, *Kiva Dunes Conservation, LLC v. C.I.R.*, 97 T.C.M. (CCH) 1818, 2009 WL 1748862 at *6 (U.S. Tax Court June 22, 2009) ("We conclude that Mr. Clark's testimony is credible and his assumptions are reasonable and amply supported by the evidence presented at trial and in his report.").  In fact, the U.S. Tax Court has adopted a definition of "highest and best use" consistent with the methodology Mr. Clark used in providing qualified appraisals for EcoVest projects, a definition developed by the Appraisal Institute, a global professional association of real estate appraisers, with more than 18,000 members.  *See, e.g.*, *Palmer Ranch Holdings Ltd. v. Comm'r*, 107 T.C.M. (CCH) 1408, 2014 WL 1796362 at *9 (U.S. Tax Court May 6, 2014) (citing *Whitehouse Hotel L.P. v. Comm'r*, 139 T.C. 304, 331 (2012)), *aff'd in relevant part*, 812 F.3d 982 (11th Cir. 2016).  The EcoVest Parties further admit that Mr. Clark, on a non-exclusive basis, provided independent qualified appraisals related to projects managed by EcoVest.  Mr. Clark's qualified appraisals are tested by a second qualified appraiser via peer review.  The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22, and therefore those allegations are denied.

23.     The EcoVest Parties admit that Mr. Clark, on a non-exclusive basis, provided independent qualified appraisals, including qualified appraisals related to certain EcoVest-managed projects, each of which is reflected in a qualified appraisal report, the contents of which speak for themselves.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore those allegations are denied.

24.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore those allegations are denied.

25.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore those allegations are denied.

26.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore those allegations are denied.

27.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore those allegations are denied.

28.     The EcoVest Parties admit that Mr. Solon is a Georgia resident and that he serves as the President, Chief Executive Officer, and Chairman of the Board of Directors of EcoVest.  The other allegations of Paragraph 28 are denied.

29.     Mr. Solon admits the allegations of Paragraph 29.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29, and therefore they deny those allegations.

30.     Admitted.

31.     Mr. Solon admits that from the date of the formation of Conservation Resources, Inc., until 2012, that company provided conservation easement consulting services.  Mr. Solon denies the remaining allegations of Paragraph 31. The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31, and therefore they deny those allegations.

32.     Mr. Solon admits that Conservation Resources, Inc., provided conservation easement consulting services.   Mr. Solon denies the remaining allegations of Paragraph 32.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32, and therefore they deny those allegations.

33.     Mr. Solon admits that, as part of this litigation, the EcoVest Parties produced a document titled "CONSERVATION EASEMENT MASTER CONSULTING AGREEMENT," the terms of which speak for itself.  Mr. Solon denies the remaining allegations of paragraph 33.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33, and therefore they deny those allegations.

34.     Admitted.

35.     Mr. Solon admits that Strategic Financial Alliance was a broker-dealer for projects in which Conservation Resources, Inc., was involved.  Mr. Solon denies the remaining allegations of paragraph 35.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 35, and therefore they deny those allegations.

36.     Mr. Solon admits that, in his role as an employee of Strategic Financial Alliance, he provided consulting services related to real estate projects and conservation-related issues for Conservation Resources, Inc. projects.  Mr. Solon denies the remaining allegations of Paragraph 36.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36, and therefore they deny those allegations.

37.     The EcoVest Parties admit that Mr. Solon was one of the founders of EcoVest, a real estate company that incorporates sustainable land management strategies in its projects.  The remaining allegations of Paragraph 37 are denied.

38.     Denied.

39.     The EcoVest Parties admit that Mr. Solon has worked on numerous real estate projects, in which investors ultimately decided to donate conservation easements.  The remaining allegations of Paragraph 39 are denied.

40.     Admitted.

41.     Admitted.

42.     The EcoVest Parties admit that EcoVest's headquarters are located at 3424 Peachtree Road NE, Suite 700, Atlanta, Georgia.  EcoVest is a real estate company that incorporates sustainable land management strategies in its projects. The remaining allegations of Paragraph 42 are denied.

43.     The EcoVest Parties admit that Mr. Solon, Mr. McCullough, and Mr. Teal hold the positions at EcoVest referred to elsewhere in this Answer, and that the company currently has 17 employees.  The remaining allegations of Paragraph 43 are denied.

44.     The EcoVest Parties admit that EcoVest manages real estate projects, which include options for conservation easements, including by working with land

trusts and engaging independent appraisers.  The remaining allegations of Paragraph 44 are denied.

45.    The EcoVest Parties admit that EcoVest was formed in 2012 and that, in 2012, EcoVest consulted on real estate projects, which included options for conservation easements.  The EcoVest Parties further admit that, starting in 2013, EcoVest began sponsoring and managing real estate projects, which included options for conservation easements.  The remaining allegations of Paragraph 45 are denied.

46.    The EcoVest Parties admit that, in 2012, EcoVest consulted on five estate projects, which included options for conservation easements.  The documents the EcoVest Parties have produced in discovery provide detailed information about those transactions.   To the extent a further response is required, the remaining allegations of Paragraph 46 are denied

47.    The EcoVest Parties admit that EcoVest manages real estate projects, which include options for conservation easements, and that FINRA-registered independent broker-dealers sell interests in companies that undertake those projects. The remaining allegations of Paragraph 47 are denied.

48.    The EcoVest Parties admit that, between June 2013 and April 2015, Arque Capital was managing broker-dealer for real estate projects with options for

conservation easements that EcoVest managed.  The remaining allegations of Paragraph 48 are denied.

49.     The EcoVest Parties admit that, beginning in 2015 Triloma Securities was managing broker-dealer for real estate projects with options for conservation easements that EcoVest managed.  The remaining allegations of Paragraph 49 are denied.

50.     The EcoVest Parties admit that EcoVest manages real estate projects, which include options for conservation easements, and that FINRA-registered independent broker-dealers sell interests in companies that undertake those projects. FINRA rules and regulations require broker-dealers to perform substantial due diligence before offering investments for sale, and EcoVest provides broker-dealers with required due diligence materials and a limited set of training materials.  The EcoVest Parties admit that at least 37 broker-dealers with offices in several states have offered for sale interests in the companies that undertake the projects EcoVest manages and that financial advisors affiliated with these broker dealers underwent extensive due diligence and training before they were able to offer interests to their clients, in accordance with FINRA requirements.  The remaining allegations of Paragraph 50 are denied.

