# EXHIBIT B



Deposition of:

**Doris White**

*March 17, 2021*

In the Matter of:

**United States v. Zak, Nancy**

Veritext Legal Solutions

800-734-5292 | calendar-dmv@veritext.com |

```
                                             Page 1
 1          IN THE UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF GEORGIA

 3                  ATLANTA DIVISION

 4       Civil Action File No. 1:18-CV-05774-AT

 5    - - - - - - - - - - - - - - - - - - - - - - -

 6                   UNITED STATES,

 7                     Plaintiff,

 8                        v.

 9                NANCY ZAK, et al.,

10                   Defendants.

11    - - - - - - - - - - - - - - - - - - - - - - -

12

13                 VIDEOCONFERENCE

14        VIDEO-RECORDED DEPOSITION OF

15

16                  DORIS WHITE

17

18          Wednesday, March 17, 2021

19

20

21

22

23    Reported by:

24    SUSAN ASHE, CSR, RMR, CRR

25    Job No.:  4490775
```

Page 2

1

2

3

4

5

6

7            Videoconference video-recorded

8   deposition of DORIS WHITE, taken remotely on

9   behalf of the Defendants, beginning at 9:32 a.m.,

10  on Wednesday, March 17, 2021, via Zoom, before

11  Susan Ashe, CSR, RMR, CRR.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    APPEARANCE OF COUNSEL:

2         On behalf of the Plaintiff and the Witness:

3              U.S. DEPARTMENT OF JUSTICE, TAX DIVISION

4              BY:  GREGORY Van HOEY, ESQ.

5              P.O. Box 277, Ben Franklin Station

6              Washington, D.C.  20044

7              gregory.van.hoey@usdoj.gov

8                   -  and  -

9              UNITED STATES OF AMERICA

10             BY:  CHRISTOPHER A. PAVILONIS, ESQ.

11             Special Trial Attorney - IRS

12             (Small Business/Self-Employed)

13             STOP C, Room 240

14             400 West Bay Street

15             Jacksonville, Florida  32202

16             (Via Videoconference)

17

18

19

20

21

22

23

24

25

Page 4

1    APPEARANCE OF COUNSEL (Continued):

2         On behalf of the Defendant Claud Clark III:

3              CAPLIN & DRYSDALE, CHARTERED

4              BY:  NILES A. ELBER, ESQ.

5              One Thomas Circle, Northwest

6              Suite 1100

7              Washington, D.C.  20005

8              (202) 862-5000

9              nelber@capdale.com

10             (Via Videoconference)

11

12

13        On behalf of the Defendants EcoVest Capital,

14        Inc., Alan N. Solon, Robert M. McCullough,

15        and Ralph R. Teal, Jr.:

16             COVINGTON & BURLING LLP

17             BY:  MATTHEW MILLER, ESQ.

18             BY:  KANDYCE KOROTKY, ESQ.

19             850 10th Street, Northwest

20             Washington, D.C.  20001

21             (202) 662-6000

22             mmiller@cov.com

23             kkorotky@cov.com

24             (Via Videoconference)

25

1   ALSO PRESENT:

2           Clint Thomas

3           Concierge Technician

4           Veritext Legal Solutions

5

6           Dan Reidy

7           Videographer

8           Veritext Legal Solutions

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

1                        CONTENTS
2     THE WITNESS
3     Doris White
4
5       BY MR. MILLER                                    13
6       BY MR. ELBER                                    272
7
8                        EXHIBITS
9     DORIS WHITE
10    Exhibit No.                                     Marked
11    Exhibit 467  IRS Notice
12                 ECOVEST-DOJ_1075006
13                 through -011                          48
14    Exhibit 468  Conservation Easement
15                 Audit Techniques Guide
16                 (November 2016 Version)
17                 USPROD-0331881 through -970           65
18    Exhibit 469  Conservation Easement
19                 Audit Techniques Guide
20                 (November 2020 Version)
21                 ECOVEST-DOJ_1676562
22                 through -685                          68
23    Exhibit 470  IRS Starting or Proceeding
24                 with Conservation Easement
25                 USPROD-0332738                        88

Page 7

<pre>
 1                EXHIBITS (Continued)
 2    DORIS WHITE
 3    Exhibit No.                                Marked
 4    Exhibit 471  10.5.2017 Georgia
 5                 Easement Call Agenda
 6                 USPROD-0332406 and -407        97
 7    Exhibit 472  11.9.2017 Georgia
 8                 Easement Call Agenda
 9                 USPROD-0332440 and -441        99
10    Exhibit 473  6.7.2018 Georgia
11                 Easement Call Agenda
12                 USPROD-0332588 and -589       107
13    Exhibit 474  Email Correspondence
14                 USPROD-0542984 and -985       118
15    Exhibit 475  IRS PowerPoint "Introduction
16                 to Conservation Easements:
17                 Statutory Requirements &
18                 Qualified Conservation
19                 Contribution"
20                 January 2020
21                 ECOVEST-DOJ_1676947
22                 through -967                  128
23
24
25
</pre>

```
                                            Page 8
 1              EXHIBITS (Continued)
 2   DORIS WHITE
 3   Exhibit No.                            Marked
 4   Exhibit 476  8.13.2018 Correspondence
 5                USPROD-0120301                172
 6   Exhibit 477  TMP Notice of Beginning
 7                of Administrative
 8                Proceedings
 9                ECOVEST-DOJ_1818828 and -829   180
10   Exhibit 478  Initial Appointment Letter
11                and Information Document
12                Request Fax Transmission
13                ECOVEST-DOJ_0390574
14                through -582                182
15   Exhibit 479  Redacted Record
16                USPROD-0377774             185
17   Exhibit 480  Penalties Documentation
18                Fax Transmission
19                ECOVEST-DOJ_1817967
20                through -969               189
21   Exhibit 481  Form 886-A for
22                Cypress Cove Marina, LLC
23                ECOVEST-DOJ_1818874
24                through -900               191
25
```

Page 9

1                    EXHIBITS (Continued)

2    DORIS WHITE

3    Exhibit No.                                    Marked

4    Exhibit 482   Fraud Development Document

5                  USPROD-0123514 and -515          197

6    Exhibit 483   IRS Correspondence to

7                  Diamond Grande Resort LLC

8                  ECOVEST-DOJ_1819181 and -182     220

9    Exhibit 484   Email Correspondence

10                 USPROD-0114438 and -439          260

11   Exhibit 485   United States' Response to

12                 Claud Clark's First Set of

13                 Interrogatories                  276

14   Exhibit 486   Blank Form 872-AP

15                 No Bates                         286

16

17

18        DIRECT THE WITNESS NOT TO ANSWER

19    Page/Line            Page/Line            Page/Line

20     88/10               101/23               113/8

21    115/6                118/1                120/11

22    121/2                139/9                141/10

23    141/23               145/8                145/20

24    154/4                212/1

25      Multiple instructions pages 213 through 260

1    would think that it is -- it could be proper, yes.

2         Q      Did you visit the Cypress Cove Marina

3    property?

4         A      I did.

5         Q      Why did you visit the property?

6         A      I went with the engineers.

7         Q      What did you hope to see or learn in

8    visiting the property?

9         A      It was my first time ever going to

10   visit properties.  So I didn't know what I was

11   looking at.  I was just there with the engineers.

12        Q      Did you learn anything useful on that

13   visit that helped in making your determinations

14   for the Cypress Cove case?

15        A      My determination for the Cypress Cove

16   case was based upon the documents that I had and

17   the engineers' appraisals.

