IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES,

      Plaintiff,

v.                                 Civil Action № 1:18-cv-5774-AT

ZAK, *et al.*,

      Defendants.

# SPECIAL MASTER'S AMENDED AND CORRECTED[1] REPORT AND RECOMMENDATION ON PLAINTIFF'S DELIBERATIVE PROCESS PRIVILEGE AND SECTION 6103 CLAIMS

---

[1] This Amended and Corrected Report and Recommendation ("ACRR") is necessary to adjust the recommendations on the discoverability of certain documents reviewed herein. The ACRR also reflects the parties' agreement that only responses to the previously filed objections to the initial Report & Recommendation (Docket № 277) are in order.

The changes in this ACRR from the Amended Report & Recommendation filed July 2, 2021, (Docket № 308) are three adjustments in the tables on pages 41-42 and an acknowledgement in the final paragraph of the ACRR that only responses to the parties' prior objections to the initial R&R are allowed at this point.

# I

This case is before the Special Master on the EcoVest Parties'
("EcoVest") assertion that the United States has improperly withheld or
redacted otherwise discoverable documents based on an allegedly
overbroad application of the deliberative process privilege and the
exclusions from discovery contained in 26 U.S.C. §§ 6103(c) and (e)(7).
(Hereinafter "6103" or "Section 6103"). EcoVest and the United States
have each submitted lengthy letter briefs and e-mails in support of their
positions, and the United States has provided the Special Master with
several hundred pages of documents identified by EcoVest for *in camera*
review. The documents provided the Special Master by the United
States have either never been produced to the Defendants or produced
only in redacted form.[2]

---

[2] As contemplated by the Order of Appointment, (Docket № 199 at
6 ¶3(g)), and at the request of counsel, this R&R was initially prepared
and delivered to counsel as a Preliminary R&R on April 7, 2021. The
privilege issues examined herein have been festering like an open wound
for some time. In advance of preparing the Preliminary R&R, the parties
submitted letter briefs and e-mails in support of their particular
positions. Those letter briefs and e-mails are appended to this R&R as
"Attachment A."

It was my hope (and I think the parties' as well) that they would
use the Preliminary R&R to facilitate the resolution of the discovery

Footnote continued . . .

Some of the documents reviewed contain the impressions of various Internal Revenue Service employees on the legality of Defendants' conduct in organizing and promoting partnerships that syndicate conservation easements. Some are draft documents, and some are final documents. Many set forth the procedures used by the IRS to investigate and test the validity of conservation easements, including appraisal and valuation methodologies. Others reflect the opinions of IRS examiners about the valuation of various easements. The issue to be decided is whether the Government properly withheld these documents on the basis of the deliberative process privilege and/or Section 6103.

The EcoVest Parties believe the deliberative process privilege and Section 6103 has been inappropriately applied by the Government to broad categories of documents. (EcoVest Letter Brief at 5, 10). The Government rightly disputes the suggestion that the Special Master apply EcoVest's "category" approach in reviewing the IRS's claims of

---

challenges related to the Government's assertion of the deliberative process privilege and Section 6103 impairment. Unfortunately, the parties remain at an impasse and consequently have asked that the R&R be filed with the Court so that the Court can consider the issue. This R&R is only slightly modified from the Preliminary R&R and not in any substantive manner.

privilege. To overcome the Government's assertion of deliberative process privilege, EcoVest must show, among other things, that it has a particularized need for the documents on which the privilege is asserted. That requirement cannot be met by adopting an approach that embraces a general finding based on broad categories of documents. The same suggestion is made by EcoVest with regard to the Section 6103 determination, and it is equally unavailing. *Id*. at 16.

Resisting any suggestion it has improperly asserted the deliberative process privilege, the United States argues that EcoVest cannot establish the particularized need for the withheld documents required to overcome the Government's privilege assertions. (United States Letter Brief at 2). Similarly, with regard to the IRS's determination under Section 6103 that disclosure of certain information "would seriously impair ongoing or future administration of Federal tax law," the Government maintains that the decision to withhold such documents is within the sound discretion of the IRS and that the IRS's determination cannot be reversed except upon a showing of an abuse of that discretion. *Id*. at 13.

For its part, EcoVest contends that the Government's expansive assertions of process privilege and Section 6103 violate basic notions of

4

fairness because the Government—here a plaintiff—seeks to withhold vital documents EcoVest contends it needs to defend itself. (EcoVest Letter Brief at 1). When otherwise discoverable documents are withheld on the basis of an asserted privilege, that privilege can thwart the general principal of Rule 26 of the Federal Rules of Civil Procedure that relevant documents should be produced. When the invocation of privilege blocks discovery, the assertion of the privilege needs to be scrutinized to ensure it is not being improperly applied.

Based on the law, the arguments of counsel, the review of documents *in camera*, and the content of the sworn declarations of IRS personnel, it is the Special Master's conclusion that some of the reviewed documents have been properly withheld, others need to be produced, and for still others, more information about the document and its relevance to the current case is needed.

## II
## A

The deliberative process privilege is a governmental privilege that protects from discovery "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v.*

*Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. __, __, slip op. at 5 (2021); *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The deliberative process privilege is the most frequently invoked executive privilege in the federal courts. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The privilege is "predicated on the recognition that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573 (D.C. Cir. 1990) (quotation omitted); *see also Sierra Club*, slip op. at 5 ("The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news.") (quotation omitted). It serves at least three purposes:

> First, the privilege protects candid discussions within an agency. Second, it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy. Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions.

*Alexander v. F.B.I.*, 186 F.R.D. 154, 163 (D.D.C. 1999) (quoting *Judicial Watch v. Clinton*, 880 F. Supp. 1, 12 (D.D.C. 1995), *aff'd*, 76 F.3d 1232 (D.C.Cir.1996)).

