IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE |
| | : | NO. 1:18-CV-05774-AT |
| NANCY ZAK, et al., | : | |
| | : | |
| Defendants. | : | |

## ECOVEST PARTIES' REPLY TO THE UNITED STATES' OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION

On July 8, 2021, the Special Master assigned to the above-captioned case submitted to the Court his amended Report and Recommendation (the "Amended R&R") relating to thousands of documents Plaintiff withheld or redacted based on overbroad claims of the deliberative process privilege and 26 U.S.C. § 6103.  The parties previously filed objections to the original Report and Recommendation ("R&R") (Docket No. 277) in advance of the April 30, 2021, hearing.  (Docket Nos. 283, 284.) This filing constitutes the EcoVest Parties' reply to the United States' Objection to Special Master's Report and Recommendation ("Plaintiff's Objection to the R&R") pursuant to the Order of Appointment.  *See* Docket No. 199 at ¶ 3(h).

1

The EcoVest Parties sought the documents at issue in their first requests for production, propounded in June 2019.  Now, after years of refusing to produce these documents and months of expending the Special Master's and the EcoVest Parties' time and resources, including having the Special Master review and propose production of hundreds of withheld documents, Plaintiff has decided to "stand on [its] objections" rather than agree to produce the types of documents the Special Master recommended for production.  *See* Tr. of June 30 Teleconference with the Special Master, 32:15 (Docket No. 312-1).  For the reasons discussed in the EcoVest Parties' letter briefs to the Special Master (Docket No. 277-1), in their Response to the R&R (Docket No. 284), and below, the Court should compel the production of all the documents Plaintiff is withholding under the deliberative process privilege and 26 U.S.C. § 6103.

## I.    The EcoVest Parties Are Entitled to All the Documents Plaintiff Is Withholding

Since it first began making its deliberative process and 26 U.S.C. § 6103 claims, Plaintiff's assertion of those claims has been contradictory, unprincipled, and in stark contrast to the wide-ranging discovery Plaintiff has sought and received from Defendants and dozens of third parties.  Plaintiff has invoked these claims to impermissibly withhold and redact thousands of documents, including documents highly relevant to the EcoVest Parties' defenses that cannot be obtained

2

elsewhere, documents already in the public domain, documents that contain the EcoVest Parties' own return information, and documents that do not appear to contain return information at all.  By its terms, the deliberative process privilege and 26 U.S.C. § 6103 do not provide a basis for withholding or redacting such documents.  To the extent the Special Master's R&R determines otherwise, it is wrong.

### A.      Attempts at Resolution

Throughout the years-long discovery period in this case, the EcoVest Parties have been forced to proceed without the crucial information Plaintiff is withholding.  Moreover, by impermissibly withholding documents related to nearly every transaction Plaintiff chose to put at issue in this case, Plaintiff is preventing Defendants from accessing information necessary to their defense.  Despite herculean efforts on the part of the Special Master and the EcoVest Parties to work with Plaintiff to resolve this issue, little progress has been made.

Specifically, to provide the parties a framework to resolve the ongoing dispute, the Special Master initially reviewed lengthy letter briefs and 35 sample documents from Plaintiff's privilege log this spring.  The Special Master drafted the original R&R with his conclusions regarding those documents, recommending that some should be produced and some should remain withheld, to which the

parties filed objections.  Although the 35 samples were meant to establish guidelines for the many thousands of documents being withheld, Plaintiff took the position that the Special Master's review had no further effect beyond the conclusions regarding the samples.  During the April 30 hearing before the Court, the Special Master confirmed that the 35 samples were meant to serve as a framework.  *See* Tr. of April 30 Hearing 29:4–30:1 (Docket No. 312-1).  Given Plaintiff's protestations, however, the Court directed the Special Master to review complete IRS administrative files for two of the EcoVest Parties' audited programs.  This was done to ensure that the Special Master had an even more complete understanding of the nature of the dispute and the documents at issue, and it was anticipated this would lead to an amended R&R following this review.

