IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 1:18-cv-5774-AT |
| NANCY ZAK, et al., | : : | |
| Defendants. | : | |

## **ORDER**

This matter is before the Court on the Government's Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) [Doc. 317] and Motion to Stay Counterclaim [Doc. 318]. For the following reasons, the Court **DENIES** both motions.

**I. Background**

The Government initiated this action on December 18, 2018, nearly three years prior to the entry of this Order. Since that time the parties have filed several motions to dismiss, addressing both the Government's claims and the counterclaim raised by Defendant Claud Clark III.

In the Complaint, the Government alleged that Defendants participated in a "highly structured — and abusive — tax scheme involving the syndication of conservation easement donations." (Compl., Doc. 1 ¶¶ 1–2.) The government alleged that these transactions entailed "sale of grossly overvalued federal tax

deductions under the guise of investing in a partnership." (*Id.* ¶ 2.) Four of the six Defendants — Ecovest Capital, Inc., Alan N. Solon, Robert M. McCullough, and Ralph R. Teal, Jr. — filed an Answer to the Complaint on February 20, 2019. (Doc. 15.) The other two Defendants — Clark and Defendant Nancy Zak — separately moved to dismiss the Complaint. The Court denied Clark's motion and granted Zak's motion in part on December 10, 2019. (Doc. 119.) Clark and Zak both filed Answers shortly thereafter.[1]

In his Answer, Clark asserted a counterclaim that the Government improperly disclosed his tax return information in violation of 26 U.S.C. §§ 6103 & 7431. (Doc. 123 at 115–27.) The Government moved to dismiss Clark's counterclaim and the Court granted the Government's motion, dismissing Clark's counterclaim without prejudice. (Doc. 161); (Doc. 202). Clark then filed an Amended Counterclaim and the Government filed another motion to dismiss.[2] (Doc. 206); (Doc. 208). In its motion to dismiss Clark's Amended Counterclaim, the Government argued that Clark's tax return information was lawfully disclosed when the Government filed the Complaint in the present action. (Doc. 208 at 11.) And, relying on *Lampert v. United States*, 854 F.2d 335 (9th Cir. 1988), the Government argued that because the Complaint was by that point a matter of public record, the United States Department of Justice's subsequent republication

---

[1] Zak later reached a settlement with the Government and the Court entered a Final Judgment of Permanent Injunction against Zak. *See* (Doc. 271.)
[2] The Government also amended its own complaint several weeks after Clark amended his counterclaim. *See* (Doc. 225.)

of that same information through the issuance of a press release therefore did not violate § 6103. (Doc. 208 at 11–12.)

The Court denied the Government's motion to dismiss on July 6, 2021. (Order, Doc. 309.) In that Order, the Court emphasized that the Eleventh Circuit has never recognized the Ninth Circuit's "implicit exception" to § 6103's confidentiality requirement for "all tax return information that has become a matter of public record," and that several other Circuits had expressly refused to do so. (*Id.* at 9, 13.) The Court was more persuaded by the narrower approach taken by the Fourth, Fifth, Seventh, and Tenth Circuits, under which liability under § 6103 depends on the immediate source of the disclosed information rather than its public or non-confidential status. (*Id.* at 11–12.) The Court also expressed doubts that the Seventh Circuit's rule permitting the subsequent republication of return information contained in a judicial opinion would similarly apply to the republication of return information contained in a complaint that was prepared by the Government's own lawyers. (*Id.* at 14–15.)

On August 13, 2021, the Government moved to certify the Court's Order for an interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. 317.) In conjunction with that motion, the Government also moved to stay discovery pending the resolution of its 1292(b) motion and, in the event that an appeal were certified, the resolution of the appeal. (Doc. 318.)

