IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| -v- | ) | Case No. 1:18-cv-05774-AT |
| | ) | |
| NANCY ZAK, | ) | |
| CLAUD CLARK III, | ) | |
| ECOVEST CAPITAL, INC., | ) | |
| ALAN N. SOLON, | ) | |
| ROBERT M. MCCULLOUGH, | ) | |
| RALPH R. TEAL, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE ECOVEST PARTIES'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD ........................................................................................ 2

LAW AND ARGUMENT ................................................................................. 3

I.    Disgorgement is not an available remedy in this case .................................. 3

    A.    Disgorgement is inconsistent with the text of Section 7402(a). .......... 5

    B.    Disgorgement is inconsistent with the Code's existing tax enforcement scheme. ................................................................................ 9

    C.    The IRS's history of not seeking disgorgement under 26 U.S.C. § 7402(a) and the Supreme Court's recent decision in *AMG* confirm that disgorgement is not an available remedy in this case. ................................................................................................. 15

II.    Plaintiff's claims related to investment programs that pre-date 2014 are precluded by the statute of limitations. .................................................... 18

    A.    Title 28 of the U.S. Code sets a general five-year statute of limitations. ........................................................................................... 19

    B.    The five-year statute of limitations precludes claims here that accrued before December 18, 2013. .................................................... 22

III.    Plaintiff must satisfy its burden of proof with clear and convincing evidence. ....................................................................................................... 23

    A.    In the Eleventh Circuit, Plaintiff must satisfy its burden of proof in civil tax fraud cases with clear and convincing evidence. ............. 24

    B.    The statutes underlying Plaintiff's claims against the EcoVest Parties are tax fraud statutes. .............................................................. 25

        1.    Section 6701 is a fraud statute. .............................................. 26

        2.    Section 6700 is a fraud statute. .............................................. 28

3.      All of Plaintiff's 26 U.S.C. § 6700 claims must be proven
by clear and convincing evidence. ........................................... 37

C.     The burden of proof does not change because Plaintiff has
invoked remedies under 26 U.S.C. § 7402 ......................................... 39

CONCLUSION .................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Aetna Ins. Co. v. Paddock*,
　301 F.2d 807 (5th Cir. 1962) ...........................................................25

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
　416 F.3d 1242 (11th Cir. 2005) .......................................................38

*Am. Tel. and Tel. Co. v. Cent. Off. Tel., Inc.*,
　524 U.S. 214 (1998).........................................................................9

*AMG Cap. Mgmt. v. Fed. Trade Comm'n*,
　141 S. Ct. 1341 (2021)..............................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986)......................................................................2, 3

*Bailey v. Drexel Furniture Co.*,
　259 U.S. 20 (1922).........................................................................22

*Bryant v. Avado Brands, Inc.*,
　187 F.3d 1271 (11th Cir. 1999) ..................................................30, 31

*Capozzi v. United States*,
　980 F.2d 872 (2d Cir. 1992) ..........................................................27

*Carlson v. United States*,
　754 F.3d 1223 (11th Cir. 2014) ................................................*passim*

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)........................................................................3

*Circuit City Stores, Inc. v. Adams*,
　532 U.S. 105 (2001).........................................................................7

*Colorado v. New Mexico*,
　467 U.S. 310 (1984)......................................................................25

*Cruzan v. Dir., Mo. Dep't of Health*,
　497 U.S. 261 (1990).......................................................................25

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989) ........................................................................................ 10

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) .......................................................................................... 7

*Emanuel v. United States*,
705 F. Supp. 434 (N.D. Ill. 1989) .................................................................. 37

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................................................................ 13

*Fed. Energy Regul. Comm'n v. Silkman*,
359 F. Supp. 3d 66 (D. Me. 2019) .................................................................. 20

*Fed. Trade Comm'n v. Gem Merch. Corp.*,
87 F.3d 466 (11th Cir. 1996) .......................................................................... 18

*Gabelli v. Sec. & Exch. Comm'n*,
568 U.S. 442 (2013) ........................................................................................ 22

*Hargrove & Constanzo v. Commissioner*,
98 AFTR 2d 2006-7028 (E.D. Cal. 2006) ...................................................... 35

*Jemison v. Commissioner*,
45 F.2d 4 (5th Cir. 1930) ................................................................................ 24

*Kokesh v. Sec. & Exch. Comm'n*,
137 S. Ct. 1635 (2017) ............................................................................ *passim*

*Korecky v. Commissioner*,
781 F.2d 1566 (11th Cir. 1986) ...................................................................... 24

*Kraye v. United States*,
71 AFTR 2d 93-855 (D.N.M. 1992) ................................................................ 34

*Lacassagne v. Chapuis*,
144 U.S. 119 (1892) .......................................................................................... 7

*Lamb v. United States*,
977 F.2d 1296 (8th Cir. 1992) ............................................................. 27, 34, 37

*Liu v. Sec. & Exch. Comm'n*,
140 S. Ct. 1936 (2020)................................................................*passim*

*Loving v. Internal Revenue Serv.*,
742 F.3d 1013 (D.C. Cir. 2014).................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)........................................................................2, 3

*Meghrig v. KFC W., Inc.*,
516 U.S. 479 (1996)...........................................................................6

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993)...........................................................................6

*Mullikin v. United States*,
952 F.2d 920 (6th Cir. 1991) ....................................................27, 34

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012)..........................................................................21

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
499 U.S. 117 (1991)...........................................................................7

*Reiserer v. United States*,
479 F.3d 1160 (9th Cir. 2007) ........................................................36

*Roberts v. Sea-Land Servs., Inc.*,
566 U.S. 93 (2012)...........................................................................10

*Sage v. United States*,
908 F.2d 18 (5th Cir. 1990) ................................................33, 36, 37

*Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
204 U.S. 426 (1907)...........................................................................9

*U.S. Commodity Futures Trading Comm'n v. Gramalegui*,
No. 15-cv-02313-REB-GPG, 2018 WL 4610953 (D. Colo. Sept.
26, 2018) .........................................................................................21

*United States v. Barwick*,
No. 6:17-cv-35-Orl-18TBS, 2017 WL 5514257 (M.D. Fla. Oct. 13,
2017) ..........................................................................................16, 17

v

*United States v. Demesmin*,
No. 6:17-cv-36-Orl-31KRS, 2019 WL 343722 (M.D. Fla. Jan 10,
2019) ..................................................................................................16, 17

*United States v. Estate of Romani*,
523 U.S. 517 (1998)....................................................................................13

*United States v. Hempfling*,
96 AFTR 2d 2005-6578 (E.D. Cal. 2005) ............................................31, 35

*United States v. Islam*,
418 F.3d 1125 (10th Cir. 2005) .................................................................31

*United States v. Kahn*,
No. Civ.5:03CV436OC10GRJ, 2004 WL 2251798 (M.D. Fla.
Aug. 12, 2004) ...........................................................................................16

*United States v. Martin*,
No. CRIM A 1:06CR286 TCB, 2006 WL 2590888 (N.D. Ga. Sept.
7, 2006) .....................................................................................................24

*United States v. Mesadieu*,
180 F. Supp. 3d 1113 (M.D. Fla. 2016)............................................16, 17, 18

*United States v. Ross*,
991 F.2d 792 (4th Cir. 1993) .....................................................................31

*United States v. Scott*,
88 F. Supp. 3d 1278 (M.D. Fla. 2015).......................................................16

*United States v. Stinson*,
239 F. Supp. 3d 1299 (M.D. Fla. 2017)................................................16, 17

*Warth v. Seldin*,
422 U.S. 490 (1975).....................................................................................7

## Statutes

8 U.S.C. § 1325(c) .............................................................................................31

26 U.S.C. § 170.....................................................................................................1

26 U.S.C. § 170(a) ................................................................................................1

26 U.S.C. § 170(b)(1)(E) ..........................................................................1

26 U.S.C. § 170(f)(3)(B)(iii) ....................................................................1

26 U.S.C. § 170(h) ...................................................................................1

26 U.S.C. § 6694 ....................................................................................26

26 U.S.C. § 6695A .................................................................................26

26 U.S.C. § 6700 .............................................................................*passim*

26 U.S.C. § 6700(a) ...............................................................................11

26 U.S.C. § 6700(a)(2)(A) .....................................................................37

26 U.S.C. § 6700(a)(2)(B) .....................................................................37

26 U.S.C. § 6701 .............................................................................*passim*

26 U.S.C. § 6701(b)(1)...........................................................................12

26 U.S.C. § 7402 .............................................................................*passim*

26 U.S.C. § 7402(a) .......................................................................*passim*

26 U.S.C. § 7407 ....................................................................................26

28 U.S.C. § 2462 .............................................................................*passim*

31 U.S.C. § 330 .....................................................................................14

42 U.S.C. § 1320a–7a ............................................................................31

Internal Revenue Code of 1954, Pub. L. No. 83-591, 68A Stat. 1
(1954)..............................................................................................16

Revenue Act of 1918, Pub L. No. 65-254, § 250(b), 40 Stat. 1057
(1919).............................................................................................14

