IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          )
                                   )    Case No. 1:18-cv-05774-AT
        Plaintiff,                 )
                                   )
        v.                         )
                                   )
ECOVEST CAPITAL, INC, *et al.*,    )
                                   )
        Defendants.                )
_____   )

CLAUD CLARK, III,                  )
                                   )
        Counterclaim-Plaintiff,    )
                                   )
        v.                         )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
        Counterclaim-Defendant.    )
_____   )

**UNITED STATES' MOTION TO SEVER OR, IN THE ALTERNATIVE,
BIFURCATE COUNTERCLAIM**

Counterclaim-defendant United States moves to sever Claud Clark, III's

counterclaim for unauthorized disclosure of his protected tax return information

(the Counterclaim) into a separate civil action from the United States' affirmative

claims against Clark and others (the Injunction Suit) under Fed. R. Civ. P. 21. In

the alternative, the United States seeks to bifurcate discovery and trial on the Counterclaim from the Injunction Suit under Fed. R. Civ. P. 42(b).

The Counterclaim and the Injunction Suit are separate, discrete claims that are capable of resolution independent of each other. They arise from separate transactions, concern separate questions of law and fact, and require different witnesses and proof. Trying such separate claims as a single action will confuse the issues and, consequently, prejudice the United States. To avoid this prejudice, the Counterclaim and Injunction Suit should be severed, or in the alternative, bifurcated into separate trials.

## I.    Background

### A.    The Injunction Suit

The United States filed the Injunction Suit to stop Clark, Nany Zak, EcoVest Capital, Inc., Alan N. Solon, Robert M. McCullough, and Ralph R. Teal, Jr. from, *inter alia*, organizing, promoting or selling their "conservation easement syndication scheme." (ECF No. 1 ¶ 6.a.) The United States seeks equitable relief under 26 U.S.C. §§ 7402, 7407, and 7408 for (1) an injunction against further organization, promotion, or sale of conservation easement syndicates, and (2) disgorgement of the defendants' ill-gotten gains. The factual basis for these claims will center on the defendants' conduct—for example, how they organized,

promoted and sold the conservation easement syndicates; their making (or causing others to make) false, fraudulent, or gross valuation misstatements during that activity; their knowing or having reason to know that their statements were false; the likelihood that their conduct would recur in the absence of an injunction; and the effect of their conduct making an injunction and/or disgorgement necessary and appropriate to enforce the internal revenue laws.

The parties, assisted by a Special Master, agreed to a Discovery Plan and Scheduling Order in the Injunction Suit. (ECF Nos. 213, 223.) The parties also jointly proposed a trial date. (ECF No. 324.) The discovery and dispositive motions deadlines, as amended, and the trial date for the Injunction Suit are as follows:

| Event | Deadline |
|---|---|
| Close of Fact Discovery | June 1, 2021 |
| Disclosure of Expert Reports | August 12, 2021 |
| Disclosure of Rebuttal Experts and Reports | November 10, 2021 |
| Close of Expert Discovery | January 14, 2022 |
| Summary Judgment Deadline | February 15, 2022 |
| *Daubert* Motions Deadline | March 15, 2022 |
| Trial Date | April 17, 2023 |

(*See* ECF Nos. 270, 324 328, Docket Entry Order dated July 1, 2021.)

The parties did not address or consider the Counterclaim when they proposed the deadlines and trial date for the Injunction Suit. Indeed, no discovery has been directed to the allegations in the Counterclaim.

**B.    The Counterclaim**

Over a year after the Injunction Suit was filed, Clark answered the complaint and filed his Counterclaim, alleging that the Government made several unauthorized disclosures of his protected return information. The United States moved to dismiss the Counterclaim, which the Court granted with leave to file an amended counterclaim. (ECF No. 202.) Clark did so, alleging that IRS and Department of Justice officials made unauthorized disclosures of his protected return information in eleven specific statements:

- *Statement 1*: A handwritten note on a printed excerpt from Clark's website exchanged between two IRS employees;

- *Statement 2*: DOJ Press Release 18-1672 (Dec. 19, 2018);

- *Statement 3*: A statement by Principal Deputy Assistant Attorney General Richard E. Zuckerman quoted in the DOJ Press Release;

- *Statement 4*: IRS News Release IR-2019-47 (Mar. 19, 2019);

- *Statement 5*: IRS News Release IR-2019-182 (Nov. 12, 2019);

