```
                                                                    1

 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF GEORGIA

 3                   ATLANTA DIVISION

 4
     UNITED STATES,            )
 5
                 Plaintiff,    )
 6
     v.                        ) Case No. 1:18-cv-05774-AT
 7
     NANCY ZAK,                )
 8
     CLAUD CLARK III,          )
 9
     ECOVEST CAPITAL, INC.,    )
10
     ALAN N. SOLON,            )
11
     ROBERT M. MCCULLOUGH,     )
12
     RALPH R. TEAL, JR.,       )
13
                 Defendants.   )
14

15

16          REMOTE VIDEOTAPED DEPOSITION OF

17              JED CHAIM LINSIDER,

18   a witness herein, called by the Plaintiff for
     examination, conducted at the location of the
19   witness in Atlanta, Georgia, on January 12, 2021,
     commencing at 9:05 a.m. EST, before Ann Medis,
20   Registered Professional Reporter and Notary Public
     in and for the Commonwealth of Pennsylvania.
21

22
```

**Exhibit 1394**

```
                                                              2
 1              A P P E A R A N C E S

 2            (All participants attended via

 3               Webex videoconference.)

 4

 5   On behalf of Plaintiff

 6            U.S. DEPARTMENT OF JUSTICE, TAX DIVISION

 7            BY:  HARRIS PHILLIPS, ESQUIRE

 8                 ERIN R.HINES, ESQUIRE

 9                 RICHARD ROSE, ESQUIRE

10                 AMANDA REINKEN, ESQUIRE

11            P.O. Box 7238, Ben Frankin Station

12            Washington, D.C.  20044

13            202.514.6619

14            harris.j.phillips@usdoj.gov

15            erin.r.hines@usdoj.gov

16            richard.g.rose@usdoj.gov

17            amanda.j.reinken@usdoj.gov

18

19

20

21

22
```

3

1    A P P E A R A N C E S (Continued)

2   On behalf of Defendant Nancy Zak

3        SIDLEY AUSTIN LLP

4        BY:  LAURA MULHERIN, ESQUIRE

5             BENJAMIN LITTLE, ESQUIRE

6        1501 K STREET, N.W.

7        WASHINGTON, D.C. 20005

8        202.736. 8000

9        lmulherin@sidley.com

10       blittle@sidley.com

11

12  On behalf of Defendants EcoVest Capital, Alan Solon,

13  Robert McCulloush, Ralph Teal and the Deponent

14       COVINGTON & BURLING, LLP

15       BY:  BENJAMIN J. RAZI, ESQUIRE

16            MATTHEW MILLER, ESQUIRE

17       One CityCenter, 850 Tenth Street, N.W.

18       Washington, D.C.  20001-4956

19       202.662.5807

20       brazi@cov.com

21       mmiller@cov.com

22       A P P E A R A N C E S (Continued)

4

1  On behalf of Defendant Claud Clark
2           CAPLIN & DRYSDALE, CHARTERED
3           BY:  ROSS SHARKEY, ESQUIRE
4           1 Thomas Circle, N.W., Suite 1100
5           Washington, D.C. 20005
6           202.862.5000
7           rsharkey@capdale.com
8
9  Also present
10          Joe Townsend, videographer
11
12
13
14
15
16
17
18
19
20
21
22

49

1    Just move on to the next question.
2            MR. PHILLIPS:  Thanks, Ben.
3    BY MR. PHILLIPS:
4        Q.   I think you'll find, Mr. Linsider, our
5    deposition will go a little bit faster and easier
6    if you aren't so hung up on some of the
7    vocabulary.
8            Now, you stated at the beginning -- let
9    me start --
10           MR. PHILLIPS:  Amanda, you can take the
11   Excel down, but let's leave the screen share up,
12   please.  You might want to...
13   BY MR. PHILLIPS:
14       Q.   Mr. Linsider, I don't see an Excel
15   coming again for a while.
16           Mr. Linsider, you said earlier that you
17   play a significant role in matters regarding the
18   real estate that's used in these conservation
19   easement deals; right?
20       A.   Yes.
21       Q.   ==Is there an ending point to the==
22   ==acquisition process?  That is, how do you know==

[1/12/2021] Linsider, Jed C. (DEPOSITION)

50

1    when the real estate has been acquired such that
2    it can now be used for one of these transactions?
3    Is there a document or some sort of step that's
4    taken that makes that decision final?
5         A.   Are you referring to the closing, the
6    MIPA?
7         Q.   Yeah.  Is there anything before the MIPA
8    that would signal that there's been an agreement
9    by EcoVest to acquire land for one of these deals?
10        A.   Well, the MIPA would be the first
11   binding contract, if you will.
12        Q.   Okay.  What's the role of the Letter of
13   Intent in the process?
14        A.   The Letter of Intent -- when we use a
15   Letter of Intent, it's simply to -- as would be
16   typical in any real estate transaction.  If you're
17   going to spend some money to evaluate a property
18   or a potential use of the property, you want to
19   know that you're going to have some time to do
20   that without anybody else coming in and taking
21   your spot.
22        Q.   How frequently does EcoVest use a Letter

