```
 1         IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
 2                   ATLANTA DIVISION

 3   UNITED STATES,                )
                                   )
 4                 Plaintiff,      )
                                   )
 5            vs.                  ) Case No.
                                   )1:18-cv-05774-AT
 6   NANCY ZAK, CLAUD CLARK III,   )
     ECOVEST CAPITAL, INC., ALAN N.)
 7   SOLON, ROBERT M. McCULLOUGH,  )
     RALPH R. TEAL, JR.,           ) VOLUME 2
 8                                 )
                   Defendants.     )
 9
                        - - -
10         Videotaped continued deposition of

11   CLAUD CLARK III, taken pursuant to notice via

12   videoconference at the law offices of Caplin &

13   Drysdale, One Thomas Circle, N.W., Suite 1100,

14   Washington, D.C., on Thursday, March 11, 2021, at

15   12:30 p.m., before Lorraine B. Marino, Registered

16   Diplomate Reporter, Certified Realtime Reporter and

17   Notary Public.

18                      - - -
```

**Exhibit 1400**

314

```
 1   APPEARANCES: (via videoconference)

 2              RICHARD G. ROSE, ESQ.
                HARRIS J. PHILLIPS, ESQ.
 3              ERIN R. HINES, ESQ.
                ERIC M. ABERG, ESQ.
 4              LAUREN A. DARWIT, ESQ.
                U.S. DEPARTMENT OF JUSTICE
 5              TAX DIVISION
                  555 Fourth Street, N.W.
 6                Washington, DC  20001
                  202-598-5869
 7                richard.g.rose@usdoj.gov
                  harris.j.phillips@usdoj.gov
 8                erin.r.hines@usdoj.gov
                  eric.m.aberg@usdoj.gov
 9                lauren.a.darwit@usdoj.gov
                  for Plaintiff
10
                NILES A. ELBER, ESQ.
11              ROSS R. SHARKEY, ESQ.
                AMANDA LEON, ESQ.
12              CAPLIN & DRYSDALE, CHARTERED
                  One Thomas Circle, N.W.
13                Suite 1100
                  Washington, DC  20005
14                202-862-7827
                  nelber@capdale.com
15                rsharkey@capdale.com
                  aleon@capdale.com
16                   -and-
                ROBERT C. KHAYAT, JR., ESQ.
17              THE KHAYAT LAW FIRM
              75 14th Street, N.E.
18                Suite 2750
                  Atlanta, GA  30309
19                404-978-2750
                  rkhayat@khayatlawfirm.com
20                for Defendant Clark

21

22
```

315

1   APPEARANCES, Cont'd.: (via videoconference)

2             SEAN M. AKINS, ESQ.
              AMEE FRODLE, ESQ.
3             COVINGTON & BURLING, LLP
                One CityCenter
4               850 Tenth Street, N.W.
                Washington, DC  20001
5               202-662-5908
                sakins@cov.com
6               afrodle@cov.com
                for Defendants EcoVest, Solon,
7             McCullough and Teal

8   ALSO PRESENT: (via videoconference)

9             AMANDA REINKEN,
              Litigation Tech Case Manager
10
              ISAAC HORNER,
11            Videographer

12                       - - -

1  BY MR. ROSE:
2      Q.  And speaking regarding the before value,
3   Mr. Clark, you concluded that a willing buyer
4   would pay approximately $59 million as of
5   December 15, 2015 if the Belle Harbour property
6   were not encumbered by a conservation easement;
7   is that correct?
8      A.  And developed under its fullest highest
9   and best use, yes, sir.
10     Q.  Do we agree that a willing buyer in your
11  fair market value definition would be purchasing
12  unimproved land at Belle Harbour?
13          MR. KHAYAT:  Objection;
14  mischaracterizes prior testimony.
15          THE WITNESS:  This is the before
16  value based on, as the Treasury regulations
17  state, under the highest and best use.
18 BY MR. ROSE:
19     Q.  Do we agree, though, that the land at
20  Belle Harbour was unimproved at the time of your
21  valuation, Mr. Clark?
22     A.  The land was unimproved but was valued

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

```
 1    mischaracterizes prior testimony.
 2              THE WITNESS:  That is the view of
 3    the before value, in following the before and
 4    after valuation scenarios as dictated by the
 5    Treasury regulations as a method to value a
 6    conservation easement.
 7  BY MR. ROSE:
 8      Q.  Does the fair market value definition from
 9    the Treasury regulations require you to determine
10    what a willing buyer would pay as of your
11    valuation date?  Is that fair?
12      A.  That's what it says, yes, sir.
13      Q.  And that's what you are required to do if
14    you are applying that definition?
15      A.  Yes.
16      Q.  So are you saying that you prepared this
17    before value under the hypothetical condition
18    that the proposed development was fully built out
19    and sold out?
20      A.  Yes, sir.
21      Q.  Now, why did you use this hypothetical
22    condition?
```