51.     The EcoVest Parties admit that, between 2015 and 2017, Triloma worked with numerous broker-dealers to offer for sale interests in the real estate projects EcoVest managed to certain accredited investors, in accordance with FINRA rules and regulations, and that those broker-dealers operated in several states.  The remaining allegations of paragraph 51 are denied.

52.     Denied.

53.     The EcoVest Parties admit that, from 2012 until her shares were repurchased in August 2013, Ms. Zak owned a 12.05% interest in EcoVest, and that she provided limited consulting services to EcoVest during a portion of this time period.  As a further response, the EcoVest Parties state that Ms. Zak has had no ownership interest or other role in EcoVest since August 2013.  The EcoVest parties deny the remaining allegations of Paragraph 53.

54.     The EcoVest Parties admit that, as part of this litigation, they produced an August 23, 2013 Agreement signed by EcoVest, Ms. Zak, Conservation Resources, Inc., and Conservation Project Strategies, the terms of which speak for itself.  The EcoVest Parties deny the remaining allegations of Paragraph 54.

55.     The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and therefore those allegations are denied.

18

56.     Denied.

57.     The EcoVest Parties admit that, since 2012, EcoVest managed or was otherwise involved in numerous real estate projects, in which investors ultimately decided to donate conservation easements, and through which nearly 20,000 acres of land have been preserved in perpetuity.  The remaining allegations of Paragraph 57 are denied.

58.     The EcoVest Parties admit that, between 2013 and 2018, EcoVest managed 58 real estate projects, which included options for conservation easements, and that Mr. Clark prepared appraisals for 55 of those projects.  The remaining allegations of paragraph 58 are denied.

59.     The EcoVest Parties admit that, in 2012, EcoVest consulted on five real estate projects, which included options for conservation easements.  The EcoVest Parties admit that between 2013 and 2018, EcoVest managed 58 real estate projects, which included options for conservation easements.  The EcoVest Parties admit that these projects involved real property located in the following states: Alabama (one project), Florida (one project), Georgia (three projects), Kentucky (one project), North Carolina (five projects), Texas (12 projects), Tennessee (five projects), and South Carolina (34 projects).  The remaining allegations of paragraph 59 are denied.

60.     Admitted.

61.    The EcoVest Parties admit that Mr. McCullough is a resident of the State of Georgia and that he currently serves as EcoVest's Senior Vice President, Chief Financial Officer, Treasurer, and Secretary.  The remaining allegations of Paragraph 61 are denied.

62.    Admitted.

63.    The EcoVest Parties admit that EcoVest is a real estate company that incorporates sustainable land management strategies in its projects, and further admit that Mr. McCullough, as a senior leader of the company, is involved in EcoVest's operations.  The remaining allegations of Paragraph 63 are denied.

64.    Denied.

65.    Admitted.

66.    Admitted.

67.    The EcoVest Parties admit that Mr. Teal is a member of the board of directors of EcoVest, a real estate company that incorporates sustainable land management strategies in its projects.  The remaining allegations of Paragraph 67 are denied.

68.    Denied.

69.    Mr. Teal admits that he is subject to this Court's jurisdiction.  He denies the remaining allegations of Paragraph 69.  The other EcoVest Parties are without

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, and therefore they deny those allegations.

70.     The EcoVest Parties state that conservation easements, including the tax implications of such arrangements, are defined by law.   To the extent that Plaintiff's summary allegations in Paragraph 70 are in any way inconsistent with the law, those allegations are denied.

71.     Paragraph 71 contains legal assertions to which no response is required. To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code permits deductions related to conservation easements.

72.     Paragraph 72 contains legal assertions to which no response is required. To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code permits deductions related to conservation easements and includes a definition of the term "qualified conservation contribution."

73.     The EcoVest Parties admit that they have managed real estate projects involving limited liability companies ("LLCs"), and further state that LLCs are a perfectly legal and appropriate form for conducting business.  The EcoVest Parties also admit that, in certain circumstances, the law requires different tax treatment for different types of corporate entities.  The remaining allegations of Paragraph 73 are denied.

74.     Paragraph 74 contains legal assertions to which no response is required. To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code contains provisions regarding partnership taxation, and further state that those provisions of the Internal Revenue Code speak for themselves.

75.     Paragraph 75 contains legal assertions to which no response is required. To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code contains provisions regarding partnership taxation, and further state that those provisions of the Internal Revenue Code speak for themselves.

76.     Paragraph 76 contains legal assertions to which no response is required. To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code contains provisions regarding partnership taxation, and further state that those provisions of the Internal Revenue Code speak for themselves.

77.     The EcoVest Parties admit that EcoVest is a real estate company that strives to incorporate an innovative mix of sustainable land management strategies. While the particulars of each project differ, each generally involves research and analysis regarding the acquisition of real estate with development and/or

conservation value; significant investment and planning to develop property to put it to its "highest and best use"; independent qualified appraisals; a legal opinion regarding certain tax matters; and tax and other advice from law firms and other consultants with relevant subject matter expertise.  FINRA-registered, independent broker-dealers and SEC- and state-Registered Investment Advisors offer for sale interests in the real estate projects to accredited investors, *i.e.*, persons meeting certain financial and investment-related criteria under federal securities laws. Investors decide by majority vote whether to (a) develop the real estate in accordance with a comprehensive development plan, (b) hold it for appreciation, or (c) donate an easement on the real estate to a land trust for the benefit of the public in perpetuity, which also provides the potential for limited development.  Documents related to each project—such as membership interest purchase agreements, development plans, market studies, construction cost estimates, operating agreements, qualified appraisal reports, appraisal peer reviews, appraisal peer review legal reliance letters, and tax opinion letters—speak for themselves.  The EcoVest Parties deny the remaining allegations of Paragraph 77, including all of its subparagraphs.

78.    The EcoVest Parties admit that some of the real estate projects with conservation easement options on which it works involve multiple tiers of entities. . As a further response, the EcoVest Parties state that LLCs are a perfectly legal and

appropriate form for conducting business.  The remaining allegations of Paragraph 78 are denied.

79.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and therefore those allegations are denied.

80.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and therefore those allegations are denied.

81.    Mr. Solon admits that he was President of Conservation Resources, Inc., between 2010 and 2012.  Mr. Solon also admits that he began working with Ms. Zak on real estate projects, including projects on which investors ultimately decided to donate conservation easements, in or around 2010.  Mr. Solon denies the remaining allegations of Paragraph 81.  The other EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and therefore those allegations are denied.