18        Q      Did you fill out an Examining Officer

19   Activity "report" for Cypress Cove Marina?

20        A      Are you referring to that 9984?

21        Q      If that's the title of the form, did

22   you fill it out?

23        A      What form are you referring to?

24        Q      Did you fill out any activity report

25   for Cypress Cove Marina?

Page 197

1       A      There's a 9984 in the case file that
2    would be the activity report, yes.
3       Q      And there's an activity report in all
4    of the case files for all of the projects you've
5    worked on, completed or not completed.
6              Is that correct?
7       A      Yes.
8              MR. MILLER:  We're going to show you
9        Tab 62, which is USPROD-0123514.  It will be
10       Exhibit 482.
11             (Whereupon, Doris White Exhibit 482
12       was marked for identification.)
13      Q      What is this document, Ms. White?
14      A      That's a mandatory lead sheet, but
15   that's not my taxpayer.
16      Q      Understood.
17             Are there different kinds of lead
18   sheets, or is there -- does "lead sheet"
19   necessarily refer to fraud?
20             I ask because I see "Fraud
21   Development" right up here, front and center on
22   this document.
23      A      That's the mandatory lead sheet for
24   fraud development.
25      Q      So are there different kinds of lead

Page 198

1   sheets -- one for fraud development, one for

2   something else?

3        A    There are different types of mandatory

4   lead sheets.

5        Q    What are the different types of

6   mandatory lead sheets?

7        A    They differ.

8             They -- it -- those forms -- those

9   mandatory lead sheets, they change as RGS is like

10  updated.

11            Those forms come from RGS.  So they --

12  at this time in 2018, this was a mandatory lead

13  sheet that was generated by RGS.

14            So there could have been other ones at

15  that time.  There could have been one that was

16  called...what is it called?

17            There's one for penalties, fraud....

18       Q    Can you recall any other mandatory

19  lead sheets that would be related to conservation

20  easement cases, other than the penalty one and the

21  fraud one?

22       A    I'm not going to say that these are

23  strictly related to conservation easement cases.

24  They're related to any case that's generated in

25  RGS, that's under audit.

Page 209

1   respect to Cypress Cove Marina?

2        A      I'm not, no.

3        Q      What's your view as to whether

4   penalties should be imposed on the charitable

5   contribution deduction claimed related to Cypress

6   Cove Marina?

7        A      I don't have a view.

8               I just apply the law to the facts of

9   the case and make the determination for the

10  penalties.

11       Q      And the law as applied to the facts of

12  the case -- in light of that, should there be

13  penalties?

14       A      I think you apply the law to the

15  facts, and you determine whether penalties are

16  applicable in the case.

17               MR. MILLER:  Kandyce, let's please

18          take down the Screen Share and let's turn to

19          another project.

20       Q      Ms. White, you worked on the Ocean

21  Grove case.

22               Is that correct?

23       A      I didn't conduct the Ocean Grove

24  examination.

25       Q      What was your role in the Ocean Grove

Page 210

1   case?

2       A     That case was initially assigned to

3   me.  So I may have done some preliminary research

4   on that case, read the documents as they relate to

5   that case; but I didn't conduct -- I didn't

6   complete the examination.

7       Q     Who completed the examination?

8       A     When I left Exam, my GM, Ashley

9   Crumblin, stated to me that she was transferring

10  the case to Shemica Patterson, I believe.  It

11  would have been either Shemica or Mary.

12          So Shemica would have -- Shemica

13  Patterson would have completed the examination of

14  that case.

15          So I don't know if she still has the

16  case or not.  I don't know if she completed it --

17  it could have been transferred to someone else.

18      Q     What's your view as to whether or not

19  the conservation easement in Ocean Grove was

20  properly valued?

21          MR. Van HOEY:  I'm going to object on

22      the basis of 6103.

23          We don't know whether it's an open or

24      closed case or not; and frankly, she didn't

25      work the case.

1           So -- I mean, there could be an

2       impairment issue here; but we don't know,

3       because we don't know if it's opened or

4       closed.

5           MR. MILLER:  Mr. Van Hoey, how are you

6       using "open or closed" in your objection?

7           MR. Van HOEY:  The same way that the

8       witness was using it.

9           MR. MILLER:  I've got to state my

10      disagreement with the objection.

11          If you don't know whether it's open or

12      closed, I don't think that's a basis for

13      instructing the witness not to answer.

14          If you knew that it was open, I'd

15      still disagree with it; but at least you

16      know that it's open.

17            (Simultaneous speaking.)

18          MR. Van HOEY:  Sorry for talking over

19      you there, Matt.  I didn't mean to.

20          The problem is if I don't know whether

21      it's open or closed, I have to at least

22      protectively -- because there is a chance

23      that it's still open -- make the objection.

24          MR. MILLER:  Are you going to instruct

25      her not to answer?

1           MR. Van HOEY:  Yes.

2           MR. MILLER:  Then I'll just state my

3     disagreement that you can instruct a witness

4     not to answer for something that might be

5     open when a privilege might apply.

6           But if you're instructing her not to

7     answer, I don't know if there's more to say

8     than that.

9           Can I ask, though:  If a "NOPA" is

10    issued for a certain project, would you

11    treat that project as open or closed for

12    purposes of your objection?

13          MR. Van HOEY:  Probably have to

14    consult with Mr. Pavilonis on that.

15          My assumption would be:  If the agent

16    has closed it out and it's gone to the TEFRA

17    unit, as she says, in order to create

18    assessments to individuals, then it would be

19    closed.

20          MR. MILLER:  Understood.

21          I appreciate the dialogue about this,

22    even if we disagree.

23          So I'm going to have several

24    questions.

25          And Ms. White, counsel for the United

Page 213

```
 1          States may have objections to these
 2          questions.
 3                  So I think I'll ask that one again,
 4          because it may have gotten sort of lost
 5          there.
 6  BY MR. MILLER:
 7          Q     Is it your view that the conservation
 8  easement at issue in Ocean Grove was properly
 9  valued?
10                  MR. Van HOEY:  I'll object on the
11          basis of 6103 and direct you not to answer.
12          Q     Is it the view of the IRS that the
13  conservation easement in the Ocean Grove -- for
14  Ocean Grove was properly valued?
15                  MR. Van HOEY:  Object on the basis of
16          6103.
17                  Direct you not to answer.
18          Q     Is it your view, Ms. White, that the
19  conservation easement at issue in Ocean Grove was
20  valued by a qualified appraiser?
21                  MR. Van HOEY:  Object on the basis of
22          6103.
23                  Direct you not to answer.
24          Q     Is it the view of the IRS, as far as
25  you know, Ms. White, that the conservation
```

Page 214

1  easement at issue in Ocean Grove was valued by a

2  qualified appraiser?

3           MR. Van HOEY:  Object on the basis of

4      6103.

5           Direct you not to answer.

6      Q    Ms. White, is it your view that the

7  appraisal prepared by Mr. Clark for the Ocean

8  Grove project was a qualified appraisal?

9           MR. Van HOEY:  Object on the basis of

10      6103.

11           Direct you not to answer.

12      Q    Ms. White, as far as you know, is it

13  the view of the IRS that the appraisal prepared

14  for the Ocean Grove project was a qualified

15  appraisal?

16           MR. Van HOEY:  Object on the basis of

17      6103 and direct you not to answer.

18      Q    Ms. White, in your opinion, was the

19  conservation easement at issue for Ocean Grove --

20  did it protect significant conservation -- did it

21  serve significant conservation purposes?