To be covered by the deliberative process privilege, documents must be pre-decisional, that is "received by the decisionmaker on the subject of the decision prior to the time the decision is made"—and deliberative—showing in some fashion "the give-and-take of the consultative process." *Schell v. United States Dep't of Health & Human Serv.*, 843 F.2d 933, 940 (6th Cir. 1988); *see also In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 695 (N.D. Ga. 1998) (Murphy, J.) (Under the deliberative process privilege, information must be (1) pre-decisional, that is, "prepared in order to assist an agency decisionmaker in arriving at his decision" and (2) must also be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters") (citations omitted). Thus, the privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir.1980)). Moreover, in order for a statement to be deliberative, "it

[must] make[] recommendations or express[] opinions on legal or policy matters." *Paisley v. CIA*, 712 F.2d 686, 698-99 (D.C. Cir. 1983), *vacated in part on other grounds,* 724 F.2d 201 (D.C. Cir. 1984).

"[P]urely factual material that does not reflect the agency's deliberative process generally is not protected." *Vaughn v. Rosen,* 532 F2d 1136, 1144 (D.C. Cir. 1975). Factual material may be withheld only when it "is so inextricably connected to the deliberative material that its disclosure would reveal the agency's decision-making processes . . . or when it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information." *Id.; see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1229 (10th Cir. 2007); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988).

After the Government establishes a *prima facie* showing that the deliberative process privilege applies,[3] the party seeking production of

---

[3] Some courts have expressed skepticism about the validity of the privilege when the United States is a plaintiff. *See E.E.O.C. v. Citizens Bank*, 117 F.R.D. 366, 366 (D. Md. 1987) ("[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over, thus allowing the government to play with defendant's hole card

Footnote continued . . .

the documents may overcome the privilege "where there is a sufficient showing of a particularized need to outweigh the [Government's] reasons for confidentiality." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *see also Redland Soccer Club Inc., v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995). Courts generally consider the following five factors when balancing the Government's assertion of the privilege against a party's effort to overcome it:

> (1) the relevance of the evidence sought to be protected, (2) the availability of other evidence, (3) the seriousness of the litigation and the issues involved, (4) the role of the government in the litigation, and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 607 (W.D. Tenn. 2009) (citing *Redland Soccer Club, Inc. v. Dep't of Army*, 55

---

upturned and its hole card down under any claim of governmental or executive privilege." (citation and quotations omitted)); *see also United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF, 2018 WL 8459926, at *11, *16 (C.D. Cal. Dec. 14, 2018) (finding deliberative process privilege overcome because UnitedHealth's need for the withheld information "plainly exceeds the Government's interest in non-disclosure" because "[t]he information United seeks is an essential component of its anticipated defense," and it was not available elsewhere, "the role of the Government in this case [as plaintiff] is obvious and undisputed," and the government's conclusory statements that disclosure would hinder open discussions within the agency were insufficient and did not address why a protective order would not mitigate that harm).

F.3d 827, 854 (3d Cir. 1995)); *see also Farley*, 11 F.3d at 1389; *In re Sealed Case,* 121 F3d at 738.

"[R]elevance alone is an insufficient reason for breaching the deliberative process privilege. It [is] essential that the [court] balance [the] particularized need for the documents against their nature and the effect of disclosure on the government" *Farley*, 11 F.3d at 1390. Of course, if the documents at issue are not relevant to the controversy before the court, then as a matter of law, the requisite showing of need cannot be made. *Id*.

## B
### i

The EcoVest Parties contend that many of the documents withheld by the United States pursuant to the deliberative process privilege are relevant because they reveal how the United States arrived at its conclusions concerning the alleged legality or illegality of the at-issue transactions. (EcoVest Letter Brief at 4). The United States takes a dim view of EcoVest's relevancy argument contending that the documents sought by EcoVest relate to the IRS's investigation and are not in the least relevant to the Government's request for an injunction against EcoVest's business practices, or any of EcoVest's defenses. To

appreciate whether or not the documents sought by EcoVest are

relevant, it is necessary to contextualize the documents within the

broader litigation.

**a**

The United States seeks to enjoin the Defendants' from organizing

and promoting partnerships that syndicate conservation easements.

Under 26 U. S. C. § 7408(a), "the Government is authorized to seek

injunctive relief to prevent ongoing conduct subject to penalty under §

6700 and other specified sections of the Tax Code." *United States v.*

*Rapower-3, LLC*, 960 F.3d 1240, 1248 (10th Cir. 2020). Therefore, the

Court may enjoin EcoVest from organizing future syndicated

conservation easements if the Court finds EcoVest engaged in conduct

subject to a penalty pursuant to Section 6700.[4] In order to obtain

injunctive relief, the United States must prove:

---

[4] "Section 6700 is meant to attack abusive tax shelters at their
source: the organizer and salesman. It creates a penalty for a person
who 1) organizes or sells any plan or arrangement involving taxes and
2) makes or furnishes, or causes another to make or furnish, a
statement connecting the allowability of a tax benefit with participating
in the plan or arrangement, which statement the person knows or has
reason to know is false or fraudulent as to any material matter." *United
States v. Rapower-3, LLC*, 343 F. Supp. 3d 1115, 1170 (D. Utah 2018)
(internal quotations omitted), *aff'd* 960 F.3d 1240 (10th Cir. 2020).

five elements . . . : (1) the defendants organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; (4) the false or fraudulent statements pertained to a material matter; and (5) an injunction is necessary to prevent recurrence of this conduct.

*U.S. v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir. 2000) (citations omitted).