The parties selected two administrative files, and on June 15, the Special Master provided his conclusions with respect to those files on a document-by-document basis and subsequently filed the Amended R&R.[1]  Across the two administrative files (of the 73 projects that remain at issue in this case), the Special Master concluded that Plaintiff was improperly withholding over 800 documents.

---

[1] The tables containing the Special Master's conclusions with respect to the two administrative files are not included in the R&R but are attached here are Exhibits G and H.

A month later, Plaintiff has yet to produce a single one of these documents and has instead decided to "stand on [its] objections"—transforming the Special Master's review into an exercise in futility.  *See* Ex. A, Tr. of June 30 Teleconference with the Special Master, 32:15.

### B.    Plaintiff's Indefensible Privilege and 26 U.S.C. § 6103 Claims

Plaintiff's deliberative process privilege and 26 U.S.C. § 6103 claims are indefensible.  The only consistent aspect of Plaintiff's claims is that they unfairly advantage Plaintiff.  For example, Plaintiff has selectively produced "lead sheets" from the IRS audits where the agents sought to impose overvaluation or negligence penalties, but has refused, on the basis of 26 U.S.C. § 6103, to produce other lead sheets related to the same audits where IRS agents determined there were no indications of fraud.[2]   Put differently, Plaintiff takes no issue with producing documents it views as helpful to its own case, but claims without supporting detail that producing documents that undermine its position "would seriously impair

_____

[2] *Compare, e.g.*, Ex. B, USPROD-0291958-62 (overvaluation penalty lead sheet for Hickory Equestrian, LLC) *with* Ex. C, USPROD-0292368 (fraud lead sheet for Hickory Equestrian, LLC with conclusions redacted).  *See also* Amended R&R pp. 37, 42 (ruling on several withheld fraud lead sheets).  The EcoVest Parties became aware of this only after Plaintiff inadvertently produced one unredacted fraud lead sheet.  *See* USPROD-0123514, Docket No. 284-1.  Plaintiff continues to withhold the majority of fraud lead sheets.

federal tax administration."  *See* Plaintiff's Objection to the R&R, p. 15.  These types of sword/shield privilege claims are strongly disfavored.[3]

Another manifestation of Plaintiff's tactics is its selectively allowing IRS agents to testify in depositions regarding some of the audits of projects at issue in this case, but prohibiting testimony related to many others.  *See* EcoVest Parties' Response to R&R, p. 13 (Docket No. 284).  This testimony has been withheld at Plaintiff's instruction without any explanation by the Treasury Secretary or his authorized delegate that such testimony "would seriously impair Federal tax administration" under  26 U.S.C. § 6103.

Finally, Plaintiff professes that its line-drawing as to what documents to produce, and what testimony to allow, is in all instances based on whether an audit is "open" or "closed."  But as noted, Plaintiff has selectively produced documents related to "open" audits.  Moreover, Plaintiff's definition of what is an "open" versus "closed" audit changes frequently, and Plaintiff itself lacks awareness of the

---

[3] *See, e.g.*, *Nguyen v. Excel Corp.,* 197 F.3d 200, 207 (5th Cir. 1999) ("Attempts at such improper dual usage of the privilege result in a waiver by implication."); *Cobb Elec. Membership Corp. v. Zurich Am. Ins. Co.*, No. 1:09-CV-0675-CAP-WEJ, 2010 WL 11500063, at *4 (N.D. Ga. Mar. 29, 2010) ("[T]he . . . privilege was intended as a shield, not a sword." (internal quotations omitted)).

status of the audits.[4]   Plaintiff's distinction is simply unintelligible and indefensible.  To the extent Plaintiff is unable to clearly articulate in depositions, privilege logs, declarations, or briefs which audits are "open" and which are "closed," and why certain evidence is produced but other evidence withheld, it cannot reasonably claim that Federal tax administration would be "seriously impaired" by disclosing this critical evidence.

## C.   All the Withheld Documents Should Be Produced

For the reasons set forth in the EcoVest Parties' letter briefs to the Special Master and Response to the R&R, the EcoVest Parties maintain that all of the documents Plaintiff is withholding must be produced.  First, the Amended R&R, p. 14, correctly identifies that many of the documents Plaintiff is withholding are "highly relevant" and must be produced.  Other documents are either not addressed by the R&R, or the R&R incorrectly concludes they are excepted from disclosure.