**II.     Legal Standard**

To be granted permission for an interlocutory appeal of a nonfinal order pursuant to 28 U.S.C. § 1292(b), a party must demonstrate that there is "a controlling question of law as to which there is substantial ground for difference of opinion" and that an immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004). Certification for immediate appeal of a nonfinal order under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances. *McFarlin*, 381 F.3d at 1256. Interlocutory appeals under § 1292(b) "were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* at 1259. Indeed, the Supreme Court has instructed that an appeal gives the higher court "a power of review, not one of intervention." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Section 1292(b) disallows appeals "from any decision which is tentative, informal or incomplete" or on any matter that "remains open, unfinished or inconclusive." *Id.*

In *McFarlin*, the Eleventh Circuit explained that a "controlling question of law" as contemplated by § 1292(b) is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *McFarlin*, 381 F.3d at 1258 (citing *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir.2000)). The court opined,

4

> The term 'question of law' does not mean the application of settled law to fact. It does not mean any question the decision of which requires rooting through the record in search of the facts or of genuine issues of fact. Instead, what the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals 'can decide quickly and cleanly without having to study the record.'

*Id.* (internal citations omitted) (citing *Ahrenholz*, 219 F.3d at 676–77). Accordingly, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* at 1259.

With regard to the requirement that there be a "substantial ground for difference of opinion" to warrant an interlocutory appeal, the Eleventh Circuit has held that a question of law as to which the appeals court is in "complete and unequivocal" agreement with the district court is not a proper one for § 1292(b) review. *Id.* (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). A "substantial ground for difference of opinion" may also exist where "the issue is difficult and of first impression, a difference of opinion as to the issue exists within the controlling circuit, or the circuits are split on the issue." *U.S., ex rel. Powell v. Am. InterContinental Univ., Inc.*, 756 F. Supp. 2d 1374, 1378–79 (N.D. Ga. 2010) (citing cases). "Neither the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion." *Id.* at 1379 (citing *In re Scientific-Atlanta, Inc. Sec. Litig.*, No. 1:01-cv-1950, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003)).

In determining whether an immediate appeal will "materially advance the ultimate termination of the litigation," the Court considers the extent to which additional time and expense may be saved by the appeal and whether resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.  *McFarlin*, 381 F.3d at 1259; *see Dimuccio v. D'Ambra,* 779 F. Supp. 1318, 1324 (M.D. Fla. 1991).

### III. Discussion

In its § 1292(b) motion, the Government seeks to certify the following question for appeal:

> Whether 26 U.S.C. § 6103 prohibits publication by the government of taxpayer information that has already been lawfully and publicly disclosed by the government in a judicial proceeding pertaining to tax administration?

(U.S. Mot. to Certify, Doc. 317-1 at 2.)   To determine whether the Government has satisfied the requirements to certify this question for an interlocutory appeal, the Court will begin by addressing whether the Government has raised a controlling question of law that presents a substantial ground for difference of opinion.  Next, the Court will consider whether an immediate appeal would materially advance the litigation.

### A. Whether the Question Presented Is a Controlling Question of Law that Presents a Substantial Ground for Difference of Opinion

The Government argues that how to properly interpret § 6103 is a controlling question of law, and that a substantial ground for different opinion

exists as to the correct interpretation because it is a difficult issue of first impression in this Circuit and other Circuits that have addressed the issue are split. (U.S. Mot. to Certify, Doc. 317-1 at 10, 12.)  Clark does not dispute that how to properly interpret § 6103 is a controlling question of law, but he argues that "the lack of controlling authority, standing alone, cannot satisfy the substantial ground element."  (Def.'s Opp'n to Mot. to Certify, Doc. 320 at 8).  In response, the Government contends that to determine whether there is a substantial ground for difference of opinion on a controlling question of law "[t]he proper inquiry focuses on the existence of a Circuit split and the strengths of the arguments in support of the conflicting decisions," (U.S. Mot. to Certify Reply, Doc. 326 at 4) (citing *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013)).  The Court agrees with the Government's articulation of the relevant standard, but nevertheless finds that there is no substantial ground for difference of opinion on this issue even if the Government could establish that it is a controlling question of law.