Revenue Act of 1918, Pub L. No. 65-254, § 253, 40 Stat. 1057
(1919)...........................................................................................14

Revenue Act of 1918, Pub L. No. 65-254, § 1318, 40 Stat. 1057
(1919)............................................................................................13

William M. (Mac) Thornberry National Defense Authorization Act
for Fiscal Year 2021, Pub. L. No. 116-283, § 6501(a) (2021) ...........................18

## Other Authorities

Fed. R. Civ. P. 56(a)....................................................................................................2

General Explanation of the Revenue Provisions of the Tax Equity and
Fiscal Responsibility Act of 1982, Joint Committee on Taxation,
JCS-38-82 (Dec. 31, 1982) ..................................................................36

H.R. Rep. No. 97-760 (1982) (Conf. Rep.) ...............................................................32

*Ne Exeat*, *Black's Law Dictionary* (10th ed. 2014) ................................................5

S. Rep. No. 96-1007 (1980) .........................................................................................1

S. Rep. No. 97-494 (1982) .........................................................................................36

Treas. Reg. § 1.61-1(a)...............................................................................................12

Treas. Reg. § 1.1001-1(a) ..........................................................................................12

United States' Opening Brief, *Lamb v. United States*, 1992 WL
1267651 (8th Cir. Mar. 30, 1992)..........................................................37

United States' Reply Brief, *Lamb v. United States,* 1992 WL
12676553 (8th Cir. May 15, 1992) .........................................................37

United States' Reply and Answering Brief, *Sage v. United States*,
1990 WL 10082055 (5th Cir. Jan. 29, 1990).........................................37

# INTRODUCTION

For over 40 years, Congress has asked taxpayers to donate property easements for conservation purposes, offering a tax deduction in exchange. *See* 26 U.S.C. § 170(a), (b)(1)(E), (f)(3)(B)(iii), (h).[1] By providing this deduction, Congress aimed to encourage taxpayers to set aside land for conservation. As the Senate Finance Committee has explained: "[T]he preservation of our country's natural resources and cultural heritage is important, and the committee recognizes that conservation easements now play an important role in preservation efforts." S. Rep. No. 96-1007, at 9 (1980).

To secure a deduction for donating a conservation easement, taxpayers must comply with the requirements in 26 U.S.C. § 170 and accompanying Treasury regulations. Taxpayers who participated in investments sponsored by the EcoVest Parties complied with these rules.[2] Indeed, the transactions at issue in this case occurred between 2010 and 2018, and to date the IRS has either allowed the associated deductions or continues to audit the transactions. Seemingly frustrated with its inability to deny the tax benefits Congress clearly authorized, Plaintiff instead seeks to punish the EcoVest Parties for having sponsored the real estate

---

[1] Except where noted, references to "section," "the Code," and "I.R.C.," are to the Internal Revenue Code of 1986, as amended, and the Treasury regulations thereunder.

[2] The "EcoVest Parties" are Defendants EcoVest Capital, Inc., Alan Solon, Ralph Teal, and Robert McCullough.

investment programs at issue in this case. Specifically, Plaintiff alleges that the EcoVest Parties' activities violated 26 U.S.C. §§ 6700 and 6701, which penalize fraudulent promoters of abusive tax shelters and those who fraudulently aid and abet understatements of tax liabilities. ECF No. 225, Am. Compl. ¶¶ 5, 36, 39, 57, 64, 68, 175, 247, 262, 263. As remedies, Plaintiff seeks the disgorgement of nine years' worth of the EcoVest Parties' gross receipts and an injunction preventing the EcoVest Parties from sponsoring such programs in the future. *See id.* ¶¶ 6–7, 257–270, 293–309.

Plaintiff's allegations in this case and its request for remedies are deeply flawed. Accordingly, the EcoVest Parties move for partial summary judgment on three issues. First, Plaintiff is not entitled to the disgorgement it seeks because the Code does not authorize this remedy. Second, even if the Code authorized disgorgement, the period of limitations for such relief has expired with respect to nineteen of the seventy-three investment programs at issue. Third, Plaintiff must meet its burden of proof in this case by satisfying the "clear and convincing evidence" standard because each of Plaintiff's claims is grounded in fraud.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the record taken as a whole could lead a

rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment bears the initial responsibility of "informing the district court of the basis for its motion" and identifying the parts of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the burden shifts to the non-movant to establish that a genuine dispute of material fact exists. *Matsushita*, 475 U.S. at 586–87.

## LAW AND ARGUMENT

The EcoVest Parties respectfully request that the Court grant their Motion for Partial Summary Judgment and issue an order finding that (1) disgorgement is not an available remedy in this case, (2) the statute of limitations bars Plaintiff's claims related to 19 of the 73 projects Plaintiff put at issue, and (3) Plaintiff must prove its claims by "clear and convincing evidence" in order to prevail.

## I. Disgorgement is not an available remedy in this case.

The Code contains over 170 monetary penalties that address conduct that ranges from mere negligence to civil tax fraud. These provisions are elaborate and place carefully constructed limits on the amount, timing, and scope of such penalties.

In this case, Plaintiff attempts an end-run around the Code's carefully crafted and robust enforcement scheme.  Plaintiff asks this Court to order the EcoVest Parties to disgorge nine years' worth of their gross receipts on account of their alleged conduct.  Nothing in the Code authorizes this remedy.  To be clear, some of the Code's enforcement provisions address the alleged conduct that forms the basis of Plaintiff's complaint.  But those provisions specifically authorize—and only authorize—smaller monetary penalties than what Plaintiff seeks here, demonstrating that the disgorgement sought by Plaintiff exceeds what the Code allows.

Plaintiff does not cite a single section of the Code that authorizes disgorgement—nor could it, since no section does.  Instead, Plaintiff bases its disgorgement claim on 26 U.S.C. § 7402(a), which authorizes courts to issue injunctions and "such other orders[,] . . . judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."  Plaintiff's reliance on this provision is misplaced.  Disgorgement is inconsistent with (a) the text of 26 U.S.C. § 7402(a), (b) the contextual structure of the Code, and (c) the IRS's historic practice.  Moreover, the Supreme Court recently confirmed, in a unanimous decision, that where Congress has established a robust statutory scheme through which an administrative agency can seek money damages for certain conduct, a statutory provision that authorizes federal courts to issue injunctions does not carry with it the authority to order disgorgement related to the same conduct.  *AMG Cap.*

*Mgmt. v. Fed. Trade Comm'n*, 141 S. Ct. 1341 (2021).  This Court should similarly

rule as a matter of law that disgorgement is not available in this case.

### A.    Disgorgement is inconsistent with the text of Section 7402(a).

The text of 26 U.S.C. § 7402(a) does not provide for disgorgement.   That

provision states:

> The district courts of the United States at the instance of
> the United States shall have such jurisdiction to make and
> issue in civil actions, writs and orders of injunction, and of
> ne exeat republica, orders appointing receivers, and such
> other orders and processes, and to render such judgments
> and decrees as may be necessary or appropriate for the
> enforcement of the internal revenue laws.  The remedies
> hereby provided are in addition to and not exclusive of any
> and all other remedies of the United States in such courts
> or otherwise to enforce such laws.

Section 7402(a) therefore lists three sets of remedies:  (i) explicit remedies ("writs

and orders of injunction, and of ne exeat republica, orders appointing receivers"),

(ii) remedies of the first residual clause ("and such other orders and processes"), and

(iii) remedies of the second residual clause ("such judgments and decrees").  None

of these clauses authorizes disgorgement.

***First***, 26 U.S.C. § 7402(a) does not explicitly authorize disgorgement.  Orders

for disgorgement are not "writs [or] orders of injunction," "writs of ne exeat

republica,"[3] or "orders appointing receivers."  Moreover, "a provision's grant of an

---

[3] A writ of ne exeat republica "order[s] the person to whom it is addressed not to
leave the jurisdiction of the court or the state."  *Ne Exeat*, *Black's Law Dictionary*
(10th ed. 2014).

'injunction' or other equitable powers does not automatically authorize a court to provide monetary relief." *AMG*, 141 S. Ct. at 1350.  Instead, a court must engage in a statute-specific analysis to determine whether a provision authorizing injunctive relief also authorizes other equitable remedies such as disgorgement.  *Id.*; *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 257 (1993) (holding that the scope of equitable relief authorized by a statutory provision "remains a question of interpretation in each case").  Particularly when a statute's enforcement provisions are "elaborate," a reference to certain forms of equitable relief (e.g., an injunction) does not authorize other types of equitable relief.  *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 487–88 (1996) ("[W]here Congress has provided elaborate enforcement provisions for remedying the violation of a federal statute . . . . it cannot be assumed that Congress intended to authorize by implication additional judicial remedies . . . .") (internal quotations omitted); *AMG*, 141 S. Ct. at 1350.  Because the Code's enforcement provisions are elaborate—among the most elaborate of any statutory enforcement scheme that exists—26 U.S.C. § 7402(a)'s provision of injunctive relief does not carry with it implicit authority for disgorgement.  *See id*.