- *Statement 6*: A statement by Charles P. Rettig, Commissioner of the IRS, quoted in IR 2019-182;

- *Statement 7*: A statement made by an unknown IRS official to Richard Rubin of the Wall Street Journal;

- *Statement 8*: Remarks by Commissioner Rettig at the American Institute of CPAs ("AICIPA") National Tax Conference;

- *Statement 9*: A statement by Douglas O'Donnell, Commissioner of the IRS Large Business and International Division, at AICPA National Tax Conference;

- *Statement 10*: A comment made by Sunita Lough, Deputy Commissioner of IRS Services and Enforcement, at the AICPA National Tax Conference; and

- *Statement 11*: A letter dated February 12, 2020 from Commissioner Rettig to Senate Finance Committee Chairman Grassley responding to a request for updated information on syndicated conservation easement transactions. (ECF No. 206 ¶¶ 47-224.)

Clark also alleges that the Government has "made other statements constituting impermissible disclosure of [his] return information." (*Id.* ¶ 225.) Based on those allegations, Clark seeks actual and punitive damages and an award of attorney's fees under 26 U.S.C. § 7431. (*Id.* at 65.)

The United States moved to dismiss Clark's Counterclaim again, arguing that the amended pleading failed to cure the defects in his original. (ECF No. 208.) The Court denied the motion to dismiss on July 6, 2021, (ECF No. 309) and the United States answered the Counterclaim on August 19, 2021 (ECF No. 319).[1]

Shortly after the Court denied the motion to dismiss, the United States and Clark discussed generally how litigation of the Counterclaim should proceed once

---

[1] The United States moved to certify an interlocutory appeal of the order denying the motion to dismiss and to stay the counterclaim pending any interlocutory appeal. The Court denied those motions on October 22, 2021.

the Government filed its answer. *See* LR 26.2, NDGa (providing that discovery

starts after the defendant files an answer). By this time, fact discovery under the

Discovery Plan and Case Management Schedule in place in the Injunction Suit had

closed. Consequently—and in recognition of the different facts, legal standards,

witnesses, and documentary evidence relevant to the Counterclaim—the United

States proposed to sever or bifurcate that action from the Injunction Suit to allow

for a separate discovery schedule and trial date for the Counterclaim. Clark did not

agree to severance or bifurcation of the Counterclaim.

Several months later, Clark contacted the United States to discuss the

anticipated discovery on his Counterclaim and to propose a discovery schedule for

that action. To that point, the parties had not served discovery on the Counterclaim

because they were unsure whether the fact discovery deadline from the Injunction

Suit applied to the Counterclaim. During their discussion, Clark and the United

States agreed that discovery would be needed on the Counterclaim, and Clark

provided the United States with proposed discovery topics. (*See* Ex. A, email from

Clark to United States, Jan. 12, 2022.)[2] The parties later agreed to a proposed

---

[2] Although the United States agrees that Clark is entitled to some discovery
regarding the allegations of his Counterclaim, the United States does not concede
that Clark's broad discovery topics are relevant and proportional to the needs of

(continued...)

schedule for the Counterclaim and filed a joint motion requesting a discovery deadline of September 23, 2022, and dispositive motion deadline of October 24, 2022. (ECF No. 345.) The Court has not yet approved the schedule.

Although the parties agree to a proposed schedule for the Counterclaim, the parties disagree on whether severance or bifurcation of that claim from the Injunction Suit is appropriate. As a result, the joint motion proposing a schedule for the Counterclaim is without prejudice to the United States seeking severance or bifurcation of the Counterclaim from the Injunction Suit.[3] (*Id.* ¶ 11.)

## II.    Legal Standards

District courts have broad discretion over the management of their cases. This discretion includes the authority to sever or bifurcate claims. *See* Fed. R. Civ. P. 21, 42(b); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001).

The Court's discretion to sever a claim is provided in Rule 21. *See* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."). Severance is

---

this case. The United States maintains the right to object to Clark's discovery requests as permitted under the Federal Rules of Civil Procedure.