[1/12/2021] Linsider, Jed C. (DEPOSITION)

255

1      Q.   The workflow for these deals.
2      A.   Okay.  Yes.
3      Q.   Now, it was important to you to include
4  Mr. Clark in discussions about the pipeline of
5  these deals, isn't that fair to say?
6      A.   He was included in these discussions,
7  yes.
8      Q.   Okay.
9      A.   At least in this discussion, the two
10 that you highlighted.
11     Q.   He was regularly included in the
12 pipeline discussions, wasn't he?
13     A.   For deals he was involved with, yes.
14     Q.   We're talking about the core deals.
15     A.   As the appraiser.
16     Q.   So with respect to the core deals, the
17 conservation easement transactions that this case
18 is all about, Mr. Clark, he was in the pipeline
19 discussions?
20     A.   Yes.
21          (Exhibit 172 was marked.)
22

[1/12/2021] Linsider, Jed C. (DEPOSITION)

293

1  fair market value for the property at issue in the
2  Beech Springs deal?
3       A.   I don't know enough to answer the
4  question.
5       Q.   I'm not asking you to verify it or agree
6  with it.  I'm asking:  As you sit here today, do
7  you have any reason to dispute it?
8       A.   I mean, this reads to me as a narrow use
9  of terminology for purposes of calculating a
10 transfer tax.  So in that context, sure, I have no
11 reason to dispute it.
12      Q.   Great.  Have you heard of an entity
13 Clarion Partners?
14      A.   It does not sound familiar.
15      Q.   C-L-A-R-I-O-N.
16      A.   It does not sound familiar.
17      Q.   Let's go back to the PPM, which was
18 Exhibit 162 with a doc ID ECOVEST-DOJ_0128354.
19      A.   Sorry.  Exhibit which number?
20      Q.   162.
21      A.   Okay.
22      Q.   Now, this was the PPM for Carolina Bays,

```
 1    which was a 2014 transaction.
 2         A.   Okay.
 3         Q.   Page 4 of this PDF sets forth some of
 4    the offering details.  I know it's hard to read,
 5    but the property location identifies 115.74 acres.
 6    Do you see that?
 7         A.   I do.  I'm sorry.  I'm just waiting for
 8    it to pull up in the share.
 9         Q.   It will be a lot quicker if you look at
10    the screen share.
11         A.   No, I understand.  I just want to make
12    sure I can have context if I need it.  I'll let
13    the document pull up, and I'll review what's on
14    the screen share while it's coming up.
15         Q.   I'm just directing you to the location,
16    which is 115.74 acres in Horry County.  Do you see
17    that?
18         A.   Okay.  Yep, I do.
19         Q.   Now, PDF page 45 of this document, the
20    Estimated Use of Proceeds, it identifies the MIPA
21    price as 4.6 million roughly.  Do you see that?
22         A.   Okay.  I do.
```

```
 1          Q.   So the price EcoVest paid to acquire the
 2    property or an interest in the entity that held
 3    the property was just shy of 40 percent of the
 4    gross offering proceeds.  That's what's in the
 5    PPM; right?
 6          A.   That looks about right just highballing
 7    the numbers.  If you give me a minute, please, I
 8    want to...
 9          Q.   Well, the percent is in the next column.
10          A.   Fair enough.  Sorry.  I'm looking at it
11    on the screen, and it's small.  So I didn't see
12    the percentages.
13          Q.   No problem.
14          A.   Okay.  Yeah.  I see that.
15          Q.   Now, for the property in the Carolina
16    Bays transaction, did EcoVest actually do any
17    development on the property?
18          A.   Did EcoVest do any development on the
19    property?  Not -- the only development work that
20    would have -- that was done by EcoVest is what's
21    in the file for the offering.
22          Q.   And then the conservation option was
```

```
 1   in the life cycle of the project, of the property,
 2   which had not had any improvements on it at that
 3   point.
 4        Q.   When you negotiated the MIPA, you
 5   thought 4.6 million was a fair price to pay.  Do
 6   you agree with me on that?
 7        A.   I do.
 8        Q.   You agree with me that 50 million would
 9   not have been a fair price to pay?
10        A.   Yes.
11        Q.   Okay.
12             MR. PHILLIPS:  Let's take a little
13   break.  We can do it in just five minutes if that
14   works for you guys.
15             THE VIDEOGRAPHER:  Going off the record
16   at 5:31 p.m.
17             (Recess from 5:31 p.m. to 5:41 p.m.)
18             THE VIDEOGRAPHER:  Back on the record at
19   5:41 p.m.
20             (Exhibit 181 was marked.)
21             MR. PHILLIPS:  Exhibit 181 has doc ID
22   ECOVEST-DOJ_351845.  That's 351845.
```