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

```
 1   BY MR. ROSE:
 2       Q.   All right.  And on page 31 you say that
 3   you made a search for development parcels similar
 4   to the subject property; correct?  Right there in
 5   the middle.
 6       A.   One second, please.
 7            MR. KHAYAT:  And, Claud, you can
 8   look at what Rich pulled out for you on the
 9   screen.  I just wanted you to have access to the
10   report if you need it.  But you can focus where
11   he is pointing you.
12            THE WITNESS:  Okay.  I was just
13   trying to look at it on this larger screen.
14            "I made a search of development parcels
15   similar to the Subject Property."
16   BY MR. ROSE:
17       Q.   And my question is what did you look for.
18       A.   I would be looking for property that was
19   developed in a method similar to the highest and
20   best use of this subject property.
21       Q.   So you were not looking for sales of
22   unimproved land with similar development
```

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

1  potential; is that fair?
2      A.  That is fair.
3      Q.  You were looking for the sale of a fully
4  developed resort-style multi-family development;
5  is that correct?
6      A.  Yes, that's correct.
7          MR. ROSE:  Amanda, if we could bring
8  up ECOVEST-DOJ_0015920, and we will have that
9  marked as Exhibit 448.
10             (Exhibit No. 448 was marked for
11  identification.)
12 BY MR. ROSE:
13     Q.  And Mr. Clark, Exhibit 448 should be in
14  the ShareFile for you.  This is the --
15     A.  Not yet.
16     Q.  -- the membership interest purchase
17  agreement for the Belle Harbour transaction.
18          MR. KHAYAT:  I am still waiting for
19  it to load, too.
20          MR. ELBER:  It is there.
21          THE WITNESS:  Yes.
22

1   think we have -- I don't know if we have agreed,
2   but that is the second step that is permitted if
3   there are no sales of comparable easements.  Then
4   Treasury regs allow you to do a before and after
5   value.  And you have to determine what is going
6   to be the difference in the before and after
7   value, and the difference is the loss of
8   development.  So that is what the before and
9   after value is used, because it says before value
10  less -- the after value less any enhancements is
11  the value of the easement.
12      Q.   And for the before value, according to the
13  definition of fair market value you applied, you
14  have to determine what a willing buyer would pay
15  as of your valuation date; correct?
16           MR. KHAYAT:  Objection; vague.  You
17  can answer.
18           THE WITNESS:  No.  I'm saying what
19  the before value developed under the hypothetical
20  is roughly $39 million.
21  BY MR. ROSE:
22      Q.   Do you agree that the unimproved land at

356

1    Birkdale is not worth $39 million?
2        A.   The land itself?  It's not.
3        Q.   You wouldn't pay $39 million for what was
4    at Birkdale Landing on the day of your site
5    visit; correct?
6        A.   For the vacant land only, no, sir.
7        Q.   Well, for the land that was there on the
8    day of your site visit, you wouldn't pay
9    39 million; correct, or advise someone to pay
10   39 million?
11              MR. KHAYAT:  Objection; form.
12   BY MR. ROSE:
13       Q.   Right?  Go ahead, Mr. Clark.  You can
14   answer.
15       A.   Correct.
16       Q.   The hypothetical condition that you
17   prepared this appraisal under, why did you decide
18   to apply that hypothetical condition?
19       A.   Based on analysis of the highest and best
20   use of the property.
21       Q.   Can you help me understand that?  Why
22   would that require you to apply a hypothetical

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

1   condition?
2       A.  It says in the Treasury regulations that
3   you can do that.
4       Q.  So your testimony is that it is
5   permissible.  But my question is why did you
6   decide to take that approach?
7       A.  Because that's an appropriate -- the
8   appropriate approach.
9       Q.  But why did you choose that approach, sir?
10  There is more than one permissible approach;
11  correct?
12      A.  Not to solve the appraisal problem that is
13  presented.
14      Q.  Could you have appraised it as is?
15      A.  No, sir, not to solve the problem that I
16  needed to solve.
17      ==Q.  You couldn't have appraised it as is and==
18  ==then subtracted the value of the property after==
19  ==an easement was placed on the property?==
20      ==A.  That would not be correct.  No, sir, I==
21  ==wouldn't do that.==
22      Q.  And why not, Mr. Clark?