82.    The EcoVest Parties admit that EcoVest was formed in 2012, that it began providing consulting services for real estate projects, which included options for conservation easements, that year, and that in or around 2013, it started managing such projects.  The EcoVest Parties admit that FINRA-registered independent

broker-dealers and SEC- and state-Registered Investment Advisors have sold units in the real estate projects on which EcoVest works.  The EcoVest Parties admit that Mr. Solon has worked at EcoVest since its formation, that Mr. Teal has been associated with EcoVest since 2013, and that Mr. McCullough joined EcoVest in 2014.  The EcoVest Parties admit that each of those three individuals have worked on EcoVest's real estate projects during their respective tenures at the company.  The remaining allegations of Paragraph 82 are denied.

83.   The EcoVest Parties admit that Ms. Zak owned a 12.05% ownership interest in EcoVest from 2012 until August 2013.  As a further response, the EcoVest Parties state that, in August 2013, EcoVest repurchased from Ms. Zak the shares in the company that she had held up until that time and that Ms. Zak has had no ownership interest or other role in EcoVest since August 2013.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83, and therefore those allegations are denied.

84.   To the extent these allegations are directed at the EcoVest Parties, they are denied.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 regarding Ms. Zak and Mr. Clark, and therefore those allegations are denied.

85.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

86.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

87.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

88.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

89.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and therefore those

allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

90.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

91.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

92.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

93.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 85-93.

94.     The EcoVest Parties admit that, in 2012, EcoVest provided consulting services to Red Oak Equestrian, LLC ("Red Oak Equestrian"), which was organized as a Georgia LLC with a registered address in Rome, GA.  Defendants McCullough and Teal were not affiliated with EcoVest in 2012 and had no involvement with the provision of consulting services to Red Oak Equestrian that year.   The other allegations of Paragraph 94 are denied.

95.     The EcoVest Parties admit that Red Oak Equestrian owned approximately 324.90 acres of land in Georgia that was generally wooded.  The EcoVest Parties deny the remaining allegations of Paragraph 95.

96.     The EcoVest Parties admit that, on or about December 12, 2012, Red Oak Equestrian offered for sale in a Regulation D private placement 900 to 950 membership interests at $1,799 per unit and that EcoVest provided consulting services to the manager of the project.   The EcoVest Parties do not possess information sufficient to admit or deny the other statements made in this paragraph, and therefore those allegations are denied.

97.     The EcoVest Parties admit that the law firm Sirote & Permutt, PC ("Sirote" or "the Sirote law firm") wrote a 30-page tax opinion letter regarding Red Oak Equestrian; that the letter stated, *inter alia*, that "it is our opinion that, more likely than not, the Company [Red Oak Equestrian] will be classified as a

'partnership' and not as an 'association taxable as a corporation' for federal income tax purposes . . ."; that the letter stated, *inter alia*, that if Red Oak Equestrian and its members made a charitable contribution of a conservation easement, the "deduction attributable to the Conservation Easement will flow-through to the Members in a manner consistent with the intent of Subchapter K"; and that the tax opinion letter was included with the Red Oak Equestrian private offering summary.  As a further response, the EcoVest Parties state that Sirote is a highly-regarded law firm with deep experience in the law relating to conservation easements and their tax implications.  The EcoVest Parties deny that they provided any incorrect facts or documents to Sirote, and note that Plaintiff's contrary allegation is wholly conclusory and unsupported by any evidence.  The EcoVest Parties deny the remaining allegations of Paragraph 97.

98.    The EcoVest Parties admit that, in 2012, units of Red Oak Equestrian were offered by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Red Oak Equestrian offering documents and otherwise deny the allegations of Paragraph 98.

99.     The EcoVest Parties admit that, in 2012, units of Red Oak Equestrian were offered by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Red Oak Equestrian offering documents and state that it is wholly appropriate and oftentimes required to disclose risks in offering documents.  The EcoVest Parties otherwise deny the allegations of Paragraph 99.

100.    The EcoVest Parties admit that, in 2012, units of Red Oak Equestrian were offered by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Red Oak Equestrian offering documents and otherwise deny the allegations of Paragraph 100.

101.    The EcoVest Parties admit that, in 2012, units of Red Oak Equestrian were offered by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent

a further response is required, the EcoVest Parties refer Plaintiff to the Red Oak Equestrian offering documents and otherwise deny the allegations of Paragraph 101.

102.   The EcoVest Parties admit that Mr. Clark was engaged to provide independent qualified appraisal services relating to the Red Oak Equestrian property. The EcoVest Parties further admit that Clark prepared an independent qualified appraisal report, the terms of which speak for themselves, and that it was included in the offering summary.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the above-referenced qualified appraisal report and otherwise deny the allegations of Paragraph 102.

103.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 related to Defendant Ms. Zak, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 103.

104.   The EcoVest Parties admit that Red Oak Equestrian entered into a Soliciting Dealer Agreement with The Strategic Financial Alliance, Inc., a FINRA-registered independent broker-dealer, related to the property, the terms of which agreement speak for themselves.   The EcoVest Parties deny the remaining allegations of Paragraph 104.

105.   Admitted.

106.   Admitted.

107.   Denied.

108.   Denied.

109.   The EcoVest Parties admit that Red Oak Equestrian reported on its tax year 2012 Form 1065 a charitable contribution deduction arising from the conservation easement in the amount listed on that Form, which speaks for itself. The remainder of Paragraph 109 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties deny the remaining allegations of Paragraph 109.

110.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110, and therefore those allegations are denied.

111.   The EcoVest Parties admit that, in 2015, EcoVest managed a real estate project called Cypress Cove Marina.  Cypress Cove Marina Holdings, LLC, ("CCM Holdings") was organized as a Delaware limited liability company on May 18, 2015, with its principal office in Atlanta, Georgia.  The EcoVest Parties admit that CCM Holdings' principals included Mr. McCullough.   The EcoVest Parties deny the remaining allegations of Paragraph 111.

112.   Denied.

113.    The EcoVest Parties admit that Cypress Cove Marina, LLC, ("CCM") was organized as a Delaware limited liability company on May 19, 2015, that its principal office was in Atlanta, Georgia, and that CCM acquired a 28.04-acre parcel of real property in South Carolina.   The EcoVest Parties deny the remaining allegations of Paragraph 113.