22           MR. Van HOEY:  Object on the basis of

23      6103.

24           Direct you not to answer.

25      Q    Ms. White, as far as you know, is it

Page 215

1    the IRS's view that the project at issue, the

2    easement at issue in -- that the easement at issue

3    in the Ocean Grove project protects significant

4    conservation resources?

5              MR. Van HOEY:  Object on the basis of

6         6103 and direct you not to answer.

7         Q    Ms. White, is it your view that the

8    conservation easement for Ocean Grove was

9    perpetual?

10             MR. Van HOEY:  Object on the basis of

11        6103.

12             Direct you not to answer.

13        Q    Is it the view of the IRS that the

14   easement at issue in Ocean Grove was perpetual?

15             MR. Van HOEY:  Objection on the basis

16        of 6103.

17             Direct you not to answer.

18        Q    Is it your view that the partnership

19   structure used for the Ocean Grove project was

20   proper under the code and regulations?

21             MR. Van HOEY:  Object on the basis of

22        6103.

23             Direct you not to answer.

24        Q    Is it the view of the IRS that the

25   partnership structure used for the Ocean Grove

Page 216

1   project was proper under the code and the

2   regulations?

3                    MR. Van HOEY:  Object on the basis of

4         6103.

5                    Direct you not to answer.

6        Q     Is it your view that the transaction

7   structure used for the Ocean Grove project was

8   proper under the code and the regulations?

9                    MR. Van HOEY:  Object on the basis of

10        6103.

11                   Direct you not to answer.

12       Q     Ms. White, is it your view that the

13  transaction structure used for Ocean Grove had

14  economic substance?

15                   MR. Van HOEY:  Object on the basis of

16        6103.

17                   Direct you not to answer.

18       Q     Is it the view of the IRS that the

19  transaction structure used for Ocean Grove had

20  economic substance?

21                   MR. Van HOEY:  Object on the basis of

22        6103.

23                   Direct you not to answer.

24       Q     Is it your view that the partnership

25  used for Ocean Grove had a valid business purpose?

1            MR. Van HOEY:  Object on the basis of

2       6103.

3            Direct you not to answer.

4       Q    Is it the view of the IRS that the

5  partnership used -- or the partnerships used for

6  Ocean Grove had a valid business purpose?

7            MR. Van HOEY:  Object on the basis of

8       6103.

9            Direct you not to answer.

10      Q    Ms. White, is it your opinion that the

11 holding period claimed with respect to Ocean Grove

12 was proper?

13           MR. Van HOEY:  Object on the basis of

14      6103.

15           Direct you not to answer.

16      Q    Is it the view of the IRS that the

17 holding period claimed with respect to the Ocean

18 Grove project was proper?

19           MR. Van HOEY:  Object on the basis of

20      6103.

21           Direct you not to answer.

22      Q    Was the charitable contribution

23 deduction claimed with respect to Ocean Grove

24 allowable?

25           MR. Van HOEY:  Object on the basis of

Page 218

1        6103.

2              Direct you not to answer.

3        Q    Is it the IRS's position that the

4    charitable deduction claimed with respect to Ocean

5    Grove was allowable?

6              MR. Van HOEY:  Object on the basis of

7        6103.

8              Direct you not to answer.

9        Q    Should penalties be imposed on the

10   charitable contribution deduction claimed related

11   to Ocean Grove?

12             MR. Van HOEY:  Object on the basis of

13       6103.

14             Direct you not to answer.

15       Q    Is it the view of the IRS that

16   penalties should be imposed on the basis of the

17   charitable contribution deduction claimed with

18   respect to the Ocean Grove project?

19             MR. Van HOEY:  Object on the basis of

20       6103.

21             Direct you not to answer.

22       Q    In your view, Ms. White, as far as you

23   know, did EcoVest, Mr. Clark, or any of the

24   EcoVest parties commit fraud with respect to the

25   Ocean Grove project?

                                                        Page 219

1                MR. Van HOEY:  Object on the basis of
2          6103.
3                Direct you not to answer.
4          Q     Is it the view of the IRS that
5     EcoVest, Mr. Clark, or any of the EcoVest parties
6     committed fraud with respect to the Ocean Grove
7     project?
8                MR. Van HOEY:  Object on the basis of
9          6103.
10               Direct you not to answer.
11         Q     Ms. White, in your view, were any
12    statements made in connection with the Ocean Grove
13    project by EcoVest, EcoVest parties, Mr. Clark --
14    were any statements made that were false or
15    fraudulent?
16               MR. Van HOEY:  Object on the basis of
17         6103.
18               Direct you not to answer.
19         Q     And is the IRS aware of any statements
20    made in connection with the Ocean Grove project --
21    by EcoVest, EcoVest parties, or Mr. Clark -- that
22    were false or fraudulent?
23               MR. Van HOEY:  Object on the basis of
24         6103.
25               Direct you not to answer.

Page 220

1      Q      So we've spoken about the Cypress Cove
2   project, the Ocean Grove project.
3             Ms. White, you also worked on a
4   project called "Diamond Grande."  That's correct?
5      A      Yes.
6      Q      What's the current status of the
7   Diamond Grande project?
8      A      I don't have that case anymore.  I
9   don't know the status.
10            MR. MILLER:  Kandyce, could we please
11        show Tab 39.  And Tab 39 will be Exhibit
12        483, and the Bates number is
13        ECOVEST-DOJ_1819181.
14            (Whereupon, Doris White Exhibit 483
15        was marked for identification.)
16      Q      And please let me know, Ms. White,
17   when you have that document available, either from
18   the Screen Share on Zoom or yourself on the shared
19   folder online.
20            MR. MILLER:  Kandyce, can you please
21        scroll all the way down to the signature.
22      Q      Ms. White, do you see, either on the
23   shared screen or your own copy, that you signed
24   this letter?
25      A      Yes.

Page 221

1          MR. MILLER:  And Kandyce, could you

2      now scroll back up to the first line of

3      text, right below "To whom it may concern."

4      Q    So Ms. White, this letter says that:

5              We've selected your Form 1065,

6              U.S. return of Partnership Income,

7              for examination for the tax period

8              above.

9              And it references the Diamond Grande

10    Resort LLC.

11             Why was this selected for examination?

12     A    I wouldn't know that, why it was

13    selected for examination.

14             That case was just assigned to me.

15     Q    Was the conservation easement used --

16    excuse me.

17             Was the conservation easement for the

18    Diamond Grande Resort project properly valued, in

19    your view?

20             MR. Van HOEY:  I'm going to object on

21      the basis of 6103.

22             Again, if we don't know whether the

23      case is open or closed, I'm going to have to

24      direct her not to answer at this point.

25     Q    In the view of the IRS, was the

                                                    Page 222

1    conservation easement for the Diamond Grande

2    project properly valued?

3                    MR. Van HOEY:  Object on the basis of

4         6103.

5                    Direct the witness not to answer.

6         Q     In the view -- in your view,

7    Ms. White, was the conservation easement for the

8    Diamond Grande project valued by a qualified

9    appraiser?

10                   MR. Van HOEY:  Object on the basis of

11        6103.

12                   Direct you not to answer.

13        Q     Is it the view of the IRS that the

14   conservation easement for the Diamond Grande

15   project was valued by a qualified appraiser?

16                   MR. Van HOEY:  Object on the basis of

17        6103.

18                   Direct you not to answer.

19        Q     Is it your view that the appraisal

20   prepared for the Diamond Grande project was a

21   qualified appraisal?