Under the relevant statues the Government must establish that the EcoVest Parties knew or had reason to know that the material statements concerning the supposed tax benefits of the conservation easements they were selling were false or fraudulent. As the United States notes, "[t]he fact [that Congress] chose to frame the statues entirely in terms of the Defendant's conduct and mental state demonstrates, as a matter of law the . . . irrelevance of the documents that the EcoVest Defendants are now seeking." (United States Letter Brief at 6).

According to the United States, the views and opinions of IRS employees about the legality of Defendants' conduct is not relevant to the Court's determination whether or not to grant the requested injunction and therefore "documents reflecting the IRS's internal, pre-

decisional deliberations would be totally irrelevant to any parties' claims or defenses."  (United States Letter Brief at 5).

Courts have previously addressed the relevance (and discoverability) of the IRS's administrative actions and deliberations in the context of the determination a court must make when assessing if a defendant should be enjoined for conduct that violates Section 6700. The court's determination is based on a *de novo* review of the relevant facts and not on a review of the administrative record developed by the IRS. *See United States v. Quebe*, Case No. 3:15-cv-294, 2017 WL 279539 at *7 (S.D. Ohio 2017) ("a challenge to a tax determination results in a trial *de novo* rather than a review by this Court of an existing administrative record. . . ."); *United States v. Nordberg,* No. 93-12681, 1996 WL 170119, at *2 (D. Mass. April 8, 1996); s*ee also Ky. Trust Co. v. Glenn,* 217 F.2d 462, 466 (6th Cir. 1954) ("The action of the Commissioner in making the assessment was, properly, of no concern to the jury. . . ."); *LPCiminelli Interests, Inc. v. United States,* No. 09-cv-274, 2012 WL 5499444, at *4 (W.D.N.Y. Nov. 13, 2012) ("[T]he factual considerations and legal analysis employed by the audit team during their examination of LPCiminelli's consolidated tax returns, and in their proposed adjustments to the Commissioner's tax assessment, must

be deemed to be of no consequence to the *de novo* review required in this refund action. . . .").

> The *Quebe* Court put a fine point on the matter when it observed:
>
> 'The Government's impressions during the administrative examination can provide the Defendants guidance in preparing a defense.' . . . However, more information about the IRS's examination will not likely narrow the number of issues because Plaintiff is not bound by it in the present case . . . Plaintiff is not bound because 'a challenge to a tax determination results in a trial *de novo* rather than a review by this Court of an existing administrative record. . . .' Thus, even if the IRS made substantial errors in its examination of Defendants' taxes, Plaintiff might still prevail. '[T]he court is to 'place itself in the shoes of the commissioner' and apply the law to the facts presented. Even if an assessment was made on erroneous grounds, it must be upheld if it is appropriate under any theory.'

*Quebe*, 2017 WL 279539 at *7 (citations omitted).

While the administrative conclusions or opinions of IRS personnel may not be determinative of the Government's claim for an injunction, such information may nevertheless still be highly relevant to EcoVest's defenses to other issues including, for example, its defense to the disgorgement claim under 26 U.S.C. § 7402,[5] or its defense to the allegation that it acted fraudulently in connection with various

---

[5] *See* Amended Complaint, Docket № 225 at ¶¶ 307-09.

statements about the alleged tax benefits of investing in syndicated
conservation easements.

For example, EcoVest has raised a number of defenses, among
them a scienter defense that they did not know, had no reason to know,
and do not believe that the statements made in promoting the
syndicated conservation easements at issue were false or that they were
allegedly marketing illegal syndicates.[6] Presumably, if the IRS had
difficulty determining whether certain easement transactions were
legal or illegal, or if it concluded that some of the projects were proper,
that would shed light on whether the Defendants could have or should

---

[6] The United States alleges that Defendants, including the
EcoVest Parties, made a number of statements in promoting syndicated
conservation easements that they knew or should have known were false
or fraudulent. *See* Amended Complaint, Docket № 225 at ¶¶ 264-265:

264. In connection with the conservation easement syndication
scheme, Defendants made and furnished false and/or fraudulent
statements regarding the securing of a tax benefit by reason of
participating in the conservation easement syndication scheme and the
amount of that tax benefit in the form of a conservation easement
deduction.

265. Defendants knew and had reason to know that these
statements were false or fraudulent within the meaning of 26 U.S.C.
§6700(a)(2)(A).

Both paragraphs are denied in their entirety by EcoVest. EcoVest's
Answer to Plaintiff's Amended Complaint at Docket № 241 at ¶¶ 264-
265.

have known themselves that they were promoting an allegedly unlawful tax scheme. Such information would ordinarily be relevant and discoverable and may be discoverable in this case, if EcoVest can satisfy the "particularized need" requirement that is a condition precedent to overcome the Government's claim of deliberative process privilege. *Farley*, 11 F.3d at 1390.

b

There is little need to tarry long with respect to the remaining four factors considered by the Court is assessing whether to allow a party to defeat the Government's assertion of a deliberative process privilege. With regard to the availability of other evidence to replace the documents being withheld, EcoVest asserts that no other documents are available that would allow it "to understand and challenge Plaintiff's assertions and to see Plaintiff's concessions." (EcoVest Letter Brief at 4). EcoVest's position is that only the documents in the Government's possession go the strength of its conclusions, particularly in instances when the Government may have initially concluded that a particular transaction had the indicia of fraud but later determined otherwise. *Id*.

Of course, "[p]re-decisional and deliberative documents generated by particular IRS employees for internal review could never be held to

be official agency 'assertions or concessions' in federal district court litigation." (United States Letter Brief at 8). Nevertheless, the Government is the sole entity in possession of the documents it has withheld, and there has not yet been any examination—at least none with the Special Master—concerning the possibility that similar evidence is available from sources not allegedly cloaked with privilege.