Second, the administrative files contain the EcoVest Parties' own return information and they are paramount to defending against Plaintiff's allegations. Disclosure of these documents to the EcoVest Parties would not seriously impair

---

[4] *See* Ex. D, Tr. of Doris White 211:1–212:1 (Plaintiff's counsel instructing the deponent not to respond to questions about audits "because we don't know if it's opened or closed.").

Federal tax administration, but rather would facilitate it.  The documents in the administrative files most critical to the EcoVest Parties' defense are the lead sheets, officer activity records, and IRS appraisals for all the audits (both "open" and "closed"), which, as discussed further below, help demonstrate what the EcoVest Parties knew or should have known about the availability of the tax benefits at issue—i.e., they are relevant to Plaintiff's fraud claims.

Third, the EcoVest Parties are entitled not only to the documents in the administrative files, but also the documents responsive to their remaining discovery requests, such as IRS training materials and documents that appear to contain agency-wide information regarding issues related to this case.  To the extent that these documents are final and do not contain information about any specific taxpayer, the deliberative process privilege does not apply.  Similarly, such documents do not contain tax return information, making 26 U.S.C. § 6103 inapplicable by its terms.

With respect to drafts and internal notes, as explained in previous filings, the deliberative process privilege is overcome by the EcoVest Parties' need for the documents.  Plaintiff's drafts are relevant for the same reasons that Plaintiff sought—and received—drafts of the EcoVest Parties' documents.  Plaintiff's drafts and internal notes will shed light on its evolving positions and may contradict

positions Plaintiff and its witnesses will take at trial.  *See* Fed. R. Evid. 802(d)(2). The drafts and notes may also shed light on Plaintiff's position as to what the EcoVest Parties knew or should have known about the tax benefits at issue. Plaintiff also fails to articulate why disclosure of such drafts—many of which are drafts of publicly available documents or documents later provided to Defendants in the course of audits—would "seriously impair Federal tax administration." Absent such an explanation, these privilege claims are unsupportable.[5]

Finally, as the Court considers these issues, one point should be abundantly clear:  Given the sheer number of projects at issue and withheld documents (factors both within Plaintiff's control), a categorical approach—and not a document-by-document approach—is the only way forward.  The two-year fact discovery period has already closed.  Reviewing, analyzing, and ruling on each one of thousands of documents across dozens of files is inefficient, impractical, and unnecessary.

_____

[5] *See, e.g.*, *Long v. IRS*, 742 F.2d 1173, 1183 (9th Cir. 1984) ("[T]he court must satisfy itself . . . that the Commissioner is correct in his belief that disclosure of the . . . data sought by these plaintiffs would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws."); *Shannahan v. IRS*, 104 A.F.T.R. 2d 2009-7172 (D. Wash. 2009) (rejecting the IRS's 26 U.S.C. § 6103(c) claim because the IRS provided only "a boilerplate rationale that offers no particularized support for withholding," and "[t]he bare fact that the [taxpayers] would otherwise not be entitled to information . . . does not mean that the release of certain documents would necessarily rise to the level of substantial interference with federal tax administration.").

## II.     The R&R Correctly Concludes that IRS Documents Regarding the Availability of Claimed Tax Benefits Are "Highly Relevant"

In its Objection, Plaintiff disputes the R&R's conclusion that IRS documents related to ongoing audits of projects implicated in this case are "highly relevant." *See* Amended R&R, pp. 14, 28 n.11.  Plaintiff is wrong—this aspect of the R&R is correct.