In its Order, the Court extensively addressed "the strengths of the arguments in support of the conflicting decisions" and concluded that no blanket public records exception exists in § 6103.  The Court did not find the Ninth Circuit's reasoning in *Lampert* to be persuasive because, as Clark argues in his opposition, "no public records exemption exists in the statute," and nothing in the plain language of the statute suggests that Congress intended for such an exemption to exist.  (Def.'s Opp'n to Mot. to Certify, Doc. 320 at 12.)

7

As the Court observed in its Order, although § 6103 includes a number of express exceptions to the general rule against disclosure, (Order, Doc. 309 at 4), a blanket public records exception is not one of them.  Indeed, the Ninth Circuit itself recognized that its own interpretation of § 6103 is "not consistent with 'a strict, technical reading of the statute.'"  (*Id.* at 9 n.3) (quoting *Lampert*, 854 F.2d at 337–38).

Moreover, as the Fifth Circuit observed, "the fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  (*Id.* at 11) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1323 (5th Cir. 1997) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press.*, 489 U.S. 749, 770 (1989)) (cleaned up))).  Consistent with this principle, by enacting a broad "prophylactic ban" on disclosure of taxpayers' return information, "Congress was determining that a taxpayer has a statutorily created 'privacy' interest in *all* his tax return information, despite the fact that some of it is not entirely 'secret'." (*Id.*) (emphasis in original) (quoting *Johnson*, 120 F.3d at 1323).  This broad prophylactic ban is reflected in the plain language of the statute, which states that "[r]eturns and return information *shall be confidential* . . . except as authorized by this title," and that "*no officer or employee of the United States, . . . shall disclose* any return or return information obtained by him in any manner in connection with his service . . . ."  (*Id.* at 3) (emphasis added) (quoting 26 U.S.C. § 6103(a)).

Relying on the Merriam-Webster Dictionary, the Government argues that something that has already been made public cannot be "disclosed" for purposes of § 6103. (U.S. Mot. to Certify Reply, Doc. 326 at 7.) But Merriam-Webster's definition of the term "disclose" carries little weight for purposes of how to properly interpret § 6103 given that § 6103 itself defines what qualifies as a disclosure for purposes of the statute. As the Court noted in its Order, § 6103 broadly defines a "disclosure" as "the making known to any person in any manner whatever a return or return information." (Order, Doc. 309 at 4) (quoting 26 U.S.C. § 6103(b)(8)). Making a taxpayer's return information "known" to others by means of a press release, as allegedly occurred here, would surely qualify.

As an alternative, the Government argues that even if the immediate source test were to apply instead of the Ninth Circuit's blanket public records exception, a substantial ground for difference of opinion still exists as to the correct application of the immediate source test. More specifically, the Government contends that the Court adopted a "modified version" of the immediate source test by distinguishing between disclosure of information that came from a judicial opinion and disclosure of information that came from a complaint that was prepared by the Government's own lawyers. (U.S. Mot. to Certify, Doc. 317-1 at 14–15.) But the Seventh Circuit already acknowledged a potential distinction between these two factual scenarios in *Thomas v. United States*, 890 F.2d 18 (7th Cir. 1989), when it delineated between situations in which "the IRS 'having lawfully disclosed return information in one public place, wishes to disclose it in another

9

and more public place'" and those in which "the IRS simply 'wishe[d] to trumpet its [legal] victory to [the taxpayer's] neighbors.'" (Order, Doc. 309 at 12) (quoting *Thomas*, 890 F.2d at 21). This Court simply encountered a different factual scenario than the court in *Thomas*. Put differently, the Court's application of the immediate source test was not a "modified version" of the immediate source test; it was an application of the same test to a different set of facts. The Government may disagree with how the Court applied the immediate source test to "somewhat new facts," but that does not establish a substantial ground for difference of opinion warranting a 1292(b) certification.[3] *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 165 F. Supp. 3d 1330, 1339 (N.D. Ga. 2015); *see McFarlin*, 381 F.3d at 1262 (finding that disagreement about how to apply the law to a "particular factual scenario" was "not enough to upset the usual course of proceedings and permit an interlocutory appeal"); *see also Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007) (finding that disagreement about "the application of this law to the facts that is disputed here . . . does not meet the 28 U.S.C. § 1292(b) standard").