**Second**, 26 U.S.C. § 7402(a)'s initial residual clause—which permits a court to issue "such other orders and processes"—does not authorize disgorgement.  Under the canon of *ejusdem generis* ("of the same kind"), when a general phrase follows a list of specifics, the general phrase should be read to include only items of the same

class of those listed.  *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001); *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991).  Additionally, when Congress enacted 26 U.S.C. § 7402(a), it made clear that the remedies in the section's first residual clause must be similar to the explicitly listed remedies, since that clause refers to "*such* other orders and processes" (emphasis added).  If Congress had intended to authorize remedies dissimilar to those that it expressly authorized, it would have—at a bare minimum—omitted the word "such" and simply referred to "other orders and processes."

Because disgorgement is not similar to the remedies expressly authorized by 26 U.S.C. § 7402(a), it cannot be read into the initial residual clause of that provision.  Specifically, 26 U.S.C. § 7402(a) expressly authorizes "writs and orders of injunction, and of ne exeat republica, [and] orders appointing receivers"—a list of *prospective* remedies, which require someone to perform or refrain from performing specific actions in the future.  *See AMG*, 141 S. Ct. at 1347 (an injunction "typically offers prospective relief against ongoing or future harm"); *Warth v. Seldin*, 422 U.S. 490, 515 (1975) (injunctions are a "form of prospective relief"); *see also Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965) (an injunction "looks to the future"); *Lacassagne v. Chapuis*, 144 U.S. 119, 124 (1892) (the "function of an injunction is to afford preventive relief").  By contrast, disgorgement is a *retrospective* remedy, which aims "to redress past harm."  *AMG*, 141 S. Ct. at 1347;

*Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) (observing that disgorgement "simply restores the status quo").[4]   Disgorgement is also a monetary remedy, whereas 26 U.S.C. § 7402(a)'s explicit remedies are performative, not financial, in nature.

**Third**, and for similar reasons, 26 U.S.C. § 7402(a)'s remaining residual clause—which permits "such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue law"—does not authorize disgorgement.  Because 26 U.S.C. § 7402(a)'s second residual clause authorizes a general class of remedies that follows a list of specifics, *ejusdem generis* applies here as well.  Moreover, like 26 U.S.C. § 7402(a)'s first residual clause, 26 U.S.C. § 7402(a)'s second residual clause refers to "*such* judgments and decrees."  Both of these features of 26 U.S.C. § 7402(a) demonstrate that its second residual clause encompasses only prospective, performative remedies like those for which the provision expressly provides, not the retrospective, monetary remedy of disgorgement.

---

[4] While it is true that disgorgement can help to deter future wrongdoing "insofar as it takes money out of the wrongdoer's hands," that does not, by itself, make it a form of prospective relief.  *Liu*, 140 S. Ct. at 1943.  Indeed, if one of the Government's purposes for seeking disgorgement is to deter future conduct, that is an additional reason why 26 U.S.C. § 7402(a) does not authorize disgorgement in this case: Section 7402(a) does not authorize punitive remedies, and if disgorgement in this case serves as a deterrent, it is punitive.  *See Kokesh v. Sec. & Exch. Comm'n*, 137 S. Ct. 1635, 1645 (2017) (holding that disgorgement "is a punitive, rather than a remedial sanction" when it "is intended not only to 'prevent the wrongdoer's unjust enrichment' but also 'to deter others' violations'") (citation omitted).

*Finally*, the savings clause of 26 U.S.C. § 7402(a) does not authorize disgorgement.   Under the savings clause, the remedies provided by 26 U.S.C. § 7402(a) "are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."   26 U.S.C. § 7402(a).   While savings clauses can preserve "pre-existing remedies given by *other* statutory provisions," they cannot "g[i]ve that remedy in the first place." *AMG*, 141 S. Ct. at 1351 (emphasis added).   Moreover, a savings clause cannot be read in a way that causes a statute to "destroy itself"—that is, in a way that contravenes other provisions of the broader statutory structure.   *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907); *accord Am. Tel. and Tel. Co. v. Cent. Off. Tel., Inc.*, 524 U.S. 214, 227–28 (1998).   Thus, 26 U.S.C. § 7402(a)'s savings clause merely protects the monetary remedies authorized elsewhere in the Code from being limited by 26 U.S.C. § 7402(a).   And of course, the "other remedies" to which the savings clause refers include the taxes, penalties, and interest the Government can seek—and with respect to these projects, is actively seeking— via the IRS audit process.   The savings clause does not turn 26 U.S.C. § 7402(a) into a blank check of authority to order money damages.

### B.    Disgorgement is inconsistent with the Code's existing tax enforcement scheme.

The contextual structure and history of the Code also demonstrates that 26 U.S.C. § 7402(a) does not authorize disgorgement.   *See Davis v. Mich. Dep't of*

*Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *accord Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 102 (2012). Section 7402(a) is just one piece of the Code's complex, holistic framework. Congress carefully crafted over 170 penalty provisions to ensure that the tax laws are followed. As discussed below, reading disgorgement into 26 U.S.C. § 7402(a) would contravene this framework. First, disgorgement would provide different monetary damages for the same conduct covered by the Code's penalty provisions. Second, disgorgement would subject the EcoVest Parties to cascading forms of redundant relief—both disgorgement and other monetary penalties. Lastly, the history of the Code demonstrates that, when Congress enacted 26 U.S.C. § 7402(a), it did not intend to render superfluous the Code's penalty provisions. Instead, 26 U.S.C. § 7402(a) performs the specific, limited role of enabling district courts to issue injunctions and other writs in order to "stop[] seemingly unfair practices from taking place while the [Government] determines their lawfulness." *AMG*, 141 S. Ct. at 1348.[5]

---

[5] Notably, Plaintiff has *not* assessed taxes related to the projects at issue in this case, demonstrating that the EcoVest Parties' alleged conduct has not resulted in unlawfully claimed tax deductions. Specifically:

- The IRS continues to audit and resolve at least 52 of the 73 partnerships at issue in this case. EcoVest Parties' Statement of Undisputed Material Facts ("SUMF") ¶ 89.

*(Continued on next page.)*

*First*, disgorgement is inconsistent with each of the penalty provisions that Plaintiff's complaint is premised upon.  Plaintiff seeks disgorgement in this case on the basis that the EcoVest Parties' conduct violates 26 U.S.C. §§ 6700 and 6701. Am. Compl. ¶¶ 5, 36, 39, 57, 64, 68, 175, 247, 262, 263.  Those provisions impose financial penalties for, respectively, promoting abusive tax shelters and for aiding and abetting the understatement of a tax liability.  If, as Plaintiff alleges, the EcoVest Parties' conduct violates 26 U.S.C. § 6700, the EcoVest Parties would, under that section, be subject to a minimum penalty of $1,000 and up to a maximum penalty of 50% of the gross income derived from promoting the allegedly abusive tax shelter. *See* 26 U.S.C. § 6700(a).  This is far less than the 100% of gross receipts Plaintiff seeks here.[6]  *See* Am. Compl. ¶¶ 7, 305–09.  And if, as Plaintiff alleges, the EcoVest

---

- For at least one partnership, the IRS resolved the tax issues by *allowing* 79% of the claimed deductions.  SUMF ¶ 90.
- For all remaining partnerships, the IRS has not assessed any taxes, penalties, or interest.  SUMF ¶¶ 91, 92.
- And, even if additional taxes are owed, Plaintiff is not aware of anything that would impede the assessment of those taxes, penalties, and interest for any of the partnerships with open statutes of limitations for assessment.  SUMF ¶ 93.

Simply put: Either taxes are not owed, or if they are, they will be collected through the ordinary audit and assessment processes the Government is pursuing in parallel to this litigation.   Disgorgement serves no remedial purpose under these circumstances.