[3] If this motion is granted, the United States agrees that the proposed discovery and dispositive motions deadlines in the Joint Motion will apply to the severed or bifurcated action.

appropriate where the claims are "discrete and separate." *Spinnaker Int'l LLC v. Greenfence, LLC*, Case No. 2017 WL 5952270, *1 (N.D. Ga. Dec. 1, 2017) (quoting *Gaffney v. Riverboard Servs. of Ind., Inc.*, 451 F.3d 424, 441-442 (7th Cir. 2006)). Claims are discrete and separate if one claim is "capable of resolution despite the outcome of the other claim." *Id.*

Courts look to five factors to determine whether claims are discrete and separate:

(1)   whether the claims arise out of the same transaction or occurrence;

(2)   whether the claims present some common question of law or fact;

(3)   whether the settlement of the claims or judicial economy would be facilitated;

(4)   whether prejudice would be avoided if severance were granted; and

(5)   whether different witnesses and documentary proof are required for the separate claims.

*See, e.g.*, *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004); *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 541-42 (S.D. Ala. 2007). If a claim is severed under Rule 21, the claim proceeds as a separate case in which the Court may issue a final, appealable judgment. *See Gaffney*, 451 F.3d at 441-42.

Rule 42(b) allows the Court to bifurcate claims into separate trials for convenience, to avoid prejudice, or to expedite or economize the litigation. The

analysis for bifurcation under Rule 42(b) is the same as the analysis for severance under Rule 21. *Morris v. Northrop Grunman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999); *see also Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608-09 (N.D. Ga. 1989) (listing factors relevant to bifurcation). But unlike severance under Rule 21, bifurcation under Rule 42 does not create a separate action and usually results in a single judgment. *Disparte*, 223 F.R.D. at 12.

## III.   Argument

The Counterclaim and the Injunction Suit are separate and discrete claims that arise out of different transactions or occurrence, present distinct questions of fact and law, and require different witnesses and documentary evidence. And so, each claim can be resolved regardless of the outcome of the other claim. A single trial will only confuse the issues and prejudice the United States. Thus, the Counterclaims and the Injunction Suit should be severed, or in the alternative, bifurcated into separate trials.

### A.   The Counterclaim and Injunction Suit Are Separate and Discrete Claims That Should Be Severed Under Rule 21

The Counterclaim and Injunction Suit can be resolved independent of each other. Thus, they should be severed as separate and discrete claims.

First, the claims do not arise out of the same transaction or occurrence. *Disparte*, 223 F.R.D. at 12. The Injunction Suit concerns an alleged abusive conservation easement syndication scheme promoted by Clark and the other defendants from 2009 through 2018. The transaction or occurrence at issue in the Injunction Suit is the creation, promotion, and sale of that alleged abusive scheme. *See Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000) (explaining that a transaction or occurrence encompasses "all logically related events entitling a person to institute a legal action against another") (citation and quotation omitted). By contrast, Clark's claims against the Government in the Counterclaim concern the alleged unauthorized disclosure of Clark's protected return information in eleven separate statements regarding the Government's efforts to stop abusive conservation easement transactions. Each statement is a separate transaction or occurrence on which the Counterclaim rests. Although the statements concern abusive conservation easement syndication schemes in general and in some cases refer to the Injunction Suit, the Counterclaim and Injunction Suit do not arise from the same transaction. They arise from separate transactions—the creation, promotion, and sale of an abusive conservation easement syndication scheme (the Injunction Suit) and statements about the Government's efforts to stop the proliferation of those schemes (the Counterclaim)—and they exist independent

10

of each other. Simply put, the Counterclaim and the Injunction Suit are not two sides of the same coin.

Second, the Counterclaim and the Injunction Suit do not have *any* common questions of law or fact. *Disparte*, 233 F.R.D. at 12. The questions of law in the Injunction Suit include such matters as whether disgorgement is an available remedy against the defendants under 26 U.S.C. § 7402(a), whether the five-year statute of limitations in 28 U.S.C. § 2462 applies to the United States' disgorgement claim, whether the United States lacks an adequate remedy at law to prevent further misconduct by the Defendants, and the applicable standard of proof for claims under 26 U.S.C. §§ 7402(a) and 7408. But the questions of law in the Counterclaim are whether the statements at issue disclose Clark's protected return information in violation of 26 U.S.C. § 6103; whether any disclosure resulted from a good faith, but erroneous interpretation of § 6103; and whether Clark is entitled to any damages for the alleged disclosures. There is no overlap whatsoever on these legal questions. Indeed, resolution of the legal issues on one claim does not affect the other.