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

1   your question again, please.
2   BY MR. ROSE:
3       Q.   The recitation of that regulation that you
4   just read off, you are suggesting or testifying
5   that that required you to apply a hypothetical
6   condition?
7       A.   Yes, to solve the problem at hand, which
8   is the value --
9       Q.   Okay.  And as a result of that regulation
10  you could not have performed an as-is appraisal?
11      A.   That would have been a misleading
12  appraisal, so no, sir.
13              MR. KHAYAT:   I would ask that you
14  each -- Claud, if you would let him finish his
15  question before you answer, then he will let you
16  finish your answer before he asks the next one.
17  I would appreciate it.
18              THE WITNESS:   Thank you.
19              MR. ROSE:   Amanda, can we jump to
20  page 29, please.
21  BY MR. ROSE:
22      Q.   And, Mr. Clark, on page 29 of the Birkdale

1    appraisal you state that "I made a search for
2    development parcels similar to the Subject
3    Property"; correct?
4         A.  Yes, sir.
5         Q.  And my question is when you conducted that
6    search, what was it you were looking for.
7         A.  Properties that were developed similar to
8    the highest and best use of this property.
9         Q.  So you were not looking for sales of
10   unimproved land with similar development
11   potential?
12        A.  No, sir.
13              MR. ROSE:  Amanda, can we bring up
14   ECOVEST-DOJ_0156719, please.  And this will be
15   marked as Exhibit 450.
16              (Exhibit No. 450 was marked for
17   identification.)
18   BY MR. ROSE:
19        Q.  Mr. Clark, Exhibit 450 is a copy of the
20   partnership interest purchase agreement, or the
21   MIPA, for the Birkdale Landing transaction.  Do
22   you see that there on your screen?

1            THE WITNESS:  My authority is the
2    tax courts, tax decisions; IRS appraisers have
3    used the same technique of valuing hypotheticals.
4    Judges have even used -- Tax Court judges have
5    even used the same valuation methodology of
6    valuing a hypothetical condition.  They are not
7    doing it the way you suggest.
8    BY MR. ROSE:
9        Q.  Is there any other area of your appraisal
10    practice over the years where you have relied on
11    Tax Court judges or decisions of the Tax Court to
12    justify or support an appraisal methodology?
13        A.  Are you asking me for work not related to
14    tax work?
15        Q.  Any of your appraisals you have ever done.
16        A.  I have used it in conservation easement
17    appraisals.
18        Q.  Other than those.
19        A.  No.  It has not been necessary.
20        Q.  Now, in this appraisal you also state that
21    you made a search for development parcels similar
22    to the subject property.  And I am asking again

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

1    the question what was it that you were looking

2    for when you made that search.

3         A.    Properties developed to the highest and

4    best use similar to the subject property.

5         Q.    So in other words, properties that had

6    been developed in a resort-style, multi-family

7    context?

8         A.    And that it is sold to one person, as

9    the --

10        Q.    Did you find any?

11        A.    No, sir.

12              MR. KHAYAT:  Did you finish your

13   answer, Claud?

14              THE WITNESS:  Yes, I did.

15              MR. ROSE:  Can we go to

16   ECOVEST-DOJ_0046561.  And that will be Exhibit

17   452.

18              (Exhibit No. 452 was marked for

19   identification.)

20              THE WITNESS:  I have lost my share-

21   screen.  I don't know what I did to do that.

22              MR. ROSE:  Can we go off the record

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)

418

1   the fair market value of the property as proposed
2   under the highest and best use development.  I
3   have never seen --
4   BY MR. ROSE:
5       Q.  Sorry.  Go ahead.
6       A.  I have never seen a typical buyer in any
7   case when a property has been appraised under
8   this highest and best use scenario.  It was not
9   evident in Kiva Dunes or the other eight or nine,
10  ten court decisions.  It's not described in the
11  appraisal guide, techniques for audit.  That's
12  not the real -- I can't cite the exact name.
13              The IRS appraisers using this
14  methodology don't profile a typical buyer, and I
15  might be repeating myself, but neither do the tax
16  courts in rendering their decisions.
17      Q.  So my question was did you identify a
18  profile of a market participant that would pay
19  $78 million for the subject property as of
20  December 17, 2018.
21      A.  No, I did not.
22      Q.  We don't have any dispute that the subject

[3/11/2021] Clark, Claud C. (Vol. 02) (DEPOSITION)