114.    The EcoVest Parties admit that, according to the deed for the property at issue, Christian Academy, Inc., acquired that property in December 2011.   The EcoVest Parties deny the remaining allegations of Paragraph 114.

115.    The EcoVest Parties admit that on or about June 8, 2015, CCM Holdings and Christian Academy entered into a Membership Interest Purchase Agreement related to the acquisition of membership interests in CCM, which owned the subject 28.04-acre parcel of real property.   The terms of that agreement speak for themselves.   To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents, which included that agreement as an attached exhibit, and otherwise deny the allegations of Paragraph 115, including each of its subparagraphs.

116.    Paragraph 116 contains legal assertions to which no response is required.   To the extent that a response is deemed required, the EcoVest Parties deny the allegations of Paragraph 116.

117.   The EcoVest Parties admit that on or about July 10, 2015, Mr. Clark provided a preliminary qualified appraisal of the CCM property.  The terms of that qualified appraisal speak for themselves.  The appraisal was peer reviewed; a second independent qualified appraiser reviewed Mr. Clark's qualified appraisal to ensure his appraisal methodologies were in compliance with Uniform Standards of Professional Appraisal Practices (USPAP).  This peer review was then reviewed to determine that the appraisal peer review did not raise any material concerns or issues pertaining to Mr. Clark's qualified appraisal.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 101 regarding Mr. Clark, and therefore those allegations are denied.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents—which included a copy of that qualified appraisal—and otherwise deny the remaining allegations of Paragraph 117.

118.   The EcoVest Parties admit that, in 2015, units of CCM Holdings were offered by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents and otherwise deny the allegations of Paragraph 118.

119.   The EcoVest Parties admit that, in 2015, units of CCM Holdings were offered in a Regulation D private placement by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  Those documents were rendered in full compliance with FINRA rules and regulations.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents and otherwise deny the allegations of Paragraph 119.

120.   The EcoVest Parties admit that, in 2015, units of CCM Holdings were offered in a Regulation D private placement by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents and state that it is wholly appropriate and oftentimes required to disclose risks in offering documents.  The EcoVest Parties otherwise deny the allegations of Paragraph 120.

121.   The EcoVest Parties admit that, in 2015, units of CCM Holdings were offered in a Regulation D private placement by FINRA-registered independent broker-dealers to accredited investors pursuant to documents, including a detailed

private offering memorandum and accompanying exhibits, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents and otherwise deny the allegations of Paragraph 121.

122.   The EcoVest Parties admit that on or about December 15, 2015, CCM executed a conservation easement and declaration of restrictions and covenants, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the CCM Holdings offering documents and to the recorded conservation easement and declaration of restrictions and covenants for the CCM property.  The EcoVest Parties otherwise deny the allegations of Paragraph 122.

123.   The EcoVest Parties admit that Mr. Clark was engaged to provide independent qualified appraisal services relating to the CCM property.  The EcoVest Parties further admit that Mr. Clark prepared qualified appraisal reports, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the above-referenced qualified appraisal reports and otherwise deny the allegations of Paragraph 123.

124.   Denied.

125.   Denied.

126.   The EcoVest Parties admit that CCM filed a Form 1065 for tax year 2015, the terms of which speak for themselves.  The remainder of Paragraph 126 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties deny the remaining allegations of Paragraph 126.

127.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127, and therefore those allegations are denied.

128.   The EcoVest Parties admit that, in 2016, EcoVest managed a real estate project called Cape Fear Pointe and that the project involved Cape Fear Pointe, LLC and Cape Fear Pointe Holdings, LLC.  The remaining allegations of Paragraph 128 are denied.

129.   The EcoVest Parties admit that Cape Fear Pointe Holdings, LLC was organized as a Delaware limited liability company on April 5, 2016.  The EcoVest Parties deny the remaining allegations of Paragraph 129.

130.   The EcoVest Parties admit that Cape Fear Pointe, LLC was organized as a Delaware limited liability company on June 13, 2016.  The EcoVest Parties deny the remaining allegations of Paragraph 130.

131.   The EcoVest Parties admit that EcoVest Management, LLC managed the Cape Fear Pointe project.  The EcoVest Parties deny the remaining allegations of Paragraph 131.

132.   The EcoVest Parties admit that there were 11 investors in the Cape Fear Pointe project and that Triloma was not managing broker-dealer for the project.  The EcoVest Parties deny the remaining allegations of Paragraph 132.

133.   The EcoVest Parties admit that, as part of this litigation, they produced a list of investors in all of EcoVest projects through 2018, and that the terms of that list speak for themselves.  The EcoVest Parties further admit that, as part of this litigation, they produced the offering documents for the Cape Fear Pointe project, including a private placement memorandum, and that the terms of those documents speak for themselves.  The EcoVest Parties deny the remaining allegations of Paragraph 133.

134.   The EcoVest Parties admit that, as part of this litigation, they produced the offering documents (including a private placement memorandum), closing binder, and other project documents related to the Cape Fear Point project, and that the terms of those documents speak for themselves.  The EcoVest Parties deny the remaining allegations of Paragraph 134.

135.   The EcoVest Parties admit that on or about November 30, 2016, Cape Fear Pointe, LLC executed a conservation easement and declaration of restrictions and covenants, the terms of which speak for themselves.  Adam Lloyd signed the document.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Cape Fear Pointe offering documents and to the recorded conservation easement and declaration of restrictions and covenants for the property. The EcoVest Parties otherwise deny the allegations of Paragraph 135.

136.   The EcoVest Parties admit that Raymond Veal of Integra Realty Resources was engaged to provide independent qualified appraisal services relating to the Cape Fear Pointe property.  The EcoVest Parties further admit that they produced the qualified appraisal, along with other, related documents, as part of this litigation.  The terms of those documents speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the above-referenced qualified appraisal and otherwise deny the allegations of Paragraph 136.

137.   The EcoVest Parties admit that, in 2018, EcoVest managed a real estate project called Harbor Gate at Seadrift.  Harbor Gate at Seadrift Holdings, LLC, was organized as a Delaware Limited Liability Company on or about September 4, 2018. To the extent a further response is required, the EcoVest Parties refer Plaintiff to the documents related to this project that have been produced as part of this litigation,

including the entity formation documents.  The EcoVest Parties otherwise deny the allegations of Paragraph 137.