22                   MR. Van HOEY:  Object on the basis of

23        6103.

24                   Direct you not to answer.

25        Q     What is the view of the IRS as to

Page 223

1   whether the appraisal prepared for the project was

2   a qualified appraisal?

3                    MR. Van HOEY:  Object on the basis of

4        6103.

5                    Direct you not to answer.

6        Q     What is your view as to whether the

7   conservation easement for the Diamond Grande

8   project protects significant conservation

9   purposes?

10                   MR. Van HOEY:  Object on the basis of

11       6103.

12                   Direct you not to answer.

13       Q     What is the view of the IRS as to

14  whether the conservation easement in Diamond

15  Grande protects significant conservation purposes?

16                   MR. Van HOEY:  Object on the basis of

17       6103.

18                   Direct you not to answer.

19       Q     What is your view as to whether the

20  conservation easement for Diamond Grande is

21  perpetual?

22                   MR. Van HOEY:  Object on the basis of

23       6103.

24                   Direct you not to answer.

25       Q     What is the view of the IRS with

                                         Page 224

1    respect to whether the conservation easement for

2    Diamond Grande is perpetual?

3              MR. Van HOEY:  Object on the basis of

4         6103.

5              Direct you not to answer.

6         Q    What is your view as to whether the

7    partnership structure used for Diamond Grande was

8    proper under the code and regulations?

9              MR. Van HOEY:  Object on the basis of

10        6103.

11             Direct you not to answer.

12        Q    What is the view of the IRS as to

13   whether the partnership structure used for Diamond

14   Grande was proper under the code and regulations?

15             MR. Van HOEY:  Object on the basis of

16        6103.

17             Direct you not to answer.

18        Q    What is your view as to whether the

19   transaction structure used for Diamond Grande was

20   proper under the code and regulations?

21             MR. Van HOEY:  Object on the basis of

22        6103.

23             Direct you not to answer.

24        Q    What is the view of the IRS in terms

25   of whether or not the transaction structure used

Page 225

1    for Diamond Grande was proper under the code of

2    regulations?

3                    MR. Van HOEY:  Object on the basis of

4         6103.

5                    Direct you not to answer.

6         Q    What is your view, Ms. White, as to

7    whether or not the transaction structure for

8    Diamond Grande had economic substance?

9                    MR. Van HOEY:  Object on the basis of

10        6103.

11                   Direct you not to answer.

12        Q    What is the view of the IRS as to

13   whether the transaction structure used for Diamond

14   Grande had economic substance?

15                   MR. Van HOEY:  Object on the basis of

16        6103.

17                   Direct you not to answer.

18        Q    What is your view as to whether the

19   partnerships used in the Diamond Grande project

20   had a valid business purpose?

21                   MR. Van HOEY:  Object on the basis of

22        6103.

23                   Direct you not to answer.

24        Q    What is the view of the IRS as to

25   whether the partnerships used in the Diamond

```
                                    Page 226
 1   Grande project had a valid business purpose?
 2             MR. Van HOEY:  Object on the basis of
 3        6103.
 4             Direct you not to answer.
 5        Q    What is your view, Ms. White, as to
 6   whether the holding period claimed with respect to
 7   the Diamond Grande project was proper?
 8             MR. Van HOEY:  Object on the basis of
 9        6103.
10             Direct you not to answer.
11        Q    What is the view of the IRS as to
12   whether the holding period claimed with respect to
13   the Diamond Grande project was proper?
14             MR. Van HOEY:  Object on the basis of
15        6103.
16             Direct you not to answer.
17        Q    What is your view as to whether the
18   charitable contribution deduction claimed in the
19   Diamond Grande project was allowable?
20             MR. Van HOEY:  Object on the basis of
21        6103.
22             Direct you not to answer.
23        Q    What is the view of the IRS as to
24   whether the charitable contribution deduction
25   claimed in the Diamond Grande project was
```

Page 227

1    allowable?

2              MR. Van HOEY:  Object on the basis of

3        6103.

4              Direct you not to answer.

5        Q     What is your view, Ms. White, as to

6    whether penalties should be imposed based on the

7    charitable contribution deduction claimed related

8    to the Diamond Grande project?

9              MR. Van HOEY:  Object on the basis of

10       6103.

11             Direct you not to answer.

12       Q     What is the view of the IRS as to

13   whether penalties should be imposed based on the

14   charitable contribution deduction claimed related

15   to the Diamond Grande project?

16             MR. Van HOEY:  Object on the basis of

17       6103.

18             Direct you not to answer.

19       Q     What is your view as to whether

20   EcoVest or any of the EcoVest defendants committed

21   fraud -- or Mr. Clark -- with respect to the

22   Diamond Grande project?

23             MR. Van HOEY:  Object on the basis of

24       6103.

25             Direct you not to answer.

1      Q      What is the view of the IRS as to

2    whether EcoVest, any of the EcoVest parties, or

3    Mr. Clark committed fraud with respect to the

4    Diamond Grande project?

5                  MR. Van HOEY:  Object on the basis of

6          6103.

7                  Direct you not to answer.

8      Q      What is your view as to whether or not

9    there were any false or fraudulent statements made

10   in connection with the Diamond Grande project?

11                 MR. Van HOEY:  Object on the basis of

12         6103.

13                 Direct you not to answer.

14     Q      And what's the opinion of the IRS as

15   to whether or not there were any false or

16   fraudulent statements made with respect to the

17   Diamond Grande project?

18                 MR. Van HOEY:  Object on the basis of

19         6103.

20                 Direct you not to answer.

21                 MR. MILLER:  We've been going for a

22         little more than an hour, I'd say.  Let's

23         take a break.

24                 So unless anyone objects, let's go off

25         the record.

                                        Page 229

1              VIDEOGRAPHER:  We're going off the
2         record.  The time on the video is 4:23 p.m.
3              (Whereupon, a recess was taken.)
4              VIDEOGRAPHER:  We're back on the
5         record.  The time on the video is 4:36 p.m.
6    BY MR. MILLER:
7         Q    Ms. White, one of the projects that
8    you mentioned that you had worked on was Cayo
9    Marsopa.
10             Is that correct?
11        A    Yes.
12        Q    And that's one of the projects that
13   you're currently working on.  Correct?
14        A    That's a taxpayer that I'm currently
15   auditing, yes.
16        Q    What is your opinion as to whether the
17   conservation easement related to Cayo Marsopa was
18   properly valued?
19             MR. Van HOEY:  Object on the basis of
20        6103.
21             Direct you not to answer.
22        Q    What is the view of the IRS as to
23   whether the conservation easement for the Cayo
24   Marsopa project was properly valued?
25             MR. Van HOEY:  Object on the basis of

Page 230

1          6103.

2               Direct you not to answer.

3          Q     What is your view as to whether the

4     conservation easement for Cayo Marsopa was valued

5     by a qualified appraiser?

6               MR. Van HOEY:  Object on the basis of

7          6103.

8               Direct you not to answer.

9          Q     What is the ba- -- excuse me.

10              What is the view of the IRS as to

11    whether the conservation easement for Cayo Marsopa

12    was valued by a qualified appraiser?

13              MR. Van HOEY:  Object on the basis of

14         6103.

15              Direct you not to answer.

16         Q     What is your view as to whether the

17    appraisal prepared for Cayo Marsopa was a

18    qualified appraisal?

19              MR. Van HOEY:  Object on the basis of

20         6103.

21              Direct you not to answer.

22         Q     What is the view of the IRS as to

23    whether the appraisal prepared for Cayo Marsopa

24    was a qualified appraisal?