With regard to the third, fourth, and fifth factors, no one disputes that the matters raised by the Government in its complaint present serious issues, but that cuts both ways. The United States believes the syndicated easements being challenged have resulted in hundreds of millions of dollars of lost tax revenue to the federal treasury, and the Defendants see this case as an existential threat to their continued existence.

Concerning the role of Government in this suit, as noted above, some courts apply a heightened standard in assessing the validity of the deliberative process privilege when the United States is a plaintiff. This however is not a uniformly held view, and more importantly, the role of the Government as a plaintiff in this case does not address the relevance these documents may have to the claims and defenses in this case.

Finally, courts across the country have recognized that the touchstone of the deliberative process privilege is to encourage governmental employees to assess and evaluate the issues entrusted to their consideration rigorously before making final policy or legal decisions, including decisions about pursuing litigation. When the Government undertakes a case of national importance, it is imperative and highly desirable that it first fully vet the decision. The chilling effect on governmental decision making that reckless disclose of pre-decisional documents could have is real, and that concern must be balanced against the larger objective of ensuring a fair and meaningful opportunity to defend oneself.

## ii

EcoVest has structured its challenge to the Government's assertion of the deliberative process privilege by categorizing the withheld documents into five groupings: (1) documents that appear to contain conclusions, (2) documents discussing value and appraisal methodology, (3) draft documents, (4) documents setting strategy for the Government's investigation, and (5) legal analysis documents. The documents reviewed *in camera* are sorted into the five categories used by EcoVest in its Letter Brief. Here are the specific findings with

respect to the documents EcoVest identifies as being wrongly withheld

due to the Government's assertion of the deliberative process privilege.

(EcoVest Letter Brief at 5-8).

## Documents that Appear to Contain Conclusions

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| USPROD-0292366 | ___ | EcoVest in its Letter Brief does not indicate a file name for this document. The only identifying information is the document's Bate's Number. This document is withheld on the basis of § 6103, and not deliberative process privilege, *see* Pavilonis Declaration. It will be examined in the section dealing with 6103. | |
| USPROD-0415348 | ___ | Document file name is "Fraud Development Lead Sheet." This document is withheld on the basis of § 6103, and not deliberative process privilege, *see* Pavilonis Declaration. It will be examined in the section dealing with 6103. | |
| PRIV-3508 | | Document file name is "Form 14242 Rev 2016-10 LDC | |

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| | Yes, but pursuant to § 6103 and not the deliberative process privilege. | Referral Form." This document does not appear to contain any conclusions or analysis.<br><br>Document PRIV-3508 is the same document type as document PRIV-4965 on which the IRS correctly asserts §6103 protections to refuse disclosure. Document PRIV-4965 identifies a different taxpayer. | |
| PRIV-6018 | In Part | Document file name is "Roberts." The document is as described in the Goldman Declaration. | First paragraph beginning with "I" through the third sentence of the first paragraph ending "there" should be produced as it concerns a non-privileged fact statement. The final sentence of the first paragraph should be redacted. In all other respects the document PRIV-0006018_0001-0002 should be fully redacted. |

## Documents Discussing Value and Appraisal Methodology

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| PRIV-1050 | Yes | Document has no file name. The document is as described in the | |

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| | | Goldman Declaration. | |
| PRIV-5542 | Yes | Document has no file name. The subject line as recorded by EV is "Our CE Case." The document is as described in the Goldman Declaration.<br><br>The document is listed twice by EV. (*See* EV Letter Brief at 6 and 8). | |
| PRIV-5742 | No, but only to the extent the document is final. | Document file name is "20171220 New River Preserve Appraisal Review." The document is as described in the Goldman Declaration.<br><br>Same document number is listed twice. (*See* EV Letter Brief at 6 and 7). | |
| USPROD-0517402 | Yes | Document file name is "After Sales Narrative." The document is as described in the Goldman Declaration. | |

## Draft Documents[7]

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| PRIV-5348 | Yes | Document file name is "Seavista Resort Explanation of Items Alternative Issue." The document is as described in the Goldman Declaration. | |
| PRIV-5663 | Yes | Document file name is "Rick's Draft." The document is as described in the Goldman Declaration. | |

---

[7] "[I]t is well-settled that draft documents . . . are typically predecisional and deliberative" because they ordinarily "reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *McNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008) (quoting *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D. D.C. 1983)) (internal quotation marks and brackets omitted). In other words, "[d]rafts and comments on documents are quintessentially predecisional and deliberative." *Nat'l Council of La Raza v. Dep't of Justice*, 339 F. Supp. 2d 572, 583 (S.D.N.Y. 2004), *aff'd*, 411 F.3d 350 (2d Cir. 2005).

In Mr. Goldman's Declaration, the majority of the statements concerning specific documents suggest that the document in question is a "draft," presumably because in the words of Mr. Goldman the document "reflects the respective authors' pertinent legal analysis, opinions, recommendations, and conclusions regarding the claim, and was generated at a time when the audit was under development and had not yet been completed." This boilerplate language is repeated throughout the Declaration. Whether a specific document is a "draft" even if no revisions to the document are ever made simply because it was created before an underlying audit was completed is an open question that may need to be addressed.