The statute underlying Plaintiff's complaint, 26 U.S.C. § 6700, penalizes specified persons who make a statement about (1) a tax benefit "which the person knows or has reason to know is false or fraudulent as to any material matter" or (2) "a gross valuation overstatement as to any material matter."   "At least two types of statements fall within the statutory bar:  statements directly addressing the availability of tax benefits and those concerning factual matters that are relevant to the availability of tax benefits."  *United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990); *see also* IRS Chief Counsel Memorandum 202125009 (March 12, 2021) ("False statements under section 6700 include representations that a plan qualifies for special tax treatment when the plan does not comply with the law."), *available at* https://www.irs.gov/pub/irs-wd/202125009.pdf.  Thus, the availability of the claimed tax benefits and the person's actual or constructive knowledge of the availability of those benefits are relevant inquiries in a 26 U.S.C. § 6700 proceeding.  Obviously, statements about tax benefits that are allowable under the

Internal Revenue Code (the "Code") cannot be the basis for a 26 U.S.C. § 6700 violation. Similarly, statements about tax benefits the person had no reason to know were not available under the Code cannot be the basis for a violation.

The Department of the Treasury, including the IRS, is charged with the administration and enforcement of the internal revenue laws. 26 U.S.C. §§ 7801, 7803. If IRS employees tasked with administering and enforcing a specific Code section conclude that tax benefits are, in fact, available under that section—or debate the availability of those benefits—documents to that effect would be highly probative to defending against an alleged 26 U.S.C. § 6700 violation. An individual taxpayer cannot have, and cannot be expected to have, a different or better understanding of the availability of tax benefits than the Government agents whose job is to administer the law governing those benefits.

Throughout this discovery dispute, Plaintiff's mantra has been that IRS documents and statements could not possibly have any bearing on the EcoVest Parties' activities or state of mind that Plaintiff claims violated 26 U.S.C. § 6700. *See, e.g.*, Plaintiff's Objection to the R&R, pp. 9-10. This is wrong. In particular, it ignores one of the core inquiries under 26 U.S.C. § 6700—whether the tax benefits about which a "statement" was made were in fact available. A statement describing the availability of valid, legal tax benefits could not be "false or

fraudulent" and thus could not violate 26 U.S.C. § 6700. The IRS' internal discussions and conclusions about the availability of the benefits at issue, including the IRS agents' findings during the audits of partnerships involved in EcoVest transactions, are not only "highly relevant" to the EcoVest Parties' ability to defend themselves, they directly bear on one of the fundamental elements of 26 U.S.C. § 6700. *See Campbell*, 897 F.2d at 1320 (finding that "statements directly addressing the availability of tax benefits" fall under 26 U.S.C. § 6700).

As an example, paragraph 165 of Plaintiff's Amended Complaint (Docket No. 225) alleges:

> In organizing, promoting, and selling (or assisting in the organization, promotion, and sale of) the 138 conservation easement syndicates, all Defendants made or furnished statements about the amount of a qualified conservation contribution deduction that would be available to customers if they invested in a conservation easement syndicate. These statements were based on the appraisals and/or opinions of value prepared by Clark or another real estate appraiser.

One of Plaintiff's issues underlying the amount of the deductions is the appraisals' use of the "discounted cash flow" method, which Plaintiff alleges was inappropriate. *See, e.g.*, *id.* ¶ 124 ("Clark inappropriately used a discounted cash flow analysis while ignoring relevant comparable sales, including the sale of easements or property subject to easements."). IRS documents using or approving

that method would establish that any statements by the EcoVest Parties based on that methodology were not "false or fraudulent," and that the EcoVest Parties could not have known, and could not have had reason to know, that any statements based on that methodology were "false or fraudulent." *See* 26 U.S.C. § 6700 (adopting a "knows *or has reason to know*" standard) (emphasis added).

Significantly, to meet its burden under 26 U.S.C. § 6700, Plaintiff must prove not only that the tax benefits at issue are unavailable, but unambiguously so. Courts have repeatedly declined to penalize taxpayers for taking a position regarding the availability of tax benefits where the position is "reasonably debatable" or the law is unclear. *See, e.g.*, *Williams v. Commissioner*, 123 T.C. 144, 153-54 (2004). Further, tax fraud requires "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax *believed to be owing*." *Webb v. Commissioner*, 394 F.2d 366, 377-78 (5th Cir. 1968) (emphasis added). Once again, the EcoVest Parties cannot be expected to understand the law better than the IRS does. IRS documents or statements confirming the availability of tax benefits, or demonstrating internal discussions or debates regarding their availability, are therefore relevant to what the EcoVest Parties themselves should have known about the tax benefits and whether their position at the least is "reasonably debatable."