At bottom, "[n]either the mere lack of authority on the issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for

---

[3] It is doubtful that how to properly apply the immediate source test to this factual scenario would even qualify as a controlling question of law in the first instance because an interlocutory appeal of that issue would ultimately "turn[ ] on . . . whether the district court properly applied settled law to the facts or evidence of a particular case" rather than a pure question of law that an appellate court could "decide quickly and cleanly without having to study the record." *See McFarlin*, 381 F.3d at 1258–59.

difference of opinion." *United States ex rel. Powel*, 756 F. Supp. 2d at 1379 (citing *In re Sci.-Atlanta*, 2003 WL 25740734, at *1). Rather, "[t]he 'substantial ground for a difference of opinion' within the meaning of § 1292(b) must arise out of a *genuine doubt* as to the correct applicable legal standard that was relied on in the order." *DeBose v. Univ. of S. Fla. Bd. of Trs.*, 8:15-cv-2787, 2018 WL 8919876, at *6 (M.D. Fla. Mar. 23, 2018) (emphasis added) (quoting *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). The Government has failed to establish a genuine doubt as to the correct applicable legal standard here. Thus, it has failed to show the requisite substantial ground for difference of opinion to warrant an interlocutory appeal.

### B. Whether an Immediate Appeal Would Materially Advance the Litigation

Even if the Government could establish a substantial ground for difference of opinion on a controlling question of law, an interlocutory appeal still would not be warranted here because an appeal would not materially advance the litigation. In support of its argument that certifying an appeal would materially advance the litigation, the Government argues that a successful appeal would obviate the need for voluminous discovery and a lengthy trial. The Court is not persuaded.

For one thing, even if an interlocutory appeal could fully resolve Clark's Amended Counterclaim, it would not "substantially reduce the unresolved issues in this case" because there are still "numerous claims and other defendants who would be unaffected by a favorable ruling on these issues." *German by German v.*

*Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995). On top of that, a successful appeal by the Government may not even fully resolve Clark's Amended Counterclaim. As Clark argues in his opposition, "there is an issue of fact as to whether some of the disclosures alleged in the amended counterclaim extended beyond the publicly disclosed information."[4] (Def.'s Opp'n to Mot. to Certify, Doc. 320 at 14.) And if it turns out that the Government disclosed some of Clark's tax return information that had not previously been made public, Clark's Amended Counterclaim could potentially move forward regardless of whether the Eleventh Circuit decided to recognize a public records exception.

The Eleventh Circuit has also cautioned that the "proper division of labor" between the district courts and the appellate courts is threatened by expansive applications of § 1292(b), and that permitting piecemeal appeals by means of § 1292(b) certification is "bad policy." *McFarlin*, 381 F.3d at 1259. Authorizing a piecemeal appeal in this case would only further complicate already complex, protracted litigation, which has been pending for nearly three years and gone through multiple rounds of briefing on different claims against different defendants. And at this stage an interlocutory appeal could resolve only a small fraction of the issues in the case, at most. Under the circumstances, a detour to the Eleventh Circuit would more likely delay rather than advance the resolution of the

---

[4] In his opposition to the Government's motion to dismiss, Clark asserted that "several statements that appear in the DOJ Press Release do not appear in the Complaint." (Doc. 218 at 18.) Even if it turns out that all of the Government's statements had previously been made public, or that the statements that had not been made public did not disclose Clark's return information, those determinations will be inherently fact intensive.

case. *See Consumer Fin. Prot. Bureau*, 165 F. Supp. 3d at 1339. Accordingly, the Court finds that certifying a § 1292(b) appeal would not materially advance the litigation.

## IV. Conclusion

For the reasons stated above, the Government's Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) [Doc. 317] is **DENIED**. The Government's Motion to Stay Counterclaim [Doc. 318] is **DENIED** as moot.

**IT IS SO ORDERED** this 22nd day of October, 2021.

_____
**AMY TOTENBERG
UNITED STATES DISTRICT JUDGE**