[6] By seeking disgorgement of gross *receipts* (i.e., proceeds without a cost offset) Plaintiff also seeks a remedy greater than 26 U.S.C. § 6700's penalty computed based on gross *income* (i.e., receipts less costs, *see* Treas. Reg. § 1.61-1(a) ("Gross income includes income *realized* in any form . . . .") (emphasis added); Treas. Reg. § 1.1001-1(a) (providing that gain or loss realized is net of "cost or other basis")), demonstrating again how disgorgement as sought by Plaintiff imposes relief that far outstrips what Congress set forth in the Code. *(Continued on next page.)*

Parties' conduct violates 26 U.S.C. § 6701, the EcoVest Parties would be subject to a $1,000 penalty for each tax return reporting an understatement of tax liability. 26 U.S.C. § 6701(b)(1). This, too, is significantly less than 100% of the EcoVest Parties' gross receipts.[7]

**Second**, if 26 U.S.C. § 7402(a) authorized disgorgement, the EcoVest Parties would be subject to multiple layers of financial remedies. Specifically, nothing in 26 U.S.C. §§ 6700 and 6701 forecloses the IRS from enforcing these statutory penalties where Plaintiff has already secured disgorgement for the same conduct under 26 U.S.C. § 7402(a). In the aggregate, disgorgement plus statutory penalties would far exceed any benefits the EcoVest Parties derived from their allegedly unlawful conduct. Disgorgement of this sort is not necessary to make the Government whole given (a) the civil penalties for which the Code does provide and (b) the back taxes, penalties, and interest Plaintiff is ***actively seeking*** via the audit

---

Moreover, recent cases have made clear that disgorgement of gross receipts is an inappropriate remedy when it is based on the equitable powers of a court. *See Liu*, 140 S. Ct. at 1946 ("[D]eclining to deduct even legitimate expenses from the receipts of fraud . . . is in considerable tension with equity practices."); *cf. Kokesh v. Sec & Exch. Comm'n*, 137 S. Ct. 1635, 1644–45 (2020) ("[D]isgorgement sometimes is ordered without consideration of a defendant's expenses . . . [D]isgorgement in this context is a punitive, rather than a remedial, sanction . . . ."). Plaintiff has sought disgorgement of gross receipts, rather than net receipts. *See* Am. Compl. ¶¶ 7, 309. But even if Plaintiff were seeking disgorgement of net receipts, this would still exceed the limits established by 26 U.S.C. § 6700.

[7] In this case, there are, at most, approximately 6,000 to 7,000 tax returns at issue, for a maximum penalty of no more than approximately $7,000,000; far less than the amounts Plaintiff seeks from the defendants. *See* SUMF ¶¶ 94, 98 (citing Joint Stipulation); *see also id.* ¶¶ 95–97.

process.  It "is in considerable tension with equity practices" and is not available under statutory provisions, like 26 U.S.C. § 7402(a), that provide for equitable relief. *See Liu*, 140 S. Ct. at 1946.

**Finally**, the history of the Code further establishes that Congress did not provide for two "separate, parallel enforcement paths"—disgorgement under 26 U.S.C. § 7402(a) and statutory monetary penalties.  *Cf. AMG*, 141 S. Ct. at 1350. Congress enacted 26 U.S.C. §§ 6700 and 6701 *after* it had adopted the relief afforded by 26 U.S.C. § 7402(a).   But such penalties would be unnecessary if disgorgement was already available.   *See id.*; *see also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."); *United States v. Estate of Romani*, 523 U.S. 517, 518 (1998) ("On several occasions, this Court has concluded that a specific policy embodied in a later federal statute should control interpretation of the older federal priority statute.").

A predecessor to 26 U.S.C. § 7402(a) was first enacted in the Revenue Act of 1918.  *See* Revenue Act of 1918, Pub L. No. 65-254, § 1318, 40 Stat. 1057, 1148 (1919).  At that time, the Code contained only a handful of penalty provisions.  *See* Revenue Act of 1918, §§ 250(b), 253, 40 Stat. at 1083, 1085 (providing for only a 5% penalty for negligent underreporting, a 50% penalty for fraudulent

13

underreporting, a lump-sum penalty for failure to file, and a higher lump-sum penalty and/or imprisonment for willful failure to file).  Over the following century, Congress continuously revised and expanded the Code's penalty provisions even though the predecessor to 26 U.S.C. § 7402(a) was in effect.  If 26 U.S.C. § 7402(a) authorized disgorgement for a violation of the Code, then "all of Congress's statutory amendments would have been unnecessary.  [Federal courts], by virtue of [their] heretofore undiscovered carte blanche grant of authority. . . would already have had free rein to impose an array of penalties" on violators of the Code.  *Cf. Loving v. Internal Revenue Serv.*, 742 F.3d 1013, 1020 (D.C. Cir. 2014).[8]  This cannot be the right answer.  It cannot be the case that "Congress merely intended to enact a more onerous alternative" to disgorgement—penalties that limited the government's remedies relative to disgorgement—when it later enacted the full range of those penalties.  *See AMG*, 141 S. Ct. at 1351.

By contrast, interpreting 26 U.S.C. § 7402(a) to authorize injunctive but not monetary relief like disgorgement "produces a coherent enforcement scheme."  *Id.* at 1349.  Plaintiff may obtain monetary relief in the amounts determined by the Code's substantive penalty provisions.  Plaintiff may also obtain injunctions and such other writs and orders that prevent ongoing and future violations of the Code

---

[8] Though *Loving* concerned the statutory authority for the Department of Treasury to regulate tax preparers under 31 U.S.C. § 330, its points about statutory interpretation apply to whether Section 7402(a) authorizes disgorgement as well.

under 26 U.S.C. § 7402(a).  What the United States *cannot* do is use 26 U.S.C. § 7402(a) "as a substitute" to the Code's already-robust monetary relief provisions. *Id.*

### C. The IRS's history of not seeking disgorgement under 26 U.S.C. § 7402(a) and the Supreme Court's recent decision in *AMG* confirm that disgorgement is not an available remedy in this case.

The IRS's own administrative practice of not historically seeking disgorgement under 26 U.S.C. § 7402(a) also demonstrates how that provision does not authorize disgorgement.  An agency's interpretation of a statute can shed light on how that statute ought to be interpreted.  *See Loving*, 742 F.3d at 1021.  Though an agency is "free to change (or refine) its interpretation of a statute it administers," a sudden change in an agency's position—especially after a long history—can indicate that the agency's old interpretation was correct and its new one is mistaken. *Id*.  For over 80 years after the enactment of the predecessor to 26 U.S.C. § 7402(a), the IRS did not seek disgorgement under that provision.  The IRS did not take the position that 26 U.S.C. § 7402(a) authorized disgorgement "for a reason:  It is incorrect." *Cf. Loving*, 742 F.3d at 1021.

It was not until 2004 that the United States first sought disgorgement under 26 U.S.C. § 7402(a), 50 years after that section was enacted in its *current* form.  *See United States v. Kahn*, No. Civ.5:03CV436OC10GRJ, 2004 WL 2251798, at *5 (M.D. Fla. Aug. 12, 2004) (granting disgorgement under section 7402(a)); *see also*

The Internal Revenue Code of 1954, Pub. L. No. 83-591, 68A Stat. 1, 873 (1954) (enacting 26 U.S.C. § 7402(a) in its current form).  In *United States v. Kahn*, the Middle District of Florida granted the United States' requests for disgorgement without fully analyzing whether 26 U.S.C. § 7402(a) provided the requisite authority.  Similar cursory decisions followed.  *See, e.g.*, *United States v. Demesmin*, No. 6:17-cv-36-Orl-31KRS, 2019 WL 343722 (M.D. Fla. Jan. 10, 2019), at *13 (summarily concluding that 26 U.S.C. § 7402(a) authorizes disgorgement); *United States v. Barwick*, No. 6:17-cv-35-Orl-18TBS, 2017 WL 5514257, at *4 (M.D. Fla. Oct. 13, 2017) (same); *United States v. Stinson*, 239 F. Supp. 3d 1299, 1326 (M.D. Fla. 2017) (same); *United States v. Mesadieu*, 180 F. Supp. 3d 1113, 1118–19 (M.D. Fla. 2016) (same); *United States v. Scott*, 88 F. Supp. 3d 1278, 1282 (M.D. Fla. 2015) (same).

But these limited cases are neither controlling nor persuasive.  None of the prior grants of disgorgement closely analyzed the text of 26 U.S.C. § 7402(a), the place of 26 U.S.C. § 7402(a) in the Code's statutory scheme, or the IRS's history of interpreting 26 U.S.C. § 7402(a).  Most importantly, these cases were decided *before* the Supreme Court's recent decision in *AMG*.[9]

---

[9] *AMG* continues a recent line of cases in which the Supreme Court has looked skeptically at disgorgement under federal statutes that do not explicitly authorize that remedy.  *See Liu*, 140 S. Ct. at 1946 (noting that disgorgement imposed under federal securities law can be "in considerable tension with equity practices"); *Kokesh*, 137 S. Ct. 1635 (applying the five-year statute of limitations to disgorgement imposed under federal securities law).

In *AMG*, the Court unanimously rejected the rationales relied upon by the Middle District of Florida to grant disgorgement.  Specifically, the Middle District of Florida granted disgorgement under 26 U.S.C. § 7402(a) on two grounds.  The first was public policy.  *See Stinson*, 239 F. Supp. 3d at 1326 ("Disgorgement . . . reminds the defendant of its legal obligations, serves to deter future violations of the Internal Revenue Code, and promotes successful administration of the tax laws."); *Demesmin*, 2019 WL 343722, at *13 (same); *Barwick*, 2017 WL 5514257, at *4 (same); *Mesadieu*, 180 F. Supp. 3d at 1119 (same).  In *AMG*, however, the Supreme Court held that public policy alone is not a valid justification to read disgorgement into a statute that does not explicitly provide for it.  *AMG*, 141 S. Ct. at 1351–52.  Under the Code, as under section 13(b) of the Federal Trade Commission Act ("FTCA") at issue in *AMG*, the United States has other pathways available "to obtain restitution on behalf of [the public]."  *Id.* at 1352.  And if those procedures are "too cumbersome or otherwise inadequate," the IRS is "free to ask Congress to grant it remedial authority."  *Id.*[10]

The Middle District of Florida's second reason for reading disgorgement into 26 U.S.C. § 7402(a) was an analogy to the Eleventh Circuit's pre-*AMG*

---

[10] Indeed, in response to *Liu* and *Kokesh*, Congress amended the Securities Act to explicitly authorize disgorgement.  *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501(a) (2021) (amending the Securities Act to grant "jurisdiction to require disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment as a result of such violation . . .").

interpretation of section 13(b) of the FTCA. *Mesadieu*, 180 F. Supp. 3d at 1119; *see generally Fed. Trade Comm'n v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996) (providing the Eleventh Circuit's pre-*AMG* interpretation of section 13(b) of the FTCA). Now that the Supreme Court has specifically rejected disgorgement under section 13(b) of the FTCA, this analogy weighs *against* the availability of disgorgement under 26 U.S.C. § 7402(a) of the Code. *See AMG*, 141 S. Ct. at 1344.