Similarly, the Counterclaim and the Injunction Suit present separate questions of fact. In the Injunction Suit, the factual questions relate to the actions of Clark and the other defendants in creating, promoting, and selling an alleged

abusive conservation easement syndication scheme. In other words, did Clark and the other defendants engage in the alleged conduct or not? And what did they know or have reason to know at the time of their actions? The questions of whether the Defendants made, furnished, or caused gross valuation overstatements (under 26 U.S.C. § 6700(a)(2)(B)) and whether Clark made gross valuation misstatements (under 26 U.S.C. § 6695A) are examples of these factual issues. The Counterclaim, however, does not raise any questions of fact related to Clark's actions. Indeed, the truth of the statements at issue in the Counterclaim is irrelevant. The relevant questions of fact are whether the eleven statements at issue disclose Clark's protected return information, the applicability of the good faith exception, and Clark's damages. These factual questions are distinct from the factual questions in the Injunction Suit.

Third, severance may facilitate the settlement of the claims or judicial economy. *Disparte*, 233 F.R.D. at 12. The Counterclaim and Injunction Suit are in different postures. In the Counterclaim, discovery has yet to begin while discovery in the injunction Suit is complete and the United States is preparing to file a dispositive motion by the February 15, 2022, deadline. Given the different stages of litigation of each claim, it may be easier for the parties to resolve the claims through settlement as stand-alone actions, without the constraints imposed on them

by the separate, unrelated claim. Indeed, because discovery on the Injunction Suit is complete, the parties can negotiate settlement of that claim with a full knowledge of the strengths and weaknesses of their positions based on the facts and expert opinions from discovery. The same cannot be said of the Counterclaim because discovery has not yet begun.

Severing the claims may also facilitate judicial economy. The Injunction Suit is over three years old. Discovery consumed significant resources of the parties and the Court. And now, the parties are briefing dispositive motions. Managing a separate discovery and briefing schedule on the Counterclaim within the Injunction Suit is likely to delay the ultimate resolution of the Injunction Suit and consume the resources of the Court that would otherwise be devoted to resolution of the Injunction Suit. And if the Counterclaim were to go to trial with the Injunction Suit, the trial will likely be extended by several days and possibly weeks. This will not only impact the Court's schedule but also will require the defendants who are not parties to the Counterclaim to spend their limited resources attending trial days for evidence presentation on a claim that does not affect their defenses.

Fourth, severing the claims will avoid prejudice. *Disparte*, 233 F.R.D. at 12. As discussed above, fact discovery in the Injunction Suit had ended by the time the

Court denied the Government's motion to dismiss the Counterclaim. If the claims are not severed to allow for separate discovery on the Counterclaim, the United States and Clark will be prejudiced in their ability to obtain facts relevant to their claims and defenses. Even if the Court allows for discovery without severing the Counterclaim, the United States will suffer prejudice from a single trial on these unrelated claims. As noted above, the primary factual issue in the Injunction Suit is whether the defendants engaged in the alleged abusive conduct. Trying the Counterclaim at the same time as the Injunction Suit will distract from that inquiry and allow the defendants to focus on the unrelated actions of the Government. This will result in confusion of the issues and prejudice the United States. Whether the Government made unauthorized disclosures of Clark's protected return information is irrelevant to whether Clark and the other defendants engaged in the alleged abusive conduct that warrants an injunction. Indeed, the United State need not prevail on the Counterclaim to prevail on the Injunction Suit and vice versa.

The United States may also be prejudiced if the two claims are tried together because Clark may attempt to seek discovery from and call the Government's lead counsel in the Injunction Suit as a potential witness in the Counterclaim. (*See* Ex. A.) The United States does not concede that lead counsel is a proper witness to the counterclaim and will object to discovery directed to her as appropriate under the

Federal Rules of Civil Procedure. Nevertheless, if lead counsel is compelled to testify, she may be disqualified from this case, *see* Ga. R. of Prof. Conduct, Rule 3.7, and possibly be subject to cross-examination in which defense counsel will try to discredit her directly and the United States' claims in the Injunction Suit indirectly. Additionally, if lead counsel is required to testify, the United States' ability to present its cases on both claims will be impaired because lead counsel's attention will be split between presenting an effective case in the Injunction Suit and preparing for her examination as a witness in the Counterclaim. This prejudice can be avoided if the claims are severed.