138.   The EcoVest Parties admit that Harbor Gate at Seadrift, LLC, was formed as a Delaware Limited Liability Company on or about December 13, 2018. The EcoVest Parties deny the remaining allegations of Paragraph 138.

139.   The EcoVest Parties admit that, in 2015, units of Harbor Gate at Seadrift Holdings were offered by FINRA-registered independent broker-dealers and SEC- and state-Registered Investment Advisors to accredited investors pursuant to documents, including a detailed private offering memorandum and accompanying exhibits, which the EcoVest Parties produced as part of this litigation.  The terms of those documents speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Harbor Gate at Seadrift Holdings offering documents and otherwise deny the allegations of Paragraph 139.

140.   The EcoVest Parties admit that it produced in this litigation a Membership Interest Purchase Agreement dated November 19, 2018, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Harbor Gate at Seadrift Holdings offering documents and otherwise deny the allegations of Paragraph 140.

141.   Paragraph 141 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties deny the allegations of Paragraph 141.

142.   The EcoVest Parties admit that on or about October 17, 2018, Mr. Clark provided a preliminary qualified appraisal of the Harbor Gate at Seadrift property. The terms of that qualified appraisal speak for themselves.  The appraisal was peer reviewed; a second independent qualified appraiser reviewed Mr. Clark's qualified appraisal to ensure his appraisal methodologies were in compliance with Uniform Standards of Professional Appraisal Practices (USPAP). This peer review was then reviewed to determine that the appraisal peer review did not raise any material concerns or issues pertaining to Mr. Clark's qualified appraisal.  The EcoVest Parties further admit that, as part of this litigation, they produced a Private Placement Memorandum for Harbor Gate at Seadrift, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Harbor Gate at Seadrift offering documents—including the qualified appraisal and PPM—and otherwise deny the remaining allegations of Paragraph 142.

143.   The EcoVest Parties admit that, as part of this litigation, they produced documents related the Harbor Gate at Seadrift project, including a closing binder.

The terms of those documents speak for themselves.   To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 143.

144.   The EcoVest Parties admit that project-related entities earned fees as described and as disclosed in the offering documents produced as part of this litigation and as described in the EcoVest Parties' responses to Plaintiff's interrogatories.  The terms of those documents speak for themselves.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 144.

145.   The EcoVest Parties admit that Triloma Securities acted as managing broker-dealer for the Harbor Gate at Seadrift project.  The EcoVest Parties deny the remaining allegations of Paragraph 145.

146.   The EcoVest Parties admit that Triloma Securities acted as managing broker-dealer for the Harbor Gate at Seadrift project, utilizing a relationship structure typical of real estate programs offered via FINRA registrered independent broker-dealers.  The EcoVest Parties deny Plaintiff's characterization of the role of the managing broker-dealer.  The EcoVest Parties are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146, and therefore those allegations are denied.

147.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147, and therefore those allegations are denied.

148.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148, and therefore those allegations are denied.

149.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149, and therefore those allegations are denied.

150.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150, and therefore those allegations are denied.

151.   The EcoVest Parties admit that on or about December 21, 2018, Harbor Gate at Seadrift, LLC, executed a conservation easement and declaration of restrictions and covenants, the terms of which speak for themselves.

152.   The EcoVest Parties admit that Harbor Gate at Seadrift Holdings, LLC made a noncash charitable contribution, as described in the project documents produced in this litigation.  The terms of those documents speak for themselves.  The EcoVest Parties also admit that real estate projects on which they work involve

entities treated as partnerships for tax purposes, and further state that there is nothing improper or unusual about utilizing this business structure.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 152.

153.  The EcoVest Parties admit that Mr. Clark performed a qualified appraisal of the Harbor Gate at Seadrift property.  The EcoVest Parties further admit that the project documents produced as part of this litigation include that appraisal and documents related to it.  The terms of those documents speak for themselves. The EcoVest Parties also admit that real estate projects on which they work involve entities treated as partnerships for tax purposes, and further state that there is nothing improper or unusual about utilizing this business structure.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 153.

154.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154- 161.

155.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that

they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

156.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

157.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

158.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

159.    The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, and therefore

those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

160.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

161.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, and therefore those allegations are denied.  As a further response, the EcoVest Parties state that they had no involvement in the alleged transactions referenced in Paragraphs 154-161.

162.   The EcoVest Parties admit that they have worked on numerous real estate projects, in which investors ultimately decided to donate conservation easements, in multiple states, including Georgia.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 that relate to Ms. Zak and Mr. Clark, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 162.

163.   The EcoVest Parties admit that EcoVest has managed numerous real estate projects, in which investors ultimately decided to donate conservation easements.  These conservation easements resulted in preservation of nearly 20,000 acres, which, consistent with federal tax law, resulted in tax deductions.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 regarding Ms. Zak and Mr. Clark, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations in Paragraph 163.

164.   The EcoVest Parties admit that EcoVest provided to FINRA-registered independent broker-dealers documents related to its real estate projects for due diligence purposes, including membership interest purchase agreements, real estate development plans, market studies, construction cost estimates, operating agreements, qualified appraisal reports, tax opinion letters, and related documents. The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 regarding Ms. Zak, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 164.

165.   The EcoVest Parties admit that EcoVest provided to FINRA-registered independent broker-dealers documents related to its real estate projects for due

diligence purposes, including real estate development plans, qualified appraisal reports, tax opinion letters, and related documents, and that some statements in these documents were based on qualified appraisals.   The EcoVest Parties deny the remaining allegations of Paragraph 165.

166.   The EcoVest Parties admit that interests in real estate projects managed by EcoVest are sold through FINRA-registered independent broker-dealers and SEC- and state-Registered Investment Advisors.   The EcoVest Parties deny the remaining allegations of Paragraph 166.

167.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167, and therefore those allegations are denied.

168.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168, and therefore those allegations are denied.

169.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169, and therefore those allegations are denied.

170.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170, and therefore those allegations are denied.

171.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171, and therefore those allegations are denied.

172.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172, and therefore those allegations are denied.

173.   The EcoVest Parties admit that EcoVest made available to FINRA-registered independent broker-dealers documents related to its real estate projects for due diligence purposes, including real estate development plans, qualified appraisal reports, tax opinion letters, and related documents.  The EcoVest Parties deny the remaining allegations of Paragraph 173.