25              MR. Van HOEY:  Object on the basis of

Page 231

1       6103.

2              Direct you not to answer.

3       Q      What is your view as to whether the

4    conservation easement for Cayo Marsopa protects

5    significant conservation purposes?

6              MR. Van HOEY:  Object on the basis of

7       6103.

8              Direct you not to answer.

9       Q      What is the view of the IRS with

10   respect to whether the conservation easement for

11   Cayo Marsopa protects significant conservation

12   purposes?

13             MR. Van HOEY:  Object on the basis of

14      6103.

15             Direct you not to answer.

16      Q      What is your view as to whether the

17   conservation easement for Cayo Marsopa protects

18   conservation purposes in perpetuity?

19             MR. Van HOEY:  Object on the basis of

20      6103.

21             Direct you not to answer.

22      Q      What is your view as to whether the

23   conservation easement for Cayo Marsopa is

24   perpetual?

25             MR. Van HOEY:  Object on the basis of

Page 232

1       6103.

2              Direct you not to answer.

3       Q     What is your view as to whether the

4    partnership structure used for Cayo Marsopa is

5    proper under the code and regulations?

6              MR. Van HOEY:  Object on the basis of

7       6103.

8              Direct you not to answer.

9       Q     What is the view of the IRS in terms

10   of whether the partnership structure used for Cayo

11   Marsopa is proper under the code and regulations?

12             MR. Van HOEY:  Object on the basis of

13      6103.

14             Direct you not to answer.

15      Q     What is your view as to whether the

16   transaction structure used for Cayo Marsopa is

17   proper under the code and regulations?

18             MR. Van HOEY:  Object on the basis of

19      6103.

20             Direct you not to answer.

21      Q     What is the view of the IRS in terms

22   of whether the transaction structure used for Cayo

23   Marsopa was proper under the code and regulations?

24             MR. Van HOEY:  Object on the basis of

25      6103.

Page 233

1           Direct you not to answer.

2      Q      What is your view as to whether the

3  transaction structure for Cayo Marsopa had

4  economic substance?

5                MR. Van HOEY:  Object on the basis of

6       6103.

7                Direct you not to answer.

8      Q      What is the view of the IRS in terms

9  of whether the transaction structure for Cayo

10  Marsopa had economic substance?

11                MR. Van HOEY:  Object on the basis of

12       6103.

13                Direct you not to answer.

14      Q      What is your view with respect to

15  whether the partnerships used for Cayo Marsopa had

16  a valid business purpose?

17                MR. Van HOEY:  Object on the basis of

18       6103.

19                Direct you not to answer.

20      Q      What is the view of the IRS with

21  respect to whether the partnerships used for Cayo

22  Marsopa had a valid business purpose?

23                MR. Van HOEY:  Object on the basis of

24       6103.

25                Direct you not to answer.

```
                                              Page 234

1        Q      What is your view with respect to

2    whether the holding period claimed for Cayo

3    Marsopa was proper?

4               MR. Van HOEY:  Object on the basis of

5         6103.

6               Direct you not to answer.

7        Q      What is the view of the IRS with

8    respect to whether the holding period claimed for

9    Cayo Marsopa was proper?

10              MR. Van HOEY:  Object on the basis of

11        6103.

12              Direct you not to answer.

13       Q      What is your view with respect to

14   whether or not the charitable contribution

15   deduction claimed in relation to Cayo Marsopa was

16   allowable?

17              MR. Van HOEY:  Object on the basis of

18        6103.

19              Direct you not to answer.

20       Q      What is the view of the IRS with

21   respect to whether or not the charitable

22   contribution deduction claimed related to Cayo

23   Marsopa was allowable?

24              MR. Van HOEY:  Object on the basis of

25        6103.
```

Page 235

1          Direct you not to answer.

2      Q     What is your view as to whether

3  penalties should be imposed based on the

4  charitable contribution deduction claimed related

5  to Cayo Marsopa?

6          MR. Van HOEY:  Object on the basis of

7      6103.

8          Direct you not to answer.

9      Q     What is the view of the IRS as to

10  whether penalties should be imposed based on the

11  charitable contribution deduction claimed related

12  to Cayo Marsopa?

13          MR. Van HOEY:  Object on the basis of

14      6103.

15          Direct you not to answer.

16      Q     What is your view with respect to

17  whether or not any of the EcoVest defendants or

18  Mr. Clark committed fraud in relation to the Cayo

19  Marsopa project?

20          MR. Van HOEY:  Object on the basis of

21      6103.

22          Direct you not to answer.

23      Q     What is the view of the IRS with

24  respect to whether EcoVest, any of the EcoVest

25  parties, or Mr. Clark committed fraud in relation

Page 236

1    to the Cayo Marsopa project?

2              MR. Van HOEY:  Object on the basis of

3         6103.

4              Direct you not to answer.

5         Q    What is your view with respect to

6    whether or not any statements made in connection

7    with the Cayo Marsopa project were false or

8    fraudulent?

9              MR. Van HOEY:  Object on the basis of

10        6103.

11             Direct you not to answer.

12        Q    And what is the view of the IRS in

13   terms of whether or not any statements were made

14   in connection with the Cayo Marsopa project that

15   were false or fraudulent?

16             MR. Van HOEY:  Object on the basis of

17        6103.

18             Direct you not to answer.

19        Q    Ms. White, the other project or

20   taxpayer case that you're currently working on

21   related to EcoVest is Cristobal Key.

22             Is that correct?

23        A    Yes.

24        Q    With respect to Cristobal Key, what is

25   your view as to whether the conservation easement

Page 237

1    in that project was properly valued?

2                MR. Van HOEY:  Object on the basis of

3        6103.

4                Direct you not to answer.

5        Q    What is the view of the IRS with

6    respect to whether that conservation easement was

7    properly valued?

8                MR. Van HOEY:  Object on the basis of

9        6103.

10               Direct you not to answer.

11       Q    What is your view in terms of whether

12   the conservation easement for Cristobal Key was

13   valued by a qualified appraiser?

14               MR. Van HOEY:  Object on the basis of

15       6103.

16               Direct you not to answer.

17       Q    What is the view of the IRS in terms

18   of whether the conservation easement in Cristobal

19   Key was valued by a qualified appraiser?

20               MR. Van HOEY:  Object on the basis of

21       6103.

22               Direct you not to answer.

23       Q    What is your view as to whether the

24   appraisal prepared for Cristobal Key was a

25   qualified appraisal?

Page 238

1                 MR. Van HOEY:  Object on the basis of
2         6103.
3                 Direct you not to answer.
4         Q      What is the view of the IRS in terms
5    of whether the appraisal prepared for the
6    Cristobal Key project was a qualified appraisal?
7                 MR. Van HOEY:  Object on the basis of
8         6103.
9                 Direct you not to answer.
10        Q      What is your view as to whether the
11   conservation easement for Cristobal Key protects
12   significant conservation purposes?
13                MR. Van HOEY:  Object on the basis of
14        6103.
15                Direct you not to answer.
16        Q      What is the view of the IRS in terms
17   of whether or not the conservation easement at
18   issue in the Cristobal Key project protects
19   significant conservation purposes?
20                MR. Van HOEY:  Object on the basis of
21        6103.
22                Direct you not to answer.
23        Q      What is your view with respect to
24   whether the conservation easement for Cristobal
25   Key is perpetual?