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| | | | |
| PRIV-5664 | Yes | Document file name is "Response to Tom Beck." The document is as described in the Goldman Declaration. | |
| PRIV-5742 | No, but only to the extent the document is final. | Document file name is "20171220 New River Preserve Appraisal Review." The document is as described in the Goldman Declaration.<br><br>It is not clear from the document itself that it is a draft.<br><br>Same document number is listed twice. (*See* EV Letter Brief at 6 and 7). | |

## Documents Setting Strategy for Plaintiff's Investigation

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| PRIV-3690 | Yes | Document file name is "Clark Easement White Paper Updated 20171114." The document is as described in the Goldman Declaration. | |
| PRIV-5542 | Yes | Document file name is "Our CE Case." The document is as | |

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
|  |  | described in the Goldman Declaration. Same document number is listed twice. (*See* EV Letter Brief at 6 and 8). |  |
| PRIV-6315 | Yes | Document file name is "RE." The document is as described in the Goldman Declaration. |  |

## Legal Analysis Documents[8]

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| PRIV-5423 | Yes | Document file name is "White Paper." The document is as described in the Goldman Declaration. |  |
| PRIV-6026 | Yes | Document file name is "2-130306 886A Riverside Place Easement Final." The document is as |  |

---

[8] In "order for a statement to be deliberative, "it [must] make[] recommendations or expresses opinions on legal or policy matters." *Paisley v. CIA*, 712 F.2d 686, 698-99 (D.C. Cir. 1983), *vacated in part on other grounds,* 724 F.2d 201 (D.C. Cir. 1984) (on motion for rehearing).

| DOCUMENT № | PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS | PORTION TO PRODUCE |
|---|---|---|---|
| | | described in the Goldman Declaration. however, it is not clear from the document itself if it is a draft as alleged in the declaration. | |

**III**
**A**
**i**

The Government argues that certain documents are protected

from discovery by virtue of the Internal Revenue Code. The law largely

requires that federal tax returns and return information[9] be maintained

---

[9]   What is included within the term "return information" is expansive, both as defined by Section 6103 and as interpreted by caselaw. Section 6103(b)(2) of the Internal Revenue Code defines "return information" as:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or

Footnote continued . . .

confidentially by the United States. 26 U.S.C. § 6103(a). As an exception to the confidentiality requirement, Congress has authorized taxpayers (or a taxpayer's designee) to receive copies of the taxpayer's own tax returns and tax return information. 26 U.S.C. § 6103(c). There are, however, exceptions to this authorization. The primary exception, and the one invoked by the Government in this case to withhold many thousands of pages of documents, involves the right of the Treasury Secretary to determine that the disclosure of certain return information

---

the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, . . .

Nothing . . . in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, . . ., if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

In opining on the meaning of "return information," the Eleventh Circuit in *Currie v. IRS* noted that it also includes within its ambit "memoranda of interviews with witnesses and confidential informants, draft affidavit of confidential informant, correspondence with a state law enforcement agency and other third parties, information received from third parties relating to financial transactions with the [taxpayer]." 704 F.2d 523, 531 (11th Cir. 1983); *see also Landmark Legal Found. v. I.R.S.,* 267 F.3d 1132, 1135 (D.C. Cir. 2001) ("[The] definition of 'return information' has, in the words of some commentators, 'evolved to include virtually any information collected by the Internal Revenue Service regarding a person's tax liability.'").

"would seriously impair Federal tax administration." *Id*.[10] On this basis,

the United States notes that "[i]n the course of reviewing and producing

documents responsive to the EcoVest Defendants' discovery requests,

the Government identified and withheld a number of documents the

IRS determined would seriously impair tax administration and/or an

ongoing tax investigation. "In large part, these documents relate to the

ongoing tax audits of EcoVest's conservation easement entities, as well

as the separate (and also ongoing) administrative investigation into

EcoVest and other organizers, promoters, and sellers of abusive

---

[10]  *See* 26 U.S.C. § 6103(c) "The Secretary may, . . ., disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate. . .. However, *return information shall not be disclosed . . . if the Secretary determines that such disclosure would seriously impair Federal tax administration. . . .*"; and section (e)(7) "Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such *taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration*."; and section (h)(4)(D) return information may be provided in a judicial proceeding pertaining to tax administration "to the extent required by a court order. . .. *However, such return or return information shall not be disclosed . . . if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.*" (Emphases added.)

conservation easement transactions."[11] (United States Letter Brief at 12). The Government, of course, bears the burden of establishing that its decision to withhold information under Section 6103 conforms to the law. *Chamberlain v. Kurtz,* 589 F.2d 827, 841 (5th Cir.), *cert. denied*, 444 U.S. 842 (1979).[12] "If a document or information is considered 'return information,' it may nevertheless be subject to discovery if it is directly related to the resolution of a dispute at issue in a legal proceeding." *RCL Properties, Inc. v. United States*, No. 08-CV-00055, 2008 WL 5216294, at *4 (D. Colo. Dec. 11, 2008) (citing 26 U.S.C. § 6103(h)(4)(B)). The Treasury Secretary may, however, determines that such disclosure would seriously impair a civil tax investigation, and in

---

[11]   Perhaps the most serious discovery issue confounding the parties relates to Defendants' insistence that they be given access to the IRS's still incomplete audits of EcoVest projects at the center of this case. According to counsel for EcoVest, there are 63 projects at issue, 54 of which have open audits. The Government is asserting 6103 impairment with respect to producing documents concerning the 54 open audits. (United States Letter Brief at 12). These documents seem highly relevant to the ability of the EcoVest Parties and Mr. Clark to raise a defense, particularly to the disgorgement claim.

[12]   The Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

such a case the disclosure may not be made unless the Court concludes

that the document was wrongly withheld. 26 U. S. C. § 6103(h)(4)(D).

### ii

The parties disagree on the standard of review the Court should

use in assessing if the Government has correctly relied upon Section

6103 to withhold documents from the EcoVest Parties. The United

States argues that in "non-FOIA cases the more deferential abuse-of-

discretion standard applies to the [Court's assessment of the] IRS's

agency action of invoking Section 6103." (United States Letter Brief at

13). The Government relies on a number of cases to support its position

that the deferential standard of review is appropriate. In *Linsteadt v.