Plaintiff supports its argument that IRS documents have no relevance to this case by claiming that "[n]othing that the IRS said or recorded in its open income tax audit files, for example, could add anything to Defendants' understanding about their own actions or statements." Plaintiff's Objection to the R&R, p. 12 (Docket No. 283). Plaintiff also claims that the withheld documents are irrelevant because "an IRS examiner cannot place herself inside the mind of the promoter" and does not have the resources "to investigate the breadth of the promoter's activities or falsity of their [sic] statements over a series of years." *Id*. at 10.

These arguments are unavailing for a number of reasons. First, for all Plaintiff's posturing in its Objection to the R&R—and for the last 2.5 years of litigation—that the IRS agents lacked sufficient information about the transactions such that their documents have no relevance here, Plaintiff's Objection to the R&R, p. 11, the IRS agents auditing the transactions at issue in the case were provided all the relevant documents and information during the course of the audits and have reviewed the breadth of the transactions.[6] Moreover, the Defendants and

---

[6] *Compare, e.g., id.* at 11 (claiming that the IRS agents "at best, ha[ve] been able to piece together an understanding of the transaction based on facts that the EcoVest Parties have chosen to share with them or that may have been provided by third parties") *with* Ex. E, Examining Officer's Activity Record, p. 6 (showing a total of 968 hours that IRS employees worked on one of the programs at issue).

the audited partnerships fully complied with the information reporting requirements in IRS Notice 2010-17, affirmatively alerting the IRS to the existence of these transactions *before* audits were initiated.[7]   Far from having "undertaken efforts to disguise" the transactions as Plaintiff alleges, *id.*, Defendants affirmatively alerted the IRS to them.   Further, it is not necessary for a single IRS agent to have examined all the EcoVest Parties' activities or statements "over a series of years," as Plaintiff claims.   *Id.* at 10.   If each one of the EcoVest Parties' programs properly followed the law, the programs cannot be aggregated to manufacture fraud.   More critically, the absence of such a holistic review does not serve as a basis to withhold the IRS's conclusions that on a project-by-project basis, there is no evidence or indications of fraud.

Second, and more importantly, Plaintiff's arguments are unavailing because they ignore the standard provided by 26 U.S.C. § 6700—what the EcoVest Parties knew or should have known about the veracity of their statements.   Under this standard, IRS documents can provide key insights into defending against the claim that the EcoVest Parties "should have known" that their statements were allegedly

---

[7] *See, e.g.*, Ex. F, Tr. of Diana Marcelli, 116:2-3 (testifying that the EcoVest Parties "complied substantially" with Notice 2017-10.).

false or fraudulent.  If the IRS itself concluded that the projects followed the law—or that the law is unclear—the EcoVest Parties' statements about the availability of tax benefits could not have violated 26 U.S.C. § 6700.  Also for this reason, the cases that Plaintiff cites for the proposition that IRS documents are not relevant are inapplicable here.  *See* Plaintiff's Objection to the R&R, pp. 9-10.  None of those cases addresses a statute where what the defendants *should have known* was the relevant inquiry.[8]  Further, despite Plaintiff's contention that administrative documents have no place in a *de novo* proceeding, the significance of a *de novo* proceeding is that a court does not give any deference to an agency's findings—not that administrative documents required to properly defend against an allegation must be excluded from discovery.  *See, e.g.*, *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987) ("De novo means here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not

---

[8] *See United States v. Elsass*, 2011 WL 3900846, at *5 (S.D. Ohio 2011) (discussing relevance of documents to a reasonable cause and good faith defense); *SEC v. Bankatlantic Bancorp, Inc.*, 285 F.R.D. 661, 668 (S.D. Fla. 2012) (concluding that SEC documents related to *third parties* were not relevant to what the defendants "thought or intended"—not what they should have known); *United States ex rel. Stephens v. Prabhu*, 163 F.R.D. 340, 343 (D. Nev. 1995) ("The relevant inquiry is whether defendants *knew* that the claims submitted were false or fraudulent at the time they were submitted.") (emphasis added).

limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.").