In sum, the Supreme Court's decision in *AMG* affirms what was already clear from a close examination of the text, context, and administrative interpretation of 26 U.S.C. § 7402(a). Because Congress did not expressly authorize disgorgement in 26 U.S.C. § 7402(a) and instead established a robust statutory scheme through which Plaintiff can seek monetary damages, 26 U.S.C. § 7402(a) does not authorize disgorgement. Accordingly, the EcoVest Parties are entitled to summary judgment on Count V for disgorgement.

## II.    Plaintiff's claims related to investment programs that pre-date 2014 are precluded by the statute of limitations.

In addition to the fact that disgorgement is not available as a remedy in this action, the statute of limitations, as a matter of law, bars Plaintiff's disgorgement claims with respect to all projects that pre-date 2014, with one exception.[11]

---

[11] The one exception is Greenway Holdings Acquisitions, LLC, which was released to investors on December 24, 2013, and is therefore within the five-year statute of limitations because Plaintiff filed its Complaint on December 18, 2018. SUMF ¶ 87; ECF No. 1.

### A.    Title 28 of the U.S. Code sets a general five-year statute of limitations.

As a threshold matter, 28 U.S.C. § 2462 imposes a general five-year period of limitations with respect to any federal "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise."  In 2017, a unanimous Supreme Court ruled in *Kokesh* that the five-year statute of limitations under 28 U.S.C. § 2462 applies to claims for disgorgement imposed as a sanction for violating federal securities laws.  *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017).

There, the Court had to determine whether disgorgement fit within the definition of a penalty in 28 U.S.C. § 2462.  It answered affirmatively, holding that "[d]isgorgement in the securities-enforcement context is a 'penalty' within the meaning of 28 U.S.C. § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues."  *Id.*  The Court explained that disgorgement in SEC cases "bears all the hallmarks of a penalty" because:  (1) it seeks to deter infractions of "public laws," described as "violation[s] . . . committed against the United States rather than an aggrieved individual"; (2) it is imposed for "punitive purposes" to "deter violations of . . . laws by depriving violators of their ill-gotten gains," and (3) the recovered funds ordinarily are returned to the Treasury and often are not compensatory.  *Id.* at 1643–44 (internal quotations and citations omitted).

The important purposes served by statutes of limitation provided the foundation for the Court's ruling: "Statutes of limitations set a fixed date when exposure to the specified Government enforcement efforts end. Such limits are vital to the welfare of society and rest on the principle that even wrongdoers are entitled to assume that their sins may be forgotten." *Id.* at 1641–42 (internal punctuation and citations omitted).

The vital purposes served by statutes of limitation apply equally to tax cases. Even if disgorgement were available in tax cases—which it is not—it would serve a purpose of deterring infractions of public laws, would be imposed for punitive purposes, and the recovered funds would be returned to the Treasury in a non-compensatory manner, just like in SEC matters. *Cf. Fed. Energy Regul. Comm'n v. Silkman*, 359 F. Supp. 3d 66, 116 (D. Me. 2019), *leave to appeal denied*, No. 1:16-CV-00205-JAW, 2019 WL 2619520 (D. Me. June 26, 2019) (concluding that *Kokesh*'s holding with regard to SEC penalties applied with "equal force" to penalties, including disgorgement, assessed by the Federal Energy Regulatory Commission, and therefore FERC penalties were subject to 28 U.S.C. § 2462); *U.S. Commodity Futures Trading Comm'n v. Gramalegui*, No. 15-cv-02313-REB-GPG, 2018 WL 4610953, at *30 (D. Colo. Sept. 26, 2018) (applying *Kokesh* to restitution under the Commodity Exchange Act).

Indeed, Plaintiff alleges that disgorgement is necessary here because Defendants violated the federal tax laws, and in so doing supposedly received "ill-gotten gains," which should be "disgorge[d] to the United States . . . ." Am. Compl. ¶¶ 307–09; *see also* ECF No. 47, U.S.' Opp. to Def. Zak's Mot. to Dismiss, at 26 (Apr. 5, 2019) ("[D]isgorgement under § 7402 can be viewed as serving compensatory purposes to the United States Treasury while also serving deterrent purposes."). And the day after Plaintiff filed its Complaint, it underscored its motivations of deterrence and punishment by issuing a press release about this case that quoted the Commissioner of Internal Revenue as stating, "we will take every enforcement option available, including civil and criminal penalties." EcoVest Parties' Statement of Undisputed Material Facts ("SUMF") ¶ 99. Accordingly, under the reasoning of *Kokesh*, the disgorgement sought by Plaintiff in this case constitutes a penalty for purposes of 28 U.S.C. § 2462. *See also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 565–66 (2012) (describing the Court's "functional approach" to determining whether a law constitutes a penalty, including whether the law imposes a "heavy burden," and whether it applies only to those who acted knowingly, because "Congress often wishes to punish only those who intentionally break the law." (citing *Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 36–37 (1922))). Therefore, even if disgorgement were available, the five-year statute of limitations under 28 U.S.C. § 2462 would apply.

**B.    The five-year statute of limitations precludes claims here that accrued before December 18, 2013.**

Plaintiff's claims that relate to pre-2014 investment programs accrued more than five years before Plaintiff filed its Complaint on December 18, 2018.  *See* ECF No. 1.  "[I]n a Government enforcement action for civil penalties" a fraud claim "first accrue[s]" within the meaning of 28 U.S.C. § 2462 when the allegedly fraudulent conduct occurs.  *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 448–52 (2013).  The Amended Complaint contains claims regarding allegedly fraudulent statements communicated to investors in connection with 20 projects that occurred prior to 2014.  *See* Am. Compl. ¶ 32 (listing ten CRI projects from 2010 to 2012); *id.* ¶ 46 (listing five EcoVest consulting projects from 2012); *id.* ¶ 58 (detailing EcoVest projects, five of which took place in 2013).  The Amended Complaint seeks relief based on allegedly "false and/or fraudulent statements regarding the securing of a tax benefit by reason of participating in the conservation easement syndication scheme and the amount of that tax benefit in the form of a conservation easement deduction."  Am. Compl. ¶ 264.

Nineteen of those projects were provided (i.e., released) to investors more than five years before the filing of the Complaint, and the date of their release was the point at which investors received the allegedly false statements.  *See* SUMF ¶¶ 25, 28, 31, 34, 37, 40, 43, 46, 49, 51, 57, 60, 63, 66, 69, 75, 78, 81, 84; *see also* SUMF

¶¶ 22, 54, 72.[12]   Therefore, the fraud claims related to those projects accrued over five years before Plaintiff filed its Complaint.   Because the five-year statute of limitations under 28 U.S.C. § 2462 applies to Plaintiff's claims for disgorgement, the EcoVest Parties are entitled to summary judgment on Count V—Plaintiff's claim for disgorgement—as to those 19 projects from before 2014.

### III.   Plaintiff must satisfy its burden of proof with clear and convincing evidence.

As the party alleging fraud in this case, Plaintiff bears the burden of proof by clear and convincing evidence.   The two substantive causes of action that Plaintiff has brought against the EcoVest Parties—26 U.S.C. §§ 6700 and 6701—are tax fraud statutes, and therefore under binding precedent in this Circuit the clear and convincing evidence standard applies.   Plaintiff's invocation of 26 U.S.C. § 7402 as providing, in part, for the remedies it seeks (i.e., an injunction and disgorgement) does not alter Plaintiff's evidentiary burden.   Therefore, the EcoVest Parties are entitled to a judgment that Plaintiff must satisfy its burden of proof on each of its claims by clear and convincing evidence.

---

[12] As noted above, Greenway Holdings Acquisitions, LLC is a tax year 2013 project which was released to investors on December 24, 2013, and is therefore within the five-year statute of limitations.   SUMF ¶ 87.