Last, the Counterclaim and Injunction Suit have different witnesses and documentary proof. *Disparte*, 233 F.R.D. at 12. As discussed above, the claims arise from separate transactions or occurrences and concern different questions of law and fact. There will not be any overlapping testimony and evidence on the two claims. Indeed, Clark's proposed discovery topics and deponents confirms as much. (*See* Ex. A.)

In sum, the Counterclaim and the Injunction Suit are separate, discrete claims that can each be resolved despite the outcome of the other claim. And so, the claims should be severed into separate actions. *See Gaffney*, 451 F.3d at 443-44.

**B.      In the Alternative, the Counterclaim and the Injunction Suit Should Be Bifurcated Under Rule 42(b)**

For the reasons above, the Counterclaim and the Injunction Suit should be severed into separate actions. But if the Court finds that severance is not warranted, the Court should order separate trials on the Counterclaim and the Injunction Suit to avoid the prejudice that will result from a single trial.

The severance and bifurcation analyses are the same. *See Disparte*, 223 F.R.D. at 12. But the bifurcation inquiry places greater emphasis on avoiding prejudice. Indeed, "the paramount consideration" is "a fair and impartial trial to all litigants through a balance of benefit and prejudice." *Kimberly-Clark Corp.*, 131 F.R.D. at 609.

The benefit of separate trials on the Counterclaim and the Injunction Suit far outweighs the prejudice of a single trial. The claims arise out of separate transactions, concern separate questions of law and fact, and require different witnesses and documentary evidence to resolve the distinct questions of law and fact. *See id.* at 608-09 (listing factors a court may consider on a motion for bifurcation). And discovery has not been directed to a single trial of both claims. *Id.* Indeed, no discovery has been directed to the allegations of the Counterclaim because fact discovery had closed by the time the Court denied the motion to dismiss.

16

Moreover, neither the United States nor Clark would gain an unfair advantage from separate trials. *Id.* To the contrary, a single trial would prejudice the United States by giving Clark an unfair advantage. A single trial allows Clark to shift the Court's focus from his conduct to the Government's conduct. This will lead to confusion of the issues on both claims. And, as discussed above, a single trial is prejudicial because Clark may seek to call lead counsel as a potential witness to the Counterclaim. If lead counsel must take the stand as a witness, the presentation of and preparation for the United States' case in the Injunction Suit is harmed. This prejudice to the United States can be avoided through separate trials. Thus, the Counterclaim and the Injunction Suit should be bifurcated.

## IV.   Conclusion

The Counterclaim and the Injunction Suit are separate and discrete claims. They can each be resolved on the merits regardless of the outcome of the other claim. To be sure, the Counterclaim and the Injunction Suit arise from separate transactions, present distinct questions of law and fact, and require different witnesses and documentary evidence. Holding a single trial of the Counterclaim and the Injunction Suit will not further judicial economy or increase the likelihood of settlement. Rather, a single trial will only delay the Injunction Suit, confuse the issues presented in the separate claims, and prejudice the United States. Thus, the

Counterclaim and the Injunction Suit should be severed, or in the alternative,

bifurcated into separate trials.

Dated February 10, 2022.

<div style="margin-left: 40%;">

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General


*/s/ Thomas K. Vanaskie*
THOMAS K. VANASKIE
D.C. Bar No. 1000405
BEATRIZ T. SAIZ
N.J. Bar No. 024761995
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-305-7921 (v)
202-514-4963 (f)
Thomas.K.Vanaskie@usdoj.gov

*Counsel for Counterclaim Defendant United*
*States of America*

</div>

Of Counsel:

Kurt R. Erskine
United States Attorney

Neeli Ben-David
Assistant United States Attorney
Georgia Bar No. 049788
Office of the U.S. Attorney
75 Ted Turner Drive, SW, Suite 600

Atlanta, GA 30303
404-581-6303 (v)
Neeli.Ben-David@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

I certify that this document was formatted in Times New Roman 14 pt., in

compliance with Local Rule 5.1C.

> */s/ Thomas K. Vanaskie*
> THOMAS K. VANASKIE
> Trial Attorney, Division
> U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I certify that on February 10, 2022, the United States' Motion to Sever or, in

the Alternative, Bifurcate Counterclaim was electronically filed with the Clerk of

the Court through the CM/ECF System, which sent notice of electronic filing to all

counsel of record.

> */s/ Thomas K. Vanaskie*
> THOMAS K. VANASKIE
> Trial Attorney, Tax Division
> U.S. Department of Justice