174.   Denied.

175.   The EcoVest Parties admit that Mr. Solon, Mr. McCullough, and Mr. Teal worked on EcoVest-managed real estate projects, in which investors ultimately decided to donate conservation easements, and that this work involved the

preparation of documents related to those projects.  The remaining allegations of Paragraph 175 are denied.

176.   Denied.

177.   The EcoVest Parties admit that they engaged the Sirote law firm, a well-respected firm with deep subject-matter expertise in the relevant areas of law, to provide legal advice regarding conservation easements.  The EcoVest Parties further admit that the Sirote law firm prepared a Conservation Easement Overview, summarizing the law relating to conservation easements and related tax issues.  The EcoVest Parties further state that FINRA reviewed the Conservation Easement Overview for use as an educational tool during the offering and sales process.  The EcoVest Parties deny the remaining allegations of Paragraph 177.

178.   The EcoVest Parties admit that the Sirote law firm prepared a document entitled Conservation Easement Overview summarizing the law relating to conservation easements and related tax issues, which speaks for itself.  The EcoVest Parties further state that FINRA reviewed the Conservation Easement Overview for use as an educational tool during the offering and sales process.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Conservation Easement Overview and otherwise deny the allegations of Paragraph 178.

179.   The EcoVest Parties admit that the Sirote firm prepared the Conservation Easement Overview, which is a document the content of which speaks for itself.  The EcoVest Parties further state that FINRA reviewed the Conservation Easement Overview for use as an educational tool during the offering and sales process.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Conservation Easement Overview and otherwise deny the allegations of Paragraph 179.

180.   The EcoVest Parties admit that EcoVest was converted to a C-corporation in 2015, and that it has managed and continues to manage real estate projects, which include options for conservation easements.   EcoVest began managing such projects in 2013.  The EcoVest Parties admit that units of EcoVest projects are offered in a Regulation D private placements by FINRA-registered independent broker-dealers to accredited investors.  The remaining allegations of Paragraph 180 are denied.

181.   The EcoVest Parties admit that, on or about February 19, 2015, EcoVest and Triloma Financial Group, LLC entered into a letter agreement, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 181.

182.   Denied.

183.   The EcoVest Parties admit that, on or about February 19, 2015, EcoVest and Triloma Financial Group, LLC entered into a letter agreement, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 183.

184.   The EcoVest Parties admit that, on or about February 19, 2015, EcoVest and Triloma Financial Group, LLC entered into a letter agreement, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 184.

185.   The EcoVest Parties admit that FINRA-registered, independent broker-dealers and SEC- and state-Registered Investment Advisors have offered for sale interests in EcoVest's real estate projects to accredited investors.  The EcoVest Parties expect all such broker-dealers and Registered Investment Advisors to not make false or fraudulent statements.  The EcoVest Parties deny the remaining allegations of Paragraph 185.

186.   The EcoVest Parties admit that, on or about February 19, 2015, EcoVest and Triloma Financial Group, LLC entered into a letter agreement, the terms of which speak for themselves.  To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 186.

187.   Denied.

188.   The EcoVest Parties admit that, on or about February 19, 2015, EcoVest and Triloma Financial Group, LLC entered into a letter agreement, the terms of which speak for themselves.   The EcoVest Parties deny the remaining allegations of Paragraph 188.

189.   Denied.

190.   The EcoVest Parties admit that numerous FINRA-registered, independent broker-dealers and SEC- and state-Registered Investment Advisors have offered for sale interests in EcoVest real estate projects to accredited investors. Neither FINRA nor SEC rules require financial advisors to be located in the same states as their affiliated broker-dealer; such broker-dealers often have a national presence. To the extent a further response is required, the EcoVest Parties deny the allegations of paragraph 190.

191.   The EcoVest Parties admit that numerous FINRA-registered, independent broker-dealers and SEC- and state-Registered Investment Advisors have offered for sale interests in EcoVest real estate projects to accredited investors *i.e.*, persons meeting certain financial and investment-related criteria under federal securities laws.   Neither FINRA nor SEC rules require financial advisors to be located in the same states as their affiliated broker-dealer; such broker-dealers often have a national presence.   EcoVest denies Plaintiff's characterizations of EcoVest's

work in Paragraph 191.  The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 191, and therefore those allegations are denied.

192.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192, and therefore those allegations are denied.

193.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, and therefore those allegations are denied.

194.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194, and therefore those allegations are denied.

195.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195, and therefore those allegations are denied.

196.   Denied.

197.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197, and therefore those allegations are denied.

198.   The EcoVest Parties admit that EcoVest personnel, including Robert McCullough, attended meetings with FINRA-registered, independent broker-dealers, SEC- and state-Registered Investment Advisors, and, in some case, with investors or potential investors, provided that the investor's financial advisor was present at such meeting.  In some instances, other investment sponsors completely independent of EcoVest were also in attendance to discuss their investment programs with the same audience.  It is neither uncommon nor improper for investment sponsors to attend such meetings.  The EcoVest Parties admit that such meetings occurred in several locations.  The remaining allegations of Paragraph 198 are denied.

199.   The EcoVest Parties admit that EcoVest personnel communicated with financial advisors and their clients, including by providing information about the nature of the investments.  The remaining allegations of Paragraph 199 are denied.

200.   The EcoVest Parties admit that EcoVest personnel participated in training sessions related to EcoVest's real estate projects, as required by FINRA rules and regulations.  The remaining allegations of Paragraph 200 are denied.

201.   Denied.

202.   The EcoVest Parties admit that, starting in 2015, Triloma Securities was managing broker-dealer for EcoVest's real estate projects, that numerous FINRA-registered, independent broker-dealers, SEC- and state-Registered Investment Advisors in numerous states offered for sale interests in those real estate projects to accredited investors, *i.e.*, persons meeting certain financial and investment-related criteria under federal securities laws.  The EcoVest Parties deny the remaining allegations of Paragraph 202.

203.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203, and therefore those allegations are denied.

204.   The EcoVest Parties admit that EcoVest has used DST Systems, an SEC registered transfer agent, as transfer agent to ensure full compliance with securities laws for securities trades and that DST Systems operates in Kansas City, Missouri.  The EcoVest Parties further admit that other entities provide services related to EcoVest's real estate projects.  The remaining allegations in Paragraph 204 are denied.

205.   The EcoVest Parties admit that FactRight and Mick Law Group provided independent, third-party due diligence reports related to EcoVest projects, which were utilized by both Triloma as managing broker-dealer and by selling

broker-dealers in their due diligence procedures, which is a typical due diligence requirement for FINRA-registered independent broker-dealers.   The other allegations in Paragraph 205 are denied.