Page 239

1                MR. Van HOEY:  Object on the basis of
2        6103.
3                Direct you not to answer.
4        Q     What is the view of the IRS in terms
5    of whether the conservation easement in Cristobal
6    Key is perpetual?
7                MR. Van HOEY:  Object on the basis of
8        6103.
9                Direct you not to answer.
10       Q     What is your view as to whether the
11   partnership structure used for Cristobal Key was
12   proper under the code and regulations?
13               MR. Van HOEY:  Object on the basis of
14       6103.
15               Direct you not to answer.
16       Q     What is the view of the IRS in terms
17   of whether or not the partnership structure used
18   for Cristobal Key was proper under the code and
19   regulations?
20               MR. Van HOEY:  Object on the basis of
21       6103.
22               Direct you not to answer.
23       Q     What is your view as to whether the
24   transaction structure used in the Cristobal Key
25   project was proper under the code and regulations?

```
                                              Page 240
 1              MR. Van HOEY:  Object on the basis of
 2         6103.
 3              Direct you not to answer.
 4         Q    What is the view of the IRS as to
 5    whether the transaction structure used in the
 6    Cristobal Key project was proper under the code
 7    and regulations?
 8              MR. Van HOEY:  Object on the basis of
 9         6103.
10              Direct you not to answer.
11         Q    What is your view as to whether the
12    transaction structure for Cristobal Key had
13    economic substance?
14              MR. Van HOEY:  Object on the basis of
15         6103.
16              Direct you not to answer.
17         Q    What is the view of the IRS in terms
18    of whether the transaction structure used for the
19    Cristobal Key project had economic substance?
20              MR. Van HOEY:  Object on the basis of
21         6103.
22              Direct you not to answer.
23         Q    What is your view, Ms. White, in terms
24    of whether the partnerships used in the Cristobal
25    Key project had a valid business purpose?
```

```
 1              MR. Van HOEY:  Object on the basis of
 2        6103.
 3              Direct you not to answer.
 4        Q    What is your -- excuse me.
 5              What is the IRS's view in terms of
 6   whether the partnerships used in the Cristobal Key
 7   project had a valid business purpose?
 8              MR. Van HOEY:  Object on the basis of
 9        6103.
10              Direct you not to answer.
11        Q    What is your view, Ms. White, in terms
12   of whether the holding period claimed with respect
13   to Cristobal Key was proper?
14              MR. Van HOEY:  Object on the basis of
15        6103.
16              Direct you not to answer.
17        Q    What is the view of the IRS in terms
18   of whether the holding period claimed with respect
19   to Cristobal Key was proper?
20              MR. Van HOEY:  Object on the basis of
21        6103.
22              Direct you not to answer.
23        Q    What is the view of the IRS in terms
24   of whether the holding period claimed with respect
25   to Cristobal Key was proper?
```

```
 1              MR. Van HOEY:  Object on the basis of
 2        6103.
 3              Direct you not to answer.
 4        Q     What is your view, Ms. White, in terms
 5   of whether the charitable contribution deduction
 6   claimed in relation to Cristobal Key was
 7   allowable?
 8              MR. Van HOEY:  Object on the basis of
 9        6103.
10              Direct you not to answer.
11        Q     What is the view of the IRS in terms
12   of whether the charitable contribution deduction
13   claimed for the Cristobal Key project was
14   allowable?
15              MR. Van HOEY:  Object on the basis of
16        6103.
17              Direct you not to answer.
18        Q     What is your view, Ms. White, in terms
19   of whether penalties should be imposed based on
20   the charitable contribution deduction claimed
21   related to the Cristobal Key project?
22              MR. Van HOEY:  Object on the basis of
23        6103.
24              Direct you not to answer.
25        Q     What is the view of the IRS in terms
```

Page 243

1    of whether or not penalties should be imposed

2    based on the charitable contribution deduction

3    claimed related to the Cristobal Key project?

4              MR. Van HOEY:  Object on the basis of

5         6103.

6              Direct you not to answer.

7         Q    What is your view, Ms. White, in terms

8    of whether EcoVest or any of the EcoVest

9    defendants or Mr. Clark committed fraud with

10   respect to the Cristobal Key project?

11             MR. Van HOEY:  Object on the basis of

12        6103.

13             Direct you not to answer.

14        Q    What is the view of the IRS in terms

15   of whether or not EcoVest or any of the EcoVest

16   defendants or Mr. Clark committed fraud with

17   respect to the Cristobal Key project?

18             MR. Van HOEY:  Object on the basis of

19        6103.

20             Direct you not to answer.

21        Q    What is your view, Ms. White, as to

22   whether or not any statements made with respect to

23   the Cristobal Key project were false or

24   fraudulent?

25             MR. Van HOEY:  Object on the basis of

Page 244

1         6103.

2              Direct you not to answer.

3         Q     What is the view of the IRS in terms

4    of whether any statements made in connection with

5    the Cristobal Key project were false or

6    fraudulent?

7              MR. Van HOEY:  Object on the basis of

8         6103.

9              Direct you not to answer.

10        Q     Ms. White, you also worked on a

11   project -- on a case related to a project or

12   taxpayer called "Riverside Preserve."

13              Is that correct?

14        A     Yes.

15        Q     For the Riverside Preserve project,

16   were the conservation easements at issue properly

17   valued in your opinion?

18              MR. Van HOEY:  So again, I'm going to

19        object on 6103.  I believe this one was on

20        the list of cases where she doesn't know

21        whether it's closed or open.

22              And therefore, I'll direct you not to

23        answer.

24        Q     Is it the view of the IRS that the

25   conservation easement at issue in Riverside

Page 245

1    Preserve was properly valued?

2              MR. Van HOEY:  Object, based on 6103.

3              Direct you not to answer.

4         Q    What is your view, Ms. White, as to

5    whether the conservation easement related to the

6    Riverside Preserve project was valued by a

7    qualified appraiser?

8              MR. Van HOEY:  Object, based on 6103.

9              Direct you not to answer.

10        Q    What is the view of the IRS in terms

11   of whether the conservation easement for the

12   Riverside Preserve project was valued by a

13   qualified appraiser?

14             MR. Van HOEY:  Object, based on 6103.

15             Direct you not to answer.

16        Q    What is your view, Ms. White, as to

17   whether or not the appraisal prepared for the

18   Riverside Preserve project was prepared -- excuse

19   me, was a qualified appraiser -- a qualified

20   appraisal?

21             MR. Van HOEY:  Object, based on 6103.

22             Direct you not to answer.

23        Q    What is the view of the IRS in terms

24   of whether the appraisal prepared for the

25   Riverside Preserve project was a qualified

Page 246

1    appraisal?

2              MR. Van HOEY:  Object, based on 6103.

3              Direct you not to answer.

4        Q    Ms. White, what is your view of

5    whether the conservation easement for the

6    Riverside Preserve project protects significant

7    conservation purposes?

8              MR. Van HOEY:  Object, based on 6103.

9              Direct you not to answer.

10       Q    What is the IRS's view of whether or

11   not that conservation easement protects

12   significant conservation purposes?

13             MR. Van HOEY:  Object, based on 6103.

14             Direct you not to answer.

15       Q    What is your view as to whether the

16   conservation easement for the Riverside Preserve

17   project was perpetual?

18             MR. Van HOEY:  Object, based on 6103.

19             Direct you not to answer.

20       Q    What is the IRS's view in terms of

21   whether or not the conservation easement for the

22   Riverside Preserve project is perpetual?

23             MR. Van HOEY:  Object, based on 6103.

24             Direct you not to answer.

25       Q    What is your view as to whether the

1  partnership structure used in the Riverside

2  Preserve project was proper under the code and

3  regulations?