I.R.S.*, 729 F.2d 998 (5th Cir. 1984), the plaintiffs sued the IRS under

FOIA, seeking the disclosure of IRS documents containing the plaintiffs'

own factual statements as summarized by the IRS agent who

interviewed them. *Id.* at 999. In distinguishing between the limitations

on disclosure within the FOIA statue and those contained in section

6103, the court, in dicta, recognized that "[i]f § 6103 provides the sole

measure of the duty, on judicial review the claimant has the burden of

proving an abuse of the agency's discretion in nondisclosure." *Id.; see

also, Grasso v. I.R.S.,* 785 F.2d 70, 73 (3d Cir. 1986) ("The principal

consequence of finding that section 6103, rather than FOIA, is the applicable provision covering disclosure is the greater deference under section 6103 accorded an IRS decision not to disclose information."); *Baranski v. United States*, No. 4:11-CV-123, 2015 WL 3505517, at *9 (E.D. Mo. June 3, 2015) ("Under § 6103, deference is accorded to a decision not to disclose [tax return] information by virtue of the Administrative Procedure Act, and court review is limited to determining if the agency decision not to disclose was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'").

While the weight of authority favors the United States' position, in the end, EcoVest believes the current dispute should not turn on the standard of review the Court adopts but on the fundamental unfairness of the Government's actions in withholding documents needed by EcoVest to defend itself. (E-mail from Sean Akins, Esq., counsel for EcoVest, to Special Master, April 2, 2021, 14:34 EDT). EcoVest's counsel puts a fine point on his clients' position:

> [I]t ultimately does not matter what standard of review applies. [T]he Government's invoking its authority to withhold documents to prevent a party from defending itself in a case that the Government brought is the very definition of an abuse of discretion. *See Beresford v. United States*, 123 F.R.D. 232 (E.D.

Mich. Nov. 21, 1988) ("[C]onstruing the statute [Section 6103], in this instance, to permit disclosure comports with fundamental principles of fairness as embodied in the fifth amendment's due process clause by avoiding the use of information against a party without that party having the opportunity to see that data."). . . .

Assume we accept, for the sake of argument, [the Government's] demand that its [6103] determination be granted "considerable administrative discretion" and deference. Such a position would mean that the Government can bring an action against a private party, seeking as the Plaintiff does in its Complaint the return of every dollar ever earned by the Defendants over the past decade (plus an injunction), and simultaneously withhold from them the very documents and testimony that would help refute the allegations upon which that relief was requested and on which some of Defendants' affirmative defenses depend. The stakes for the Defendants are *extraordinary*. . ..

*Id*.

## B
### i

EcoVest generally asserts that there has been an inadequate showing that production of the at-issue documents would "seriously impair Federal tax administration" and, moreover, that any legitimate concerns of the United States in this regard could be mitigated with an appropriately drafted protective order. According to EcoVest, many of the categories of withheld documents do not appear to meet the definition of "return or return information," making section 6103 inapplicable. *Id*. Particularly troubling to the EcoVest Parties is the notion that the Government is withholding EcoVest's own return

information under the guise of 6103 and that the disclosure of such information would impair the IRS's enforcement of the nation's tax laws. Quoting the Fifth Circuit's decision in *Chamberlain*, EcoVest explains, "it is not reasonable to believe that Congress enacted sections 6103(c) and (e) which specifically address a taxpayer's right to his own tax files, intending that these provisions cease to operate as soon as the taxpayers tax information becomes either directly or indirectly involved in a judicial or administrative tax proceeding." 589 F.2d at 838 (footnote omitted).

## ii

In support of its 6103 determinations, the United States has submitted the declaration of Christopher A. Pavilonis, Esq., Special Trial Attorney in the IRS's Small Business and Self-Employed Division, Office of Chief Counsel. Pavilonis, Declaration at 1, ¶1. Mr. Pavilonis' declaration is organized into seven categories. The seven categories correspond to the seven exhibits attached to the declaration in which withheld documents are identified by Bate's Numbers. While EcoVest contends that the United States has failed to make a proper showing for excluding documents under 6103 in any of its seven categories,

EcoVest's current focus is on categories three through seven. (EcoVest Letter Brief at 10 n.2).

The vast majority of documents EcoVest identifies in its Letter Brief as being wrongly withheld under Section 6103 fall within Mr. Pavilonis' third and fourth Categories. In the third category, Mr. Pavilonis includes documents that the IRS contends are relevant to ongoing examinations into the Defendants that are not yet completed. *Id.* at 7, ¶23. In the fourth category, he places documents such as the IRS's Field Guide Memoranda or Whitepapers. *Id.* at 9, ¶27. According to Mr. Pavilonis, release of documents in either of these categories would reveal the IRS's legal and audit strategies and provide a roadmap that the Defendants and other conservation easement promoter could use to circumvent the tax laws and impair federal tax administration. *Id.* at 7, ¶24, and at 9, ¶29.

### iii

The Government has carried its 6103 burden with respect to many of the documents reviewed but not with respect to all of the documents. Every defendant is entitled to mount a vigorous defense, and every vigorous defense depends, in part, on access to relevant documents.

That is particularly so in this case where the Government is in possession of many of the documents EcoVest needs to defend itself.

EcoVest is entitled to return information on the projects central to the Government's case against it, and when the Government relies on 6103 to deny EcoVest that information, it abuses its discretion. It is not, however, an unfettered entitlement. The Government is well within its authority to withhold return information on EcoVest projects still under investigation *and* which are not part of the current case, as well as return information that would reveal the IRS's methodologies and practices for investigating and assessing conservation easements.