## III.   The True Impairment of Federal Tax Administration Is Plaintiff's Withholding of the EcoVest Parties' Own Return Information

While maintaining the irrelevance of IRS documents when it comes to its deliberative process claim, Plaintiff simultaneously declares that releasing such documents would seriously impair Federal tax administration in support of its 26 U.S.C. § 6103 claim.  Disagreeing with the R&R's commonsense conclusion that the EcoVest Parties are entitled to their own return information related to ongoing audits, Plaintiff continues to assert that the disclosure of such documents would "provide a roadmap to the direction of the ongoing examinations" and that "Defendants could use these documents to influence the outcome of the still-ongoing audits. . . ."[9]  Plaintiff's Objection to the R&R, p. 17.

---

[9] An IRS attorney, Mr. Pavilonis, made similar claims in a sworn declaration supporting Plaintiff's 26 U.S.C. § 6103 claims.  Plaintiff characterizes Mr. Pavilonis' statement as an "uncontroverted declaration."  Plaintiff's Objection to the R&R, p. 3.  To the contrary, the EcoVest Parties have vigorously disputed Plaintiff's privilege and 26 U.S.C. § 6103 claims.  The EcoVest Parties cannot more specifically controvert Mr. Pavilonis' declaration because, unlike Mr. Pavilonis, they do not have access to the documents.  Moreover, Mr. Pavilonis' declaration addresses only a small fraction of the documents over which Plaintiff asserts 26 U.S.C. § 6103 claims.  Finally, even for those documents that are specifically addressed by the declaration, Mr. Pavilonis' explanations are so vague and unclear as to provide no reasonable basis upon which to challenge them.

The Amended R&R, p. 30, correctly determines that "EcoVest is entitled to return information on the projects central to the Government's case against it, and when the Government relies on 6103 to deny EcoVest that information, it abuses its discretion."  Plaintiff—who bears the burden of proof with respect to its 26 U.S.C. § 6103 claims by clear and convincing evidence—has not identified any concrete way in which providing the documents could influence the audits that it has chosen to maintain in parallel to this litigation.  This point bears repeating: Despite all its spilled ink about the purported impairment of Federal tax administration, Plaintiff has not provided *one example* about how the documents related to the ongoing audits would give the EcoVest Parties some unfair advantage in the audits.  Indeed, as Plaintiff has often asserted, the transactions at issue were completed long before the audits were opened, *see, e.g.*, Plaintiff's Objection to the R&R, p. 7, and those transactions cannot be changed now.  In contrast, the EcoVest Parties have shown how production of the documents at issue would allow them to defend themselves on a level playing field in this litigation.

Significantly, Plaintiff does not dispute that these documents are exempt from 26 U.S.C. § 6103's prohibition on disclosure, unless their release would seriously impair Federal tax administration.  What Plaintiff forgets is that Federal tax administration is not just about a "win" for the Government, but rather about

the proper application and just enforcement of the internal revenue laws.  *See, e.g.*,
26 U.S.C. § 7803(a)(3) (directing the IRS Commissioner to enforce taxpayer
rights, including "the right to pay no more than the correct amount of tax" and "the
right to challenge the position of the Internal Revenue Service and be heard").
Disclosing a taxpayer's own return information that it needs to defend itself against
an alleged, serious violation of the Code would not impair Federal tax
administration.  To the contrary, withholding such documents seriously impairs
Federal tax administration by forcing the EcoVest Parties to fight with one hand
tied behind their back.  To the extent that Plaintiff continues to insist that
disclosing these documents will seriously impair Federal tax administration, and
the Court agrees, then fairness dictates that Plaintiff should be foreclosed from
supporting its case with evidence related to the projects for which Plaintiff is
withholding documents.