A.   **In the Eleventh Circuit, Plaintiff must satisfy its burden of proof in civil tax fraud cases with clear and convincing evidence.**

"Under the Eleventh Circuit's longstanding precedent, the Government must prove fraud in civil tax cases by clear and convincing evidence." *Carlson v. United States*, 754 F.3d 1223, 1226 (11th Cir. 2014) (listing cases).   The clear and convincing standard originates from Fifth Circuit precedent dating from at least the 1930s, and has been consistently applied in the Eleventh Circuit since its split from the Fifth Circuit.   *See Jemison v. Commissioner*, 45 F.2d 4, 5–6 (5th Cir. 1930) ("Fraud is not to be presumed, but must be determined from clear and convincing evidence, considering all the facts and circumstances of the case."); *see also, e.g.*, *Korecky v. Commissioner*, 781 F.2d 1566, 1568 (11th Cir. 1986) ("The IRS bears the burden of proving fraud, which must be established by clear and convincing evidence.").

The clear and convincing standard is a substantially higher burden than preponderance of the evidence. As the Northern District of Georgia has stated: "Clear and convincing evidence is evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *United States v. Martin*, No. CRIM A 1:06CR286 TCB, 2006 WL 2590888, at *1 n.2 (N.D. Ga. Sept. 7, 2006) (quoting *Cruzan v. Dir., Mo.*

*Dep't of Health*, 497 U.S. 261, 286 n.11 (1990) (alteration in original)); *see also Aetna Ins. Co. v. Paddock*, 301 F.2d 807, 811 (5th Cir. 1962) ("[B]y that term [clear and convincing evidence] is meant the witnesses to a fact must be found to be credible and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order and that the testimony be clear, direct and weighty and convincing, so as to enable you to come to a clear conviction without hesitancy of the truth of the precise facts in issue." (internal quotations omitted)).  Thus, when the clear and convincing standard applies, the burden is met "only if [the party that bears the burden] could place in the ultimate factfinder an abiding conviction that the truth of its factual allegations [is] 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting C. McCormick, Law of Evidence § 320, at 679 (1954)).

**B.**     **The statutes underlying Plaintiff's claims against the EcoVest Parties are tax fraud statutes.**

As the Court has previously recognized, this is a fraud case.  *See* Order of Dec. 10, 2019, ECF No. 199, 9 ("Zak is correct that the complaint alleges over 90 instances of alleged fraud"), 11 ("The Government's complaint satisfies the heightened pleading standard of Rule 9(b) as it applies to these allegations of fraud."); SUMF ¶ 5.  In particular, Plaintiff invokes 26 U.S.C. §§ 6700 and 6701 as the statutes underlying its request for relief against the EcoVest Parties.  *See, e.g.*, Am. Comp. ¶¶ 6(m) (seeking to enjoin Defendants from "engaging in any activity

subject to penalty under 26 U.S.C. §§ 6694, 6695A, 6700, or 6701"), ¶ 302 ("If Defendants are not enjoined, they will likely continue to engage in conduct subject to penalty under 26 U.S.C. §§ 6700, 6701, 6695A, and 6694."); pp. 100–02 (asking the Court "with respect to Counts I through IV, and pursuant to 26 U.S.C. §§ 7402 7407, and 7408, enter permanent injunctions prohibiting Defendants from directly or indirectly . . . engaging in any activity subject to penalty under 26 U.S.C. §§ 6694, 6695A, 6700, or 6701.").[13]   Both 26 U.S.C. §§ 6700 and 6701 require the Government to prove fraud.   Therefore, under Eleventh Circuit precedent, the Government's burden of proof is clear and convincing evidence.  *See Carlson*, 754 F.3d 1223.

### 1.    Section 6701 is a fraud statute.

The Eleventh Circuit has unequivocally held that 26 U.S.C. § 6701 is a fraud statute.  *See id.*  Therefore, the Government's burden of proof is clear and convincing evidence when it raises a 26 U.S.C. § 6701 claim.

In *Carlson*, the Eleventh Circuit considered what burden of proof applied in the context of a 26 U.S.C. § 6701 case.  The Court first confirmed that under that Circuit's "longstanding precedent, the Government must prove fraud in civil tax cases by clear and convincing evidence."  *Id.* at 1226.  The Court then held that 26

---

[13] Notably, for the EcoVest Parties, Plaintiff does not claim that the other substantive statutes cited in the Amended Complaint (i.e., 26 U.S.C. §§ 6694, 6695A, 7407) apply to the EcoVest Parties.  The Amended Complaint instead directs these provisions to the conduct of the Zak and Clark Defendants.

U.S.C. § 6701 is a fraud statute based on its scienter requirement.  In particular, the statute's requirement that the person must have known his or her actions would result in an understatement of tax meant that the activities covered by 26 U.S.C. § 6701 constitute a "classic case of fraudulent conduct."  *Id.* at 1227.

As support for its holding, the Court noted that other circuit courts held that section authorizes the assessment of a fraud penalty and therefore no period of limitations applies to such assessment.[14]  *See id.* at 1228 ("And, in other cases considering whether I.R.C. § 6701 requires proof of fraud . . . , the Government contends—and courts agree—that I.R.C. § 6701 does require proof of fraud." (citing *Mullikin v. United States*, 952 F.2d 920, 929 (6th Cir. 1991); *Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir. 1992))).  Further, the fact that 26 U.S.C. § 6701 does not explicitly use the word "fraud" is irrelevant:  The "lack of the word 'fraud' is immaterial if the conduct the government must prove meets the definition of fraud," which the Court held it does based on the statute's scienter requirement.  *Id.*  Plaintiff

---

[14] Courts have held that the general five-year statute of limitations in 28 U.S.C. § 2462 does not apply to 26 U.S.C. §§ 6700 and 6701.  28 U.S.C. § 2462 applies to enforcement actions, suits, and proceedings, whereas 26 U.S.C. §§ 6700 and 6701 authorize assessment, which is "merely the determination of the amount of the penalty and the official recording of the liability."  *Capozzi v. United States*, 980 F.2d 872, 874 (2d Cir. 1992).  Unlike an assessment under 26 U.S.C. §§ 6700 or 6701, Plaintiff's disgorgement claim in this case is an enforcement action and is therefore subject to the period of limitations set forth in 28 U.S.C. § 2462.  *See supra* Part II.

therefore must prove its 26 U.S.C. § 6701 allegations by clear and convincing evidence.

### 2.  Section 6700 is a fraud statute.

Section 6700 is also a fraud statute, and therefore it also requires Plaintiff to prove its case by clear and convincing evidence.  In particular, the statute's plain language, absence of a period of limitations to assess the penalty, manner in which it must be pleaded, history and purpose, and the Government's own historic position all establish that a 26 U.S.C. § 6700 violation requires a finding of fraud.

### a)  The plain language of Section 6700 demonstrates it is a fraud statute.

The Court need look no further than the statutory text to conclude that 26 U.S.C. § 6700 is a fraud statute.  By its own terms, the statute penalizes fraud. Section 6700 imposes a penalty for certain statements that "the person knows or has reason to know [are] *false or fraudulent* as to any material matter." 26 U.S.C. § 6700(2)(A) (emphasis added).  This is clearer than 26 U.S.C. § 6701, which does not use the words "fraud" or "fraudulent," but which the Eleventh Circuit nonetheless has held is a fraud statute for purposes of applying the "clear and convincing" standard.

Tracking the language of 26 U.S.C. § 6700, the Amended Complaint explicitly alleges that the EcoVest Parties made or caused others to make "false or fraudulent" statements. *See* Am. Compl. ¶¶ 176, 211, 218, 223, 243, 264, 265.  Thus,

the Amended Complaint itself recognizes that 26 U.S.C. § 6700 is a fraud statute and invokes the fraud language of the statute as a basis for its claims. Additionally, throughout the course of this litigation, Plaintiff has continued to invoke 26 U.S.C. § 6700 and allege that the EcoVest Parties made statements that they knew were false or fraudulent.[15]

In addition to explicitly using the words "false or fraudulent," 26 U.S.C. § 6700 has a scienter requirement, which is the hallmark of fraud statutes and is the reason why the Eleventh Circuit held that 26 U.S.C. § 6701 is a fraud statute. *See Carlson*, 754 F.3d at 1227 (explaining that 26 U.S.C. § 6701's scienter requirement constituted "a classic case of fraudulent conduct"). Specifically, 26 U.S.C. § 6700 requires that a person "knows or has reason to know" that a statement is false or fraudulent.

---

[15] *See, e.g.*, ECF No. 290, Apr. 30, 2021 Conference before the Court, Tr. 25:15–17 (Ms. Hines' stating: "We're looking at whether defendant when they organized, promoted, and sold these transactions made false or fraudulent statements about the tax benefits."); Declaration of Sean Akins ("Akins Decl."), Ex. 4, Plaintiff's July 19, 2021 Letter to Special Master, at 3 ("[C]onduct after the arbitrary cutoff date that the EcoVest Defendants imposed is probative of their state of mind."); Akins Decl., Ex. 5, Plaintiff's July 26, 2021 Letter to Special Master, at 11 ("How could a statement made by an IRS examiner in 2019 somehow have impacted the EcoVest Parties' state of mind when they organized and sold the Garden Lakes transaction in 2014?"); Akins Decl., Ex. 3, United States' Objs. and Resps. to EcoVest Capital Inc.'s Second Set of Interrogs. to Pl. United States, at 12 (Sept. 2, 2021) ("In each of the transactions identified above, the donor (managed by the EcoVest Parties) had knowledge of facts that would cause a reasonable person to expect the appraiser to falsely overstate the value."), at 43–44 ("EcoVest and its personnel, including Alan Solon, Robert McCullough, and Ralph Teal, knew or should have known this was a false statement because customers, CPAs, financial advisors and attorneys routinely warned EcoVest that the appraised conservation amounts were potentially overstated.").