206.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206, and therefore those allegations are denied.

207.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207, and therefore those allegations are denied.

208.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208, and therefore those allegations are denied.

209.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209, and therefore those allegations are denied.

210.   The EcoVest Parties admit that real estate projects on which they work involve entities treated as partnerships for tax purposes, and further state that there is nothing improper or unusual about utilizing this business structure.  The EcoVest Parties deny the remaining allegations of Paragraph 210.

211.  Denied.

212.  Denied.

213.  Denied.

214.  Paragraph 214 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties deny the allegations of Paragraph 214.

215.  Denied.

216.  Denied.

217.  Denied.

218.  Denied.

219.  Denied.

220.  Denied.

221.  Paragraph 221 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code and federal regulations provide criteria for "qualified conservation contribution[s]," which provisions speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Internal Revenue Code and the cited portions of the Code of Federal Regulations and otherwise deny the allegations of Paragraph 221.

222.   Denied.

223.   Denied.

224.   Paragraph 224 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code and federal regulations provide criteria for determining "fair market value," which provisions speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Internal Revenue Code and the quoted portions of the Code of Federal Regulations and otherwise deny the allegations of Paragraph 224.

225.   Paragraph 225 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code and federal regulations provide criteria for determining "fair market value," which provisions speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Internal Revenue Code and the cited portions of the Code of Federal Regulations and otherwise deny the allegations of Paragraph 225.

226.   Paragraph 226 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code and federal regulations provide criteria for

determining "fair market value" that speak for themselves and that appraisers generally consider certain criteria in determining the "highest and best use" of a property.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Internal Revenue Code and the quoted regulations and otherwise deny the allegations of Paragraph 226.

227.   Paragraph 227 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties admit that the Internal Revenue Code and federal regulations provide criteria for determining "fair market value," which provisions speak for themselves.  To the extent a further response is required, the EcoVest Parties refer Plaintiff to the Internal Revenue Code and the cited portions of the Code of Federal Regulations and otherwise deny the allegations of Paragraph 227.

228.   The EcoVest Parties admit that Mr. Clark is an independent appraiser based in Alabama, and further state that Mr. Clark's qualifications have been recognized by the Internal Revenue Service, courts, and others.  *See, e.g.*, *Kiva Dunes Conservation, LLC v. C.I.R.*, 97 T.C.M. (CCH) 1818, 2009 WL 1748862 at *6 (U.S. Tax Court June 22, 2009) ("We conclude that Mr. Clark's testimony is credible and his assumptions are reasonable and amply supported by the evidence presented at trial and in his report.").  In fact, the U.S. Tax Court has adopted a

definition of "highest and best use" consistent with the methodology Mr. Clark used in providing qualified appraisals for EcoVest projects. *See, e.g.*, *Palmer Ranch Holdings Ltd. v. Comm'r*, 107 T.C.M. (CCH) 1408, 2014 WL 1796362 at *9 (U.S. Tax Court May 6, 2014) (citing *Whitehouse Hotel L.P. v. Comm'r*, 139 T.C. 304, 331 (2012)), *aff'd in relevant part*, 812 F.3d 982 (11th Cir. 2016).   While the EcoVest Parties are not certain what is meant by the allegation that Clark "holds himself out" as a professional, qualified appraiser, they admit that he is in fact so qualified.

229.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 229, and therefore those allegations are denied.

230.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 230, and therefore those allegations are denied.

231.   The EcoVest Parties admit that, consistent with standard industry practice, Mr. Clark charged reasonable fees for his independent qualified appraisal services.   The remaining allegations of Paragraph 231 are denied.

232.   Denied.

233.   Denied.

234.   Denied.

235.   Denied.

236.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236, and therefore those allegations are denied.

237.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237, and therefore those allegations are denied.

238.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238 that pertain only to Mr. Clark, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 238.

239.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239, and therefore those allegations are denied.

240.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240, and therefore those allegations are denied.

241.   The EcoVest Parties admit that EcoVest assisted in the preparation of Forms 8283 that were filed by entities treated as partnerships in order to report applicable noncash charitable contributions.   The allegations of Paragraph 241 are denied to the extent they allege that EcoVest assisted in the preparation of Forms 8283 on behalf of individual partners in real estate partnerships.   The other allegations of Paragraph 241 are denied.

242.   Denied.

243.   Denied.

244.   Denied.

245.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 245, and therefore those allegations are denied.

246.   Denied.

247.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247 as they pertain to Ms. Zak and Mr. Clark, and therefore those allegations are denied.   The EcoVest Parties deny the remaining allegations of Paragraph 247.

248.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248 as they pertain to

how the IRS "expend[s]" its "time and resources," and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 248.

249.   Denied.

250.   Denied.

251.   Denied.

252.   Denied.

253.   To the extent these allegations are directed at the EcoVest Parties, they are denied.   The EcoVest Parties state that they continue to manage real estate projects, which include options for conservation easements—and that they do so in full compliance with the law.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253 regarding Ms. Zak, and therefore those allegations are denied.  The EcoVest Parties deny the remaining allegations of Paragraph 253.

254.   Paragraph 254 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited Notice dated December 23, 2016, which speaks for itself.

255.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255 as they pertain to Ms. Zak and Mr. Clark, and therefore those allegations are denied.  The EcoVest

Parties admit that EcoVest complied with the legal requirement to file Form 8918 for each real estate project in which it was involved.  The EcoVest Parties deny the remaining allegations of Paragraph 255.

256.   The EcoVest Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 256 as they pertain to Ms. Zak and Mr. Clark, and therefore those allegations are denied.  The EcoVest Parties admit that EcoVest continues to manage real estate projects, which include options for conservation easements, and state that they do so in full compliance with the law.  The EcoVest Parties deny the remaining allegations of Paragraph 256.

### ANSWER TO COUNT I
### (Against All Defendants)

257.   The EcoVest Parties incorporate and restate by reference the foregoing responses to Paragraphs 1 through 256 of the Amended Complaint, inclusive, as if they were fully set forth herein.