4                    MR. Van HOEY:  Object, based on 6103.

5                    Direct you not to answer.

6        Q     What is the view of the IRS in terms

7  of whether the partnership structure used in the

8  Riverside Preserve project was proper under the

9  code and regulations?

10                   MR. Van HOEY:  Object, based on 6103.

11                   Direct you not to answer.

12       Q     What is your view, Ms. White, in terms

13  of whether the transaction structure used in the

14  Riverside Preserve project was proper under the

15  code and regulations?

16                   MR. Van HOEY:  Object, based on 6103.

17                   Direct you not to answer.

18       Q     What is your view -- I'm sorry, what

19  is the IRS's view in terms of whether the

20  transaction structure used for the Riverside

21  Preserve was proper under the code and

22  regulations?

23                   MR. Van HOEY:  Object, based on 6103.

24                   Direct you not to answer.

25       Q     What is your view, Ms. White, as to

Page 248

1  whether the transaction structure used for

2  Riverside Preserve had economic substance?

3              MR. Van HOEY:  Object, based on 6103.

4              Direct you not to answer.

5      Q     And what is the view of the IRS in

6  terms of whether the transaction structure used

7  for Riverside Preserve had economic substance?

8              MR. Van HOEY:  Object, based on 6103.

9              Direct you not to answer.

10     Q     What is the view -- your view,

11 Ms. White, as to whether the partnerships used for

12 Riverside Preserve had a valid business purpose?

13             MR. Van HOEY:  Object, based on 6103.

14             Direct you not to answer.

15     Q     What is the view of the IRS in terms

16 of whether the partnerships used for Riverside

17 Preserve had a valid business purpose?

18             MR. Van HOEY:  Object, based on 6103.

19             Direct you not to answer.

20     Q     What is your view, Ms. White, in terms

21 of whether the holding period claimed with respect

22 to the project Riverside Preserve was proper?

23             MR. Van HOEY:  Object, based on 6103.

24             Direct you not to answer.

25     Q     What is the view of the IRS in terms

1    of whether the holding period claimed with respect
2    to the Riverside Preserve project was proper?
3                MR. Van HOEY:  Object, based on 6103.
4                Direct you not to answer.
5         Q    What is your view in terms of whether
6    the charitable contribution deduction claimed
7    related to Riverside Preserve was allowable?
8                MR. Van HOEY:  Object, based on 6103.
9                Direct you not to answer.
10        Q    What is the view of the IRS in terms
11   of whether the charitable contribution deduction
12   claimed related to Riverside Preserve was
13   allowable?
14               MR. Van HOEY:  Object, based on 6103.
15               Direct you not to answer.
16        Q    What is your view in terms of whether
17   penalties should be imposed based on the
18   charitable contribution deduction claimed for the
19   Riverside Preserve project?
20               MR. Van HOEY:  Object, based on 6103.
21               Direct you not to answer.
22        Q    What is the view of the IRS in terms
23   of whether penalties should be imposed based on
24   the charitable contribution deduction claimed
25   related to the Riverside Preserve project?

```
                                      Page 250
1              MR. Van HOEY:  Object, based on 6103.
2              Direct you not to answer.
3       Q      What is your view as to whether
4  EcoVest or any of the EcoVest defendants committed
5  fraud with respect to the Riverside Preserve -- or
6  Mr. Clark as well?
7              MR. Van HOEY:  Object, based on 6103.
8              Direct you not to answer.
9       Q      And what is your view -- what is the
10  IRS's view in terms of whether EcoVest, Mr. Clark,
11  or any of the EcoVest parties committed fraud with
12  respect to the Riverside Preserve project?
13             MR. Van HOEY:  Object, based on 6103.
14             Direct you not to answer.
15      Q      What is your view as to whether any
16  statements made in connection with the Riverside
17  Preserve project were false or fraudulent?
18             MR. Van HOEY:  Object, based on 6103.
19             Direct you not to answer.
20      Q      What is the view of the IRS in terms
21  of whether any of the statements made in
22  connection with the Riverside Preserve project
23  were false or fraudulent?
24             MR. Van HOEY:  Object, based on 6103.
25             Direct you not to answer.
```

1      Q     Okay, Ms. White.  I think, if I

2  recall, you only worked one other EcoVest case, is

3  that correct, and that's the White Sands Village

4  case?

5      A     Yes.

6      Q     Ms. White, for the White Sands Village

7  case, what is your view as to whether the

8  conservation easement was properly valued?

9              MR. Van HOEY:  Object, based on 6103.

10             As the witness has stated before, she

11         does not know whether this case is open or

12         closed because it was transferred from her

13         early on.

14             And so because we don't know that,

15         based on 6103 I'll direct the witness not to

16         answer.

17     Q     What is the view of the IRS in terms

18  of whether the conservation easement for the White

19  Sands Village case was properly valued?

20             MR. Van HOEY:  Object, based on 6103.

21             Direct you not to answer.

22     Q     What is your view as to whether the

23  conservation easement for the White Sands Village

24  case was valued by a qualified appraiser?

25             MR. Van HOEY:  Object, based on 6103.

1            Direct you not to answer.

2       Q    What is the view of the IRS in terms

3  of whether the conservation easement for White

4  Sands Village was valued by a qualified appraiser?

5            MR. Van HOEY:  Object, based on 6103.

6            Direct you not to answer.

7       Q    What is your view as to whether the

8  appraisal prepared for White Sands Village was a

9  qualified appraisal?

10           MR. Van HOEY:  Object, based on 6103.

11           Direct you not to answer.

12      Q    What is the view of the IRS in terms

13 of whether the appraisal prepared for White Sands

14 Village was a qualified appraisal?

15           MR. Van HOEY:  Object, based on 6103.

16           Direct you not to answer.

17      Q    What is your view as to whether the

18 conservation easement for White Sands Village

19 protects significant conservation purposes?

20           MR. Van HOEY:  Object, based on 6103.

21           Direct you not to answer.

22      Q    What is the view of the IRS in terms

23 of whether the conservation easement at issue for

24 White Sands Village protects significant

25 conservation purposes?

```
                                      Page 253
 1               MR. Van HOEY:  Object, based on 6103.
 2               Direct you not to answer.
 3       Q     What is your view as to whether the
 4   conservation easement for White Sands Village is
 5   perpetual?
 6               MR. Van HOEY:  Object, based on 6103.
 7               Direct you not to answer.
 8       Q     What is the view of the IRS in terms
 9   of whether the conservation easement for the White
10   Sands Village project is perpetual?
11               MR. Van HOEY:  Object, based on 6103.
12               Direct you not to answer.
13       Q     What is your view as to whether the
14   partnership structure used for White Sands Village
15   was proper under the code and regulations?
16               MR. Van HOEY:  Object, based on 6103.
17               Direct you not to answer.
18       Q     What is the view of the IRS in terms
19   of whether the partnership structure used for
20   White Sands Village was proper under the code and
21   regulations?
22               MR. Van HOEY:  Object, based on 6103.
23               Direct you not to answer.
24       Q     What is your view in terms of whether
25   the transaction structure used for White Sands
```

Page 254

1    Village was proper under the code and regulations?

2            MR. Van HOEY:  Object, based on 6103.

3            Direct you not to answer.

4    Q    What is the view of the IRS in terms

5    of whether the transaction structure was proper

6    under the code and regulations?

7            MR. Van HOEY:  Object, based on 6103.

8            Direct you not to answer.

9    Q    What is your view as to whether the

10   transaction structure for White Sands Village had

11   economic substance?