Perhaps the Government's disquiet with producing certain return information can be addressed by the entry of an appropriate protective order or by appropriate redactions. It is entirely proper for the Government to redact information from documents otherwise discoverable if disclosure of the redacted information would seriously impair the administration of federal tax laws.

At least one court has been sympathetic to the argument EcoVest raises that when the Government pursues an action against a party on the basis of return information and at the same time withholds that information from the party on the basis of 6103, principles of

fundamental fairness are implicated. *See Beresford*, 123 F.R.D. at 233. This reasoning, of course, is particularly powerful when, as here, the government acts as a plaintiff. Courts have observed similar concerns in the deliberative process privilege context. *Cf. Citizens Bank*, 117 F.R.D. at 366 (D. Md. 1987) (noting in the deliberative process privilege context, that "it is fundamentally unfair to allow [the Government] to evade discovery of materials that a private plaintiff would have to turn over, thus allowing the government to play with defendant's hole card upturned and its hole card down under any claim of governmental or executive privilege" (citation and quotations omitted)). The reasoning in these cases is persuasive.

It is unlikely the Court will sustain the Government's 6103 assertions for documents that directly bear on the issues the Government has put in play in the absence of a legitimate showing that production of the documents will seriously impair federal tax administration. The impairment must be a serious one; modest impairments are insufficient to defeat a demand for the discovery of relevant return information. And where appropriate redactions and a protective order can ameliorate the impairment while preserving the right to secure needed discovery, all the better.

## C

Here are the findings with respect to the documents EcoVest

identifies as being wrongly withheld due to the Government's assertion

of 6103. (EcoVest Letter Brief at 12-15).

### INFORMATION RELEVANT TO ONGOING EXAMINATIONS AND FILED GUIDE MEMORANDA[13]

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| PRIV-624 | 3 | Yes | Document file name is "Examining Officer's Activity Report." Concerns return information under 6103 in that the subject matter relates to an investigation with respect to the determination of the existence, or possible existence, of a taxpayer's liability. |
| PRIV-627 | 3 | Yes | Document file name is "Group Manager Concurrence Meeting." The document identifies a |

---

[13] "Field Guidance Memoranda, commonly referred to as whitepapers, are documents prepared by IRS examiners, in consultation with IRS counsel attorneys, working a promoter investigation for use by other examiners working related examinations or investigations. Whitepapers include the examiner's description of the promoter's scheme and the key tax issues, an analysis of the law, and suggested audit techniques." (Pavilonis, Declaration at 9, ¶27).

[14] The Category Column notes the category assigned the document by Mr. Pavilonis in his Declaration.

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| | | | taxpayer and sets forth points to be considered and processes to be followed in IRS investigations. Its disclosure would seriously impair the administration of federal tax law. |
| PRIV-632 | 3 | Yes | Document file name is "Fraud Development Lead Sheet." The material parts of the document are not filled out. Disclosure of the document's narrative content could seriously impair the administration of federal tax law as it describes means and methods of investigation. |
| PRIV-646 | 3 | Yes | Document file name is "Field Guidance Memo." This document constitutes Return Information under 6103 in that it relates to the determination of the existence, or possible existence, of liability of a taxpayer. Its disclosure would seriously impair the administration of federal tax law. |
| PRIV-722 | 3 | — | Document file name is "Image0002." Document contains no content and is a blank page with Bates' Number. |
| PRIV-837 | 3 | Perhaps | Document file name is "Graph." Its origin and author are undisclosed. If the document was created by the IRS, it should not be produced, if created by the EV Parties production should be made. |
| PRIV-2173 | 3 | — | Document PRIV-2173 cannot be located in the documents |

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| | | | provided for *in camera* inspection. |
| PRIV-2178 | 3 | Yes | Document file name is "Conservation Easement Audit Techniques Guide." Document does not relate to any specific taxpayer or the possible liability of any specific taxpayer. The document is instructional and discuss audit techniques to be used when examining a conservation easement transaction.  The document falls within the terms of §6103(B)(2)(D) that protect from disclosure documents reflecting the "standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws." The disclosure of document PRVI-2178 would seriously impair federal tax administration.[15] |
| PRIV-2198 | 3 | Yes | Document file name is "Lakeshore 886-A Sub Form Step Doctrine." |

---

[15]  EcoVest makes the following statement in its Letter Brief: "The IRS regularly releases 'campaigns' that it uses to coordinate issues in terms of examining various topics. It also releases publicly a conservation easement 'audit technique guide' in which it discloses how its auditors should evaluate the very issues Plaintiff has raised in this case." (EcoVest Letter Brief at 11). If document PRIV-2178 has been publicly released, it obviously is not subject to Section 6103 protections.

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| PRIV-2224 | 3 | Yes | The documents file name is "Case Report Brantley 5-25-18." The document concerns return information under §6103 in that the subject matter relates to an investigation with respect to the determination of the existence, or possible existence, of a taxpayer's liability. |
| PRIV-2245 | 3 | No | Document file name is "Gary's Report." The document appears to be a cover e-mail, without content transmitting attachment. The referenced attachment is not part of the documents provided for *in camera* inspection. |
| PRIV-2442 | 3 | Yes | Document file name is "f12175—[redacted]." EcoVest in its Letter Brief at 14 notes that the subject line of the document is "Third Party Contact Report." The document's disclosure would seriously impair the administration of federal tax law. |
| PRIV-2453 | 3 | — | Document number PRIV-2453 cannot be located in the documents provided for *in camera* inspection. |
| PRIV-2538 | 3 | No | Document file name is "Hotel Receipt Bluffton SC." The document does not meet the definition of a return or return information. |
| PRIV-2588 | 3 | No | Document file name is "Final RAR." |
| PRIV-2596 | 3 | No | Document file name is "Inadvertent Disclosure Procedures-Rock." Document contains procedure for |