    As a last ditch effort to salvage its 26 U.S.C. § 6103 claims, Plaintiff broadly
asserts that "any determination not to disclose sensitive documents or
communications that would impair tax administration could be circumvented by
simply filing a lawsuit."  Plaintiff's Objection to the R&R, p 15.  This is a slippery
slope fallacy, belied by the fact that Plaintiff was the party who filed this case after
years of auditing the EcoVest Parties, and while still maintaining dozens of open

audits.[10]  Despite Plaintiff's insinuations, the EcoVest Parties did not file this case to obtain otherwise protected information in an effort to gain an advantage in the ongoing audits or otherwise.  All that the EcoVest Parties are endeavoring to do is clear their good names and defend themselves against litigation where Plaintiff controls the charges and the timing—and is also attempting to control the information available to the EcoVest Parties.

## IV.   Conclusion

For the reasons set forth herein and as further detailed in the EcoVest Parties' letter briefs and Response to the R&R, Plaintiff should be required to produce all withheld documents for which it is invoking the deliberative process privilege and 26 U.S.C. § 6103.[11]

---

[10] *See also Chamberlain v. Kurtz*, 589 F.2d 827, 838 (5th Cir. 1979) ("It is not reasonable to believe that Congress enacted subsections 6103(c) and (e)[(7)] which specifically address a taxpayer's right to his own tax files, intending that these provisions cease to operate as soon as the taxpayer's tax information becomes either directly or indirectly involved in a judicial or administrative tax proceeding.").

[11] While the documents at issue here should be produced if the EcoVest Parties are to be able to fairly defend themselves against allegations related to the relevant projects, the EcoVest Parties may seek to exclude certain projects from this case given the prejudice Plaintiff caused in its years-long failure to produce these documents and given the prejudice caused by Plaintiff's other failures in discovery. The EcoVest Parties will articulate these arguments with more specificity in the Parties' upcoming motion to compel briefing or in a motion in limine.

Dated:  July 15, 2021

/s/ Kandyce Korotky
Benjamin J. Razi (admitted *pro hac vice*)
Sean Akins (admitted *pro hac vice*)
Marianna F. Jackson (admitted *pro hac vice*)
Matthew V. Miller (admitted *pro hac vice*)
Nicholas Pastan (admitted *pro hac vice*)
Kandyce Korotky (admitted *pro hac vice*)
Amee Frodle (admitted *pro hac vice*)
Wesline Manuelpillai (admitted *pro hac vice*)
John Zipp (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth St. NW
Washington, DC  20001
Tel.:  (202) 662-6000
Fax:  (202) 662-6291
Email: brazi@cov.com

Thomas T. Tate
State Bar No. 698879
Elizabeth L. Clack-Freeman
Georgia Bar No. 126888
ANDERSEN, TATE, & CARR, P.C.
One Sugarloaf Centre
1960 Satellite Blvd., Suite 4000
Duluth, Georgia 30097
Tel: (770) 822-0900
Fax: (770) 822-9680
Email: ttate@atclawfirm.com
Email: lcfreeman@atclawfirm.com

*Attorneys for the EcoVest Parties EcoVest Capital, Inc., Alan N. Solon, Robert M. McCullough, and Ralph J. Teal, Jr.*

*I certify that this pleading has been prepared with one of the font and point selections approved by the Court in LR 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2021, I caused a true and correct copy of the EcoVest Parties' Rely to the United States' Objection to Special Master's Report and Recommendation to be served on counsel of record via the Court's ECF system.

/s/ Kandyce Korotky
Benjamin J. Razi (admitted *pro hac vice*)
Sean Akins (admitted *pro hac vice*)
Marianna F. Jackson (admitted *pro hac vice*)
Matthew V. Miller (admitted *pro hac vice*)
Nicholas Pastan (admitted *pro hac vice*)
Kandyce Korotky (admitted *pro hac vice*)
Amee Frodle (admitted *pro hac vice*)
Wesline Manuelpillai (admitted *pro hac vice*)
John Zipp (admitted *pro hac vice*)
COVINGTON & BURLING LLP
850 Tenth St. NW
Washington, DC  20001
Tel.:  (202) 662-6000
Fax:  (202) 662-6291
Email: brazi@cov.com

*Attorneys for the EcoVest Parties EcoVest Capital, Inc., Alan N. Solon, Robert M. McCullough, and Ralph J. Teal, Jr*