The "knows or has reason to know" standard is well-accepted as the scienter required to prove fraud. Although Plaintiff has previously argued in this case (and can be expected to argue in its response) that 26 U.S.C. § 6700 is not a fraud statute because actual knowledge is not required, a statute need not be limited to penalizing only those with actual knowledge for it to be classified as a fraud statute. Rather, the presence of either actual knowledge *or* constructive knowledge is broadly accepted as fraudulent scienter.

For example, the Eleventh Circuit has held that an allegation of "severe recklessness" is sufficient to state a claim for securities fraud, and an allegation of actual knowledge is not required. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1283 (11th Cir. 1999). Severe recklessness encompasses conduct "either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* at 1282 n.18 (citation omitted). In particular, the court explained that before the enactment of a statute codifying a scienter requirement for securities fraud, the "'required state of mind' included some form of reckless behavior." *Id.* at 1284. The *Bryant* court held that, in the absence of explicit statutory language, the codification of the securities fraud scienter requirement did not change the long-standing precedent that severe recklessness, rather than actual knowledge, was sufficient: "If Congress desired to require some other state of mind, that is, other than the reckless state of mind then uniformly held sufficient by the federal courts,

30

we believe that Congress would have done so in explicit terms." *Id.*  That is, the base case in fraud statutes encompasses severe recklessness (i.e., knowledge or a reason to know) and, absent Congressional action to limit scienter to actual knowledge, a reason to know also constitutes fraudulent scienter.

The "knows or has reason to know" standard also appears in various federal fraud statutes, and is an element in common law fraud.  For example, it is the scienter required to find Medicare fraud, marriage fraud, and mail fraud.  *See* 42 U.S.C. § 1320a–7a (imposing liability for Medicare fraud when a person files a Medicare claim and knew or should have known the claim was false or fraudulent); *United States v. Islam*, 418 F.3d 1125, 1128 (10th Cir. 2005) ("To convict an alien of marriage fraud [under 8 U.S.C. § 1325(c)], the Government must prove . . . the alien knew or had reason to know of the immigration laws."); *United States v. Ross*, 991 F.2d 792 (4th Cir. 1993) (evidence that defendant "knew or had reason to know" the U.S. mail would be used sufficient to constitute mail fraud).

Therefore, the scienter required by 26 U.S.C. § 6700—actual knowledge or a reason to know—directly tracks the Eleventh Circuit's standard for a fraudulent mindset, as well as the standard under numerous other fraud statutes.  *See also United States v. Hempfling*, 96 AFTR 2d 2005-6578 (E.D. Cal. 2005) (applying the heightened pleading requirements for fraud because "[t]hree elements of a § 6700

claim, read together, are the same as two elements of a fraud claim, i.e., misrepresentation of a material fact and scienter.").

The legislative history underlying 26 U.S.C. § 6700 explains the purpose behind the "reason to know" standard, further demonstrating that that section requires fraudulent scienter. Specifically, the "reason to know" standard allows "the Secretary [to] rely on objective evidence of the knowledge of a promoter or salesperson (for example) to prove that he deliberately furnished a false or fraudulent statement." H.R. Rep. No. 97-760, at 572 (1982) (Conf. Rep.). As an example, the conference report states that "a salesman would ordinarily be deemed to have knowledge of the facts revealed in the sales materials which are furnished to him by the promoter." *Id.*

Thus, the standard clarifies the type of evidence that may be used to prove a person's knowledge. It does not "impute knowledge to a person beyond the level of comprehension required by his role in the transaction" or "carry with it a duty of inquiry concerning the transaction." *Id.* This explanation of the statutory language confirms that the scienter requirement of 26 U.S.C. § 6700 is directed to the type of evidence permissible to prove a person's knowledge, and was not intended to prevent 26 U.S.C. § 6700's classification as a fraud statute.

> **b)**     ***Section 6700 claims are not barred by a period of limitations, a hallmark of statutes authorizing the assessment of fraud penalties.***

Multiple federal courts have considered whether the Government must bring a 26 U.S.C. § 6700 claim within a prescribed timeframe.  These courts have held that, because 26 U.S.C. § 6700 is an "anti-fraud" assessment statute, it is not subject to a period of limitations.

The Fifth Circuit, in considering whether the period of limitations on assessment provided by 26 U.S.C. § 6501(a) applies to 26 U.S.C. § 6700 claims, held:  "Just as with other provisions of the Code enacted to combat fraud no limitations period exists for assessment of a Section 6700 penalty."  *Sage v. United States*, 908 F.2d 18, 25 (5th Cir. 1990).  The *Sage* court based its holding in part on the policy underlying 26 U.S.C. § 6700, noting that "[t]he government's position, with which we entirely agree, is that . . . Section [6700]'s concentration on capturing transactional fraud whenever occurring removes it from the stolid tax-return dependent world of Section 6501(a)."  *Id.*

Analyzing *Sage* and other cases holding that 26 U.S.C. § 6700 is not subject to a statute of limitations on assessment, the Sixth Circuit has noted:  "The Courts arrived at this conclusion by noting the absence of an express limitations period and the fact that Sections 6700 and 6701 *are anti-fraud provisions* in which Congress

typically provides for unlimited periods of assessment." *Mullikin v. United States*, 952 F.2d 920, 928 (6th Cir. 1991) (emphasis added).

Although *Mullikin's* principal holding focused on 26 U.S.C. § 6701, it considered both 26 U.S.C. §§ 6700 and 6701 to be "anti-fraud provisions," and its holding has been held to apply equally to 26 U.S.C. § 6700. *See Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir. 1992) ("We conclude that the District Court erred in applying [a statute of limitations] to assessments made under §§ 6700 and 6701.  We are persuaded by our sister circuit's well-reasoned reversal in *Mullikin*, and we adopt its holding."); *Kraye v. United States*, 71 AFTR 2d 93-855 (D.N.M. 1992) ("This Court agrees with the analysis of the Sixth Circuit in *Mullikin v. United States*, 952 F.2d 920 (6th Cir. 1991) which held that no statute of limitations period is applicable to section 6701 penalties.  The reasoning used by the Sixth Circuit is equally applicable to section 6700 penalties.").

The Eleventh Circuit as well has found *Mullikin* persuasive when it determined that 26 U.S.C. § 6701 is a fraud statute. *See Carlson*, 754 F.3d at 1228 ("And, in other cases considering whether I.R.C. § 6701 requires proof of fraud . . . , the Government contends—and courts agree—that I.R.C. § 6701 does require proof of fraud." (citing *Mullikan* and *Lamb*)).  *Mullikin's* reasoning is equally applicable to 26 U.S.C. § 6700.

### c) *Section 6700 claims must be pleaded with particularity because they are grounded in fraud.*

Claims of fraudulent conduct are subject to a heightened pleading standard under the FRCP. *See* Fed. R. Civ. P. 9(b). This heightened pleading standard has been applied to 26 U.S.C. § 6700 allegations, including in this case.

In particular, former defendant in this case, Nancy Zak, filed a motion to dismiss the Government's complaint, in part on the basis that FRCP 9(b) was not satisfied. ECF No. 31, Mot. to Dismiss (Mar. 22, 2019). In its December 10, 2019 order, the Court explained that "Zak is correct that the complaint alleges over 90 instances of alleged fraud" and therefore the heightened pleading standard under FRCP 9(b) applied to Plaintiff's complaint. ECF No. 119, Dec. 10, 2019 Order, at 9, 11 ("The Government's complaint satisfies the heightened pleading standard of Rule 9(b) as it applies to these allegations of fraud."). Thus, the Court has already concluded that this is a fraud case, and so Plaintiff bears the burden of proving its allegations by clear and convincing evidence.[16]

---

[16] Other courts have reached similar conclusions. For example, at issue in *United States v. Hempfling* was whether the Government's 26 U.S.C. § 6700 claims alleged fraud and therefore had to be pleaded with particularity. 96 AFTR 2d 2005-6578 (E.D. Cal. 2005). The court held that 26 U.S.C. § 6700 claims were subject to Fed. R. Civ. P. 9(b)'s pleading standard for fraud allegations, and granted the defendant's motion to dismiss because the government failed to satisfy that standard. *See also Hargrove & Constanzo v. Commissioner*, 98 AFTR 2d 2006-7028 (E.D. Cal. 2006) (following *Hempfling*).