258.   Paragraph 258 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

259.   Paragraph 259 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

260.   Paragraph 260 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

261.   Paragraph 261 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

262.   Denied.

263.   Denied.

264.   Denied.

265.   Denied.

266.   Denied.

267.   Denied.

268.   Denied.

269.   Denied.

270.   Denied.

## ANSWER TO COUNT II
### (Against Defendant Mr. Clark)

271.   Paragraph 271 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

272.   Paragraph 272 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

273.   Paragraph 273 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

274.   Paragraph 274 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

275.   Paragraph 275 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

276.   Paragraph 276 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

277.   Paragraph 277 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

278.   Paragraph 278 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

279.   Paragraph 279 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

280.   Paragraph 280 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

281.   Paragraph 281 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

282.   Paragraph 282 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

## ANSWER TO COUNT III
### (Against Defendant Mr. Clark)

283.   Paragraph 283 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

284.    Paragraph 284 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

285.    Paragraph 285 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

286.    Paragraph 286 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

287.    Paragraph 287 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

288.    Paragraph 288 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

289.    Paragraph 289 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

290.   Paragraph 290 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

291.   Paragraph 291 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

292.   Paragraph 292 contains allegations in support of a claim against only a defendant other than the EcoVest Parties.  Because the allegations do not relate to any claim against the EcoVest Parties, no response is required.

### ANSWER TO COUNT IV
### (Against All Defendants)

293.   The EcoVest Parties incorporate and restate by reference the foregoing responses to Paragraphs 1 through 292 of the Amended Complaint, inclusive, as if they were fully set forth herein.

294.   Paragraph 294 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

295.   Paragraph 295 contains legal assertions to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

296.   Denied.

297.   Denied.

298.   Denied.

299.   Denied.

300.   Denied.

301.   Denied.

302.   Denied.

303.   Denied.

304.   Denied.

## ANSWER TO COUNT V
### (Against All Defendants)

305.   The EcoVest Parties incorporate and restate by reference the foregoing responses to paragraphs 1 through 304 of the Amended Complaint, inclusive, as if they were fully set forth herein.

306.   Paragraph 306 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

307.   Denied.

308.   Denied.

309.   Paragraph 309 contains a legal assertion to which no response is required.  To the extent that a response is deemed required, the EcoVest Parties refer to the language of the cited statute, which speaks for itself.

*     *     *

All allegations of the Amended Complaint not expressly admitted herein are denied.

**DEFENSES**
**FIRST DEFENSE**

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.  As related to the EcoVest Parties, none of the allegations of fact, even if proven, would constitute a violation of 26 U.S.C. §§ 6700, 6701, 7402, 7407, or 7408.

**SECOND DEFENSE**

Plaintiff's claims are barred by the applicable statute of limitations.

**THIRD DEFENSE**

Plaintiff's claims are barred by the doctrine of laches.

**FOURTH DEFENSE**

Plaintiff's claims are barred under the doctrine of estoppel.

**FIFTH DEFENSE**

Plaintiff's claims are barred because the EcoVest Parties' actions were at all times justified and proper under applicable law.

## SIXTH DEFENSE

Plaintiff's purported claim for relief seeking disgorgement of the EcoVest Parties' gross receipts and prejudgment interest would violate the Excessive Fines Clause of the Eighth Amendment of the United States Constitution.

## SEVENTH DEFENSE

Plaintiff's claims are barred because Plaintiff and/or its attorneys lack the statutory authority to seek the relief that Plaintiff's Prayer for Relief purports to seek, including at least the request for disgorgement.

\* \* \*

Defendants reserve the right to assert, and hereby give notice that they intend to rely upon, any other defense that may become available or appear during discovery proceedings or otherwise in this case and hereby reserve the right to amend their Answer to assert any such defense.

## RELIEF SOUGHT

In response to the "Relief Sought" contained in the unnumbered paragraph following paragraph 309 of the Amended Complaint and in response to Plaintiff's unnumbered headings throughout the Amended Complaint, the EcoVest Parties deny that Plaintiff is entitled to any relief in this action and deny all liability and allegations of misconduct alleged in the "Relief Sought" and unnumbered headings.

WHEREFORE, the EcoVest Parties request that the Court set this matter for trial at the earliest available date and pray for the following relief against Plaintiff:

a.  That this Court find that the EcoVest Parties have not engaged in any conduct subject to injunction, disgorgement, or other penalty under 26 U.S.C. §§ 6700, 6701, 7402, 7407, or 7408;

b.  That this Court find that Plaintiff is not entitled to the injunctive or other relief it seeks under 26 U.S.C. §§ 7402, 7407, or 7408;

c.  That this Court render judgment in favor of the EcoVest Parties with respect to all counts and causes of action alleged against them in the Amended Complaint, and that this Court dismiss the Amended Complaint in its entirety with prejudice as it relates to the EcoVest Parties;

d.  That this Court order that Plaintiff take nothing from the EcoVest Parties by reason of its Amended Complaint;

e.  That this Court award the EcoVest Parties their costs and attorneys' fees;

f.  That this Court grant the EcoVest Parties such other relief as the Court deems appropriate.

Dated:  December 21, 2020        Respectfully submitted,

_____/s/ Matthew V. Miller_____
Benjamin J. Razi (admitted *pro hac vice*)
Sean Akins (admitted *pro hac vice*)
Marianna F. Jackson
(admitted *pro hac vice*)
Matthew V. Miller (admitted *pro hac vice*)
Nicholas Pastan (admitted *pro hac vice*)
Kandyce Korotky (admitted *pro hac vice*)
Julius Mitchell (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth St. NW
Washington, DC  20001
Tel.:  (202) 662-6000
Fax:  (202) 662-6291
Email: brazi@cov.com; sakins@cov.com;
mjackson@cov.com; mmiller@cov.com;
npastan@cov.com; kkorotky@cov.com;
jmitchell@cov.com

Thomas T. Tate
State Bar No. 698879
Elizabeth L. Clack-Freeman
Georgia Bar No. 126888
One Sugarloaf Centre
1960 Satellite Blvd., Suite 4000
Duluth, Georgia 30097
Tel: (770) 822-0900
Fax: (770) 822-9680
Email: ttate@atclaw.com;
lcfreeman@atclawfirm.com

*Attorneys for Defendants EcoVest Capital, Inc.,
Alan N. Solon, Robert M. McCullough, and
Ralph R. Teal, Jr.*

\*I certify that this pleading has been prepared with one of the font and point selections approved by the Court in LR 5.1C.

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 21, 2020, I caused a true and correct copy of the foregoing to be served on counsel of record via the Court's electronic filing system.

_/s/ Matthew V. Miller_____