12           MR. Van HOEY:  Object, based on 6103.

13           Direct you not to answer.

14   Q    What is the view of the IRS in terms

15   of whether the transaction structure for White

16   Sands Village had economic substance?

17           MR. Van HOEY:  Object, based on 6103.

18           Direct you not to answer.

19   Q    What is your view as to whether the

20   partnerships used for White Sands Village had a

21   valid business purpose?

22           MR. Van HOEY:  Object, based on 6103.

23           Direct you not to answer.

24   Q    What is the view of the IRS in terms

25   of whether the partnerships used for White Sands

Page 255

1  Village had a valid business purpose?

2            MR. Van HOEY:  Object, based on 6103.

3            Direct you not to answer.

4      Q    What is your view as to whether the

5  holding period claimed for White Sands Village was

6  proper?

7            MR. Van HOEY:  Object, based on 6103.

8            Direct you not to answer.

9      Q    What is the view of the IRS in terms

10  of whether the holding period claimed for White

11  Sands Village was proper?

12            MR. Van HOEY:  Object, based on 6103.

13            Direct you not to answer.

14      Q    What is your view, Ms. White, in terms

15  of whether the charitable contribution deduction

16  claimed in relation to White Sands Village was

17  allowable?

18            MR. Van HOEY:  Object, based on 6103.

19            Direct you not to answer.

20      Q    What is the view of the IRS in terms

21  of whether the charitable contribution deduction

22  claimed for White Sands Village was allowable?

23            MR. Van HOEY:  Object, based on 6103.

24            Direct you not to answer.

25      Q    What is your view in terms of whether

Page 256

1    penalties should be imposed on the charitable

2    contribution deduction claimed related to White

3    Sands Village?

4              MR. Van HOEY:  Object, based on 6103.

5              Direct you not to answer.

6    Q    What is the view of the IRS in terms

7    of whether penalties should be imposed based on

8    the charitable contribution deduction claimed

9    related to White Sands Village?

10             MR. Van HOEY:  Object, based on 6103.

11             Direct you not to answer.

12   Q    What is your view with respect to

13   whether EcoVest, any of the EcoVest parties, or

14   Mr. Clark committed fraud in relation to the White

15   Sands Village project?

16             MR. Van HOEY:  Object, based on 6103.

17             Direct you not to answer.

18   Q    What is the view of the IRS in terms

19   of whether EcoVest, any of the EcoVest parties, or

20   Mr. Clark committed fraud with respect to the

21   White Sands Village project?

22             MR. Van HOEY:  Object, based on 6103.

23             Direct you not to answer.

24   Q    What is your view, Ms. White, in terms

25   of whether any of the statements made in

Page 257

1   connection with the White Sands Village project
2   were false or fraudulent?
3                   MR. Van HOEY:  Object, based on 6103.
4                   Direct you not to answer.
5        Q     And what is the view of the IRS in
6   terms of whether any of the statements made with
7   respect to White Sands Village were false or
8   fraudulent?
9                   MR. Van HOEY:  Object, based on 6103.
10                  Direct you not to answer.
11       Q     Ms. White, let's turn to a new topic.
12                  You mentioned, at the outset of our
13  conversation about the audits, that you speak with
14  sometimes the taxpayers, sometimes
15  representatives.
16                  Do you ever seek to interview other
17  third parties -- say, you know, the city where the
18  land is located -- but I guess, any third parties
19  other than the taxpayer and their representatives?
20       A     As it relates to the EcoVest case?
21       Q     As it relates to any -- generally to
22  your work on conservation easement-related audits.
23       A     It would depend on the case.
24       Q     For any of the cases, do you seek to
25  interview municipalities or states where the

Page 258

1    property is located?

2            A       I mean, that's a....

3                    That could be a third party, yes.

4            Q       In your work on conservation easement

5    projects, have you ever communicated with a state

6    or municipality?

7            A       Yes.

8            Q       Why would you communicate with a state

9    or municipality for your projects?

10           A       As it relates to maybe zoning issues,

11   of development that's in the area.

12           Q       What would you want to find out about

13   zoning or development?

14           A       Well, I would think we would need to

15   know how land would -- how the area is zoned, that

16   particular land.  Is it -- is zoning required, or

17   anything along those lines.

18           Q       Have you ever spoken with anyone from

19   the Land Trust Alliance?

20           A       No.

21           Q       Have you ever heard anything about the

22   Land Trust Alliance in relation to your work on

23   conservation easement projects?

24           A       I've heard of the Land Trust Alliance.

25           Q       And what have you heard about them?

1           A      I have not -- I've heard of them.

2    I've never had any particular conversations about

3    them.

4           Q      Have you heard of the Partnership for

5    Conservation?

6           A      No.

7           Q      What is a Section 6700 investigation?

8           A      I don't know.

9           Q      Were you involved in a Section 6700

10   investigation related to EcoVest, any of the

11   EcoVest parties, or Mr. Clark?

12          A      I don't know what a Section 6700

13   investigation is.

14          Q      Counsel may object to this next

15   question.  So I'm going to ask it; and maybe

16   please give Mr. Van Hoey a chance to object before

17   you answer, Ms. White.

18                 Ms. White, have you ever been involved

19   in a criminal investigation related to EcoVest?

20                 MR. Van HOEY:  Object on the basis of

21        Section 6103.

22                 Direct you not to answer.

23          Q      The same thing, Ms. White:  Mr. Van

24   Hoey might object to my next two questions.  So

25   please give him a chance to do so.

```
                                            Page 260

 1              Have you ever been involved in a

 2    criminal investigation related to any of the

 3    EcoVest parties:  Mr. Salon, Mr. Teal,

 4    Mr. McCullough?

 5              MR. Van HOEY:  Object on the basis of

 6         6103.

 7              Direct you not to answer.

 8         Q    And the same thing with respect to

 9    Mr. Clark:  Have you ever been involved in a

10    criminal investigation with respect to Mr. Clark?

11              MR. Van HOEY:  Object on the basis of

12         6103.

13              Direct you not to answer.

14              MR. MILLER:  Let's turn to a document,

15         please.  This is Tab No. 59.  The Bates

16         number is USPROD-0114438, and I think it

17         will be Exhibit 484.

18              (Whereupon, Doris White Exhibit 484

19         was marked for identification.)

20         Q    Ms. White, please tell me when you

21    have the exhibit either from the website or on the

22    shared screen, whichever one you're going to be

23    using.  This is a pretty short document.

24         A    Yes, I see the document.

25         Q    Ms. White, did you participate in site
```

Page 261

1    visits of properties related to EcoVest in

2    March 2019?

3            A      Yes, I did.

4            Q      And this document -- if you scroll

5    down, Kandyce, if you don't mind -- lists about a

6    dozen such properties.

7                   Did you visit all of these properties?

8            A      Yes, I think we did.

9            Q      So some of these properties are among

10   the cases that we talked about you had worked on

11   previously.  Ocean Grove is here.  Diamond Grande

12   is here.

13                  Those are ones you worked on.  Right?

14           A      Yes.

15           Q      But you didn't work on some of these,

16   such as Sanibel or Waterway Grove.

17                  Is that correct?

18           A      That's correct.

19           Q      So how did you come to visit those

20   properties, even though they weren't your cases?

21           A      I was with the engineers, and we just

22   visited all the properties at one time.

23           Q      Who else was on that trip with you?

24           A      There was Rick Nixon, Gary -- what's

25   Gary's name? -- Gary McGurrin.