| DOCUMENT №  | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
|  |  |  | dealing with inadvertent disclosures.  The document does not constitute "return or return information" under §6103. Assuming the document were return information, there is no showing of how its disclosure "would seriously impair Federal tax administration." |
| PRIV-3056 | 2 | Yes | Document file name is "FW Response: Tax Returns and Information for Promoter Investigation." The document is an e-mail chain between IRS employees concerning the identification of taxpayers. |
| PRIV-3172 | 2 | Yes | Document file name is "Referral Letter to the IRS." The document is "return information" under the authority of *Currie v. IRS*. Its disclosures would seriously impair federal tax administration. |
| PRIV-3522 | 6 | No, but only to the extent the document is final. | Document file name is "20141215 Englewood Place ROV Final." |
| PRIV-4511 | 3 | Yes | Document file name is "Multi-year and Related Returns Lead Sheet." The document identifies a taxpayer and sets forth points to be considered and processes to be followed in IRS investigations. Its disclosure would seriously impair the administration of federal tax law. |
| PRIV-4632 | 4 | — | Document number PRIV-4632 cannot be located in the documents provided for *in camera* inspection. |

40

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| PRIV-4965 | 3 | Yes | Document file name is "f14242-2016-10-00." The subject line of the document as reported by EcoVest in its Letter Brief at 12 is "Report Suspected." The document identifies a taxpayer. Its disclosure would seriously impair the administration of federal tax law. |
| USPROD-0292366-0001 | 6 | No | EcoVest in its Letter Brief does not indicate a file name for this document. The only identifying information is the document's Bate's Number. The document does not contain any taxpayer information, nor would its disclosure seriously impair the administration of federal tax law. |
| USPROD-0292366-0002 | 6 | In Part | That portion of the document beginning with the words "Taxpayer Name:" to the start of the phrase "The following techniques" should be produced, the remainder of the document should be redacted including the sentence beginning "The following techniques." |
| USPROD-0292366-0003 | 6 | In Part | That portion of the document beginning with the words "Taxpayer Name" through "Date of discussion with manager" should be produced. The remainder of the document should be redacted. |
| USPROD-0292367 through USPROD-0292368 | These documents were produced by the Government to the Special Master but were not requested for *in camera* inspection by the EcoVest Parties. *See* e-mail from Matthew V. Miller, Esq., counsel for EV to the Special Master dated March 15, 2021, at 10:41 PM listing documents by Bates Number for *in camera* inspection. If I am mistaken, then for document USPROD- | | |

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| | | | 0292367, I would require that portion of the document beginning with the words "Taxpayer Name:" to the start of the phrase "The following techniques" to be produced, the remainder of the document should be redacted including the sentence beginning "The following techniques." USPROD-0292367 is a duplicate of USPROD-0292366-0002.<br><br>Regarding USPROD-0292368, a portion of the document has been redacted.  I would unredact the portion of the document that is redacted and direct that the document beginning with the words "Taxpayer Name" through the redaction be produced. The remainder of the document should be redacted. USPROD-0292368 appears to be identical to USPROD-0292366-0003 except that USPROD-0292368 is partially redacted where USPROD-0292366-0003 has no redactions. |
| USPROD-0415348 | 6 | In Part | Document file name is "Fraud Development Lead Sheet." Document has been partially redacted. To the extent the redacted copy has been previously produced, the portion of the document which has been redacted should be unredacted. If the document has not previously been produced, that portion of the document beginning with the words "Taxpayer Name:" through "Date of discussion with manager" should be produced. The remainder of the document should be redacted. |
| USPROD-0415348-0001-02 | 6 | In Part | That portion of the document beginning with the words "Taxpayer Name" through "Date of discussion with manager" should be produced. The remainder of the document should be redacted. USPROD-0415348-0001 appears to be a duplicate of USPROD-0415348 except that |

| DOCUMENT № | CATEGORY[14] | 6103 PRIVILEGED YES/NO/IN PART/ PERHAPS | COMMENTS |
|---|---|---|---|
| | | | USPROD-0415348-0001 is not redacted. |
| USPROD-0415349 | This document was produced by the Government to the Special Master but was not requested for *in camera* inspection by the EcoVest Parties. *See* e-mail from Matthew V. Miller, Esq., counsel for EV to the Special Master dated March 15, 2021, at 10:41 PM listing documents by Bates Number for *in camera* inspection. It appears, however, that the document may have been miss numbered and should have accompanied document USPROD-0415348. If so, my finding would be that USPROD-0415349 should be redacted in its entirety. USPROD-0415349 is a duplicate of USPROD-0415348-0002. | | |

## IV

**ACCORDINGLY**, it is RECOMMENDED that the Government's assertion of the deliberative process privilege and allegations of Section 6103 impairment be made consistent with the determinations in this R&R.

Because the legal analysis has not at all changed between the initial R&R (Docket № 277) and this Amended and Corrected R&R,[16] the parties have agreed—consistent the requirements of the Order of Appointment, Docket № 199 at 6, ¶(3)(g)—that only responses to the

---

[16] The only material changes between this Amended and Corrected Report and Recommendation and the initial R&R, are adjustments to the document tables. Those adjustments reflect a more comprehensive review of the at-issue documents as additional information was received by the Special Master from counsel.

parties' objections to the initial R&R are allowed. Those responses are due within five (5) working days. The objections of the Government to the initial R&R are found at Docket № 283 and those of the EcoVest Parties are located at Docket № 284. No objections from Mr. Clark to the initial R&R appear on the docket.

IT IS SO RECOMMENDED this 8th day of July 2021.


*C. A. González*
Special Master