### d) The history behind and policy underlying 26 U.S.C. § 6700 demonstrate it is a fraud statute.

The legislative history of 26 U.S.C. § 6700 confirms that, consistent with its plain language, the statute is intended to target fraud.  S. Rep. No. 97-494, at 266 (1982) (addition of 26 U.S.C. § 6700 requires "the Internal Revenue Service [to] establish[] fraud"); *see also* General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Joint Committee on Taxation, JCS-38-82, at 210–11 (Dec. 31, 1982) (same).

Consistent with the underlying legislative history, courts that have considered the policy underlying 26 U.S.C. § 6700 have concluded that that section is intended to target fraud.  As the Ninth Circuit has explained, 26 U.S.C. §§ "6700 and 6701 serve the remedial goal of reimbursing the government for the costs in investigating tax fraud and for possible lost tax revenue." *Reiserer v. United States*, 479 F.3d 1160 (9th Cir. 2007).  The Fifth Circuit has also recognized 26 U.S.C. § 6700's "concentration on capturing transactional fraud." *Sage*, 908 F.2d at 25.  The policy behind 26 U.S.C. § 6700 therefore further demonstrates that it is a fraud statute.

### e) Plaintiff has historically maintained that 26 U.S.C. § 6700 is a fraud statute.

In the cases discussed above, the Government has consistently taken the position, and urged the courts to adopt the holding, that 26 U.S.C. § 6700 is a fraud statute.

As the *Sage* court explained, the Government's position in that case was based on "the anti-fraud machinery of Section 6700 . . . ."  *Sage*, 908 F.2d at 23; *see also Sage*, United States' Reply and Answering Brief, 1990 WL 10082055 (5th Cir. Jan. 29, 1990) (comparing 26 U.S.C. § 6700 "with other provisions of the Code enacted to combat fraud (see, e.g. Section 6653(b), 6694(b) of the Code)").  Similarly, in *Emanuel v. United States*, 705 F. Supp. 434, 435 (N.D. Ill. 1989), "the government contend[ed] that Sections 6700 and 6701 are essentially fraud penalties . . . ."

In its opening brief in *Lamb*, the Government explained that "[t]he conduct Congress intended to punish in §§ 6700 and 6701 is of the same character as the conduct involved in those fraud-related provisions . . . . The provisions here involved are in pari materia with those fraud-related provisions."  *Lamb*, United States' Opening Brief, 1992 WL 1267651 (8th Cir. Mar. 30, 1992).  The Government's reply brief further emphasized that "[t]he penalties under §§ 6700 and 6701 plainly are intended to deter fraudulent activity."  *Lamb*, United States' Reply Brief, 1992 WL 12676553 (8th Cir. May 15, 1992).  These cases demonstrate the Government's longstanding position that 26 U.S.C. § 6700 is a fraud statute.

### 3.    All of Plaintiff's 26 U.S.C. § 6700 claims must be proven by clear and convincing evidence.

Section 6700 penalizes both false or fraudulent statements as well as gross valuation misstatements.  *See* 26 U.S.C. § 6700(a)(2)(A), (B).  Notably, none of the guidance discussed above has concluded that 26 U.S.C. § 6700's status as a fraud

statute depends upon which provision is invoked—the false or fraudulent statement provision or the gross valuation misstatement provision.  Rather, courts have found that 26 U.S.C. § 6700 *in toto* is a fraud provision.

For example, courts that have considered whether assessment under 26 U.S.C. § 6700 is subject to a period of limitations have not drawn a distinction between the two components of that section (i.e., false or fraudulent statements and gross valuation misstatements).  *See supra* Part III.B.2.b.  There is no rule that the Government has unlimited time to assess a 26 U.S.C. § 6700 penalty alleging false or fraudulent statements but is barred after a certain period from assessing a 26 U.S.C. § 6700 penalty alleging a gross valuation misstatement.  Nor has the Government taken this position when asserting that its 26 U.S.C. § 6700 assessments are not subject to any time restrictions.  *See supra* Part III.B.2.e.

The same is true for instances when courts have considered whether 26 U.S.C. § 6700 claims must be pleaded with particularity under FRCP 9(b).  Rather than bifurcating 26 U.S.C. § 6700 claims based on the subparagraph at issue, "the Court reads the complaint as a whole, and does not consider each paragraph in isolation of every other paragraph."  ECF No. 119, Dec. 10, 2019 Order, at 13 (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 n.11 (11th Cir. 2005)).

Accordingly, 26 U.S.C. § 6700 is not partitioned into fraud and non-fraud components.  The entire section is a fraud statute, and all of Plaintiff's claims arising

under 26 U.S.C. § 6700 must be proven by clear and convincing evidence.

### C. The burden of proof does not change because Plaintiff has invoked remedies under 26 U.S.C. § 7402.

The standard of proof in this case does not change merely because Plaintiff seeks remedies under 26 U.S.C. § 7402.  In the Amended Complaint, Plaintiff pleads five "Counts," with Counts I, IV, and V applicable to the EcoVest Parties.  Count I alleges violations of 26 U.S.C. § 6700.  Counts IV and V invoke 26 U.S.C. § 7402, which provides district courts with jurisdiction to grant certain remedies to enforce the internal revenue laws.  In particular, Count IV seeks an injunction under 26 U.S.C. § 7402, and Count V asks the Court to order disgorgement under that section. Plaintiff's burden of proof for all of these Counts is clear and convincing.

As this Court has previously recognized in this case, 26 U.S.C. § 7402 is not an independent cause of action.  Rather, it provides district courts with jurisdiction to grant certain remedies.  Specifically, "Count IV outlines a remedy that the Government seeks to obtain if it ultimately prevails in this case, but does not actually bring an independent substantive claim under any section of the statute."  ECF No. 119, Dec. 10, 2019 Order, at 18.  Similarly, "[i]n Count V, the Government again lists a remedy – disgorgement – as an individual count, but does not plead any underlying substantive violation of the statute that is not already pleaded elsewhere in the complaint."  *Id.* at 19.

Because 26 U.S.C. § 7402 provides for a "remedy, not a cause of action," *id.*, invoking 26 U.S.C. § 7402 does not affect the standard of proof Plaintiff must establish to prove its case.  As explained above, the substantive causes of action brought against the EcoVest Parties—26 U.S.C. §§ 6700 and 6701—are fraud statutes and therefore must be established by clear and convincing evidence.  Seeking certain remedies for these alleged violations under 26 U.S.C. § 7402 does not transform the burden of proof into a preponderance of the evidence or another evidentiary standard.  Nor should it, as it would be inappropriate and counterintuitive for Plaintiff to be able to lower its burden of proof simply by invoking a different statute, where the underlying cause of action does not change.

Therefore, Defendants are entitled to judgment as a matter of law that Plaintiff is required to prove its case by clear and convincing evidence.

## CONCLUSION

Plaintiff has sought relief in this case that is unavailable to it, and has done so in a manner that, even if such relief were available, exceeds the statutorily prescribed period within which such relief may be sought.  Moreover, Plaintiff's claims are premised on violations of fraud statutes, requiring Plaintiff to meet its burden of proof by clear and convincing evidence.  For the reasons set forth above, the EcoVest Parties should be granted partial summary judgment on each of these matters.

Dated: December 10, 2021                  Respectfully submitted,

                                          */s/ Sean Akins*_____
                                          Benjamin J. Razi (admitted *pro hac vice*)
                                          Sean Akins (admitted *pro hac vice*)
                                          Marianna Jackson (admitted *pro hac vice*)
                                          Matthew V. Miller (admitted *pro hac vice*)
                                          Nicholas Pastan (admitted *pro hac vice)*
                                          Kandyce Korotky (admitted *pro hac vice*)
                                          Amee Frodle (admitted *pro hac vice*)
                                          John Zipp (admitted *pro hac vice*)
                                          Wesline Manuelpillai (admitted *pro hac vice*)
                                          COVINGTON & BURLING LLP
                                          850 Tenth St. NW
                                          Washington, DC 20001
                                          Tel.: (202) 662-6000
                                          Fax: (202) 662-6291
                                          Email: sakins@cov.com

                                          Thomas T. Tate
                                          Georgia Bar No. 698879
                                          Elizabeth L. Clack-Freeman
                                          Georgia Bar No. 126888
                                          ANDERSEN, TATE, & CARR, P.C.
                                          One Sugarloaf Centre
                                          1960 Satellite Blvd., Suite 4000
                                          Duluth, Georgia 30097
                                          Tel: (770) 822-0900
                                          Fax: (770) 822-9680
                                          Email: ttate@atclawfirm.com

                                          *Attorneys for Defendants EcoVest Capital,
                                          Inc., Alan N. Solon, Robert M.
                                          McCullough, and Ralph R. Teal, Jr.*

     *I certify that this pleading has been prepared with one of the font and point

selections approved by the Court in LR 5.1C.

                                          41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2021, I caused a true and correct copy of the foregoing to be served on counsel of record for all other parties via the Court's electronic filing system.

<u>/s/ Sean Akins</u>