# Exhibit 1399

Record Citations For Facts
¶¶ 62, 64, 65, 69, 72, 74, 76, 78, 101,
102, and 116 from the United States'
Statement of Undisputed Material
Facts and Excerpts from Claud Clark's
Conservation Easement Appraisals

**Exhibit**

1399

| Name | Doc ID Beg | Pincite for Appraisal (SUF ¶ 116) | Pincites for SUF ¶ 78 | Pincites for SUF ¶ 65 | Pincites for SUF ¶ 64 | Pincites for SUF ¶ 62 | Pincites for SUF ¶ 74 | Pincites for SUF ¶ 76 | Pincites for SUF ¶ 101 | Pincites for SUF ¶ 102 | Pincites for SUF ¶ 69 | Pincites for SUF ¶ 72 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Appraisal of Arcadian Quay, LLC (excerpts) | ECOVEST-DOJ_0074308 | 2 | 2 | 3 | 3-4 | 4 | 9 | 12 | 14 | 15 | 16 | 17 |
| Appraisal of Azalea Bay Resort Holdings, LLC (excerpts) | CC_IRSAUD00029215 | 19 | 19 | 20 | 20-21 | 21 | 26 | 29 | 31 | 32 | 33 | 34 |
| Appraisal of Azul Bay Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0163768 | 36 | 36 | 37 | 38 | 39 | 48 | 51 | 54 | 55 | N/A | 57 |
| Appraisal of Beech Springs Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0020711 | 59 | 59 | 60 | 60-61 | 61 | 66 | 69 | 74 | 75 | 76 | 77 |
| Appraisal of Bellavista Grove Holdings, LLC (excerpts) | ECOVEST-DOJ_0042959 | 79 | 79 | 80 | 80-81 | 81 | 86 | 89 | 92 | 93 | 94 | 95 |
| Appraisal of Belle Harbour Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0017582 | 97 | 97 | 98 | 98-99 | 99 | 104 | 107 | 109 | 110 | 111 | 112 |
| Appraisal of Birch Equestrian Holdings, LLC (excerpts) | ECOVEST-DOJ_0106846 | 114 | N/A | 114 | 115 | 116 | 120 | 123 | 126 | N/A | 128 | 129 |
| Appraisal of Birkdale Landing Holdings, LLC (excerpts) | ECOVEST-DOJ_0157468 | 131 | 132 | 132 | 133 | 134 | 138 | 141 | 144 | 145 | N/A | 147 |
| Appraisal of Brunswick Highlands Holdings, LLC (excerpts) | ECOVEST-DOJ_0108629 | 149 | N/A | 149 | 150-151 | 152 | 156 | 159 | 161 | 161 | 162 | 163 |
| Appraisal of Camellia Station Holdings, LLC (excerpts) | ECOVEST-DOJ_0069751 | 165 | 165 | 166 | 166-167 | 167 | 172 | 175 | 177 | 178 | 179 | 180 |
| Appraisal of Cane Creek Holdings, LLC (excerpts) | CC_IRSAUD00035292 | 182 | N/A | 182 | 183 | 184 | 188 | 191 | 194 | N/A | 196 | 197 |
| Appraisal of Carolina Bays Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0129432 | 199 | 199 | 200 | 200-201 | 201 | 206 | 209 | 211 | 212 | 213 | 214 |
| Appraisal of Cayo Dorado Holdings, LLC (excerpts) | ECOVEST-DOJ_0153542 | 216 | 217 | 217 | 218 | 219 | 228 | 231 | 234 | 235 | N/A | 237 |
| Appraisal of Cayo Marsopa Holdings, LLC (excerpts) | ECOVEST-DOJ_0078704 | 239 | 239 | 240 | 240-241 | 241 | 246 | 249 | 253 | 254 | 255 | 256 |
| Appraisal of Coastavista Palms Holdings, LLC (excerpts) | ECOVEST-DOJ_0038749 | 258 | 258 | 259 | 259-260 | 260 | 265 | 268 | 274 | 275 | 276 | 277 |
| Appraisal of Copano Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0197844 | 279 | 282 | 280-281 | 282-283 | 279 | 294 | 297 | 302 | N/A | N/A | 304 |
| Appraisal of Cottonwood Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0183595 | 306 | 309 | 307 | 309-310 | 306 | 316 | 319 | 326 | N/A | N/A | 328 |
| Appraisal of Cristobal Key, LLC (excerpts) | ECOVEST-DOJ_0083113 | 330 | 330 | 331 | 331-332 | 332 | 337 | 340 | 345 | 346 | 347 | 348 |
| Appraisal of Cypress Cove Marina Holdings, LLC (excerpts) | ECOVEST-DOJ_0009219 | 350 | 350 | 351 | 351-352 | 352 | 357 | 360 | 362 | 363 | 364 | 365 |
| Appraisal of Diamond Grande Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0022897 | 367 | 367 | 368 | 368-369 | 369 | 374 | 377 | 379 | 380 | 381 | 382 |
| Appraisal of Dumpling Mountain, LLC (excerpts) | ECOVEST-DOJ_0335900 | 384 | N/A | 384 | 385-386 | 386 | 390 | 393 | 395 | N/A | 396 | 397 |
| Appraisal of Espiritu Shores Holdings, LLC (excerpts) | ECOVEST-DOJ_0209961 | 399 | 402 | 400 | 402-403 | 399 | 413 | 416 | 418 | N/A | N/A | 420 |
| Appraisal of Garden Lakes Estates Holdings, LLC (excerpts) | ECOVEST-DOJ_0126605 | 422 | 422 | 423 | 423-424 | 424 | 429 | 432 | 434 | 435 | 436 | 437 |
| Appraisal of Glade Creek, LLC (excerpts) | ECOVEST-DOJ_0222480 | 439 | N/A | 439 | 440-441 | 441 | 445 | 448 | 451 | N/A | 452 | 453 |
| Appraisal of Greenway Holdings Acquisitions, LLC (excerpts) | ECOVEST-DOJ_0116209 | 455 | N/A | 455 | 456 | 457 | 461 | 464 | 469 | N/A | 470 | 471 |
| Appraisal of Hammersmith Landing Holdings, LLC (excerpts) | ECOVEST-DOJ_0194025 | 473 | 476 | 474 | 476-477 | 473 | 483 | 486 | 490 | N/A | N/A | 492 |
| Appraisal of Harbor Gate at Seadrift Holdings, LLC (excerpts) | ECOVEST-DOJ_0206112 | 494 | 497 | 495 | 497-498 | 494 | 508 | 511 | 514 | N/A | N/A | 517 |
| Appraisal of Hickory Equestrian, LLC (excerpts) | ECOVEST-DOJ_0332645 | 519 | N/A | 519 | 520-521 | 521 | 525 | 528 | 530 | N/A | 531 | 531 |
| Appraisal of Hickory Preserve Holdings, LLC (excerpts) | ECOVEST-DOJ_0121566 | 534 | 534 | 535 | 535-536 | 537 | 542 | 545 | 553 | 553 | 554 | 555 |
| Appraisal of High Rocks, LLC (excerpts) | ECOVEST-DOJ_0332840 | 557 | N/A | 557 | 558 | 559 | 563 | 566 | 570 | N/A | 571 | 572 |
| Appraisal of Highway 30, LLC (excerpts) | ECOVEST-DOJ_0233766 | 574 | N/A | 574 | 575 | 576 | 580 | 583 | 585 | N/A | 586 | 587 |
| Appraisal of Indigo Sound Holdings, LLC (excerpts) | ECOVEST-DOJ_0213350 | 589 | 592 | 590 | 592-593 | 589 | 599 | 602 | 605 | N/A | N/A | 607 |
| Appraisal of Lakeshore Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0060367 | 609 | 609 | 610 | 610-611 | 611 | 616 | 619 | 622 | 623 | 624 | 625 |
| Appraisal of Land of the Lake Holdings, LLC (excerpts) | ECOVEST-DOJ_0233391 | 627 | N/A | 627 | 628 | 629 | 633 | 636 | 638 | N/A | 639 | 640 |
| Appraisal of Leland Forest Holdings, LLC (excerpts) | ECOVEST-DOJ_0111350 | 642 | N/A | 642 | 643-644 | 645 | 649 | 652 | 654 | 654 | 655 | 656 |
| Appraisal of Long Bay Marina Holdings, LLC (excerpts) | ECOVEST-DOJ_0132194 | 658 | 658 | 659 | 659-660 | 660 | 665 | 668 | 670 | 671 | 672 | 673 |
| Appraisal of Magnolia Bay Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0007074 | 675 | 675 | 676 | 676-677 | 677 | 682 | 685 | 687 | 688 | 689 | 690 |
| Appraisal of Maple Equestrian, LLC (excerpts) | ECOVEST-DOJ_0224289 | 692 | N/A | 692 | 693-694 | 694 | 698 | 701 | 703 | N/A | 704 | 705 |
| Appraisal of Meadow Creek Holdings, LLC (excerpts) | ECOVEST-DOJ_0233588 | 707 | N/A | 707 | 708 | 709 | 713 | 716 | 719 | N/A | N/A | 722 |
| Appraisal of Miramar Pointe Holdings, LLC (excerpts) | ECOVEST-DOJ_0201943 | 724 | 727 | 725 | 727-728 | 724 | 738 | 741 | 747 | N/A | N/A | 749 |
| Appraisal of Montego Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0186699 | 751 | 753 | 752-753 | 754-755 | 751 | 765 | 767-768 | 770 | N/A | N/A | 772 |
| Appraisal of Monterrey Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0102366 | 774 | 775 | 775 | 776 | 777 | 786 | 789 | 791 | 792 | N/A | 794 |
| Appraisal of Myers Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0226905 | 796 | N/A | 796 | 797 | 798 | 802 | 805 | 809 | N/A | 811 | 812 |
| Appraisal of Myrtle Cove Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0143459 | 814 | 815 | 815 | 816 | 817 | 821 | 824 | 827 | 828 | N/A | 830 |
| Appraisal of Myrtle West Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0047202 | 832 | 832 | 833 | 833-834 | 834 | 839 | 842 | 844 | 845 | 846 | 847 |
| Appraisal of Neuse Harbor Holdings, LLC (excerpts) | ECOVEST-DOJ_0190386 | 849 | 852 | 850 | 852-853 | 849 | 859 | 862 | 865 | N/A | N/A | 868 |
| Appraisal of New River Preserve Holdings, LLC (excerpts) | ECOVEST-DOJ_0123857 | 870 | 870 | 871 | 871-872 | 872 | 877 | 880 | 882 | 883 | 884 | 885 |
| Appraisal of North Bay Cove , LLC (excerpts) | ECOVEST-DOJ_0065163 | 887 | 887 | 888 | 888-889 | 889 | 894 | 897 | 899 | 900 | 901 | 902 |
| Appraisal of Ocean Grove Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0051546 | 904 | 904 | 905 | 905-906 | 906 | 911 | 914 | 916 | 917 | 918 | 919 |

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Name | Doc ID Beg | Pincite for Appraisal (SUF ¶ 116) | Pincites for SUF ¶ 78 | Pincites for SUF ¶ 65 | Pincites for SUF ¶ 64 | Pincites for SUF ¶ 62 | Pincites for SUF ¶ 74 | Pincites for SUF ¶ 76 | Pincites for SUF ¶ 101 | Pincites for SUF ¶ 102 | Pincites for SUF ¶ 69 | Pincites for SUF ¶ 72 |
| 51 | Appraisal of Piney Cumberland Holdings (excerpts) | ECOVEST-DOJ_0233863 | 921 | N/A | 921 | 922-923 | 923 | 927 | 930 | 932 | N/A | N/A | 935 |
| 52 | Appraisal of Port Quay Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0149896 | 937 | 938 | 938 | 939 | 940 | 949 | 952 | 956 | 957 | N/A | 959 |
| 53 | Appraisal of Punta Vista Grande Holdings, LLC  (excerpts | ECOVEST-DOJ_0176521 | 961 | 964 | 962 | 964-965 | 961 | 971 | 975 | 980 | N/A | N/A | 963 |
| 54 | Appraisal of Queen's Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0088837 | 985 | 985 | 986 | 986-987 | 987 | 992 | 995 | 998 | 999 | 1000 | 1001 |
| 55 | Appraisal of Red Oak Equestrian, LLC (excerpts) | ECOVEST-DOJ_0332259 | 1003 | N/A | 1003 | 1004 | 1005 | 1009 | 1012 | 1014 | N/A | 1016 | 1017 |
| 56 | Appraisal of River Trace Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0030858 | 1019 | 1019 | 1020 | 1020-1021 | 1021 | 1026 | 1029 | 1033 | 1034 | N/A | 1036 |
| 57 | Appraisal of Riverside Preserve Holdings, LLC (excerpts) | ECOVEST-DOJ_0091357 | 1038 | 1038 | 1039 | 1039-1040 | 1040 | 1045 | 1048 | 1050 | 1051 | 1052 | 1053 |
| 58 | Appraisal of Rocky Creek Plantation Acquisitions, LLC (ex | ECOVEST-DOJ_0118764 | 1055 | 1055 | 1056 | 1056-1057 | 1058 | 1062 | 1065 | 1071 | 1072 | 1073 | 1074 |
| 59 | Appraisal of Sanibel Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0012950 | 1076 | 1076 | 1077 | 1077-1078 | 1078 | 1083 | 1086 | 1089 | 1090 | 1091 | 1092 |
| 60 | Appraisal of Santo Bay Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0170095 | 1094 | 1095 | 1095 | 1096 | 1097 | 1106 | 1109 | 1112 | 1113 | N/A | 1115 |
| 61 | Appraisal of Seavista Resort Holdings, LLC (excerpts) | ECOVEST-DOJ_0026636 | 1117 | 1117 | 1118 | 1118-1119 | 1119 | 1124 | 1127 | 1130 | 1131 | 1132 | 1133 |
| 62 | Appraisal of Shining Star Properties XI, LLC (excerpts) | ECOVEST-DOJ_0333870 | 1135 | N/A | 1135 | 1136-1137 | 1137 | 1141 | 1144 | 1148 | N/A | N/A | 1151 |
| 63 | Appraisal of South Bay Cove Holdings, LLC (excerpts) | ECOVEST-DOJ_0034544 | 1153 | 1153 | 1154 | 1154-1155 | 1155 | 1160 | 1163 | 1165 | 1166 | 1167 | 1168 |
| 64 | Appraisal of Tortuga Trace Holdings, LLC (excerpts) | ECOVEST-DOJ_0179870 | 1170 | 1173 | 1171 | 1173-1174 | 1170 | 1185 | 1188 | 1193 | N/A | N/A | 1196 |
| 65 | Appraisal of Trout Creek, LLC (excerpts) | ECOVEST-DOJ_0224553 | 1198 | N/A | 1198 | 1199 | 1200 | 1204 | 1207 | 1210 | N/A | 1211 | 1212 |
| 66 | Appraisal of Tupelo Grove Holdings, LLC  (excerpts) | ECOVEST-DOJ_0167318 | 1214 | 1215 | 1215 | 1216 | 1217 | 1221 | 1224 | 1226 | 1227 | N/A | 1229 |
| 67 | Appraisal of Turkey Creek Resort Holdings, LLC (excerpts | ECOVEST-DOJ_0160558 | 1231 | 1232 | 1232 | 1233 | 1234 | 1238 | 1241 | 1243 | 1244 | N/A | 1246 |
| 68 | Appraisal of Waterway Grove Holdings, LLC (excerpts) | ECOVEST-DOJ_0095500 | 1248 | 1248 | 1249 | 1249-1250 | 1250 | 1255 | 1258 | 1260 | 1261 | 1262 | 1263 |
| 69 | Appraisal of White Oak Equestrian, LLC (excerpts) | ECOVEST-DOJ_0225003 | 1265 | N/A | 1265 | 1266-1267 | 1267 | 1271 | 1274 | 1276 | N/A | 1277 | 1278 |
| 70 | Appraisal of White Sands Village Holdings, LLC (excerpts | ECOVEST-DOJ_0056022 | 1280 | 1280 | 1281 | 1281-1282 | 1282 | 1287 | 1290 | 1292 | 1293 | 1294 | 1295 |
| 71 | Appraisal of Wilderness Lake Holdings, LLC (excerpts) | ECOVEST-DOJ_0113645 | 1297 | N/A | 1297 | 1298 | 1299 | 1303 | 1306 | 1313 | 1313 | 1314 | 1315 |

# Excerpts from appraisal of: Arcadian Quay

# Document ID: ECOVEST-DOJ_0074308

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Arcadian Quay LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Arcadian Quay, LLC
      30.27 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust172,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 30.27 | $61,850,730 |

ECOVEST-DOJ_0074309

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 30.27 | $198,432 |

The value of the easement gift as of December 15, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 30.27 | $61,850,730 |
| Less | | |
| Total After Value (Encumbered) | 30.27 | $198,432 |
| **Value of the Easement** | rounded | **$61,652,000** |

The encumbered property also includes one (1) reserved building for either one residence or one resort. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that the lot is not a build ready lot and will incur some development costs to make it so. The site will be constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee

ECOVEST-DOJ_0074310

organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0074311

## Table of Contents

**Certification** ................................................................................................................................................7

**Summary of the Appraisal** ............................................................................................................................8

**Assumptions and Limiting Conditions** .......................................................................................................9

**Legal Descriptions and Maps** ....................................................................................................................12

**INTRODUCTION:** .........................................................................................................................................23

**Scope of the Assignment** ...........................................................................................................................24

*Competency Provision* ................................................................................................................................28

*Appraisal of the Larger Parcel:* .................................................................................................................29

*Identification of the Subject Property* ........................................................................................................30

*Prior Sales History* ....................................................................................................................................30

*Ownership* ..................................................................................................................................................30

*Improvements* .............................................................................................................................................30

*Taxes* ..........................................................................................................................................................30

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..........................................................32

**SECTION I** ....................................................................................................................................................51

**APPRAISAL OF THE BEFORE VALUE** ......................................................................................................51

*Highest and Best Use Analysis:* ..................................................................................................................52
    a)    Legally Permissible ..........................................................................................................53
    b)    Physically Possible ...........................................................................................................53
    c)    Financially Feasible ..........................................................................................................53
    d)    Maximally Productive .......................................................................................................54
    e)    Sufficiency of Demand .....................................................................................................54
    Conclusion ..........................................................................................................................54

*Land Valuation:* ..........................................................................................................................................55
    Discounted Retail Sales Approach .....................................................................................55

**SECTION II** ................................................................................................................................................122

**APPRAISAL OF THE AFTER VALUE** ......................................................................................................122

*Highest and Best Use Analysis:* ................................................................................................................138
    a)    Legal permissibility .........................................................................................................139
    b)    Physical possibility and suitability ..................................................................................139
    c)    Financial feasibility .........................................................................................................139
    d)    Maximum productivity .....................................................................................................139
    e)    Sufficiency of demand .....................................................................................................139
    Conclusion: .........................................................................................................................140

*Land Valuation* ..........................................................................................................................................141
    Sales Comparison Approach ..............................................................................................141

*Estimate of the After Value:* ......................................................................................................................146

**Reconciliation** ..........................................................................................................................................152

ECOVEST-DOJ_0074312

**Addenda**.................................................................................................................................**153**

Qualifications.........................................................................................................................153

License...................................................................................................................................153

Arcadian Quay Unit Plans......................................................................................................153

Cost Estimates........................................................................................................................153

Development Letters...............................................................................................................153

Demographic Reports.............................................................................................................153

Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue.............153

Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

.................................................................................................................................................153

Crystal Lagoon Information and Supporting Documents........................................................153

Bowden Report – Before Scenario.........................................................................................153

Easement................................................................................................................................153

Baseline..................................................................................................................................153

ECOVEST-DOJ_0074313

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III    State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0074314

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located south of Carolina Bays Pkwy and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 15, 2016 |
| **Date of Donation** | December 15, 2016 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | R-4I (Inland Multi-Family Residential) |
| **Site:** | 30.27 Acres |
| **Easement:** | 30.27 Acres |
| **Reserved:** | One Residential Building Site |
| **Total:** | 30.27 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:    Residential Development<br>After:    Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0074315

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0074316

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0074317

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0074318

## Legal Descriptions and Maps

### LEGAL DESCRIPTION

ALL THAT CERTAIN PARCEL AS SHOWN ON PLAT ENTITLED BOUNDARY/ SUBDIVISION
SURVEY OF A PORTION OF PERMENTER BROTHERS HOLDINGS, LLC FOR PERMENTER
BROTHERS HOLDINGS, LLC DATED AUGUST 28, 2015, BY THE BRIGMAN COMPANY AND
RECORDED SEPTEMBER 17, 2015 IN THE HORRY COUNTY REGISTER OF DEEDS OFFICE
IN PLAT BOOK 267, PAGE 284.

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL AND
POINT BEING MARKED, BY HAVING 5/8 IRON REBAR SET AND HAVING SC STATE PLANE
COORDINATES OF N 739,013.93 AND E 2,695,046.26 THENCE A LINE BOUNDED TO THE NORTH
BY PARCEL 7 TO THE SOUTH BY THE SUBJECT TRACT, THE FOLLOWING BEARINGS AND DISTANCE

N 68° 19' 38" E 796.49' TO 5/8 IRON REBAR SET

THENCE A LINE BOUNDED TO THE NORTH BY PARCEL 7 AND BOUNDED TO THE SOUTH BY
THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

N 68° 52' 59" E 93.36' TO 5/8 IRON REBAR SET

THENCE A LINE BOUNDED TO THE EAST BY PARCEL 6 AND BOUNDED TO THE WEST BY
THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

S 23° 32' 26" E 1485.24' TO 5/8 IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY THE ATLANTIC INTRACOASTAL WATER WAY
AND BOUNDED TO THE NORTH BY THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES

S 69° 29' 54" W 687.48' TO 5/8 IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY PARCEL 7 AND BOUNDED TO THE EAST BY
THE SUBJECT TRACT, THE FOLLOWING BEARINGS AND DISTANCES:

N 24° 32' 43" W 632.96' TO 5/8 IRON REBAR SET
N 22° 58' 43" W 838.47' TO 5/8 IRON REBAR SET
THENCE BACK TO POINT OF BEGINNING.  TRACT CONTAINS 30.27 ACRES

ECOVEST-DOJ_0074319

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 30.27 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0074332

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0074333

**Identification of the Subject Property**

The subject is located south of Carolina Bays Pkwy and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 30.27 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Arcadian Quay, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0074337

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                   On-Site: No; Adjacent: No
- Observed distressed vegetation:               On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:                     On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 30.27 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0074350

Excerpts from Azalea Bay Appraisal

# Excerpts from appraisal of: Azalea Bay Resort

# Document ID: CC_IRSAUD00029215

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Azalea Bay Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:     Conservation Easement Appraisal
        Azalea Bay Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

CLARK ~ DAVIS, PC

CONFIDENTIAL

CC_IRSAUD00029215

Excerpts from Azalea Bay Appraisal

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **fair market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 269 | $48,034,468 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 269 | $2,816,950 |

CONFIDENTIAL                                        CC_IRSAUD00029216

Excerpts from Azalea Bay Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 269 | $48,034,468 |
| Less | | |
| Total After Value (Encumbered) | 269 | $2,816,950 |
| **Value of the Easement** | rounded | **$45,218,000** |

The encumbered property also includes up to five (5) reserved residential building sites and one (1) reserved recreational building site.  While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an additional value over that of the per acre value of the encumbered property.  It should be noted that these lots are not build ready lots and will incur some development costs to make them so.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

CONFIDENTIAL

CC_IRSAUD00029217

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

CONFIDENTIAL                                      CC_IRSAUD00029218

Excerpts from Azalea Bay Appraisal

## Table of Contents

**Certification** ...................................................................................................................... 7

**Summary of the Appraisal** ............................................................................................... 8

**Assumptions and Limiting Conditions** ........................................................................... 9

**Legal Descriptions and Maps** ........................................................................................ 12

**INTRODUCTION:** ........................................................................................................ 24

**Scope of the Assignment** ................................................................................................ 25

*Competency Provision* ..................................................................................................... 29

*Appraisal of the Larger Parcel:* ...................................................................................... 30

*Identification of the Subject Property* ............................................................................. 31

*Prior Sales History* .......................................................................................................... 31

*Ownership* ....................................................................................................................... 31

*Improvements* .................................................................................................................. 31

*Taxes* ............................................................................................................................... 31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* .............................. 35

**SECTION I.** .................................................................................................................... 48

**APPRAISAL OF THE BEFORE VALUE** ................................................................... 48

*Highest and Best Use Analysis:* ...................................................................................... 49

    a)    *Legally Permissible* ................................................................................ 50

    b)    *Physically Possible* ................................................................................ 50

    c)    *Financially Feasible* .............................................................................. 50

    d)    *Maximally Productive* ........................................................................... 51

    e)    *Sufficiency of Demand* .......................................................................... 51

    Conclusion .................................................................................................. 51

*Land Valuation:* .............................................................................................................. 52

    **Discounted Retail Sales Approach** ............................................................... 52

**SECTION II** .................................................................................................................. 105

**APPRAISAL OF THE AFTER VALUE** ..................................................................... 105

*Highest and Best Use Analysis:* .................................................................................... 120

    a)    Legal permissibility .............................................................................. 121

    b)    Physical possibility and suitability ....................................................... 121

    c)    Financial feasibility .............................................................................. 121

    d)    Maximum productivity .......................................................................... 121

    e)    Sufficiency of demand ........................................................................... 121

    Conclusion: ................................................................................................ 122

*Land Valuation* .............................................................................................................. 123

    Sales Comparison Approach ...................................................................... 123

*Estimate of the After Value:* .......................................................................................... 145

**Reconciliation** ............................................................................................................. 151

**CONFIDENTIAL**

CC_IRSAUD00029219

**Addenda**...........................................................................................................**152**

    Qualifications.............................................................................................152

    License.......................................................................................................152

    Azalea Bay Resort Unit Plans....................................................................152

    RS Means Cost Estimates..........................................................................152

    Development Letters...................................................................................152

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .............152

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ...................................................................................................................152

    Bowden Report – Before Scenario..............................................................152

    Easement...................................................................................................152

    Baseline.....................................................................................................152

CONFIDENTIAL

CC_IRSAUD00029220

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
SC License #AB 6878 CG

State Certified General Real Property Appraiser

CONFIDENTIAL

CC_IRSAUD00029221

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on Long Bay Road and north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | R2A Resort Residential |
| **Site:** | 269 +- Acres |
| **Easement:** | 269 +- Acres |
| **Reserved:** | Five (5) residential and One (1) recreational sites within a 21 +- acre Building Zone |
| **Total:** | 269 +- Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

CONFIDENTIAL                                          CC_IRSAUD00029222

Excerpts from Azalea Bay Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

CONFIDENTIAL

CC_IRSAUD00029223

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

CONFIDENTIAL                                        CC_IRSAUD00029224

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

CONFIDENTIAL

CC_IRSAUD00029225

**Legal Descriptions and Maps**

ALL AND SINGULAR, that certain piece, parcel or lot of land, situate, lying and being in the City of North Myrtle Beach, Horry County, South Carolina, containing 269.41 Acres, more or less, as shown and described on a Recombination Plat entitled "Map of 269.41 ± Acres of Land", prepared by DDC Engineers, dated February 19, 2015, and recorded March 19, 2015, in Plat Book 265, at Page 188, reference to which is hereby craved as forming a part and parcel hereof.

CONFIDENTIAL

CC_IRSAUD00029226

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 269 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

CONFIDENTIAL

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

CONFIDENTIAL

Excerpts from Azalea Bay Appraisal

Area Data

## Identification of the Subject Property

The Subject Property is located on Long Bay Road, north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 269+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Azalea Bay Resort, LLC

### Improvements

None

### Taxes

| | |
|---|---|
| Name: | SLF IV/SEI SANDRIDGE LLC |
| Address: | 2002 OAK ST STE 200 MYRTLE BEACH SC 29577 |
| Tax Year: | 2015 |
| District/Levy: | 550 / 185.5 |
| City/Levy: | NM / 039.3 |
| Total Appraisal: | 27,460 |
| Total Assessed: | 1,650 |

| Assessment Ratio: | Land Appraisal: | Building Appraisal: |
|---|---|---|
| 6% | 27,460 | 0 |

## Property Information

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 129-00-07-108 |
| PIN: | 348-00-00-0021 |
| Acres: | 163.22 |
| Description: | 3600' W/S COATS RD |

## Taxes

| | |
|---|---|
| County Tax: | $306.08 |
| City Tax: | $64.85 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Total Taxes: | $370.93 |
| Total Paid: $370.93 | |

CLARK ~ DAVIS, PC

31

CONFIDENTIAL

CC_IRSAUD00029245

Excerpts from Azalea Bay Appraisal

Site Data

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On–Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On–Site: No; Adjacent: No
- Observed staining of soils:  On–Site: No; Adjacent: No
- Observed distressed vegetation:  On–Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On–Site: No; Adjacent: No
- Observed noticeable odors:  On–Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 269+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

CONFIDENTIAL                                                                    CC_IRSAUD00029258

Excerpts from appraisal of:
Azul Bay Resort

Document ID:
ECOVEST-DOJ_0163768

Excerpts from Azul Bay Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Azul Bay Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Azul Bay Resort, LLC
       302.65 acre tract, Aransas County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0163768

Excerpts from Azul Bay Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Strategic Solutions in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct. No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions. I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0163769

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 19, 2017, and before the Subject Property is encumbered by the easement is as follows:

| Unencumbered | Acres | FMV |
|---|---|---|
| Total Before Value | 302.65 | $81,321,630 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 19, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value (Encumbered and outparcel) | 302.65 | $3,397,063 |

The value of the easement gift as of December 19, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Total Before Value (Unencumbered) | 302.65 | $81,321,630 |
| Less | | |
| Total After Value (Encumbered and outparcel) | 302.65 | $3,397,063 |
| **Value of the Easement** | rounded | **$77,925,000** |

The encumbered property also includes one (1) reserved building zone that permits one residence, either the current existing one or a replacement. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain

ECOVEST-DOJ_0163770

limited building rights, as defined by the easement; therefore, I feel this site requires an additional value over that of the per acre value of the encumbered property.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided to value this building area at $5,000 per acre, or $17,500.  This value will be added to the indicated fair market value of the encumbered property.

There is also a 9-acre outparcel that will be valued separately from the development and excluded from the easement.  Those valuations are located later in the appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                              State Certified General Real Property Appraiser
TX License #TX 1380003

ECOVEST-DOJ_0163771

Excerpts from Azul Bay Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Belinda Sward. Each serve to comment on the impact of the storm on the prospective projects.

ECOVEST-DOJ_0163772

Excerpts from Azul Bay Appraisal

**CLARK ~ DAVIS, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

September 8, 2017

Adam Lloyd
Ecovest Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

ECOVEST-DOJ_0163773

Excerpts from Azul Bay Appraisal

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Azul Bay Resort will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.


Very Truly Yours,


Claud Clark III

ECOVEST-DOJ_0163774

Excerpts from Azul Bay Appraisal



November 13, 2017

Mr. Adam Lloyd
Chief Operating Officer/Senior Vice President
ECOVEST CAPITAL INC
3424 Peachtree Rd NE
Suite 1850
Atlanta GA 30826

## RE: HURRICANE HARVEY AND AZUL BAY RESORT, ARANSAS COUNTY, TEXAS

Dear Adam,

Thank you for your request for a professional opinion regarding potential impact from Hurricane Harvey to the market analysis and recommendations for Azul Bay Resort. Hurricanes and other natural disasters can and have impacted state and local economies and housing markets. This is the case with Hurricane Harvey, particularly in Houston.

As written in our report for Azul Bay Resort, dated September 8, 2017, it was widely reported that Houston's economy would suffer a significant blow. The following economic forecasts were reported at that time.

- Moody's Analytics estimated a loss of as much as $10 billion in economic output, plus another $20 billion in property damage from flooding. They further estimated that economic output could be flat for two months following the storm but would likely grow thereafter.

- As reported by Moody's Analytics, unlike New Orleans after Hurricane Katrina, the greater Houston economy is better equipped to absorb the blow because of its size, diversity and prominence as the nation's energy hub.

- Regarding tourism, Moody's Analytics conducted a study of economic impact from hurricanes dating to 1980. According to Mark Zandi, Chief Economist of Moody's, approximately two-thirds of economic losses can be traced to property damage while a third is due to lost economic output.

- And much of the losses in the region are later offset by economic activity. Most damaged homes, businesses and infrastructure are repaired or rebuilt, generating economic activity that offsets the cost of damage from a natural disaster. And at least some of the disruptions to retail and other businesses are made up in the following weeks and months as consumers release pent-up demand.

16862 El Camino Real · Suite 200 · San Diego, CA 92130
Office 858.847.2738 · Cell 415.341.4538 · StrategicSolutionsAlliance.com

1

ECOVEST-DOJ_0163775

Excerpts from Azul Bay Appraisal

- Moody's Analytics projected that the recovery process would result in employment growth. Workers generally do not lose their jobs following a disaster like Harvey unless they were temporary to begin with, but firms might be hesitant to hire as many cope with lost output and a need to rebuild. By the beginning of next year, job growth will be stronger than it would have been absent Harvey due to pent-up demand for workers. This will be especially pronounced in the construction industry, as the need for rebuilding drives a surge in construction hiring.

Since our report impacts appear to have been similar to projections. In Houston, America's fourth-largest city, even people who were not directly affected by Harvey are still facing daily disruptions. Road closures persist on some of the area's major freeways, stretching 20-minute commutes into two hours, trying workers' patience and dampening productivity. Additionally, the will to rebuild is being impacted by a shortage of construction workers.

The situation in Corpus Christi (near Rockport) has also been hard-hit. Yet, the state's energy and petrochemical industries are working to get back to full strength. At the height of the storm, 20 Texas oil refineries were closed or partially shut down. These are short-term setbacks as the market recovers.

Our experience over the years with various markets following hurricanes, including in Florida and North and South Carolina, has been similar. The recovery period typically offsets the economic damage and within even one year of devastation there is market recovery, and growth. The Houston and Texas economies are overcoming the setbacks quickly, just like other regions have following a natural disaster. In fact, when natural disasters do show up in economic data, it is usually as a small growth bump a few months after the storm, when rebuilding accelerates and insurance checks are cut.

Similar to other coastal markets throughout the country, tourism and housing investment will accelerate once recovery from a natural disaster has occurred.  A short-term setback, followed by a correction and economic growth is what we can expect for Texas, including Rockport and the Corpus Christi Metropolitan Area.  Azul Bay Resort will benefit from this recovery.

Thank you for the potential opportunity to work with you and the EcoVest team.

Very truly yours,

*Belinda Sward*

Belinda Sward
Founder and Principal
Strategic Solutions Alliance

8665 Gibson Ave. Suite 524 • Saratoga CA 95070
Office 866-417-2784 • Cel 858.735.4550 • StrategicSolutionsAlliance.com

2

ECOVEST-DOJ_0163776

## Table of Contents

*Certification* ............................................................................................................................. 12

**Summary of the Appraisal** ...................................................................................................... 13

**Assumptions and Limiting Conditions** ................................................................................... 14

**Legal Descriptions and Maps** ................................................................................................. 17

**INTRODUCTION:** .................................................................................................................. 32

**Scope of the Assignment** ......................................................................................................... 33

*Competency Provision* ........................................................................................................... 37

*Appraisal of the Larger Parcel:* ............................................................................................ 38

*Identification of the Subject Property* ................................................................................... 39

*Prior Sales History* ............................................................................................................... 39

*Ownership* ............................................................................................................................. 39

*Improvements* ....................................................................................................................... 39

*Taxes* ..................................................................................................................................... 39

*Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ........................ 42

**SECTION I** .............................................................................................................................. 56

**APPRAISAL OF THE BEFORE VALUE** ............................................................................. 56

*Highest and Best Use Analysis:* ............................................................................................ 57
    a) *Legally Permissible* ...................................................................................................... 58
    b) *Physically Possible* ...................................................................................................... 58
    c) *Financially Feasible* ..................................................................................................... 58
    d) *Maximally Productive* .................................................................................................. 59
    e) *Sufficiency of Demand* ................................................................................................. 59
    Conclusion ......................................................................................................................... 59

*Land Valuation:* .................................................................................................................... 63
    **Discounted Retail Sales Approach** .............................................................................. 63

**SECTION II** ............................................................................................................................ 137

**APPRAISAL OF THE AFTER VALUE** ................................................................................ 137

*Highest and Best Use Analysis:* ............................................................................................ 156
    a) Legal permissibility ...................................................................................................... 157
    b) Physical possibility and suitability ............................................................................... 157
    c) Financial feasibility ...................................................................................................... 157
    d) Maximum productivity ................................................................................................. 157
    e) Sufficiency of demand .................................................................................................. 158
    Conclusion: ........................................................................................................................ 158

*Land Valuation* ..................................................................................................................... 159
    Sales Comparison Approach .............................................................................................. 159

*Estimate of the After Value:* ................................................................................................. 170

**Reconciliation** ........................................................................................................................ 176

ECOVEST-DOJ_0163777

**Addenda**..................................................................................................................**178**

    Qualifications ..............................................................................................................178

    License .........................................................................................................................178

    Azul Bay Resort Unit Plans ........................................................................................178

    Cost Estimates.............................................................................................................178

    Development Letters ....................................................................................................178

    Demographic Reports ..................................................................................................178

    Mineral Assessment Report ........................................................................................178

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............178

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ......................................................................................................................................178

    Crystal Lagoon Information and Supporting Documents ............................................178

    Strategic Solutions Report – Before Scenario.............................................................178

    Easement .....................................................................................................................178

    Baseline.......................................................................................................................178

ECOVEST-DOJ_0163778

Excerpts from Azul Bay Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being  encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                           State Certified General Real Property Appraiser
TX License #TX 1380003

ECOVEST-DOJ_0163779

Excerpts from Azul Bay Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Highway 1069, west of the town of Rockport in Aransas County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Property Inspection:** | June 13, 2017 |
| **Date of Value Estimates:** | December 19, 2017 |
| **Date of Donation** | December 19, 2017 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 302.65 Acres |
| **Easement:** | 293.65 Acres |
| **Excluded:** | 9 Acre Outparcel |
| **Reserved:** | 3.5 Acre Building Zone located within the easement |
| **Total:** | 302.65 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space with a 3.5-acre Building Zone and a 9-acre outparcel |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0163780

Excerpts from Azul Bay Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0163781

Excerpts from Azul Bay Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0163782

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0163783

Excerpts from Azul Bay Appraisal

## Legal Descriptions and Maps

0000358511

File No.
County Clerk, Aransas County, Texas

EXHIBIT "A"

- with a curve turning to the left having an arc length of 220.84 feet, with a radius of 7253 ft to et, with a delta angle of 05°05'02", having a chord bearing of South 71°00.43" East, and a chord length of 239.91 feet for a point of tangency for the herein described tract.

- South 24°28'13"3 east, a distance of 226.96 feet to a point of curvature to the right for the herein described tract.

- with a curve turning to the right having an arc length of 200.85 feet, with a radius of 831.41 feet, with a delta angle of 18°11'59", having a chord bearing of South 64°24"04" East, and a chord length of 203.35 feet to a point of tangency for the herein described tract.

- South 50°09'04" East a distance of 171.94 feet to the POINT OF BEGINNING within these metes and bounds a 902.66 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (feet) 84, South central zone (4204).

A drawing is made to find this accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision on or June  2012 and are true and correct to the best of my knowledge and belief.

Urban Surveying, Inc.
By: Edward R. Williams
Registered Professional Land Surveyor
Texas No. 5816

STATE OF TEXAS
MICHAEL R. WILLIAMS
5816

572208201 - Tract #1 - 902.66 Acres.

### LESS AND EXCEPT:

9.00 ACRES

THE STATE OF TEXAS}

THE COUNTY OF ARANSAS}

BEING a 9.00 acre tract of land situated in a portion of the William S. Tuten Survey, Abstract No. 202, out of and part of the C.B. Lucas Ranch Subdivision according to the established map or plat thereof as recorded in Volume 3, Page 7 of the Map Records, Aransas County, Texas, and being a portion out of a called 1107.81 acre tract of land described by General Warranty Deed dated March 23, 2007, conveyed from Tidwell Coastal Ranch, Ltd. to Waterfront Land Investments Fund I, L.P. as recorded in Instrument No. 280234 of the Official Public Records, Aransas County, Texas, said 9.00 acre tract being particularly described by metes and bounds as follows:

COMMENCING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the northwest line of Farm-to-Market No. 1069 (a Variable Width Right-of-Way – 80-foot minimum) and the southeast line of the aforesaid 1107.81 acre tract, from which a found 5/8" steel rebar marking the intersection of the northwest right-of-way line of said Farm-to-Market No. 1069 and the southwest line of Port Bay Club Road (a 60-foot Right-of-Way) and being the east corner of said 1107.81 acre tract bears North 28°35'05" East, a distance of 5347.86 feet;

THENCE, North 72°17'48" West, departing the northwest right-of-way line of said Farm-to-Market No. 1069, over and into said 1107.81 acre tract, a distance of 4284.91 feet to a point marking the POINT OF BEGINNING and the east most corner of the herein described tract;

Page 4 of 5

ECOVEST-DOJ_0163784

Excerpts from Azul Bay Appraisal

EXHIBIT "A"

0000358511

File No. ........................................
County Clerk, Aransas County, Texas

**THENCE**, South 54°46'16" West, a distance of 729.12 feet to a point for the south corner of the herein described tract;

**THENCE**, North 35°09'00" West, a distance of 731.50 feet to a point for the west corner of the herein described tract;

**THENCE**, North 64°36'28" East, a distance of 386.46 feet to a point for the north corner of the herein described tract;

**THENCE**, South 89°07'12" East, a distance of 605.32 feet to an angle point for the herein described tract;

**THENCE**, South 35°33'46" East, a distance of 143.00 feet to the **POINT OF BEGINNING**, **CONTAINING**

within these metes and bounds a 9.00 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204). Reference

is made to that Plat accompanying this Legal Description.



The foregoing legal description and accompanying survey plat were prepared from an actual survey made on
the ground under my supervision in June, 2017 and are true and correct to the best of my knowledge and belief.

........................................ 11/09/2017

Urban Surveying, Inc. By:
Michael K. Williams

Registered Professional Land Surveyor Texas
No. 6616

S22090.01 – Exclusion Area: 9.00 Acres

ECOVEST-DOJ_0163785

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 302.65 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction

ECOVEST-DOJ_0163801

Area Data

- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales

ECOVEST-DOJ_0163802

Area Data

## Identification of the Subject Property

The subject is located off Highway 1069, west of the town of Rockport in Aransas County, Texas. The site contains 302.65 acres.

### Prior Sales History

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### Ownership

Azul Bay Resort, LLC

### Improvements

None

### Taxes

ECOVEST-DOJ_0163806

Excerpts from Azul Bay Appraisal

Site Data

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                    On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:                    On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 302.65 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0163819

# Excerpts from appraisal of: Beech Springs Resort

# Document ID: ECOVEST-DOJ_0020711

Excerpts from Beech Springs Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ‡
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Beech Springs Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:    Conservation Easement Appraisal
       Beech Springs Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

ECOVEST-DOJ_0020711

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 253.57 | $25,548,381 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 253.57 | $456,426 |

ECOVEST-DOJ_0020712

Excerpts from Beech Springs Resort Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 253.57 | $25,548,381 |
| Less | | |
| Total After Value (Encumbered) | 253.57 | $456,426 |
| **Value of the Easement** | rounded | **$25,092,000** |

The Subject Property has two (2) reserved residential building sites and two (2) reserved recreational building sites. While these sites do maintain limited building rights, as defined by the easement, the rural location of the property, limits their value above that of the encumbered property. It should also be noted that these lots are not build ready lots and will require development costs to make them so, such as access, lot clearing, and utility installation. Due to these facts, I do not feel that these sites warrant an additional value above that of the overall per acre value of the encumbered tract. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0020713

Excerpts from Beech Springs Resort Appraisal

Claud Clark III                    State Certified General Real Property Appraiser
KY License #5003

ECOVEST-DOJ_0020714

## Table of Contents

Certification .................................................................................................................................. 7

Summary of the Appraisal .............................................................................................................. 8

Assumptions and Limiting Conditions .......................................................................................... 9

Legal Descriptions and Maps ....................................................................................................... 12

INTRODUCTION: ....................................................................................................................... 25

Scope of the Assignment ............................................................................................................... 26

    *Competency Provision* ............................................................................................................. 30

    *Appraisal of the Larger Parcel:* ............................................................................................. 31

    *Identification of the Subject Property* ..................................................................................... 32

    *Prior Sales History* ................................................................................................................. 32

    *Ownership* ................................................................................................................................ 32

    *Improvements* ........................................................................................................................... 32

    *Taxes* ........................................................................................................................................ 32

Area Data – Land Between the Lakes .......................................................................................... 33

    *Neighborhood Data – Trigg County, KY* ................................................................................ 36

SECTION I. .................................................................................................................................. 61

APPRAISAL OF THE BEFORE VALUE .................................................................................... 61

    *Highest and Best Use Analysis:* ............................................................................................. 62
        *a)*   *Legally Permissible* ...................................................................................................... 63
        *b)*   *Physically Possible* ...................................................................................................... 63
        *c)*   *Financially Feasible* ..................................................................................................... 63
        *d)*   *Maximally Productive* ................................................................................................... 64
        *e)*   *Sufficiency of Demand* .................................................................................................. 64
        Conclusion ........................................................................................................................... 64

    *Land Valuation:* ...................................................................................................................... 65
        *Discounted Retail Sales Approach* ................................................................................... 65

SECTION II .................................................................................................................................. 125

APPRAISAL OF THE AFTER VALUE ....................................................................................... 125

    *Highest and Best Use Analysis:* ............................................................................................. 137
        *a)*   Legal permissibility ......................................................................................................... 138
        *b)*   Physical possibility and suitability .................................................................................. 138
        *c)*   Financial feasibility ......................................................................................................... 138
        *d)*   Maximum productivity ..................................................................................................... 138
        *e)*   Sufficiency of demand ...................................................................................................... 138
        Conclusion: ......................................................................................................................... 139

    *Land Valuation* ....................................................................................................................... 140
        Sales Comparison Approach .............................................................................................. 140

    *Estimate of the After Value:* ................................................................................................... 145

ECOVEST-DOJ_0020715

**Reconciliation** ........................................................................................................................................**151**

**Addenda** ..................................................................................................................................................**152**

    Qualifications ....................................................................................................................................152

    License ...............................................................................................................................................152

    RS Means Cost Estimate ..................................................................................................................152

    Development Letters .........................................................................................................................152

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............152

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ............................................................................................................................................................152

    Sewer Analysis ..................................................................................................................................152

    Bowden Report – Before Scenario ...................................................................................................152

    Easement ...........................................................................................................................................152

    Baseline .............................................................................................................................................152

ECOVEST-DOJ_0020716

Excerpts from Beech Springs Resort Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                           State Certified General Real Property Appraiser
KY License #5003

ECOVEST-DOJ_0020717

Excerpts from Beech Springs Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located on Lake Barkley in Trigg County, Kentucky. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purposes, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 253.57 Acres |
| **Easement:** | 253.57 Acres |
| **Reserved:** | Two Residential Building Sites and Two Recreational Building Site |
| **Total:** | 253.57 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:     Residential Villa and Motor Coach Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0020718

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Kentucky or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0020719

Excerpts from Beech Springs Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0020720

Excerpts from Beech Springs Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0020721

Excerpts from Beech Springs Resort Appraisal

**Legal Descriptions and Maps**

Being the following described real estate, situated within in Trigg County, Kentucky, and being that property which was conveyed to BDJD, LLC, by deed of record in Deed Book 249, Page 334, in the Court Clerk's Office of Trigg County, Kentucky, and being more particularly described as follows:

**BEGINNING** at a ½-inch rebar found in the west right-of-way of Beech Springs Road, 30 feet from the center, at the northeast corner of Cunningham, Deed Book 112, Page 438; runs thence with Cunningham as follows:

South 87 degrees 14 minutes 01 seconds West, passing a 1-inch rod found at 23.12 feet and continuing 2474.30 feet, for a total distance of 2497.42 feet to a 5/8-inch rebar with Byrd cap found;

South 20 degrees 25 minutes 53 seconds East, 2864.81 feet to a 5/8-inch rebar with Byrd cap found;

North 89 degrees 36 minutes 59 seconds East, 346.57 feet to a 5/8-inch rebar with Byrd cap found in the west line of Mathis, Deed Book 276, Page 235; thence with Mathis

South 23 degrees 04 minutes 25 seconds West, 188.34 feet to a 5/8-inch rebar with Byrd cap found at the northwest corner of Noel, Deed Book 80, Page 30; thence with Noel as follows:

South 19 degrees 27 minutes 30 seconds West, 436.52 feet to a 5/8-inch rebar with Byrd cap found;

South 75 degrees 02 minutes 02 seconds East, 652.72 feet to a 5/8-inch rebar with Byrd cap found in the west right-of-way of Beech Springs Road, 30 feet from the center; thence with the right-of-way of Beech Springs Road as follows:

South 58 degrees 44 minutes 22 seconds West, 14.34 feet to a 5/8-inch rebar with Byrd cap found;

South 62 degrees 26 minutes 11 seconds West, 386.73 feet to a 5/8-inch rebar with Byrd cap found;

South 58 degrees 15 minutes 55 seconds West, 329.89 feet to a 5/8-inch rebar with Byrd cap found;

Along a curve to the left 160.59 feet, having a radius of 335.00 feet, and being subtended by a chord bearing and distance of South 43 degrees 17 minutes 06 seconds West, 159.06 feet to a 5/8-inch rebar with Byrd cap found at the northeast corner of Trammell Hill Estates, Plat Cabinet 1, Page 9; thence with Trammell Hill Estates and with Gosnell, Deed Book 241, Page 209, each a portion of the way, North 74 degrees 09 minutes 22 seconds West, 980.66 feet to a steel fence post found at the northeast corner of Williams, Deed Book 234, Page 598; thence with Williams and with Lot 14 of Barkley Beach Estates, Plat Cabinet A, Page 86, each a portion of the way, North 79 degrees 11 minutes 21 seconds West, 1034.29 feet to a 3/8-inch rebar found in a rock pile at the northeast corner of Lot 15; thence with Lot 15 North 79 degrees 53 minutes 42 seconds West, 233.63 feet to a 5/8-inch rebar with Byrd cap found at the southeast corner of Lot 16; thence with Lot 16 North 03 degrees 11 minutes 41 seconds East, 147.43 feet to a ½-inch rebar found at the southeast corner of Lot 17; thence with Lot 17 North 03 degrees 48 minutes 59 seconds East, 89.56 feet to a ½-inch rebar found at the southeast corner of Lot 18; thence with Lot 18 North 03 degrees 32 minutes 51 seconds East, 99.68 feet to a ½-inch rebar found at the southeast corner of Lot 19; thence with Lot 19 North 05 degrees 04 minutes 48 seconds East, 320.97 feet to a concrete monument found at a common

ECOVEST-DOJ_0020722

Excerpts from Beech Springs Resort Appraisal

corner of the United States Army Corps of Engineers, Lake Barkley Project; thence with the Lake Barkley Project as follows:

North 06 degrees 34 minutes 40 seconds East, 1666.12 feet to a concrete monument found;

South 81 degrees 49 minutes 40 seconds East, 478.56 feet to a concrete monument found;

North 18 degrees 00 minutes 34 seconds West, 749.05 feet to a ½-inch rebar found;

North 21 degrees 02 minutes 01 seconds East, 346.30 feet to a ½-inch rebar found;

North 31 degrees 18 minutes 03 seconds East, 471.26 feet to a ½-inch rebar found;

North 29 degrees 16 minutes 15 seconds East, 98.89 feet to a ½-inch rebar found;

North 24 degrees 47 minutes 06 seconds East, 148.47 feet to a concrete monument found;

North 25 degrees 21 minutes 07 seconds West, 169.38 feet to a concrete monument found;

North 38 degrees 58 minutes 32 seconds East, 35.84 feet to a steel fence post found;

North 32 degrees 26 minutes 10 seconds East, 202.10 feet to a steel fence post found;

North 35 degrees 44 minutes 00 seconds East, 129.36 feet to a steel fence post found;

North 24 degrees 17 minutes 51 seconds East, 142.75 feet to a steel fence post found;

North 10 degrees 19 minutes 41 seconds East, 107.34 feet to a steel fence post found;

North 17 degrees 36 minutes 58 seconds East, 150.98 feet to a steel fence post found;

North 04 degrees 17 minutes 05 seconds East, 181.84 feet to a steel fence post found;

North 09 degrees 26 minutes 10 seconds East, 212.10 feet to a steel fence post found;

North 34 degrees 55 minutes 44 seconds East, 65.57 feet to a steel fence post found;

North 19 degrees 25 minutes 10 seconds East, 117.92 feet to a steel fence post found;

North 51 degrees 50 minutes 58 seconds East, 157.21 feet to a steel fence post found;

North 59 degrees 48 minutes 10 seconds West, 200.83 feet to a steel fence post found;

North 32 degrees 23 minutes 38 seconds West, 89.17 feet to a steel fence post found;

North 02 degrees 13 minutes 13 seconds East, 142.32 feet to a steel fence post found;

North 69 degrees 55 minutes 14 seconds West, 260.88 feet to a steel fence post found;

North 40 degrees 34 minutes 49 seconds West, 109.53 feet to a steel fence post found;

North 21 degrees 43 minutes 25 seconds West, 118.78 feet to a concrete monument found;

North 42 degrees 23 minutes 16 seconds East, 329.99 feet to a concrete monument found;

North 86 degrees 53 minutes 36 seconds East, 129.55 feet to a steel fence post found;

South 83 degrees 12 minutes 32 seconds East, 197.51 feet to a steel fence post found;

South 60 degrees 10 minutes 02 seconds East, 134.77 feet to a steel fence post found;

South 33 degrees 07 minutes 40 seconds East, 98.95 feet to a steel fence post found;

South 20 degrees 53 minutes 41 seconds East, 130.39 feet to a steel fence post found;

South 26 degrees 35 minutes 45 seconds West, 190.06 feet to a steel fence post found;

South 59 degrees 53 minutes 16 seconds East, 163.57 feet to a steel fence post found;

South 29 degrees 16 minutes 07 seconds East, 137.59 feet to a steel fence post found;

South 27 degrees 44 minutes 05 seconds East, 198.66 feet to a steel fence post found;

South 04 degrees 33 minutes 47 seconds East, 142.05 feet to a steel fence post found;

South 59 degrees 01 minutes 07 seconds East, 164.14 feet to a steel fence post found;

South 23 degrees 54 minutes 42 seconds East, 115.93 feet to a steel fence post found;

South 16 degrees 40 minutes 14 seconds East, 152.13 feet to a steel fence post found;

North 77 degrees 29 minutes 18 seconds East, 191.93 feet to a 5/8-inch rebar with Byrd cap found;

North 07 degrees 17 minutes 53 seconds East, 129.81 feet to a steel fence post found;

North 04 degrees 51 minutes 43 seconds West, 173.79 feet to a steel fence post found;

ECOVEST-DOJ_0020723

Excerpts from Beech Springs Resort Appraisal

North 11 degrees 24 minutes 57 seconds East, 160.42 feet to a 5/8-inch rebar with Byrd cap found;
North 32 degrees 13 minutes 03 seconds West, 114.79 feet to a steel fence post found;
North 32 degrees 11 minutes 00 seconds East, 99.62 feet to a steel fence post found;
North 35 degrees 58 minutes 47 seconds West, 77.92 feet to a steel fence post found;
North 14 degrees 20 minutes 54 seconds East, 131.39 feet to a steel fence post found;
North 12 degrees 07 minutes 09 seconds West, 118.23 feet to a steel fence post found;
North 59 degrees 50 minutes 59 seconds East, 66.66 feet to a steel fence post found;
South 65 degrees 25 minutes 58 seconds East, 65.63 feet to a steel fence post found;
South 62 degrees 47 minutes 37 seconds East, 64.08 feet;
South 45 degrees 35 minutes 22 seconds East, 40.02 feet;
South 30 degrees 08 minutes 22 seconds East, 76.84 feet;
South 46 degrees 20 minutes 22 seconds East, 79.14 feet to a steel fence post found in the west line of Martin, Deed Book 138, Page 223; thence with Martin as follows
South 16 degrees 17 minutes 28 seconds West, 64.34 feet to a ½-inch rebar found;
South 17 degrees 11 minutes 46 seconds East, 175.43 feet to a ½-inch rebar found;
South 38 degrees 56 minutes 30 seconds East, 137.28 feet to a ½-inch rebar found;
South 57 degrees 48 minutes 36 seconds East, 260.44 feet to a 1-inch pipe found at the southwest corner of Lot 27 of Beech Spring Acres, Miscellaneous Book 2, Page 344; thence with Lot 27 South 62 degrees 24 minutes 51 seconds East, 195.73 feet to a 5/8-inch rebar with Byrd cap found in the right-of-way of Beech Springs Road; thence with the right-of-way as follows:
South 62 degrees 12 minutes 42 seconds East, 37.93 feet to a 5/8-inch rebar with Byrd cap found;
South 02 degrees 26 minutes 53 seconds West, 19.67 feet to a 5/8-inch rebar with Byrd cap found;
Along a curve to the left 78.45 feet, having a radius of 119.50 feet, and being subtended by a chord bearing and distance of South 16 degrees 10 minutes 07 seconds East, 77.05 feet to a 5/8-inch rebar with Byrd cap found;
South 32 degrees 24 minutes 02 seconds East, 35.53 feet to a 5/8-inch rebar with Byrd cap found;
South 29 degrees 35 minutes 00 seconds East, 788.96 feet to a 5/8-inch rebar with Byrd cap found;
Along a curve to the right 392.77 feet, having a radius of 924.09 feet, and being subtended by a chord bearing and distance of South 17 degrees 26 minutes 55 seconds East, 389.82 feet to a 5/8-inch rebar with Byrd cap found;
Along a curve to the right 236.13 feet, having a radius of 1689.00 feet, and being subtended by a chord bearing and distance of South 01 degrees 14 minutes 15 seconds East, 235.94 feet to a 5/8-inch rebar with Byrd cap found;
Along a curve to the right 209.32 feet, having a radius of 4246.00 feet, and being subtended by a chord bearing and distance of South 04 degrees 47 minutes 28 seconds West, 209.29 feet to the Point of Beginning and containing 253.56 acres, more or less, as surveyed by Thomas A. Young, Tennessee Registered Land Surveyor Number 2265, of L. I. Smith & Associates, 302 North Caldwell Street, Paris, TN 38242, on July 20, 2015. Bearings are based upon the Kentucky State Plane Coordinate System, South Zone, NAD 83.

July 20, 2015

ECOVEST-DOJ_0020724

Thomas A. Young, R.L.S.
Kentucky Registration No. 3850

File: KY T 19-69 / 8278

ECOVEST-DOJ_0020725

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow.  The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 253.57 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0020737

Excerpts from Beech Springs Resort Appraisal

Introduction

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0020738

Excerpts from Beech Springs Resort Appraisal

Introduction

## Identification of the Subject Property

The Subject Property is located off Beech Spring Rd. on Lake Barkley in Trigg County, Kentucky.   The site contains 253.57 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

BDJD, LLC

### Improvements

None

### Taxes





ECOVEST-DOJ_0020742

Site Data

- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

            On-Site: No; Adjacent: No

- Observed noticeable odors:      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 253.57 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0020767

# Excerpts from appraisal of: Bellavista Grove

# Document ID: ECOVEST-DOJ_0042959

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

November 30, 2016

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE:     Conservation Easement
        Appraisal Bellavista Grove
        116.55 acre tract, Jasper County, South Carolina

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0042959

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of October 28, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of October 28, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 116.55 | $30,345,203 |

The value of the Subject Property, subject to a perpetual conservation easement as of October 28, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 116.55 | $174,825 |

The value of the easement gift as of October 28, 2016 is as follows and is based upon the before and after value method.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 116.55 | $30,345,203 |
| Less | | |
| Total After Value (Encumbered) | 116.55 | $174,825 |
| **Value of the Easement** | rounded | **$30,170,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site.  While these sites do maintain limited building rights, as defined by the easement, the limited access to the property, limits the value above that of the encumbered property.  It should also be noted that these lots are not build ready and will require such things as access, lot clearing, and utility installation.  Due to these facts, I do not feel that these sites warrant any additional value above that of the overall per acre value of the encumbered tract. No enhancement needed.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

ECOVEST-DOJ_0042961

Excerpts from Bellavista Grove Appraisal

Claud Clark III                      State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0042962

Excerpts from Bellavista Grove Appraisal

## Table of Contents

**Certification** .................................................................................................................................7

**Summary of the Appraisal** ........................................................................................................8

**Assumptions and Limiting Conditions** ..................................................................................9

**Legal Descriptions and Maps** ................................................................................................12

**INTRODUCTION:** ..................................................................................................................24

**Scope of the Assignment** ........................................................................................................25

*Competency Provision* ...........................................................................................................29

*Appraisal of the Larger Parcel:* ............................................................................................30

*Identification of the Subject Property* ...................................................................................31

*Prior Sales History* ................................................................................................................31

*Ownership* ..............................................................................................................................31

*Improvements* .........................................................................................................................31

*Taxes* ......................................................................................................................................31

*Neighborhood Data –Jasper County, South Carolina* ..........................................................33

**SECTION I** .............................................................................................................................48

**APPRAISAL OF THE BEFORE VALUE** ..............................................................................48

*Highest and Best Use Analysis:* ............................................................................................49
    a)    Legally Permissible ..................................................................................50
    b)    Physically Possible ...................................................................................50
    c)    Financially Feasible .................................................................................50
    d)    Maximally Productive ..............................................................................51
    e)    Sufficiency of Demand .............................................................................51
    Conclusion ................................................................................................................51

*Land Valuation:* .....................................................................................................................52
    Discounted Retail Sales Approach ...........................................................................52

**SECTION II** ..........................................................................................................................124

**APPRAISAL OF THE AFTER VALUE** ................................................................................124

*Highest and Best Use Analysis:* ..........................................................................................141
    a)    Legal permissibility ...............................................................................142
    b)    Physical possibility and suitability ........................................................142
    c)    Financial feasibility ...............................................................................142
    d)    Maximum productivity ...........................................................................142
    e)    Sufficiency of demand ............................................................................142
    Conclusion: .............................................................................................................143

*Land Valuation* ....................................................................................................................144
    Sales Comparison Approach ..................................................................................144

*Estimate of the After Value:* ................................................................................................149

**Reconciliation** .....................................................................................................................155

ECOVEST-DOJ_0042963

**Addenda**......................................................................................................................................**156**

Qualifications ....................................................................................................................156
License ..............................................................................................................................156
Bellavista Grove Unit Plans .............................................................................................156
RS Means Cost Estimates .................................................................................................156
Development Letters ..........................................................................................................156
Demographic Reports ........................................................................................................156
Market Area Articles .........................................................................................................156
Crystal Lagoons Information and Articles ........................................................................156
Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .............156
Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
.............156
Bowden Report – Before Scenario .....................................................................................156
Easement ...........................................................................................................................156
Baseline .............................................................................................................................156

ECOVEST-DOJ_0042964

Excerpts from Bellavista Grove Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
SC License #AB 6878 CG

State Certified General Real Property Appraiser

ECOVEST-DOJ_0042965

Excerpts from Bellavista Grove Appraisal

**Summary of the Appraisal**

**Property Type:**            Conservation Easement

**Location:**                The subject is located off SC Highway 141 in Jasper
                             County, South Carolina, approximately 10 miles from
                             Interstate 95.

**Purposes of the Appraisal:**   To estimate, for federal and state income tax purpose, the
                                 market value of the conservation easement.

**Function of the Appraisal:**   To estimate the market value of a conservation easement.

**Date of the Appraisal Report:**   November 30, 2016

**Date of Value Estimates:**   October 28, 2016

**Date of Donation:**          October 28, 2016

**Property Rights Appraised:**   Before:   Fee Simple Interest
                                 After:    Fee Simple Interest Subject to Easement

**Zoning:**                  PDD (Planned Development District)

**Site:**                    116.55 Acres

**Easement:**                116.55 Acres

**Reserved:**                One Residential Building Site and One Recreational
                             Building Site

**Total:**                   116.55 Acres

**Improvements:**            None

**High and Best Use**        Before:   Residential Development
**of Site as Though Vacant:**   After:    Recreational / Green Space

**Appraiser:**               Claud Clark III as an Employee and Sole Owner of
                             Clark ~ Davis, PC            EIN 63-1075275

ECOVEST-DOJ_0042966

Excerpts from Bellavista Grove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0042967

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0042968

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0042969

Excerpts from Bellavista Grove Appraisal

**Legal Descriptions and Maps**

Bellavista Grove, LLC – Northeast Tract A
ALL AND SINGULAR, THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND,
SITUATE, LYING AND BEING IN THE CITY OF HARDEEVILLE, JASPER COUNTY,
SOUTH CAROLINA, BEING DESIGNATED AS "NORTHEAST TRACT A", CONTAINING
116.555 ACRES, MORE OR LESS, AND MORE FULLY SHOWN ON THAT CERTAIN
PLAT ENTITLED "MINOR SUBDIVISION PARCEL 3B A PORTION OF EAST ARGENT"
PREPARED BY THOMAS & HUTTON ENGINEERING CO. DATED OCTOBER 12, 2015,
AND RECORDED OCTOBER 28, 2015, IN PLAT BOOK 34, AT PAGE 138 IN THE JASPER
COUNTY RECORDS, REFERENCE TO WHICH IS HEREBY CRAVED AS FORMING A
PART AND PARCEL HEREOF.
TOGETHER WITH A NON-EXCLUSIVE, RELOCATABLE, APPURTENANT EASEMENT
FOR INGRESS, EGRESS AND UTILITY INSTALLATION AND MAINTENANCE OVER
AND ACROSS THAT AREA IDENTIFIED AS "RELOCATABLE ACCESS AND UTILITY
EASEMENT "A", CONTAINING 11.206 ACRES, MORE OR LESS, AS SHOWN ON THE
ABOVE REFERENCED PLAT CONTAINED IN THAT CERTAIN DEED FROM SLF III -
SC EAST ARGENT, LLC, TO BELLAVISTA GROVE, LLC, DATED OCTOBER 26, 2015,
RECORDED OCTOBER 28, 2015, IN THE JASPER COUNTY RECORDS IN BOOK 907 AT
PAGE 948.
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF ACCESS, PASSAGE AND USE
OVER AND ACROSS THE PROPERTY DESCRIBED AS "150' ACCESS EASEMENT"
AND "FUTURE NEW RIVER PARKWAY 150' R/W", AS GRANTED BY SLF III - SC EAST
ARGENT, LLC BY EASEMENT DATED _____ __, 2015, RECORDED IN THE
JASPER COUNTY RECORDS IN BOOK _____ AT PAGE _____ PURSUANT TO THE
GRANT OF ACCESS EASEMENT FROM JPR PROPERTIES, LLC, DATED NOVEMBER 7,
2007, AND RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 606 AT PAGE 77.
TOGETHER WITH NON-EXCLUSIVE ACCESS, UTILITY AND CONSTRUCTION
EASEMENT RIGHTS OVER, IN AND TO THAT CERTAIN PARCEL OF PROPERTY
DESCRIBED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "A",
CONTAINING 11.206 ACRES, MORE OR LESS, AS GRANTED BY COASTAVISTA
ROAD EASEMENT AGREEMENT BY AND AMONG BELLAVISTA GROVE, LLC,
COASTAVISTA PALMS, LLC, AND SLF III-SC EAST ARGENT, LLC, DATED _____
__, 2015, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK _____ AT PAGE
_____.
MORE PARTICULARLY DESCRIBED AS FOLLOWS:
  COMMENCING AT THE NORTHERLY RIGHT OF WAY LINE OF ARGENT
BOULEVARD(R/W VARIES) AND THE EASTERLY RIGHT OF WAY LINE OF NEW
RIVER PARKWAY(150' R/W); THENCE NORTHERLY ALONG NEW RIVER PARKWAY
RIGHT OF WAY APPROXIMATELY 8,832 FEET TO AN IRON PIPE FOUND; THENCE N
12°32'45" E A DISTANCE OF 230.30 FEET TO AN IRON PIPE; THENCE WITH THE ARC
OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 290.63 FEET, A
RADIUS OF 1150.00 FEET, A CHORD LENGTH OF 289.85 FEET, AND A CHORD
BEARING N 05°18'22" E TO AN IRON PIPE; THENCE N 01°56'02" W A DISTANCE OF
473.98 FEET TO AN IRON PIPE AND ALSO BEING THE END OF THE EXISTING SAID
RIGHT OF WAY; THENCE ALONG THE EASTERLY (FUTURE) RIGHT OF WAY LINE
OF NEW RIVER PARKWAY WITH THE ARC OF A CURVE TURNING TO THE RIGHT,
HAVING AN ARC LENGTH OF 178.92 FEET, A RADIUS OF 985.00 FEET, A CHORD

ECOVEST-DOJ_0042970

LENGTH OF 178.67 FEET, AND A CHORD BEARING N 03°36'26" E TO An IRON PIPE; THENCE N 08°47'33" E A DISTANCE OF 3655.08 FEET TO AN IRON PIPE BEING THE POINT OF BEGINNING; THENCE N 08°47'33" E A DISTANCE OF 203.95 FEET TO AN IRON PIPE; THENCE WITH THE ARC OF A CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 1145.63 FEET, A RADIUS OF 1925.00 FEET, A CHORD LENGTH OF 1128.80 FEET, AND A CHORD BEARING N 25°50'30" E TO An IRON PIPE; THENCE N 42°53'28" E A DISTANCE OF 485.17 FEET TO AN IRON PIPE; THENCE WITH THE ARC OF A CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 533.77 FEET, A RADIUS OF 1925.00 FEET, A CHORD LENGTH OF 532.06 FEET, AND A CHORD BEARING N 50°50'04" E TO An IRON PIPE; THENCE LEAVING SAID FUTURE RIGHT OF WAY S 29°07'19" E A DISTANCE OF 382.98 FEET TO AN IRON PIPE; THENCE N 80°34'40" E A DISTANCE OF 114.96 FEET TO AN IRON PIPE; THENCE S 04°59'03" E A DISTANCE OF 640.71 FEET TO AN IRON PIPE; THENCE S 64°28'55" E A DISTANCE OF 916.52 FEET TO AN IRON PIPE; THENCE S 15°44'35" E A DISTANCE OF 560.46 FEET TO AN IRON PIPE; THENCE S 10°11'08" W A DISTANCE OF 1247.96 FEET TO AN IRON PIPE; THENCE N 89°31'48" W A DISTANCE OF 770.52 FEET TO AN IRON PIPE; THENCE N 70°39'17" W A DISTANCE OF 679.42 FEET TO AN IRON PIPE; THENCE N 44°46'02" W A DISTANCE OF 1375.03 FEET TO SAID POINT OF BEGINNING, SAID TRACT OR PARCEL OF LAND CONTAINING 116.555 ACRES.

ECOVEST-DOJ_0042971

Excerpts from Bellavista Grove Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 116.55 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0042984

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0042985

Excerpts from Bellavista Grove Appraisal

Introduction

## Identification of the Subject Property

The subject is located off SC Highway 141 in Jasper County, South Carolina, approximately 10 miles from Interstate 95. The site contains 116.55 acres.

### *Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### *Ownership*

Bellavista Grove, LLC

### *Improvements*

None

### *Taxes*

**SLF III-SC EAST ARGENT LLC**
**ATLANTA GA, SC 303430000**

**Record Type:** Property
**Receipt No.:** 017643-15-3
**Tax Year:** 2015

**Base Amount:** $1,300.75
**Net Taxes:** $1,199.67
**Penalties:** $0.00
**Balance Due:** $0.00

**Payment Status:** Paid
**Paid Date:** 1/15/2016
**Paid Amount:** $1,199.67

| Penalty Date | Amount Due |
|---|---|
| January 16 | 3% |
| Feburary 2 | 10% |
| March 17 | 15% |

**Map No.:** 067-00 -01-064
**District:** 03
**Assessed Value:** 0
**Fair Market Value:** 45,900

**Description:** PARCEL 3 B

©2016 Jasper County Government
www.jaspercountysc.org

ECOVEST-DOJ_0042989

Area Data

- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

  On-Site: No; Adjacent: No

- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 116.55 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

Excerpts from Belle Harbour Resort Appraisal

Excerpts from appraisal of:
Belle Harbor Resort

Document ID:
ECOVEST-DOJ_0017582

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ‡
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Belle Harbor Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:     Conservation Easement Appraisal
        Belle Harbor Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0017582

Excerpts from Belle Harbour Resort Appraisal

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 36.65 | $59,207,554 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 36.65 | $406,808 |

2

ECOVEST-DOJ_0017583

Excerpts from Belle Harbour Resort Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 36.65 | $59,207,554 |
| Less | | |
| Total After Value (Encumbered) | 36.65 | $406,808 |
| | | |
| **Value of the Easement** | rounded | **$58,801,000** |

The Subject Property has two (2) reserved residential building sites and one (1) reserved recreational building site. These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these three sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. These sites are not build ready and would incur development costs. There is no enhancement. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0017584

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0017585

Excerpts from Belle Harbour Resort Appraisal

Table of Contents

Certification ...................................................................................................................................... 7

Summary of the Appraisal ................................................................................................................ 8

Assumptions and Limiting Conditions ............................................................................................ 9

Legal Descriptions and Maps ......................................................................................................... 12

Subject Pictures .............................................................................................................................. 21

INTRODUCTION ........................................................................................................................... 28

Scope of the Assignment ................................................................................................................ 29

*Competency Provision* ............................................................................................................. 33

*Appraisal of the Larger Parcel:* .............................................................................................. 34

*Identification of the Subject Property* ..................................................................................... 35

*Prior Sales History* ................................................................................................................. 35

*Ownership* ............................................................................................................................... 35

*Improvements* .......................................................................................................................... 35

*Taxes* ....................................................................................................................................... 35

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ...................................... 37

SECTION I ...................................................................................................................................... 53

APPRAISAL OF THE BEFORE VALUE ...................................................................................... 53

*Highest and Best Use Analysis* ............................................................................................... 54
    a)   Legally Permissible ........................................................................................... 55
    b)   Physically Possible ............................................................................................ 55
    c)   Financially Feasible .......................................................................................... 55
    d)   Maximally Productive ....................................................................................... 56
    e)   Sufficiency of Demand ...................................................................................... 56
    Conclusion .................................................................................................................. 56

*Land Valuation:* ...................................................................................................................... 57
    Discounted Retail Sales Approach ............................................................................. 57

SECTION II ................................................................................................................................... 127

APPRAISAL OF THE AFTER VALUE ....................................................................................... 127

*Highest and Best Use Analysis* ............................................................................................. 143
    a)   Legal permissibility ......................................................................................... 143
    b)   Physical possibility and suitability .................................................................. 143
    c)   Financial feasibility ......................................................................................... 143
    d)   Maximum productivity ..................................................................................... 143
    e)   Sufficiency of demand ...................................................................................... 144
    Conclusion: ............................................................................................................... 144

*Land Valuation* ..................................................................................................................... 145
    Sales Comparison Approach .................................................................................... 145

*Estimate of the After Value* ................................................................................................... 167

ECOVEST-DOJ_0017586

**Reconciliation**.................................................................................................................................................**173**

**Addenda**.......................................................................................................................................................**174**

ECOVEST-DOJ_0017587

Excerpts from Belle Harbour Resort Appraisal

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- Leah Partridge provided significant real property appraisal assistance to the person(s) signing this certification.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                State Certified General Real Property Appraiser
SC License #AB 6878 CG

Excerpts from Belle Harbour Resort Appraisal

**Summary of the Appraisal**

**Property Type:**            Conservation Easement

**Location:**                 The Subject Property is located off the Conway Bypass, just south of the Highway 31 and Conway Bypass interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:**   To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:**   To estimate the market value of a conservation easement.

**Date of the Appraisal Report:**   December 15, 2015

**Date of Value Estimates:**   December 15, 2015

**Date of Donation**          December 15, 2015

**Property Rights Appraised:**   Before:   Fee Simple Interest
                               After:    Fee Simple Interest Subject to Easement

**Zoning:**                   PDD (Planned Development District)

**Site:**                     36.65 Acres

**Easement:**                 36.65 Acres

**Reserved:**                 Two Residential Building Sites and One Recreational Building Site

**Total:**                    36.65 Acres

**Improvements:**             None

**High and Best Use**         Before:   Residential Development
**of Site as Though Vacant:**   After:    Recreational / Green Space

**Appraiser:**                Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275

ECOVEST-DOJ_0017589

## Assumptions and Limiting Conditions

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0017590

Excerpts from Belle Harbour Resort Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0017591

Excerpts from Belle Harbour Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0017592

Excerpts from Belle Harbour Resort Appraisal

**Legal Descriptions and Maps**

**Legal Description - Parcel "E"**

All and Singular, all that certain piece, parcel or tract of land lying and situate in the City of North Myrtle Beach, Horry County, South Carolina and being referenced on a plat entitled Map of Parcel "D1" & "E" - Subdivision & Boundary Survey prepared for Diamond Grande Resort and Belle Harbor Resort by DDC Engineers, Inc. dated 7/20/15 and recorded in Plat Book 267, Page 79 and being more particularly described as follows:

Beginning at a concrete monument found being located on the northwestern right-of-way of the Atlantic Intracoastal Waterway and the common corner between Reach 9, LLC and Horry County, South Carolina; thence along the right-of-way of the Atlantic Intracoastal Waterway S 56°19'49" W, 244.53' to ACOE Monument - Station 815+30.20; thence S 54°14'36" W  607.61' to ACOE Monument - Station 821+99.60; thence S 52°42'01" W428.00' to a 1/2" rebar at the common right-of-ways of the Atlantic Intracoastal Waterway and S. C. Highway #22 - Conway Bypass; thence with eastern right-of-way of S. C. Highway #22 - Conway Bypass along a curve to the right, having an arc length of 189.63',a radius of 1285.00', and a chord of N 21°46'45" W, 189.46' to 1/2" rebar; thence S72°45'00" W, 1.00' to a concrete monument found ; thence N 17°13'19" W, 1265.29';thence N 17°13'19" W, 50.62' to a 1/2" rebar; thence along a curve to the right, having an arc length of 49.38', a radius of 5611.34', and a chord of N 16°54'33" W, 49.38'; thence along a curve to the right, having an arc length of 956.58', a radius of 5611.34', and a chord of N 11°46'24" W, 955.43' to a 1/2" rebar being the common corner between Reach9, LLC and Horry County, South Carolina; thence S 45°34'01" E, 394.60' to a concrete monument found; thence S 46°11'22" E, 214.92' to a 14" gum tree; thence S 45°37'31" E,816.13' to a 1/2" rebar; thence S 45°44'43" E, 959.15' to the point of beginning and having an area of 36.64 acres, more or less.

This property is bounded on the east by Horry County, South Carolina, on the west by S.C. Highway #22 - Conway Bypass and on the south by the Atlantic Intracoastal Waterway.

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0017593

Excerpts from Belle Harbour Resort Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 36.65 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0017611

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0017612

Excerpts from Belle Harbour Resort Appraisal

## Identification of the Subject Property

The Subject Property is located off the Conway Bypass, just south of the Highway 31 and Conway Bypass interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 36.65 acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Belle Harbor Resort, LLC

## Improvements

None

## Taxes

Tax Information

| | |
|---|---|
| Appraiser | [illegible] |
| Tax Year | 2015 |
| Assessment Value | [illegible] |
| District Levy | [illegible] |
| City Levy | [illegible] |

Property Information

| | |
|---|---|
| Record Type | Real Estate |
| Map Number | [illegible] |
| Tax ID | |
| Market Value | [illegible] |
| Description | [illegible] |

Taxes

| | |
|---|---|
| County Tax | [illegible] |
| City Tax | [illegible] |
| Other Fees | [illegible] |
| Residential Exemption | [illegible] |
| Homestead Exemption | [illegible] |
| Other Exemptions | [illegible] |
| Local Option Credit | [illegible] |
| Penalty | [illegible] |
| Cost | [illegible] |
| Total Taxes | [illegible] |
| Total Paid | [illegible] |

CLARK ~ DAVIS, PC

35

ECOVEST-DOJ_0017616

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 36.65 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0017628

Excerpts from appraisal of:
Birch Equestrian

Document ID:
ECOVEST-DOJ_0106846

Excerpts from Birch Equestrian Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

February 5, 2014

Mr. Edmund Cash, Manager
Birch Equestrian, LLC
P.O. Box 2579
Rome, GA 30165

RE:   Conservation Easement Birch Equestrian
      DeKalb County, Alabama
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

ECOVEST-DOJ_0106846

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 20, 2013, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 315.90 | $6,988,533 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 20, 2013 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 313.90 | $1000 | $313.900 |

The value of the easement gift as of December 20, 2013 is as follows and is based upon the before and after method.

The subject property has two (2) reserved sites. The property can be subdivided into the same number of parcels as there are building lots. The parcels that result from the subdivision must contain a building area. There is no minimum or maximum size. These lots have good access and essentially can own the subdivided portion of the easement. For these reasons, I am applying a 10% enhancement to the reserved lots.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 315.90 |  | $6,988,533 |
| Less |  |  |  |
| After Value (Encumbered) | 313.90 | $1000 | $313,900 |
| Less |  |  |  |
| 2 Reserved Building Sites | 2.0 | $15,000 | $30,000 |
| 10% Enhancement of Reserved Lots |  |  | $3,000 |
| Value of the Easement |  | rounded | $6,642,000 |

ECOVEST-DOJ_0106847

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                          State Certified General Real Property Appraiser
AL License #G00024

ECOVEST-DOJ_0106848

## Table of Contents

Certification .................................................................................................................... 6

Summary of the Appraisal ................................................................................................ 7

Assumptions and Limiting Conditions ............................................................................ 8

Legal Descriptions and Maps ......................................................................................... 11

INTRODUCTION: ........................................................................................................ 21

    *Scope of the Assignment* ............................................................................................ 22

    *Competency Provision* ............................................................................................... 26

    *Appraisal of the Larger Parcel:* ................................................................................ 27

    *Identification of the Subject Property* ....................................................................... 28

    *Prior Sales History* .................................................................................................... 28

    *Ownership* ................................................................................................................... 28

    *Improvements* .............................................................................................................. 28

    *Taxes* ........................................................................................................................... 28

    *General Area Analysis:* .............................................................................................. 30

    *Neighborhood Data – Chattanooga, TN* ................................................................... 34

    *Chattanooga, TN Demographics* ............................................................................... 37

SECTION I. .................................................................................................................... 52

APPRAISAL OF THE BEFORE VALUE ....................................................................... 52

    *Highest and Best Use Analysis:* ................................................................................. 53
        *a)*    *Legally Permissible* ...................................................................... 54
        *b)*    *Physically Possible* ....................................................................... 54
        *c)*    *Financially Feasible* ..................................................................... 54
        *d)*    *Maximally Productive* ................................................................... 55
        *e)*    *Sufficiency of Demand* .................................................................. 55
        Conclusion ............................................................................................ 55
        Hypothetical Condition ......................................................................... 55

    *Land Valuation:* .......................................................................................................... 56

SECTION II .................................................................................................................... 81

APPRAISAL OF THE AFTER VALUE .......................................................................... 81
        a)    Legal permissibility ......................................................................... 93
        b)    Physical possibility and suitability .................................................. 93
        c)    Financial feasibility ........................................................................ 93
        d)    Maximum productivity ..................................................................... 93
        e)    Sufficiency of demand ...................................................................... 93
        Conclusion: ........................................................................................... 94

    *Land Valuation:* .......................................................................................................... 95
        Sales Comparison Approach ................................................................. 95

Reconciliation .............................................................................................................. 110

Excerpts from Birch Equestrian Appraisal

**Addenda**................................................................................................................................................**112**

    QUALIFICATIONS .........................................................................................113

    License .........................................................................................................115

    Engineering Letter on Soil Quality .............................................................116

    Planning Certificate.....................................................................................117

    Easement and Baseline Documents.............................................................118

ECOVEST-DOJ_0106850

Excerpts from Birch Equestrian Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                           State Certified General Real Property Appraiser
AL License #G00024

ECOVEST-DOJ_0106851

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located between Scenic Drive and the Alabama/Georgia state line in DeKalb Country, Alabama. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purposes, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | February 20, 2014 |
| **Date of Value Estimates:** | December 20, 2013 |
| **Date of Donation** | December 20, 2013 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 315.90 Acres |
| **Easement:** | 313.90 Acres |
| **Reserved:** | 2.0 Acres (Two Sites) |
| **Total:** | 315.90 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:     Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0106852

Excerpts from Birch Equestrian Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Alabama or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0106853

Excerpts from Birch Equestrian Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0106854

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0106855

**Legal Descriptions and Maps**

**LEGAL DESCRIPTION**
**BIRCH EQUESTRIAN, LLC**
**CONSERVATION EASEMENT**

A Tract of land lying and being in Fractional Section 36, and Section 35, Township 4 South, Range 10 East, and fractional Section 1, and Section 2, Township 5 South, Range 10 East, Dekalb County Alabama, being more particularly described as follows; (Reference Deed Book 330 Pg 79-80)

Beginning at the Southeast corner of said Fractional Section 36, said point being on the Alabama-Georgia State Line;

Thence with said Alabama-Georgia State Line S 08°40'31" E 1375.02 feet;

Thence leaving said Alabama-Georgia State Line N 89°35'10" W 2119.42 feet to the center of the NW ¼ of section 1, Township5 South, Range 10 East;

Thence N00°56'10"E 1361.51 feet; to the NE corner of the NW ¼ of the NW ¼ of said section 1;

Thence N89°28'38"W 1320.46 feet to the NE corner of section 2, Township 5 South, Range 10 East;

Thence with the North Line of the NE ¼ of section 2 S 89°45'42" W 2632.50 feet to the NE corner of the NW ¼ of said section 2;

Thence with the East Line of said NW ¼ of section 2 S 00°13'43" E 2637.92 feet to the Center of said section 2;

Thence with the South Line of the NW ¼ of said section 2 N 89°59'08" W 2669.57 feet to the SW corner of said NW ¼ of section 2;

Thence with the West Line of said NW ¼ of section 2 N 00°27'04"E 388.64 feet the Easterly Boundary of  Scenic Drive;

Thence with the Easterly Boundary of said Scenic Drive meander northeasterly along the following 25 calls;

N22°41'07"E, 429.64 feet; N28°10'39"E, 531.82 feet;
N43°04'41"E, 276.16; feet; N38°40'34"E, 341.38 feet;
N35°25'14"E, 246.40 feet; N28°13'27"E, 202.50 feet;
N49°58'09"E, 134.12 feet; N74°11'45"E, 195.49 feet;
N84°48'24"E, 174.96 feet; S88°10'27"E, 144.51 feet;
N42°42'23"E, 148.81 feet; N14°39'30"E, 229.23 feet;
N13°14'38"E, 201.39 feet; N16°58'55"E, 126.73 feet;
N42°10'02"E, 117.39 feet; N52°45'10"E, 141.21 feet;

ECOVEST-DOJ_0106856

N31°17'16"E, 150.56 feet; N26°34'50"E, 117.39 feet;
N37°08'21"E, 178.95 feet; N45°00'58"E, 235.76 feet;
N45°50'56"E, 215.74 feet; N45°00'12"E 198.51 feet;
N53°02'10"E 197.87 feet; N51°16'59"E 196.38 feet;
N55°05'21"E 156.06 feet;

Thence leaving the Easterly Boundary of said Scenic Drive, S 53°50'22"E 546.38 feet;

Thence E 79°46'41" E 627.15 feet; Thence S 82°06'05" E 1204.90 feet;

Thence S 82°57'32" E 1190.10 feet; Thence S 52°03'09" E 923.30 feet;

Thence S 77°22'48" E 788.52 feet; Thence S 58°10'02" E 251.27 feet;

Thence S89°28'09" E 114.54 feet to the Point of Beginning. (containing 315.9 acres, more or less)

ECOVEST-DOJ_0106857

Introduction

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises the fourth step. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0106868

Excerpts from Birch Equestrian Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Rivers, Mountains, Bluffs). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF, income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for outdoor recreation oriented subdivisions that offer amenities such as lakes or rivers, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development, such as a valley with level to moderately sloping land for home and amenity construction.  Additionally, access to main line utilities is important. Another feature of significance is proximity to other recreational features such as national and state forests and parks.  The specific parks and forests will be discussed in the DCF explanation later in the report.

Extraction and Allocation are methods that involve improved properties and they are not appropriate in this case.

ECOVEST-DOJ_0106869

Excerpts from Birch Equestrian Appraisal

Introduction

### Identification of the Subject Property

The subject property consists of one parcel located between Scenic Drive and the
Alabama/Georgia state line in DeKalb County, Alabama. The site contains 315.90 +- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Birch Equestrian, LLC

### Improvements

None

### Taxes



ECOVEST-DOJ_0106873

Excerpts from Birch Equestrian Appraisal

Site Data

- Observed distressed vegetation:                    On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":                    On-Site: No; Adjacent: No
- Observed noticeable odors:                    On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 315.90 +- acres, of which approximately 315.90 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0106894

# Excerpts from appraisal of: Birkdale Landing

# Document ID: ECOVEST-DOJ_0157468

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Birkdale Landing LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Birkdale Landing
      31.67 acre Tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is an Appraisal Report
presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions
and Limiting Conditions contained within this report. This report has been prepared, to the best
of my knowledge, to the standards and requirements of the USPAP, the Standards of
Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of
South Carolina for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which
is contrary to what is known by the appraiser to exist on the effective date of the assignment
results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific
assignment, as of the effective date of the assignment results, which, if found to be false, could
alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0157468

Excerpts from Birkdale Landing Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct.  No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions.  I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0157469

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 11, 2017, and before the Subject Property is encumbered by the easement is is as follows:

The Fee Simple value of the Subject Property as of December 11, 2017 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 31.67 | $39,436,576 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 11, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value | 31.67 | $200,672 |

The value of the easement gift as of December 11, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 31.67 | $39,436,576 |
| Less | | |
| Total After Value (Encumbered) | 31.67 | $200,672 |
| **Value of the Easement** | rounded | **$39,236,000** |

The encumbered property also includes one (1) reserved residential building site, which allow for the construction of either one residence or one resort building, but not both.  While this site

ECOVEST-DOJ_0157470

remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that this lot is not a build ready lot and will incur some development costs to make it so.  Due to these facts, I have decided to value the site with an additional $150,000 per site.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                               State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0157471

Table of Contents

Certification ................................................................................................................................... 7

Summary of the Appraisal .............................................................................................................. 8

Assumptions and Limiting Conditions .......................................................................................... 9

Legal Descriptions and Maps ....................................................................................................... 12

INTRODUCTION: ........................................................................................................................ 26

Scope of the Assignment .............................................................................................................. 27

   *Competency Provision* ................................................................................................................ *32*

   *Appraisal of the Larger Parcel:* ................................................................................................. *33*

   *Identification of the Subject Property* ........................................................................................ *34*

   *Prior Sales History* .................................................................................................................... *34*

   *The Subject is not listed for sale.* ............................................................................................... *34*

   *Ownership* ................................................................................................................................... *34*

   *Improvements* .............................................................................................................................. *34*

   *Taxes* .......................................................................................................................................... *34*

   *Neighborhood Data – The Grand Strand (Coastal South Carolina)* .......................................... *36*

SECTION I. ................................................................................................................................... 51

APPRAISAL OF THE BEFORE VALUE ..................................................................................... 51

   *Highest and Best Use Analysis:* .................................................................................................. *52*
      a)   Legally Permissible ........................................................................................................ 53
      b)   Physically Possible ........................................................................................................ 53
      c)   Financially Feasible ....................................................................................................... 53
      d)   Maximally Productive .................................................................................................... 54
      e)   Sufficiency of Demand ................................................................................................... 54
      Conclusion ........................................................................................................................... 54

   *Land Valuation:* .......................................................................................................................... *57*
      Discounted Retail Sales Approach ........................................................................................ 57

SECTION II ................................................................................................................................... 80

APPRAISAL OF THE AFTER VALUE ........................................................................................ 80
      a)   Legal permissibility ..................................................................................................... 100
      b)   Physical possibility and suitability .............................................................................. 100
      c)   Financial feasibility ...................................................................................................... 100
      d)   Maximum productivity .................................................................................................. 100
      e)   Sufficiency of demand .................................................................................................. 101
      Conclusion: ........................................................................................................................ 101

   *Land Valuation* .......................................................................................................................... *102*
      Sales Comparison Approach ............................................................................................... 102

   *Estimate of the After Value:* ...................................................................................................... *109*

Excerpts from Birkdale Landing Appraisal

**Reconciliation**................................................................................................................................**116**

**Addenda**......................................................................................................................................**117**

    Qualifications ............................................................................................................................117
    License ......................................................................................................................................117
    Birkdale Landing Unit Plans ....................................................................................................117
    Cost Estimates..........................................................................................................................117
    Development Letters .................................................................................................................117
    Demographic Reports ...............................................................................................................117
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............117
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    .................................................................................................................................................117
    Bowden Report – Before Scenario ...........................................................................................117
    Easement ..................................................................................................................................117
    Baseline ....................................................................................................................................117

ECOVEST-DOJ_0157473

Excerpts from Birkdale Landing Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser

SC License #AB 6768 CG

ECOVEST-DOJ_0157474

Excerpts from Birkdale Landing Appraisal

## Summary of the Appraisal

**Property Type:**      Conservation Easement

**Location:**      The Subject Property is located east of SC Highway 31 and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:**      To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:**      To estimate the market value of a conservation easement.

**Date of the Appraisal Report:**      January 12, 2018

**Date of Inspection:**      October 12, 2017

**Date of Value Estimates:**      December 11, 2017

**Date of Donation**      December 11, 2017

**Property Rights Appraised:**      Before:      Fee Simple Interest
     After:      Fee Simple Interest Subject to Easement

**Zoning:**      R4-I, Inland Multifamily Residential

**Site:**      31.67 Acres

**Easement:**      31.67 Acres

**Reserved:**      One 2-acre Reserved Building Zone located within the easement

**Total:**      31.67 Acres

**Improvements:**      None

**High and Best Use**
**of Site as Though Vacant:**      Before:      Residential Development
     After:      Recreational / Green Space with a 2-acre Building Zone

**Appraiser:**      Claud Clark III as an Employee and Sole Owner of
Clark ~ Davis, PC      EIN 63-1075275
SS# ***-**-1840 Will be provided to IRS upon request.

ECOVEST-DOJ_0157475

Excerpts from Birkdale Landing Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0157476

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0157477

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0157478

## Legal Descriptions and Maps

ALL AND SINGULAR THAT CERTAIN PIECE PARCEL OR TRACT OF LAND, LYING AND BEING IN THE CITY OF NORTH MYRTLE BEACH, HORRY COUNTY, SOUTH CAROLINA, DESIGNATED AS PARCEL 5, 1,379,418 SQ. FT., 31.67 ACRES AS SHOWN ON THAT CERTAIN PLAT ENTITLED "BOUNDARY/SUBDIVISION SURVEY OF TRACTS 5, 6, & 7, LOCATED AT NORTH MYRTLE BEACH, HORRY COUNTY, SOUTH CAROLINA" DATED JULY 27, 2016 PREPARED BY THE BRIGMAN COMPANY AND RECORDED AUGUST 5, 2016 IN PLAT BOOK 271 AT PAGE 207, IN THE PUBLIC RECORDS OF HORRY COUNTY, SOUTH CAROLINA.  SAID PARCELS HAVING SUCH METES, BOUNDS, COURSES, SHAPES AND DISTANCES AS WILL APPEAR BY REFERENCE TO THE AFORESAID PLAT WHICH IS INCORPORATED HEREIN AND MADE A PART OF AND PARCEL HEREOF WHICH PLAT IS CRAVED AS FORMING A PART OF THIS DESCRIPTION.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT APPURTENANT TO THE ABOVE DESCRIBED PROPERTY, FOR INGRESS, EGRESS, AND THE INSTALLATION, REPAIR AND MAINTENANCE OF UTILITIES, OVER AND UPON THAT PROPERTY SHOWN AS "50' FUTURE PUBLIC RIGHT OF WAY", "FUTURE 50' PUBLIC RIGHT OF WAY", "FUTURE 50' PUBLIC RIGHT OF WAY (HATCHED AREA)", "FUTURE 50' PUBLIC R/W PER PLAT BOOK 267/264, AND "FUTURE 50' PUBLIC R/W PER PLAT BOOK 267/180" ON EACH OF THOSE PLATS RECORDED IN PLAT BOOK 267 AT 180, PLAT BOOK 267 AT 264, PLAT BOOK 271 AT 207 (COLLECTIVELY THE "EASEMENT PLATS"), TO THE EXTENT ANY PORTION THEREOF IS NOT LOCATED ON THE PROPERTY ABOVE DESCRIBED.

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL & POINT BEING MARKED BY HAVING 5/8" IRON REBAR FOUND AND HAVING S.C.STATE PLANE COORDINATES OF N 736,187.80, E 2,695,716.55 THENCE A LINE BOUNDED TO THE NORTH BY S.C.P.S.A 100' RIGHT OF WAY AND BOUNDED TO THE SOUTH BY THE SUBJECT TRACT THE FOLLOWING BEARINGS & DISTANCES:

N 67° 02' 24" E 550.08' TO 5/8" IRON REBAR FOUND

N 66° 57' 12" E 68 33' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY CAMELLIA STATION, LLC AND BOUNDED TO THE WEST BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

S 21° 40' 22" E 1344.85' TO 5/8" IRON REBAR FOUND

ECOVEST-DOJ_0157479

Excerpts from Birkdale Landing Appraisal

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY ARCADIAN QUAY, LLC AND BOUNDED TO THE NORTH BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

S 68° 19' 38" W 796.49' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY ARCADIAN QUAY, LLC BOUNDED TO THE WEST BY THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

S 22° 59' 47" E 838.47' TO 5/8" IRON REBAR FOUND
S 24° 32' 42" E 632.46' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE SOUTH BY INTRACOASTAL WATERWAY AND BOUNDED TO THE NORTH BY THE SUBJECT PROPERTY THE FOLLOWING BEARING AND DISTANCE:

S 69° 29' 56" W 100.25' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE WEST BY PELICAN BAY SUBDIVISION AND BOUNDED TO THE EAST BY THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

N 24° 32' 42" W 625.89' TO 5/8" IRON REBAR FOUND
N 22° 59' 47" W 830.46 TO 5/8" IRON REBAR FOUND
N 25° 40' 35" W 260.25' TO 5/8" IRON REBAR FOUND
N 20° 14' 21" W 124.95' TO 5/8" IRON REBAR FOUND
N 23° 08' 55" W 110.56' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE WEST BY PALMETTO MAIN STREET PARTNERS AND BOUNDED TO THE EAST BY THE SUBJECT PARCEL THE FOLLOWING BEARING & DISTANCE:

N 23° 53' 17" W 839.38 TO 5/8" IRON REBAR FOUND

THENCE BACK TO SAID POINT OF BEGINNING   TRACT CONTAINS 1,379,418 SQ. FT  / 31.67 ACRES

ECOVEST-DOJ_0157480

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 31.67 acres.

There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)

ECOVEST-DOJ_0157495

Area Data

- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.

## Before and After Method of Valuation of a Conservation Easement

The following was extracted from the IRS code and not only supports, but mandates an assessment of the property's highest and best use.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
**(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.**

The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution."

ECOVEST-DOJ_0157496

Area Data

## Identification of the Subject Property

The Subject Property is located on the south of Carolina Bays Parkway and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 31.67 acres.

### *Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### *Ownership*

Birkdale Landing, LLC

### *Improvements*

None

### *Taxes*

34

ECOVEST-DOJ_0157501

Excerpts from Birkdale Landing Appraisal

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:              On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:               On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 31.67 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0157515

# Excerpts from appraisal of: Brunswick Highlands

# Document ID: ECOVEST-DOJ_0108629

Excerpts from Brunswick Highlands Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 20, 2013

Donald Johnson
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:    Conservation Easement Brunswick Highlands
       Brunswick County, North Carolina
       Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
       Market Value of the Easement Gift

Dear Mr. Johnson:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

1

ECOVEST-DOJ_0108629

Excerpts from Brunswick Highlands Appraisal

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 20, 2013, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 373.45 | $32,383,584 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 20, 2013 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value – Land Only (Encumbered) | 373.45 | $3,000 | $1,120,350 |

There will be five areas designated for the construction of residences and related residential uses. The five areas are specified and may be subdivided from the eased area into as many parcels as there are reserved lots.  Now they are not developed lots. They have no utilities, no all-weather access; they are not cleared for development. All utilities must be underground that would be required to develop the lots. Access must be approved by the land trust. Given the expense of such development, I do not think that the lots have any value over and above the overall land value.  There is no enhancement.

The Subject Property is held by an LLC that may have the same beneficial owners that own nearby property. As such there may or may not be enhancement. The appraisal is made under the extraordinary assumption that at the time of the granting of the easement the Subject Property will have membership that is not common to any others and there will be no related party issues, larger parcels or enhancement to account for.

Excerpts from Brunswick Highlands Appraisal

The value of the easement gift as of December 20, 2013 is as follows and is based upon the before and after value.

| | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 373.45 | | $32,383,584 |
| Less | | | |
| After Value (Encumbered) | 373.45 | $3,000 | $1,120,350 |
| | | | |
| Value of the Easement | | rounded | $31,263,000 |

ECOVEST-DOJ_0108631

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                         State Certified General Real Property Appraiser
NC License #7166

ECOVEST-DOJ_0108632

Table of Contents

Certification ................................................................................................................................... 7

Summary of the Appraisal ............................................................................................................ 8

Assumptions and Limiting Conditions ........................................................................................ 9

Legal Descriptions and Maps ..................................................................................................... 12

INTRODUCTION: ....................................................................................................................... 30

Scope of the Assignment .............................................................................................................. 31

    *Competency Provision* .................................................................................................... 35

    *Appraisal of the Larger Parcel:* ..................................................................................... 36

    *Identification of the Subject Property* ............................................................................ 37

    *Prior Sales History* ......................................................................................................... 37

    *Ownership* ....................................................................................................................... 37

    *Improvements* .................................................................................................................. 37

    *Taxes* ................................................................................................................................ 37

    *Neighborhood Data – Cape Fear Region* ...................................................................... 39

SECTION I. .................................................................................................................................. 56

APPRAISAL OF THE BEFORE VALUE ................................................................................. 56

    *Highest and Best Use Analysis:* ..................................................................................... 57

        *a)*   *Legally Permissible* ............................................................................... 58

        *b)*   *Physically Possible* ................................................................................ 58

        *c)*   *Financially Feasible* .............................................................................. 58

        *d)*   *Maximally Productive* ............................................................................ 59

        *e)*   *Sufficiency of Demand* .......................................................................... 59

        Conclusion ...................................................................................................... 59

    *Land Valuation:* .............................................................................................................. 60

        *Discounted Retail Sales Approach* ............................................................... 60

SECTION II .................................................................................................................................. 120

APPRAISAL OF THE AFTER VALUE .................................................................................... 120

        a)   Legal permissibility ..................................................................................... 135

        b)   Physical possibility and suitability ............................................................. 135

        c)   Financial feasibility .................................................................................... 135

        d)   Maximum productivity ................................................................................. 135

        e)   Sufficiency of demand .................................................................................. 135

        Conclusion: .................................................................................................... 136

    *Land Valuation* .............................................................................................................. 137

        Sales Comparison Approach .......................................................................... 137

    *Estimate of the After Value:* .......................................................................................... 164

Reconciliation .............................................................................................................................. 165

ECOVEST-DOJ_0108633

**Addenda**.................................................................................................................................**166**
    QUALIFICATIONS OF CLAUD CLARK III ...............................................................167
    License .............................................................................................................................169
    Compass Pointe Sales Report..........................................................................................170
    Reasonableness Analysis ................................................................................................175
    Market Analysis And Development Recommendations ...................................................179
    Addendum to Market Analysis and Development Recommendations Report ..................199
    Engineering Letters.........................................................................................................200
    Developer's Agreement ...................................................................................................203
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .............237
    Easement and Baseline Documents..................................................................................238

ECOVEST-DOJ_0108634

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
NC License #7166

State Certified General Real Property Appraiser

ECOVEST-DOJ_0108635

Excerpts from Brunswick Highlands Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Andrew Jackson Highway outside Leland in Brunswick County, North Carolina.  It is adjacent to the Compass Pointe development. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purposes, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 20, 2013 |
| **Date of Value Estimates:** | December 20, 2013 |
| **Date of Donation** | December 20, 2013 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest |
| | After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | PUD (Planned Unit Development); allows for mixed use housing development |
| **Site:** | 373.45 Acres |
| **Easement:** | 373.45 Acres |
| **Reserved:** | 5 sites |
| **Total:** | 373.45 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development |
| | After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0108636

Excerpts from Brunswick Highlands Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of North Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0108637

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0108638

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0108639

**Legal Descriptions and Maps**

LEGAL

The "East Tract, 16030870.1 Sq. Ft., 368.0 AC" as shown on a map thereof recorded in Map Cabinet 74, Pages 94-95 of the Brunswick County Registry, Brunswick County, North Carolina, and "Parcel 3, 237460.2 Sq. Ft., 5.45 AC" as shown on a map thereof recorded in Map Cabinet 75, Pages 4-5 of the Brunswick County Registry, Brunswick County, North Carolina.

Included in this legal description is a small 5.45-acre island that cannot be developed due to ecological purposes.  Due to this fact, the island is not represented in the yield plan, but is included in both the Before and After acreage of the Subject Property.

ECOVEST-DOJ_0108640

Excerpts from Brunswick Highlands Appraisal

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D.Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

ECOVEST-DOJ_0108661

Excerpts from Brunswick Highlands Appraisal

## Identification of the Subject Property

The Subject Property consists of parcels located off Andrew Jackson Highway outside Leland in Brunswick County, North Carolina. This property adjoins an existing development known as Compass Pointe.  The site contains 373.45+- acres.

### Prior Sales History

There have been no sales of this property within the last three years. The Subject Property is not listed for sale.

### Ownership

Brunswick Highlands, LLC

### Improvements

None

### Taxes

Property Tax Estimate:

The following is a larger parcel that encompasses the Subject Property. The taxes for this larger parcel are $1.25 an acre. I am using the $1.25 an acre to estimate the taxes on the Subject's 373.45 acres for a total of $466.81.

| Account#: 10911570 | Bill#: 105128 | | Last Trans Date: | Building Value: | 0 | Current Balance: | $68.90 |
| 14 PROPERTIES LLC | Parcel#:02280028 | | Last Payment : | Outbuilding Value: | 0 | Original Levy: | $68.90 |
| | Kind: | | | Land Value: | 1,731,620 | Personal Value: | 0 |
| | Escrow: | | | Parcel Value Total: | 1,731,620 | Total Valuation: | 38,170 |
| PO BOX 1967 | Status: | | | Deferred Value: | 1,693,450 | Exemption: | 0 |
| WILMINGTONNC28402- | Legal Description:452.71 ACRES PLAT 31/530 452.716AC | | | Taxable Value: | 38,170 | |

Taxes and Fees

| Description | Levied | Interest/Fees | Released | Collected | Balance |
| --- | --- | --- | --- | --- | --- |
| BRUNSWICK COUNTY | 168.90 | -0.00 | -0.00 | 0.00 | 168.90 |
| LELAND FIRE | 400.00 | -0.00 | -0.00 | 0.00 | 400.00 |
| Totals | $68.90 | 0.00 | 0.00 | 0.00 | $68.90 |



ECOVEST-DOJ_0108665

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:             On-Site: No; Adjacent: No
- Observed distressed vegetation:         On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":          On-Site: No; Adjacent: No
- Observed noticeable odors:              On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 373.45 +- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

There is an existing development adjoining the subject property.  The adjoining development has the same soil characteristics of the subject.

ECOVEST-DOJ_0108677

Excerpts from Camellia Station Appraisal

# Excerpts from appraisal of:
# Camellia Station

# Document ID:
# ECOVEST-DOJ_0069751

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Camellia Station LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Camellia Station, LLC
      45.2 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

Excerpts from Camellia Station Appraisal

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 45.2 | $53,627,227 |

ECOVEST-DOJ_0069752

Excerpts from Camellia Station Appraisal

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 45.2 | $222,320 |

The value of the easement gift as of December 15, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 45.2 | $53,627,227 |
| Less | | |
| Total After Value (Encumbered) | 45.2 | $222,320 |
| **Value of the Easement** | rounded | **$53,405,000** |

The encumbered property also includes one (1) reserved building for either one residence or one resort. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that the lot is not a build ready lot and will incur some development costs to make it so. The site will be constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or

ECOVEST-DOJ_0069753

otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                               State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0069754

Excerpts from Camellia Station Appraisal

## Table of Contents

**Certification** ......................................................................................................................................7

**Summary of the Appraisal** ..................................................................................................................8

**Assumptions and Limiting Conditions** ..............................................................................................9

**Legal Descriptions and Maps** ...........................................................................................................12

**INTRODUCTION:** ............................................................................................................................23

**Scope of the Assignment** .................................................................................................................24

*Competency Provision* ......................................................................................................................28

*Appraisal of the Larger Parcel:* .........................................................................................................29

*Identification of the Subject Property* ................................................................................................30

*Prior Sales History* ............................................................................................................................30

*Ownership* ..........................................................................................................................................30

*Improvements* ....................................................................................................................................30

*Taxes* ..................................................................................................................................................30

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..................................................32

**SECTION I** .......................................................................................................................................52

**APPRAISAL OF THE BEFORE VALUE** ........................................................................................52

*Highest and Best Use Analysis:* ........................................................................................................53
    a)    Legally Permissible .....................................................................................................54
    b)    Physically Possible ......................................................................................................54
    c)    Financially Feasible .....................................................................................................54
    d)    Maximally Productive ..................................................................................................55
    e)    Sufficiency of Demand ................................................................................................55
    Conclusion ........................................................................................................................55

*Land Valuation:* .................................................................................................................................56
    Discounted Retail Sales Approach ...................................................................................56

**SECTION II** ...................................................................................................................................120

**APPRAISAL OF THE AFTER VALUE** ..........................................................................................120

*Highest and Best Use Analysis:* ......................................................................................................135
    a)    Legal permissibility ...................................................................................................136
    b)    Physical possibility and suitability .............................................................................136
    c)    Financial feasibility ...................................................................................................136
    d)    Maximum productivity ...............................................................................................136
    e)    Sufficiency of demand ................................................................................................136
    Conclusion: .....................................................................................................................137

*Land Valuation* .................................................................................................................................138
    Sales Comparison Approach ...........................................................................................138

*Estimate of the After Value:* ............................................................................................................143

**Reconciliation** ...............................................................................................................................149

ECOVEST-DOJ_0069755

**Addenda**..........................................................................................................................................**150**

Qualifications ..............................................................................................................................150
License ........................................................................................................................................150
Camellia Station Unit Plans ........................................................................................................150
Cost Estimates.............................................................................................................................150
Development Letters ....................................................................................................................150
Demographic Reports ..................................................................................................................150
Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............150
Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
......................................................................................................................................................150
Crystal Lagoon Information and Supporting Documents ............................................................150
Bowden Report – Before Scenario...............................................................................................150
Easement .....................................................................................................................................150
Baseline.......................................................................................................................................150

ECOVEST-DOJ_0069756

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
SC License #AB 6878 CG

State Certified General Real Property Appraiser

ECOVEST-DOJ_0069757

Excerpts from Camellia Station Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Sandridge Road, south of Carolina Bays Pkwy and west of Robert Edge Pkwy. It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 15, 2016 |
| **Date of Donation** | December 15, 2016 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | R4, R4I and RC (Resort Residential, Inland Multifamily Residential and Resort Commercial) |
| **Site:** | 45.2 Acres |
| **Easement:** | 45.2 Acres |
| **Reserved:** | One reserved 1.0 acre building site |
| **Total:** | 45.2 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275 |

ECOVEST-DOJ_0069758

Excerpts from Camellia Station Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0069759

Excerpts from Camellia Station Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0069760

Excerpts from Camellia Station Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0069761

Excerpts from Camellia Station Appraisal

## Legal Descriptions and Maps



LEGAL DESCRIPTION

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL AND
POINT BEING MARKED BY HAVING 5/8" IRON REBAR SET AND HAVING SC STATE PLANE
COORDINATES OF N 736,557.86 AND E 2,696,989.79 THENCE A LINE BOUNDED TO THE EAST
BY SANDRIDGE ROAD EXTENSION THE FOLLOWING BEARINGS AND DISTANCES:
N 78° 58' 09" E 535.18' TO 1" IRON PIPE FOUND
N 69° 26' 00" E 1095.41' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY PARCEL 3 A, AND BOUNDED TO THE
EAST BY THE SUBJECT TRACT. THE FOLLOWING BEARINGS AND DISTANCES:

S 20° 27' 15" E 418.79 TO 5/8" IRON REBAR SET
S 69° 32' 45" W 93.01' TO 5/8" IRON REBAR SET
S 69° 27' 15" E 1073.60 TO CALC. POINT
N 75° 19' 46" W 4.67' TO CALC. POINT (L28)
N 67° 43' 52" W 23.64' TO CALC. POINT (L27)
N 67° 13' 06" W 24.20' TO CALC. POINT (L26)
N 59° 06' 32" W 34.36' TO CALC. POINT (L25)
N 62° 17' 34" W 87.59' TO CALC. POINT (L24)
N 53° 40' 03" W 26.23' TO CALC. POINT (L23)
N 44° 58' 59" W 25.82' TO CALC. POINT (L22)
N 52° 00' 25" W 22.14' TO CALC. POINT (L21)
N 73° 34' 09" W 22.29' TO CALC. POINT (L20)
N 73° 21' 44" W 59.90' TO CALC. POINT (L19)
N 73° 44' 52" W 35.49' TO CALC. POINT (L18)
N 60° 25' 48" W 26.40' TO CALC. POINT (L17)
N 71° 35' 11" W 38.34' TO CALC. POINT (L16)
N 73° 34' 25" W 29.78' TO CALC. POINT (L15)
N 68° 43' 53" W 25.30' TO CALC. POINT (L14)
N 75° 12' 04" W 27.83' TO CALC. POINT (L13)
N 75° 76' 16" W 27.83' TO CALC. POINT (L12)
N 56° 18' 53" W 42.36' TO CALC. POINT (L11)
N 61° 10' 34" W 30.54' TO CALC. POINT (L10)
S 81° 11' 18" W 43.73' TO CALC. POINT (L9)
N 69° 14' 59" W 30.55' TO CALC. POINT (L8)
N 78° 46' 58" W 33.56' TO CALC. POINT (L7)
N 75° 43' 04" W 37.18' TO CALC. POINT (L6)
N 53° 53' 59" W 24.74' TO CALC. POINT (L5)
N 64° 09' 09" W 30.88' TO CALC. POINT (L4)
N 63° 19' 44" W 29.18' TO CALC. POINT (L3)
N 58° 05' 35" W 28.97' TO CALC. POINT (L2)
N 35° 53' 59" W 19.74' TO CALC. POINT (L1)
S 23° 32' 25" E 265.37' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY PARCEL 6, AND BOUNDED TO THE NORTH BY
THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

S 68° 19' 38" W A DISTANCE OF 857.14' TO 5/8" IRON REBAR SET
S 68° 19' 36" W A DISTANCE OF 29.58' TO 5/8" IRON REBAR SET (L29)

THENCE A LINE BOUNDED TO THE SOUTH BY PARCEL 5, AND BOUNDED TO THE NORTH
BY THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

S 68° 19' 38" W A DISTANCE OF 93.32' TO 5/8" IRON REBAR SET (L30)

THENCE A LINE NORTH BOUNDED TO WEST BY PARCEL 7 AND TO THE EAST BY
THE SUBJECT TRACT. THE FOLLOWING BEARINGS AND DISTANCES:
N 21° 40' 22" W A DISTANCE OF 1344.85'
THENCE BACK TO POINT OF BEGINNING. TRACT CONTAINS 45.22 ACRES

ECOVEST-DOJ_0069762

Excerpts from Camellia Station Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources, as well as national valuation services, such as RS Means and Marshall and Swift.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 45.2 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0069775

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0069776

Excerpts from Camellia Station Appraisal

Introduction

**Identification of the Subject Property**

The subject is located off Sandridge Road, south of Carolina Bays Pkwy and west of Robert Edge Pkwy.  It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 45.2 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Camellia Station, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0069780

Excerpts from Camellia Station Appraisal

Site Data

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 45.2 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0069794

# Excerpts from appraisal of: Cane Creek

# Document ID: CC_IRSAUD00035292

Excerpts from Cane Creek Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

March 19, 2013

Cane Creek Partners, LLC

RE:     Conservation Easement Cane Creek
Van Buren County, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

To Whom It May Concern:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

*Foothills Land Conservancy*
*373 Ellis Avenue*
*Maryville, Tennessee 37804*

CONFIDENTIAL

CC_IRSAUD00035292

I made a study of the parcel that is legally described in the easement documents for estimating the ***market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 26, 2012, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value | 345.74 | $10,515,485 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 26, 2012 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 345.74 | $1,000 | $345,740 |

The Subject Property has two (2) 2-acre reserved homesites.  The two homesites are encumbered by the CE and subdivision of the CE into two large parcels is allowed, so that each homesite would have a share of the easement area.  This reduces the overall value of the two homesites, being that the final "product" that could be sold is a 150-acre parcel upon which you can build one house of limited size, in a non-optimal area.  The homesites cannot be separately sold as 2-acre parcels.  There is no enhancement.

The value of the easement gift as of December 26, 2012 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 345.74 |  | $10,515,485 |
| Less |  |  |  |
| After Value (Encumbered) | 345.74 | $1,000 | $345,740 |
|  |  |  |  |
| Value of the Easement |  | rounded | $10,170,000 |

CONFIDENTIAL                                                      CC_IRSAUD00035293

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

The after valuation is made under the assumption that the easement has been granted.  It has not been granted.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

CONFIDENTIAL                                    CC_IRSAUD00035294

## Table of Contents

**Certification** ..................................................................................................................... **6**

**Summary of the Appraisal** .............................................................................................. 7

**Assumptions and Limiting Conditions** ......................................................................... **8**

**Legal Descriptions and Maps** ........................................................................................ **11**

**INTRODUCTION:** ............................................................................................................ **19**

   *Scope of the Assignment* ................................................................................................ *20*

   *Competency Provision* .................................................................................................... *24*

   *Appraisal of the Larger Parcel:* ..................................................................................... *25*

   *Identification of the Subject Property* ............................................................................. *26*

   *Prior Sales History* ......................................................................................................... *26*

   *Ownership* ....................................................................................................................... *26*

   *Improvements* .................................................................................................................. *26*

   *Taxes* ............................................................................................................................... *26*

   *General Area Analysis* .................................................................................................... *35*

**SECTION I** ........................................................................................................................ **45**

**APPRAISAL OF THE BEFORE VALUE** ........................................................................ **45**

   *Highest and Best Use Analysis:* ...................................................................................... *46*

     a)   *Legally Permissible* .................................................................................... 47

     b)   *Physically Possible* ..................................................................................... 47

     c)   *Financially Feasible* ................................................................................... 47

     d)   *Maximally Productive* ................................................................................. 48

     e)   *Sufficiency of Demand* ................................................................................ 48

     Conclusion ....................................................................................................... 48

     Hypothetical Condition ................................................................................... 48

   *Land Valuation:* .............................................................................................................. *49*

**SECTION II** ...................................................................................................................... **70**

**APPRAISAL OF THE AFTER VALUE** ........................................................................... **70**

   *Highest and Best Use Analysis:* ...................................................................................... *78*

     a)   Legal permissibility ...................................................................................... 79

     b)   Physical possibility and suitability .............................................................. 79

     c)   Financial feasibility ..................................................................................... 79

     d)   Maximum productivity .................................................................................. 79

     e)   Sufficiency of demand ................................................................................... 79

     Conclusion: ...................................................................................................... 80

   *Land Valuation:* .............................................................................................................. *81*

     Sales Comparison Approach ........................................................................... 81

**Reconciliation** .................................................................................................................. **94**

**Addenda** ............................................................................................................................ **94**

**CONFIDENTIAL**

**CC_IRSAUD00035295**

QUALIFICATIONS..................................................................................................................... 96
License...................................................................................................................................... 98
Engineer's Letter on Soil Conditions........................................................................................ 99
Planning Certification............................................................................................................... 100
Easement and Baseline Documents .......................................................................................... 101

CONFIDENTIAL

CC_IRSAUD00035296

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                State Certified General Real Property Appraiser
TN License #4693

CONFIDENTIAL                CC_IRSAUD00035297

Excerpts from Cane Creek Appraisal

**Summary of the Appraisal**

**Property Type:**              Conservation Easement

**Location:**                   The subject is located on Highway 30 near Spencer in Van
                                Buren, Tennessee.

**Purposes of the Appraisal:**  To estimate, for federal and state income tax purpose, the
                                market value of the conservation easement.

**Function of the Appraisal:**  To estimate the market value of a conservation easement.

**Date of the Appraisal Report:** March 19, 2013

**Date of Value Estimates:**    December 26, 2012

**Date of Donation**            December 26, 2012

**Property Rights Appraised:**  Before:    Fee Simple Interest
                                After:     Fee Simple Interest Subject to Easement

**Zoning:**                     None

**Site:**                       345.74 Acres

**Easement:**                   341.74 Acres

**Reserved:**                   4 Acres

**Total:**                      345.74 Acres

**Improvements:**               Jeep/ATV Trails

**High and Best Use
of Site as Though Vacant:**     Before:  Residential Development
                                After:    Hunting or Recreational Use

**Appraiser:**                  Claud Clark III as an Employee and Sole Owner of
                                Clark ~ Davis, PC          EIN 63-1075275

CONFIDENTIAL                                              CC_IRSAUD00035298

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

CONFIDENTIAL

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

CONFIDENTIAL                                                    CC_IRSAUD00035300

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

CONFIDENTIAL                                     CC_IRSAUD00035301

Excerpts from Cane Creek Appraisal

**Legal Descriptions and Maps**

LEGAL

345.74 Acre

Beginning at a ½" dia. rebar set in the south margin of Highway 30, said rebar being 30' south of the center-line passageway of said highway, and also being the northwest corner of Barry E. Austin, (WDB 12-298, ROVBCT),

Thence leaving said highway with Austin, S 02°16'27"W, 1643.71' to a ½" dia. rebar set at a steel post found,

Thence S 88°03'44"E, 1648.26' to a ½" dia. rebar set at a steel post found,

Thence N 01°43'21"E, 684.86' to a stone found being the southeast corner of Theron Soloman, (WDB 10J-539, ROVBCT),

Thence with Solomon, N 03°29'23"E, 265.87' to a ½" dia. rebar set in the south margin of Highway 30,

Thence with said highway, S 57°58'57"E, 216.41',

S 58°28'18"E, 78.54',

S 60°25'05"E, 78.03',

S 63°40'21"E, 80.30'

S 69°24'37"E, 76.15',

S 74°35'41"E, 70.77'

S 78°30'17"E, 47.70'

S 81°31'52"E, 124.09'.

S 79°27'31"E, 58.37',

S 73°55'15"E, 48.72',

S 68°15'18"E, 53.98',

S 62°50'19"E, 51.11',

S 57°37'12"E, 47.16',

S 52°29'58"E, 45.83',

S 47°36'17"E, 49.80' to a ½" dia. rebar set being the corner of Norma Jean Walker, (WDB 27E-712, ROVBCT),

Thence leaving said road with Walker, N 87°04'59"W, 363.54' to a ½" dia. rebar set at a steel post,

CONFIDENTIAL

Excerpts from Cane Creek Appraisal

Thence S 06°08'18"W, 2677.51' to a ½" dia. rebar set at a steel post in the line of MGI Inc., (WDB 13-884, ROVBCT),

Thence with MGI, N 83°58'24"W, 386.30' to an iron pin found,

Thence with Grandview Golf Club Inc., (WDB RB7-78, ROVBCT), N 83°56'40"W, 531.73' to a ½" dia. rebar set at a steel post,

Thence N 84°02'31"W, 192.07' to an iron pin found,

Thence with Mountain Village Investment Group, LLC, (WDB RB11—75, ROVBCT), N 84°06'02"W, 1127.03' to a steel fence post,

Thence N 83°35'03"W, 273.07' to an iron pin found,

Thence with Grandview Golf Club Inc., (WDB RB7-78, ROVBCT), N 83°57'09"W, 1856.70' to an iron pin found,

Thence N 84°03'23"W, 770.81' to a ½" dia. rebar set at a steel post, corner of State Of Tennessee, (WDB 14-100, ROVBCT),

Thence with State Property, N 05°47'55"E, 1302.85' to a steel post,

Thence N 05°20'49"E, 983.94' to a point,

Thence leaving State property with a severance line of Tennessee Overlook LLC, N 88°20'14"E, 788.23' to a point,

Thence N 09°38'15"E, 1091.64' to a point,

Thence N 31°33'04"E, 164.69' to a point,

Thence N 39°18'09"E, 711.92' to a point in the south margin of Highway 30,

Thence with said highway, S 60°31'07"E, 252.70',

S 60°31'18"E, 108.26'.

N 60°16'47"W, 243.79',

S 59°59'42"E, 322.96',

S 60°22'19"E, 159.85',

S 60°23'04"E, 73.78',

S 62°09'54"E, 66.95',

S 64°04'15"E, 64.82'

S 66°04'31"E, 295.98' to the point of beginning containing 345.74 acres as surveyed by Allen Nail, RLS #1794, dated 02-02-07. (307J)

CONFIDENTIAL                                CC_IRSAUD00035303

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises Step 4. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

CONFIDENTIAL                                    CC_IRSAUD00035312

Excerpts from Cane Creek Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF, income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of significance is proximity to other recreational features such as national, state forests, and golf courses.  This property adjoins a golf course and is very close to Fall Creek Falls State Park and Bledsoe State Forest.

CONFIDENTIAL

CC_IRSAUD00035313

Excerpts from Cane Creek Appraisal

**Identification of the Subject Property**

The Subject Property consists of one parcel located in on Highway 30 near Spencer in Van Buren County, Tennessee. The site contains 345.74+- acres.

**Prior Sales History**

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

**Ownership**

Cane Creek Partners, LLC

**Improvements**

None

**Taxes**

26

196

CONFIDENTIAL

CC_IRSAUD00035317

Excerpts from Cane Creek Appraisal

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No

- Observed staining of soils:                    On-Site: No; Adjacent: No
- Observed distressed vegetation:           On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":    On-Site: No; Adjacent: No
- Observed noticeable odors:                   On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 345.74 +- acres, of which approximately 345.74 +- acres are effectively usable land.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

CONFIDENTIAL                                                          CC_IRSAUD00035330

Excerpts from Carolina Bays Resort Appraisal

Excerpts from appraisal of:
Carolina Bays Resort

Document ID:
ECOVEST-DOJ_0129432

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email: Claud@ClarkAppraisals.com

December 30, 2014

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE: Conservation Easement Appraisal
Carolina Bays Resort (116-acre tract) North Myrtle Beach, Horry County, SC

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

1

ECOVEST-DOJ_0129432

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 30, 2014, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 30, 2014 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 116 | $53,180,304 |

ECOVEST-DOJ_0129433

The value of the Subject Property, subject to a perpetual conservation easement as of December 30, 2014 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 116 | $2,179,800 |

The value of the easement gift as of December 30, 2014 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 116 | $53,180,304 |
| Less | | |
| Total After Value (Encumbered) | 116 | $2,179,800 |
| **Value of the Easement** | rounded | **$51,000,000** |

The Subject Property has five (5) reserved building sites. These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these five sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. These sites are not build ready and would incur development costs. There is no enhancement. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or

otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                          State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0129435

Excerpts from Carolina Bays Resort Appraisal

## Table of Contents

**Certification** ........................................................................................................ Error! Bookmark not defined.

**Summary of the Appraisal** ...................................................................................................... 8

**Assumptions and Limiting Conditions** ................................................................................. 9

**Legal Descriptions and Maps** .............................................................................................. 12

**INTRODUCTION:** ................................................................................................................ 23

**Scope of the Assignment** ...................................................................................................... 24

   *Competency Provision* .................................................................................................. 28

   *Appraisal of the Larger Parcel:* ................................................................................. 29

   *Identification of the Subject Property* ....................................................................... 30

   *Prior Sales History* ..................................................................................................... 30

   *Ownership* ..................................................................................................................... 30

   *Improvements* ............................................................................................................... 30

   *Taxes* .............................................................................................................................. 30

   *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..................... 32

**SECTION I.** .............................................................................................................................. 44

**APPRAISAL OF THE BEFORE VALUE** ........................................................................... 44

   *Highest and Best Use Analysis:* ................................................................................. 45

     *a)*   *Legally Permissible* ............................................................................ 46

     *b)*   *Physically Possible* ............................................................................. 46

     *c)*   *Financially Feasible* ........................................................................... 46

     *d)*   *Maximally Productive* ........................................................................ 47

     *e)*   *Sufficiency of Demand* ....................................................................... 47

     Conclusion ........................................................................................................ 47

   *Land Valuation:* ........................................................................................................... 48

     *Discounted Retail Sales Approach* .................................................................. 48

**SECTION II** ............................................................................................................................ 94

**APPRAISAL OF THE AFTER VALUE** ............................................................................. 94

   *Highest and Best Use Analysis:* ............................................................................... 109

     *a)*   Legal permissibility ........................................................................... 110

     *b)*   Physical possibility and suitability ................................................... 110

     *c)*   Financial feasibility .......................................................................... 110

     *d)*   Maximum productivity ....................................................................... 110

     *e)*   Sufficiency of demand ....................................................................... 110

     Conclusion: ...................................................................................................... 111

   *Land Valuation* .......................................................................................................... 112

     Sales Comparison Approach ........................................................................... 112

   *Estimate of the After Value:* ..................................................................................... 134

**Reconciliation** ...................................................................................................................... 140

ECOVEST-DOJ_0129436

Excerpts from Carolina Bays Resort Appraisal

**Addenda**........................................................................................................................................**141**

    Qualifications.............................................................................................................................141

    License.....................................................................................................................................141

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............141

    Bowden Report..........................................................................................................................141

    Easement..................................................................................................................................141

    Baseline...................................................................................................................................141

ECOVEST-DOJ_0129437

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
SC License #AB 6878 CG

State Certified General Real Property Appraiser

ECOVEST-DOJ_0129438

Excerpts from Carolina Bays Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located east of Highway 31 and west of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 30, 2014 |
| **Date of Value Estimates:** | December 30, 2014 |
| **Date of Donation** | December 30, 2014 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | R4 Resort Residential |
| **Site:** | 116 +- Acres |
| **Easement:** | 116 +- Acres |
| **Reserved:** | Five 1.5-acre Reserved Sites |
| **Total:** | 116 +- Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:     Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC           EIN 63-1075275 |

ECOVEST-DOJ_0129439

Excerpts from Carolina Bays Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0129440

Excerpts from Carolina Bays Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0129441

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0129442

**Legal Descriptions and Maps**

ALL AND SINGULAR, all that certain piece, parcel or tract of land situate, lying and being in Little River Township, Horry County, South Carolina, being more particularly described as "Tract E containing 115.737 AC. $\pm$", as shown on plat entitled "McDuffy Tract, Canal Holdings, LLC Tract, Gibson-Wall Company Tract, H.F. Bell Tract and R.E. Bell No. 2 Tract", prepared by Thomas & Hutton Engineering Co., dated March 25, 2005, and recorded June 1, 2005, in Plat Book 205, at Pages 156 through 156D, in the office of the Register of Deeds for Horry County, South Carolina, reference to which is hereby craved as forming a part and parcel hereof.

ECOVEST-DOJ_0129443

Excerpts from Carolina Bays Resort Appraisal

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 116 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0129456

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0129457

Excerpts from Carolina Bays Resort Appraisal

## Identification of the Subject Property

The Subject Property is located east of Highway 31 and west of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 116+- acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Carolina Bays Resort, LLC

## Improvements

None

## Taxes

### Record Information

Receipt #: 298554133

Status: Paid

Date Paid: 01/14/14

### Tax Information

| | |
|---|---|
| Name: | SLF IV/SB1 SANDRIDGE LLC |
| Tax Year: | 2013 |
| Assessment Value: | 1840 |
| District/Levy: | 550 / 175.4 |
| City/Levy: | NM / 038. |

### Property Information

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 143-00-01-078 |
| SC DOR#: | |
| Market Value: | 30,660 |
| Description: | LEWIS TR DUFFIE TR E |

### Taxes

| | |
|---|---|
| County Tax: | $322.74 |
| City Tax: | $69.92 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Penalty: | $0.00 |
| Cost: | $0.00 |
| Total Taxes: | $392.66 |
| **Total Paid: $392.66** | |

ECOVEST-DOJ_0129461

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 116+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0129472

# Excerpts from appraisal of:
# Cayo Dorado

# Document ID:
# ECOVEST-DOJ_0153542

Excerpts from Cayo Dorado Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

### January 12, 2018

Cayo Dorado LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:     Conservation Easement Appraisal
        Cayo Dorado, LLC
        436.31-acre tract, Calhoun County, Texas


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0153542

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct.  No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions.  I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0153543

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 7, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 7, 2017 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 436.31 | $78,217,031 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 7, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value | 436.31 | $1,108,960 |

The value of the easement gift as of December 7, 2017 is as follows and is based upon the before and after value method.



| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 436.31 | $78,217,031 |
| Less | | |
| Total After Value (Encumbered) | 436.31 | $1,108,960 |
| | | |
| **Value of the Easement** | rounded | **$77,108,000** |

ECOVEST-DOJ_0153544

The encumbered property also includes two (2) reserved building zones that allow for the construction of one residence each and one recreational building.  While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an additional value over that of the per acre value of the encumbered property.  It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided to value the building zones at $5,000 per acre, or $40,000.  It will be added to the indicated fair market value of the encumbered property.   There is no enhancement.

he attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                              State Certified General Real Property Appraiser
TX License #TX 1380003 G

ECOVEST-DOJ_0153545

Excerpts from Cayo Dorado Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of the storm on the prospective projects.

ECOVEST-DOJ_0153546

Excerpts from Cayo Dorado Appraisal

**CLARK ~ DAVIS, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

September 8, 2017

Adam Lloyd
Ecovest Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

ECOVEST-DOJ_0153547

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Cayo Dorado will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.


Very Truly Yours,


Claud Clark III

ECOVEST-DOJ_0153548

## RALPH STEWART BOWDEN, Inc.
### REAL ESTATE COUNSELORS
626 Elk Run Lane
Earlysville, Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 29, 2017

Mr. Adam Lloyd
EcoVest Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Cayo Dorado, Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will consume the year ahead, but elements such as refining, petrochemicals and shipping will recover in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our society and our economy that continue on as though nothing has happened. Growth in the Texas market is not going to stop. Many corporations continue to migrate to Texas and to expand. The energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump in growth when rebuilding is added to the already existing demand in Texas, among the healthiest in the nation. One can also argue that the Texas' coast location has been in a known hurricane zone for centuries and that the risks associated with the location are baked in and do not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and residential migration will continue to occur. The shore will continue to be a magnet. Hurricane Harvey has no impact on these dynamics. This is the most fundamental truth that should not be forgotten and is a powerful reason to remain bullish on Texas and its coast.

ECOVEST-DOJ_0153549

Consequences of the storm that are unanticipated benefits to the proposed development of Cayo Dorado include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019, and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.

Sincerely,

*Ralph S Bowden*

Ralph S. Bowden
President

ECOVEST-DOJ_0153550

Excerpts from Cayo Dorado Appraisal

## Table of Contents

*Certification* ................................................................................................................12

**Summary of the Appraisal** .......................................................................................13

**Assumptions and Limiting Conditions** ..................................................................14

**Legal Descriptions and Maps** ................................................................................17

**INTRODUCTION:** .....................................................................................................30

**Scope of the Assignment** .........................................................................................31

   *Competency Provision* ............................................................................................35

   *Appraisal of the Larger Parcel:* ............................................................................36

   *Identification of the Subject Property* ...................................................................37

   *Prior Sales History* ................................................................................................37

   *The Subject is not listed for sale.* ...........................................................................37

   *Ownership* ...............................................................................................................37

   *Improvements* ..........................................................................................................37

   *Taxes* .......................................................................................................................37

   *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ........41

**SECTION I** ...............................................................................................................55

**APPRAISAL OF THE BEFORE VALUE** ................................................................55

   *Highest and Best Use Analysis:* .............................................................................56
     a)   *Legally Permissible* ........................................................................57
     b)   *Physically Possible* .........................................................................57
     c)   *Financially Feasible* ........................................................................57
     d)   *Maximally Productive* .....................................................................58
     e)   *Sufficiency of Demand* .....................................................................58
     Conclusion ...............................................................................................58

   *Land Valuation:* ......................................................................................................62
     *Discounted Retail Sales Approach* ...........................................................62

**SECTION II** ..............................................................................................................97

**APPRAISAL OF THE AFTER VALUE** ...................................................................97

   *Highest and Best Use Analysis:* ...........................................................................112
     a)   Legal permissibility .........................................................................113
     b)   Physical possibility and suitability ..................................................113
     c)   Financial feasibility ........................................................................113
     d)   Maximum productivity ....................................................................113
     e)   Sufficiency of demand .....................................................................114
     Conclusion: ............................................................................................114

   *Land Valuation* ....................................................................................................115
     Sales Comparison Approach ..................................................................115

   *Estimate of the After Value:* ................................................................................126

ECOVEST-DOJ_0153551

Excerpts from Cayo Dorado Appraisal

**Reconciliation** ................................................................................................................**132**

**Addenda** ........................................................................................................................**133**

    Qualifications ...............................................................................................................133

    License ........................................................................................................................133

    Cayo Dorado Unit Plans ................................................................................................133

    Cost Estimates .............................................................................................................133

    Development Letters .....................................................................................................133

    Demographic Reports ...................................................................................................133

    Mineral Assessment Report ...........................................................................................133

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............133

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ................................................................................................................133

    Crystal Lagoon Information and Supporting Documents .......................................................133

    Bowden Report – Before Scenario ...................................................................................133

    Easement ....................................................................................................................133

    Baseline ......................................................................................................................133

ECOVEST-DOJ_0153552

Excerpts from Cayo Dorado Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being  encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                                State Certified General Real Property Appraiser
TX License #TX 1380003G

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | June 13, 2017 |
| **Date of Value Estimates:** | December 7, 2017 |
| **Date of Donation:** | December 7, 2017 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 436.31 Acres |
| **Easement:** | 436.31 Acres |
| **Reserved:** | Two Reserved Building Zones located within the easement |
| **Total:** | 436.31 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space with one 3-acre building zone and one 5-acre building zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0153554

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0153555

Excerpts from Cayo Dorado Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0153556

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0153557

Excerpts from Cayo Dorado Appraisal

## Legal Descriptions and Maps

EXHIBIT "A"

**436.31 ACRES**

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

**BEING** a 436.31 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Albarado Survey, Abstract No. 1, Calhoun County, Texas, being comprised of portions of Lot 3, Section 1; Lot 4, Section 2; Lots 1 & 4, Section 5, Lots 2 & 3, Section 6; Lots 2 & 3, Section 7; and Lots 1 & 2, Section 8, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 436.31 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the south line of State Highway No. 185 (a Variable Width Right-of-Way), being along the north line of the aforesaid 12,228.52 acre tract, same being the north line of a Right-of-Way Easement, described as Part II, a called 8.163 acre tract of land, conveyed to the State of Texas as recorded in Volume 263, Page 509 of the Deed Records, Calhoun County, Texas for the northeast corner of the herein described tract, from which a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the northwest corner of a called 399.19 acre tract of land conveyed to TCR Land Holdings, LLC as recorded in Instrument No. 149121 of the Official Public Records, Calhoun County, Texas bears North 83°58'28" East, a distance of 1773.97 feet;

**THENCE**, South 25°50'49" East, departing the south right-of-way line of said State Highway No. 185, over and across said 12,228.52 acre tract, at a distance of 11166.59 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 11428.26 feet to a point along the southeasterly line of said 12,228.52 acre tract marking the southwest corner of said 399.19 acre tract for the southeast corner of the herein described tract;

**THENCE**, South 62°05'55" West, along the southeasterly line of said 12,228.52 acre tract, a distance of 1544.86 feet to a point along the southeasterly line of said 12,228.52 acre tract marking the south most corner of the herein described tract;

**THENCE**, North 25°50'49" West, over and across said 12,228.52 acre tract, at a distance of 295.60 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 1495.42 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner of the herein described tract;

**THENCE**, N 64°09'11" E, continuing across said 12,228.52 acre tract, a distance of 450.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner for the herein described tract;

**THENCE**, N 25°50'49" W, continuing across said 12,228.52 acre tract, a distance of 750.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner for the herein described tract;

1

ECOVEST-DOJ_0153558

Excerpts from Cayo Dorado Appraisal

EXHIBIT "A"

THENCE, S 64°09'11" W, continuing across said 12,228.52 acre tract, a distance of 575.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner for the herein described tract;

THENCE, N 25°50'49" W, continuing across said 12,228.52 acre tract, a distance of 9839.76 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the north line of said 12,228.52 acre tract and said Right-of-Way Easement and being along the south right-of-way line of said State Highway No. 185 for the northwest corner of the herein described tract;

THENCE, North 83°58'28" East, along the south right-of-way line of said State Highway No. 185, with the north line of said 12,228.52 acre tract and said Right-of-Way Easement, a distance of 1773.97 feet to the **POINT OF BEGINNING, CONTAINING** within these metes and bounds a 436.31 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in May, 2017 and are true and correct to the best of my knowledge and belief.

05/26/2017

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S21864.01 - Tract 2: 436.31 Acres

2

ECOVEST-DOJ_0153559

Excerpts from Cayo Dorado Appraisal

Area Data

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 436.31 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction

ECOVEST-DOJ_0153573

Excerpts from Cayo Dorado Appraisal

Area Data

- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales

ECOVEST-DOJ_0153574

Excerpts from Cayo Dorado Appraisal

Area Data

## Identification of the Subject Property

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 436.31 acres.

### *Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### *Ownership*

Cayo Dorado, LLC

### *Improvements*

None

### *Taxes*

ECOVEST-DOJ_0153578

Excerpts from Cayo Dorado Appraisal

Site Data

On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No
- Observed staining of soils:                     On-Site: No; Adjacent: No
- Observed distressed vegetation:            On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

  On-Site: No; Adjacent: No
- Observed noticeable odors:                    On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 436.31 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0153592

Excerpts from Cayo Marsopa Appraisal

# Excerpts from appraisal of: Cayo Marsopa

# Document ID: ECOVEST-DOJ_0078704

## CLARK ~ DAVIS, PC
### REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Cayo Marsopa LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:   Conservation Easement Appraisal
      Cayo Marsopa, LLC
      399.19 acre tract, Calhoun County, Texas


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0078704

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust172,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 19, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 19, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 399.19 | $64,111,302 |

2

ECOVEST-DOJ_0078705



The value of the Subject Property, subject to a perpetual conservation easement as of December 19, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Excluded Site | 399.19 | $979,591 |

The value of the easement gift as of December 19, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 399.19 | $64,111,302 |
| Less | | |
| Total After Value (Encumbered) | 399.19 | $979,591 |
| | | |
| **Value of the Easement** | rounded | **$63,132,000** |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
TX License #3890

ECOVEST-DOJ_0078707

Excerpts from Cayo Marsopa Appraisal

## Table of Contents

**Certification** ........................................................................................................................... 7

**Summary of the Appraisal** ...................................................................................................... 8

**Assumptions and Limiting Conditions** ................................................................................ 9

**Legal Descriptions and Maps** ............................................................................................ 12

**INTRODUCTION:** ............................................................................................................... 26

**Scope of the Assignment** ..................................................................................................... 27

*Competency Provision* ............................................................................................................ 31

*Appraisal of the Larger Parcel:* ............................................................................................ 32

*Identification of the Subject Property* .................................................................................. 33

*Prior Sales History* ............................................................................................................... 33

*Ownership* ............................................................................................................................... 33

*Improvements* ........................................................................................................................ 33

*Taxes* ....................................................................................................................................... 33

*Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ...................... 35

**SECTION I** ............................................................................................................................ 51

**APPRAISAL OF THE BEFORE VALUE** ............................................................................ 51

*Highest and Best Use Analysis:* ............................................................................................ 52
    a)   Legally Permissible ......................................................................................................... 53
    b)   Physically Possible ......................................................................................................... 53
    c)   Financially Feasible ....................................................................................................... 53
    d)   Maximally Productive .................................................................................................... 54
    e)   Sufficiency of Demand ................................................................................................... 54
    Conclusion ......................................................................................................................... 54

*Land Valuation:* ..................................................................................................................... 55
    Discounted Retail Sales Approach ................................................................................... 55

**SECTION II** .......................................................................................................................... 123

**APPRAISAL OF THE AFTER VALUE** ............................................................................ 123

*Highest and Best Use Analysis:* .......................................................................................... 137
    a)   Legal permissibility ....................................................................................................... 138
    b)   Physical possibility and suitability ................................................................................ 138
    c)   Financial feasibility ....................................................................................................... 138
    d)   Maximum productivity .................................................................................................. 138
    e)   Sufficiency of demand ................................................................................................... 138
    Conclusion: ....................................................................................................................... 139

*Land Valuation* ..................................................................................................................... 140
    Sales Comparison Approach ............................................................................................ 140

*Estimate of the After Value:* ................................................................................................ 147

**Reconciliation** .................................................................................................................... 153

ECOVEST-DOJ_0078708

Excerpts from Cayo Marsopa Appraisal

**Addenda**..................................................................................................................................**154**

Qualifications...........................................................................................................................154

License.....................................................................................................................................154

Cayo Marsopa Unit Plans........................................................................................................154

Cost Estimates.........................................................................................................................154

Development Letters.................................................................................................................154

Demographic Reports ..............................................................................................................154

Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............154

Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
.................................................................................................................................................154

Crystal Lagoon Information and Supporting Documents ...........................................................154

Bowden Report – Before Scenario............................................................................................154

Easement.................................................................................................................................154

Baseline...................................................................................................................................154

ECOVEST-DOJ_0078709

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
TX License #TX 3890

ECOVEST-DOJ_0078710

Excerpts from Cayo Marsopa Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 19, 2016 |
| **Date of Donation** | December 19, 2016 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:        Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 399.19 Acres |
| **Easement:** | 397.69 Acres |
| **Excluded:** | 1.5 Acres |
| **Total:** | 399.19 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:      Residential Development<br>After:        Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0078711

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0078712

Excerpts from Cayo Marsopa Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0078713

Excerpts from Cayo Marsopa Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0078714

Excerpts from Cayo Marsopa Appraisal

## Legal Descriptions and Maps

TRACT 2
399.19 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 399.19 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Alberado Survey, Abstract No. 1, Calhoun County, Texas, being comprised of portions of Lot 2 & 3, Section 4; a portion of Lot 2, Section 9, Block "A" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas and portions of Lot 1 & 4, Section 6, a portion of Lots 1-4, Section 7, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 399.19 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the south line of State Highway No. 185 (a Variable Width Right-of-Way), being along the north line of the aforesaid 12,228.52 acre tract and the north line of a Right-of-Way Easement, described as Part II a called 8.163 acre tract of land, conveyed to the State of Texas as recorded in Volume 263, Page 509 of the Deed Records, Calhoun County, Texas for the northeast corner of the herein described tract, from which the northeast corner of said 12,228.52 acre tract bears North 83°58'28" East, a distance of 4579.80 feet and from which a found 5/8" steel rebar marking the northwest corner of a called 3019.707 acre tract of land conveyed to Chundu, Ltd. as recorded in Volume 419, Page 374 of the Official Public Records, Calhoun County, Texas bears South 25°50'49" East, a distance of 13.00 feet;

THENCE, departing the south right-of-way line of said State Highway No. 185, over and across said 12,228.52 acre tract, and with the common boundary line of the herein described and surveyed this day, Tract 1, the following courses and distances:

- with a curve turning to the left having an arc length of 239.15 feet, with a radius of 500.00 feet, with a delta angle of 27°24'18", having a chord bearing of South 19°09'17" East, and a chord length of 236.88 feet to a point of tangency for the herein described tract;

- South 32°51'26" East, a distance of 487.39 feet to a point of curvature to the left for the herein described tract;

- with a curve turning to the left having an arc length of 293.57 feet, with a radius of 800.00 feet, with a delta angle of 21°01'33", having a chord bearing of South 43°22'12" East, and a chord length of 291.93 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 486.24 feet, with a radius of 300.00 feet, with a delta angle of 92°51'50", having a chord bearing of South 07°27'02" East, and a chord length of 434.74 feet to a point of compound curvature for the herein described tract;

- with a compound curve turning to the right having an arc length of 373.73 feet, with a radius of 1000.00 feet, with a delta angle of 21°24'47", having a chord bearing of South 49°41'18" West, and a chord length of 371.56 feet to a point of reverse curvature for the herein described tract;

1

ECOVEST-DOJ_0078715

Excerpts from Cayo Marsopa Appraisal

- with a reverse curve turning to the left having an arc length of 674.66 feet, with a radius of 600.00 feet, with a delta angle of 64°25'30", having a chord bearing of South 28°18'57" West, and a chord length of 639.67 feet to a point of tangency for the herein described tract;

- South 03°56'27" East, a distance of 592.66 feet to a set 5/8" steel rebar to a point of curvature to the left for the herein described tract;

- with a curve turning to the right having an arc length of 455.32 feet, with a radius of 877.08 feet, with a delta angle of 29°44'38", having a chord bearing of South 10°55'52" West, and a chord length of 450.22 feet to a point of compound curvature for the herein described tract;

- with a compound curve turning to the right having an arc length of 210.00 feet, with a radius of 500.00 feet, with a delta angle of 24°03'52", having a chord bearing of South 37°50'07" West, and a chord length of 208.46 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the left having an arc length of 454.89 feet, with a radius of 400.00 feet, with a delta angle of 65°09'30", having a chord bearing of South 17°17'18" West, and a chord length of 430.77 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 255.42 feet, with a radius of 500.00 feet, with a delta angle of 29°16'06", having a chord bearing of South 00°39'24" East, and a chord length of 252.65 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the left having an arc length of 649.55 feet, with a radius of 500.00 feet, with a delta angle of 74°26'00", having a chord bearing of South 23°14'21" East, and a chord length of 604.83 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 302.02 feet, with a radius of 500.00 feet, with a delta angle of 34°36'32", having a chord bearing of South 43°09'05" East, and a chord length of 297.45 feet to a point of reverse curvature for the herein described tract;

- South 25°50'49" East, at a distance of 5664.36 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 5289.36 feet to a point marking the south corner of the hereto described Tract 2 and being along the southeasterly line of said 12,228.52 acre tract for the southeast corner of the herein described tract;

**THENCE**, South 62°05'55" West, along the southeasterly line of said 12,228.52 acre tract, a distance of 1200.00 feet to a point marking the south corner of the herein described tract;

**THENCE**, North 25°50'49" West, over and across said 12,228.52 acre tract, at a distance of 225.00 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." and continuing for a total distance of 10766.87 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." being along the south right-of-way of said State Highway No. 185 and being on the common north line of said 12,228.52 acre tract and said Right-of-Way Easement for the northwest corner of the herein described tract;

2

ECOVEST-DOJ_0078716

Excerpts from Cayo Marsopa Appraisal

**THENCE,** North 83°58'28" East, along the south right-of-way line of said State Highway No. 186, with the common north line of said 12,228.52 acre tract and said Right-of-Way Easement, a distance of 3309.80 feet to the **POINT OF BEGINNING. CONTAINING** within these metes and bounds a 399.19 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in August, 2016 and are true and correct to the best of my knowledge and belief.

_____
Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 8616

S21781.00 - Tract 2: 399.19 Acres

3

ECOVEST-DOJ_0078717

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 399.19 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0078731

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0078732

Excerpts from Cayo Marsopa Appraisal

Introduction

**Identification of the Subject Property**

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 399.19 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Cayo Marsopa, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0078736

Site Data

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:    On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 399.19 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0078748

# Excerpts from appraisal of: Coastavista Palms

# Document ID: ECOVEST-DOJ_0038749

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE:   Conservation Easement
        Appraisal Coastavista Palms
        213.96 acre tract, Jasper County, South Carolina

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

1

ECOVEST-DOJ_0038749

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of October 28, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of October 28, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 213.96 | $31,207,737 |

The value of the Subject Property, subject to a perpetual conservation easement as of October 28, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 213.96 | $320,940 |

ECOVEST-DOJ_0038750

The value of the easement gift as of October 28, 2016 is as follows and is based upon the before and after value method.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 213.96 | $31,207,737 |
| Less |  |  |
| Total After Value (Encumbered) | 213.96 | $320,940 |
| **Value of the Easement** | rounded | **$30,887,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site.  While these sites do maintain limited building rights, as defined by the easement, the limited access to the property, limits the value above that of the encumbered property.  It should also be noted that these lots are not build ready and will require such things as access, lot clearing, and utility installation.  Due to these facts, I do not feel that these sites warrant any additional value above that of the overall per acre value of the encumbered tract. No enhancement needed.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

3

ECOVEST-DOJ_0038751

Excerpts from Coastavista Palms Appraisal

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0038752

Excerpts from Coastavista Palms Appraisal

## Table of Contents

**Certification** .................................................................................................................................. 7

**Summary of the Appraisal** ............................................................................................................ 8

**Assumptions and Limiting Conditions** ........................................................................................ 9

**Legal Descriptions and Maps** .................................................................................................... 12

**INTRODUCTION:** ...................................................................................................................... 27

**Scope of the Assignment** ............................................................................................................ 28

*Competency Provision* ................................................................................................................. 32

*Appraisal of the Larger Parcel:* .................................................................................................. 33

*Identification of the Subject Property* ......................................................................................... 34

*Prior Sales History* ...................................................................................................................... 34

*Ownership* ..................................................................................................................................... 34

*Improvements* ............................................................................................................................... 34

*Taxes* ............................................................................................................................................. 34

*Neighborhood Data –Jasper County, South Carolina* ................................................................ 36

**SECTION I** .................................................................................................................................... 51

**APPRAISAL OF THE BEFORE VALUE** .................................................................................. 51

*Highest and Best Use Analysis:* ................................................................................................... 52

    a)    Legally Permissible .......................................................................................... 53

    b)    Physically Possible ........................................................................................... 53

    c)    Financially Feasible ......................................................................................... 53

    d)    Maximally Productive ...................................................................................... 53

    e)    Sufficiency of Demand ..................................................................................... 53

    Conclusion ............................................................................................................ 54

*Land Valuation:* ............................................................................................................................ 55

    Discounted Retail Sales Approach ....................................................................... 55

**SECTION II** .................................................................................................................................. 124

**APPRAISAL OF THE AFTER VALUE** .................................................................................... 124

*Highest and Best Use Analysis:* ................................................................................................... 141

    a)    Legal permissibility ......................................................................................... 142

    b)    Physical possibility and suitability .................................................................. 142

    c)    Financial feasibility ......................................................................................... 142

    d)    Maximum productivity ..................................................................................... 142

    e)    Sufficiency of demand ..................................................................................... 142

    Conclusion: ........................................................................................................... 143

*Land Valuation* ............................................................................................................................ 144

    Sales Comparison Approach ................................................................................ 144

*Estimate of the After Value:* ........................................................................................................ 149

**Reconciliation** ............................................................................................................................ 155

ECOVEST-DOJ_0038753

**Addenda**.............................................................................................................................**156**

    Qualifications ...................................................................................................................156

    License .............................................................................................................................156

    Coastavista Palms Unit Plans ..........................................................................................156

    RS Means Cost Estimates ................................................................................................156

    Development Letters .........................................................................................................156

    Demographic Reports .......................................................................................................156

    Crystal Lagoons Information and Articles .......................................................................156

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .............156

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ...................................................................................................156

    Bowden Report – Before Scenario ...................................................................................156

    Easement .........................................................................................................................156

    Baseline ...........................................................................................................................156

ECOVEST-DOJ_0038754

Excerpts from Coastavista Palms Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0038755

Excerpts from Coastavista Palms Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off SC Highway 141 in Jasper County, South Carolina, approximately 10 miles from Interstate 95. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | October 28, 2016 |
| **Date of Donation:** | October 28, 2016 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:   Fee Simple Interest Subject to Easement |
| **Zoning:** | PDD (Planned Development District) |
| **Site:** | 213.96 Acres |
| **Easement:** | 213.96 Acres |
| **Reserved:** | One Residential Building Site and One Recreational Building Site |
| **Total:** | 213.96 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:   Residential Development<br>After:   Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0038756

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0038757

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0038758

Excerpts from Coastavista Palms Appraisal

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0038759

**Legal Descriptions and Maps**

Coastavista Palms, LLC – Northeast Tract B

ALL AND SINGULAR, THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND, SITUATE, LYING AND BEING IN THE CITY OF HARDEEVILLE, JASPER COUNTY, SOUTH CAROLINA, BEING DESIGNATED AS "NORTHEAST TRACT B", CONTAINING 213.956 ACRES, MORE OR LESS, AND BEING MORE FULLY SHOWN ON THAT CERTAIN PLAT ENTITLED "MINOR SUBDIVISION PARCEL 3B A PORTION OF EAST ARGENT" PREPARED BY THOMAS & HUTTON ENGINEERING CO. DATED OCTOBER 12, 2015, AND RECORDED OCTOBER 28, 2015, IN PLAT BOOK 34, AT PAGE 138 IN THE JASPER COUNTY RECORDS, REFERENCE TO WHICH IS HEREBY CRAVED AS FORMING A PART AND PARCEL HEREOF.

TOGETHER WITH THE FOLLOWING:

1. A NON-EXCLUSIVE, RELOCATABLE, APPURTENANT EASEMENT FOR INGRESS, EGRESS AND UTILITY INSTALLATION AND MAINTENANCE OVER AND ACROSS THAT AREA IDENTIFIED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "A", CONTAINING 11.206 ACRES, MORE OR LESS, AS SHOWN ON THE ABOVE REFERENCED PLAT.

2. A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND UTILITY INSTALLATION AND MAINTENANCE OVER AND ACROSS THAT AREA IDENTIFIED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "B", CONTAINING 3.714 ACRES, MORE OR LESS, AS SHOWN ON THE ABOVE REFERENCED PLAT.

3. A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND UTILITY INSTALLATION AND MAINTENANCE OVER AND ACROSS THAT AREA IDENTIFIED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "C", CONTAINING 1.404 ACRES, MORE OR LESS, AS SHOWN ON THE ABOVE REFERENCED PLAT.

ALL AS CONTAINED IN THAT CERTAIN DEED FROM SLF III - SC EAST ARGENT, LLC, TO COASTAVISTA PALMS, LLC, DATED OCTOBER 26, 2015, RECORDED OCTOBER 28, 2015, IN THE JASPER COUNTY RECORDS IN BOOK 907 AT PAGE 944. TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF ACCESS, PASSAGE AND USE OVER AND ACROSS THE PROPERTY DESCRIBED AS "150' ACCESS EASEMENT" AND "FUTURE NEW RIVER PARKWAY 150' R/W", AS GRANTED BY SLF III - SC EAST ARGENT, LLC BY EASEMENT DATED _____ __, 2015, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK _____ AT PAGE _____ PURSUANT TO THE GRANT OF ACCESS EASEMENT FROM JPR PROPERTIES, LLC, DATED NOVEMBER 7, 2007, AND RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 606 AT PAGE 77. TOGETHER WITH NON-EXCLUSIVE ACCESS, UTILITY AND CONSTRUCTION EASEMENT RIGHTS OVER, IN AND TO THOSE CERTAIN PARCELS OF PROPERTY DESCRIBED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "A", CONTAINING 11.206 ACRES, MORE OR LESS, AND "RELOCATABLE ACCESS AND UTILITY EASEMENT "B", CONTAINING 3.714 ACRES, MORE OR LESS, AS GRANTED BY COASTAVISTA ROAD EASEMENT AGREEMENT BY AND AMONG BELLAVISTA GROVE, LLC, COASTAVISTA PALMS, LLC, AND SLF III-SC EAST ARGENT, LLC, DATED _____, 2015, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK _____ AT PAGE _____.

MORE PARTICULARLY DESCRIBED AS FOLLOWS:

ECOVEST-DOJ_0038760

Excerpts from Coastavista Palms Appraisal

COMMENCING AT THE NORTHERLY RIGHT OF WAY LINE OF ARGENT BOULEVARD(R/W VARIES) AND THE EASTERLY RIGHT OF WAY LINE OF NEW RIVER PARKWAY(150' R/W); THENCE NORTHERLY ALONG NEW RIVER PARKWAY RIGHT OF WAY APPROXIMATELY 8,832 FEET TO AN IRON PIPE FOUND; THENCE LEAVING SAID RIGHT OF WAY S 86°59' 11" E A DISTANCE OF 1792.10 FEET TO AN IRON PIPE BEING THE POINT OF BEGINNING; THENCE N 05°53'37" W A DISTANCE OF 19.96 FEET TO AN IRON PIPE; THENCE N 33°09'37" E A DISTANCE OF 39.39 FEET TO AN IRON PIPE; THENCE N 12°39'43" E A DISTANCE OF 48.27 FEET TO AN IRON PIPE; THENCE N 20°57'56" E A DISTANCE OF 69.46 FEET TO AN IRON PIPE; THENCE N 15°22'28" E A DISTANCE OF 43.94 FEET TO AN IRON PIPE; THENCE N 18°45'32" E A DISTANCE OF 36.29 FEET TO AN IRON PIPE; THENCE N 33°54'38" E A DISTANCE OF 36.30 FEET TO AN IRON PIPE; THENCE N 40°52'08" E A DISTANCE OF 51.46 FEET TO AN IRON PIPE; THENCE N 53°11'56" E A DISTANCE OF 38.23 FEET TO AN IRON PIPE; THENCE N 61°09'38" E A DISTANCE OF 46.68 FEET TO AN IRON PIPE; THENCE N 67°03'41" E A DISTANCE OF 56.08 FEET TO AN IRON PIPE; THENCE N 59°31'31" E A DISTANCE OF 62.62 FEET TO AN IRON PIPE; THENCE N 11°40'05" E A DISTANCE OF 39.84 FEET TO AN IRON PIPE; THENCE N 08°18'46" E A DISTANCE OF 47.70 FEET TO AN IRON PIPE; THENCE N 19°00'29" E A DISTANCE OF 29.16 FEET TO AN IRON PIPE; THENCE N 12°10'35" W A DISTANCE OF 30.76 FEET TO AN IRON PIPE; THENCE N 03°51'23" E A DISTANCE OF 39.12 FEET TO AN IRON PIPE; THENCE N 13°26'35" W A DISTANCE OF 30.03 FEET TO AN IRON PIPE; THENCE N 17°35'30" W A DISTANCE OF 50.10 FEET TO AN IRON PIPE; THENCE N 19°48'45" W A DISTANCE OF 46.76 FEET TO AN IRON PIPE; THENCE N 17°17'22" W A DISTANCE OF 40.19 FEET TO AN IRON PIPE; THENCE N 21°16'29" W A DISTANCE OF 38.15 FEET TO AN IRON PIPE; THENCE N 34°37'59" W A DISTANCE OF 34.91 FEET TO AN IRON PIPE; THENCE N 51°30'00" W A DISTANCE OF 42.76 FEET TO AN IRON PIPE; THENCE N 69°50'10" W A DISTANCE OF 43.11 FEET TO AN IRON PIPE; THENCE N 63°45'11" W A DISTANCE OF 39.49 FEET TO AN IRON PIPE; THENCE N 86°48'33" W A DISTANCE OF 13.38 FEET TO AN IRON PIPE; THENCE N 71°04'11" W A DISTANCE OF 26.31 FEET TO AN IRON PIPE; THENCE N 37°56'22" W A DISTANCE OF 44.22 FEET TO AN IRON PIPE; THENCE N 11°28'35" W A DISTANCE OF 30.20 FEET TO AN IRON PIPE; THENCE N 42°14'40" W A DISTANCE OF 22.46 FEET TO AN IRON PIPE; THENCE N 02°28'09" E A DISTANCE OF 7.15 FEET TO AN IRON PIPE; THENCE N 05°20'33" E A DISTANCE OF 52.85 FEET TO AN IRON PIPE; THENCE N 56°05'42" W A DISTANCE OF 67.60 FEET TO AN IRON PIPE; THENCE N 02°58'22" E A DISTANCE OF 23.14 FEET TO AN IRON PIPE; THENCE N 56°19'54" W A DISTANCE OF 24.47 FEET TO AN IRON PIPE; THENCE N 30°16'48" E A DISTANCE OF 530.84 FEET TO AN IRON PIPE; THENCE S 88°45'20" E A DISTANCE OF 66.48 FEET TO AN IRON PIPE; THENCE S 80°35'36" E A DISTANCE OF 33.50 FEET TO AN IRON PIPE; THENCE N 88°12'39" E A DISTANCE OF 33.02 FEET TO AN IRON PIPE; THENCE N 76°41'22" E A DISTANCE OF 31.61 FEET TO AN IRON PIPE; THENCE S 85°53'48" E A DISTANCE OF 50.21 FEET TO AN IRON PIPE; THENCE S 78°00'17" E A DISTANCE OF 48.90 FEET TO AN IRON PIPE; THENCE S 62°56'10" E A DISTANCE OF 57.88 FEET TO AN IRON PIPE; THENCE S 84°25'37" E A DISTANCE OF 32.06 FEET TO AN IRON PIPE; THENCE S 87°48'16" E A DISTANCE OF 33.64 FEET TO AN IRON PIPE; THENCE S 58°43'50" E A DISTANCE OF 42.97 FEET TO AN IRON PIPE; THENCE S 62°08'24" E A DISTANCE OF 44.19 FEET TO AN IRON PIPE; THENCE S 77°02'15" E A DISTANCE OF 41.02 FEET TO AN IRON PIPE; THENCE N 70°45'28" E A DISTANCE OF 31.78 FEET TO AN IRON PIPE; THENCE S 40°38'23" E A DISTANCE OF 38.22 FEET TO AN IRON PIPE;

ECOVEST-DOJ_0038761

THENCE S 67°25'17" E A DISTANCE OF 43.22 FEET TO AN IRON PIPE; THENCE S 71°35'58" E A DISTANCE OF 40.94 FEET TO AN IRON PIPE; THENCE S 89°58'07" E A DISTANCE OF 36.45 FEET TO AN IRON PIPE; THENCE N 78°55'10" E A DISTANCE OF 35.00 FEET TO AN IRON PIPE; THENCE S 74°51'22" E A DISTANCE OF 34.95 FEET TO AN IRON PIPE; THENCE N 64°03'41" E A DISTANCE OF 26.34 FEET TO AN IRON PIPE; THENCE N 86°05'42" E A DISTANCE OF 35.98 FEET TO AN IRON PIPE; THENCE N 65°52'49" E A DISTANCE OF 39.47 FEET TO AN IRON PIPE; THENCE N 72°42'14" E A DISTANCE OF 47.27 FEET TO AN IRON PIPE; THENCE N 66°00'34" E A DISTANCE OF 45.85 FEET TO AN IRON PIPE; THENCE N 69°24'38" E A DISTANCE OF 42.71 FEET TO AN IRON PIPE; THENCE N 62°38'58" E A DISTANCE OF 38.50 FEET TO AN IRON PIPE; THENCE N 51°30'26" E A DISTANCE OF 41.26 FEET TO AN IRON PIPE; THENCE N 46°44'20" E A DISTANCE OF 51.01 FEET TO AN IRON PIPE; THENCE N 53°06'08" E A DISTANCE OF 58.90 FEET TO AN IRON PIPE; THENCE N 63°11'01" E A DISTANCE OF 50.06 FEET TO AN IRON PIPE; THENCE N 62°34'57" E A DISTANCE OF 47.10 FEET TO AN IRON PIPE; THENCE N 72°52'46" E A DISTANCE OF 24.44 FEET TO AN IRON PIPE; THENCE N 62°27'51" E A DISTANCE OF 31.70 FEET TO AN IRON PIPE; THENCE N 81°50'02" E A DISTANCE OF 60.45 FEET TO AN IRON PIPE; THENCE N 81°47'36" E A DISTANCE OF 52.78 FEET TO AN IRON PIPE; THENCE N 74°53'25" E A DISTANCE OF 47.77 FEET TO AN IRON PIPE; THENCE S 72°14'58" E A DISTANCE OF 56.34 FEET TO AN IRON PIPE; THENCE S 84°59'24" E A DISTANCE OF 47.31 FEET TO AN IRON PIPE; THENCE S 89°46'20" E A DISTANCE OF 45.78 FEET TO AN IRON PIPE; THENCE S 89°17'31" E A DISTANCE OF 54.71 FEET TO AN IRON PIPE; THENCE S 68°10'56" E A DISTANCE OF 35.92 FEET TO AN IRON PIPE; THENCE S 78°04'38" E A DISTANCE OF 52.93 FEET TO AN IRON PIPE; THENCE S 87°58'05" E A DISTANCE OF 45.92 FEET TO AN IRON PIPE; THENCE N 38°54'16" E A DISTANCE OF 40.53 FEET TO AN IRON PIPE; THENCE N 52°28'06" E A DISTANCE OF 50.16 FEET TO AN IRON PIPE; THENCE N 27°43'33" E A DISTANCE OF 45.01 FEET TO AN IRON PIPE; THENCE N 22°00'11" E A DISTANCE OF 61.62 FEET TO AN IRON PIPE; THENCE S 03°22'02" W A DISTANCE OF 83.22 FEET TO AN IRON PIPE; THENCE S 05°35'42" E A DISTANCE OF 25.65 FEET TO AN IRON PIPE; THENCE N 88°10'13" E A DISTANCE OF 17.73 FEET TO AN IRON PIPE; THENCE N 68°05'08" E A DISTANCE OF 43.73 FEET TO AN IRON PIPE; THENCE N 47°23'29" E A DISTANCE OF 38.43 FEET TO AN IRON PIPE; THENCE N 25°43'40" E A DISTANCE OF 46.65 FEET TO AN IRON PIPE; THENCE N 70°57'38" E A DISTANCE OF 55.64 FEET TO AN IRON PIPE; THENCE N 32°39'44" E A DISTANCE OF 40.03 FEET TO AN IRON PIPE; THENCE N 15°35'07" E A DISTANCE OF 34.72 FEET TO AN IRON PIPE; THENCE N 13°38'50" W A DISTANCE OF 31.66 FEET TO AN IRON PIPE; THENCE N 02°05'15" E A DISTANCE OF 42.44 FEET TO AN IRON PIPE; THENCE N 56°09'31" W A DISTANCE OF 30.45 FEET TO AN IRON PIPE; THENCE N 49°27'38" W A DISTANCE OF 30.70 FEET TO AN IRON PIPE; THENCE N 06°33'32" E A DISTANCE OF 40.58 FEET TO AN IRON PIPE; THENCE N 13°08'22" E A DISTANCE OF 48.17 FEET TO AN IRON PIPE; THENCE N 03°16'06" W A DISTANCE OF 43.66 FEET TO AN IRON PIPE;THENCE N 18°44'01" W A DISTANCE OF 49.45 FEET TO AN IRON PIPE; THENCE N 58°07'49" W A DISTANCE OF 42.15 FEET TO AN IRON PIPE; THENCE N 51°34'49" W A DISTANCE OF 46.53 FEET TO AN IRON PIPE; THENCE N 40°12'08" W A DISTANCE OF 41.25 FEET TO AN IRON PIPE; THENCE N 21°41'24" W A DISTANCE OF 38.46 FEET TO AN IRON PIPE; THENCE N 43°14'55" W A DISTANCE OF 57.91 FEET TO AN IRON PIPE; THENCE N 21°41'52" W A DISTANCE OF 39.09 FEET TO AN IRON PIPE; THENCE N 61°16'22" W A DISTANCE OF 44.15 FEET TO AN IRON PIPE; THENCE N 29°27'44" W A DISTANCE OF

ECOVEST-DOJ_0038762

Excerpts from Coastavista Palms Appraisal

46.96 FEET TO AN IRON PIPE; THENCE N 58°33'10" W A DISTANCE OF 46.19 FEET TO AN IRON PIPE; THENCE N 04°03'01" E A DISTANCE OF 44.71 FEET TO AN IRON PIPE; THENCE N 23°29'36" W A DISTANCE OF 44.39 FEET TO AN IRON PIPE; THENCE N 37°43'29" W A DISTANCE OF 22.15 FEET TO AN IRON PIPE; THENCE N 11°08'27" E A DISTANCE OF 32.62 FEET TO AN IRON PIPE; THENCE N 14°17'25" W A DISTANCE OF 35.26 FEET TO AN IRON PIPE; THENCE N 28°22'09" W A DISTANCE OF 50.49 FEET TO AN IRON PIPE; THENCE N 55°19'55" W A DISTANCE OF 35.91 FEET TO AN IRON PIPE; THENCE N 54°58'38" W A DISTANCE OF 50.31 FEET TO AN IRON PIPE; THENCE N 36°42'32" W A DISTANCE OF 36.13 FEET TO AN IRON PIPE; THENCE N 25°53'15" W A DISTANCE OF 50.84 FEET TO AN IRON PIPE; THENCE N 11°18'50" W A DISTANCE OF 50.34 FEET TO AN IRON PIPE; THENCE N 06°27'38" E A DISTANCE OF 40.61 FEET TO AN IRON PIPE; THENCE N 16°14'52" W A DISTANCE OF 48.02 FEET TO AN IRON PIPE; THENCE N 02°32'33" E A DISTANCE OF 48.37 FEET TO AN IRON PIPE; THENCE N 00°22'52" W A DISTANCE OF 49.58 FEET TO AN IRON PIPE; THENCE N 11°15'20" E A DISTANCE OF 54.09 FEET TO AN IRON PIPE; THENCE N 41°18'57" E A DISTANCE OF 49.30 FEET TO AN IRON PIPE; THENCE N 40°02'22" E A DISTANCE OF 58.08 FEET TO AN IRON PIPE; THENCE N 43°23'46" E A DISTANCE OF 53.39 FEET TO AN IRON PIPE; THENCE N 51°12'38" E A DISTANCE OF 75.54 FEET TO AN IRON PIPE; THENCE N 62°36'58" E A DISTANCE OF 52.21 FEET TO AN IRON PIPE; THENCE N 54°25'11" E A DISTANCE OF 49.00 FEET TO AN IRON PIPE; THENCE N 40°09'33" E A DISTANCE OF 60.96 FEET TO AN IRON PIPE; THENCE N 24°55'40" E A DISTANCE OF 56.29 FEET TO AN IRON PIPE; THENCE N 20°04'22" E A DISTANCE OF 65.24 FEET TO AN IRON PIPE; THENCE N 29°08'01" E A DISTANCE OF 46.63 FEET TO AN IRON PIPE; THENCE N 20°52'43" E A DISTANCE OF 30.36 FEET TO AN IRON PIPE; THENCE N 25°40'56" E A DISTANCE OF 52.29 FEET TO AN IRON PIPE; THENCE N 39°16'02" E A DISTANCE OF 53.86 FEET TO AN IRON PIPE; THENCE N 31°09'02" E A DISTANCE OF 58.93 FEET TO AN IRON PIPE; THENCE N 40°49'37" E A DISTANCE OF 48.59 FEET TO AN IRON PIPE; THENCE N 54°25'59" E A DISTANCE OF 52.51 FEET TO AN IRON PIPE; THENCE N 31°54'24" E A DISTANCE OF 72.37 FEET TO AN IRON PIPE; THENCE N 28°09'13" E A DISTANCE OF 57.43 FEET TO AN IRON PIPE; THENCE N 25°57'15" E A DISTANCE OF 54.91 FEET TO AN IRON PIPE; THENCE N 66°38'50" E A DISTANCE OF 63.39 FEET TO AN IRON PIPE; THENCE N 74°12'38" E A DISTANCE OF 56.06 FEET TO AN IRON PIPE; THENCE N 72°21'08" E A DISTANCE OF 62.06 FEET TO AN IRON PIPE; THENCE N 79°37'51" E A DISTANCE OF 56.29 FEET TO AN IRON PIPE; THENCE N 55°35'50" E A DISTANCE OF 65.30 FEET TO AN IRON PIPE; THENCE N 53°03'37" E A DISTANCE OF 80.87 FEET TO AN IRON PIPE; THENCE N 80°46'04" E A DISTANCE OF 43.52 FEET TO AN IRON PIPE; THENCE N 60°27'36" E A DISTANCE OF 64.03 FEET TO AN IRON PIPE; THENCE N 45°02'56" E A DISTANCE OF 51.27 FEET TO AN IRON PIPE; THENCE N 72°58'16" W A DISTANCE OF 93.69 FEET TO AN IRON PIPE; THENCE N 29°48'41" E A DISTANCE OF 64.25 FEET TO AN IRON PIPE; THENCE N 00°28'53" E A DISTANCE OF 81.44 FEET TO AN IRON PIPE; THENCE N 22°11'17" W A DISTANCE OF 52.50 FEET TO AN IRON PIPE; THENCE N 29°39'31" W A DISTANCE OF 57.71 FEET TO AN IRON PIPE; THENCE N 44°35'27" W A DISTANCE OF 59.46 FEET TO AN IRON PIPE; THENCE N 26°06'59" W A DISTANCE OF 39.38 FEET TO AN IRON PIPE; THENCE N 40°10'08" W A DISTANCE OF 47.33 FEET TO AN IRON PIPE; THENCE N 18°08'57" W A DISTANCE OF 54.86 FEET TO AN IRON PIPE; THENCE N 47°52'15" W A DISTANCE OF 65.02 FEET TO AN IRON PIPE; THENCE N 19°38'16" E A DISTANCE OF 55.17 FEET TO AN IRON PIPE; THENCE N 43°17'56" E A DISTANCE OF 42.24 FEET TO AN IRON PIPE; THENCE N

ECOVEST-DOJ_0038763

16°30'02" W A DISTANCE OF 55.62 FEET TO AN IRON PIPE; THENCE N 24°58'06" W A DISTANCE OF 79.70 FEET TO AN IRON PIPE; THENCE N 69°33'54" W A DISTANCE OF 27.11 FEET TO AN IRON PIPE; THENCE N 30°25'53" W A DISTANCE OF 29.02 FEET TO AN IRON PIPE; THENCE N 23°13'27" W A DISTANCE OF 59.62 FEET TO AN IRON PIPE; THENCE N 89°28'47" W A DISTANCE OF 1112.48 FEET TO AN IRON PIPE; THENCE N 15°44'35" W A DISTANCE OF 560.46 FEET TO AN IRON PIPE; THENCE N 64°28'55" W A DISTANCE OF 916.52 FEET TO AN IRON PIPE; THENCE N 04°59'03" W A DISTANCE OF 640.71 FEET TO AN IRON PIPE; THENCE N 80°34'40" E A DISTANCE OF 352.19 FEET TO AN IRON PIPE; THENCE S 84°38'50" E A DISTANCE OF 974.37 FEET TO AN IRON PIPE; THENCE S 63°13'13" E A DISTANCE OF 620.98 FEET TO AN IRON PIPE; THENCE N 41°01'11" E A DISTANCE OF 380.25 FEET TO AN IRON PIPE; THENCE S 49°04'17" E A DISTANCE OF 184.27 FEET TO AN IRON PIPE; THENCE WITH THE ARC OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 1029.39 FEET, A RADIUS OF 2075.00 FEET, A CHORD LENGTH OF 1018.87 FEET, AND A CHORD BEARING S 63°17'00" E TO A IRON PIPE; THENCE WITH A COMPOUND CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 1363.86 FEET, A RADIUS OF 2135.00 FEET, A CHORD LENGTH OF 1340.79 FEET, AND A CHORD BEARING N 84°12'14" E TO A IRON PIPE; THENCE S 22°19'53" E A DISTANCE OF 67.57 FEET TO AN IRON PIPE; THENCE S 36°05'07" E A DISTANCE OF 964.75 FEET TO AN IRON PIPE; THENCE S 02°05'01" W A DISTANCE OF 329.20 FEET TO AN IRON PIPE; THENCE S 17°30'31" W A DISTANCE OF 523.27 FEET TO AN IRON PIPE; THENCE S 87°53'16" W A DISTANCE OF 2075.88 FEET TO AN IRON PIPE; THENCE S 81°37'16" W A DISTANCE OF 181.89 FEET TO AN IRON PIPE; THENCE S 52°54'34" W A DISTANCE OF 187.25 FEET TO AN IRON PIPE; THENCE N 74°06'56" W A DISTANCE OF 15.54 FEET TO AN IRON PIPE; THENCE S 48°55'27" W A DISTANCE OF 31.99 FEET TO AN IRON PIPE; THENCE S 74°06'56" E A DISTANCE OF 12.76 FEET TO AN IRON PIPE; THENCE S 52°54'34" W A DISTANCE OF 737.20 FEET TO AN IRON PIPE; THENCE S 18°50'01" W A DISTANCE OF 671.09 FEET TO AN IRON PIPE; THENCE S 12°48'51" E A DISTANCE OF 555.88 FEET TO AN IRON PIPE; THENCE N 79°50'40" E A DISTANCE OF 125.03 FEET TO AN IRON PIPE; THENCE S 13°03'01" E A DISTANCE OF 746.60 FEET TO AN IRON PIPE; THENCE S 54°24'14" W A DISTANCE OF 834.10 FEET TO AN IRON PIPE; THENCE S 25°05'12" W A DISTANCE OF 225.00 FEET TO AN IRON PIPE; THENCE N 77°44'09" W A DISTANCE OF 148.57 FEET TO AN IRON PIPE; THENCE S 54°24'14" W A DISTANCE OF 1901.88 FEET TO AN IRON PIPE; THENCE N 86°59'11" W A DISTANCE OF 50.55 FEET TO SAID POINT OF BEGINNING, SAID TRACT OR PARCEL OF LAND CONTAINING 213.956 ACRES

ECOVEST-DOJ_0038764

Excerpts from Coastavista Palms Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 213.96 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0038777

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0038778

Excerpts from Coastavista Palms Appraisal

## Identification of the Subject Property

The subject is located off SC Highway 141 in Jasper County, South Carolina, approximately 10 miles from Interstate 95. The site contains 213.96 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Coastavista Palms, LLC

### Improvements

None

### Taxes

**SLF III-SC EAST ARGENT LLC**
**ATLANTA GA, SC 303430000**

**Record Type:** Property
**Receipt No.:** 017643-15-3
**Tax Year:** 2015

**Base Amount:** $1,300.75
**Net Taxes:** $1,199.67
**Penalties:** $0.00
**Balance Due:** $0.00

**Payment Status:** Paid
**Paid Date:** 1/15/2016
**Paid Amount:** $1,199.67

| Penalty Date | Amount Due |
|---|---|
| January 16 | 3% |
| Feburary 2 | 10% |
| March 17 | 15% |

**Map No.:** 067-00-01-064
**District:** 03
**Assessed Value:** 0
**Fair Market Value:** 45,900

**Description:** PARCEL 3 B

©2016 Jasper County Government
www.jaspercountysc.org

ECOVEST-DOJ_0038782

- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

    On-Site: No; Adjacent: No
- Observed noticeable odors:     On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 213.96 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

# Excerpts from appraisal of: Copano Cove

# Document ID: ECOVEST-DOJ_0197844

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 21, 2019

Copano Cove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Copano Cove, LLC
       926.952 acre tract, Aransas County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i).* My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or  other guidance.*

1

ECOVEST-DOJ_0197844

Excerpts from Copano Cove Appraisal

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:
*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the*

2

ECOVEST-DOJ_0197845

*conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*
*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 926.952-acre conservation easement in Aransas County, TX. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***Fair Market Value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

3

ECOVEST-DOJ_0197846

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 6, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| **Total Fair Market Value Before the Easement Fee Simple** | 926.952 | **$70,016,897** |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 6, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Encumbered Land Fair Market Value After the Easement | 926.952 | $1,800 | $1,668,514 |
| **Total Fair Market Value After the Easement Fee Simple (rounded)** | 926.952 | | **$1,668,514** |

The encumbered property also includes two reserved building zones that permit up to ten residential building sites and one recreational site. In theory, if taken as separate components of the valuation, the building areas and the remaining eased area that cannot be improved have different values. These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do

Excerpts from Copano Cove Appraisal

maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement. It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

The Fair Market Value of the easement gift as of December 6, 2018 is as follows and is based upon the before and after method. The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $70,016,897. The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $1,668,514. Using the before and after method, the Fair Market Value of the Conservation Easement is $68,348,000 (rounded).

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 926.952 | | $70,016,897 |
| Total Fair Market Value After the Easement | 926.952 | $1,800 | $1,668,514 |
| **Fair Market Value of the Easement** | | | **$68,348,000** |

Fair Market Value of the Conservation Easement on the effective date is:

### *SIXTY-EIGHT MILLION THREE HUNDRED FORTY-EIGHT THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

5

ECOVEST-DOJ_0197848

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

6

ECOVEST-DOJ_0197849

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each  serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

7

**CLAUD CLARK III, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

December 6, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

8

ECOVEST-DOJ_0197851

The houses were leveled. Immediately the developers came in and assembled the lots into wider  lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are  only a few houses on the beach today. It is high rise condos.

Specifically, Copano Cove will progress as planned with only slight delays for infrastructure  repair. I think that the aggressive marketing program will still prove to be effective. This is based  on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

9

ECOVEST-DOJ_0197852

Excerpts from Copano Cove Appraisal

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market  Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will   consume the year ahead, but elements such as refining, petrochemicals and shipping will recover  in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our   society and our economy that continue on as though nothing has happened. Growth in the Texas   market is not going to stop. Many corporations continue to migrate to Texas and to expand. The   energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to  buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump   in growth when rebuilding is added to the already existing demand in Texas, among the  healthiest in the nation. One can also argue that the Texas' coast location has been in a known  hurricane zone for centuries and that the risks associated with the location are baked in and do  not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and  residential migration will continue to occur. The shore will continue to be a magnet. Hurricane  Harvey has no impact on these dynamics. This is the most fundamental truth that should not be  forgotten and is a powerful reason to remain bullish on Texas and its coast.

10

ECOVEST-DOJ_0197853

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure  will be refreshed to contemporary standards. Roads will be improved. The area will be even  more beautiful than it was before. The quality of the area will improve. The area will become  more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the  time to secure a position in the market and to proceed to develop a resort style residential  development that can begin to close sales in late 2018- 2019 and tap into the strong currents of  demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.  Sincerely,

*Ralph S Bowden*

Ralph S. Bowden  President

11

ECOVEST-DOJ_0197854

Excerpts from Copano Cove Appraisal

## Table of Contents

**Certification of Appraiser** .................................................................................................................... 14

**Summary of the Appraisal** ................................................................................................................... 16

**Assumptions and Limiting Conditions** ................................................................................................ 17

**Legal Descriptions and Maps** .............................................................................................................. 20

**INTRODUCTION** ................................................................................................................................. 36

**Scope of the Assignment** ....................................................................................................................... 37
    *Competency Provision* ........................................................................................................................ 39

    *Identification of the Subject Property* ................................................................................................ 41

    *Prior Sales History* ............................................................................................................................ 41

    *Ownership* .......................................................................................................................................... 41

    *Improvements* ..................................................................................................................................... 41

    *Property Tax Information* ................................................................................................................... 41

        *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ............................... 44

**SECTION I** ........................................................................................................................................... 58

**APPRAISAL OF THE BEFORE VALUE** ............................................................................................ 58

    *Highest and Best Use Analysis:* .......................................................................................................... 59
        a)    *Legally Permissible* .................................................................................................................. 61
        c)    *Financially Feasible* ................................................................................................................. 61
        d)    *Maximally Productive* ............................................................................................................... 62
        e)    *Sufficiency of Demand* .............................................................................................................. 62
        *Conclusion* ...................................................................................................................................... 62

    *Land Valuation:* .................................................................................................................................. 65
        *Discounted Retail Sales Approach* .................................................................................................. 65

    *Estimate of the Before Value.* ............................................................................................................. 119

**SECTION II** ......................................................................................................................................... 120

**APPRAISAL OF THE AFTER VALUE** .............................................................................................. 120
        b)    *Physical possibility and suitability* ........................................................................................... 141
        c)    *Financial feasibility* .................................................................................................................. 141
        d)    *Maximum productivity* .............................................................................................................. 141

12

ECOVEST-DOJ_0197855

*Conclusion:* ................................................................................................................................ *142*

*Land Valuation* ........................................................................................................................... *143*
    *Sales Comparison Approach* ....................................................................................................... *143*

*Estimate of the After Value:* ....................................................................................................... *152*

**Reconciliation** ...........................................................................................................................**158**

**Addenda** ....................................................................................................................................**160**
    *Qualifications* ............................................................................................................................. *160*
    *License* ....................................................................................................................................... *160*
    *Deed and Title Documents* ......................................................................................................... *160*
    *Unit Plans* .................................................................................................................................. *160*
    *Cost Estimates* ........................................................................................................................... *160*
    *Development Letters* .................................................................................................................... *160*
    *Demographic Reports* ................................................................................................................. *160*
    *Mineral Assessment Report* ........................................................................................................ *160*
    *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue* ............................ *160*
    *Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal  Revenue* .......... *160*
    *Crystal Lagoon Information and Supporting Documents* .............................................................. *160*
    *Bowden Report – Before Scenario* .............................................................................................. *160*
    *Easement* ................................................................................................................................... *160*
    *Baseline* ..................................................................................................................................... *160*

13

ECOVEST-DOJ_0197856

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

14

ECOVEST-DOJ_0197857

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

15

ECOVEST-DOJ_0197858

<span style="color:red">Excerpts from Copano Cove Appraisal</span>

**Summary of the Appraisal**

**Property Type:** Conservation Easement

**Location:** The subject is located off Texas State Highway 1781, west of the town of Rockport in Aransas County, Texas.

**Purposes of the Appraisal:** To estimate, for federal and state income tax purpose, the fair market value of the conservation easement.

**Function of the Appraisal:** To estimate the fair market value of a conservation easement.

**Date of the Appraisal Report:** January 21, 2019

**Date of Property Inspection:** January 18, 2019

**Date of Value Estimates:** December 6, 2018

**Date of Donation** December 6, 2018

**Property Rights Appraised:**
Before:     Fee Simple Interest
After:     Fee Simple Interest Subject to Easement

**Zoning:** No zoning

**Site:** 926.952 Acres

**Easement:** 926.952 Acres

**Reserved:** Two Building Zones, totaling 29 acres, located within the easement

**Total:** 926.952 Acres

**Improvements:** None

**High and Best Use of Site as Though Vacant:**
Before:     Residential Development
After:     Recreational / Green Space with two Building Zones totaling 29 acres

**Appraiser:**
Claud Clark III as an Employee and Sole Owner of
Claud Clark III, PC          EIN 63-1075275
SS# ***-**-1840 Will be provided to IRS upon request

16

ECOVEST-DOJ_0197859

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

17

ECOVEST-DOJ_0197860

Excerpts from Copano Cove Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

18

ECOVEST-DOJ_0197861

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0197862

Excerpts from Copano Cove Appraisal

## Legal Descriptions and Maps

1012,562 ACRES

THE STATE OF TEXAS)
THE COUNTY OF ARANSAS)

BEING a 1012.564 acre tract of land situated in the Joseph Fessenden Survey, Abstract No. 98, Aransas County, Texas and the John G. Smith Survey No. 69, Abstract No. 298, Aransas County, Texas and being the remainder of a called 1025.529 acre tract of land described by Warranty Deed with Vendor's Lien dated April 13, 2004, conveyed from William D. Frank and wife, Karen M. Frank to Linda C. Myers, Kent J. Myers, and Thomas Frank Corry as recorded in Instrument No. 219374 of the Official Public Records, Aransas County, Texas, said 1012.564 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a found concrete monument along the west line of Farm-to-Market 1781 (an 80-foot Right-of-Way) marking an exterior corner of the aforesaid 1025.529 acre tract and being the northeast corner of a called 5.84 acre tract described by instrument to William D. Wood, Jr. as recorded in instrument No. 340329 of the Official Public Records, Aransas County, Texas for an exterior corner of the herein described tract;

THENCE, North 88°40'34" West, departing the west right-of-way line of said Farm-to-Market 1781, with a common line between said 1025.529 acre tract and the aforesaid 5.84 acre tract, a distance of 768.44 feet to a found 5/8" steel rebar with yellow cap marking an interior corner of said 1025.529 acre tract and being the northwest corner of said 5.84 acre tract for an interior corner of the herein described tract;

THENCE, South 03°02'29" West, along a common line between said 1025.529 acre tract and said 5.84 acre tract, at a distance of 202.52 feet passing a found 5/8" steel rebar marking a common corner between said 5.84 acre tract and a called 5.03 acre tract of land described by instrument to Jupis R. Chavana and wife, Laura Chavana as recorded in instrument No. 919161 of the Official Public Records, Aransas County, Texas, at a distance of 497.11 feet passing a found 5/8" steel rebar marking a common corner between the aforesaid 5.60 acre tract and a called 1.241 acre tract of land described by instrument to Sharon Eugene Johnson, Jr. as recorded in instrument No. 218076 of the Official Public Records, Aransas County, Texas, at a distance of 745.57 feet passing a found concrete monument marking a common corner between the aforesaid 1.241 acre tract and a called 5.60 acre tract of land described by instrument to Daniel P. Maxwell and wife, Rosemary Clarke Maxwell as recorded in Volume 149, Page 99 of the Deed Records, Aransas County, Texas, at a distance of 967.79 feet passing a found concrete monument marking a common corner between the aforesaid 5.90 acre tract and Lot 2, Block 1 of the Bailey's Acres Subdivision according to the established map or plat thereof as recorded in Volume 4, Page 94 of the Plat Records, Aransas County, Texas, at a distance of 1171.98 feet passing a found concrete monument marking a common corner between the aforesaid Lot 1, Block 1 and a called 7.384 acre tract of land described by instrument to Michelle Nixon and Taylor Lueckmann as recorded in Instrument No. 263091 of the Official Public Records, Aransas County, Texas, at a distance of 1485.47 feet passing a found 5/8" steel rebar marking a common corner between the aforesaid 9.960 acre tract and a called 14.198 acre tract of land described by instrument to Robert Creger and Bonnie Creger as recorded in Instrument No. 137266 of the Official Public Records, Aransas County, Texas, and continuing for a total distance of 2026.50 feet to a found 5/8" steel rebar marking the southeast most corner of said 1025.529 acre tract, same being the southwest corner of the aforesaid 14.198 acre tract, and being along the north line of a called 42.75 acre tract of land described by instrument to Jonathan W. Gaskamp and Janet S. Gaskamp as remarked in instrument No. 251217 of the Official Public Records, Aransas County, Texas for the southeast most corner of the herein described tract;

THENCE, North 89°59'01" West, along a common line between said 1025.529 acre tract and the aforesaid 42.75 acre tract, a distance of 309.17 feet to a found 5/8" steel rebar with yellow cap marking a common angle point along the south line of said 1025.529 acre tract and the north line of said 42.75 acre tract for an angle point of the herein described tract;

THENCE, South 88°31'02" West, continuing along a common line between said 1025.529 acre tract and said 42.75 acre tract, at a distance of 460.52 feet passing a fence corner post marking a common corner between said 42.75 acre tract and a called 56.788 acre tract of land described by instrument to Shirley Wohlstlen as recorded in instrument No. 284837 of the Official Public Records, Aransas County, Texas, at a distance of 1568.22 feet passing a found 3/4" pipe along the common line between said 1025.529 acre tract and the aforesaid 56.732 acre tract, at a distance of 1808.41 feet passing a found 5/8" steel rebar marking a common corner of said 56.732 acre tract and Lot 4 of the Inberg Lake Estates Subdivision according to the established map or plat thereof as recorded in Volume 5, Page 154 of the Plat Records, Aransas County, Texas, at a distance of 2226.42 feet passing a found 5/8" steel rebar marking a common

ECOVEST-DOJ_0197863

Excerpts from Copano Cove Appraisal

corner between the aforesaid Lot 4 and Reserve "A", Block 1 of the Cape Valero Pass Subdivision according to the established map or plat thereof as recorded in Volume 5, Page 61 of the Plat Records, Aransas County, Texas, at a distance of 3125.36 feet passing a found 5/8" steel rebar with yellow cap marking a common corner of the aforesaid Reserve "A", Block 1 and the remainder of a called 191.978 acre tract of land described by instrument to Resource Management Company as recorded in instrument No. 140782 of the Official Public Records, Aransas County, Texas, and continuing for a total distance of 3548.73 feet to a found 1" steel rebar in concrete marking the southwest most corner of said 1025.529 acre tract said being an interior angle point along the north and northeast line of the aforesaid 191.978 acre tract for the southwest most corner of the herein described tract;

THENCE, North 48°28'11" West, along the northeast line of said 191.978 acre tract, with the southwest line of said 1025.529 acre tract, at a distance of 341.51 feet passing a 3/4" pipe (disturbed), continuing along the common line between said 1025.529 acre tract and said 191.978 acre tract, with the north line of Cape Valero Drive (a 60-foot Right-of-Way) at a distance of 1748.16 feet passing a found square post (broken) along the northeast right-of-way line of said Cape Valero Drive marking the east most corner of a called 191.411 acre tract of land described by instrument to Resource Management Company as recorded in instrument No. 140836 of the Official Public Records, Aransas County, Texas, and continuing for a total distance of 2995.21 feet to a found 1" steel rebar in concrete marking an exterior angle point of said 1025.529 acre tract and being an exterior angle point of the aforesaid 191.411 acre tract for an interior angle point of the herein described tract;

THENCE, North 72°06'28" West, along a common line between said 1025.529 acre tract and said 191.411 acre tract, a distance of 8944.25 feet to a corner point along the shoreline of Copano Bay (a.k.a. Peets Bend) marking the exterior corner of said 1025.529 acre tract and being along the northerly line of said 191.411 acre tract for the exterior corner of the herein described tract;

THENCE, along the shoreline of said Copano Bay, with the east line of said 1025.529 acre tract, the following courses and distances:

- North 06°56'06" East, a distance of 484.99 feet to a point for the herein described tract;

- North 09°27'46" West, a distance of 260.79 feet to a point for the herein described tract;

- North 29°28'46" West, a distance of 594.06 feet to a point for the herein described tract;

- North 24°25'29" West, a distance of 261.06 feet to a point for the herein described tract;

- North 26°47'39" West, a distance of 320.17 feet to a point for the herein described tract;

- North 41°33'01" West, a distance of 345.29 feet to a point for the herein described tract;

- North 36°51'03" West, a distance of 564.35 feet to a found post in the water of Copano Bay for the herein described tract;

- North 00°38'37" West, a distance of 86.17 feet to a found post in the water of Copano Bay marking the northwest corner of said 1025.529 acre tract for the herein described tract;

THENCE, North 29°28'29" East, along the north line of said 1025.529 acre tract, at a distance of 341.41 feet passing a found 5/8" steel rebar for reference along the north line of said 1025.529 acre tract, at a distance of 578.63 feet passing a found 1" steel rebar in concrete (bent) along the north line of said 1025.529 acre tract and being the southeast corner of Lot 112 of the Salt Lake Lands of Coleman Fulton Pasture Company Subdivision according to the established map or plat thereof as recorded in Volume 1, Pages 14-15 of the Plat Records, Aransas County, Texas, and continuing for a total distance of 1280.88 feet to a found 1" steel rebar in concrete marking an angle point along the north line of said 1025.529 acre tract said being along the common south line of said Lot 112 and that certain tract of land described by instrument to New Deal IV, Inc. as recorded in instrument No. 174814 of the Official Public Records, Aransas County, Texas for an angle point of the herein described tract, from which a found 5/8" steel rebar for reference bears South 02°50'47" East, a distance of 27.96 feet;

THENCE, North 59°00'17" East, continuing along the north line of said 1025.529 acre tract, with the south boundary line of the aforesaid Salt Lake Lands of Coleman Fulton Pasture Company Subdivision, a distance of 1276.63 feet to a found 1" steel rebar in concrete marking an angle point along the north line of said 1025.529 acre tract and being along the common south line of Lot 111 of said Salt Lake Lands Subdivision and that certain tract of land as described in the aforementioned New Deal IV, Inc. Deed for an angle point

21

ECOVEST-DOJ_0197864

Excerpts from Copano Cove Appraisal

of the herein described tract, from which a found 5/8" steel rebar for reference bears South 01°00'00" East, a distance of 20.33 feet;

THENCE, North 89°01'09" East, continuing along the north line of said 1025.529 acre tract, with the south boundary line of said Salt Lake Lands Subdivision, a distance of 2018.71 feet to a point marking an angle point of said 1025.529 acre tract and for the herein described tract, from which a found 1" steel rebar for reference bears South 03°00'00" West, a distance of 0.72 feet;

THENCE, North 89°04'09" East, continuing along the north line of said 1925.529 acre tract, with the south boundary line of said Salt Lake Lands Subdivision, at a distance of 5.11 feet passing a found 5/8" steel rebar marking a common corner of Lot 97 and the east line of a 30-foot County Road and being the southwest corner of a called 10.595 acre tract of land described by instrument to Jeanette Brock, as recorded in Instrument No. 543012 of the Official Public Records, Aransas County, Texas, at a distance of 766.31 feet passing a found 5/8" steel rebar with red cap marking a common corner of Lots 95 & 96, same being a common corner of the aforesaid 10.595 acre tract and a called 10.86 acre tract of land described by instrument to Carl Davis as recorded in Instrument No. 191250 of the Official Public Records, Aransas County, Texas, and continuing for a total distance of 880.33 feet to a found 1" steel rebar in concrete marking the southeast corner of that certain tract of land described by Instrument to Michael Fore and Kristin Fore as recorded in Instrument No. 342633 of the Official Public Records, Aransas County, Texas and being the southwest corner of that certain tract of land described by Instrument to Gola Ameriana, Inc. as recorded in Instrument No. 260086 of the Official Public Records, Aransas County, Texas for an angle point of the herein described tract;

THENCE, North 88°57'52" East, continuing along the north line of said 1025.529 acre tract, with the south boundary line of said Salt Lake Lands Subdivision, at a distance of 792.06 feet passing a found 5/8" steel rebar with red cap marking a common corner between the aforesaid Gola Ameriana, Inc. tract and that certain tract of land described by instrument to Marcia A. Isonberry as recorded in Instrument No. 294815 of the Official Public Records, Aransas County, Texas, at a distance of 1318.16 feet passing a found 5/8" steel rebar marking a common corner of the aforesaid Isonberry Tract and the west line of a 40-foot County Road, continuing for a total distance of 1290.71 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking a common corner of the east line of a Tri-foot County Road and Lot 1, Block 39 of the Subdivision of Tract No. 36 Coleman Fulton Pasture Company according to the established map or plat thereof as recorded in Volume 1, Page 36 of the Plat Records, Aransas County, Texas for an angle point of said 1025.529 acre tract and the herein described tract;

THENCE, North 88°57'02" East, continuing along the north line of said 1925.529 acre tract, with the south boundary line of said Salt Lake Lands Subdivision, at a distance of 396.00 feet passing a found 5/8" steel rebar marking a common corner between the aforesaid Lot 1, Block 36 and Lot 10, Block 35 of an unrecorded subdivision plat as described in Instrument recorded in Instrument No. 943718 of the Official Public Records, Aransas County, Texas, continuing for a total distance of 828.92 feet to a found concrete monument along the south line of the aforesaid Lot 10, Block 35 marking an angle point of said 1025.529 acre tract and the herein described tract;

THENCE, North 89°00'17" East, continuing along the north line of said 1025.529 acre tract, with the south boundary line of said Salt Lake Lands Subdivision, at a distance of 150.67 feet passing a found 5/8" steel rebar with red cap marking a common corner of said Lot 10, Block 35 and Lot 9, Block 34 of the aforementioned unrecorded subdivision plat, at a distance of 559.68 feet passing a found 5/8" steel rebar marking a common corner between said the aforesaid Lot 9, Block 34 and a called 9.160 acre tract of land described by instrument to Justin R. Chavana as recorded in Instrument No. 242887 of the Official Public Records, Aransas County, Texas, continuing for a total distance of 880.91 feet to a found 1" steel rebar in concrete along the south line of the aforesaid 9.160 acre tract marking the northeast corner of said 1025.529 acre tract and being the northwest corner of a called 8.264 acre tract of land described by Instrument to Carlos A. Good and wife, Suzanne M. Good as recorded in Instrument No. 329622 of the Official Public Records, Aransas County, Texas for the northeast corner of the herein described tract;

THENCE, South 01°57'47" West, along the east line of said 1025.529 acre tract, at a distance of 869.83 feet passing a found 1/2" steel rebar marking a common corner between a called 4.2 acre tract of land described by Instrument to Hazel M. Penonascoe and Richard A. Good as recorded in Instrument No. 354324 of the Official Public Records, Aransas County, Texas and a called 8.24 acre tract of land described by Instrument to Marc Delmarion and Yolanda Juanita Delmarion as recorded in Instrument No. 350589 of the Official Public Records, Aransas County, Texas, at a distance of 1415.75 feet passing a found 5/8" steel rebar with red cap marking a common corner between the aforesaid 8.24 acre tract and a called 5.05 acre tract of land described by Instrument to Rosalind Page Campbell and Terry Cody as recorded in Instrument No. 365078 of the Official Public Records, Aransas County, Texas, at a distance of 2453.85 feet passing a

22

ECOVEST-DOJ_0197865

Excerpts from Copano Cove Appraisal

found 5/8" steel rebar marking a common corner of a called 5.00 acre tract of land described by instrument to Richard Reagan Lee as recorded in Instrument No. 320176 of the Official Public Records, Aransas County, Texas and a called 6.50 acre tract of land described by Instrument to Elizabeth Ann Beebe as recorded in Instrument No. 257513 of the Official Public Records, Aransas County, Texas, at a distance of 2737.88 feet passing a found 5/8" steel rebar marking a common corner between the aforesaid Beebe Tract and a called 4.968 acre tract of land described by instrument to Robert J. Mitchell and Kerri E. Mitchell as recorded in Instrument No. 319869 of the Official Public Records, Aransas County, Texas, continuing for a total distance of 3028.26 feet to a found 5/8" steel rebar with red cap marking an interior corner of said 1025.529 acre tract, same being the southeast corner of the aforesaid 4.968 acre tract, and being an angle point along the northerly line of a called 12.924 acre tract of land described by instrument to John A. Campbell and Elizabeth Y. Campbell as recorded in Instrument No. 314987 of the Official Public Records, Aransas County, Texas for an exterior corner of the herein described tract;

THENCE, North 83°29'15" West, along the northerly line of the aforesaid 12.924 acre tract, a distance of 891.97 feet to a found 5/8" steel rebar with red cap marking the northwest corner of said 12.924 acre tract for an interior corner of the herein described tract;

THENCE, South 03°10'56" West, along the west line of said 12.924 acre tract, a distance of 562.58 feet to a found 5/8" steel rebar with red cap marking the southwest corner of said 12.924 acre tract for an interior corner of the herein described tract;

THENCE, South 86°49'17" East, along the southerly line of said 12.924 acre tract, a distance of 1099.55 feet to a found 5/8" steel rebar with red cap along the west right-of-way line of said Farm-to-Market No. 1781 marking the southeast corner of said 12.924 acre tract for an exterior corner of the herein described tract;

THENCE, South 02°39'24" West, along the west right-of-way line of said Farm-to-Market No. 1781, with the east line of said 1025.529 acre tract, at a distance of 20.09 feet passing a 60d Nail with washer marking the centerline of a 20-foot Access Easement as described in Instrument No. 326710 of the Official Public Records, Aransas County, Texas and continuing for a total distance of 64.73 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 5612.564 acre tract of land, more or less.

SAVE & EXCEPT a called 10.272 acre tract of land (Surveyed as 10.225 acres on this day) and a called 29.344 acre tract of land (Surveyed as 29.339 acres on this day) described by Special Warranty Deed dated May 9, 2017, conveyed from Rockport Island Development Corporation to Habitat Preservation Group, LLC as recorded in Instrument No. 334406 of the Official Public Records, Aransas County, Texas and further described by Metes and Bounds in Instrument No. 226710 of the Official Public Records, Aransas County, Texas.

ALSO SAVE & EXCEPT a 46.00 acre tract of land described by instrument conveyed from Linda C. Myers, Kent J. Myers, and Thomas Frank Corry to Copano Cove, LLC as recorded in the Official Public Records, Aransas County, Texas.

The above described and surveyed tract of land having a NET ACREAGE of 926.952 acres more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204). This survey was adjusted using a combined scale factor of 0.99988226715009) (GEOID12A).

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in July, 2018 and are true and correct to the best of my knowledge and belief.

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

$22472.00

23

ECOVEST-DOJ_0197866

Excerpts from Copano Cove Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data. The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with underlying development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such

**Identification of the Subject Property**

The subject is located off Texas State Highway 1781, west of the town of Rockport in Aransas County, Texas. The site contains 926.952 acres.

*Prior Sales History*

The Subject is not currently listed for sale.

An assumption warranty deed was filed on September 20, 2018 between Grantors Linda C. Myers, Kent J. Myers II and Thomas Frank Cory and Grantee Mirador Pointe, LLC for the original principal sum of $601,000 executed by Grantees, payable to Texas AgFinance, FLCA, secured by a Vendor's Lien retained in that one certain Warranty Deed with a Vendor's Lien dated April 15, 2004, recorded as File No. 263574.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found  no sales of the subject property within the past three years.  However, I am aware that the  majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

*Ownership*

Copano Cove, LLC

*Improvements*

None

*Property Tax Information*

CLAUD CLARK III,

41

ECOVEST-DOJ_0197884

- Observed or reported current or past use of hazardous material "in bulk":
  - On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  - On-Site: No; Adjacent: No
- Observed staining of soils:    On-Site: No; Adjacent: No
- Observed distressed vegetation:    On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  - On-Site: No; Adjacent: No
- Observed noticeable odors:    On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 926.952 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

CLAUD CLARK III,

54

ECOVEST-DOJ_0197897

# Excerpts from appraisal of: Cottonwood Cove

# Document ID: ECOVEST-DOJ_0183595

Excerpts from Cottonwood Cove Appraisal

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

February 1, 2019

Cottonwood Cove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Cottonwood Cove, LLC
      59.42 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal
Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value
is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated
as an appraisal under regulations or other guidance prescribed by the Secretary and conducted
by a qualified appraiser in accordance with generally accepted appraisal standards and any
regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1)
has earned an appraisal designation from a recognized professional appraiser organization or
has otherwise met minimum education and experience requirements set forth in regulations
prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives
compensation, and (3) meets such other requirements as may be prescribed by the Secretary in
regulations or  other guidance.*

1

CLAUD CLARK III, PC

ECOVEST-DOJ_0183595

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:

*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement.

For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method"** (*IRS in italics*)

*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

ECOVEST-DOJ_0183596

Excerpts from Cottonwood Cove Appraisal

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
*(ii) Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 59.42-acre conservation easement in Horry County, South Carolina. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

ECOVEST-DOJ_0183597

Excerpts from Cottonwood Cove Appraisal

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Strategic Solutions in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 5, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fair Market Value of the Subject Before the Easement Fee Simple | 59.42 | $57,969,728 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 5, 2018 is:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value After the Easement Fee Simple | 59.42 | $95,072 |
| Fair Market Value of the Reserved Site | 3.5 | $1,552,761 |
| Total Fair Market Value After the Easement Fee Simple | 59.42 | $1,647,833 |

The encumbered property also includes one (1) reserved residential building site, which allows for up to eighteen attached or detached residential units. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property. It should be noted that this lot is not a build ready lot and will incur some development costs to make it so.

ECOVEST-DOJ_0183598

Excerpts from Cottonwood Cove Appraisal

In order to value the reserved site, I have assumed that the city of Myrtle Beach will approve the plan to build up to eighteen residential units on the reserved tract; I have also assumed that the maximum allowed units would be built, thus eighteen units.  I have taken the Before value and divided it by the number of proposed units before the placement of the perpetual easement.  This valuation takes into account developmental costs, as well as profit.  This provided a per unit value of $86,264, which multiplied by the number of allowed units after the placement of the perpetual easement, creates an after value of the reserved site of $1,552,761, which will then be added to the After value of the property.  There is no enhancement.

The Fair Market Value of the easement gift as of December 5, 2018 is as follows and is based upon the before and after method.  The total Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $57,969,728.  The total Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $1,647,833.  Using the before and after method, the total Fair Market Value of the Conservation Easement is $56,322,000 (rounded).

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement | 59.42 | $57,969,728 |
| Total Fair Market Value After the Easement | 59.42 | $1,647,833 |
| **Fair Market Value of the Easement (rounded)** | | **$56,322,000** |

 Fair Market Value of the Conservation Easement on the effective date is:

### *FIFTY-SIX MILLION THREE TWENTY-TWO THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0183600

# Table of Contents

*Certification* ...........................................................................................................................................**9**

**Certification of Appraiser**...............................................................................................................**9**

**Summary of the Appraisal**..............................................................................................................**11**

**Assumptions and Limiting Conditions** ..........................................................................................**12**

**Legal Descriptions and Maps** ........................................................................................................**15**

**INTRODUCTION:**..........................................................................................................................**33**

**Scope of the Assignment**................................................................................................................**34**

    *Identification of the Subject Property* ............................................................................................*38*

    *Prior Sales History* .......................................................................................................................*38*

    *Ownership* .....................................................................................................................................*38*

    *Improvements* ................................................................................................................................*38*

    *Taxes* .............................................................................................................................................*38*

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* .............................................*41*

**SECTION I**.....................................................................................................................................**55**

**APPRAISAL OF THE BEFORE VALUE** ......................................................................................**55**

    *Highest and Best Use Analysis:*....................................................................................................*56*
        *a)*   *Legally Permissible* ..........................................................................................................*57*
        *b)*   *Physically Possible* ..........................................................................................................*57*
        *c)*   *Financially Feasible* .........................................................................................................*57*
        *d)*   *Maximally Productive* ......................................................................................................*58*
        *e)*   *Sufficiency of Demand* .....................................................................................................*58*
        Conclusion ..........................................................................................................................*58*

    *Land Valuation:*.............................................................................................................................*61*
        *Discounted Retail Sales Approach* ....................................................................................*61*

**SECTION II** ..................................................................................................................................**92**

**APPRAISAL OF THE AFTER VALUE** .........................................................................................**92**

    *Highest and Best Use Analysis:*..................................................................................................*106*
        a)   Legal permissibility .........................................................................................................107
        b)   Physical possibility and suitability ...................................................................................107
        c)   Financial feasibility .........................................................................................................107
        d)   Maximum productivity .....................................................................................................107
        e)   Sufficiency of demand......................................................................................................108
        Conclusion: .......................................................................................................................108

    *Land Valuation* ...........................................................................................................................*109*
        Sales Comparison Approach .............................................................................................109

    *Estimate of the After Value:* .......................................................................................................*116*

ECOVEST-DOJ_0183601

Excerpts from Cottonwood Cove Appraisal

**Reconciliation** ........................................................................................................................................ **122**

**Addenda** .................................................................................................................................................... **124**

    Qualifications ........................................................................................................................................ 124

    License .................................................................................................................................................... 124

    Deed and Title Documents .................................................................................................................... 124

    Unit Plans .............................................................................................................................................. 124

    Cost Estimates ....................................................................................................................................... 124

    Development Letters .............................................................................................................................. 124

    Demographic Reports ........................................................................................................................... 124

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............ 124

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    .............................................................................................................................................................. 124

    Strategic Solutions Report – Before Scenario ...................................................................................... 124

    Easement ................................................................................................................................................ 124

    Baseline ................................................................................................................................................. 124

ECOVEST-DOJ_0183602

Excerpts from Cottonwood Cove Appraisal

*Certification*

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0183603

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 21, 019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0183604

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located off River Oaks Drive in Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | February 1, 2019 |
| **Date of Property Inspection:** | January 21, 2019 |
| **Date of Value Estimates:** | December 5, 2018 |
| **Date of Donation** | December 5, 2018 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | PDD, Planned Development District |
| **Site:** | 59.42 Acres |
| **Easement:** | 59.42 Acres |
| **Reserved:** | One 3.50-acre Reserved Building Zone located within the easement |
| **Total:** | 59.42 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:      Residential Development<br>After:       Recreational / Green Space with a 3.5-acre Building Zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC          EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0183605

Excerpts from Cottonwood Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0183606

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

ECOVEST-DOJ_0183607

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0183608

Excerpts from Cottonwood Cove Appraisal

## Legal Descriptions and Maps

EXHIBIT "A"

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL & POINT BEING MARKED BY HAVING 5/8" IRON REBAR FOUND AND HAVING S.C. STATE PLANE COORDINATES OF N 700,392.24, E 2,641,678.88 THENCE A LINE BOUNDED TO THE NORTH BY RIVER OAKS DRIVE 100' RIGHT OF WAY AND BOUNDED TO THE SOUTH BY THE SUBJECT TRACT THE FOLLOWING BEARINGS & DISTANCES:

N 59° 16' 31" E 664.56" TO 5/8" IRON REBAR FOUND

N 59° 16' 31" E 32.92' TO 5/8" IRON REBAR SET (L1)

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE FOLLOWING CHORD BEARING N 64° 22' 29" E, CHORD LENGTH 384.51', RADIUS 2814.79', DELTA ANGLE 6° 48' 47", ARC LENGTH 384.71' TO 5/8" IRON REBAR SET(C2)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE THE FOLLOWING BEARING AND DISTANCE:

N 67° 46' 52" E 27.89' TO 5/8" IRON REBAR SET(L2)

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION HOA INC AND BOUNDED TO THE WEST BY THE SUBJECT PARCEL THE FOLLOWING BEARINGS AND DISTANCES:

S 30° 43' 29" E 409.00' TO 5/8" IRON REBAR SET

S 70° 20' 00" E 252.97' TO 5/8" IRON REBAR SET

S 59° 16' 31" W 45.60' TO 5/8" IRON REBAR SET (L3)

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION HOA INC AND BOUNDED TO THE WEST BY SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

ECOVEST-DOJ_0183609

EXHIBIT "A"

S 30° 19' 23" E 545.63' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE NORTH BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION HOA INC AND BOUNDED TO THE SOUTH BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

N 60° 16' 17" E 159.47' TO 5/8" IRON REBAR FOUND (L4)

THENCE A CURVE BOUNDED TO THE EAST BY WEST ISLE OF PALMS AVENUE, BOUNDED TO THE WEST BY THE SUBJECT PARCEL THE FOLLOWING CHORD BEARING S 18° 51' 41" E, CHORD LENGTH 26.38', RADIUS 70.00', DELTA ANGLE 21° 43' 20", ARC LENGTH 26.54' TO 5/8" IRON REBAR FOUND (C3)

THENCE A LINE BOUNDED TO THE EAST BY WEST ISLE OF PALMS AVENUE AND BOUNDED TO THE WEST BY SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

S 29° 43' 25" E 60.00' TO 5/8" IRON REBAR FOUND (L5)

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE FOLLOWING CHORD BEARING S 58° 50' 43" E, CHORD LENGTH 68.13', RADIUS 70.00', DELTA ANGLE 58° 14' 25", ARC LENGTH 71.15' TO 5/8" IRON REBAR SET (C4)

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE THE FOLLOWING CHORD BEARING S 58° 50' 43" E, CHORD LENGTH 24.33', RADIUS 25.00', DELTA ANGLE 58° 14' 05", ARC LENGTH 25.41' TO 5/8" IRON REBAR SET (C5)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE THE FOLLOWING BEARING AND DISTANCE:

ECOVEST-DOJ_0183610

EXHIBIT "A"

S 29° 43' 25" E 781.87' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION PHASE II AND BOUNDED TO THE NORTH BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

S 60° 16' 35" W 655.95' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION BOAT LANDING AND BOUNDED TO THE EAST BY THE SUBJECT PARCEL THE FOLLOWING BEARINGS AND DISTANCES:

N 30° 27' 12" W 75.00' TO 5/8" IRON REBAR SET (L6)

N 14° 32' 48" E 32.66' TO 5/8" IRON REBAR SET (L7)

N 30° 27' 12" W 99.65' TO 5/8" IRON REBAR SET (L8)

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY WATERWAY PALMS PLANTATION BOAT LANDING AND BOUNDED TO THE EAST BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

S 59° 32' 48" W 145.42' TO 5/8" IRON REBAR SET (L9)

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY HORRY COUNTY AND BOUNDED TO THE EAST BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

N 26° 36' 54" W 190.19' TO IRON REBAR SET (L10)

ECOVEST-DOJ_0183611

Excerpts from Cottonwood Cove Appraisal

EXHIBIT "A"

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY HORRY COUNTY AND BOUNDED TO THE NORTH BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

S 60° 17' 17" W 997.65' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY CAROLINA WATERWAY PLANTATION BOAT STORAGE AND BOUNDED TO THE EAST BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

N 29° 43' 03" W 282.10' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE NORTH BY LANDS NOW OR FORMERLY OWNED BY TUPELO GROVE LLC AND BOUNDED TO THE SOUTH BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

N 56° 58' 22 E 318. 41' TO 5/8" IRON REBAR FOUND

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY TUPELO GROVE LLC AND BOUNDED TO THE WEST BY THE SUBJECT PARCEL THE FOLLOWING BEARING AND DISTANCE:

N 30° 39' 01" W 1424.73 TO 5/8" IRON REBAR FOUND.

THENCE BACK TO SAID POINT OF BEGINNING. TRACT CONTAINS SQ. FT. / 59.42 ACRES

LESS AND EXCEPTING GRAND STRAND WATER & SEWER AUTHORITY PARCEL PIN# 420-09-01-0001 PER DB: 3304/1826 THE FOLLOWING:

ECOVEST-DOJ_0183612

Excerpts from Cottonwood Cove Appraisal

EXHIBIT "A"

COMMENCING AT A 5/8" IRON REBAR AND BEING THE MOST NORTHEASTERLY CORNER OF THE
PROPERTY, SAID IRON BEING THE POINT OF BEGINING: THENCE RUNNING S 29° 43' 25" E FOR A
DISTANCE OF 30 FEET TO A 5/8" IRON REBAR.  THENCE TURNING AND RUNNING S 60° 16' 35" E FOR A
DISTANCE OF 30 FEET TO A 5/8" IRON REBAR.  THENCE TURNING AND RUNNING N 43° 43' 25" W FOR A
DISTACNE OF 30 FEET TO A 5/8" IRON REBAR.  THENCE TURNING AND RUNNING N 60° 16' 35" E FOR A
DISTACNE OF 30 FEET TO A 5/8" IRON REBAR, SAID IRON BEING THE POINT OF BEGINING.

ALL SURROUNDED BY THE PARENT TRACT AS SHOWN IN DETAIL A.  PARCEL CONTAINS 900 SQ. FT/ .02
ACRES

ECOVEST-DOJ_0183613

Excerpts from Cottonwood Cove Appraisal

EXHIBIT "B"
BUILDING ZONE

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL & POINT BEING MARKED BY HAVING 5/8" IRON REBAR SET AND HAVING S.C. STATE PLANE COORDINATES OF N 699,362.27, E 2,642,451.38 THENCE A LINE BOUNDED TO THE NORTH BY LANDS NOW OR FORMERLY OWNED BY MBWP LAND HOLDINGS LLC AND BOUNDED TO THE SOUTH BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

N 59° 20' 04" E 499.42' IRON REBAR SET

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY MBWP LAND HOLDINGS LLC AND BOUNDED TO THE WEST BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

S 30° 39' 56" E 304.79' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY MBWP LAND HOLDINGS LLC AND BOUNDED TO THE NORTH BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

S 59° 20' 04" W 499.42' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY MBWP LAND HOLDINGS LLC AND BOUNDED TO THE EAST BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

N 30° 39' 56" W 304.79' TO 5/8" IRON REBAR SET

THENCE BACK TO SAID POINT OF BEGINNING.  TRACT CONTAINS 152,218 SQ. FT. / 3.5 ACRES

ECOVEST-DOJ_0183614

Excerpts from Cottonwood Cove Appraisal

The cost approach to Fair Market Value utilizes reproduction or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data. The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely

ECOVEST-DOJ_0183629

**Identification of the Subject Property**

The Subject Property is located off River Oaks Drive in Myrtle Beach, Horry County, South Carolina. The site contains 59.42 acres.

*Prior Sales History*

There have been no qualified sales or transfers of the subject property within the last three years. The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Cottonwood Cove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0183632

Excerpts from Cottonwood Cove Appraisal

Introduction

- The physical inspection of the Subject Property provided no indications of environmental issues concerning the property. However, the appraiser is not trained in the detection of such materials.
- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject. This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
                                   On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
                                   On-Site: No; Adjacent: No
- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
                                   On-Site: No; Adjacent: No
- Observed noticeable odors:       On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 59.42 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0183646

# Excerpts from appraisal of: Cristobal Key

# Document ID: ECOVEST-DOJ_0083113

Excerpts from Cristobal Key Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:  Claud@ClarkAppraisals.com

January 2, 2017

Cristobal Key LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Cristobal Key, LLC
      479.94 acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0083113

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust172,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 19, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 19, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 479.94 | $64,145,811 |

ECOVEST-DOJ_0083114

The value of the Subject Property, subject to a perpetual conservation easement as of December 19, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Excluded Site | 479.94 | $1,177,428 |

The value of the easement gift as of December 19, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 479.94 | $64,145,811 |
| Less | | |
| Total After Value (Encumbered) | 479.94 | $1,177,428 |
| | | |
| **Value of the Easement** | rounded | **$62,968,000** |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0083115

Excerpts from Cristobal Key Appraisal

Claud Clark III                         State Certified General Real Property Appraiser
TX License #TX 3890

ECOVEST-DOJ_0083116

## Table of Contents

**Certification** ..................................................................................................................................... 7

**Summary of the Appraisal** ............................................................................................................... 8

**Assumptions and Limiting Conditions** ............................................................................................ 9

**Legal Descriptions and Maps** ........................................................................................................ 12

**INTRODUCTION:** ........................................................................................................................ 26

**Scope of the Assignment** ................................................................................................................. 27

*Competency Provision* ...................................................................................................................... 31

*Appraisal of the Larger Parcel:* ....................................................................................................... 32

*Identification of the Subject Property* ............................................................................................. 33

*Prior Sales History* .......................................................................................................................... 33

*Ownership* ......................................................................................................................................... 33

*Improvements* ................................................................................................................................... 33

*Taxes* ................................................................................................................................................. 33

*Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ................................. 35

**SECTION I** ...................................................................................................................................... 51

**APPRAISAL OF THE BEFORE VALUE** ..................................................................................... 51

*Highest and Best Use Analysis:* ....................................................................................................... 52
    a)   Legally Permissible ............................................................................................................. 53
    b)   Physically Possible ............................................................................................................. 53
    c)   Financially Feasible ........................................................................................................... 53
    d)   Maximally Productive ........................................................................................................ 54
    e)   Sufficiency of Demand ....................................................................................................... 54
    Conclusion .............................................................................................................................. 54

*Land Valuation:* ................................................................................................................................ 55
    Discounted Retail Sales Approach ......................................................................................... 55

**SECTION II** .................................................................................................................................. 123

**APPRAISAL OF THE AFTER VALUE** ...................................................................................... 123

*Highest and Best Use Analysis:* ..................................................................................................... 137
    a)   Legal permissibility ......................................................................................................... 138
    b)   Physical possibility and suitability .................................................................................. 138
    c)   Financial feasibility ......................................................................................................... 138
    d)   Maximum productivity ...................................................................................................... 138
    e)   Sufficiency of demand ...................................................................................................... 138
    Conclusion: ............................................................................................................................ 139

*Land Valuation* ............................................................................................................................... 140
    Sales Comparison Approach ................................................................................................. 140

*Estimate of the After Value:* ........................................................................................................... 147

**Reconciliation** .............................................................................................................................. 153

ECOVEST-DOJ_0083117

**Addenda**................................................................................................................**154**

    Qualifications.........................................................................................................154

    License..................................................................................................................154

    Cristobal Key Unit Plans.......................................................................................154

    Cost Estimates.......................................................................................................154

    Development Letters...............................................................................................154

    Demographic Reports ............................................................................................154

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............154

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ..................................................................................154

    Crystal Lagoon Information and Supporting Documents .........................................154

    Bowden Report – Before Scenario...........................................................................154

    Easement..............................................................................................................154

    Baseline................................................................................................................154

ECOVEST-DOJ_0083118

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
TX License #TX 3890

ECOVEST-DOJ_0083119

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 19, 2016 |
| **Date of Donation** | December 19, 2016 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 479.94 Acres |
| **Easement:** | 478.44 Acres |
| **Excluded:** | 1.5 Acres |
| **Total:** | 479.94 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:   Residential Development<br>After:    Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0083120

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0083121

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0083122

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0083123

# Legal Descriptions and Maps

TRACT 1

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 485.71 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Albarado Survey, Abstract No. 1, Calhoun County, Texas, being comprised of portions of Lot 2 & 3, Section 4, a portion of Lot 2, Section 9, Block "A" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page L, of the Deed Records, Calhoun County, Texas and portions of Lot 1 & 4, Section 6, a portion of Lots 1-4, Section 7, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 485.71 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the south line of State Highway No. 185 (a Variable Width Right-of-Way), being along the north line of the aforesaid 12,228.52 acre tract and the north line of a Right-of-Way Easement, described as Part II a called 8.163 acre tract of land, conveyed to the State of Texas as recorded in Volume 265, Page 509 of the Deed Records, Calhoun County, Texas for the northwest corner of the herein described tract, from which the northeast corner of said 12,228.52 acre tract bears North 83°58'28" East, a distance of 4579.80 feet and from which a found 5/8" steel rebar marking the northwest corner of a called 1019.707 acre tract of land conveyed to Chunda, Ltd. as recorded in Volume 419, Page 574 of the Official Public Records, Calhoun County, Texas bears South 25°50'49" East, a distance of 13.00 feet;

THENCE, North 83°58'28" East, along the south right-of-way line of said State Highway No. 185, with the common north line of said 12,228.52 acre tract and the aforesaid Right-of-Way Easement, a distance of 2935.20 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the northwest corner of Phase 1 of the Sanctuary Subdivision according to the established map or plat thereof as recorded in Volume 2, Page 702 of the Plat Records, Calhoun County, Texas, being along the common north line of said 12,228.52 acre tract and said Right-of-Way Easement, and being along the south right-of-way line of said State Highway No. 185 for the northeast corner of the herein described tract;

THENCE, South 25°50'49" East, departing the south right-of-way line of said State Highway No. 185, over and across said 12,228.52 acre tract and with a west line of the aforesaid Phase 1 of the Sanctuary Subdivision, a distance of 2937.82 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the north most corner of Phase 2 of the Sanctuary Subdivision according to the established map or plat thereof as recorded in Volume 2, Page 711 of the Plat Records, Calhoun County, Texas and being along a west line of said Phase 1, Sanctuary Subdivision for the east corner of the herein described tract;

THENCE, with the outer boundary of the aforesaid Phase 2 of the Sanctuary Subdivision, the following courses and distances.

1

Excerpts from Cristobal Key Appraisal

- South 59°59'59" West, a distance of 1283.80 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner of said Phase 2, Sanctuary Subdivision for an interior corner of the herein described tract;

- South 29°59'59" East, a distance of 467.11 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner of said Phase 2, Sanctuary Subdivision for an exterior corner of the herein described tract;

- South 59°59'59" West, a distance of 2234.87 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner of said Phase 2, Sanctuary Subdivision for an interior corner of the herein described tract;

- South 25°50'49" East, at a distance of 4600.01 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 4905.01 feet to a point marking the south corner of said Phase 2, Sanctuary Subdivision and being along the southeasterly line of said 12,228.52 acre tract for the southeast corner of the herein described tract;

THENCE, South 62°05'55" West, along the southeasterly line of said 12,228.52 acre tract, a distance of 1200.00 feet to a point marking the south corner of the herein described tract;

THENCE, over and across said 12,228.52 acre tract, with the common boundary line of the hereto described and surveyed this day, Tract 2, the following courses and distances:

- North 25°50'49" West, at a distance of 225.00 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." and continuing for a total distance of 5289.36 feet to a point of curvature to the left for the herein described tract;

- with a curve turning to the left having an arc length of 302.02 feet, with a radius of 500.00 feet, with a delta angle of 34°36'52", having a chord bearing of North 43°09'05" West, and a chord length of 297.45 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 649.55 feet, with a radius of 500.00 feet, with a delta angle of 74°26'00", having a chord bearing of North 23°14'21" West, and a chord length of 604.83 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the left having an arc length of 255.42 feet, with a radius of 500.00 feet, with a delta angle of 29°16'05", having a chord bearing of North 00°39'24" West, and a chord length of 252.65 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 454.89 feet, with a radius of 400.00 feet, with a delta angle of 65°09'30", having a chord bearing of North 17°17'18" East, and a chord length of 430.77 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the left having an arc length of 210.00 feet, with a radius of 500.00 feet, with a delta angle of 24°03'52", having a chord bearing of North 37°50'07" East, and a chord length of 208.46 feet to a point of compound curvature for the herein described tract;

2

ECOVEST-DOJ_0083125

- with a compound curve turning to the left having an arc length of 455.32 feet, with a radius of 877.86 feet, with a delta angle of 29°44'38", having a chord bearing of North 10°55'52" East, and a chord length of 450.22 feet to a point of tangency for the herein described tract;

- North 03°56'27" West, a distance of 592.66 feet to a point of curvature to the right for the herein described tract;

- with a curve turning to the right having an arc length of 674.66 feet, with a radius of 600.00 feet, with a delta angle of 64°25'30", having a chord bearing of North 28°10'57" East, and a chord length of 639.67 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the left having an arc length of 373.73 feet, with a radius of 1000.00 feet, with a delta angle of 21°24'43", having a chord bearing of North 49°41'18" East, and a chord length of 371.56 feet to a point of compound curvature for the herein described tract;

- with a compound curve turning to the left having an arc length of 486.24 feet, with a radius of 300.00 feet, with a delta angle of 92°51'54", having a chord bearing of North 07°27'02" West, and a chord length of 434.74 feet to a point of reverse curvature for the herein described tract;

- with a reverse curve turning to the right having an arc length of 293.57 feet, with a radius of 800.00 feet, with a delta angle of 21°01'35", having a chord bearing of North 43°22'12" West, and a chord length of 291.93 feet to a point of tangency for the herein described tract;

- North 32°51'26" West, a distance of 487.39 feet to a point of curvature to the right for the herein described tract;

- with a curve turning to the right having an arc length of 239.15 feet, with a radius of 500.00 feet, with a delta angle of 27°24'18", having a chord bearing of North 19°09'17" West, and a chord length of 236.88 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 485.71 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

LESS AND EXCEPT:

MITIGATION TRACT
5.77 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 5.77 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Albarado Survey, Abstract No. 1, Calhoun County, Texas, being a portion of Lots 1 & 4, Section 7, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal

3

Excerpts from Cristobal Key Appraisal

Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 5.77 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner of Phase 2 of the Sanctuary Subdivision according to the established map or plat thereof as recorded in Volume 2, Page 711 of the Plat Records, Calhoun County, Texas and being an interior corner of a 485.71 acre tract of land, Tract 1, as described and surveyed this day for an interior corner of the herein described tract;

THENCE, South 25°50'49" East, along the west line of the aforesaid Phase 2, Sanctuary Subdivision, a distance of 3826.86 feet to a point along the west line of said Phase 2, Sanctuary Subdivision and being along a northeasterly line of said 12,228.52 acre tract for the southeast corner of the herein described tract;

THENCE, over and across said 12,228.52 acre tract and the aforementioned Tract 1, a 485.71 acre tract described and surveyed this day, the following four (4) courses and distances:

- South 64°09'11" West, a distance of 56.00 feet to a point for the southwest corner of the herein described tract,

- North 25°50'49" West, a distance of 3974.00 feet to a point for the northwest corner of the herein described tract,

- North 60°00'03" East, a distance of 75.81 feet to a point for the north most corner of the herein described tract,

- North 84°41'25" East, a distance of 361.03 feet to an angle point along a northwest line of said Phase 2, Sanctuary Subdivision and for the herein described tract,

THENCE, South 59°59'59" West, along a northwest line of said Phase 2, Sanctuary Subdivision, a distance of 358.63 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 5.77 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

4

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 479.94 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0083140

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0083141

Excerpts from Cristobal Key Appraisal

## Identification of the Subject Property

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 479.94 acres.

### *Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### *Ownership*

Cristobal Key, LLC

### *Improvements*

None

### *Taxes*

ECOVEST-DOJ_0083145

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

On-Site: No; Adjacent: No

- Observed staining of soils:                On-Site: No; Adjacent: No
- Observed distressed vegetation:            On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

On-Site: No; Adjacent: No

- Observed noticeable odors:                 On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 479.94 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0083157

Excerpts from Cypress Cove Appraisal

# Excerpts from appraisal of: Cypress Cove Marina

# Document ID: ECOVEST-DOJ_0009219

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ‡
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Cypress Cove Marina, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:     Conservation Easement Appraisal
        Cypress Cove Marina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

ECOVEST-DOJ_0009219

Excerpts from Cypress Cove Appraisal

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 28.04 | $39,960,013 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 28.04 | $263,462 |

ECOVEST-DOJ_0009220

Excerpts from Cypress Cove Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 28.04 | $39,960,013 |
| Less | | |
| Total After Value (Encumbered) | 28.04 | $263,462 |
| **Value of the Easement** | rounded | **$39,697,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site. These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these two sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. These sites are not build ready and would incur development costs. There is no enhancement. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0009221

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0009222

<span style="color:red">Excerpts from Cypress Cove Appraisal</span>

## Table of Contents

Certification ....................................................................................................................................... 7

Summary of the Appraisal .................................................................................................................. 8

Assumptions and Limiting Conditions ............................................................................................... 9

Legal Descriptions and Maps ........................................................................................................... 12

INTRODUCTION: ............................................................................................................................ 24

Scope of the Assignment .................................................................................................................. 25

   *Competency Provision* ............................................................................................................... 29

   *Appraisal of the Larger Parcel:* ............................................................................................... 30

   *Identification of the Subject Property* ...................................................................................... 31

   *Prior Sales History* ................................................................................................................... 31

   *Ownership* .................................................................................................................................. 31

   *Improvements* ............................................................................................................................. 31

   *Taxes* .......................................................................................................................................... 31

   *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ...................................... 33

SECTION I. ....................................................................................................................................... 47

APPRAISAL OF THE BEFORE VALUE ....................................................................................... 47

   *Highest and Best Use Analysis:* ................................................................................................ 48

     *a)*    *Legally Permissible* ......................................................................................... 49

     *b)*    *Physically Possible* .......................................................................................... 49

     *c)*    *Financially Feasible* ........................................................................................ 49

     *d)*    *Maximally Productive* ...................................................................................... 50

     *e)*    *Sufficiency of Demand* ..................................................................................... 50

     Conclusion ...................................................................................................................... 50

   *Land Valuation:* ......................................................................................................................... 51

     *Discounted Retail Sales Approach* .............................................................................. 51

SECTION II ..................................................................................................................................... 114

APPRAISAL OF THE AFTER VALUE ........................................................................................ 114

   *Highest and Best Use Analysis:* .............................................................................................. 133

     *a)*    Legal permissibility ........................................................................................ 134

     *b)*    Physical possibility and suitability .................................................................. 134

     *c)*    Financial feasibility ........................................................................................ 134

     *d)*    Maximum productivity ..................................................................................... 134

     *e)*    Sufficiency of demand ..................................................................................... 134

     Conclusion: ................................................................................................................... 135

   *Land Valuation* ........................................................................................................................ 136

     Sales Comparison Approach ........................................................................................ 136

   *Estimate of the After Value:* .................................................................................................... 158

Reconciliation .................................................................................................................................. 164

ECOVEST-DOJ_0009223

**Addenda**.................................................................................................................................**165**

Qualifications...................................................................................................................165

License.............................................................................................................................165

RS Means Estimates.........................................................................................................165

Cypress Cove Marina Unit Plans.....................................................................................165

Development Letters.........................................................................................................165

Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue.............165

Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
.........................................................................................................................................165

Bowden Reports – Before and After Scenarios.................................................................165

Easement...........................................................................................................................165

Baseline............................................................................................................................165

ECOVEST-DOJ_0009224

Excerpts from Cypress Cove Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                     State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0009225

Excerpts from Cypress Cove Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located south of Highway 31 and north of the Intracoastal Waterway on Bourne Trail in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | R4 Resort Residential |
| **Site:** | 28.04 Acres |
| **Easement:** | 28.04 Acres |
| **Reserved:** | One Residential Building Site and One Recreational Building Site |
| **Total:** | 28.04 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:    Residential Development<br>After:     Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0009226

Excerpts from Cypress Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0009227

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0009228

Excerpts from Cypress Cove Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0009229

**Legal Descriptions and Maps**

ALL AND SINGULAR, those certain pieces, parcels or lots of land, situate, lying and being in Horry County, South Carolina, more particularly shown and designated as **"Parcel A"**, containing 1.48 AC., more or less, and **"Parcel B"**, containing 26.56 AC., more or less, as shown and described on a map or plat entitled "Map of Parcels 'A' and 'B' Containing 28.04 Acres, Little River Township, Horry County, South Carolina, Boundary Survey, Prepared for: Parker Properties, Inc.", dated March 31, 2003, and recorded April 15, 2003, in Plat Book 189, at Page 86, reference to which is hereby craved as forming a part and parcel hereof.

ECOVEST-DOJ_0009230

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow.  The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 28 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0009244

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0009245

Excerpts from Cypress Cove Appraisal

Introduction

## Identification of the Subject Property

The Subject Property is located on Bourne Trail, south of Highway 31 and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 28+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Cypress Cove Marina, LLC

### Improvements

None

### Taxes

**Record Information**

Receipt #: 290554133

Status: Paid

Date Paid: 01/14/14

**Tax Information**

| | |
|---|---|
| Name: | GLF IV/681 SANDRIDGE LLC |
| Tax Year: | 2013 |
| Assessment Value: | 1840 |
| District/Levy: | 550 / 175.4 |
| City/Levy: | NM / 838. |

**Property Information**

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 143-00-01-078 |
| SC DOR#: | |
| Market Value: | 30,660 |
| Description: | LEWIS TR DUFFIE TR E |

**Taxes**

| | |
|---|---|
| County Tax: | $322.74 |
| City Tax: | $69.92 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Penalty: | $0.00 |
| Cost: | $0.00 |
| Total Taxes: | $392.66 |
| **Total Paid: $392.66** | |

ECOVEST-DOJ_0009249

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:              On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:               On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 28.04 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0009260

Excerpts from appraisal of:
Diamond Grande Resort

Document ID:
ECOVEST-DOJ_0022897

Excerpts from Diamond Grande Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ǂ
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Diamond Grande Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:     Conservation Easement Appraisal
        Diamond Grande Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0022897

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| **Unencumbered** | Acres | FMV |
| --- | --- | --- |
| Before Value | 67.22 | $56,013,625 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| **Encumbered** | Acres | FMV |
| --- | --- | --- |
| Total After Value – Land and Reserved Sites | 67.22 | $454,191 |

ECOVEST-DOJ_0022898

Excerpts from Diamond Grande Resort Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 67.22 | $56,013,625 |
| Less | | |
| Total After Value (Encumbered) | 67.22 | $454,191 |
| **Value of the Easement** | rounded | **$55,559,000** |

The Subject Property has two (2) reserved residential building sites and one (1) reserved recreational building site. These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these three sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. These sites are not build ready and would incur development costs. There is no enhancement. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

ECOVEST-DOJ_0022899

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0022900

Excerpts from Diamond Grande Resort Appraisal

## Table of Contents

Certification .................................................................................................................... 7

Summary of the Appraisal .............................................................................................. 8

Assumptions and Limiting Conditions ........................................................................... 9

Legal Descriptions and Maps ........................................................................................ 12

Scope of the Assignment ............................................................................................... 25

    *Competency Provision* ............................................................................................. 29

    *Appraisal of the Larger Parcel:* ............................................................................. 30

    *Identification of the Subject Property* ..................................................................... 31

    *Prior Sales History* ................................................................................................. 31

    *Ownership* ................................................................................................................ 31

    *Improvements* ........................................................................................................... 31

    *Taxes* ........................................................................................................................ 31

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..................... 33

SECTION I ................................................................................................................... 48

APPRAISAL OF THE BEFORE VALUE ..................................................................... 48

    *Highest and Best Use Analysis:* .............................................................................. 49
        *a)*    *Legally Permissible* ..................................................................... 50
        *b)*    *Physically Possible* ...................................................................... 50
        *c)*    *Financially Feasible* .................................................................... 50
        *d)*    *Maximally Productive* .................................................................. 51
        *e)*    *Sufficiency of Demand* .................................................................. 51
        Conclusion ................................................................................................ 51

    *Land Valuation:* ....................................................................................................... 52
        *Discounted Retail Sales Approach* .......................................................... 52

SECTION II .................................................................................................................. 120

APPRAISAL OF THE AFTER VALUE ........................................................................ 120

    *Highest and Best Use Analysis:* .............................................................................. 136
        a)    Legal permissibility ..................................................................... 137
        b)    Physical possibility and suitability .............................................. 137
        c)    Financial feasibility ..................................................................... 137
        d)    Maximum productivity .................................................................. 137
        e)    Sufficiency of demand ................................................................... 137
        Conclusion: ............................................................................................... 138

    *Land Valuation* ....................................................................................................... 139
        Sales Comparison Approach ..................................................................... 139

    *Estimate of the After Value:* .................................................................................... 161

Reconciliation .............................................................................................................. 167

Addenda ........................................................................................................................ 168

ECOVEST-DOJ_0022901

Qualifications ................................................................................................................168
License .........................................................................................................................168
Diamond Grande Resort Unit Plans ............................................................................168
RS Means Cost Estimates ............................................................................................168
Development Letters .....................................................................................................168
Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............168
Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
.......................................................................................................................................168
Bowden Report – Before Scenario ...............................................................................168
Easement ......................................................................................................................168
Baseline ........................................................................................................................168

ECOVEST-DOJ_0022902

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0022903

Excerpts from Diamond Grande Resort Appraisal

## Summary of the Appraisal

**Property Type:** Conservation Easement

**Location:** The Subject Property is located on the west side of the Conway Bypass and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:** To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:** To estimate the market value of a conservation easement.

**Date of the Appraisal Report:** December 15, 2015

**Date of Value Estimates:** December 15, 2015

**Date of Donation** December 15, 2015

**Property Rights Appraised:** Before: Fee Simple Interest
After: Fee Simple Interest Subject to Easement

**Zoning:** PPD

**Site:** 67.22 Acres

**Easement:** 67.22 Acres

**Reserved:** Two Residential Building Sites and One Recreational Building Site

**Total:** 67.22 Acres

**Improvements:** None

**High and Best Use
of Site as Though Vacant:** Before: Residential Development
After: Recreational / Green Space

**Appraiser:** Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275

ECOVEST-DOJ_0022904

Excerpts from Diamond Grande Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0022905

Excerpts from Diamond Grande Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0022906

Excerpts from Diamond Grande Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0022907

Excerpts from Diamond Grande Resort Appraisal

**Legal Descriptions and Maps**

## Legal Description – Parcel "D-1"

All and singular that certain piece, parcel or tract of land lying and situate in the City of North Myrtle Beach, Horry County, South Carolina and being referenced on a plat entitled "Map of Parcel "D1" & "E" – Subdivision & Boundary Survey prepared for Diamond Grande Resort, LLC and Belle Harbour Resort, LLC by DDC Engineers, Inc. dated July 20, 2015 and recorded in Plat Book 267, Page 79 and being more particularly described as follows:

Beginning at a 1/2" rebar located on the northwestern right-of-way of the Atlantic Intracoastal Waterway and the common right-of-way of S. C. Highway #22 – Conway Bypass; thence along the right-of-way of the Atlantic Intracoastal Waterway S 52°42'01" W, 746.07' to a 1/2" rebar; thence N 37°19'03" W, 1431.44' to a 1/2" rebar; thence N 12°26'45" W, 862.56' to a 1/2" rebar located on a 100' Access & Utility Easement; thence N 19°19'54" E, 100.00' to a 1/2" rebar located on a 100' Access & Utility Easement; thence with said easement line, being the same as the property line, N 70°40'06" W, 737.49' to a 1/2" rebar; thence N 60°24'34" E, 491.67' to a 1/2" rebar; thence N 80°40'16" E, 1239.32' to a 1/2" rebar located on the western right-of-way of S. C. Highway #22 – Conway Bypass; thence with the right-of-way of S. C. Highway #22 – Conway Bypass along a curve to the left, having an arc length of 750.30', a radius of 5871.34', and a chord of S 13°02'10" E, 749.79' to a concrete monument found; thence along a curve to the left, having an arc length of 49.88', a radius of 5871.34', and a chord of S 16°56'26" E, 49.88' to a concrete monument found; thence S 17°14'54" E, 50.12' to a 1/2" rebar; thence S 17°14'54" E, 1554.63' to the point of beginning, and having an area of 67.22 acres, more or less.

This property is bounded on the north by Coterra Chestnut, LLC, on the east by S.C. Highway #22 – Conway Bypass, on the west by Reach 9, LLC and on the south by the Atlantic Intracoastal Waterway.

## Easement

A non-exclusive easement over and across those areas identified as "existing 100' Access & Utility Easement" and "100' Access & Utility Easement" as shown on Plat Book 267, Page 79, Horry County Register of Deeds.

ECOVEST-DOJ_0022908

Excerpts from Diamond Grande Resort Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 67.22 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0022922

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0022923

Excerpts from Diamond Grande Resort Appraisal

## Identification of the Subject Property

The Subject Property is located on the west side of the Conway Bypass and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 67.22 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Reach 9, LLC

### Improvements

None

### Taxes

**Owner Data:**

| | |
|---|---|
| TMS | 1550001055 |
| PIN | 39000000001 |
| Legal Description | : PT BURST TR : |
| Owner | REACH 9 LLC |
| Billing Street | 1004 29TH AVE N STE A |
| Billing City | MYRTLE BEACH |
| Billing State | SC |
| Billing Zip | 29577-3183 |
| District | 550 - N MYRTLE BEACH |
| Book | 1840 |
| Page | 550 |

**2014 Parcel Values:**

| | |
|---|---|
| Residential Land | $0.00 |
| Residential Improved Land | $0.00 |
| Farm Land | $3,766,200.00 |
| Farm Improved | $0.00 |
| Farm Use | $43,260.00 |
| Other Land | $0.00 |
| Other Improved | $0.00 |
| Taxable Total | $43,260.00 |

ECOVEST-DOJ_0022927

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:              On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:               On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 67.22 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0022939

# Excerpts from appraisal of: Dumpling Mountain

# Document ID: ECOVEST-DOJ_0335900

Excerpts from Dumpling Mountain Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

\* Certified in AL, FL, MS, GA
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

December 30, 2010

Mr. Edmund Cash
Dumpling Mountain, LLC
10 Long Branch Road
Spencer, TN, 38585

Dear Mr. Cash:

RE:   Conservation Easement Dumpling Mountain
Spencer, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0335900

Excerpts from Dumpling Mountain Appraisal

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of as of December 30, 2010, and before the subject property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 278 | $13,840,645 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2010 is:

| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 272 | $300 | $81,600 |

The Tract retains the right to build six homes and related improvements on six one-acre sites. The parcels are precisely identified. The easement holder must give permission before construction may commence. A survey is required, a review of the easement is made, drives and utility placement must be approved. There are restrictions as to the coverage, size and height on the improvements. The Land Trust must inspect the site. The period to accomplish the goal of the building start may be 1-4 months. Given alternatives in the market, I do not see these retained rights having a great financial benefit. The sites are deep within the owner's property. To access the property, one must use private roads and enter the larger parcel. Any benefit of these sites accrues to the owner of the larger parcel. I do not find any enhancement to be gained from the placement of the easement to these retained building areas. I think the time and cost to obtain building permits essentially render these retained elements minimal financial value. The utility placement on the lots or access has not been identified.  I will point out that rural lots on dirt roads are available for $5,000.

| | | | |
|---|---|---|---|
| Value of Retained Lots | 6 | $5000 | $30,000 |

ECOVEST-DOJ_0335901

The value of the easement gift as of December 30, 2010 is as follows and is based upon the before and after value.

| | | | | |
|---|---|---|---|---|
| Fee Simple Interest | Before | 278 | | $13,840,645 |
| Less | | | | |
| Fee Simple Interest with Encumbrance | | 272 | $300 | $81,600 |
| Less | | | | |
| Value of Retained Lots | | 6 | $5,000 | $30,000 |
| | | | | |
| Value of the Easement | | | rounded | $13,729,000 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0335902

Excerpts from Dumpling Mountain Appraisal

## Table of Contents

Certification ......................................................................................................................... 6

Summary of the Appraisal .................................................................................................... 7

Assumptions and Limiting Conditions ................................................................................ 8

Legal Descriptions and Maps ............................................................................................ 11

INTRODUCTION: ............................................................................................................ 13

    Scope of the Assignment .............................................................................................. 14

    Competency Provision .................................................................................................. 17

    Appraisal of the Larger Parcel: .................................................................................. 18

    Identification of the Subject Property .......................................................................... 19

    Prior Sales History ....................................................................................................... 19

    Ownership ..................................................................................................................... 19

    Taxes ............................................................................................................................. 19

Improvements .................................................................................................................... 19

    Neighborhood Data – Middle Tennessee .................................................................... 20

    Van Buren County, TN Demographics ........................................................................ 22

    General Area Analysis: ................................................................................................ 24

SECTION I ........................................................................................................................ 36

APPRAISAL OF THE FEE SIMPLE INTEREST ........................................................... 36

    Highest and Best Use Analysis: ................................................................................... 37

        a)    Legally Permissible ............................................................................ 38

        b)    Physically Possible ............................................................................. 38

        c)    Financially Feasible ........................................................................... 38

        d)    Maximally Productive ......................................................................... 39

        e)    Sufficiency of Demand ........................................................................ 39

        Conclusion ................................................................................................. 39

        Hypothetical Condition .............................................................................. 39

    Land Valuation: ............................................................................................................ 41

        Land Residual ............................................................................................ 41

SECTION II ....................................................................................................................... 53

APPRAISAL OF THE EASEMENT .................................................................................. 53

    Highest and Best Use Analysis: ................................................................................... 54

        a)    Legal permissibility ........................................................................... 54

        b)    Physical possibility and suitability .................................................... 54

        c)    Financial feasibility ........................................................................... 54

        d)    Maximum productivity ........................................................................ 54

        e)    Sufficiency of demand ........................................................................ 55

        Conclusion: ................................................................................................ 55

    Land Valuation: ............................................................................................................ 60

ECOVEST-DOJ_0335903

Excerpts from Dumpling Mountain Appraisal

Sales Comparison Approach...................................................................................................60

**Reconciliation**........................................................................................................................**71**

**Addenda**................................................................................................................................**73**
Qualifications.........................................................................................................................74
License...................................................................................................................................76
Engagement Letter.................................................................................................................77
Easement and Baseline Documents.........................................................................................78

ECOVEST-DOJ_0335904

Excerpts from Dumpling Mountain Appraisal

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property."

Claud Clark III                          State Certified General Real Property Appraiser

ECOVEST-DOJ_0335905

Excerpts from Dumpling Mountain Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To assist in the asset valuation process. |
| **Date of the Appraisal Report:** | December 30, 2010 |
| **Date of Value Estimates:** | December 30, 2010 |
| **Date of Donation** | December 27, 2010 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 278 Acres |
| **Easement:** | 272 Acres |
| **Reserved:** | 6 acres |
| **Total:** | 278 |
| **Improvements:** | Minimally improved road |
| **High and Best Use of Site as Though Vacant:** | Future residential development. |
| **Estimated Marketing Time:** | 12-18 months |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0335906

Excerpts from Dumpling Mountain Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0335907

Excerpts from Dumpling Mountain Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.
The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0335908

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0335909

**Legal Descriptions and Maps**

LEGAL

The following is a description of the Dumpling Mountain, LLC property located off the Archie Rhinehart Parkway in the 4th Civil District of Van Buren County, Tennessee. (Reference Record Book 59 Page 498 and Tax Map 75 Parcel 8.00)

Beginning on a painted rock located in the Western line of the State of Tennessee Fall Creek Falls property as well being the Northeastern corner of this described parcel and the Southeastern corner of the Navarre Inc. property; thence going with the State of Tennessee S 08°59'37" W 1050.04 feet to a coal car rail; thence S 09°37'25" W 94.87 feet to a ½' pipe set; thence leaving the State property and going with Charles Allison S 59°50'11" W 3090.72 feet to a ½" pipe set; thence leaving Charles Allison and going with Lester Allison S 59°50'11" W 748.03 feet to a painted rock; thence leaving Lester Allison and going with Calvin Haggard N 08°29'40" E 1451.04 feet to a coal car rail; thence continuing with Haggard N 81°32'52" W 2371.50 feet to a painted rock; thence leaving Haggard and going with J.M. Huber Corp. N 08°01'16" E 850.14 feet to a coal car rail; thence leaving Huber and going with Calvin Haggard N 09°16'41" E 858.62 feet to a coal car rail; thence N 08°55'00" E 428.74 feet to a coal car rail; thence leaving Haggard and going with Navarre Inc. S 81°02'16" E 5372.45 feet to the beginning containing 278.12 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 19 March 2001.

**NOTE:**

The above described parcel is subject to ingress/egress right-of-ways some of which are recorded in Warranty Deed Book 11 Pages 488 as well as an access easement from Joe T. Moffitt to Southern Pine Plantations in Deed Book Miscellaneous 25 Page 720 Van Buren County Register's Office.

ECOVEST-DOJ_0335910

Excerpts from Dumpling Mountain Appraisal

Appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation


Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.  The single approach feasible is a sale comparative approach utilizing tracts of generally similar size and other attributes for the bulk of the site.

The report is divided into two sections.

Section I of the appraisal which deals with the unencumbered fee estate.

Section II of the report which involves the encumbered property.

Each of the approaches has an individual set of sales. These sales are unencumbered and encumbered as appropriate for the phase of the report.

For the property in the fee simple estate, sales were drawn from the area.

For the property in its encumbered state, a different set of data will be required.  These sales included easement purchases by government agencies as well as sales of easements.  Largest body of data will include property which has sold subject to perpetual conservation easements. These are largely drawn from Tennessee, Georgia and Florida.

Highest and best use in the "after" configuration will be shown to be limited. The property may not be subdivided among other restrictions.

ECOVEST-DOJ_0335915

Excerpts from Dumpling Mountain Appraisal

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 278+- acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Dumpling Mountain, LLC

## Taxes

```
                     PROPERTY TAX NOTICE
TAX YR  2009      RECEIPT NO.  05714
 TAMMIE H CLENDENON
 VAN BUREN CO TRUSTEE
 PO BOX 176
 SPENCER TN        38585
                           (931) 946-2263
 GI  MAP      GP      CTL MAP    PARCEL      SI
 04  075              075       00800      000
 PROPERTY ADDRESS
 PARK ROAD
 SUBDIVISION NAME               BLK    LOT
 ACRES      275.00       MTG CODE
           ADDITIONAL DESCRIPTION
 GB APP RB50/938

  TAXES ARE DUE AND         CLASSIFICATION
 PAYABLE WITHOUT PENALTY    AGRICULTURE
 FROM OCT  1  09     ROLLBACK YRS  EQ FACTOR
 THRU FEB  28 10
       PROPERTY TAX INFORMATION              CO
 APPRAISAL          $       92,900    085
 ASSESSMENT @ 25%   $       23,225    CITY
 TAX RATE PER $100 OF ASMT  $  1.4304  000
 CURRENT TAXES      $        332.00    SSD
 ROLLBACK TAXES     $          0.00    000
    TOTAL DUE
          332.00
```

## Improvements

None

ECOVEST-DOJ_0335918

Excerpts from Dumpling Mountain Appraisal

Site Data

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                     On-Site: No; Adjacent: No
- Observed distressed vegetation:                 On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":                On-Site: No; Adjacent: No
- Observed noticeable odors:                      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 277.90 +- acres, of which approximately 277.90 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0335928

Excerpts from appraisal of:
Espiritu Shores

Document ID:
ECOVEST-DOJ_0209961

Excerpts from Espiritu Shores Appraisal

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 28, 2019

Espiritu Shores LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:     Conservation Easement Appraisal
        Espiritu Shores, LLC
        333.33-acre tract, Calhoun County, Texas


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or other guidance.* I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

1

ECOVEST-DOJ_0209961

Excerpts from Espiritu Shores Appraisal

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows:
*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

2

ECOVEST-DOJ_0209962

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 333.33-acre conservation easement in Calhoun County, Texas. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***Fair Market Value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

3

ECOVEST-DOJ_0209963

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 17, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement Fee Simple | 333.33 | $78,406,603 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 17, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value After the Easement Fee Simple (rounded) | 333.33 | $1,800 | $599,994 |

The encumbered property also includes one reserved residential building zone. In theory, if taken as separate components of the valuation, the building area and the remaining eased area that cannot be improved have different values. This site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement. It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided that this property does not warrant any additional value over that of the balance of the eased area, but I do feel that it does add to the value of the total tract; therefore, the value of this tract will be included in that of the complete tract. It is not valued as a separate component. There is no enhancement.

4

ECOVEST-DOJ_0209964

The Fair Market Value of the easement gift as of December 17, 2018 is as follows and is based upon the before and after method. The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $78,406,603. The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $599,994. Using the before and after method, the Fair Market Value of the Conservation Easement is $77,807,000 (rounded).

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 333.33 | | $78,406,603 |
| Total Fair Market Value After the Easement | 333.33 | $1,800 | $599,994 |
| **Fair Market Value of the Easement** | | | **$77,807,000** |

Fair Market Value of the Conservation Easement on the effective date is:

*SEVENTY-SEVEN MILLION EIGHT HUNDRED SEVEN THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

5

ECOVEST-DOJ_0209965

Excerpts from Espiritu Shores Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

6

ECOVEST-DOJ_0209966

Excerpts from Espiritu Shores Appraisal

**CLAUD CLARK III, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

December 17, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

7

ECOVEST-DOJ_0209967

The houses were leveled. Immediately the developers came in and assembled the lots into wider  lots and built condos... What had been $100,000 houses became $300,000 vacant lots. There are  only a few houses on the beach today. It is high rise condos.

Specifically, Espiritu Shores will progress as planned with only slight delays for infrastructure  repair. I think that the aggressive marketing program will still prove to be effective. This is based  on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

8

ECOVEST-DOJ_0209968

Excerpts from Espiritu Shores Appraisal

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane  Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic
Planning Market Analysis completed earlier this year. Natural disasters such as this can be
temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will   consume
the year ahead, but elements such as refining, petrochemicals and shipping will recover  in a few
months.

While everything has temporarily changed in coastal Texas, there are many constants in our  society
and our economy that continue on as though nothing has happened. Growth in the Texas  market is
not going to stop. Many corporations continue to migrate to Texas and to expand. The  energy
industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to  buy
waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of
Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump  in
growth when rebuilding is added to the already existing demand in Texas, among the  healthiest in the
nation. One can also argue that the Texas' coast location has been in a known  hurricane zone for
centuries and that the risks associated with the location are baked in and do  not appear to be an
impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of
a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's
houses, unleashing millions in acquisition funds for retirement real estate. Tourism and  residential
migration will continue to occur. The shore will continue to be a magnet. Hurricane  Harvey has no
impact on these dynamics. This is the most fundamental truth that should not be  forgotten and is a
powerful reason to remain bullish on Texas and its coast.

9

ECOVEST-DOJ_0209969

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure  will be refreshed to contemporary standards. Roads will be improved. The area will be even  more beautiful than it was before. The quality of the area will improve. The area will become  more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the  time to secure a position in the market and to proceed to develop a resort style residential  development that can begin to close sales in late 2018- 2019 and tap into the strong currents of  demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.  Sincerely,

*Ralph S Bowden*

Ralph S. Bowden  President

10

ECOVEST-DOJ_0209970

# Table of Contents

Certification of Appraiser ...................................................................................................................... 13

Summary of the Appraisal ..................................................................................................................... 15

Assumptions and Limiting Conditions .................................................................................................. 16

Legal Descriptions and Maps ................................................................................................................ 19

INTRODUCTION .................................................................................................................................. 31

Scope of the Assignment ....................................................................................................................... 32
   *Competency Provision* ....................................................................................................................... 34

*Identification of the Subject Property* ................................................................................................. 36

*Prior Sales History* .............................................................................................................................. 36

*Ownership* ........................................................................................................................................... 36

*Improvements* ...................................................................................................................................... 36

*Taxes* .................................................................................................................................................... 36

   *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ................................ 39

SECTION I ............................................................................................................................................. 53

APPRAISAL OF THE BEFORE VALUE ............................................................................................ 53

   *Highest and Best Use Analysis:* ....................................................................................................... 54
   a)   *Legally Permissible* ................................................................................................................. 56
   c)   *Financially Feasible* ................................................................................................................ 56
   d)   *Maximally Productive* .............................................................................................................. 57
   e)   *Sufficiency of Demand* ............................................................................................................ 57
   *Conclusion* ...................................................................................................................................... 57

   *Land Valuation:* ................................................................................................................................ 61
   *Discounted Retail Sales Approach* .................................................................................................. 61

SECTION II ......................................................................................................................................... 109

APPRAISAL OF THE AFTER VALUE ............................................................................................. 109
   b)   *Physical possibility and suitability* ....................................................................................... 122
   c)   *Financial feasibility* .............................................................................................................. 122
   d)   *Maximum productivity* ........................................................................................................... 122
   e)   *Sufficiency of demand* ........................................................................................................... 123
   *Conclusion:* .................................................................................................................................... 123

11

ECOVEST-DOJ_0209971

*Land Valuation* ............................................................................................................................ *124*

*Sales Comparison Approach* ....................................................................................................... *124*

*Estimate of the After Value:* ....................................................................................................... *133*

**Reconciliation** **Reconciliation and Appraisal of the Easement** ........................................ 139

**Addenda** ...................................................................................................................................... 145

Qualifications ....................................................................................................................... 145

License .................................................................................................................................. 145

Deed and Title Documents ................................................................................................... 145

Unit Plans ............................................................................................................................. 145

Cost Estimates ...................................................................................................................... 145

Development Letters ............................................................................................................. 145

Mineral Assessment ............................................................................................................. 145

Demographic Reports ........................................................................................................... 145

Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .......... 145

Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal
Revenue ................................................................................................................................ 145

Crystal Lagoon Information and Supporting Documents ..................................................... 145

Bowden Report – Before Scenario ....................................................................................... 145

Easement ............................................................................................................................... 145

Baseline ................................................................................................................................ 145

12

ECOVEST-DOJ_0209972

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

13

ECOVEST-DOJ_0209973

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

14

ECOVEST-DOJ_0209974

### Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 28, 2019 |
| **Date of Inspection:** | January 18, 2019 |
| **Date of Value Estimates:** | December 17, 2018 |
| **Date of Donation** | December 17, 2018 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 333.33 Acres |
| **Easement:** | 333.33 Acres |
| **Reserved:** | One Two-Acre Reserved Building Zone located within the easement. |
| **Total:** | 333.33 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:       Residential Development<br>After:         Recreational / Green Space with one 2-acre residential building zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

15

ECOVEST-DOJ_0209975

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

16

ECOVEST-DOJ_0209976

Excerpts from Espiritu Shores Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0209977

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

18

ECOVEST-DOJ_0209978

Excerpts from Espiritu Shores Appraisal

## Legal Descriptions and Maps

### 333.33 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 333.33 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Pedro Garcia Survey, Abstract No. 16, Calhoun County, Texas, being a portion of Lots 2 & 3, Section 8 and Lots 1 & 4, Section 9, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being that same called 333.33 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated June 3, 2015, conveyed from Texas Coastal Ranches, Inc. to Mike C. Williams as recorded in Instrument No. 143573 of the Official Public Records, Calhoun County, Texas, said 333.33 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the north corner of the aforesaid Williams Tract, same being the most southeast corner of a 100-foot Roadway Easement, a called 57.92 acre tract of land described by Instrument as recorded in Instrument Nos. 142554, 142846, & 142896 of the Official Public Records, Calhoun County, Texas respectively, and being along the southwest line of a called 461.64 acre tract of land described by Instrument to Matagorda Land Holdings, LLC as recorded in Instrument No. 152028 of the Official Public Records, Calhoun County, Texas for the north corner of the herein described tract;

THENCE, South 25°50'49" East, along a common line between said Williams Tract and the aforesaid 461.64 acre tract, at a distance of 3514.46 feet passing a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference along the common line between said Williams Tract and said 461.64 acre tract and continuing for a total distance of 3849.48 feet to a point marking the east corner of said Williams Tract, same being the south corner of said 461.64 acre tract, and being along the southeast line of a called 12,228.52 acre tract of land described by Instrument to Texas Ranch Holdings, LLC as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas for the east corner of the herein described tract;

THENCE, South 62°05'55" West, along a common line between said Williams Tract and the aforesaid 12,228.52 acre tract, a distance of 3603.54 feet to a point marking the south corner of said Williams Tract and being the east corner of a called 246.79 acre tract of land described by Instrument to King Fisher Land Holdings, LLC as recorded in Instrument No. 2018-01609 of the Official Public Records, Calhoun County, Texas for the south corner of the herein described tract;

THENCE, North 28°18'13" West, along a common line between said Williams Tract and the aforesaid 246.79 acre tract, at a distance of 357.17 feet passing a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference along the common line between said Williams Tract and said 246.79 acre tract and continuing for a total distance of 4027.48 feet to a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the west corner of said Williams Tract, same being the north corner of said 246.79 acre tract, and being the south most corner of the aforementioned 100-foot Road Easement for the west corner of the herein described tract;

THENCE, North 64°50'17" East, along a common line between said Williams Tract and said 100-foot Road Easement, a distance of 3774.13 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 333.33 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in June, 2018 and are true and correct to the best of my knowledge and belief.

_____ 08/14/2018

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor

19

ECOVEST-DOJ_0209979

Excerpts from Espiritu Shores Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost.  This cost is often obtained from local sources and Marshall and Swift Valuation Service.  Cost developed is compared with local data.  Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data.  The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with potential development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed.  Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such

CLAUD  CLARK III,

33

ECOVEST-DOJ_0209993

Excerpts from Espiritu Shores Appraisal

Introduction

**Identification of the Subject Property**

The Subject Property is located off of State Highway 185 and north of the Intracoastal  Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 333.33 acres.

*Prior Sales History*

There have been no qualified sales or transfers of the Subject Property within the last three years.  The Subject is not currently listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found  no sales of the subject property within the past three years.  However, I am aware that the  majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

*Ownership*

Espiritu Shores, LLC

*Improvements*

None

*Taxes*

CLAUD  CLARK III,

36

ECOVEST-DOJ_0209996

Excerpts from Espiritu Shores Appraisal

- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject. This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 333.33 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

Excerpts from appraisal of:
Garden Lake Estates

Document ID:
ECOVEST-DOJ_0126605

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 26, 2014

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE:   Conservation Easement Appraisal
Garden Lake Estates, Hilton Head Lakes, Hwy 278, Jasper County, SC

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

ECOVEST-DOJ_0126605

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 26, 2014, and before the Subject Property is encumbered by the easement is as follows:

| **Unencumbered** | Acres | FMV |
|---|---|---|
| Garden Lake Estates | 803 | $42,916,050 |
| Commercial Parcels | <u>19</u> | <u>$1,425,000</u> |
| **Total Before Value** | **822** | **$44,341,050** |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 26, 2014 is:

| **Encumbered** | | Acres | FMV |
|---|---|---|---|
| After Value – Land and Reserved Zone | | 803 | $1,553,000 |
| Commercial Parcels | | <u>19</u> | <u>$1,425,000</u> |
| | **Total After Value** | **822** | **$2,978,000** |

ECOVEST-DOJ_0126606

Excerpts from Garden Lakes Estates Appraisal

The value of the easement gift as of December 26, 2014 is as follows and is based upon the before and after value method.  In determining the market nature of a conservation easement, the before and after method is a recognized technique.

|  | Acres | FMV |
|---|---|---|
| Total Before Value (Unencumbered) | 822 | $44,341,050 |
| Less | | |
| Total After Value (Encumbered) | 822 | $2,978,000 |
| **Value of the Easement** | **Rounded** | **$41,363,000** |

The Subject Property has six reserved building sites, one lodge and five home sites, within a 33+- acre-building zone.  This zone remains part of the eased property and, therefore is subject to the rules and restrictions of the easement; however, since these six sites within this zone do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered.  This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0126607

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0126608

## Table of Contents

**Certification** .................................................................................................................... 7

**Summary of the Appraisal** ................................................................................................ 8

**Assumptions and Limiting Conditions** ............................................................................ 9

**Legal Descriptions and Maps** .......................................................................................... 12

**INTRODUCTION:** ........................................................................................................... 29

**Scope of the Assignment** .................................................................................................. 30

   *Competency Provision* ..................................................................................................... 34

   *Appraisal of the Larger Parcel:* ...................................................................................... 35

   *Identification of the Subject Property* ............................................................................. 36

   *Prior Sales History* .......................................................................................................... 36

   *Ownership* ........................................................................................................................ 36

   *Improvements* .................................................................................................................. 36

   *Taxes* ................................................................................................................................ 36

   *Neighborhood Data – Jasper County, South Carolina* ................................................... 38

**SECTION I** ....................................................................................................................... 53

**APPRAISAL OF THE BEFORE VALUE** ...................................................................... 53

   *Highest and Best Use Analysis:* ..................................................................................... 54

      *a)*   *Legally Permissible* ............................................................................. 55

      *b)*   *Physically Possible* .............................................................................. 55

      *c)*   *Financially Feasible* ............................................................................ 55

      *d)*   *Maximally Productive* .......................................................................... 56

      *e)*   *Sufficiency of Demand* ......................................................................... 56

      Conclusion ......................................................................................................... 56

   *Land Valuation:* ............................................................................................................... 57

      **Discounted Retail Sales Approach** ................................................................. 57

   *Estimate of the Before Value* ........................................................................................... 122

**SECTION II** ..................................................................................................................... 123

**APPRAISAL OF THE AFTER VALUE** ........................................................................ 123

   *Highest and Best Use Analysis:* ..................................................................................... 139

      a)   Legal permissibility ............................................................................. 140

      b)   Physical possibility and suitability ...................................................... 140

      c)   Financial feasibility ............................................................................. 140

      d)   Maximum productivity .......................................................................... 140

      e)   Sufficiency of demand .......................................................................... 140

      Conclusion: ........................................................................................................ 141

   *Land Valuation* ................................................................................................................ 142

      Sales Comparison Approach .............................................................................. 142

   *Estimate of the After Value:* ............................................................................................ 164

ECOVEST-DOJ_0126609

**Reconciliation**..................................................................................................................................**170**

**Addenda**.........................................................................................................................................**172**

    License ......................................................................................................................................175
    Construction Cost Estimates ....................................................................................................176
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............183
    Bowden Report ........................................................................................................................202
    Easement and Baseline Documents.........................................................................................203

ECOVEST-DOJ_0126610

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                                State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0126611

Excerpts from Garden Lakes Estates Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the north side of U.S. 278, approximately three miles east of Interstate 95 outside of Hardeeville, Jasper County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 26, 2014 |
| **Date of Value Estimates:** | December 26, 2014 |
| **Date of Donation** | December 26, 2014 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | EDD, Economic Development District |
| **Site:** | 822 +- Acres |
| **Easement:** | 803 +- Acres |
| **Excluded Commercial:** | 19 +- Acres |
| **Reserved:** | Building Zone with One Lodge Site and Five Home Sites |
| **Total:** | 822 +- Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:    Residential Development<br>After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0126612

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

CLARK ~ DAVIS, PC

9

ECOVEST-DOJ_0126613

Excerpts from Garden Lakes Estates Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0126614

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0126615

Excerpts from Garden Lakes Estates Appraisal

**Legal Descriptions and Maps**

LEGAL

ALL those certain pieces, parcels or tracts of land, situate, lying and being in the City of Hardeeville, Jasper County, South Carolina, shown and designated as

"Parcel 1" containing 305.59 acres, more or less,
"Parcel 2" containing 479.74 acres, more or less, and
"Parcel 4" containing 17.86 acres, more or less,

on that certain plat entitled "A Plat of Garden Lakes Estates, Lakeside Boulevard, Hilton Head Lakes North, A Portion of TMS 042-00-06-042, City of Hardeeville, Jasper County, South Carolina" dated May 23, 2014, prepared by Cook Land Surveying, certified by Donald R. Cook, Jr., P.L.S. (SC No. 19010), and recorded in the Office of the Register of Deeds for Jasper County, South Carolina ("Jasper County Records") in Plat Volume _____ at Page _____ (the "Plat"). For a more detailed description as to the metes and bounds, courses and distances, reference is had to the aforementioned recorded plat.

TM:    A portion of 042-00-06-042

ECOVEST-DOJ_0126616

Excerpts from Garden Lakes Estates Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 822 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market

ECOVEST-DOJ_0126635

Excerpts from Garden Lakes Estates Appraisal

Introduction

Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0126636

Excerpts from Garden Lakes Estates Appraisal

**Identification of the Subject Property**

The Subject Property is located on the north side of U.S. Route 278, approximately three miles east of Interstate 95, outside of Hardeeville, Jasper County, South Carolina.  The site contains 822+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Garden Lake Estates, LLC

*Improvements*

None

*Taxes*

Individual lots were assessed at an average price of $600. It was derived after an analysis of bulk lot assessments.

ECOVEST-DOJ_0126640

Excerpts from Garden Lakes Estates Appraisal

Site Data

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:             On-Site: No; Adjacent: No
- Observed distressed vegetation:         On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:              On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 822+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0126655

# Excerpts from appraisal of: Glade Creek

# Document ID: ECOVEST-DOJ_0222480

Excerpts from Glade Creek Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 23, 2012

Mr. Edmund Cash
Glade Creek, LLC
10 Long Branch Road
Spencer, TN, 38585

Dear Mr. Cash:

RE:    Conservation Easement Glade Creek
Spencer, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

1

ECOVEST-DOJ_0222480

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2011, and before the subject property is encumbered by the easement is as follows:



|  | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 371.5 | $11,221,084.06 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2011 is:

| Fee Simple Interest with Encumbrance | 365.5 | $600 | $219,300 |
|---|---|---|---|

The subject property has three (3) reserved home sites. While the home sites cannot claim ownership of the conservation easement area, they can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 20% enhancement to the reserved lots.

The value of the easement gift as of December 30, 2011 is as follows and is based upon the before and after value.

ECOVEST-DOJ_0222481

Excerpts from Glade Creek Appraisal

| | | | |
|---|---|---|---|
| Fee Simple Interest       Before | 371.5 | | $11,221,084 |
| Less | | | |
| Fee Simple Interest with Encumbrance | 365.5 | $600 | $219,300 |
| Less | | | |
| Three 2-acre Building Sites plus Enhancement | | | $144,000 |
| | | | |
| Value of the Easement | | rounded | $10,857,784 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0222482

## Table of Contents

**Certification** .................................................................................................................. **6**

**Summary of the Appraisal** ............................................................................................. **7**

**Assumptions and Limiting Conditions** ......................................................................... **8**

**Legal Descriptions and Maps** ..................................................................................... **11**

**INTRODUCTION:** ..................................................................................................... **20**

*Scope of the Assignment* ............................................................................................ *21*

*Competency Provision* ............................................................................................... *25*

*Appraisal of the Larger Parcel:* ................................................................................ *26*

*Identification of the Subject Property* ....................................................................... *27*
    Prior Sales History ................................................................................................. 27
    Ownership ............................................................................................................... 27
    Taxes ....................................................................................................................... 27
    Improvements ......................................................................................................... 27

*Neighborhood Data – Middle Tennessee* ................................................................... *28*

*Van Buren County, TN Demographics* ....................................................................... *30*

*General Area Analysis:* .............................................................................................. *33*

**SECTION I** ................................................................................................................. **40**

**APPRAISAL OF THE FEE SIMPLE INTEREST** .................................................... **40**

*Highest and Best Use Analysis:* ................................................................................. *41*
    *a)*   *Legally Permissible* ...................................................................................... *42*
    *b)*   *Physically Possible* ...................................................................................... *42*
    *c)*   *Financially Feasible* .................................................................................... *42*
    *d)*   *Maximally Productive* .................................................................................. *43*
    *e)*   *Sufficiency of Demand* ................................................................................. *43*
    Conclusion .............................................................................................................. 43
    Hypothetical Condition .......................................................................................... 43

*Land Valuation:* ......................................................................................................... *44*

**SECTION II** ............................................................................................................... **62**

**APPRAISAL OF THE EASEMENT** ......................................................................... **62**
    a)   Legal permissibility ....................................................................................... 65
    b)   Physical possibility and suitability ............................................................... 65
    c)   Financial feasibility ...................................................................................... 65
    d)   Maximum productivity ................................................................................... 65
    e)   Sufficiency of demand .................................................................................... 65
    Conclusion: ............................................................................................................. 66

*Land Valuation:* ......................................................................................................... *67*
    Sales Comparison Approach .................................................................................. 67

**Reconciliation** .......................................................................................................... **88**

**Addenda** .................................................................................................................... **90**

ECOVEST-DOJ_0222483

Excerpts from Glade Creek Appraisal

QUALIFICATIONS OF CLAUD CLARK III ........................................................................................ 91
License: ...................................................................................................................................................... 93
Planning Certificate: ................................................................................................................................. 94
Long Branch Lakes Amenities Use Agreement: ...................................................................................... 95
Easement and Baseline Documents ........................................................................................................... 96

ECOVEST-DOJ_0222484

Excerpts from Glade Creek Appraisal

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0222485

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 23, 2012 |
| **Date of Value Estimates:** | December 30, 2011 |
| **Date of Donation** | December 30, 2011 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 371.5 Acres |
| **Easement:** | 365.5 Acres |
| **Reserved:** | Three 2-acre Building Site |
| **Total:** | 371.5 |
| **Improvements:** | ATV/Jeep Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before: Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0222486

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0222487

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0222488

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0222489

Excerpts from Glade Creek Appraisal

Introduction

## Legal Descriptions and Maps:

Beginning at a point that bears S 06° 35' 25" W 2951.57 feet from a coal car rail being the northeastern corner of the said Long Branch Properties LLC property;

Thence continue S 06°35'25" W 1178.71 feet to a ½" pipe (found);
Thence S 06°37'20" W 25.72 feet to a 1/2" pipe (found) in the center of the CC Road;
Thence continuing with the same along the center of the said road S 69°45'13" E 103.87 feet;
Thence S 82°08'52" E 168.60 feet; Thence S 52°33'19" E 121.82 feet;
Thence S 20°04'08" E 154.38 feet; Thence S 47°09'22" E 97.86 feet;
Thence S 03°02'30" E 109.55 feet; Thence S 26°29'47" E 420.53 feet;
Thence S 38°01'37" E 133.34 feet; Thence S 46°01'57" E 105.82 feet;
Thence S 57°57'05" E 85.48 feet; Thence S 85°01'57" E 151.75 feet;
Thence S 75°08'47" E 50.66 feet; Thence S 46°04'18" E 222.30 feet;
Thence S 40°39'19" E 131.08 feet; Thence S 34°08'45" E 341.16 feet;
Thence S 38°27'44" E 274.36 feet; Thence S 41°31'55" E 233.49 feet;
Thence S 48°06'25" E 158.91 feet; Thence S 37°26'46" E 110.62 feet;
Thence S 28°44'43" E 125.56 feet; Thence S 38°01'01" E 58.60 feet;
Thence S 52°06'20" E 55.05 feet; Thence S 58°52'48" E 78.08 feet;
Thence S 55°09'46" E 52.81 feet; Thence S 45°01'13" E 47.79 feet to a 1/2" pipe (found);
Thence leaving the said road and going with the State of Tennessee property S 08°38'36" W 2984.32 feet to a point in the center of Glade Creek;
Thence leaving the State property and going with Equestrian Village at Long Branch Lakes generally following the meanders of the said creek N 78°35'52" W 204.49 feet;
Thence N 36°45'39" W 117.72 feet; Thence N 01°25'05" W 186.03 feet;
Thence N 51°31'55" W 143.26 feet; Thence N 60°52'17" W 282.26 feet;
Thence N 46°05'54" W 166.06 feet; Thence N 46°05'54" W 58.01 feet;
Thence N 42°30'58" W 290.70 feet; Thence N 31°12'05" W 243.48 feet to the intersection of Glade Creek and a smaller branch;

Thence leaving Glade Creek and continuing with the meanders of the branch N 79°29'38" W 244.49 feet;
Thence S 01°09'29" W 379.91 feet; Thence N 89°55'52" W 207.83 feet;
Thence N 36°23'30" W 279.90 feet; Thence N 41°34'17" W 203.90 feet;
Thence N 83°00'23" W 197.89 feet; Thence N 43°55'52" W 131.82 feet;
Thence N 28°32'52" W 108.86 feet; Thence S 80°28'10" W 50.15 feet;
Thence N 34°57'45" W 116.17 feet; Thence N 44°48'37" W 88.67 feet to a point the branch; Thence leaving the said branch and going with the northern right-of-way of Long Branch Road N 11°03'45" W 12.53 feet;
Thence N 20°32'27" E 129.78 feet; Thence N 14°29'49" E 220.36 feet;
Thence N 00°31'02" E 76.20 feet; Thence N 21°16'54" W 179.98 feet;
Thence N 03°01'07" W 120.44 feet; Thence N 06°12'14" E 111.41 feet;
Thence N 01°32'36" E 97.39 feet; Thence N 08°53'45" E 45.71 feet;
Thence N 13°20'58" E 58.06 feet; Thence along a curve having an arc length of 134.56 feet, with a radius of 224.01 feet, and a chord of N 08°03'30" W 132.55 feet;
Thence N 30°46'16" W 59.12 feet; Thence N 36°44'37" W 180.85 feet;
Thence N 41°35'34" W 111.38 feet; Thence N 43°30'37" W 123.42 feet;
Thence N 46°18'42" W 226.59 feet; Thence N 46°46'35" W 143.90 feet;
Thence N 50°07'11" W 302.21 feet; Thence N 74°07'15" W 210.55 feet;
Thence N 49°29'44" W 93.00; Thence N 41°40'13" W 93.01;
Thence N 29°32'09" W 286.32 feet; Thence N 31°02'50" W 503.91 feet;

ECOVEST-DOJ_0222490

Excerpts from Glade Creek Appraisal

Introduction

Thence N 07°32'07" W 284.31 feet; Thence N 12°25'07" W 84.29 feet;
Thence N 09°30'55" W 97.71 feet; Thence N 20°52'13" W 58.26 feet;
Thence along a curve having an arc length of 156.89 feet, with a radius of 140.78 feet, and a chord of
N 64°26'47" W 148.89 feet;
Thence S 82°58'45" W 42.54 feet;
Thence N 88°12'16" W 39.05 feet; Thence N 73°58'23" W 42.46 feet;
Thence N 59°56'19" W 132.75 feet; Thence N 40°53'58" W 59.56 feet;
Thence N 60°27'01" W 25.37 feet; Thence N 39°19'31" E 491.95 feet to the PC of a circular curve to
the left, having a radius of 2475.00 feet;
Thence along said circular curve for an arc distance of 1954.28 feet, thru a central angle of 45°14'29"
to the PT of said circular curve;
Thence N 05°54'57" W 127.60 feet, Thence S 72°12'00" E 1898.26 feet to the point of beginning
(being 371.5 acres as surveyed by Christopher M. Vick R.L.S. #2164 and revised on Nov. 25 2011).

**There is further conveyed herewith all easements and rights** appurtenant or related to the real
property conveyed herein, and there is also conveyed by Grantor to Grantee mutual, non-exclusive
rights to all easements and roads within Grantor's subdivision, but subject, however, to applicable
restrictions pertaining to the same, for ingress, egress and utilities for the mutual use and benefit of
said subdivision and the real property conveyed above, to run with the land forever.

Said easements, for the purposes described above, shall run with the land forever.  Grantee, its
successors, representatives and assigns shall neither block nor gate the easements in any fashion, and
Grantee shall be responsible for reasonable reimbursements to Grantor, its successors, representatives
and assigns, for all expenses and costs related directly or indirectly to repair and maintenance of said
easements as a result of damages or degradation of the easements related directly or indirectly to

activities of Grantee, its successors, representatives or assigns, and their respective agents and
invitees, upon or along said easements, except for that resulting from normal use unrelated to forestry
or natural resource activity.  By its recordation of this instrument, Grantee binds itself and its
successors, representatives and assigns to these covenants.

**The real property conveyed herein is part of the same property acquired by Grantor by virtue
of a deed at Book 193, page 329, Register's Office, Bledsoe County, Tennessee.**

**This instrument and the real property conveyed herein are made further subject to** the
following encumbrances, exclusions, and matters of record regarding which neither warranty nor
certification are given by Grantor to Grantee, and which matters are believed in good faith to affect
the real property conveyed herein:  (a) all mineral rights reserved by predecessors in title, including
without limitation, all mineral reservations and other matters of record in Warranty Deed Book 8,
page 552, Register's Office, Van Buren County, Tennessee; and, (b) all easements and matters of
record in Book WD12, page 702, said Register's Office; all of the aforesaid instruments being
incorporated herein by reference thereto as if copied herein verbatim.

ECOVEST-DOJ_0222491

Excerpts from Glade Creek Appraisal

Introduction

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These types of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development, such as a valley with level to moderately sloping land for home and amenity

ECOVEST-DOJ_0222502

Excerpts from Glade Creek Appraisal

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 371.5+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Glade Creek, LLC

*Taxes*



**Improvements**

None

ECOVEST-DOJ_0222506

Excerpts from Glade Creek Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the subject property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
    On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
    On-Site: No; Adjacent: No
- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":      On-Site: No; Adjacent: No
- Observed noticeable odors:      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 371.5 +- acres, of which approximately 371.5 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0222516

Excerpts from appraisal of: Greenway

Document ID: ECOVEST-DOJ_0116209

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 30, 2013

Ralph Teal
The Teal Company
ralph@thetealcompany.com

RE:   Conservation Easement Greenway Tract
       Georgetown County, South Carolina
       Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
       Market Value of the Easement Gift

Dear Mr. Teal:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Self Contained
Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of
Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the
Assumptions and Limiting Conditions contained within this report. This report has been
prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue
Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as
follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations
is the price at which the property would change hands between a willing buyer and a willing
seller, neither being under any compulsion to buy or sell and both having reasonable knowledge
of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

1

ECOVEST-DOJ_0116209

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the Subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2013, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 318.33 | $31,154,891 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2013 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value – Land Only (Encumbered) | 318.33 | $1,500 | $477,495 |

The value of the easement gift as of December 30, 2013 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 318.33 |  | $31,154,891 |
| Less | | | |
| After Value – Land Only (Encumbered) | 318.33 | $1,500 | $477,495 |
| Value of the Easement | | rounded | **$30,677,000** |

The Subject Property will have four (4) reserved homesites. These sites are not build ready; they would require prep and clearing, as well as they have no utilities, no access, and no approvals from NALT or other governing authorities. Due to these facts, I do not feel that these sites deserve a value over and above that of the encumbered per acre value of the property. These sites also due not warrant any enhancement due to these same facts.

ECOVEST-DOJ_0116210

Excerpts from Greenway Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                        State Certified General Real Property Appraiser
SC License #6678

ECOVEST-DOJ_0116211

## Table of Contents

Certification .................................................................................................................................... 6

Summary of the Appraisal ............................................................................................................ 7

Assumptions and Limiting Conditions ........................................................................................ 8

Legal Descriptions and Maps .................................................................................................... 11

INTRODUCTION: ....................................................................................................................... 25

Scope of the Assignment ............................................................................................................ 26

    *Competency Provision* ......................................................................................................... 31

    *Appraisal of the Larger Parcel:* ........................................................................................ 32

    *Identification of the Subject Property* .............................................................................. 33

    *Prior Sales History* ............................................................................................................ 33

    *Ownership* ........................................................................................................................... 33

    *Improvements* ...................................................................................................................... 33

    *Taxes* .................................................................................................................................... 33

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ............................. 36

SECTION I. .................................................................................................................................... 52

APPRAISAL OF THE BEFORE VALUE ...................................................................................... 52

    *Highest and Best Use Analysis:* ......................................................................................... 53
        *a)*   *Legally Permissible* ........................................................................................... 54
        *b)*   *Physically Possible* ............................................................................................ 54
        *c)*   *Financially Feasible* ......................................................................................... 54
        *d)*   *Maximally Productive* ....................................................................................... 55
        *e)*   *Sufficiency of Demand* ...................................................................................... 55
        Conclusion ................................................................................................................. 55

    *Land Valuation:* .................................................................................................................. 56

Section I.   PURPOSE AND SCOPE OF ANALYSIS .................................................................. 57

Section II.     PROJECT DESCRIPTION .......................................................................... 60
    *Conclusion* ........................................................................................................................ 101

SECTION II ................................................................................................................................. 105

APPRAISAL OF THE AFTER VALUE ...................................................................................... 105

    *Highest and Best Use Analysis:* ....................................................................................... 116
        a)   Legal permissibility ............................................................................................ 117
        b)   Physical possibility and suitability .................................................................... 117
        c)   Financial feasibility ........................................................................................... 117
        d)   Maximum productivity ........................................................................................ 117
        e)   Sufficiency of demand ......................................................................................... 117
        Conclusion: ............................................................................................................. 118

    *Land Valuation* ................................................................................................................. 119

ECOVEST-DOJ_0116212

Excerpts from Greenway Appraisal

Sales Comparison Approach ........................................................................................................... 119

*Estimate of the After Value:* ................................................................................................... *196*

**Reconciliation** ............................................................................................................................ **197**

**Addenda** ...................................................................................................................................... **198**

QUALIFICATIONS OF CLAUD CLARK III ........................................................................ 199
License .......................................................................................................................................... 201
Easement and Baseline Documents ........................................................................................ 202

ECOVEST-DOJ_0116213

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have not prepared an appraisal of the subject property in the last five (5) years.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
SC License #6678

State Certified General Real Property Appraiser

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located approximately two miles southeast of the city of Georgetown in Georgetown County, South Carolina.  It is located off Pennyroyal Road. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 30, 2013 |
| **Date of Value Estimates:** | December 30, 2013 |
| **Date of Donation** | December 30, 2013 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | Planned Development District (PD) |
| **Site:** | 332.76 Acres |
| **Easement:** | 318.33 Acres |
| **Reserved:** | Road 14.43 Acres; Four (4) homesites |
| **Total:** | 332.76 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:Residential / Resort Development<br>After:  Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0116215

Excerpts from Greenway Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0116216

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0116217

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

**Legal Descriptions and Maps**

ECOVEST-DOJ_0116219

Excerpts from Greenway Appraisal

LEGAL

ECOVEST-DOJ_0116220

Excerpts from Greenway Appraisal

| Id | Bearing | Distance |
|----|---------|----------|
| L1 | | |

| Id | Bearing | Distance |
|----|---------|----------|

| Id | Bearing | Distance |
|----|---------|----------|

| Id | Radius | Arc Length | Chord | Ch Bear |
|----|--------|-----------|-------|---------|

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0116221

Excerpts from Greenway Appraisal



ECOVEST-DOJ_0116222

Introduction

Appraised Subject consists of 349 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining lot sales which are generally similar to the Subject,
which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the
assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful
development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties
may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales
of these properties may be limited not because of market conditions but because of physical or
locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These
types of properties are best evaluated using a DCF method. Additionally, access to main line
utilities is important

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF,
income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under
current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property.

ECOVEST-DOJ_0116236

Excerpts from Greenway Appraisal

## Identification of the Subject Property

The Subject Property consists of a parcel of land located off Pennyroyal Road, approximately two miles southeast of the city of Georgetown in Georgetown County, South Carolina. The property's eastern boundary is Turkey Creek, which intersects with The Sampit River approximately two miles above Georgetown Harbor.

### Prior Sales History

There has been no sale involving the tract within the last three years. The Subject is not currently listed for sale.

### Ownership

Ranbat, LLC

### Improvements

None

### Taxes



| Year | Land Value | Building Value | Yard Item Value | Total Market Value | Ag Credit | Taxable Land Value | Total Taxable Value | Capped Taxable Value | Total Assessment | Taxes |
|------|-----------|----------------|-----------------|-------------------|-----------|--------------------|--------------------|---------------------|------------------|-------|
| 2012 | $ 704,000 | $ 0 | $ 0 | $ 704,000 | $ 0 | $ 704,000 | $ 704,000 | * $ 704,000 | $ 42,240 | $ 9,085.82 |
| 2011 | $ 704,000 | $ 0 | $ 0 | $ 704,000 | $ 0 | $ 704,000 | $ 704,000 | * $ 704,000 | $ 42,240 | $ 9,085.82 |
| 2010 | $ 704,000 | $ 0 | $ 0 | $ 704,000 | $ 0 | $ 704,000 | $ 704,000 | * $ 704,000 | $ 42,240 | $ 9,085.82 |
| 2009 | $ 704,000 | $ 0 | $ 0 | $ 704,000 | $ 0 | $ 704,000 | $ 704,000 | NA | $ 42,240 | $ 8,583.16 |

*This parcel is subject to the value cap.

Excerpts from Greenway Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  - On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  - On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":          On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 318.33 +- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0116257

Excerpts from appraisal of:
Hammersmith Landing

Document ID:
ECOVEST-DOJ_0194025

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 30, 2019

Hammersmith Landing LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Hammersmith Landing, LLC
      368.98 acre tract, Glynn County, Georgia

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or  other guidance.*

1

ECOVEST-DOJ_0194025

Excerpts from Hammersmith Landing Appraisal

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:

*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement.

For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method"** (*IRS in italics*)

*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

ECOVEST-DOJ_0194026

Excerpts from Hammersmith Landing Appraisal

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
*(ii) Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 368.98-acre conservation easement in Glynn County, Georgia. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon**.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

ECOVEST-DOJ_0194027

Excerpts from Hammersmith Landing Appraisal

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of November 29, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement Fee Simple | 368.98 | $47,440,494 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of November 29, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value After the Easement Fee Simple (rounded) | 368.98 | | $590,368 |

The encumbered property also includes four reserved building zones that permit up to six residential building sites and one lodge site. In theory, if taken as separate components of the valuation, the building areas and the remaining eased area that cannot be improved have different values. These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement. It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these

ECOVEST-DOJ_0194028

properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

The Fair Market Value of the easement gift as of November 29, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $47,440,494.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $590,368.  Using the before and after method, the Fair Market Value of the Conservation Easement is $46,850,000 (rounded).

|  | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 368.98 |  | $47,440,494 |
| Total Fair Market Value After the Easement | 368.98 | $1,600 | $590,368 |
| **Fair Market Value of the Easement** |  |  | **$46,850,000** |

 Fair Market Value of the Conservation Easement on the effective date is:

*FORTY-SIX MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0194029

Excerpts from Hammersmith Landing Appraisal

Claud Clark III
State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0194030

Excerpts from Hammersmith Landing Appraisal

## Table of Contents

*Certification* ........................................................................................................................................**9**

**Certification of Appraiser** ...................................................................................................................**9**

**Summary of the Appraisal** .................................................................................................................**11**

**Assumptions and Limiting Conditions** .............................................................................................**12**

**Legal Descriptions and Maps** ...........................................................................................................**15**

**INTRODUCTION:** ...........................................................................................................................**30**

**Scope of the Assignment** ...................................................................................................................**31**

    *Identification of the Subject Property* ..........................................................................................*36*

    *Prior Sales History* ......................................................................................................................*36*

    *Ownership* ...................................................................................................................................*36*

    *Improvements* ..............................................................................................................................*36*

    *Taxes* ...........................................................................................................................................*36*

    *Neighborhood Data – Glynn County, GA* ....................................................................................*39*

**SECTION I** ........................................................................................................................................**52**

**APPRAISAL OF THE BEFORE VALUE** .......................................................................................**52**

    *Highest and Best Use Analysis:* ...................................................................................................*53*
        *a)*   *Legally Permissible* ..........................................................................................................*54*
        *b)*   *Physically Possible* ............................................................................................................*54*
        *c)*   *Financially Feasible* ..........................................................................................................*54*
        *d)*   *Maximally Productive* ........................................................................................................*55*
        *e)*   *Sufficiency of Demand* ......................................................................................................*55*
        Conclusion .............................................................................................................................*55*

    *Land Valuation:* ..........................................................................................................................*58*
        *Discounted Retail Sales Approach* .......................................................................................*58*

**SECTION II** ......................................................................................................................................**98**

**APPRAISAL OF THE AFTER VALUE** ..........................................................................................**98**

    *Highest and Best Use Analysis:* .................................................................................................*116*
        a)   Legal permissibility .............................................................................................................117
        b)   Physical possibility and suitability .......................................................................................117
        c)   Financial feasibility .............................................................................................................117
        d)   Maximum productivity .........................................................................................................117
        e)   Sufficiency of demand .........................................................................................................118
        Conclusion: ...........................................................................................................................118

    *Land Valuation* .........................................................................................................................*119*
        Sales Comparison Approach .................................................................................................119

    *Estimate of the After Value:* ......................................................................................................*126*

ECOVEST-DOJ_0194031

Excerpts from Hammersmith Landing Appraisal

**Reconciliation**................................................................................................................**132**

**Addenda**.......................................................................................................................**134**

    Qualifications ...............................................................................................................134
    License ........................................................................................................................134
    Deed and Title Documents............................................................................................134
    Unit Plans ...................................................................................................................134
    Cost Estimates.............................................................................................................134
    Development Letters .....................................................................................................134
    Demographic Reports ...................................................................................................134
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............134
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ....................................................................................................................................134
    Crystal Lagoon Information and Supporting Documents ...................................................134
    Bowden Report – Before Scenario ..................................................................................134
    Easement ....................................................................................................................134
    Baseline......................................................................................................................134

ECOVEST-DOJ_0194032

*Certification*

## Certification of Appraiser

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0194033

Excerpts from Hammersmith Landing Appraisal

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 21, 019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0194034

Excerpts from Hammersmith Landing Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located off Highway 99 northwest of Brunswick, Glynn County, Georgia. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 30, 2019 |
| **Date of Property Inspection:** | January 21, 2019 |
| **Date of Value Estimates:** | November 29, 2018 |
| **Date of Donation** | November 29, 2018 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | PD, Planned Development |
| **Site:** | 368.98 Acres |
| **Easement:** | 368.98 Acres |
| **Reserved:** | Three Residential Building Zones totaling 6 acres and One 4-Acre Building Zone, located within the easement |
| **Total:** | 368.98 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:    Residential Development<br>After:    Recreational / Green Space with four Building Zones totaling 10 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC    EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0194035

Excerpts from Hammersmith Landing Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Georgia or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0194036

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

ECOVEST-DOJ_0194037

Excerpts from Hammersmith Landing Appraisal

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0194038

Excerpts from Hammersmith Landing Appraisal

**Legal Descriptions and Maps**

Excerpts from Hammersmith Landing Appraisal

Legal Description
Tract 2 Altama Plantation

All of that lot, parcel or tract of land lying and being in the 1356th Georgia Militia District, Glynn County Georgia and being more particularly described as follows:

BEGINNING at a capped iron rebar found on the northerly right-of-way line of Georgia Highway 99 at the southeasterly property corner of a 125' Relocated Road Easement, Altama Plantation (Plat Book 33 Page 67); thence leave said Georgia Highway 99 right-of-way line and proceed with the following courses and distances; thence N 39°59'53" W a distance of 354.50' to an iron rebar found; thence with a curve turning to the left with a radius of 2596.00', a chord bearing of N 48°45'46" W and a chord length of 793.96', thence along the arc of said curve a distance of 802.18' to a point; thence N 57°35'46" W a distance of 514.19' to an iron rebar found; thence with a curve turning to the right with a radius of 1410.00', a chord bearing of N 35°33'28" W and a chord length of 1060.61', thence along the arc of said curve a distance of 1087.57' to an iron rebar found; thence N 13°26'46" W a distance of 295.66' to an iron rebar found; thence with a curve turning to the left with a radius of 1190.00', a chord bearing of N 31°27'12" W and a chord length of 735.65', thence along the arc of said curve a distance of 747.27' to an iron rebar found; thence N 49°32'30" W a distance of 802.09' to an iron rebar found; thence with a curve turning to the right with a radius of 1630.00', a chord bearing of N 46°40'07" W and a chord length of 575.79', thence along the arc of said curve a distance of 582.19' to an iron rebar found; thence N 31°47'54" W a distance of 1693.68' to an iron rebar found; thence with a curve turning to the left with a radius of 1720.00', a chord bearing of N 37°15'26" W and a chord length of 329.43', thence along the arc of said curve a distance of 329.94' to an iron rebar found; thence N 47°22'46" E a distance of 651.53' to an iron rebar found; thence N 67°26'33" W a distance of 182.15' to a concrete monument found; thence N 49°36'26" E a distance of 1108.63' to a concrete monument found; thence S 76°19'23" E a distance of 1871.30' to a capped iron rebar set; thence N 73°35'45" E a distance of 77.51' to a capped iron rebar set; thence S 73°31'53" E a distance of 276.79' to a capped iron rebar set; thence N 77°01'49" E a distance of 72.90' to a capped iron rebar set; thence N 66°00'32" E a distance of 881.19' to a capped iron rebar set; thence with a curve turning to the left with a radius of 725.00', a chord bearing of S 83°54'05" E and a chord length of 77.27', thence along the arc of said curve a distance of 77.31' to a capped iron rebar set; thence with a reverse curve turning to the right with a radius of 406.00', a chord bearing of S 18°27'56" E and a chord length of 318.90', thence along the arc of said curve a distance of 328.84' to a capped iron rebar set; thence with a reverse curve turning to the left with a radius of 600.00', a chord bearing of S 07°04'06" E and a chord length of 251.48', thence along the arc of said curve a distance of 253.34' to a capped iron rebar set; thence S 19°50'55" E a distance of 101.66' to a capped iron rebar set; thence S 17°43'46" W a distance of 273.89' to a capped iron rebar set; thence N 96°45'54" W a distance of 297.73' to a capped iron rebar set; thence S 03°14'06" E a distance of 274.08' to a capped iron rebar set; thence with a curve turning to the left with a radius of 675.00', a chord bearing of S 02°17'53" E and a chord length of 91.62', thence along the arc of said curve a distance of 91.76' to a capped iron rebar set;

488

ECOVEST-DOJ_0194040

Excerpts from Hammersmith Landing Appraisal

thence S 07°50'01" E a distance of 87.72' to a capped iron rebar set;
thence with a curve turning to the right with a radius of 505.00', a
chord bearing of S 04°22'25" E and a chord length of 65.37', thence along
the arc of said curve a distance of 65.41' to a capped iron rebar set;
thence S 66°40'31" E a distance of 358.61' to a capped iron rebar set;
thence S 07°37'50" W a distance of 232.82' to a capped iron rebar set;
thence S 22°03'23" E a distance of 441.33' to a capped iron rebar set;
thence S 61°08'10" E a distance of 368.65' to a capped iron rebar set;
thence S 15°50'41" W a distance of 369.05' to a capped iron rebar set;
thence with a curve turning to the right with a radius of 655.00', a
chord bearing of S 45°56'29" E and a chord length of 849.66', thence
along the arc of said curve a distance of 924.52' to a capped iron rebar
set; thence S 05°30'19" E a distance of 119.33' to a capped iron rebar
set; thence with a curve turning to the left with a radius of 205.00', a
chord bearing of S 52°49'22" E and a chord length of 303.46', thence
along the arc of said curve a distance of 338.60' to a capped iron rebar
set; thence N 73°51'36" E a distance of 117.15' to a capped iron rebar
set; thence with a curve turning to the left with a radius of 600.00', a
chord bearing of S 26°04'08" E and a chord length of 240.08', thence
along the arc of said curve a distance of 241.71' to a capped iron rebar
set; thence S 01°47'46" E a distance of 257.81' to a capped iron rebar
set; thence S 04°42'57" W a distance of 165.15' to a capped iron rebar
set; thence S 32°59'50" W a distance of 338.85' to a capped iron rebar
set; thence S 40°90'29" W a distance of 589.48' to a capped iron rebar
set; thence S 52°06'33" E a distance of 717.69' to a capped iron rebar
set on the right-of-way line of said Georgia Highway 96; thence along
said right-of-way line S 37°53'27" W a distance of 271.47' to a right-of-
way concrete monument found; thence with a curve turning to the right
with a radius of 2657.04', a chord bearing of S 43°28'06" W and a chord
length of 516.49', thence along the arc of said curve a distance of
517.50' to an iron rebar found; thence S 49°04'09" W a distance of
555.65' to the POINT OF BEGINNING; said tract of land having an area of
having an area of 368.990 acres more or less

CLAUD CLARK III, PC

17

ECOVEST-DOJ_0194041

Excerpts from Hammersmith Landing Appraisal

Introduction

Since the property is vacant land with development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed.  Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 368.98-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach Appraisal of Conservation Easements, Appraisal of Land

ECOVEST-DOJ_0194057

Excerpts from Hammersmith Landing Appraisal

**Identification of the Subject Property**

The Subject Property is located off Highway 99, northwest of Brunswick in Glynn County, Georgia. The site contains 368.98 acres.

*Prior Sales History*

There have been no qualified sales or transfers of the subject property within the last three years. The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Hammersmith Landing, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0194060

Introduction

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  - On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  - On-Site: No; Adjacent: No
- Observed staining of soils:           On-Site: No; Adjacent: No
- Observed distressed vegetation:       On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  - On-Site: No; Adjacent: No
- Observed noticeable odors:            On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 368.98 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0194072

Excerpts from Harbor Gate at Seadrift Appraisal

Excerpts from appraisal of:
Harbor Gate at Seadrift

Document ID:
ECOVEST-DOJ_0206112

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

### January 20, 2019

Harbor Gate at Seadrift LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Harbor Gate at Seadrift, LLC
       433.40-acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or other guidance.* I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

1

ECOVEST-DOJ_0206112

Excerpts from Harbor Gate at Seadrift Appraisal

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:
*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

2

ECOVEST-DOJ_0206113

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 433.40-acre conservation easement in Calhoun County, Texas. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***Fair Market Value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

3

ECOVEST-DOJ_0206114

Excerpts from Harbor Gate at Seadrift Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 21, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| **Total Fair Market Value Before the Easement Fee Simple** | 433.40 | **$89,151,855** |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 21, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| **Total Fair Market Value After the Easement Fee Simple (rounded)** | 433.40 | $1,800 | **$780,120** |

The encumbered property also includes three reserved residential building zones. In theory, if taken as separate components of the valuation, the building areas and the remaining eased area that cannot be improved have different values.  These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement.  It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

4

ECOVEST-DOJ_0206115

Excerpts from Harbor Gate at Seadrift Appraisal

The Fair Market Value of the easement gift as of December 21, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $89,151,855.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $780,120.  Using the before and after method, the Fair Market Value of the Conservation Easement is $88,372,000 (rounded).

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 433.40 | | $89,151,855 |
| Total Fair Market Value After the Easement | 433.40 | $1,800 | $780,120 |
| **Fair Market Value of the Easement** | | | **$88,372,000** |

Fair Market Value of the Conservation Easement on the effective date is:

*EIGHTY-EIGHT MILLION THREE HUNDRED SEVENTY-TWO THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
TX License # 1380003

5

498

ECOVEST-DOJ_0206116

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

6

ECOVEST-DOJ_0206117

Excerpts from Harbor Gate at Seadrift Appraisal

# CLAUD CLARK III, P.C.
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

December 21, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

7

ECOVEST-DOJ_0206118

Excerpts from Harbor Gate at Seadrift Appraisal

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Harbor Gate at Seadrift will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

8

ECOVEST-DOJ_0206119

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane  Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will   consume the year ahead, but elements such as refining, petrochemicals and shipping will recover  in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our   society and our economy that continue on as though nothing has happened. Growth in the Texas  market is not going to stop. Many corporations continue to migrate to Texas and to expand. The   energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to  buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump  in growth when rebuilding is added to the already existing demand in Texas, among the  healthiest in the nation. One can also argue that the Texas' coast location has been in a known  hurricane zone for centuries and that the risks associated with the location are baked in and do  not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and  residential migration will continue to occur. The shore will continue to be a magnet. Hurricane  Harvey has no impact on these dynamics. This is the most fundamental truth that should not be  forgotten and is a powerful reason to remain bullish on Texas and its coast.

9

ECOVEST-DOJ_0206120

Excerpts from Harbor Gate at Seadrift Appraisal

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019 and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue. Sincerely,

*Ralph S Bowden*

Ralph S. Bowden President

10

ECOVEST-DOJ_0206121

Excerpts from Harbor Gate at Seadrift Appraisal

# Table of Contents

**Certification of Appraiser** ............................................................................................................13

**Summary of the Appraisal** ............................................................................................................15

**Assumptions and Limiting Conditions** ........................................................................................16

**Legal Descriptions and Maps** ......................................................................................................19

**INTRODUCTION** ........................................................................................................................33

**Scope of the Assignment** ..............................................................................................................34
  *Competency Provision* ..................................................................................................................36

  *Identification of the Subject Property* ..........................................................................................38

  *Prior Sales History* ........................................................................................................................38

  *Ownership* ......................................................................................................................................38

  *Improvements* ................................................................................................................................38

  *Taxes* ..............................................................................................................................................38

  *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ..............................41

**SECTION I** ..................................................................................................................................56

**APPRAISAL OF THE BEFORE VALUE** ..................................................................................56

  *Highest and Best Use Analysis:* ....................................................................................................57
    *a)*    *Legally Permissible* ..........................................................................................................59
    *c)*    *Financially Feasible* ..........................................................................................................59
    *d)*    *Maximally Productive* ......................................................................................................60
    *e)*    *Sufficiency of Demand* ......................................................................................................60
    *Conclusion* ..................................................................................................................................60

  *Land Valuation:* ............................................................................................................................63
    *Discounted Retail Sales Approach* ............................................................................................63

**SECTION II** ................................................................................................................................105

**APPRAISAL OF THE AFTER VALUE** ....................................................................................105
    *b)*    *Physical possibility and suitability* ..................................................................................124
    *c)*    *Financial feasibility* ..........................................................................................................124
    *d)*    *Maximum productivity* ......................................................................................................124
    *e)*    *Sufficiency of demand* ......................................................................................................125
    *Conclusion:* ................................................................................................................................125

11

ECOVEST-DOJ_0206122

*Land Valuation* ............................................................................................................................... *126*

  *Sales Comparison Approach* ........................................................................................................ *126*

*Estimate of the After Value:* ............................................................................................................ *135*

**Reconciliation Reconciliation and Appraisal of the Easement** ............................................ **141**

**Addenda** ........................................................................................................................................ **145**

  *Qualifications* ............................................................................................................................... *145*

  *License'* ......................................................................................................................................... *145*

  *Deed and Title Documents* .......................................................................................................... *145*

  *Unit Plans* ..................................................................................................................................... *145*

  *Cost Estimates* ............................................................................................................................. *145*

  *Development Letters* .................................................................................................................... *145*

  *Demographic Reports* .................................................................................................................. *145*

  *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue* ........... *145*

  *Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue* .......... *145*

  *Crystal Lagoon Information and Supporting Documents* ........................................................ *145*

  *Bowden Report – Before Scenario* ............................................................................................ *145*

  *Easement* ...................................................................................................................................... *145*

  *Baseline* ......................................................................................................................................... *145*

12

ECOVEST-DOJ_0206123

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

13

ECOVEST-DOJ_0206124

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License # 1380003

14

ECOVEST-DOJ_0206125

Excerpts from Harbor Gate at Seadrift Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of Texas State Highway 185, south of Texas State Highway 35, in the village of Seadrift, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 20, 2019 |
| **Date of Inspection:** | January 18, 2019 |
| **Date of Value Estimates:** | December 21, 2018 |
| **Date of Donation** | December 21, 2018 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 433.40 Acres |
| **Easement:** | 433.40 Acres |
| **Reserved:** | Three Reserved Building Zones located within the easement, totaling 7.5 acres |
| **Total:** | 433.40 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:     Recreational / Green Space with three residential building zones, totaling 7.5 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Claud Clark III, PC          EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

15

ECOVEST-DOJ_0206126

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

16

ECOVEST-DOJ_0206127

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

17

ECOVEST-DOJ_0206128

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

18

ECOVEST-DOJ_0206129

## Legal Descriptions and Maps

**433.40 ACRES**

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

**BEING** a 433.40 acre tract of land situated in the Miguel Castillo Survey, Abstract No. 7, Calhoun County, Texas, being a portion of a called 451.59 acre tract of land described by Special Warranty Deed dated September 12, 2018, conveyed from Guadalupe Delta Bay Resort, LLC to VBC Calhoun Partners I, LLC as recorded in Instrument No. 2018-03328 of the Official Public Records, Calhoun County, Texas, and same being all of Tract 1, a called 258 acres, Tract 2, a called 144.32 acres, and Tract 3, a called 19.8 acres described by Instrument from George Pinckney,, et al to Forestar (USA) Real Estate Group, Inc. as recorded in Instrument No. 102847 of the Official Public Records, Calhoun County, Texas, said 433.40 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at a found 5/8" steel rebar along the southwest line of State Highway No. 185 (a 120-foot Right-of-Way) marking the west corner of a called 1.463 acre tract of land described by Instrument to the State of Texas as recorded in Volume 43, Page 336 of the Deed Records, Calhoun County, Texas corner, same being an angle point along the northwest line of the remaining portion of a called 1033.74 acre tract of land described by Instrument to Guadalupe Delta Bay Resort, LLC as recorded in Instrument No. 130845 of the Official Public Records, Calhoun County, Texas, and being the east corner of a called 582.15 acre tract of land described by Instrument to Forestar (USA) Real Estate Group, Inc. as recorded in Instrument No. 102992 of the Official Public Records, Calhoun County, Texas for the north corner of the herein described tract;

**THENCE**, South 33°34'32" East, along the southwest right-of-way line of said State Highway No. 185, same being the southwest line of the aforesaid 1.463 acre tract, with the northeast line of said 451.59 acre tract, a distance of 2510.33 feet to a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the south corner of a called 1.977 acre tract of land described by Instrument to the State of Texas as recorded in Volume 43, Page 337 of the Deed Records, Calhoun County, Texas, same being along the southeast line of the aforesaid Tract 1, and being the north corner of a called 505.92 acre tract of land described by Instrument to MIG Land West, L.P. as recorded in Instrument No. 106749 of the Official Public Records, Calhoun County, Texas for the east corner of the herein described tract;

**THENCE**, South 52°54'47" West, departing the southwest right-of-way line of said State Highway No. 185, with a common line between said 451.59 acre tract and the aforesaid 505.92 acre tract, a distance of 7440.66 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for the south most corner of the herein described tract;

**THENCE**, North 53°01'55" West, over and across said 451.59 acre tract, a distance of 1223.86 feet to a point along the west line of said 451.59 acre tract and being along the Intracoastal Waterway (Barge Canal) for the southwesterly corner of the herein described tract;

**THENCE**, with the meanders of the original property line, same being the west line of said 451.59 acre tract, the following courses and distances:

- North 07°06'03" East, a distance of 205.26 feet to an angle point for the herein described tract;

- North 00°02'41" East, a distance of 380.16 feet to an angle point for the herein described tract;

- North 75°43'38" West, a distance of 38.31 feet to an angle point for the herein described tract;

1

19

ECOVEST-DOJ_0206130

Excerpts from Harbor Gate at Seadrift Appraisal

- North 13°53'38" West, a distance of 180.05 feet to an angle point for the herein described tract;

- North 04°26'22" East, a distance of 324.59 feet to an angle point for the herein described tract;

- North 23°09'38" West, a distance of 174.35 feet to an angle point for the herein described tract;

- North 10°02'38" West, a distance of 305.94 feet to a point for the west corner of the herein described tract;

**THENCE,** North 52°55'09" East, with a northwest line of said 451.59 acre tract, at a distance of 204.70 passing the south corner of the aforementioned 582.15 acre tract, at a distance of 1345.29 feet passing a found 5/8" steel rebar with plastic cap stamped "G&W" for reference, and continuing for a total distance of 7115.24 feet to the **POINT OF BEGINNING, CONTAINING** within these metes and bounds a 433.40 acre tract of land, more or less, of which 2.49 acres lies within the Intracoastal Waterway Easement.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204). This survey was adjusted using a combined scale factor of 1.00001057421009 (GEOID 12A).

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in August, 2018 and are true and correct to the best of my knowledge and belief.

10/14/2018

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S22773.00

2

513

20

ECOVEST-DOJ_0206131

Excerpts from Harbor Gate at Seadrift Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data. The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with potential development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such

CLAUD CLARK III,

35

ECOVEST-DOJ_0206146

as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 433.40-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach
Appraisal of Conservation Easements, Appraisal of Land

Intended User

The term "intended user" is defined by USPAP as: "The client and any other party as identified, by name or type, as users of the appraisal, appraisal review, or consulting report, by the appraiser based on communication with the client at the time of the assignment".

This appraisal has been prepared for Harbor Gate at Seadrift, LLC, The IRS, and the client's tax advisors.

Intended Use

ECOVEST-DOJ_0206147

Introduction

## Identification of the Subject Property

The subject is located on the south side of Texas State Highway 185, south of Texas State Highway 35, in the village of Seadrift, Calhoun County, Texas. The site contains 433.40 acres.

### *Prior Sales History*

There have been no qualified sales or transfers of the Subject Property within the last three years.  The Subject is not currently listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found  no sales of the subject property within the past three years.  However, I am aware that the  majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

### *Ownership*

Harbor Gate at Seadrift, LLC

### *Improvements*

None

### *Taxes*

CLAUD  CLARK III,

38

ECOVEST-DOJ_0206149

Excerpts from Harbor Gate at Seadrift Appraisal

Introduction

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:            On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:             On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 433.40 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0206163

# Excerpts from appraisal of: Hickory Equestrian

# Document ID: ECOVEST-DOJ_0332645

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

January 24, 2012

Mr. Edmund Cash, Manager
Hickory Equestrian, LLC
P.O. Box 2579
Rome, GA 30165

Dear Mr. Cash:

RE:   Conservation Easement Hickory Equestrian
      Dade County, Georgia
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0332645

Excerpts from Hickory Equestrian Appraisal

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2011, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 305.4 | $6,718,111 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2011 is:



| Fee Simple Interest with Encumbrance | 303.4 | $1,000 | $303,400 |
|---|---|---|---|

The subject property has one (1) reserved home site. While the home site cannot claim ownership of the conservation easement area, it can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 20% enhancement to the reserved lot.

The value of the easement gift as of December 30, 2011 is as follows and is based up on the before and after value.

ECOVEST-DOJ_0332646

Excerpts from Hickory Equestrian Appraisal

| | | | | |
|---|---|---|---|---|
| Fee Simple Interest         Before | 305.4 | | $6,718,111 |
| Less | | | |
| Fee Simple Interest with Encumbrance | 303.4 | $1,000 | $303,400 |
| Less | | | |
| One Lot Plus Enhancement | | | $48,000 |
| | | | |
| Value of the Easement | | rounded | $6,366,711 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0332647

Excerpts from Hickory Equestrian Appraisal

## Table of Contents

**Certification** .......................................................................................................................... 6

**Summary of the Appraisal** ..................................................................................................... 7

**Assumptions and Limiting Conditions** ................................................................................. 8

**Legal Descriptions and Maps** ............................................................................................... 11

**INTRODUCTION:** .................................................................................................................. 18

    *Scope of the Assignment* ......................................................................................................... 19

    *Competency Provision* ............................................................................................................. 23

    *Appraisal of the Larger Parcel:* ............................................................................................. 24

    *Identification of the Subject Property* ................................................................................... 25
        Prior Sales History ................................................................................................................ 25
        Ownership ............................................................................................................................. 25
        Taxes .................................................................................................................................... 25
        Improvements ....................................................................................................................... 25

    *General Area Analysis:* ........................................................................................................... 26

    *Neighborhood Data – Chattanooga, TN* ............................................................................. 29

    *Chattanooga, TN Demographics* .......................................................................................... 32

**SECTION I.** ............................................................................................................................. 40

**APPRAISAL OF THE FEE SIMPLE INTEREST** ............................................................. 40

    *Highest and Best Use Analysis:* ............................................................................................. 41
        a)   *Legally Permissible* ................................................................................................. 42
        b)   *Physically Possible* ................................................................................................. 42
        c)   *Financially Feasible* ............................................................................................... 42
        d)   *Maximally Productive* ............................................................................................ 43
        e)   *Sufficiency of Demand* ........................................................................................... 43
        Conclusion ............................................................................................................................ 43
        Hypothetical Condition ......................................................................................................... 43

    *Land Valuation:* ...................................................................................................................... 44

**SECTION II** ............................................................................................................................ 62

**APPRAISAL OF THE EASEMENT** ..................................................................................... 62
        a)   Legal permissibility ................................................................................................. 65
        b)   Physical possibility and suitability .......................................................................... 65
        c)   Financial feasibility ................................................................................................. 65
        d)   Maximum productivity ............................................................................................. 65
        e)   Sufficiency of demand .............................................................................................. 65
        Conclusion: ........................................................................................................................... 66

    *Land Valuation:* ...................................................................................................................... 67
        Sales Comparison Approach ................................................................................................. 67

**Reconciliation** ........................................................................................................................ 88

**Addenda** ................................................................................................................................. 90

ECOVEST-DOJ_0332648

Excerpts from Hickory Equestrian Appraisal

*QUALIFICATIONS OF CLAUD CLARK III*.................................................................................*91*

*License*..................................................................................................................................*93*

*Planning Certificate:* ..........................................................................................................*94*

*Easement and Baseline Documents* ......................................................................................*95*

ECOVEST-DOJ_0332649

Excerpts from Hickory Equestrian Appraisal

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject the appraiser to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                          State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0332650

Excerpts from Hickory Equestrian Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located in Dade County, Georgia. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 24, 2012 |
| **Date of Value Estimates:** | December 30, 2011 |
| **Date of Donation** | December 30, 2011 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 305.4 Acres |
| **Easement:** | 303.4 Acres |
| **Reserved:** | One 2-acre Building Site |
| **Total:** | 305.4 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:     Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0332651

Excerpts from Hickory Equestrian Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>**Limited Publication, Distribution, and Use of This Report**</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>**Limited Disclosure to the Public through the Media**</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>**Limited Disclosure of the Report by the Appraiser**</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>**Information Furnished is Assumed to be Accurate**</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>**Limited Use of Exhibits**</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0332652

Excerpts from Hickory Equestrian Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0332653

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0332654

Excerpts from Hickory Equestrian Appraisal

## Legal Descriptions and Maps

A Tract of land lying and being in Land Lot Nos. 138 (portion), S ½ of 139, S ½ of 140, 141 (Portion), 143(Portion), and 144(Portion), in the 18th District and 4th Section of Dade County, Georgia, being more particularly described as follows; (Reference Deed Book 281 Pg 328 and 330 and Deed Book 337 Pg 163)

Beginning at the Southwest corner of said land lot 141, said point being on the Georgia-Alabama State Line;

Thence with the said Georgia-Alabama State Line and the West Line of said Land Lot 141, N08°40'31"W 2890.38 feet to the Southwest corner of said Land Lot 140;

Thence continue with the said Georgia-Alabama State Line and the West Line of said Land Lot 140, N08°40'31"W 1330.85 feet to the Northwest corner of the S 1/2 of said Land Lot 140;

Thence with the North Line of the S ½ of said Land Lot 140, S88°51'48"E 253.20 feet to the Northwest corner of the S ½ of said Land Lot 139;

Thence with the North Line of the South ½ of said Land Lot 139, S88°04'53"E 2682.83 feet to the Northwest corner of the South ½ of said Land Lot 138;

Thence with the North Line of the South ½ of said Land Lot 138, S89°38'01"E 1212.31 feet to a point West of the Public road running North and South through said Land Lot 138;

Thence with the West border of said Public road, S21°02'13"W 409.12 feet;

Thence continuing with the West border of said Public road, S23°55'43"W 983.13 feet to a point on the South Line of said Land Lot 138

Thence with the South Line of said Land Lot 138 and 139, N88°51'48"W 1025.68 feet;

Thence S00°34'49"E 2783.39 feet; Thence N89°13'04"E 790.08 feet;

Thence S03°57'50"E 345.61 feet; Thence S05°43'21"E 512.42 feet;

Thence S47°25'02"W 501.32 feet; Thence S84°14'08"W 406.83 feet;

Thence N67°54'48"W 353.84 feet; Thence N59°51'04"W 694.43 feet;

Thence N66°31'18"W 439.65 feet; Thence N37°20'41"W 483.76 feet;

Thence S89°12'55"W 45.85 feet to the Point of Beginning. (containing 305.4 acres more or less)

ECOVEST-DOJ_0332655

Excerpts from Hickory Equestrian Appraisal

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for outdoor recreation oriented subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another

CLARK ~ DAVIS, PC

21

ECOVEST-DOJ_0332665

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Dade County, Georgia. The site contains 305.4+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Hickory Equestrian, LLC

### Taxes



### Improvements

None

ECOVEST-DOJ_0332669

Site Data

- Observed staining of soils:      On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":      On-Site: No; Adjacent: No
- Observed noticeable odors:      On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 305.4 +- acres, of which approximately 305.4 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0332682

Excerpts from Hickory Preserve Appraisal

# Excerpts from appraisal of: Hickory Preserve

# Document ID: ECOVEST-DOJ_0121566

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 19, 2014

Donald Johnson
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:   Conservation Easement Hickory Preserve
      Chester County, South Carolina
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Johnson:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

1

ECOVEST-DOJ_0121566

Excerpts from Hickory Preserve Appraisal

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 19, 2014, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
| --- | --- | --- |
| Before Value (Unencumbered) | 1732.82 | $68,219,116 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 19, 2014 is:

|  | Acres | Value/Acre | FMV |
| --- | --- | --- | --- |
| After Value – Land Only (Encumbered) | 1732.82 | $1,000 | $1,732,820 |

ECOVEST-DOJ_0121567

Excerpts from Hickory Preserve Appraisal

The value of the easement gift as of December 19, 2014 is as follows and is based upon the before and after value.  In determining the market nature of a conservation easement, the before and after is a recognized technique.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 1732.82 |  | $68,219,116 |
| Less |  |  |  |
| After Value (Encumbered) | 1732.82 | $1,000 | $1,732,820 |
|  |  |  |  |
| Value of the Easement |  | rounded | $66,486,000 |

There are seven (7) areas designated for the construction of residences and related residential uses. The property can be subdivided into the same number of parcels as there are building lots. The parcels that result from the subdivision must contain a building area. There is no minimum or maximum size.   Based upon the review of other easements, the value of these sites does not warrant a value over and above the price per acre. There is no enhancement.

ECOVEST-DOJ_0121568

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0121569

Excerpts from Hickory Preserve Appraisal

## Table of Contents

Certification .................................................................................................................................8

Summary of the Appraisal ..........................................................................................................9

Assumptions and Limiting Conditions ....................................................................................10

Legal Descriptions and Maps ...................................................................................................13

INTRODUCTION: .......................................................................................................................31

Scope of the Assignment ...........................................................................................................32

    *Competency Provision* ...........................................................................................................*36*

    *Appraisal of the Larger Parcel:* ...........................................................................................*37*

    *Identification of the Subject Property* ..................................................................................*38*

    *Prior Sales History* ...............................................................................................................*38*

    *Ownership* ..............................................................................................................................*38*

    *Improvements* .........................................................................................................................*38*

    *Taxes* ......................................................................................................................................*38*

    *Neighborhood Data – Greater Charlotte, North Carolina* ..................................................*40*

SECTION I ..................................................................................................................................49

APPRAISAL OF THE BEFORE VALUE .....................................................................................49

    *Highest and Best Use Analysis:* ............................................................................................*50*

        *a)*   *Legally Permissible* ........................................................................................*51*

        *b)*   *Physically Possible* .........................................................................................*51*

        *c)*   *Financially Feasible* .......................................................................................*51*

        *d)*   *Maximally Productive* ......................................................................................*52*

        *e)*   *Sufficiency of Demand* ....................................................................................*52*

        Conclusion .................................................................................................................52

    *Land Valuation:* ...................................................................................................................*53*

        *Discounted Retail Sales Approach* ...........................................................................*53*

SECTION II ...............................................................................................................................120

APPRAISAL OF THE AFTER VALUE ......................................................................................120

    *Highest and Best Use Analysis:* ..........................................................................................*126*

        *a)*   Legal permissibility .........................................................................................127

        *b)*   Physical possibility and suitability ..................................................................127

        *c)*   Financial feasibility .........................................................................................127

        *d)*   Maximum productivity ......................................................................................127

        *e)*   Sufficiency of demand ......................................................................................127

        Conclusion: ...............................................................................................................128

    *Land Valuation* ...................................................................................................................*129*

        Sales Comparison Approach .....................................................................................129

    *Estimate of the After Value:* ................................................................................................*156*

Reconciliation ...........................................................................................................................157

ECOVEST-DOJ_0121570

**Addenda**............................................................................................................................**158**

    Qualifications...........................................................................................................................158

    License......................................................................................................................................158

    Land Design Letters..................................................................................................................158

    Bond Letters..............................................................................................................................158

    POA Letter and Budget............................................................................................................158

    Addendum to Market Analysis and Development Recommendations Report.............................158

    Letter of Good Standing............................................................................................................158

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............158

    Easement...................................................................................................................................158

    Baseline....................................................................................................................................158

ECOVEST-DOJ_0121571



*Delaware*

PAGE 1

*The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "HICKORY PRESERVE, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE FOURTEENTH DAY OF MARCH, A.D. 2014.

5178692   8300

140332252

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1208693

DATE: 03-14-14

231

ECOVEST-DOJ_0121572

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- The reported analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of the report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized members.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0121573

Excerpts from Hickory Preserve Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the east side of Interstate 77, south of Richburg in Chester County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 19, 2014 |
| **Date of Value Estimates:** | December 19, 2014 |
| **Date of Donation** | December 19, 2014 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | EDD, Economic Development District |
| **Site:** | 1732.82 Acres |
| **Easement:** | 1732.82 Acres |
| **Reserved:** | Seven (7) reserved areas. |
| **Total:** | 1732.82 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:   Residential Development<br>After:    Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0121574

Excerpts from Hickory Preserve Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0121575

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0121576

Excerpts from Hickory Preserve Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0121577

**Legal Descriptions and Maps**

ECOVEST-DOJ_0121578

Excerpts from Hickory Preserve Appraisal

LEGAL

## TRACT 1:

(Interstate Land & Timber, LLC to Hickory Preserve, LLC)

TRACT 1:

All that certain piece, parcel or lot of land containing 20 acres, more or less, situate, lying and being in the County of Chester, in the State of South Carolina, as shown and designated on a plat entitled "INTERSTATE LAND AND TIMBER, LLC" made April 19, 2005, by Carolina Surveyors, Inc. and recorded in Plat Cabinet ▮▮ Slide 70, Page 1 in the Office of the Clerk of Court for Chester County, South Carolina.

For a more complete description as to courses and distances, metes and bounds, reference is directed to the aforementioned plat which is made a part hereof.

This being the same property conveyed to Interstate Land & Timber, LLC by Linda A. Berne by Deed dated April 29, 2005, and recorded April 29, 2005 in Book 889, Page 3.

Tax Parcel Number: 126-00-00-153.

TRACT 2:

An **undivided 20% interest** in that certain piece, parcel or tract of land, situate and being in Chester County, State of South Carolina, containing 177.640 acres, more or less, as shown on a plat entitled "THE CARLTON TRACTS, SURVEYED FOR INTERSTATE LAND AND TIMBER, LLC" made January 29, 2007, by Carolina Surveyors, Inc., and recorded in Plat Cabinet D, Slide 102, Page 7 in the Office of the Clerk of Court for Chester County, South Carolina.

Said tract fronts on Martin Grave Road (gravel road) and is bounded generally on the north by property now or formerly owned by Allen & Patricia Beer and property now or formerly owned by Gregory K. Beer; on the east by properties now or formerly owned by Belinda Raffaldt and Bruce & Adrianna Reid; on the south by property now or formerly owned by SFG Dragonfly, LLC and other property of Janice Carlton; and on the west by property now or formerly owned by Plum Creek Timberlands and Interstate Land and Timber, LLC.

For a more complete description as to courses and distances, metes and bounds, reference is directed to the aforementioned plat which is made a part hereof.

This being a portion of the property conveyed by Janice B. Carlton to Longview Enterprises Associates, LLC and Interstate Land & Timber, LLC by Deed dated March 5, 2007 and recorded March 7, 2007 in Book 938 at Page 185 in the Office of the Clerk for Chester County, South Carolina.

Tax Parcel Number: 128-00-00-12.

ECOVEST-DOJ_0121579

Excerpts from Hickory Preserve Appraisal

## TRACT 3:

An **undivided 20% interest** in that certain, piece, parcel or tract of land, situate and being in Chester County, State of South Carolina, containing 152.381 acres, more or less, as shown on a plat entitled "THE CARLTON TRACTS, SURVEYED FOR INTERSTATE LAND AND TIMBER, LLC" made January 29, 2005 by Carolina Surveyors, Inc. and recorded in Plat Cabinet D, Slide 102, Page 7 in the Office of the Clerk of Court for Chester County, South Carolina.

Said tract is bounded generally on the north by property now or formerly owned by Plum Creek Timberlands and SFG Dragonfly, LLC; on the east by property now or formerly owned by SFG Dragonfly, LLC; on the south by Rocky Creek and property now or formerly owned by Robert & Catherine Reeves; and on the west by Rocky Creek and property now or formerly owned by John W. Stevenson.

For a more complete description as to courses and distances, metes and bounds, reference is directed to the aforementioned plat, which is made a part hereof.

This being a portion of the property conveyed by Janice B. Carlton to Longview Enterprises Associates, LLC and Interstate Land & Timber, LLC by Deed dated March 5, 2007 and recorded March 7, 2007 in Book 938, Page 185 in the Office of the Clerk of Court for Chester County, South Carolina.

Tax Parcel Number: 128-00-00-07.

## TRACT 4:

Commencing at S.C. Grid monument "Green Briar"; thence with a bearing of S 3°30'49" W, and a distance of 9492.45', to a point; thence with a bearing of S 70°34'26" W, and a distance of 1703.91', to a point; thence with a bearing of S 42°50'38" E, and a distance of 4520.50', to a point on the western Right of Way of I-77; thence crossing said right of way with a bearing of N 60°17'29" E, and a distance of 374.32', to the **POINT OF BEGINNING** of the tract described herein:

Thence with a bearing of S 66°18'46" E, and a distance of 1615.25', to a point; thence with a bearing of N 68°45'57" E, and a distance of 507.83', to a point; thence with a bearing of S 39°48'57" E, and a distance of 523.70', to a point; thence with a bearing of S 39°48'57" E, and a distance of 633.10', to a point; thence with a bearing of N 75°54'36" E, and a distance of 980.50', to a point; thence with a bearing of S 16°53'58" E, and a distance of 957.45', to a point; thence with a bearing of S 16°27'08" E, and a distance of 199.57', to a point; thence with a bearing of S 16°36'53" E, and a distance of 265.54', to a point; thence with a bearing of S 36°05'07" W, and a distance of 1084.34', to a point; thence with a bearing of S 78°31'42" W, and a distance of 1048.13', to a point; thence with a bearing of S 11°43'54" E, and a distance of 1012.12', to a point; thence with a bearing of S 11°39'25" E, and a distance of 1292.79', to a point; thence with a bearing of S 7°35'23" E, and a distance of 2843.88', to a point;

ECOVEST-DOJ_0121580

thence with a bearing of N 73°07'23" E, and a distance of 1217.13', to a point;
thence with a bearing of S 12°43'36" E, and a distance of 779.11', to a point;
thence with a bearing of S 44°39'49" E, and a distance of 659.76', to a point;
thence with a bearing of S 16°45'57" E, and a distance of 542.30', to a point;
thence with a bearing of S 15°48'51" E, and a distance of 1763.30', to a point;
thence with a bearing of S 85°50'06" W, and a distance of 1733.70', to a point;
thence with a bearing of S 20°27'19" E, and a distance of 481.20', to a point;
thence with a bearing of S 15°48'25" E, and a distance of 1267.05', to a point;
thence with a bearing of S 74°56'19" W, and a distance of 1949.65', to a point;
thence with a bearing of S 42°46'19" W, and a distance of 2263.76', to a point on the
eastern Right of Way of I-77; thence with said right of way the following twenty (20)
calls:

1) thence with a bearing of N 17°51'16" W, and a distance of 865.46', to a point;
2) thence with an Arc to the Right, having a Radius of 11294.16', and a Length of
   771.54', and being Chorded by a bearing of N 15°54'04" W, and a distance of 771.39'
   to a point;
3) thence with a bearing of N 0°47'01" E, and a distance of 202.91', to a point;
4) thence with a bearing of N 16°18'59" W, and a distance of 394.14', to a point;
5) thence with a bearing of N 22°04'32" W, and a distance of 100.44', to a point;
6) thence with an Arc to the Right, having a Radius of 11294.16', and a Length of
   1853.88', and being Chorded by a bearing of N 5°44'31" W, and a distance of
   1851.80' to a point;
7) thence with a bearing of N 1°00'57" W, and a distance of 793.68', to a point;
8) thence with a bearing of N 4°39'16" E, and a distance of 201.18', to a point;
9) thence with a bearing of N 6°31'27" W, and a distance of 201.90', to a point;
10) thence with a bearing of N 0°58'30" W, and a distance of 2699.40', to a point;
11) thence with a bearing of N 2°40'22" E, and a distance of 200.02', to a point;
12) thence with a bearing of N 4°49'32" W, and a distance of 197.33', to a point;
13) thence with a bearing of N 0°57'48" W, and a distance of 300.14', to a point;
14) thence with a bearing of N 8°57'06" E, and a distance of 203.74', to a point;
15) thence with a bearing of N 10°31'58" W, and a distance of 202.28', to a point;
16) thence with a bearing of N 1°01'57" W, and a distance of 899.52', to a point;
17) thence with a bearing of N 6°07'47" E, and a distance of 202.14', to a point;
18) thence with a bearing of N 0°59'05" W, and a distance of 600.00', to a point;
19) thence with a bearing of N 8°07'13" W, and a distance of 201.54', to a point;
20) thence with a bearing of N 0°59'05" W, and a distance of 4646.77', to the **POINT
    OF BEGINNING** and containing 1150.322 Acres.

Being a portion of the property conveyed to Interstate Land & Timber, LLC by
Deed of Blue Sky Timber Properties, LLC dated October 28, 2003 and recorded in Deed
Book 850, Page 136 in the Office of the Clerk of Court for Chester County, South
Carolina.

A portion of Tax Parcel Number 117-00-00-006.

ECOVEST-DOJ_0121581

Excerpts from Hickory Preserve Appraisal

~~Longview Enterprises A~~

## TRACT 1A

### (Longview Enterprises Associates, LLC to Hickory Preserve, LLC)

TRACT 1:

All those two pieces, parcels or tracts of land situate, lying and being in the County of Chester, State of South Carolina, containing in the aggregate 24.93 acres, more or less, and as shown and designated as "New Parcel Area = 16.99 acres" and "New Parcel Area = 7.94 acres," on a map entitled "INTERSTATE LAND AND TIMBER, LLC" made April 19, 2005, by Carolina Surveyors, Inc. and recorded in Plat Cabinet D, Slide 70, Page 1 in the Office of the Clerk of Court for Chester County.

The said 16.99 acre parcel is bounded generally as follows: on the north by lands owned now or formerly by Patricia L. Rogers; on the east by SC Highway 901; on the south by tract owned now or formerly by Interstate Land and Timber, LLC; and on the west by tract owned nor or formerly by Nationswaste Catawba Regional Landfill, Inc.

The 7.94 acre tract is bounded generally as follows: on the north by a tract now or formerly owned by Interstate Land and Timber, LLC; on the east by SC Highway 901; on the south by lands owned now or formerly by Otis D. Huffstickler; and on the west by a tract now or formerly owned by Nationswaste Catawba Regional Landfill, Inc.

For a more complete description, as to courses and distances, metes and bounds, reference is directed to the aforementioned plat, which is made in part hereof.

This being the same property conveyed to Longview Enterprises Associates, LLC by Deed of Linda A. Berne dated January 25, 2007, and recorded in Deed Book 935, Page 96 in the Office of the Clerk of Court for Chester County, South Carolina.

Portion of Tax Map Number: 126-0-0-137.

TRACT 2:

An **undivided 80% interest** in that certain piece, parcel or tract of land, situate and being in Chester County, State of South Carolina, containing 177.640 acres, more or less, as shown on a plat entitled "THE CARLTON TRACTS, SURVEYED FOR INTERSTATE LAND AND TIMBER, LLC" made January 29, 2007, by Carolina Surveyors, Inc., and recorded in Plat Cabinet D, Slide 102, Page 7 in the Office of the Clerk of Court for Chester County, South Carolina.

Said tract fronts on Martin Grave Road (gravel road) and is bounded generally on the north by property now or formerly owned by Allen & Patricia Beer and property now or formerly owned by Gregory K. Beer; on the east by properties now or formerly owned by Belinda Raffaldt and Bruce & Adrianna Reid; on the south by property now or formerly owned by SFG Dragonfly, LLC and other property of Janice Carlton; and on the

ECOVEST-DOJ_0121582

west by property now or formerly owned by Plum Creek Timberlands and Interstate Land and Timber, LLC.

For a more complete description as to courses and distances, metes and bounds, reference is directed to the aforementioned plat which is made a part hereof.

This being a portion of the property conveyed by Janice B. Carlton to Longview Enterprises Associates, LLC and Interstate Land & Timber, LLC by Deed dated March 5, 2007 and recorded March 7, 2007 in Book 938 at Page 185 in the Office of the Clerk for Chester County, South Carolina.

Tax Parcel Number: 128-00-00-12.

TRACT 3:

An **undivided 80% interest** in that certain, piece, parcel or tract of land, situate and being in Chester County, State of South Carolina, containing 152.381 acres, more or less, as shown on a plat entitled "THE CARLTON TRACTS, SURVEYED FOR INTERSTATE LAND AND TIMBER, LLC" made January 29, 2005 by Carolina Surveyors, Inc. and recorded in Plat Cabinet D, Slide 102, Page 7 in the Office of the Clerk of Court for Chester County, South Carolina.

Said tract is bounded generally on the north by property now or formerly owned by Plum Creek Timberlands and SFG Dragonfly, LLC; on the east by property now or formerly owned by SFG Dragonfly, LLC; on the south by Rocky Creek and property now or formerly owned by Robert & Catherine Reeves; and on the west by Rocky Creek and property now or formerly owned by John W. Stevenson.

For a more complete description as to courses and distances, metes and bounds, reference is directed to the aforementioned plat, which is made a part hereof. This being a portion of the property conveyed by Janice B. Carlton to Longview Enterprises Associates, LLC and Interstate Land & Timber, LLC by Deed dated March 5, 2007 and recorded March 7, 2007 in Book 938, Page 187 in the Office of the Clerk of Court for Chester County, South Carolina.

Tax Parcel Number: 128-00-00-07.

TRACT 4:

Beginning at a rebar located at the northeasterly corner of that certain tract of land conveyed to Longview Enterprises Associates, LLC by Deed of Plum Creek Timberlands, L.P., said Deed dated December 22, 2006 and recorded in Book 932 at Page 43 in the Office of the Clerk of Court for Chester County, South Carolina, said point being also the northernmost corner of said tract conveyed by Plum Creek Timberlands, L.P. and running thence from said Beginning Point South 74-56-19 West 2,101.44 feet to a stone; thence South 42-46-19 West 2,263.76 feet to a rebar located on the easterly

ECOVEST-DOJ_0121583

margin of the 330 foot wide right-of-way of Interstate 77; thence with said easterly margin Interstate 77 South 17-52-32 East 1,845.35 feet; thence continuing with said margin of Interstate 77 and with the arc of a circular curve to the left having a radius of 23,083.90 feet, an arc distance of 19.37 feet, said arc being subtended by a chord having a chord bearing of South 17-51-24 East and a chord distance of 19.37 feet to a rebar; thence North 37-26-54 East 807.35 feet to a point; thence South 84-54-02 East 339.54 feet to a point; thence North 75-50-58 East 475.20 feet to a pipe; thence North 57-38-58 East 1,467.57 feet to a pipe; thence North 60-35-58 East 1,254 feet to a rebar; thence North 77-30-58 East 132 feet to a rebar; thence North 71-41-42 East 137.91 feet to a rebar; thence North 37-50-51 East 140.28 feet to a stone; thence North 17-34-00 West 192.46 feet to a rebar; thence North 72-27-41 West 148.50 feet to a point; thence North 54-57-41 West 115.50 feet to a rebar; thence North 09-47-41 West 104.28 feet to a pipe; thence North 47-02-41 West 725.53 feet to a pipe; thence North 09-30-03 West 791.16 feet to the point and place of beginning as shown on a survey of Carolina Surveyors, Inc. dated December 20, 2006.

The property described above is a portion of the tract conveyed to Longview Enterprises Associates, LLC by Deed of Plum Creek Timberlands, L.P. dated December 22, 2006 and recorded in Deed Book 932 at Page 43 in the Office of the Clerk of Court for Chester County, South Carolina.

Being a portion of Tax Parcel Number:  128-00-00-002.

ECOVEST-DOJ_0121584

Excerpts from Hickory Preserve Appraisal

Introduction

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach. In searching the market Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

ECOVEST-DOJ_0121599

Excerpts from Hickory Preserve Appraisal

**Identification of the Subject Property**

The Subject Property is located on the east side of Interstate 77, south of Richburg in Chester County, South Carolina.  The site contains 1732.82+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Hickory Preserve, LLC

*Improvements*

None

*Taxes*

Individual lots were assessed at an average price of $360. It was derived after an analysis of bulk lot assessments.

ECOVEST-DOJ_0121603

Site Data

**Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 1732.82+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0121612

# Excerpts from appraisal of: High Rocks

# Document ID: ECOVEST-DOJ_0332840

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 23, 2012

Mr. Edmund Cash, Manager
High Rocks, LLC
10 Long Branch Road
Spencer, TN, 38585

Dear Mr. Cash:

RE:   Conservation Easement High Rocks
      Spencer, Tennessee
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0332840

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the ***market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 28, 2011, and before the subject property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 164.5 | $6,129,951 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 28, 2011 is:

| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 164.5 | $350 | $57,523 |

There are three (3) building sites not owned by the entity granting the easement that are outside of the boundary of the easement.  There is no enhancement issue to these building sites, as they are not owned by a related party, as defined by the IRS.  The entire tract is eased and there is no contiguous land to be considered, and thus no enhancement value.  These sites have no current access roads and are to be accessed via an easement provided by the property.  See the legal description located in the report for a description of this easement.

The value of the easement gift as of December 28, 2011 is as follows and is based upon the before and after value.

| | | | |
|---|---|---|---|
| Fee Simple Interest Before | 164.5 | | $6,129,951 |
| Less | | | |
| Fee Simple Interest with Encumbrance | 164.5 | $350 | $57,523 |
| Value of the Easement | | rounded | $6,072,429 |

ECOVEST-DOJ_0332841

Excerpts from High Rocks Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                              State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0332842

Excerpts from High Rocks Appraisal

## Table of Contents

**Certification** .................................................................................................... 6

**Summary of the Appraisal** ............................................................................ 7

**Assumptions and Limiting Conditions** ......................................................... 8

**Legal Descriptions and Maps** ...................................................................... 11

**INTRODUCTION:** ........................................................................................ 19

   *Scope of the Assignment* ............................................................................ 20

   *Competency Provision* ................................................................................ 24

   *Appraisal of the Larger Parcel:* ................................................................ 25

   *Identification of the Subject Property* ....................................................... 26
      Prior Sales History ................................................................................ 26
      Ownership .............................................................................................. 26
      Taxes ...................................................................................................... 26
      Improvements ......................................................................................... 26

   *Neighborhood Data – Middle Tennessee* ................................................... 27

   *Van Buren County, TN Demographics* ....................................................... 29

   *General Area Analysis:* .............................................................................. 32

**SECTION I.** ................................................................................................... 38

**APPRAISAL OF THE FEE SIMPLE INTEREST** .......................................... 38

   *Highest and Best Use Analysis:* ................................................................. 39
      a)   *Legally Permissible* ................................................................. 40
      b)   *Physically Possible* ................................................................. 40
      c)   *Financially Feasible* ............................................................... 40
      d)   *Maximally Productive* ............................................................. 41
      e)   *Sufficiency of Demand* ............................................................ 41
      Conclusion ............................................................................................. 41
      Hypothetical Condition ......................................................................... 41

   *Land Valuation:* ......................................................................................... 42

**SECTION II** .................................................................................................. 57

**APPRAISAL OF THE EASEMENT** ............................................................... 57

   *Highest and Best Use Analysis:* ................................................................. 58
      a)   Legal permissibility ................................................................. 59
      b)   Physical possibility and suitability ......................................... 59
      c)   Financial feasibility ................................................................. 59
      d)   Maximum productivity ............................................................. 59
      e)   Sufficiency of demand .............................................................. 59
      Conclusion: ............................................................................................ 60

   *Land Valuation:* ......................................................................................... 61
      Sales Comparison Approach ................................................................. 61

**Reconciliation** .............................................................................................. 81

ECOVEST-DOJ_0332843

**Addenda**......................................................................................................................................................**83**

*QUALIFICATIONS OF CLAUD CLARK III* ........................................................................................84

*License* .........................................................................................................................................86

*Planning Certificate:* ...................................................................................................................87

*Easement and Baseline Documents:* ..........................................................................................93

ECOVEST-DOJ_0332844

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0332845

Excerpts from High Rocks Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 23, 2012 |
| **Date of Value Estimates:** | December 28, 2011 |
| **Date of Donation** | December 28, 2011 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 164.5 Acres |
| **Easement:** | 164.5 Acres |
| **Reserved:** | 0 |
| **Total:** | 164.5 |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0332846

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0332847

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0332848

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0332849

Excerpts from High Rocks Appraisal

## Legal Descriptions and Maps

The following is a description of the High Rocks LLC property located in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB12 Page 702, RB 36 Page 623)

Beginning at a steel fence post on the edge of Camps Gulf Branch being the southwestern corner of the tract described herein; thence going with the Walden Ridge LLC property N 08°08'30" E 648.40 feet to a stone; thence leaving Walden Ridge property and going with Maynord Ashley property N 08°43'15" E 1058.32 feet to a stone; thence continuing with the same N 08°29'46" E 611.92 feet to a stone; thence S 81°53'27" E 1386.01 feet to a coal car rail; thence N 08°09'46" E 1172.02 feet to a coal car rail; thence leaving Ashley and going with Terry Nations, Dennis Yates, David Shetter, Harold Janow and William Pruett along the following calls: S 81°34'11" E 1486.00 feet; thence S 82°00'29" E 1307.07 feet; thence S 83°03'57" E 722.91 feet to a coal car rail; thence leaving Pruett and going with Rip Van Winkle S 08°18'31" W 908.39 feet at the aforementioned Camps Gulf Branch; thence leaving Van Winkle and going with the Homesites of the High Rocks of Long Branch Lakes at Fall Creek Falls and generally following the meanders of the said Branch N 66°24'40" W 102.22 feet; thence N 64°10'31" W 256.48 feet; thence N 58°05'04" W 209.07 feet; thence N 65°39'48" W 162.56 feet; thence S 76°49'00" W 133.59 feet; thence S 76°26'21" W 275.73 feet; thence N 68°02'00" W 124.73 feet; thence N 45°20'11" W 146.24 feet; thence N 58°06'29" W 84.46 feet; thence N 48°06'15" W 67.25 feet; thence N 38°09'52" W 138.86 feet; thence S 44°49'48" W 151.86 feet; thence S 71°17'12" W 132.39 feet; thence S 77°28'17" W 170.96 feet; thence S 73°59'15" W 220.19 feet; thence S 29°54'25" E 216.59 feet; thence S 11°45'39" E 192.24 feet; thence S 59°35'47" W 42.66 feet; thence N 61°40'07" W 50.78 feet; thence S 50°18'56" W 155.90 feet; thence S 38°04'11" W 230.60 feet; thence S 72°45'00" W 207.42 feet; thence S 79°27'50" W 159.90 feet; thence S 36°57'26" W 105.89 feet; thence S 42°20'32" W 126.39 feet; thence S 74°33'38" W 163.40 feet; thence S 64°39'55" W 265.64 feet; thence S 39°55'05" W 80.70 feet; thence S 46°12'09" W 141.05 feet; thence S 29°06'55" W 127.46 feet; thence S 54°23'36" W 311.14 feet; thence S 42°44'00" W 68.74 feet; thence S 42°44'00" W 146.84 feet; thence S 39°43'56" W 215.76 feet; thence S 34°23'18" W 204.40 feet; thence S 40°05'36" W 58.06 feet to a point at the end of Rocky Lane; thence along a curve turning to the left having an arc length of 194.79 feet, and a radius of 50.00 feet, with a chord of S 05°13'18" W 92.97  to a point; thence continuing with Camps Gulf Branch S 06°27'19" E 67.99 feet; thence S 85°07'09" W 165.91 feet; thence S 63°36'11" W 185.75 feet; thence N 77°03'09" W 231.99 feet; thence S 55°07'32" W 81.44 feet; thence S 88°57'55" W 143.15 feet; thence N 32°09'56" W 158.71 feet; thence N 54°16'07" W 163.75 feet; thence S 53°56'35" W 192.58 feet to the beginning being 169.99 acres as surveyed by Christopher M. Vick R.L.S. #2164 on  14 March 2001 (revised 26 June 2006).

ECOVEST-DOJ_0332850

Excerpts from High Rocks Appraisal

## Less and Except the following Building Areas:

**Building Area 1:**

Beginning at a stone being the northwestern corner of the Long Branch Properties LLC property (LBL); thence S 43°43'54" E 763.77 feet to the point of beginning being the northwestern corner of the parcel herein described; thence going with the southern right-of-way of a proposed road N 81°45'28" E 68.20 feet; thence S 69°21'02" E 136.04 feet; thence S 32°42'45" E 191.74 feet; thence going with the remainder of the Long Branch property S 80°17'28" W 314.08 feet to a point; thence N 02°31'52" E 252.74 feet to the beginning being 1.26 acres.

**Building Area 2:**

Beginning at a stone being the northwestern corner of the Long Branch Properties LLC property (LBL); thence S 60°39'39" E 1480.48 feet to the beginning being the southwestern corner of the tract herein described; thence going with the remainder of the Long Branch property N 08°41'33" W 560.00 feet to a point; thence leaving the LBL property and going with Ashley Maynard S 81°53'27" E 167.88 feet to a coal car rail; thence leaving Maynard and again going with the remainder of the LBL property S 26°51'56" E 410.70 feet to a point; thence going with the northern right-of-way of the proposed Rocky Lane S 68°06'14" W 105.65 feet; thence S 53°43'43" W 209.79 feet to the beginning being 2.44 acres.

**Building Area 3:**

Beginning at a stone being the northwestern corner of the Long Branch Properties LLC property (LBL); thence S 80°50'25" E 2125.48 feet to the beginning being the southernmost corner of the tract herein described; thence going with the remainder of the Long Branch property N 35°07'27" W 234.64 feet to a point; thence N 53°09'11" E 345.10 feet to a point; thence S 39°02'22" E 224.03 feet to a point; thence along a curve having an arc length of 362.67 feet, with a radius of 1052.55 feet, and a chord of S 51°27'29" W 360.88 feet to the beginning being 1.94 acres.

The above descriptions were derived from a master plan of the High Rocks future development and have only been paper located and not physically surveyed by Vick Surveying LLC.

ECOVEST-DOJ_0332851

Excerpts from High Rocks Appraisal

The following is a description of the easement through the High Rocks LLC property located in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB12 Page 702, RB 36 Page 623)

**Easement Leading from the end of Rocky Lane to Building Area #2 and 3:**
The following is a description of the center of a 50 foot wide easement; beginning on a point in the center of the culd-a-sac at the end of Rocky Lane; thence going with the center of the proposed Rocky Lane N 18°05'58" W 45.92 feet; thence N 12°15'19" W 710.85 feet; thence N 01°07'01" E 103.99 feet; thence N 11°55'25" E 79.13 feet; thence N 33°06'10" E 80.99 feet; thence N 51°10'05" E 69.88 feet; thence N 53°43'43" E 922.42 feet; thence N 68°06'14" E 505.63 feet; thence along a curve having an arc length of 558.95 feet, with a radius of 1077.55 feet, and a chord of N 56°18'46" E 552.71 feet to a point in the center of the proposed road.

**Easement Leading from the end of Rocky Lane to Building Area #1:**
The following is a description of the center of a 50 foot wide easement; beginning on a point in the center of the culd-a-sac at the end of Rocky Lane; thence going with the center of the proposed Rocky Lane N 18°05'58" W 45.92 feet; thence N 12°15'19" W 710.85 feet; thence N 01°07'01" E 103.99 feet; thence N 11°55'25" E 79.13 feet; thence N 33°06'10" E 80.99 feet to a point; thence N 51°10'05" E 69.88 feet; thence N 53°43'43" E 188.03 feet; thence leaving Rocky Lane and going with the center of a proposed road N 05°17'30" W 316.09 feet; thence N 32°42'45" W 206.12 feet; thence N 69°21'02" W 150.76 feet; thence S 81°45'28" W 103.44 feet to a point in the center of the proposed road.

The above descriptions were derived from a master plan of the High Rocks future development and have only been paper located and not physically surveyed by Vick Surveying LLC.

ECOVEST-DOJ_0332852

Excerpts from High Rocks Appraisal

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of

Excerpts from High Rocks Appraisal

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 164.5+- acres.

*Prior Sales History*

 There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

High Rocks, LLC

*Taxes*



*Improvements*

None

ECOVEST-DOJ_0332865

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No
- Observed staining of soils:                    On-Site: No; Adjacent: No
- Observed distressed vegetation:           On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":       On-Site: No; Adjacent: No
- Observed noticeable odors:                   On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 164.5 +- acres, of which approximately 164.5 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0332875

Excerpts from appraisal of:
Highway 30

Document ID:
ECOVEST-DOJ_0223766

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:  Claud@ClarkAppraisals.com

January 24, 2012

Mr. Edmund Cash, Manager
Highway 30, LLC
10 Long Branch Road
Spencer, TN, 38585

Dear Mr. Cash:

RE:  Conservation Easement Highway 30
Spencer, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0223766

Excerpts from Highway 30 Appraisal

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2011, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 63.1 | $3,307,305 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2011 is:

| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 63.1 | $400 | $25,240 |

There are two (2) building sites not owned by the entity granting the easement that are outside of the boundary of the easement. There is no enhancement issue to these building sites, as they are not owned by a related party, as defined by the IRS. The entire tract is eased and there is no contiguous land to be considered, and thus no enhancement value. These sites are located off Highway 30.

The value of the easement gift as of December 30, 2011 is as follows and is based upon the before and after value.

| | | | |
|---|---|---|---|
| Fee Simple Interest        Before | 63.1 | | $3,307,305 |
| Less | | | |
| Fee Simple Interest with Encumbrance | 63.1 | $400 | $25,240 |
| Value of the Easement | 63.1 | rounded | $3,282,065 |

ECOVEST-DOJ_0223767

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0223768

## Table of Contents

Certification ........................................................................................................................... 6

Summary of the Appraisal ..................................................................................................... 7

Assumptions and Limiting Conditions ................................................................................. 8

Legal Descriptions and Maps .............................................................................................. 11

INTRODUCTION: ................................................................................................................ 17

    *Scope of the Assignment* ................................................................................................ 18

    *Competency Provision* .................................................................................................... 22

    *Appraisal of the Larger Parcel:* ...................................................................................... 23

    *Identification of the Subject Property* ............................................................................ 24

        Prior Sales History ........................................................................................................ 24

        Ownership .................................................................................................................... 24

        Taxes ........................................................................................................................... 24

        Improvements .............................................................................................................. 24

    *Neighborhood Data – Middle Tennessee* ....................................................................... 25

    *Geography:* ...................................................................................................................... 25

    *General Area Analysis:* ................................................................................................... 30

SECTION I. ........................................................................................................................... 36

APPRAISAL OF THE FEE SIMPLE INTEREST ............................................................. 36

    *Highest and Best Use Analysis:* ...................................................................................... 37

        *a)*    *Legally Permissible* ................................................................................... 38

        *b)*    *Physically Possible* .................................................................................... 38

        *c)*    *Financially Feasible* .................................................................................. 38

        *d)*    *Maximally Productive* ............................................................................... 39

        *e)*    *Sufficiency of Demand* .............................................................................. 39

        Conclusion ................................................................................................................... 39

        Hypothetical Condition ................................................................................................ 39

    *Land Valuation:* ............................................................................................................... 40

SECTION II ........................................................................................................................... 55

APPRAISAL OF THE EASEMENT ..................................................................................... 55

    *Highest and Best Use Analysis:* ...................................................................................... 57

        a)    Legal permissibility .................................................................................... 58

        b)    Physical possibility and suitability .............................................................. 58

        c)    Financial feasibility .................................................................................... 58

        d)    Maximum productivity ................................................................................ 58

        e)    Sufficiency of demand ................................................................................ 58

        Conclusion: .................................................................................................................. 59

    *Land Valuation:* ............................................................................................................... 60

        Sales Comparison Approach ........................................................................................ 60

Reconciliation ........................................................................................................................ 80

ECOVEST-DOJ_0223769

**Addenda**.............................................................................................................................................**82**

    QUALIFICATIONS OF CLAUD CLARK III .........................................................................83

    License .....................................................................................................................................85

    Planning Certificate: ...............................................................................................................86

    Long Branch Lakes Amenities Use Agreement: ......................................................................87

    Easement and Baseline Documents: ........................................................................................88

ECOVEST-DOJ_0223770

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject the appraiser to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
TN License #4693

State Certified General Real Property Appraiser

ECOVEST-DOJ_0223771

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 24, 2012 |
| **Date of Value Estimates:** | December 30, 2011 |
| **Date of Donation** | December 30, 2011 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 63.1 Acres |
| **Easement:** | 63.1 Acres |
| **Reserved:** | 0 |
| **Total:** | 63.1 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before: Residential Development<br>After: Hunting or Recreational Use |
| **Estimated Marketing Time:** | 12-18 months |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0223772

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0223773

Excerpts from Highway 30 Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0223774

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0223775

Excerpts from Highway 30 Appraisal

**Legal Descriptions and Maps**

## LEGAL DESCRIPTION
## HIGHWAY 30 LLC CONSERVATION AREA

The following is a description of The Highway 30 Conservation easement being a portion of the Highway 30, LLC property located on Highway 30 in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB56 Page 293 and Tax Map 49 Parcel 16.00)

Beginning on a an iron pin on the South side of Tennessee Highway #30; thence S07°15'00"W, 1795.64' to a stone; thence N82°24'10"W, 1617.27' to a stone; thence N06°50'00"E, 1268.13' to a stone; thence S82°59'30"E, 460.17' to a stone; thence N07°16'50"E, 748.49' to a post and stone on the South side of Tennessee Highway #30; thence with said highway right of way; S77°48'00"E, 231.7'; S77°28'40"E, 68.62'; S77°25'30"E, 140.32'; S75°38'10"E, 108.54'; S66°54'30"E, 96.10; S66°29'40"E, 183.78'; S66°55'40"E, 156.11'; S67°00'10"E, 114.22'; S65°97'50"E, 94.80 to the point of beginning, containing 65.17 acres, as per survey of Bedford W. Jackson, Tennessee Registered Land Surveyor #50, on December 11, 1992.

**Less the following described Building Areas:**

The following are descriptions of the Building areas of The Highway 30 Conservation easement being a portion of the Highway 30, LLC property located on Highway 30 in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB56 Page 293 and Tax Map 49 Parcel 16.00)

**Building Area 1:**
Beginning on a stone being the northwestern corner of this described parcel; thence running with the southern right-of-way of Highway 30 S 77°48'02" E 209.16 feet to a point; thence leaving the said highway and going with the remainder of the Highway 30, LLC property S 06°50'09" W 211.67 feet to a point; thence N 82°11'18" W 210.04 feet to a point; thence leaving the Highway 30 property and going with the Jo Ann Beach property N 07°16'50" E 227.65 feet to the beginning being 1.05 acres.

**Building Area 2:**
Beginning on a stone being the northwestern corner of the Highway 30, LLC property; thence S 74°33'11" E 735.07 feet to the beginning being the northwestern corner of the tract herein described; thence going with the southern right-of-way of Highway 30 S 66°29'42" E 91.57 feet to a point; thence S 66°55'40" E 117.44 feet to a point, thence leaving the said Highway and going with the remainder of the Highway 30, LLC property S 22°35'34" W 214.96 feet to a point; thence N 65°46'37" W 209.16 feet to a point; thence N 22°36'48" E 211.45 feet to the beginning 1.02 acres.

Note: The above described parcels were generated from the description of record.

ECOVEST-DOJ_0223776

Excerpts from Highway 30 Appraisal

Introduction

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of

ECOVEST-DOJ_0223785

Excerpts from Highway 30 Appraisal

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 63.1+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Highway 30, LLC

### Taxes



### Improvements

None

ECOVEST-DOJ_0223789

Site Data

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 63.1 +- acres, of which approximately 63.1 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0223799

# Excerpts from appraisal of: Indigo Sound

# Document ID: ECOVEST-DOJ_0213350

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 30, 2019

Indigo Sound LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
        Indigo Sound, LLC
        267.005 acre tract, Glynn County, Georgia

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or other guidance.*

1

CLAUD CLARK III, PC

ECOVEST-DOJ_0213350

Excerpts from Indigo Sound Appraisal

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:

*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement.

For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method"** (*IRS in italics*)

*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
*(ii) Fair Market Value of property before and after restriction.  If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 267.005-acre conservation easement in Glynn County, Georgia. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

ECOVEST-DOJ_0213352

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 13, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement Fee Simple | 267.005 | $46,970,472 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 13, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value After the Easement Fee Simple (rounded) | 267.005 | | $427,208 |

The encumbered property also includes three reserved residential building zones that permit up to two residential building sites each. In theory, if taken as separate components of the valuation, the building areas and the remaining eased area that cannot be improved have different values. These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement. It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these

ECOVEST-DOJ_0213353

Excerpts from Indigo Sound Appraisal

properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

The Fair Market Value of the easement gift as of December 13, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $46,970,472.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $427,208.  Using the before and after method, the Fair Market Value of the Conservation Easement is $46,543,000 (rounded).

|  | Acres | Price/Acre | FMV |
| --- | --- | --- | --- |
| Total Fair Market Value Before the Easement | 267.005 |  | $46,970,472 |
| Total Fair Market Value After the Easement | 267.005 | $1,600 | $427,208 |
| **Fair Market Value of the Easement** |  |  | **$46,543,000** |

 Fair Market Value of the Conservation Easement on the effective date is:

***FORTY-SIX MILLION FIVE HUNDRED FORTY-THREE THOUSAND DOLLARS***

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0213354

Excerpts from Indigo Sound Appraisal

Claud Clark III
State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0213355

## Table of Contents

*Certification* ...................................................................................................................... 9

**Certification of Appraiser** ............................................................................................ 9

**Summary of the Appraisal** .......................................................................................... 11

**Assumptions and Limiting Conditions** ...................................................................... 12

**Legal Descriptions and Maps** .................................................................................... 15

**INTRODUCTION:** ........................................................................................................ 30

**Scope of the Assignment** ............................................................................................ 31

   *Identification of the Subject Property* ...................................................................... 36

   *Prior Sales History* ...................................................................................................... 36

   *Ownership* ..................................................................................................................... 36

   *Improvements* ............................................................................................................... 36

   *Taxes* ............................................................................................................................. 36

   *Neighborhood Data – Glynn County, GA* ................................................................ 39

**SECTION I** .................................................................................................................... 52

**APPRAISAL OF THE BEFORE VALUE** ...................................................................... 52

   *Highest and Best Use Analysis:* ................................................................................. 53

      *a)*   *Legally Permissible* ............................................................................. 54

      *b)*   *Physically Possible* ............................................................................. 54

      *c)*   *Financially Feasible* ............................................................................ 54

      *d)*   *Maximally Productive* ......................................................................... 55

      *e)*   *Sufficiency of Demand* ....................................................................... 55

      Conclusion .............................................................................................. 55

   *Land Valuation:* .......................................................................................................... 58

      *Discounted Retail Sales Approach* ......................................................... 58

**SECTION II** ................................................................................................................ 104

**APPRAISAL OF THE AFTER VALUE** ...................................................................... 104

   *Highest and Best Use Analysis:* ............................................................................... 122

      *a)*   Legal permissibility ............................................................................. 123

      *b)*   Physical possibility and suitability ..................................................... 123

      *c)*   Financial feasibility ............................................................................. 123

      *d)*   Maximum productivity ........................................................................ 123

      *e)*   Sufficiency of demand ......................................................................... 124

      Conclusion: ........................................................................................... 124

   *Land Valuation* .......................................................................................................... 125

      Sales Comparison Approach ................................................................. 125

   *Estimate of the After Value:* ..................................................................................... 132

ECOVEST-DOJ_0213356

**Reconciliation** ................................................................................................................................**138**

**Addenda** ......................................................................................................................................**140**

    Qualifications ..........................................................................................................................140
    License ....................................................................................................................................140
    Deed and Title Documents .....................................................................................................140
    Unit Plans ...............................................................................................................................140
    Cost Estimates ........................................................................................................................140
    Development Letters ...............................................................................................................140
    Demographic Reports ............................................................................................................140
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............140
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ................................................................................................................................................140
    Crystal Lagoon Information and Supporting Documents ........................................................140
    Bowden Report – Before Scenario .........................................................................................140
    Easement ................................................................................................................................140
    Baseline ..................................................................................................................................140

ECOVEST-DOJ_0213357

Excerpts from Indigo Sound Appraisal

*Certification*

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0213358

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 21, 019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0213359

Excerpts from Indigo Sound Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located off Highway 99 northwest of Brunswick, Glynn County, Georgia. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 30, 2019 |
| **Date of Property Inspection:** | January 21, 2019 |
| **Date of Value Estimates:** | December 13, 2018 |
| **Date of Donation** | December 13, 2018 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | PD, Planned Development |
| **Site:** | 267.005 Acres |
| **Easement:** | 267.005 Acres |
| **Reserved:** | Three Residential Building Zones totaling 6 acres, located within the easement |
| **Total:** | 267.005 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space with three Building Zones totaling 6 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC     EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0213360

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Georgia or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0213361

Excerpts from Indigo Sound Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

ECOVEST-DOJ_0213362

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0213363

Excerpts from Indigo Sound Appraisal

## Legal Descriptions and Maps

Legal Description
Indigo Sound

All of that lot, parcel or tract of land lying and being in the 1356th Georgia Militia District, Glynn County Georgia, being shown on a plat entitled 'An Expedited Plat of Tract 1 a Portion of Altama Plantation Tract A', being recorded in the office of the Clerk of Superior Court of Glynn County in Plat Book 34 Page 123 and being more particularly described as follows;

Commencing at a capped iron rebar found on the northerly right-of-way line of Georgia Highway 99 at the southeasterly property corner of a 120' Relocated Road Easement, Altama Plantation (Plat Book 33 Page 67); thence proceed along said Georgia Highway 99 right-of-way line with the following courses and distances; thence with a curve turning to the left with a radius of 1851.93', a chord bearing of N 50°29'38" E, and a chord length of 93.59', thence along the arc of said curve a distance of 93.60' to a point; thence N 49°02'45" E a distance of 26.41' to a point, thence N 49°02'45" E a distance of 555.12' to a point; thence with a curve turning to the left with a radius of 2657.04', a chord bearing of N 43°28'06" E, and a chord length of 516.49', thence along the arc of said curve a distance of 517.30' to a point; thence N 37°53'27" E a distance of 415.69' to a point, thence N 37°52'16" E a distance of 1082.73' to a point; thence N 52°06'15" W a distance of 15.00' to a point, thence with a curve turning to the left with a radius of 2799.79', a chord bearing of N 37°31'55" E, and a chord length of 19.83', thence along the arc of said curve a distance of 19.83' to a point at the intersection of said northerly right-of-way line of Georgia Highway 99 and the westerly line of Altama Plantation Parkway (120' private access easement); thence leave said Georgia Highway 99 right-of-way line and proceed along the westerly line of said Altama Plantation Parkway the following courses and distances; thence N 54°29'47" W a distance of 757.95' to a point; thence with a curve turning to the right with a radius of 600.00', a chord bearing of N 16°08'08" W, and a chord length of 744.73', thence along the arc of said curve a distance of 803.43' to a point, thence N 22°13'31" E a distance of 75.24' to a point, thence with a curve turning to the left with a radius of 1250.00', a chord bearing of N 00°31'51" W, and a chord length of 975.72', thence along the arc of said curve a distance of 1000.19' to a point, thence N 23°37'13" W a distance of 102.36' to a point, thence with a curve turning to the left with a radius of 1900.00', a chord bearing of N 38°11'58" W, and a chord length of 956.54', thence along the arc of said curve a distance of 966.94' to a point; thence N 52°46'44" W a distance of 599.89' to a point; thence with a curve turning to the right with a radius of 600.00', a chord bearing of N 35°58'19" W, and a chord length of 340.97', thence along the arc of said curve a distance of 352.69' to a point; thence N 19°09'55" W a distance of 150.19' to a point; thence with a curve turning to the right with a radius of 600.00', a chord bearing of N 07°04'06" W, and a chord length of 251.48'; thence along the arc of said curve a distance of 253.36' to a point; thence with a reverse curve turning to the left with a radius of 400.00', a chord bearing of N 18°27'50" W, and a chord length of 318.90', thence along the arc of said curve a distance of 328.02' to a point; thence with a reverse curve turning to the right with a radius of 725.00', a chord bearing of N 58°54'05" W, and a chord length of 77.27', thence along the arc of said curve a distance of 77.31' to the POINT OF BEGINNING; thence leave said Altama Plantation Parkway S 66°00'37" W a distance of 884.19' to a capped iron rebar found; thence S 77°01'49" W a distance of 72.90' to a capped iron rebar found; thence N 78°31'58" W a distance of 276.79' to a capped iron rebar found; thence S 75°39'45" W a distance of 77.53' to a capped iron rebar found; thence N 78°19'23" W a distance of 1071.30' to a concrete monument found; thence N 42°15'35" W a distance of 990.16 ' to a concrete monument found; thence N 44°16'42" E a distance of 527.26' to a concrete monument found; thence N 60°23'59" W a distance of 1474.21' to a concrete monument found; thence N 29°35'32" E a distance of 901.96' to a concrete monument found; thence N 63°11'07" E a distance of 1708.41' to a concrete monument found; thence N 66°56'44" E a distance of 1836.31' to a capped iron rebar set; thence S 19°12'23" E a distance of 347.27' to a capped iron rebar set; thence S 75°05'37" E a distance of 53.71' to a capped iron rebar set; thence S 48°52'09" E a distance of 231.39' to a capped iron rebar set; thence S 39°03'24" E a distance of 131.67' to a capped iron rebar set; thence S 25°25'55" E a distance of 131.67' to a capped iron rebar set; thence S 18°37'11" E a distance of 154.50' to a capped iron

603

ECOVEST-DOJ_0213364

Excerpts from Indigo Sound Appraisal

rebar set; thence S 12°23'38" E a distance of 142.07' to a capped iron rebar set; thence S 01°32'18" E a distance of 142.22' to a capped iron rebar set; thence with a curve turning to the right with a radius of 475.00', a chord bearing of N 77°14'08" W, and a chord length of 190.52', thence along the arc of said curve a distance of 191.82' to a capped iron rebar set; thence S 18°40'11" W a distance of 127.79' to a capped iron rebar set, thence N 74°46'22" W a distance of 120.00' to a capped iron rebar set; thence S 00°40'12" W a distance of 144.29' to a capped iron rebar set, thence S 01°26'38" E a distance of 144.29' to a capped iron rebar set; thence S 12°33'29" E a distance of 144.29' to a capped iron rebar set; thence S 18°06'54" E a distance of 74.15' to a capped iron rebar set, thence S 09°17'20" E a distance of 190.81' to a capped iron rebar set; thence N 84°11'38" E a distance of 184.46' to a capped iron rebar set; thence S 05°39'58" E a distance of 270.26' to a capped iron rebar set; thence S 19°23'03" E a distance of 652.81' to a capped iron rebar set on the northerly line of said Altama Plantation Parkway; thence along said Altama Plantation Parkway S 76°56'18" W a distance of 49.49' to a capped iron rebar set; thence with a curve turning to the left with a radius of 700.00', a chord bearing of S 49°07'00" W, and a chord length of 653.41', thence along the arc of said curve a distance of 679.81' to a capped iron rebar set; thence S 21°17'43" W a distance of 141.91' to a capped iron rebar set; thence with a curve turning to the left with a radius of 725.00' a chord bearing of S 07°16'33" E, and a chord length of 693.46', thence along the arc of said curve a distance of 723.05' to the POINT OF BEGINNING; said tract of land having an area of 267.005 acres more or less

ECOVEST-DOJ_0213365

Excerpts from Indigo Sound Appraisal

Introduction

Since the property is vacant land with development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 267.005-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach Appraisal of Conservation Easements, Appraisal of Land

ECOVEST-DOJ_0213382

Excerpts from Indigo Sound Appraisal

**Identification of the Subject Property**

The Subject Property is located off Highway 99, northwest of Brunswick in Glynn County, Georgia. The site contains 267.005 acres.

*Prior Sales History*

There have been no qualified sales or transfers of the subject property within the last three years. The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Indigo Sound, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0213385

Excerpts from Indigo Sound Appraisal

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 267.005 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0213397

# Excerpts from appraisal of: Lakeshore Resort

# Document ID: ECOVEST-DOJ_0060367

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Lakeshore Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Lakeshore Resort, LLC
       44.2 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

ECOVEST-DOJ_0060367

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 44.2 | $49,409,360 |

ECOVEST-DOJ_0060368

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 44.2 | $220,720 |

The value of the easement gift as of December 15, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 44.2 | $49,409,360 |
| Less Total After Value (Encumbered) | 44.2 | $220,720 |
| **Value of the Easement** | rounded | **$49,189,000** |

The encumbered property also includes one (1) reserved building for either one residence or one resort. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that the lot is not a build ready lot and will incur some development costs to make it so. The site will be constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee

ECOVEST-DOJ_0060369

organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                               State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0060370

Excerpts from Lakeshore Resort Appraisal

## Table of Contents

**Certification** ................................................................................................................................ 7

**Summary of the Appraisal** ........................................................................................................ 8

**Assumptions and Limiting Conditions** .................................................................................... 9

**Legal Descriptions and Maps** ................................................................................................. 12

**INTRODUCTION:** .................................................................................................................... 23

**Scope of the Assignment** .......................................................................................................... 24

*Competency Provision* ............................................................................................................ 28

*Appraisal of the Larger Parcel:* ............................................................................................. 29

*Identification of the Subject Property* ..................................................................................... 30

*Prior Sales History* ................................................................................................................. 30

*Ownership* ............................................................................................................................... 30

*Improvements* ......................................................................................................................... 30

*Taxes* ....................................................................................................................................... 30

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..................................... 32

**SECTION I.** ............................................................................................................................... 52

**APPRAISAL OF THE BEFORE VALUE** ................................................................................. 52

*Highest and Best Use Analysis:* .............................................................................................. 53

   a)   Legally Permissible ....................................................................................................... 54

   b)   Physically Possible ....................................................................................................... 54

   c)   Financially Feasible ..................................................................................................... 54

   d)   Maximally Productive ................................................................................................... 55

   e)   Sufficiency of Demand .................................................................................................. 55

   Conclusion .......................................................................................................................... 55

*Land Valuation:* ...................................................................................................................... 56

   Discounted Retail Sales Approach ...................................................................................... 56

**SECTION II** .............................................................................................................................. 121

**APPRAISAL OF THE AFTER VALUE** .................................................................................. 121

*Highest and Best Use Analysis:* ............................................................................................ 136

   a)   Legal permissibility ..................................................................................................... 137

   b)   Physical possibility and suitability .............................................................................. 137

   c)   Financial feasibility .................................................................................................... 137

   d)   Maximum productivity .................................................................................................. 137

   e)   Sufficiency of demand .................................................................................................. 137

   Conclusion: ........................................................................................................................ 138

*Land Valuation* ...................................................................................................................... 139

   Sales Comparison Approach .............................................................................................. 139

*Estimate of the After Value:* ................................................................................................. 144

**Reconciliation** ........................................................................................................................ 150

ECOVEST-DOJ_0060371

**Addenda**..................................................................................................................**151**

Qualifications..................................................................................................................151

License..............................................................................................................................151

Lakeshore Resort Unit Plans........................................................................................151

Cost Estimates................................................................................................................151

Development Letters......................................................................................................151

Demographic Reports....................................................................................................151

Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............151

Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ..................................................................................................................151

Crystal Lagoon Information and Supporting Documents ........................................151

Bowden Report – Before Scenario..............................................................................151

Easement..........................................................................................................................151

Baseline............................................................................................................................151

ECOVEST-DOJ_0060372

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                         State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0060373

Excerpts from Lakeshore Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Sandridge Road, south of Carolina Bays Pkwy and west of Robert Edge Pkwy.  It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 15, 2016 |
| **Date of Donation** | December 15, 2016 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | R4 and RC (Resort Residential and Resort Commercial) |
| **Site:** | 44.2 Acres |
| **Easement:** | 44.2 Acres |
| **Reserved:** | One reserved 1.0 acre building site |
| **Total:** | 44.2 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0060374

Excerpts from Lakeshore Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0060375

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0060376

Excerpts from Lakeshore Resort Appraisal

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0060377

Excerpts from Lakeshore Resort Appraisal

**Legal Descriptions and Maps**

TRACT 1A
BEGINNING AT A POINT (POB#2) ON THE NORTH WESTERN CORNER OF SAID
PARCEL AND POINT BEING MAKRED BY HAVING 5/8: IRON REBAR SET AND
HAVING SC STATE PLANE COORDINATES OF N 737,046.27 AND E 2,698,161.21
THENCE A LINE BOUNDED TO THE EAST BY SANDRIDGE ROAD EXTENSION THE
FOLLOWING BEARINGS AND DISTANCES:
N 69° 32' 46" E 100' TO 5/8 IRON REBAR SET
N 69° 29' 51" E 433.47' TO 5/8" IRON REBAR FOUND
N 11° 31' 11" E 15.29' TO 5/8 IRON REBAR SET

THENCE A CURVE WITH A CHORD BEARING OF N 67°13'26"W CHORD LENGTH
171.47' RADIUS 440.00' ARC LENGTH 172.57' DELTA ANGLE 22°28'19" TANGENT 87.41'
TO 5/8 IRON REBAR SET (C1)
THENCE A LINE WITH THE FOLLOWING BEARINGS AND DISTANCES:
N  33° 42' 34" E A DISTANCE OF 29.72' TO 5/8" IRON REBAR SET
S 47°35'05" E A DISTANCE OF 703.40' TO 5/8" IRON REBAR SET
THENCE A CURVE WITH A CHORD BEARING OF N 51° 52'59" W A CHORD LENGTH
68.19' A RADIUS 454.94' ARC LENGTH 68.26' DELTA ANGLE 8°35'47" TANGENT 34.19'
TO 5/8" IRON REBAR SET (C2)
THENCE A CURVE WITH A CHORD BEARING OF N 56°06'45"W A CHORD LENGTH
162.69' A RADIUS OF 549.97' ARC LENGTH 163.29' DELTA ANGLE 17°00'41" TANGENT
82.25 TO 5/8" IRON REBAR SET (C3).
THENCE A CURVE WITH A CHORD BEARING OF N68°47'38" CHORD LENGTH OF
80.03' RADIUS 548.72' ARC LENGTH 80.10' DELTA ANGLE 8°21'51" TANGENT 40.12'
(C4)
THENCE A CURVE WITH A CHORD BEARING OF N75°36'56"W A CHORD LENGTH OF
51.06' RADIUS 546.78'ARC LENGTH 51.08' DELTA ANGLE 5°21'09" TANGENT 25.56'
(C5)
THENCE A LINE WITH THE FOLLOWING BEARINGS AND DISTANCES:            N
11°52'57" E 40.00' TO 5/8 IRON REBAR SET.
THENCE A CURVE WITH A CHORD BEARING OF S 85°58'01" W A CHORD LENGTH
322.39' RADIUS 590.00' ARC LENGTH 326.54' DELTA ANGLE 31°42'40" TANGENT
167.57' (C6) TO SC DOT R/W MON.

BOUNDED TO EAST BY SANDRIDGE WEST BY SUBJECT PROPERTY
THENCE A CURVE WITH A CHORD BEARING OF N 44°52'30" A CHORD LENGTH OF
275.15' RADIUS 630.00' ARC LENGTH 277.39' DELTA ANGLE 25°13'38" TANGENT
140.98' (C7) TO 5/8" IRON REBAR SET

THENCE A LINE WITH THE FOLLOWING BEARINGS AND DISTANCES:
N 08°11'45" W A DISTANCE OF 138.73' TO 1/2" IRON REBAR FOUND
N 08°42'55" W A DISTANCE OF 94.11' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY THE LANDS NOW OR FORMERLY
OWNED BY SANIBEL RESORT, LLC AND BOUNDED TO THE NORTH BY THE
SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

ECOVEST-DOJ_0060378

S 80°30'19"W A DISTANCE OF 662.89'
S 16°24'28" E A DISTANCE OF 47.74' (L33)
S 01°55'38" E A DISTANCE OF 24.24' (L32)
S 12°13'58" W A DISTANCE OF 42.36' (L31)
S 19°44'42" W A DISTANCE OF 61.88' (L30)
S 22°51'47"W A DISTANCE OF 89.98' (L29)
S 41°29'19" W A DISTANCE OF 29.66' (L28)
S 64°51'43" W A DISTANCE OF 38.70' (L27)
S 81°54'27" E A DISTANCE OF 20.11' (L26)
N 52°52'17" W A DISTANCE OF 21.54' (L25)
S 53°06'21" W A DISTANCE OF 37.13' (L24)
S 64°47'30 W A DISTANCE OF 80.71' (L23)
S 81°17'52"W A DISTANCEOF 64.73' (L22)
S 72°01'42" W A DISTANCE OF 56.76' (L21)

LINE BOUNDED TO SOUTH BY N/F SEA VISTA AND TO NORTH BY SUBJECT TRACT.
N 84°07'51" W A DISTANCE OF 18.88' (L20)
S 77°24'32" W A DISTANCE OF 20.96' (L19)
S 64°28'44"W A DISTANCE OF 23.07' (L18)
S 59°46'09" W A DISTANCE OF 25.19' (L17)
S 62°38'00"W A DISTANCE OF 33.87' (L16)
S 65°43'56"W A DISTANCE OF 28.00' (L15)
S 65°24'33"W A DISTANCE OF 26.48' (L14)
S 81°19'57" W A DISTANCE OF 35.43' (L13)
S 82°29'22" W A DISTANCE OF 34.27' (L12)
S 83°53'16" W A DISTANCE OF 42.17' (L11)
S 86°55'49" W A DISTANCE OF 29.13' (L10)
N 89°46'26' W A DISTANCE OF 30.41' (L9)
N 84°10'45"W A DISTANCE OF 26.92' (L8)
N 77°13'01"W A DISTANCE OF 22.73 (L7)
N 70°35'35" W A DISTANCE OF 14.19' (L6)
N 64°58'49" W A DISTANCE OF 115.54' (L5)
N 67°52'13" W A DISTANCE OF 22.03' (L4)
N 80°28'21" W A DISTANCE OF 21.69' (L3)
N 80°47'37" W A DISTANCE OF 33.50' (L2)
N 75°16'18" W A DISTANCE OF 21.49' (L1)

THENCE A LINE NORTH BOUNDED TO WEST BY N/F OWNED BY SEAVISTA
RESORT, LLC THE FOLLOWING BEARINGS AND DISTANCES:
N 20°27'15" W A DISTANCE OF 1073.60'
N 69°32'45" E A DISTANCE OF 93.01'
N 20°27'15"W A DISTANCE OF 415.99'
THENCE BACK TO POINT OF BEGINNING.  TRACT CONTAINS 44.23 ACRES

ECOVEST-DOJ_0060379

Excerpts from Lakeshore Resort Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources, as well as national valuation services, such as RS Means and Marshall and Swift.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 44.2 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0060391

Excerpts from Lakeshore Resort Appraisal

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0060392

Excerpts from Lakeshore Resort Appraisal

Introduction

**Identification of the Subject Property**

The subject is located off Sandridge Road, south of Carolina Bays Pkwy and west of Robert Edge Pkwy.  It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 44.2 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Lakeshore Resort, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0060396

Excerpts from Lakeshore Resort Appraisal

Site Data

Environmental, Earthquake and Other Hazards:

The following statements relate to environmental issues primarily consisting of the possibility of sub-soil contamination, which if present, could negatively impact the value of the Subject Property.

- According to the current owner, there are no environmental issues or problems concerning the subject land.
- The physical inspection of the Subject Property provided no indications of environmental issues concerning the property.  However, the appraiser is not trained in the detection of such materials.
- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject.  This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:            On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:             On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

ECOVEST-DOJ_0060409

# Excerpts from appraisal of: Land of the Lakes

# Document ID: ECOVEST-DOJ_0233391

Excerpts from Land of the Lakes Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

February 10, 2013

Mr. Edmund Cash, Manager
Land of the Lakes, LLC
10 Long Branch Road
Spencer, TN, 38585

RE:   Conservation Easement of Land of the Lakes
Spencer, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

1

ECOVEST-DOJ_0233391

Excerpts from Land of the Lakes Appraisal

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December28, 2012 and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 401.40 | $11,395,994 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 28, 2012 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 399.40 | $750 | $299,550 |

The subject property has two (2) reserved sites. While these sites cannot claim ownership of the conservation easement area, they can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 10% enhancement to the reserved lot.

The value of the easement gift as of December 28, 2012 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 401.40 |  | $11,395,994 |
| Less |  |  |  |
| After Value (Encumbered) | 399.40 | $750 | $299,550 |
| Less |  |  |  |
| Reserved Lots | 2.00 | $20,000 | $40,000 |
| 10% Enhancement of Reserved Lots |  |  | $4,000 |
|  |  |  |  |
| Value of the Easement |  | rounded | $11,052,000 |

ECOVEST-DOJ_0233392

Excerpts from Land of the Lakes Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

I have previously performed an appraisal of this property in the last three years; however, that appraisal was for this same client.

Respectfully submitted

Claud Clark III
TN License #4693

State Certified General Real Property Appraiser

ECOVEST-DOJ_0233393

## Table of Contents

**Certification** ................................................................................................................. 6

**Summary of the Appraisal** ............................................................................................ 7

**Assumptions and Limiting Conditions** ........................................................................ 8

**Legal Descriptions and Maps** ....................................................................................... 11

**INTRODUCTION:** .......................................................................................................... 21

*Scope of the Assignment* ................................................................................................ 22

*Competency Provision* .................................................................................................... 26

*Appraisal of the Larger Parcel:* ...................................................................................... 27

*Identification of the Subject Property* ............................................................................ 28

*Prior Sales History* ......................................................................................................... 28

*Ownership* ....................................................................................................................... 28

*Taxes* ............................................................................................................................... 28

*Improvements* .................................................................................................................. 28

*Neighborhood Data – Middle Tennessee* ....................................................................... 29

*Van Buren County, TN Demographics* ........................................................................... 32

*General Area Analysis:* .................................................................................................... 36

**SECTION I** ..................................................................................................................... 43

**APPRAISAL OF THE BEFORE VALUE** ....................................................................... 43

*Highest and Best Use Analysis:* ...................................................................................... 44
    a)   *Legally Permissible* ................................................................................ 45
    b)   *Physically Possible* ................................................................................ 45
    c)   *Financially Feasible* ............................................................................... 45
    d)   *Maximally Productive* ............................................................................ 46
    e)   *Sufficiency of Demand* ........................................................................... 46
    Conclusion ......................................................................................................... 46
    Hypothetical Condition ...................................................................................... 46

*Land Valuation:* ............................................................................................................... 47

**SECTION II** .................................................................................................................... 66

**APPRAISAL OF THE AFTER VALUE** ........................................................................... 66
    a)   Legal permissibility ................................................................................. 80
    b)   Physical possibility and suitability .......................................................... 80
    c)   Financial feasibility ................................................................................. 80
    d)   Maximum productivity ............................................................................ 80
    e)   Sufficiency of demand ............................................................................. 80
    Conclusion: ......................................................................................................... 81

*Land Valuation:* ............................................................................................................... 82
    Sales Comparison Approach ............................................................................... 82

**Reconciliation** ............................................................................................................... 95

ECOVEST-DOJ_0233394

Excerpts from Land of the Lakes Appraisal

**Addenda**.................................................................................................................................................. **97**

    QUALIFICATIONS.............................................................................................................................. 98

    License................................................................................................................................................ 100

    Enginneer's Letter on Soil Conditions ............................................................................................... 101

    Planning Certificate............................................................................................................................ 102

    Long Branch Lakes Amenities Use Agreement: ................................................................................ 103

    Easement and Baseline Documents ................................................................................................... 108

ECOVEST-DOJ_0233395

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0233396

Excerpts from Land of the Lakes Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | February 10, 2013 |
| **Date of Value Estimates:** | December 28, 2012 |
| **Date of Donation** | December 28, 2012 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 401.40 Acres |
| **Easement:** | 399.40 Acres |
| **Reserved:** | Two reserved lots totaling 2.00 acres |
| **Total:** | 401.40 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275 |

ECOVEST-DOJ_0233397

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES*
*ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0233398

Excerpts from Land of the Lakes Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0233399

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0233400

**Legal Descriptions and Maps**

# LEGAL DESCRIPTION
# LAND OF THE LAKES, LLC

**The following is a description of the Land of the Lakes, LLC property in the 3rd Civil District of Van Buren County, Tennessee. (Reference Record Book 63 Page 762)**

Beginning at a point that bears N 81° 34´ 41˝ W 3850.44 feet from a coal car rail being the northeastern corner of the Long Branch Properties LLC property; thence S 08°56´35˝ W 1525.20 feet; thence with a curve having an arc length of 28.33 feet with a radius of 25.00 feet and a chord of S 23°31´27˝ E 26.84 feet; thence S 34°00´31˝ W 50.00 feet; thence S 55°59´29˝ E 945.38 feet; thence along a curve having an arc length of 509.49 feet with a radius of 1024.00 feet and a chord of S 70°14´42˝ E 504.25 feet; thence S 84°29´56˝ E 529.45 feet; thence along a curve having an arc length of 34.29 feet with a radius of 25.00 feet and a chord of S 45°12´27˝ E 31.66 feet; thence S 05°54´57˝ E 706.57 feet; thence along a curve having an arc length of 1914.80 feet with a radius of 2425.00 feet and a chord of S 16°42´17˝ W 1865.45 feet; thence S 39°19´31˝ W 500.57 feet; thence N 60°26´59˝ W 61.47 feet; thence N 49°15´09˝ W 100.39 feet; thence along a curve having an arc length of 0.30 feet with a radius of 35.00 feet and a chord of N 49°29´48˝ W 0.30 feet; thence with a compound curve having an arc length of 132.56 feet with a radius of 157.17 feet and a chord of N 73°54´12˝ W 128.67 feet; thence with a compound curve having an arc length of 2.20 feet with a radius of 35.00 feet and a chord of S 80°08´03˝ W 2.20 feet; thence S 78°20´05˝ W 130.24 feet; thence along a curve having an arc length of 2.85 feet with a radius of 35.00 feet and a chord of S 80°40´16˝ W 2.85 feet; thence S 83°00´28˝ W 33.35 feet; thence S 73°26´09˝ W 222.23 feet; thence S 77°59´59˝ W 278.02 feet; thence S 63°38´10˝ W 202.55 feet; thence S 64°54´38˝ W 191.64 feet; thence N 87°50´39˝ W 82.02 feet; thence N 35°16´36˝ E 2287.06 feet; thence N 73°15´28˝ W 1504.57 feet; thence N 80°25´31˝ W 1622.96 feet; thence N 76°56´37˝ W 756.72 feet; thence S 61°56´45˝ W 108.88 feet; thence S 67°00´19˝ W 122.08 feet; thence S 82°33´55˝ W 84.17 feet; thence N 65°36´07˝ W 117.44 feet; thence N 71°21´26˝ W 161.29 feet; thence N 86°48´36˝ W 182.39 feet; thence S 69°12´31˝ W 303.02 feet; thence S 89°34´08˝ W 165.55 feet; thence S 61°27´02˝ W 132.91 feet; thence N 83°26´11˝ W 171.28 feet; thence N 08°45´21˝ E 3446.41 feet; thence S 81°39´37˝ E 2121.02 feet; thence S 81°34´41˝ E 1892.42 feet to the beginning being 401.34 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 6 September 2007.

ECOVEST-DOJ_0233401

## Excerpts from Land of the Lakes Appraisal

Introduction

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake

CLARK ~ DAVIS, PC

24

ECOVEST-DOJ_0233414

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 401.40+- acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Land of the Lakes, LLC

## Taxes



## Improvements

None

ECOVEST-DOJ_0233418

Excerpts from Land of the Lakes Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the subject property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:     On-Site: No; Adjacent: No
- Observed distressed vegetation:     On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":     On-Site: No; Adjacent: No
- Observed noticeable odors:     On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 401.40 +- acres, of which approximately 401.40 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0233430

Excerpts from Leland Forest Appraisal

# Excerpts from appraisal of: Leland Forest

# Document ID: ECOVEST-DOJ_0111350

Excerpts from Leland Forest Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 20, 2013

Donald Johnson
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:   Conservation Easement Leland Forest
      Brunswick County, North Carolina
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Johnson:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

1

ECOVEST-DOJ_0111350

Excerpts from Leland Forest Appraisal

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 20, 2013, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value | 448.66 | $41,183,117 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 20, 2013 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value – Land Only (Encumbered) | 448.66 | $3,000 | $1,345,980 |

There will be five areas designated for the construction of residences and related residential uses. The five areas are specified and may be subdivided from the eased area into as many parcels as there are reserved lots.  Now they are not developed lots. They have no utilities, no all-weather access; they are not cleared for development. All utilities must be underground that would be required to develop the lots. Access must be approved by the land trust. Given the expense of such development, I do not think that the lots have any value over and above the overall land value.  There is no enhancement.

The Subject Property is held by an LLC that may have the same beneficial owners that own nearby property. As such there may or may not be enhancement. The appraisal is made under the extraordinary assumption that at the time of the granting of the easement the Subject Property will have membership that is not common to any others and there will be no related party issues, larger parcels or enhancement to account for.

ECOVEST-DOJ_0111351

Excerpts from Leland Forest Appraisal

The value of the easement gift as of December 20, 2013 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 448.66 |  | $41,183,117 |
| Less |  |  |  |
| After Value (Encumbered) | 448.66 | $3,000 | $1,345,980 |
| Value of the Easement |  | rounded | $39,837,000 |

ECOVEST-DOJ_0111352

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                         State Certified General Real Property Appraiser
NC License #7166

ECOVEST-DOJ_0111353

Excerpts from Leland Forest Appraisal

## Table of Contents

Certification ................................................................................................................ 7

Summary of the Appraisal ......................................................................................... 8

Assumptions and Limiting Conditions .................................................................... 9

Legal Descriptions and Maps .................................................................................. 12

INTRODUCTION: ................................................................................................... 28

Scope of the Assignment ......................................................................................... 29

 *Competency Provision* ..................................................................................... 33

 *Appraisal of the Larger Parcel:* ....................................................................... 34

 *Identification of the Subject Property* ............................................................. 35

 *Prior Sales History* .......................................................................................... 35

 *Ownership* ........................................................................................................ 35

 *Improvements* ................................................................................................... 35

 *Taxes* ................................................................................................................ 35

 *Neighborhood Data – Cape Fear Region* ........................................................ 37

SECTION I ............................................................................................................... 53

APPRAISAL OF THE BEFORE VALUE ................................................................. 53

 *Highest and Best Use Analysis:* ...................................................................... 54

  *a)* *Legally Permissible* ............................................................................ 55

  *b)* *Physically Possible* ............................................................................. 55

  *c)* *Financially Feasible* ........................................................................... 55

  *d)* *Maximally Productive* ........................................................................ 56

  *e)* *Sufficiency of Demand* ....................................................................... 56

  Conclusion ................................................................................................... 56

SECTION II ............................................................................................................ 116

APPRAISAL OF THE AFTER VALUE ................................................................... 116

 *Highest and Best Use Analysis:* .................................................................... 130

  a) Legal permissibility ................................................................................ 131

  b) Physical possibility and suitability ......................................................... 131

  c) Financial feasibility ................................................................................ 131

  d) Maximum productivity ............................................................................ 131

  e) Sufficiency of demand ............................................................................. 131

  Conclusion: .............................................................................................. 132

 *Land Valuation* ............................................................................................. 133

  Sales Comparison Approach ...................................................................... 133

 *Estimate of the After Value:* .......................................................................... 160

Reconciliation ........................................................................................................ 161

Addenda .................................................................................................................. 162

ECOVEST-DOJ_0111354

Excerpts from Leland Forest Appraisal

QUALIFICATIONS OF CLAUD CLARK III .................................................................................163
License ......................................................................................................................................165
Compass Pointe Sales Report..................................................................................................166
Reasonableness Analysis .........................................................................................................171
Market Analysis and Development Recommendations .........................................................176
Addendum to Market Analysis and Development Recommendations...................................196
Engineering Letters ..................................................................................................................198
Developer's Agreement ............................................................................................................201
Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............231
Easement and Baseline Documents.........................................................................................232

ECOVEST-DOJ_0111355

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the subject property in the last five (5) years.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
NC License #7166

State Certified General Real Property Appraiser

ECOVEST-DOJ_0111356

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Andrew Jackson Highway outside Leland in Brunswick County, North Carolina.  It is adjacent to the Compass Pointe development. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purposes, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 20, 2013 |
| **Date of Value Estimates:** | December 20, 2013 |
| **Date of Donation** | December 20, 2013 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | PUD (Planned Unit Development); allows for mixed use housing development |
| **Site:** | 448.66 Acres |
| **Easement:** | 448.66 Acres |
| **Reserved:** | 5 Sites |
| **Total:** | 448.66 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:   Residential Development<br>After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0111357

Excerpts from Leland Forest Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of North Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0111358

Excerpts from Leland Forest Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0111359

Excerpts from Leland Forest Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0111360

**Legal Descriptions and Maps**

LEGAL

The "West Tract, 19543842.2 Sq. Ft., 448.66 AC" as shown on a map thereof recorded in Map Cabinet 74, Pages 96-97 of the Brunswick County Registry, Brunswick County, North Carolina.

ECOVEST-DOJ_0111361

Excerpts from Leland Forest Appraisal

Introduction

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

ECOVEST-DOJ_0111380

Introduction

## Identification of the Subject Property

The subject property is located off Andrew Jackson Highway outside Leland in Brunswick County, North Carolina. This property adjoins an existing development known as Compass Pointe.  The site contains 448.66+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject Property is not listed for sale.

### Ownership

Leland Forest, LLC

### Improvements

None

### Taxes

The following is the tax card and tax map for the property that adjoins the Subject Property. The taxes for this adjacent parcel are $1.25 an acre. I am using the $1.25 an acre to estimate the taxes on the Subject's 448.66 acres for a total of $560.83.

| Account#: 10011570 | RE#: 800108 | Last Trans Date: | Building Value: | 0 | Current Balance: | 568.60 |
| M HOLDINGS LLC | Parcel#:02200022 | Last Payment : | Outbuilding Value: | 0 | Original Levy: | 568.60 |
| | Plat#: | | Land Value: | 1,731,620 | Personal Value: | 0 |
| | Escrow: | | Parcel Value Total: | 1,731,620 | Total Valuations: | 38,170 |
| PO BOX 1967 | Status: | | Deferred Value: | 1,693,450 | Exemptions: | 0 |
| WILMINGTONNC28402- | Legal Description:452.71 ACRES PLAT 31/330 452.710AC | | Taxable Value: | 38,170 | | |

Taxes and Fees

| Description | Levied | Interest/Fees | Assessed | Collected | Balance |
|---|---|---|---|---|---|
| BRUNSWICK COUNTY | 166.93 | 0.00 | 0.00 | 0.00 | 168.60 |
| LELAND FIRE | 400.00 | 0.00 | 0.00 | 0.00 | 400.00 |
| Totals | 568.60 | 0.00 | 0.00 | 0.00 | 568.60 |



ECOVEST-DOJ_0111384

Site Data

- The physical inspection of the subject property provided no indications of environmental issues concerning the property.  However, the appraiser is not trained in the detection of such materials.
- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject.  This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The subject property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the subject property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":       On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 448.66 +- acres.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

There is an existing development adjoining the subject property.  The adjoining development has the same soil characteristics of the subject.

ECOVEST-DOJ_0111395

Excerpts from Long Bay Marina Appraisal

# Excerpts from appraisal of:
# Long Bay Marina

# Document ID:
# ECOVEST-DOJ_0132194

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 30, 2014

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE:   Conservation Easement Appraisal
         Long Bay Marina (61-acre tract), North Myrtle Beach, Horry County, SC

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **fair market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 30, 2014, and before the Subject Property is encumbered by the easement is as follows:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 61 | $43,517,980 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 30, 2014 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 61 | $2,094,550 |

ECOVEST-DOJ_0132195

The value of the easement gift as of December 30, 2014 is as follows and is based upon the before and after value method.  In determining the market nature of a conservation easement, the before and after method is a recognized technique.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 61 | $43,517,980 |
| Less | | |
| Total After Value (Encumbered) | 61 | $2,094,550 |
| **Value of the Easement** | rounded | **$41,423,000** |

The Subject Property has five (5) reserved building sites.  These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these five sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered.  These sites are not build ready and would incur development costs.  There is no enhancement.  This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

ECOVEST-DOJ_0132196

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0132197

Excerpts from Long Bay Marina Appraisal

## Table of Contents

Certification .................................................................................................................................. 7

Summary of the Appraisal ............................................................................................................. 8

Assumptions and Limiting Conditions ......................................................................................... 9

Legal Descriptions and Maps ...................................................................................................... 12

INTRODUCTION: .......................................................................................................................23

Scope of the Assignment ............................................................................................................. 24

    *Competency Provision* ............................................................................................................ 28

    *Appraisal of the Larger Parcel:* ............................................................................................ 29

    *Identification of the Subject Property* .................................................................................... 30

    *Prior Sales History* ................................................................................................................ 30

    *Ownership* ............................................................................................................................... 30

    *Improvements* .......................................................................................................................... 30

    *Taxes* ....................................................................................................................................... 30

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ..................................... 32

SECTION I ................................................................................................................................... 44

APPRAISAL OF THE BEFORE VALUE .................................................................................. 44

    *Highest and Best Use Analysis:* ............................................................................................. 45

        *a)*    *Legally Permissible* ....................................................................................... 46

        *b)*    *Physically Possible* ........................................................................................ 46

        *c)*    *Financially Feasible* ...................................................................................... 46

        *d)*    *Maximally Productive* .................................................................................... 47

        *e)*    *Sufficiency of Demand* ................................................................................... 47

        Conclusion ............................................................................................................... 47

    *Land Valuation:* ...................................................................................................................... 48

        *Discounted Retail Sales Approach* ......................................................................... 48

SECTION II .................................................................................................................................. 95

APPRAISAL OF THE AFTER VALUE ..................................................................................... 95

    *Highest and Best Use Analysis:* ........................................................................................... 110

        *a)*    Legal permissibility ....................................................................................... 111

        *b)*    Physical possibility and suitability ................................................................ 111

        *c)*    Financial feasibility ...................................................................................... 111

        *d)*    Maximum productivity ................................................................................... 111

        *e)*    Sufficiency of demand .................................................................................... 111

        Conclusion: ............................................................................................................ 112

    *Land Valuation* ..................................................................................................................... 113

        Sales Comparison Approach .................................................................................. 113

    *Estimate of the After Value:* ................................................................................................. 135

Reconciliation ............................................................................................................................ 141

ECOVEST-DOJ_0132198

**Addenda**................................................................................................................................**143**

    Qualifications................................................................................................................143
    License..........................................................................................................................143
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............143
    Bowden Report .............................................................................................................143
    Easement ......................................................................................................................143
    Baseline........................................................................................................................143

ECOVEST-DOJ_0132199

Excerpts from Long Bay Marina Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

_(signature)_

Claud Clark III                          State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0132200

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located east of Highway 31 and west of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 30, 2014 |
| **Date of Value Estimates:** | December 30, 2014 |
| **Date of Donation** | December 30, 2014 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | R4 – Resort Residential |
| **Site:** | 61 +- Acres |
| **Easement:** | 61 +- Acres |
| **Reserved:** | Five 1.5-acre Reserved Sites |
| **Total:** | 61 +- Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:    Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0132201

Excerpts from Long Bay Marina Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0132202

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0132203

Excerpts from Long Bay Marina Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0132204

## Legal Descriptions and Maps

### Parcel I:

ALL AND SINGULAR, all that certain piece, parcel or tract of land situate, lying and being in Little River Township, Horry County, South Carolina, being more particularly described as "Tract C containing 6.916 AC. +", as shown on plat entitled "McDuffy Tract, Canal Holdings, LLC Tract, Gibson-Wall Company Tract, H.F. Bell Tract and R.E. Bell No. 2 Tract", prepared by Thomas & Hutton Engineering Co., dated March 25, 2005, and recorded June 1, 2005, in Plat Book 205, at Pages 156 through 156D, in the office of the Register of Deeds for Horry County, South Carolina, reference to which is hereby craved as forming a part and parcel hereof.

### Parcel II:

ALL AND SINGULAR, all that certain piece, parcel or tract of land situate, lying and being in Little River Township, Horry County, South Carolina, being more particularly described as "Tract D containing 53.783 AC. +", as shown on plat entitled "McDuffy Tract, Canal Holdings, LLC Tract, Gibson-Wall Company Tract, H.F. Bell Tract and R.E. Bell No. 2 Tract", prepared by Thomas & Hutton Engineering Co., dated March 25, 2005, and recorded June 1, 2005, in Plat Book 205, at Pages 156 through 156D, in the office of the Register of Deeds for Horry County, South Carolina, reference to which is hereby craved as forming a part and parcel hereof.

ECOVEST-DOJ_0132205

Excerpts from Long Bay Marina Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 61 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0132218

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0132219

## Identification of the Subject Property

The Subject Property is located east of Highway 31 and west of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 61+- acres.

### Prior Sales History

There have been no sales involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Long Bay Marina, LLC

### Improvements

None

### Taxes

Notice #: 301552143

Status: Paid

Date Paid: 01/14/15

## Tax Information

| | |
|---|---|
| Name: | SLF IV/SBI SANDRIDGE LLC |
| Tax Year: | 2014 |
| Assessment Value: | 910 |
| District/Levy: | 550 / 178.3 |
| City/Levy: | NM / 039.3 |

## Property Information

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 143-00-01-013 |
| SC DOR#: | |
| Market Value: | 15,170 |
| Description: | SC HWY 90 TR C S D |

## Taxes

| | |
|---|---|
| County Tax: | $162.25 |
| City Tax: | $35.76 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Penalty: | $0.00 |
| Cost: | $0.00 |
| Installment Payments: | $0.00 |
| Total Taxes: | $198.01 |
| Total Paid: $198.01 | |

ECOVEST-DOJ_0132223

Excerpts from Long Bay Marina Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:    On-Site: No; Adjacent: No
- Observed distressed vegetation:    On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:    On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 61+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0132234

Excerpts from Magnolia Bay Appraisal

# Excerpts from appraisal of: Magnolia Bay Resort

# Document ID: ECOVEST-DOJ_0007074

Excerpts from Magnolia Bay Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Magnolia Bay Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:    Conservation Easement Appraisal
       Magnolia Bay Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is an Appraisal Report
presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions
and Limiting Conditions contained within this report. This report has been prepared, to the best
of my knowledge, to the standards and requirements of the USPAP, the Standards of
Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of
South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the
Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which
is contrary to what is known by the appraiser to exist on the effective date of the assignment
results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department
and through Tax Court opinions to override USPAP. This is primarily used as the standard
relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0007074

Excerpts from Magnolia Bay Appraisal

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 150.55 | $51,275,850 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 150.55 | $962,500 |

ECOVEST-DOJ_0007075

Excerpts from Magnolia Bay Appraisal

I made a search for comparable easements that had sold. I used the before and after method to estimate the fair market value of the easement.

The fair market value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 150.55 | $51,275,850 |
| Less | | |
| Total After Value (Encumbered) | 150.55 | $962,500 |
| | | |
| **Value of the Easement** | rounded | **$50,313,000** |

The encumbered property also includes up to five (5) reserved residential building sites and one (1) reserved recreational building site. While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an additional value over that of the per acre value of the encumbered property. It should be noted that these lots are not build ready lots and will incur some development costs to make them so. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

ECOVEST-DOJ_0007076

Respectfully submitted

Claud Clark III                State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0007077

## Table of Contents

Certification .................................................................................................................................. 7

Summary of the Appraisal ................................................................................................................ 8

Assumptions and Limiting Conditions ............................................................................................. 9

Legal Descriptions and Maps ......................................................................................................... 12

INTRODUCTION: ........................................................................................................................ 23

Scope of the Assignment ............................................................................................................... 24

    *Competency Provision* ...................................................................................................................... 28

    *Appraisal of the Larger Parcel: (Contiguous Parcel)* ................................................................... 29

    *Identification of the Subject Property* .............................................................................................. 30

    *Prior Sales History* .......................................................................................................................... 30

    *Ownership* ......................................................................................................................................... 30

    *Improvements* .................................................................................................................................... 30

    *Taxes* ................................................................................................................................................. 30

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* .............................................. 32

SECTION I. .................................................................................................................................... 46

APPRAISAL OF THE BEFORE VALUE ..................................................................................... 46

    *Highest and Best Use Analysis:* ....................................................................................................... 47
        *a)*   *Legally Permissible* ................................................................................................................... 48
        *b)*   *Physically Possible* .................................................................................................................... 48
        *c)*   *Financially Feasible* .................................................................................................................. 48
        *d)*   *Maximally Productive* ............................................................................................................... 49
        *e)*   *Sufficiency of Demand* .............................................................................................................. 49
        Conclusion ..................................................................................................................................... 49

    *Land Valuation:* ................................................................................................................................ 50
        *Discounted Retail Sales Approach* ............................................................................................... 50

SECTION II .................................................................................................................................. 104

APPRAISAL OF THE AFTER VALUE ....................................................................................... 104

    *Highest and Best Use Analysis:* ..................................................................................................... 122
        a)   Legal permissibility .................................................................................................................. 123
        b)   Physical possibility and suitability ........................................................................................... 123
        c)   Financial feasibility .................................................................................................................. 123
        d)   Maximum productivity .............................................................................................................. 123
        e)   Sufficiency of demand .............................................................................................................. 123
        Conclusion: .................................................................................................................................. 124

    *Land Valuation* .............................................................................................................................. 125
        Sales Comparison Approach ....................................................................................................... 125

    *Estimate of the After Value:* .......................................................................................................... 147

Reconciliation .............................................................................................................................. 153

**Addenda**.................................................................................................................................**154**

   Qualifications..........................................................................................................................154
   License....................................................................................................................................154
   Magnolia Bay Floor Plans......................................................................................................154
   RS Means................................................................................................................................154
   Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............154
   Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
   .................................................................................................................................154
   Bowden Report – Before Scenario..........................................................................................154
   Easement.................................................................................................................................154
   Baseline...................................................................................................................................154

ECOVEST-DOJ_0007079

Excerpts from Magnolia Bay Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0007080

Excerpts from Magnolia Bay Appraisal

**Summary of the Appraisal**

**Property Type:**            Conservation Easement

**Location:**            The subject is located on Long Bay Road and north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:**       To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:**       To estimate the market value of a conservation easement.

**Date of the Appraisal Report:**     December 15, 2015

**Date of Value Estimates:**       December 15, 2015

**Date of Donation**            December 15, 2015

**Property Rights Appraised:**     Before:     Fee Simple Interest
                                 After:      Fee Simple Interest Subject to Easement

**Zoning:**            R2A Resort Residential

**Site:**            150.55 +- Acres

**Easement:**            150.55 +- Acres

**Reserved:**            Five (5) residential and One (1) recreational sites

**Total:**            150.55 +- Acres

**Improvements:**            None

**High and Best Use**         Before:     Residential Development
**of Site as Though Vacant:**     After:       Recreational / Green Space

**Appraiser:**            Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275
                             *** ** 1840 SSN
                             To be provided upon request by the IRS

ECOVEST-DOJ_0007081

Excerpts from Magnolia Bay Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0007082

Excerpts from Magnolia Bay Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor`s records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0007083

Excerpts from Magnolia Bay Appraisal

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0007084

Excerpts from Magnolia Bay Appraisal

**Legal Descriptions and Maps**

ALL AND SINGULAR, that certain piece, parcel or lot of land, situate, lying and being in the City of North Myrtle Beach, Horry County, South Carolina, containing 6,557,930 sq.ft., 150.55 Acres, more or less, as shown and described on a Boundary Survey entitled "Map of 150.55 + Acres of Land, City of North Myrtle Beach, Horry County, South Carolina, Boundary Survey, Prepared for: Magnolia Bay Resort, LLC", dated February 19, 2015, and recorded March 19, 2015, in Plat Book 265, at Page 192, reference to which is hereby craved as forming a part and parcel hereof.

ECOVEST-DOJ_0007085

Excerpts from Magnolia Bay Appraisal

Area Data

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists 150.55 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0007098

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0007099

Excerpts from Magnolia Bay Appraisal

Area Data

## Identification of the Subject Property

The Subject Property is located on Long Bay Road, north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 150.55+-acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Magnolia Bay Resort, LLC

## Improvements

None

## Taxes

| | |
|---|---|
| Name: | SLF (V/SB) SANDRIDGE LLC |
| Address: | 2002 OAK STREET STE 200 MYRTLE BEACH SC 29577 3196 |
| Tax Year: | 2015 |
| District/Levy: | 330 / 193.5 |
| City/Levy: | NM / 039.3 |
| Total Appraisal: | 16,630 |
| Total Assessed: | 1,300 |
| Assessment Ratio: | Land Appraisal: | Building Appraisal: |
| 8% | 16,630 | 0 |

### Property Information

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 143-00-01-077 |
| PIN: | 358-00-00-0007 |
| Acres: | 153.26 |
| Description: | LEWIS TR DUFFIE TR 43 |

### Taxes

| | |
|---|---|
| County Tax: | $185.50 |
| City Tax: | $39.30 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Total Taxes: | $224.80 |
| Total Paid: $224.80 | |

ECOVEST-DOJ_0007103

Excerpts from Magnolia Bay Appraisal

Site Data

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 150.55.5+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0007114

# Excerpts from appraisal of: Maple Equestrian

# Document ID: ECOVEST-DOJ_0224289

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

\* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

January 24, 2012

Mr. Edmund Cash, Manager
Maple Equestrian, LLC
P.O. Box 2579
Rome, GA 30165

Dear Mr. Cash:

RE:   Conservation Easement Maple Equestrian
DeKalb County, Alabama
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0224289

Excerpts from Maple Equestrian Appraisal

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the **_market value_** of the **_fee simple ownership interest_**, **_"before"_** and **_"after"_** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2011, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 409.9 | $8,257,748 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2011 is:



| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 405.9 | $1,000 | $405,900 |

The subject property two (2) reserved home sites. While the home sites cannot claim ownership of the conservation easement area, they can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 20% enhancement to the reserved lots.

The value of the easement gift as of December 30, 2011 is as follows and is based upon the before and after value.

ECOVEST-DOJ_0224290

Excerpts from Maple Equestrian Appraisal

| | | | | |
|---|---|---|---|---|
| Fee Simple Interest | Before | 409.9 | | $8,257,748 |
| Less | | | | |
| Fee Simple Interest with Encumbrance | | 405.9 | $1,000 | $405,900 |
| Less | | | | |
| Two 2-acre Lots Plus Enhancement | | | | $96,000 |
| | | | | |
| Value of the Easement | | | rounded | $7,755,848 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
AL License# G00024

ECOVEST-DOJ_0224291

## Table of Contents

**Certification** .............................................................................................................................. **6**

**Summary of the Appraisal** ........................................................................................................ **7**

**Assumptions and Limiting Conditions** ................................................................................... **8**

**Legal Descriptions and Maps** ................................................................................................. **11**

**INTRODUCTION:** ................................................................................................................... **18**

   *Scope of the Assignment* .......................................................................................................... *19*

   *Competency Provision* ............................................................................................................... *23*

   *Appraisal of the Larger Parcel:* ............................................................................................... *24*

   *Identification of the Subject Property* ...................................................................................... *25*
      Prior Sales History .............................................................................................................. 25
      Ownership ........................................................................................................................... 25
      Taxes ................................................................................................................................... 25
      Improvements ...................................................................................................................... 26

   *General Area Analysis:* ............................................................................................................. *27*

   *Neighborhood Data – Chattanooga, TN* ................................................................................ *30*

   *Chattanooga, TN Demographics* ............................................................................................ *33*

**SECTION I.** ............................................................................................................................... **42**

**APPRAISAL OF THE FEE SIMPLE INTEREST** ................................................................... **42**

   *Highest and Best Use Analysis:* ................................................................................................ *43*
      *a)*   *Legally Permissible* ................................................................................................. *44*
      *b)*   *Physically Possible* .................................................................................................. *44*
      *c)*   *Financially Feasible* ................................................................................................ *44*
      *d)*   *Maximally Productive* .............................................................................................. *45*
      *e)*   *Sufficiency of Demand* ............................................................................................ *45*
      Conclusion .......................................................................................................................... 45
      Hypothetical Condition ....................................................................................................... 45

   *Land Valuation:* ........................................................................................................................ *46*

**SECTION II** .............................................................................................................................. **64**

**APPRAISAL OF THE EASEMENT** .......................................................................................... **64**
      a)   Legal permissibility .............................................................................................. 67
      b)   Physical possibility and suitability ...................................................................... 67
      c)   Financial feasibility ............................................................................................. 67
      d)   Maximum productivity .......................................................................................... 67
      e)   Sufficiency of demand .......................................................................................... 67
      Conclusion: ......................................................................................................................... 68

   *Land Valuation:* ........................................................................................................................ *69*
      Sales Comparison Approach ............................................................................................... 69

**Reconciliation** .......................................................................................................................... **90**

   *QUALIFICATIONS OF CLAUD CLARK III* ........................................................................... *93*

ECOVEST-DOJ_0224292

Excerpts from Maple Equestrian Appraisal

*License* ........................................................................................................................................ *95*

*Planning Certificate* ..................................................................................................................... *96*

*Easement and Baseline Documents* ................................................................................................ *97*

ECOVEST-DOJ_0224293

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
AL License# G00024

ECOVEST-DOJ_0224294

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located in DeKalb County, Alabama. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 24, 2012 |
| **Date of Value Estimates:** | December 30, 2011 |
| **Date of Donation** | December 30, 2011 |
| **Property Rights Appraised:** | Before:  Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 409.9 Acres |
| **Easement:** | 405.9 Acres |
| **Reserved:** | Two 2-acre Building Sites |
| **Total:** | 409.9 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0224295

Excerpts from Maple Equestrian Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0224296

Excerpts from Maple Equestrian Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0224297

Excerpts from Maple Equestrian Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0224298

Excerpts from Maple Equestrian Appraisal

**Legal Descriptions and Maps**

## LEGAL DESCRIPTION
## MAPLE EQUESTRIAN LLC

A Tract of land lying and being in Fractional Section 25, Section 35, and fractional Section 36, Township 4 South, Range 10 East, Dekalb County Alabama, being more particularly described as follows; (Reference Deed Book 330 Pg 79-80)

Beginning at the Southeast corner of said Fractional Section 36, said point being on the Alabama-Georgia State Line;

Thence N89°28'09"W 114.54 feet; Thence N 58°10'02" W 251.27 feet;

Thence N 77°22'48" W 788.52 feet; Thence N 52°03'09" W 923.30 feet;

Thence N 82°57'32" W 1190.10 feet; Thence N 82°06'05" W 1204.90 feet;

Thence N 79°46'41" W 627.15 feet; Thence  N 53°50'22" W 546.38 feet to the easterly boundary of Scenic Drive (Brow Road);

Thence with the Easterly Boundary of said Scenic Drive meander Northeasterly 7159.13 feet, more or less, to a point on the Georgia-Alabama State line;

Thence with the Georgia-Alabama State Line S 09°13'30" E 1989.45 feet;

Thence continuing with the Alabama-Georgia State Line S 08°56'08" E 2526.97 feet;

Thence continuing with the Alabama-Georgia State Line S 08°40'31" E 2772.42 feet to the Point of Beginning. (containing 409.9 acres, more or less)

ECOVEST-DOJ_0224299

Excerpts from Maple Equestrian Appraisal

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for outdoor recreation oriented subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another

CLARK ~ DAVIS, PC

21

ECOVEST-DOJ_0224309

Excerpts from Maple Equestrian Appraisal

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in DeKalb County, Alabama. The site contains 409.9+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Maple Equestrian, LLC

*Taxes*



ECOVEST-DOJ_0224313

Site Data

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No
- Observed staining of soils:                               On-Site: No; Adjacent: No
- Observed distressed vegetation:                   On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":        On-Site: No; Adjacent: No
- Observed noticeable odors:                            On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 409.9 +- acres, of which approximately 409.9 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0224327

Excerpts from Meadow Creek Appraisal

# Excerpts from appraisal of: Meadow Creek

# Document ID: ECOVEST-DOJ_0233588

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

March 18, 2013

Peter Hardin
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:    Conservation Easement Meadow Creek
       Bledsoe County, Tennessee
       Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
       Market Value of the Easement Gift

Dear Mr. Hardin:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

*Foothills Land Conservancy*
*373 Ellis Avenue*
*Maryville, TN 37804*

ECOVEST-DOJ_0233588



Excerpts from Meadow Creek Appraisal

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 27, 2012, and before the subject property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 466.4 | $11,864,714 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 27, 2012 is:

| | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 466.4 | $500 | $233,200 |

The subject property has one (1) reserved site. The lot may not be severed from the master tract, nor may the master tract be divided. Based upon the review of other easements, the value of this site does not warrant a value over and above the price per acre. There is no enhancement.

The value of the easement gift as of December 27, 2012 is as follows and is based upon the before and after value.

| | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 466.4 | | $11,864,714 |
| Less | | | |
| After Value (Encumbered) | 466.4 | $500 | $233,200 |
| Value of the Easement | | rounded | $11,632,000 |

ECOVEST-DOJ_0233589

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

The after valuation is made under the assumption that the easement has been granted.  It has not been granted.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                              State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0233590

Excerpts from Meadow Creek Appraisal

## Table of Contents

**Certification** ......................................................................................................................... **6**

**Summary of the Appraisal** ..................................................................................................... **7**

**Assumptions and Limiting Conditions** ................................................................................. **8**

**Legal Descriptions and Maps** ................................................................................................ **11**

**INTRODUCTION:** ................................................................................................................ **17**

    *Scope of the Assignment* ........................................................................................................ *18*

    *Competency Provision* ............................................................................................................ *22*

    *Appraisal of the Larger Parcel:* ............................................................................................ *23*

    *Identification of the Subject Property* .................................................................................... *24*

    *Prior Sales History* ................................................................................................................ *24*

    *Ownership* ............................................................................................................................... *24*

    *Improvements* .......................................................................................................................... *24*

    *Taxes* ....................................................................................................................................... *25*

    *General Area Analysis* ........................................................................................................... *38*

**SECTION I** ............................................................................................................................ **48**

**APPRAISAL OF THE BEFORE VALUE** ........................................................................... **48**

    *Highest and Best Use Analysis:* ............................................................................................. *49*

        *a)*    *Legally Permissible* ..................................................................................... *50*

        *b)*    *Physically Possible* ...................................................................................... *50*

        *c)*    *Financially Feasible* .................................................................................... *50*

        *d)*    *Maximally Productive* .................................................................................. *51*

        *e)*    *Sufficiency of Demand* ................................................................................. *51*

        Conclusion ........................................................................................................ 51

        Hypothetical Condition ..................................................................................... 51

    *Land Valuation:* ...................................................................................................................... *52*

**SECTION II** ........................................................................................................................... **73**

**APPRAISAL OF THE AFTER VALUE** ............................................................................. **73**

    *Highest and Best Use Analysis:* ............................................................................................. *82*

        *a)*    Legal permissibility ........................................................................................ 83

        *b)*    Physical possibility and suitability ................................................................. 83

        *c)*    Financial feasibility ........................................................................................ 83

        *d)*    Maximum productivity ..................................................................................... 83

        *e)*    Sufficiency of demand ..................................................................................... 83

        Conclusion: ....................................................................................................... 84

    *Land Valuation:* ...................................................................................................................... *85*

        Sales Comparison Approach ............................................................................. 85

**Reconciliation** ........................................................................................................................ **98**

**Addenda** .................................................................................................................................. **99**

ECOVEST-DOJ_0233591

Excerpts from Meadow Creek Appraisal

QUALIFICATIONS.................................................................................................................... 100
License...................................................................................................................................... 102
Land Planner's Certification..................................................................................................... 103
Engineer's Letter on Soil Conditions....................................................................................... 104
Deeds and Tranfer Instruments................................................................................................ 105
Easement and Baseline Documents .......................................................................................... 118

ECOVEST-DOJ_0233592

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0233593

Excerpts from Meadow Creek Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Prater Road near Pikeville mostly in Bledsoe County, Tennessee, with a portion of the property located in Van Buren County. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | March 18, 2013 |
| **Date of Value Estimates:** | December 27, 2012 |
| **Date of Donation** | December 27, 2012 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 466.4 Acres |
| **Easement:** | 466.4 Acres |
| **Reserved:** | 1 reserved site (2.27 acres); may not be severed |
| **Total:** | 466.4 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:     Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC             EIN 63-1075275 |

ECOVEST-DOJ_0233594

Excerpts from Meadow Creek Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES*
*ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0233595

Excerpts from Meadow Creek Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0233596

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0233597

## Legal Descriptions and Maps

Lying and being partly in the Fourth (4th) Civil District of Van Buren County, Tennessee, and partly in the Seventh (7th) Civil District of Bledsoe County, Tennessee, and being more particularly described as follows:

**The following is a description of a portion of the Piney Cumberland Resources property located off of the Park Road and Brockdale Road in the 4th Civil District of Van Buren County, Tennessee (Reference RB56 Page 45 and Tax Map 75 Parcel 18.00) and the 7th Civil District of Bledsoe County, Tennessee (Reference Warranty Deed Book 254 Page 195 and Tax Map 69 parcel 1.01)**

Beginning on a ¼" rebar (found) being the southwestern corner of this described parcel as well as being in the eastern line of the Randell Prater property; thence going with Prater N 34°26'51" W 2617.82 feet to a point in a creek; thence leaving Prater and going with the Kenneth Wood property generally following the meanders of the said creek S 79°59'22" E 65.98 feet; thence S 83°35'21" E 148.57 feet; thence N 43°34'51" E 78.93 feet; thence N 03°29'08" W 193.48 feet; thence N 53°29'06" W 192.93 feet; thence N 67°49'37" W 68.94 feet; thence N 05°02'44" E 194.13 feet; thence N 42°34'29" E 50.70 feet; thence N 21°19'19" E 150.64 feet; thence N 65°11'45" E 49.13 feet; thence N 30°52'42" W 47.27 feet; thence N 72°45'54" E 41.93 feet; thence N 47°58'01" E 38.35 feet; thence S 43°55'52" E 82.91 feet; thence N 08°48'03" E 39.12 feet; thence N 32°58'57" E 33.44 feet; thence N 47°56'22" W 106.84 feet; thence N 62°13'55" W 156.69 feet; thence N 39°44'15" W 64.24 feet; thence N 31°50'47" E 46.28 feet; thence N 52°01'53" W 122.78 feet; thence N 02°08'31" W 29.00 feet; thence S 51°50'04" W 32.15 feet; thence N 83°59'20" W 91.18 feet; thence N 05°58'57" E 77.45 feet; thence S 76°42'32" W 71.15 feet; thence N 09°35'39" W 80.24 feet; thence S 83°35'24" W 55.65 feet; thence N 07°20'01" W 50.38 feet; thence N 84°08'12" E 42.04 feet; thence N 39°13'37" E 33.90 feet; thence N 21°09'03" W 73.02 feet; thence N 54°54'37" W 67.71 feet; thence N 73°32'35" E 81.78 feet; thence N 21°10'06" W 45.61 feet; thence N 08°11'25" E 64.15 feet; thence N 10°03'58" E 42.66 feet; thence S 72°26'47" W 48.88 feet; thence N 48°57'47" W 61.06 feet; thence N 49°10'59" E 37.55 feet; thence S 87°26'56" E 53.49 feet; thence N 41°26'20" E 44.40 feet; thence S 74°56'17" E 45.90 feet; thence N 06°08'51" W 71.52 feet; thence S 71°58'51" E 55.03 feet; thence N 26°00'43" W 44.98 feet; thence N 41°00'15" W 102.08 feet; thence N 57°56'08" E 71.23 feet; thence N 06°02'39" W 52.79 feet; thence S 65°18'08" W 122.24 feet; thence N 40°48'42" W 72.46 feet; thence N 57°18'03" E 42.25 feet; thence N 50°22'01" E 32.79 feet; thence N 54°19'10" W 79.11 feet; thence N 50°40'41" E 94.58 feet; thence N 63°12'24" W 51.37 feet; thence N 36°15'34" E 66.98 feet; thence N 50°56'44" E 71.39 feet; thence N 05°28'46" E 62.05 feet; thence N 08°00'45" W 128.23 feet; thence N 10°15'36" W 79.60 feet; thence N 12°38'06" E 118.65 feet; thence N 12°19'58" W 67.26 feet; thence N 43°38'31" W 89.65 feet; thence N 73°08'00" W 90.64 feet; thence N 23°53'44" W 32.93 feet; thence N 48°14'56" E 76.00 feet; thence N

ECOVEST-DOJ_0233598

46°17'36" E 108.55 feet; thence N 18°50'19" W 187.79 feet; thence N 18°04'49" W 114.67 feet; thence N 21°10'54" W 67.48 feet; thence N 80°56'55" W 162.23 feet; thence N 77°55'45" W 114.84 feet; thence N 10°38'06" W 24.09 feet; thence N 42°17'21" E 153.51 feet; thence N 47°12'11" E 150.07 feet; thence N 01°31'23" E 131.60 feet; thence N 49°04'53" E 69.60 feet; thence S 73°25'35" E 125.56 feet; thence N 17°02'08" E 58.80 feet; thence N 09°40'13" W 87.91 feet; thence N 75°29'32" W 104.43 feet; thence N 61°29'15" W 66.54 feet to a point in the creek; thence leaving the said creek and continuing with the Wood property N 55°17'44" E 335.80 feet to an angle iron; thence continuing with the same N 86°37'37" W 401.30 feet to a point in a creek; thence leaving the Wood property and generally following the meanders of the said creek (location of the creek was generated from a USGS topographic map and has not been field verified) N 03°22'23" E 0.05 feet to a point; thence N 01°47'28" E 141.38 feet; thence N 07°18'21" E 126.79 feet; thence N 36°31'44" E 108.35 feet; thence N 76°14'21" E 162.67 feet; thence N 75°57'50" E 93.07 feet; thence S 88°56'21" E 174.16 feet; thence N 48°21'59" E 116.49 feet; thence N 20°13'29" E 65.29 feet; thence N 47°17'26" E 57.05 feet; thence N 87°23'51" E 71.01 feet; thence S 67°22'48" E 125.76 feet; thence S 69°04'32" E 117.38 feet; thence S 87°42'34" E 80.68 feet; thence N 77°46'30" E 197.97 feet; thence N 52°15'12" E 126.42 feet; thence N 70°54'23" E 177.44 feet; thence S 86°08'16" E 114.94 feet to a point in the said creek; thence leaving the creek and going with the Lester Allison property S 39°56'57" E 2949.21 feet to a set stone; thence leaving Allison and going with the Don Wheeler property S 35°13'48" E 3018.30 feet to a stone; thence continuing with the same S 45°47'15" W 11.76 feet to a 1/2" rebar (found); thence leaving Wheeler and going with the Ronald Swafford property S 55°18'35" W 1906.22 feet to a 1/2" rebar (found); thence continuing with the same S 54°40'56" W 587.86 feet to a 1/2" rebar (found); thence S 55°40'58" W 1072.53 feet to a 3/8" rebar (found); thence leaving Swafford and going with the Allie Mooneyham property S 62°48'56" W 60.00 feet; thence continuing with the same S 53°58'29" W 306.48 feet; thence S 52°29'01" W 22.10 feet to the beginning being 466.40 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 23 September 2011.

BEING the same property conveyed to the Grantor herein by deed of record in Book RB64, Page 296 of the Register of Deeds Office for Van Buren County, Tennessee, and also found in Book RB266, Page 139 of the Register of Deeds Office for Bledsoe County, Tennessee.

ECOVEST-DOJ_0233599

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises Step 4. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0233606

Excerpts from Meadow Creek Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These type of properties are best evaluated using a DCF method.   The specific state park information will follow in the DCF explanation later in the report.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF, income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of significance is proximity to other recreational features such as national and state forests and parks.  This property is very close to Fall Creek Falls State Park and Bledsoe State Forest.

ECOVEST-DOJ_0233607

Excerpts from Meadow Creek Appraisal

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located of Prater Road near Pikeville in Bledsoe County, Tennessee, with a portion in Van Buren County. The site contains 466.4+- acres.

## Prior Sales History

The Subject is not listed for sale.  The following is a detailed description of the sales history of the Subject Property for the last three years, a copy of the deeds are located in the addenda:

> Southeastern Timberland Group, LLC, sold the tract, (containing both the Piney Cumberland tract and the Meadow Creek tract), by deed dated March 18, 2010, to Piney Cumberland Resources, LLC, under deed of record at Book RB56, page 45, Register's Office, Van Buren County, Tennessee, as subsequently restated by instrument dated November 30, 2011, of record at Book RB63, page 837.

> Piney Cumberland, LLC, severed the tract with a conveyance to Meadow Creek Investments, LLC, by deed dated December 29, 2011, of record at Book RB 64, page 296.

## Ownership

Meadow Creek Investments, LLC

## Improvements

None

ECOVEST-DOJ_0233611

Excerpts from Meadow Creek Appraisal

Site Data

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No
- Observed staining of soils:   On-Site: No; Adjacent: No
- Observed distressed vegetation:   On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":   On-Site: No; Adjacent: No
- Observed noticeable odors:   On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 466.4 +- acres, of which approximately 466.4 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0233629

Excerpts from Miramar Pointe Appraisal

Excerpts from appraisal of:
Miramar Pointe

Document ID:
ECOVEST-DOJ_0201943

<span style="color:red">Excerpts from Miramar Pointe Appraisal</span>

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 28, 2019

Miramar Pointe LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:     Conservation Easement Appraisal
        Miramar Pointe, LLC
        452.65-acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or other guidance.* I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

1

ECOVEST-DOJ_0201943

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows:
*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

2

ECOVEST-DOJ_0201944

Excerpts from Miramar Pointe Appraisal

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction.  If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 452.65-acre conservation easement in Calhoun County, Texas. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***Fair Market Value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

3

ECOVEST-DOJ_0201945

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 7, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| **Total Fair Market Value Before the Easement Fee Simple** | 452.65 | **$83,674,114** |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 7, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| **Total Fair Market Value After the Easement Fee Simple (rounded)** | 452.65 | $1,800 | **$814,770** |

The encumbered property also includes two reserved residential building zones that permit up to two residential building sites and six accessory dwelling sites. The property also allows for the construction of a community building area and a beach access area. In theory, if taken as separate components of the valuation, the building areas and the remaining eased area that cannot be improved have different values. These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement. It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

4

ECOVEST-DOJ_0201946

Excerpts from Miramar Pointe Appraisal

The Fair Market Value of the easement gift as of December 7, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $83,674,114.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $814,770.  Using the before and after method, the Fair Market Value of the Conservation Easement is $82,859,000 (rounded).

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 452.65 | | $83,674,114 |
| Total Fair Market Value After the Easement | 452.65 | $1,800 | $814,770 |
| **Fair Market Value of the Easement** | | | **$82,859,000** |

Fair Market Value of the Conservation Easement on the effective date is:

***EIGHTY-TWO MILLION EIGHT HUNDRED FIFTY-NINE THOUSAND DOLLARS***

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

5

ECOVEST-DOJ_0201947

Excerpts from Miramar Pointe Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

6

ECOVEST-DOJ_0201948

**CLAUD CLARK III, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:  Claud@ClarkAppraisals.com

December 7, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

7

ECOVEST-DOJ_0201949

The houses were leveled. Immediately the developers came in and assembled the lots into wider  lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are  only a few houses on the beach today. It is high rise condos.

Specifically, Miramar Pointe will progress as planned with only slight delays for infrastructure   repair. I think that the aggressive marketing program will still prove to be effective. This is based  on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

8

ECOVEST-DOJ_0201950

Excerpts from Miramar Pointe Appraisal

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will consume the year ahead, but elements such as refining, petrochemicals and shipping will recover in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our society and our economy that continue on as though nothing has happened. Growth in the Texas market is not going to stop. Many corporations continue to migrate to Texas and to expand. The energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump in growth when rebuilding is added to the already existing demand in Texas, among the healthiest in the nation. One can also argue that the Texas' coast location has been in a known hurricane zone for centuries and that the risks associated with the location are baked in and do not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum. Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and residential migration will continue to occur. The shore will continue to be a magnet. Hurricane Harvey has no impact on these dynamics. This is the most fundamental truth that should not be forgotten and is a powerful reason to remain bullish on Texas and its coast.

9

ECOVEST-DOJ_0201951

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure  will be refreshed to contemporary standards. Roads will be improved. The area will be even  more beautiful than it was before. The quality of the area will improve. The area will become  more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the  time to secure a position in the market and to proceed to develop a resort style residential  development that can begin to close sales in late 2018- 2019 and tap into the strong currents of  demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.  Sincerely,

*Ralph S Bowden*

Ralph S. Bowden  President

10

ECOVEST-DOJ_0201952

Excerpts from Miramar Pointe Appraisal

## Table of Contents

**Certification of Appraiser** .............................................................................................................................. 13

**Summary of the Appraisal** ............................................................................................................................ 15

**Assumptions and Limiting Conditions** .......................................................................................................... 16

**Legal Descriptions and Maps** ....................................................................................................................... 19

**INTRODUCTION** .......................................................................................................................................... 44

**Scope of the Assignment** ............................................................................................................................... 45
   *Competency Provision* .................................................................................................................................. 47

  *Identification of the Subject Property* ........................................................................................................... 49

  *Prior Sales History* ...................................................................................................................................... 49

  *Ownership* .................................................................................................................................................... 49

  *Improvements* .............................................................................................................................................. 49

  *Taxes* ........................................................................................................................................................... 49

   *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ................................................. 52

**SECTION I** ................................................................................................................................................... 66

**APPRAISAL OF THE BEFORE VALUE** ......................................................................................................... 66

  *Highest and Best Use Analysis:* ................................................................................................................... 67
    *a)*   *Legally Permissible* ............................................................................................................................... 69
    *c)*   *Financially Feasible* .............................................................................................................................. 69
    *d)*   *Maximally Productive* ............................................................................................................................ 70
    *e)*   *Sufficiency of Demand* ........................................................................................................................... 70
    *Conclusion* ................................................................................................................................................ 70

  *Land Valuation:* ........................................................................................................................................... 73
    *Discounted Retail Sales Approach* ............................................................................................................ 73

**SECTION II** ................................................................................................................................................ 124

**APPRAISAL OF THE AFTER VALUE** .......................................................................................................... 124
    *b)*   *Physical possibility and suitability* ......................................................................................................... 143
    *c)*   *Financial feasibility* .............................................................................................................................. 143
    *d)*   *Maximum productivity* ........................................................................................................................... 143
    *e)*   *Sufficiency of demand* ........................................................................................................................... 144
    *Conclusion:* ............................................................................................................................................. 144

11

ECOVEST-DOJ_0201953

Excerpts from Miramar Pointe Appraisal

*Land Valuation* ................................................................................................................................. *145*

   *Sales Comparison Approach* ............................................................................................................ *145*

*Estimate of the After Value:* ............................................................................................................ *154*

**Reconciliation** **Reconciliation and Appraisal of the Easement** ..................................................... 160

**Addenda** ........................................................................................................................................... 162

   *Qualifications* ................................................................................................................................... *162*

   *License* .............................................................................................................................................. *162*

   *Deed and Title Documents* ............................................................................................................... *162*

   *Unit Plans* ........................................................................................................................................ *162*

   *Cost Estimates* ................................................................................................................................. *162*

   *Development Letters* ........................................................................................................................ *162*

   *Mineral Assessment* ........................................................................................................................ *162*

   *Demographic Reports* ...................................................................................................................... *162*

   *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue* ........... *162*

   *Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue* ........................................................................................................................................... *162*

   *Crystal Lagoon Information and Supporting Documents* ................................................................ *162*

   *Bowden Report – Before Scenario* ................................................................................................. *162*

   *Easement* .......................................................................................................................................... *162*

   *Baseline* ............................................................................................................................................ *162*

12

ECOVEST-DOJ_0201954

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

13

ECOVEST-DOJ_0201955

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

14

ECOVEST-DOJ_0201956

Excerpts from Miramar Pointe Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off County Road 314, south of the town of Port Comfort in Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 28, 2019 |
| **Date of Inspection:** | January 18, 2019 |
| **Date of Value Estimates:** | December 7, 2018 |
| **Date of Donation** | December 7, 2018 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:        Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 452.65 Acres |
| **Easement:** | 452.65 Acres |
| **Reserved:** | Two Residential Building Zones, One Community Building Zone, which total 6 acres, and One Beach Access Area that totals 1.845 acres, all located within the easement |
| **Total:** | 452.65 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:        Residential Development<br>After:          Recreational / Green Space with three Building Zones totaling 6 acres and one Beach Access Are totaling 1.845 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC            EIN 63-1075275<br>SS# \*\*\*-\*\*-1840 Will be provided to IRS upon request. |

15

ECOVEST-DOJ_0201957

Excerpts from Miramar Pointe Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

16

ECOVEST-DOJ_0201958

Excerpts from Miramar Pointe Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0201959

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

18

ECOVEST-DOJ_0201960

Excerpts from Miramar Pointe Appraisal

## Legal Descriptions and Maps

TRACT 6A
180.78 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 180.78 acre tract of land situated in the Abner L. Clements Survey, Abstract No. 58, Calhoun County, Texas and being that same Tract 8, a called 212.78 acre tract of land described by Deed dated January 31, 1976, conveyed from W.H. Bauer and H.C. Smith to W.H. Bauer, Jr., et al as recorded in Volume 302, Page 888 of the Deed Records, Calhoun County, Texas, said 180.78 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a point along the southeast shoreline of Keller Bay marking the north corner of the aforesaid 212.78 acre tract and being the west corner of Tract 7, a called 199.78 acre tract of land described by Instrument to W.H. Bauer, Jr., et al as recorded in Volume 302, Page 838 of the Deed Records, Calhoun County, Texas for the north most corner of the herein described tract;

THENCE, South 36°51'01" East, along a common line between said 212.78 acre tract and the aforesaid Tract 7, at a distance of 30.54 feet passing a found 5/8" steel rebar (disturbed) for reference and being the west corner of a called 2.00 acre tract of land described by Affidavit as recorded in Instrument No. 140470 of the Official Public Records, Calhoun County, Texas, at a distance of 180.56 feet passing a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference of the aforesaid 2.00 acre tract, at a distance of 862.58 feet passing a found concrete monument along the common line between said 212.78 acre tract, said Tract 7, and said 2.00 acre tract, at a distance of 983.26 feet passing a found concrete monument for reference of said 2.00 acre tract, and continuing for a total distance of 1094.92 feet to a point along the northwest shoreline of Matagorda Bay along a common line between said 212.78 acre tract and said Tract 7 for the east corner of the herein described tract;

THENCE, along the northwest shoreline of said Matagorda Bay, the following courses and distances:

- South 59°09'56" West, a distance of 683.93 feet to an angle point for the herein described tract;

- South 58°27'48" West, a distance of 1381.61 feet to an angle point for the herein described tract;

- South 59°14'43" West, a distance of 2984.00 feet to an angle point for the herein described tract;

- South 57°10'17" West, a distance of 1251.39 feet to a point along the northwest shoreline of said Matagorda Bay and being along a common line between said 212.78 acre tract and Tract 9, a called 556.02 acre tract of land described by Instrument to W.H. Bauer, Jr., et al as recorded in Volume 302, Page 838 of the Deed Records, Calhoun County, Texas for the south most corner of the herein described tract;

THENCE, North 40°25'26" West, along a common line between said 212.78 acre tract and the aforesaid Tract 9, at a distance of 160.00 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference, at a distance of 2342.41 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference, and continuing for a total distance of 2442.41 feet to a point along the southeast shoreline of said Keller Bay marking a common corner between said 212.78 acre tract and said Tract 9 for the west corner of the herein described tract;

THENCE, along the southeast shoreline of said Keller Bay, the following courses and distances:

- North 71°04'30" East, a distance of 404.66 feet to an angle point for the herein described tract;

- South 69°46'23" East, a distance of 1803.04 feet to an angle point for the herein described tract;

- North 79°38'32" East, a distance of 284.31 feet to an angle point for the herein described tract;

- North 16°58'44" East, a distance of 176.40 feet to an angle point for the herein described tract;

1

19

ECOVEST-DOJ_0201961

- North 26°22'12" West, a distance of 550.90 feet to an angle point for the herein described tract;

- North 42°18'25" East, a distance of 684.14 feet to an angle point for the herein described tract;

- North 68°13'00" East, a distance of 248.84 feet to an angle point for the herein described tract;

- South 78°26'06" East, a distance of 967.13 feet to an angle point for the herein described tract;

- South 36°07'18" East, a distance of 269.13 feet to an angle point for the herein described tract;

- South 83°27'38" East, a distance of 262.88 feet to an angle point for the herein described tract;

- South 61°38'39" East, a distance of 111.42 feet to an angle point for the herein described tract;

- North 02°32'27" East, a distance of 273.34 feet to an angle point for the herein described tract;

- North 71°38'53" West, a distance of 202.52 feet to an angle point for the herein described tract;

- North 39°59'25" West, a distance of 174.99 feet to an angle point for the herein described tract;

- South 89°14'47" West, a distance of 110.19 feet to an angle point for the herein described tract;

- North 23°27'23" West, a distance of 286.17 feet to an angle point for the herein described tract;

- North 48°40'31" West, a distance of 336.47 feet to an angle point for the herein described tract;

- North 85°37'55" East, a distance of 445.01 feet to an angle point for the herein described tract;

- South 31°23'52" East, a distance of 223.20 feet to an angle point for the herein described tract;

- South 19°41'38" West, a distance of 103.14 feet to an angle point for the herein described tract;

- South 16°22'43" East, a distance of 257.75 feet to an angle point for the herein described tract;

- South 78°56'47" East, a distance of 451.83 feet to an angle point for the herein described tract;

- North 01°16'47" East, a distance of 471.82 feet to an angle point for the herein described tract;

- North 57°50'59" East, a distance of 202.75 feet to an angle point for the herein described tract;

- North 35°25'30" East, a distance of 161.69 feet to an angle point for the herein described tract;

- North 74°54'26" East, a distance of 164.87 feet to an angle point for the herein described tract;

- North 65°24'11" East, a distance of 208.72 feet to an angle point for the herein described tract;

- South 83°27'36" East, a distance of 184.38 feet to an angle point for the herein described tract;

- North 82°37'31" East, a distance of 88.22 feet to an angle point for the herein described tract;

2

20

ECOVEST-DOJ_0201962

Excerpts from Miramar Pointe Appraisal

- North 08°36'09" East, a distance of 161.64 feet to an angle point for the herein described tract;
- South 89°05'26" East, a distance of 153.77 feet to an angle point for the herein described tract;

- North 39°02'41" East, a distance of 598.27 feet to an angle point for the herein described tract;

- North 63°45'25" East, a distance of 247.01 feet to an angle point for the herein described tract;

- North 49°21'24" East, a distance of 111.81 feet to the POINT OF BEGINNING, CONTAINING within these
  metes and bounds a 180.78 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the
ground under my supervision in August, 2018 and are true and correct to the best of my knowledge and belief.

08/28/2018

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S22675.01

3

21

ECOVEST-DOJ_0201963

Excerpts from Miramar Pointe Appraisal

**TRACT 6B**
**271.87 ACRES**

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 271.87 acre tract of land situated in the Abner L. Clements Survey, Abstract No. 58, Calhoun County, Texas and being that same Tract 10, a called 303.10 acre tract of land described by Deed dated January 31, 1976, conveyed from W.H. Bauer and H.C. Smith to W.H. Bauer, Jr., et al as recorded in Volume 302, Page 968 of the Deed Records, Calhoun County, Texas, said 271.87 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a point along the westerly shoreline of Keller Bay being along a common line between the aforesaid 303.10 acre tract and Tract 9, a called 566.02 acre tract of land described by instrument to W.H. Bauer, Jr., et al as recorded in Volume 302, Page 838 of the Deed Records, Calhoun County, Texas for the southeast corner of the herein described tract;

HENCE, South 76°49'28" West, departing the westerly shoreline of said Keller Bay, with a common line between said 303.10 acre tract and the aforesaid Tract 9, at a distance of 100.00 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference, at a distance of 3100.81 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference, and continuing for a total distance of 3300.81 feet to a point along the easterly shoreline of Lavaca Bay and being along a common line between said 303.10 acre tract and said Tract 9 for the southwest corner of the herein described tract;

THENCE, along the easterly shoreline of said Lavaca Bay, the following courses and distances:
- North 15°37'57" West, a distance of 1541.00 feet to an angle point for the herein described tract;
- North 18°04'49" East, a distance of 487.70 feet to an angle point for the herein described tract;
- North 27°13'36" East, a distance of 898.41 feet to an angle point for the herein described tract;
- North 14°28'31" East, a distance of 289.09 feet to an angle point for the herein described tract;
- North 15°01'00" East, a distance of 377.76 feet to an angle point for the herein described tract;
- North 17°31'15" East, a distance of 739.52 feet to an angle point for the herein described tract;
- North 30°19'36" East, a distance of 470.15 feet to an angle point for the herein described tract;
- North 63°55'13" East, a distance of 242.37 feet to an angle point for the herein described tract;

THENCE, along the southerly and westerly shoreline of said Keller Bay, the following courses and distances:
- North 85°58'41" East, a distance of 346.23 feet to an angle point for the herein described tract;
- South 60°12'31" East, a distance of 254.57 feet to an angle point for the herein described tract;
- North 89°49'38" East, a distance of 291.26 feet to an angle point for the herein described tract;
- South 73°11'49" East, a distance of 182.25 feet to an angle point for the herein described tract;
- South 48°06'03" East, a distance of 662.25 feet to an angle point for the herein described tract;
- South 26°29'26" East, a distance of 236.24 feet to an angle point for the herein described tract;

1

22

ECOVEST-DOJ_0201964

Excerpts from Miramar Pointe Appraisal

- South 39°04'30" East, a distance of 130.95 feet to an angle point for the herein described tract;

- South 12°51'00" East, a distance of 410.64 feet to an angle point for the herein described tract;

- South 29°17'59" East, a distance of 685.56 feet to an angle point for the herein described tract;

- South 01°12'14" East, a distance of 255.49 feet to an angle point for the herein described tract;

- South 60°50'56" West, a distance of 125.81 feet to an angle point for the herein described tract;

- South 07°46'08" West, a distance of 532.00 feet to an angle point for the herein described tract;

- South 12°48'50" East, a distance of 1135.25 feet to the **POINT OF BEGINNING, CONTAINING** within these metes and bounds a 271.87 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in August, 2018 and are true and correct to the best of my knowledge and belief.

08/28/2018

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S22675-02

2

23

ECOVEST-DOJ_0201965

Excerpts from Miramar Pointe Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost.  This cost is often obtained from local sources and Marshall and Swift Valuation Service.  Cost developed is compared with local data.  Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data.  The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with underlying development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed.  Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such

46

ECOVEST-DOJ_0201988

Excerpts from Miramar Pointe Appraisal

**Identification of the Subject Property**

The subject is located off County Road 314, south of the town of Port Comfort in Calhoun County, Texas. The site contains 452.65 acres.

*Prior Sales History*

The Subject is not currently listed for sale.

The Subject Property was purchased by Miramar Pointe, LLC from Bauer Family Ranches II LTD for $2,714,578.95 on August 31, 2018. Copies of the deed and title documents are located in the addenda.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found only the above referenced sale of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

*Ownership*

Miramar Pointe, LLC

*Improvements*

None

*Taxes*

49

ECOVEST-DOJ_0201991

Excerpts from Miramar Pointe Appraisal

- the detection of such materials.
- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject. This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:

- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:            On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:             On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 452.65 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

62

ECOVEST-DOJ_0202004

Excerpts from Montego Pointe Appraisal

# Excerpts from appraisal of: Montego Pointe

# Document ID: ECOVEST-DOJ_0186699

Excerpts from Montego Pointe Appraisal

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

### January 28, 2019

Montego Pointe LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
Montego Pointe, LLC
246.79-acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or  other guidance.* I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and*

1

ECOVEST-DOJ_0186699

*experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:
*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*
*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

2

ECOVEST-DOJ_0186700

Excerpts from Montego Pointe Appraisal

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction. If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 246.79-acre conservation easement in Calhoun County, Texas. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

**Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.**

ECOVEST-DOJ_0186701

Excerpts from Montego Pointe Appraisal

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of November 29, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement Fee Simple | 246.79 | $77,159,713 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of November 29, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value After the Easement Fee Simple (rounded) | 246.79 | $1,800 | $444,222 |

The encumbered property also includes one reserved building zone that allows for one home  site.  This site allows for one residence and one additional residence that can be no more than ½  the size of the main residence, basically a mother-in-law cottage. In theory, if taken as separate components of the valuation, the building area and the remaining eased area that cannot be improved have different values. This site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided that this site does not warrant any additional value over that of the balance of the eased area, but I do feel that it does add to the value of the total tract; therefore, the value of this tract will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

The Fair Market Value of the easement gift as of November 29, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $77,159,713.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $444,222.  Using the before and after method, the Fair Market Value of the Conservation Easement is $76,715,000 (rounded).

4

ECOVEST-DOJ_0186702

Excerpts from Montego Pointe Appraisal

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 246.79 | | $77,159,713 |
| Total Fair Market Value After the Easement | 246.79 | $1,800 | $444,222 |
| **Fair Market Value of the Easement** | | | **$76,715,000** |

Fair Market Value of the Conservation Easement on the effective date is:

### *SEVENTY-SIX MILLION SEVEN HUNDRED FIFTEEN THOUSAND DOLLARS*

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

5

ECOVEST-DOJ_0186703

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

6

ECOVEST-DOJ_0186704

Excerpts from Montego Pointe Appraisal

**CLAUD CLARK III, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:  Claud@ClarkAppraisals.com

November 29, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

7

ECOVEST-DOJ_0186705

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Montego Pointe will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

8

ECOVEST-DOJ_0186706

## RALPH STEWART BOWDEN, Inc.
### REAL ESTATE COUNSELORS
626 Elk Run Lane  Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will  consume the year ahead, but elements such as refining, petrochemicals and shipping will recover  in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our  society and our economy that continue on as though nothing has happened. Growth in the Texas  market is not going to stop. Many corporations continue to migrate to Texas and to expand. The  energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to  buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump  in growth when rebuilding is added to the already existing demand in Texas, among the  healthiest in the nation. One can also argue that the Texas' coast location has been in a known  hurricane zone for centuries and that the risks associated with the location are baked in and do  not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and  residential migration will continue to occur. The shore will continue to be a magnet. Hurricane  Harvey has no impact on these dynamics. This is the most fundamental truth that should not be  forgotten and is a powerful reason to remain bullish on Texas and its coast.

9

ECOVEST-DOJ_0186707

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure  will be refreshed to contemporary standards. Roads will be improved. The area will be even  more beautiful than it was before. The quality of the area will improve. The area will become  more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the  time to secure a position in the market and to proceed to develop a resort style residential  development that can begin to close sales in late 2018- 2019 and tap into the strong currents of  demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.  Sincerely,

*Ralph S Bowden*

Ralph S. Bowden President

10

ECOVEST-DOJ_0186708

# Table of Contents

Certification of Appraiser .................................................................................................................... 13

Summary of the Appraisal ................................................................................................................... 15

Assumptions and Limiting Conditions ................................................................................................. 16

Legal Descriptions and Maps .............................................................................................................. 19

INTRODUCTION .................................................................................................................................. 35

Scope of the Assignment .................................................................................................................... 36
    *Competency Provision* .................................................................................................................. 38

*Identification of the Subject Property* ............................................................................................. 40

*Prior Sales History* .......................................................................................................................... 40

*Ownership* ........................................................................................................................................ 40

*Improvements* .................................................................................................................................. 40

*Taxes* ................................................................................................................................................ 40

    *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ............................... 43

SECTION I .......................................................................................................................................... 57

APPRAISAL OF THE BEFORE VALUE ............................................................................................. 57

*Highest and Best Use Analysis:* ...................................................................................................... 58
    *a)*   *Legally Permissible* ............................................................................................................ 59
    *c)*   *Financially Feasible* ........................................................................................................... 59
    *d)*   *Maximally Productive* ......................................................................................................... 60
    *e)*   *Sufficiency of Demand* ....................................................................................................... 60
    *Conclusion* ................................................................................................................................. 60

*Land Valuation:* ............................................................................................................................... 63
    *Discounted Retail Sales Approach* ............................................................................................ 63

SECTION II ....................................................................................................................................... 109

APPRAISAL OF THE AFTER VALUE .............................................................................................. 109
    *b)*   *Physical possibility and suitability* ................................................................................... 128
    *c)*   *Financial feasibility* .......................................................................................................... 128
    *d)*   *Maximum productivity* ....................................................................................................... 128
    *e)*   *Sufficiency of demand* ....................................................................................................... 129
    *Conclusion:* ............................................................................................................................. 129

*Land Valuation* ............................................................................................................................. 130
    *Sales Comparison Approach* ................................................................................................... 130

11

ECOVEST-DOJ_0186709

*Estimate of the After Value:* .................................................................................................................... *139*

**Reconciliation** **Reconciliation and Appraisal of the Easement** ..................................................................... **145**

**Addenda** ...................................................................................................................................................... **147**
    *Qualifications* ........................................................................................................................................ *147*
    *License* .................................................................................................................................................. *147*
    *Deed and Title Documents* ..................................................................................................................... *147*
    *Unit Plans* ............................................................................................................................................. *147*
    *Cost Estimates* ...................................................................................................................................... *147*
    *Development Letters* ............................................................................................................................... *147*
    *Mineral Assessment* .............................................................................................................................. *147*
    *Demographic Reports* ............................................................................................................................ *147*
    *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue* ........... *147*
    *Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue* .................................................................................................................................................. *147*
    *Crystal Lagoon Information and Supporting Documents* .......................................................................... *147*
    *Bowden Report – Before Scenario* .......................................................................................................... *147*
    *Easement* ............................................................................................................................................. *147*
    *Baseline* ................................................................................................................................................ *147*

12

ECOVEST-DOJ_0186710

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1.  I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2.  I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3.  I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4.  The statements of fact contained in this report are true and correct.

5.  The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6.  I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7.  My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8.  My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9.  I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

13

ECOVEST-DOJ_0186711

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

14

ECOVEST-DOJ_0186712

Excerpts from Montego Pointe Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway  185 and north of the Intracoastal Waterway, just west of  Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 28, 2019 |
| **Date of Inspection:** | January 18, 2019 |
| **Date of Value Estimates:** | November 29, 2018 |
| **Date of Donation** | November 29, 2018 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 246.79 Acres |
| **Easement:** | 246.79 Acres |
| **Reserved:** | One Four-acre Reserved Building Zone located within the easement |
| **Total:** | 246.79 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:      Residential Development<br>After:       Recreational / Green Space with one 4-acre building zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC          EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0186713

Excerpts from Montego Pointe Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

16

ECOVEST-DOJ_0186714

Excerpts from Montego Pointe Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

### Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

17

ECOVEST-DOJ_0186715

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

18

ECOVEST-DOJ_0186716

Excerpts from Montego Pointe Appraisal

## Legal Descriptions and Maps

246.79 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 246.79 acre tract of land situated in a portion of the Clete Garcia Survey, Abstract No. 14 and a portion of the Pedro Garcia Survey, Abstract No. 16, Calhoun County, Texas, being a portion of Lot 2 and Lot 3, Section 9, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page X, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 246.79 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" steel rebar along a southeast line of a 100-foot Roadway Easement described by Instrument as recorded in Instrument No. 142896 of the Official Public Records, Calhoun County, Texas, marking the northwesterly corner of a called 333.33 acre tract of land described by Instrument to Mike C. Williams as recorded in Instrument No. 143573 of the Official Public Records, Calhoun County, Texas for the north corner of the herein described tract, from which a found 5/8" steel rebar marking the north corner of the aforesaid 333.33 acre tract, same being the east most corner of the aforesaid 100-foot Roadway Easement, and being along the southwest line of a 481.64 acre tract of land described by Instrument to Matagorda Land Holdings, LLC (Santa Bay Resort, LLC by Instrument No. 2017-02129) as recorded in Instrument No. 152028 of the Official Public Records, Calhoun County, Texas bears North 64°50'17" East, a distance of 3774.13 feet;

THENCE, South 28°18'13" East, departing the southeast line of said 100-Roadway Easement, with the southwest line of said 333.33 acre tract, at a distance of 3670.31 feet passing a found 5/8" steel rebar for reference and continuing for a total distance of 4027.48 feet to a point marking the south corner of said 333.33 acre tract and being along the southeast line of the aforementioned 12,228.52 acre tract for the southeasterly corner of the herein described tract;

THENCE, South 62°05'55" West, along the southeast line of said 12,228.52 acre tract, a distance of 2624.29 feet to a point along the southeast line of said 12,228.52 acre tract marking the southeasterly corner of a portion of Tract 2, a called 960.48 acre tract of land described by Instrument to Alan B. Roberts and wife, Robyn Roberts as recorded in Instrument No. 145897 of the Official Public Records, Calhoun County, Texas for the south corner of the herein described tract;

THENCE, North 28°17'35" West, along a northeast line of the aforesaid Roberts Tract, at a distance of 376.24 feet passing a found 5/8" steel rebar for reference and continuing for a total distance of 1436.27 feet to a found 5/8" steel rebar marking an exterior corner of said Roberts Tract for an interior corner of the herein described tract,

THENCE, South 77°16'53" West, continuing along a southeast line of said Roberts Tract, a distance of 7.04 feet to a found 5/8" steel rebar marking an interior corner of said Roberts Tract for an exterior corner of the herein described tract;

THENCE, North 28°17'28" West, continuing along a northeast line of said Roberts Tract, a distance of 2715.25 feet to a found 5/8" steel rebar along the southeast line of said 100-foot Roadway Easement marking an exterior corner of said Roberts Tract for the northwesterly corner of the herein described tract;

THENCE, North 64°50'17" East, along the southeast line of said 100-foot Roadway Easement, a distance of 2633.96 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 246.79 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in February, 2018 and are true and correct to the best of my knowledge and belief.

_____   03/09/2018
Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 5616

S22398.00 - 246.79 Acres

19

ECOVEST-DOJ_0186717

Excerpts from Montego Pointe Appraisal

Introduction

with local data.  Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data.  The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with underlying development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed.  Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

37

ECOVEST-DOJ_0186735

Introduction

## Identification of the Subject Property

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 246.79 acres.

### *Prior Sales History*

The Subject is not currently listed for sale.

The Subject Property was purchased by Montego Pointe, LLC from Texas Coastal Ranches for $2,086,348.96 on May 14, 2018. Copies of the deed and title documents are located in the addenda.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found only the above referenced sale of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

### *Ownership*

Montego Pointe, LLC

### *Improvements*

None

### *Taxes*

40

ECOVEST-DOJ_0186738

Introduction

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:       On-Site: No; Adjacent: No
- Observed distressed vegetation:   On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.   Conclusion:

The Subject Property consists of approximately 246.79 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

53

ECOVEST-DOJ_0186751

Excerpts from Monterrey Cove Appraisal

# Excerpts from appraisal of: Monterrey Cove

# Document ID: ECOVEST-DOJ_0102366

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Monterrey Cove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Monterrey Cove, LLC
      425.17 acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is an Appraisal Report
presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions
and Limiting Conditions contained within this report. This report has been prepared, to the best
of my knowledge, to the standards and requirements of the USPAP, the Standards of
Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of
Texas for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which
is contrary to what is known by the appraiser to exist on the effective date of the assignment
results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific
assignment, as of the effective date of the assignment results, which, if found to be false, could
alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0102366

Excerpts from Monterrey Cove Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct. No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions. I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0102367

Excerpts from Monterrey Cove Appraisal

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the *fair market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of November 30, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of November 30, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Unencumbered** | | |
| Before Value | 425.17 | $77,972,524 |

The value of the Subject Property, subject to a perpetual conservation easement as of November 30, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Encumbered** | | |
| Total After Value | 425.17 | $1,066,667 |

The value of the easement gift as of November 30, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 425.17 | $77,972,524 |
| Less | | |
| Total After Value (Encumbered) | 425.17 | $1,066,667 |
| | | |
| **Value of the Easement** | rounded | **$76,906,000** |

ECOVEST-DOJ_0102368

Excerpts from Monterrey Cove Appraisal

The encumbered property also includes one (1) reserved building zone that allows for the construction of one residence and one recreational building.  While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that f the per acre value of the encumbered property.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided to value this building zone at $5,000 per acre, or $24,800.  I have rounded this value to $25,000 and it will be added to the indicated fair market value of the encumbered property.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                              State Certified General Real Property Appraiser
TX License #TX 1380003 G

ECOVEST-DOJ_0102369

Excerpts from Monterrey Cove Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of the storm on the prospective projects.

ECOVEST-DOJ_0102370

**CLARK ~ DAVIS, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

September 8, 2017

Adam Lloyd
Ecovest Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

ECOVEST-DOJ_0102371

Excerpts from Monterrey Cove Appraisal

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Monterrey Cove will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

ECOVEST-DOJ_0102372

Excerpts from Monterrey Cove Appraisal

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane
Earlysville, Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 29, 2017

Mr. Adam Lloyd
EcoVest Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Monterrey Cove, Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will consume the year ahead, but elements such as refining, petrochemicals and shipping will recover in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our society and our economy that continue on as though nothing has happened. Growth in the Texas market is not going to stop. Many corporations continue to migrate to Texas and to expand. The energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump in growth when rebuilding is added to the already existing demand in Texas, among the healthiest in the nation. One can also argue that the Texas' coast location has been in a known hurricane zone for centuries and that the risks associated with the location are baked in and do not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and residential migration will continue to occur. The shore will continue to be a magnet. Hurricane Harvey has no impact on these dynamics. This is the most fundamental truth that should not be forgotten and is a powerful reason to remain bullish on Texas and its coast.

ECOVEST-DOJ_0102373

Consequences of the storm that are unanticipated benefits to the proposed development of Monterrey Cove include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019, and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.

Sincerely,

*Ralph S Bowden*

Ralph S. Bowden
President

ECOVEST-DOJ_0102374

Excerpts from Monterrey Cove Appraisal

## Table of Contents

*Certification* .................................................................................................................. 12

**Summary of the Appraisal** .......................................................................................... 13

**Legal Descriptions and Maps** .................................................................................... 17

**INTRODUCTION:** ........................................................................................................ 30

**Scope of the Assignment** ........................................................................................... 31

    *Competency Provision* ................................................................................................ 35

    *Appraisal of the Larger Parcel:* ................................................................................ 36

    *Identification of the Subject Property* ..................................................................... 37

    *Prior Sales History* .................................................................................................... 37

    *The Subject is not listed for sale.* ............................................................................. 37

    *Ownership* ................................................................................................................... 37

    *Improvements* ............................................................................................................. 37

    *Taxes* ........................................................................................................................... 37

    ***Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)*** ......... 41

**SECTION I** ..................................................................................................................... 55

**APPRAISAL OF THE BEFORE VALUE** ........................................................................ 55

    *Highest and Best Use Analysis:* ................................................................................ 56
        *a)*     *Legally Permissible* ............................................................................... 57
        *b)*     *Physically Possible* ............................................................................... 57
        *c)*     *Financially Feasible* ............................................................................. 57
        *d)*     *Maximally Productive* ........................................................................... 58
        *e)*     *Sufficiency of Demand* .......................................................................... 58
        Conclusion ................................................................................................. 58

    *Land Valuation:* .......................................................................................................... 62
        *Discounted Retail Sales Approach* ........................................................................ 62

**SECTION II** .................................................................................................................. 109

**APPRAISAL OF THE AFTER VALUE** ......................................................................... 109

    *Highest and Best Use Analysis:* ............................................................................... 125
        a)     Legal permissibility ............................................................................... 126
        b)     Physical possibility and suitability ......................................................... 126
        c)     Financial feasibility ............................................................................... 126
        d)     Maximum productivity ........................................................................... 126
        e)     Sufficiency of demand ............................................................................ 127
        Conclusion: ............................................................................................... 127

    *Land Valuation* .......................................................................................................... 128
        Sales Comparison Approach ................................................................................... 128

    *Estimate of the After Value:* ..................................................................................... 139

**Reconciliation** ............................................................................................................ 145

ECOVEST-DOJ_0102375

**Addenda**..........................................................................................................................**146**

    Qualifications ..............................................................................................................146

    License ........................................................................................................................146

    Monterrey Cove Unit Plans..........................................................................................146

    Cost Estimates.............................................................................................................146

    Development Letters ....................................................................................................146

    Demographic Reports .................................................................................................146

    Mineral Assessment Report .........................................................................................146

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............146

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ................................................................................................................146

    Crystal Lagoon Information and Supporting Documents ..............................................146

    Bowden Report – Before Scenario ...............................................................................146

    Easement.....................................................................................................................146

    Baseline.......................................................................................................................146

ECOVEST-DOJ_0102376

Excerpts from Monterrey Cove Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being  encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                            State Certified General Real Property Appraiser
TX License #TX 3890

ECOVEST-DOJ_0102377

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | June 13, 2017 |
| **Date of Value Estimates:** | November 30, 2017 |
| **Date of Donation:** | November 30, 2017 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 425.17 Acres |
| **Easement:** | 425.17 Acres |
| **Reserved:** | 1.5 Acres |
| **Total:** | 425.17 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0102378

Excerpts from Monterrey Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0102379

Excerpts from Monterrey Cove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0102380

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0102381

## Legal Descriptions and Maps

425.17 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 425.17 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Albarado Survey, Abstract No. 1, Calhoun County, Texas, being comprised of portions of Lot 3, Section 1; Lot 4, Section 2; Lots 1 & 4, Section 5, Lots 2 & 3, Section 6; Lots 2 & 3, Section 7; and Lots 1 & 2, Section 8, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 425.17 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the south line of State Highway No. 185 (a Variable Width Right-of-Way), being along the north line of the aforesaid 12,228.52 acre tract, same being the north line of a Right-of-Way Easement, described as Part II, a called 8.163 acre tract of land, conveyed to the State of Texas as recorded in Volume 263, Page 509 of the Deed Records, Calhoun County, Texas, and being the northwest corner of a called 399.19 acre tract of land conveyed to TCR Land Holdings, LLC as recorded in Instrument No. 149121 of the Official Public Records, Calhoun County, Texas for the northeast corner of the herein described tract;

THENCE, South 25°50'48" East, departing the south right-of-way line of said State Highway No. 185, over and across said 12,228.52 acre tract, and with the west line of the aforesaid 399.19 acre tract, at a distance of 10541.87 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 10766.87 feet to a point along the southeasterly line of said 12,228.52 acre tract marking the southwest corner of said 399.19 acre tract for the southeast corner of the herein described tract;

THENCE, South 62°05'55" West, along the southeasterly line of said 12,228.52 acre tract, a distance of 1669.94 feet to a point along the southeasterly line of said 12,228.52 acre tract marking the south most corner of the herein described tract;

THENCE, North 25°50'49" West, over and across said 12,228.52 acre tract, at a distance of 261.67 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 11428.26 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the north line of said 12,228.52 acre tract and said Right-of-Way Easement and being along the south right-of-way line of said State Highway No. 185 for the northwest corner of the herein described tract;

THENCE, North 83°58'28" East, along the south right-of-way line of said State Highway No. 185, with the north line of said 12,228.52 acre tract and said Right-of-Way Easement, a distance of 1773.97 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 425.17 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in February, 2017 and are true and correct to the best of my knowledge and belief.

03/06/2017

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S21864.00 - Tract 1: 425.17 Acres

ECOVEST-DOJ_0102382

Excerpts from Monterrey Cove Appraisal

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 425.17 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction

ECOVEST-DOJ_0102397

Excerpts from Monterrey Cove Appraisal

Area Data

- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales

ECOVEST-DOJ_0102398

**Identification of the Subject Property**

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 425.17 acres.

*Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years. However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Monterrey Cove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0102402

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  > On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  > On-Site: No; Adjacent: No
- Observed staining of soils:                    On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  > On-Site: No; Adjacent: No
- Observed noticeable odors:                  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 425.17 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0102416

# Excerpts from appraisal of: Myers Cove

# Document ID: ECOVEST-DOJ_0226905

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

\* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

March 18, 2013

Myers Cove Investments, LLC
577 Mulberry St. Suite 1100
Macon, GA 31201

RE:    Conservation Easement Myers Cove
       Warren County, Tennessee
       Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
       Market Value of the Easement Gift

To Whom It May Concern:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

Foothills Land Conservancy
373 Ellis Avenue
Maryville, Tennessee 37804

ECOVEST-DOJ_0226905

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 26, 2012, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
| --- | --- | --- |
| Fee Simple Interest | 460.19 | $9,382,846 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 26, 2012 is:

| Fee Simple Interest with Encumbrance | 455.1 | $1,100 | $500,599 |
| --- | --- | --- | --- |

The subject property has one (1) reserved site. While the site cannot claim ownership of the conservation easement area, it can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 10% enhancement to the reserved lot.

The value of the easement gift as of December 26, 2012 is as follows and is based upon the before and after value.

| Fee Simple Interest    Before | 460.19 |  | $9,382,846 |
| --- | --- | --- | --- |
| Less | | | |
| Fee Simple Interest with Encumbrance | 455.1 | $1,100 | $500,599 |
| Less | | | |
| One Reserved Lot | 5.1 | | $150,000 |
| Less | | | |
| Reserved Lot Enhancement | | 10% | $15,000 |
| | | | |
| Value of the Easement | | rounded | $8,717,000 |

2

ECOVEST-DOJ_0226906

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

The after valuation is made under the assumption that the easement has been granted.  It has not been granted.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0226907

## Table of Contents

Certification .......................................................................................................... 6

Summary of the Appraisal ........................................................................................ 7

Assumptions and Limiting Conditions ...................................................................... 8

Legal Descriptions and Maps ................................................................................... 11

INTRODUCTION: .................................................................................................. 19

    *Scope of the Assignment* ...................................................................................... 20

    *Competency Provision* ......................................................................................... 24

    *Appraisal of the Larger Parcel:* .......................................................................... 25

    *Identification of the Subject Property* ................................................................. 26

    *Prior Sales History* .............................................................................................. 26

    *Ownership* ............................................................................................................ 26

    *Taxes* .................................................................................................................... 26

    *Improvements* ....................................................................................................... 26

    *Neighborhood Data – Middle Tennessee* ............................................................ 27

    *Geography:* ........................................................................................................... 27

    *General Area Analysis:* ........................................................................................ 37

    *Conservation Purposes* ........................................................................................ 42

SECTION I ............................................................................................................. 45

APPRAISAL OF THE BEFORE VALUE ................................................................. 45

    *Highest and Best Use Analysis:* ........................................................................... 46
       *a)*   *Legally Permissible* ...................................................................... 47
       *b)*   *Physically Possible* ....................................................................... 47
       *c)*   *Financially Feasible* ...................................................................... 47
       *d)*   *Maximally Productive* ................................................................... 48
       *e)*   *Sufficiency of Demand* ................................................................. 48
       Conclusion ............................................................................................ 48
       Hypothetical Condition ......................................................................... 48

    *Land Valuation:* ................................................................................................... 49

SECTION II ............................................................................................................ 72

APPRAISAL OF THE AFTER VALUE ................................................................... 72

    Reserved Rights ..................................................................................................... 73

    *Highest and Best Use Analysis:* ........................................................................... 79
       *a)*   Legal permissibility ........................................................................ 80
       *b)*   Physical possibility and suitability ................................................. 80
       *c)*   Financial feasibility ....................................................................... 80
       *d)*   Maximum productivity .................................................................. 80
       *e)*   Sufficiency of demand ................................................................... 80
       Conclusion: ........................................................................................... 81

*Land Valuation:* ................................................................................................................. *82*
    Sales Comparison Approach ........................................................................................ 82

**Reconciliation** ............................................................................................................... **95**

**Addenda** ....................................................................................................................... **97**
    QUALIFICATIONS ..................................................................................................... 98
    License ....................................................................................................................... 100
    Planning Certification ................................................................................................ 101
    Engineer's Letter on Soil Conditions ....................................................................... 102
    Easement and Baseline Documents ........................................................................... 103

ECOVEST-DOJ_0226909

**Certification**

I certify that, to the best of my knowledge and belief:

- I have not been barred from practicing before the IRS.

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
TN License #4693

State Certified General Real Property Appraiser

ECOVEST-DOJ_0226910

Excerpts from Myers Cove Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located at the end of Sink Road just east of McMinnville in Warren County, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | March 18, 2013 |
| **Date of Value Estimates:** | December 26, 2012 |
| **Date of Donation** | December 26, 2012 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:        Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 460.19 +- Acres |
| **Easement:** | 455.1 +- Acres |
| **Reserved:** | 5.1 +- Acres |
| **Total:** | 460.19 +- Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use of Site as Though Vacant:** | Before:  Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0226911

Excerpts from Myers Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0226912

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0226913

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

10

ECOVEST-DOJ_0226914

**Legal Descriptions and Maps**

LEGAL

**The following is a description of the Southeastern Timberland Group LLC property being located along a logging road in the 6th Civil District of Warren County, Tennessee. (Warranty Reference Deed Book 205 Page 771 and Tax Map 107 Parcel 2.01).**

Beginning at a point in the center of a 15' gravel road also known as a logging road being located N 34°54'50"W 1824.51 feet from a power pole; thence leaving the road and going with the Myers Cove Nursery property S 03°58'25"W 8.27 feet to a 20" white oak; thence S 08°50'05"W 122.78 feet to a 4" iron pin (found); thence leaving the Myers Cove Nursery property and going with the James Hicks property S 06°57'35"W 276.26 feet to a ½" rebar (found); thence continuing with the Hicks property S 06°48'13"W 220.29 feet to a ½" rebar (found); thence S 06°44'37"W 214.45 feet to a ½" rebar (found); thence leaving the Hicks property and going with the Richard Longanecker property S 06°49'20"W 197.36 feet to a ½" rebar (found); thence S 06°46'32"W 188.62 feet to a ½" rebar (found); thence S 06°46'51"W 188.88 feet to a ½" rebar (found); thence S 82°23'07"E 684.63 feet to a coal car rail; thence leaving the Longanecker property and going with the Mt. Zion Cemetery property S 06°02'40"E 508.83 feet to a 20" poplar; thence N 87°28'06"E 328.07 feet to a set stone; thence N 09°49'05"E 387.47 feet to a ½" pipe (set); thence leaving the Mt. Zion Cemetery property and going with Wildwood Road N 63°41'37"E 46.13 feet; thence N 43°01'23"E 29.48 feet to a ½" rebar (found); thence leaving the road and going with the Longanecker property S 81°32'58"E 634.55 feet to a rock pile with a steel fence post in it; thence leaving the Longanecker property and going with the Kevin Butcher property S 07°18'04"W 1822.02 feet to a rock at a coal car rail; thence leaving the Butcher property and going with the Andrew Myers property N 83°30'25"W 274.32 feet to a rock at a coal car rail; thence S 07°58'12"W 1789.29 feet to a 30" chestnut oak; thence S 20°30'40"W 238.14 feet to a painted set stone; thence S 45°41'02"W 987.09 feet to a 4" iron pin (found); thence leaving the Myers property and going with the Delma Louis Campbell property S 56°06'14"W 179.19 feet to a painted stone in a creek; thence S 43°53'16"E 515.31 feet to a coal car rail in a creek; thence S 31°21'54"W 963.90 feet to a painted set stone; thence S 53°28'45"W 428.11 feet to a painted set stone; thence N 27°40'57"W 117.54 feet to a coal car rail at stump; thence S 66°22'23"W 953.96 feet to a coal car rail; thence S 07°44'51"W 194.14 feet to an iron stake in a rock; thence S 88°21'07"W 322.32 feet to a painted set stone; thence leaving the Campbell property and going with the Stevenson Land Company and the Steve Bouldin property N 06°59'28"E 1773.45 feet to a coal car rail in drain; thence continuing with the Bouldin property N 69°00'08"E 349.99 feet to a coal car rail in a drain; thence N 06°43'57"E 2045.52 feet to a ½" rebar at painted rock; thence continuing with Bouldin generally following the meanders of an old log road S 42°12'55"W 67.68 feet; thence S 35°10'47"W 24.55 feet; thence S 13°09'50"W 39.47 feet; thence S 14°04'12"W 32.90 feet; thence S 52°03'11"W 27.07 feet; thence S 74°41'57"W 64.96 feet; thence S 66°34'16"W 29.59 feet; thence S 41°07'34"W 34.28 feet; thence S 03°33'53"W 77.99 feet; thence S 03°26'54"E 205.85 feet; thence S 24°40'10"W 64.78 feet to a 8" maple; thence N 17°13'37"W 33.80 feet; thence N 64°57'44"W 253.09 feet; thence S 68°18'22"W 57.39 feet; thence S 85°37'49"W 107.74 feet to a ½" rebar (found); thence S 84°55'06"W 82.79 feet; thence S 51°19'07"W 72.91 feet; thence S 82°39'58"W 23.14 feet; thence N 74°16'25"W 146.29 feet; thence N 79°11'52"W 71.30 feet; thence N 60°34'32"W 25.65 feet; thence N 57°21'28"W 83.28 feet; thence N 69°19'55"W 141.71 feet; thence N 69°20'29"W

ECOVEST-DOJ_0226915

29.87 feet; thence N 62°36'37"W 27.63 feet to a ½" rebar (found); thence S 86°12'16"W 51.25 feet; thence S 78°17'21"W 144.00 feet; thence N 80°02'20"W 83.19 feet; thence N 53°48'10"W 77.92 feet; thence N 61°48'41"W 134.27; thence N 34°52'33"W 102.07 feet; thence N 15°48'45"W 199.58 feet; thence N 25°01'39"W 46.44 feet; thence N 71°12'09"W 56.50 feet; thence N 74°53'13"W 70.10 feet to a 10" poplar; thence N 87°44'31"W 95.84 feet; thence N 68°56'02"W 98.53 feet; thence N 74°31'50"W 73.64 feet; thence S 88°05'23"W 56.75 feet; thence S 60°15'44"W 44.59 feet; thence S 31°18'39"W 80.91 feet; thence S 46°07'47"W 90.85 feet; thence N 82°33'43"W 67.96 feet; thence N 41°59'28"W 57.77 feet; thence S 84°52'20"W 32.26 feet; thence S 55°30'11"W 44.57 feet; thence S 83°12'11"W 50.20 feet; thence N 69°13'03"W 71.80 feet; thence S 85°10'05"W 51.43 feet; thence S 62°16'06"W 87.64 feet; thence S 49°28'41"W 89.16 feet; thence S 53°29'55"W 136.97 feet; thence S 61°00'53"W 45.09 feet; thence S 36°37'13"W 52.38 feet; thence S 45°02'15"W 158.87 feet to a 16" sycamore; thence leaving the dirt road and continuing with Bouldin N 06°27'03"E 1915.97 feet to a 24" red oak; thence N 41°45'23"E 48.81 feet to a 10" snag in a drain; thence N 09°13'10"E 104.13 feet to a 10" beech in a drain; thence N 59°37'11"E 237.71 feet to the centerline of a drain; thence S 88°44'29"E 216.57 feet; thence N 72°25'26"E 182.22 feet; thence leaving the Steve Bouldin property and going with the Stevenson Land Company property N 61°42'36"E 137.16 feet; thence N 84°24'34"E 182.50 feet; thence N 66°52'37"E 134.52 feet; thence N 88°23'01"E 115.81 feet; thence S 81°23'05"E 147.60 feet; thence N 51°24'21"E 123.06 feet; thence S 83°07'41"E 162.36 feet; thence N 79°00'13"E 58.87 feet to a coal car rail in a drain; thence S 18°14'53"E 128.10 feet to a 5" maple; thence S 08°59'19"W 114.67 feet to a 20" poplar; thence S 19°33'45"W 152.06 feet to a 24" beech; thence S 19°46'44"W 136.19 feet to a 36" beech; thence N 84°29'44"E 1242.36 feet to a painted set stone; thence S 11°30'37"E 794.64 feet to a coal car rail; thence N 64°24'20"E 802.41 feet to a coal car rail; thence N 07°10'28"E 711.55 feet to a twin maple; thence N 05°49'22"E 247.55 feet to a 28" maple; thence N 00°38'13"W 173.14 feet to a double chestnut oak; thence continuing with Stevenson Land Co. generally following the meanders of the bluff line N 50°30'01"W 74.56 feet to a 12" chestnut oak; thence N 47°25'45"W 59.34 feet to a 12" chestnut oak; thence N 58°23'28"W 130.72 feet to a 12" chestnut oak; thence N 28°27'45"W 153.45 feet to a 24" chestnut oak; thence N 17°23'33"W 404.64 feet to a 40" chestnut oak; thence N 08°55'30"W 98.37 feet to a 14" maple; thence N 32°54'55"W 102.62 feet to a 6" sour wood; thence N 59°29'51"W 108.90 feet to a 30" chestnut oak; thence N 52°51'45"W 156.91 feet to a 12" maple; thence N 44°10'25"W 121.17 feet to a 30" chestnut oak; thence N 86°32'38"W 171.52 feet to a 14" chestnut oak; thence N 45°33'57"W 140.62 feet to a 18" chestnut oak ; thence N 72°15'45"W 158.63 feet to a 18" chestnut oak; thence N 77°33'12"W 165.61 feet to a 24" chestnut oak; thence N 51°17'08"W 211.78 feet to a 24" chestnut oak; thence N 61°37'49"W 200.82 feet to a 10" elm; thence N 66°28'27"W 199.73 feet to a 20" chestnut oak; thence S 89°46'02"W 111.87 feet to a 20" chestnut oak; thence S 81°46'44"W 36.16 feet to a 10" chestnut oak; thence S 87°31'14"W 208.33 feet to a 18" chestnut oak; thence N 81°08'40"W 139.54 feet to a 20" chestnut oak; thence N 73°02'57"W 69.67 feet to a 18" chestnut oak; thence N 82°43'20"W 65.25 feet to a 30" chestnut oak; thence N 71°02'29"W 169.57 feet to a 12" chestnut oak; thence N 88°04'26"W 123.11 feet to a 12" chestnut oak; thence N 78°30'04"W 59.42 feet to a 12" chestnut oak; thence S 68°56'22"W 104.07 feet to a 20" chestnut oak; thence S 79°07'45"W 32.65 feet to a 12" chestnut oak ; thence N 64°46'05"W 84.08 feet to a 16" chestnut oak; thence N 88°05'15"W 54.88 feet to a 14" maple; thence N 49°49'02"W 96.98 feet to a 14" maple; thence leaving the Stevens Land Company property and going with the Steve Bouldin property S 86°22'47"W 54.34 feet to a 10" hickory; thence S

ECOVEST-DOJ_0226916

71°29'18"W 48.94 feet to a 10" maple; thence N 66°04'37"W 35.83 feet to a 8" hickory; thence S 69°19'31"W 46.62 feet to a 12" dead snag; thence leaving the Steve Bouldin property and the bluff line and going with the Charles Reynolds property N 07°36'02"E 228.03 feet to a 20" white oak; thence N 08°30'07"E 197.59 feet to a point in the center of an old logging road being located S 66°34'2" E 11.43 feet from a ½" rebar (found) in the eastern line of the Reynolds property; thence leaving the Reynolds property and going with the Panther Creek Forestry property along the center line of the said logging road N 67°11'03"E 118.49 feet; thence N 61°24'01"E 64.39 feet; thence N 70°37'11"E 39.05 feet; thence N 80°27'35"E 11.05 feet; thence S 84°20'59"E 70.07 feet; thence S 76°32'52"E 78.61 feet; thence S 67°26'03"E 95.91 feet; thence S 52°08'08"E 63.69 feet; thence S 60°09'09"E 54.26 feet; thence S 84°02'39"E 36.99 feet; thence N 72°59'49"E 34.96 feet; thence N 70°14'06"E 37.96 feet; thence N 81°37'03"E 69.31 feet; thence N 77°37'26"E 78.97 feet; thence S 85°28'43"E 93.18 feet; thence S 73°48'58"E 43.27 feet; thence S 65°40'22"E 56.55 feet; thence S 63°37'30"E 27.20 feet; thence S 60°17'44"E 42.48 feet; thence S 45°13'09"E 38.73 feet; thence S 36°19'21"E 94.55 feet; thence S 45°46'11"E 46.08 feet; thence S 57°26'31"E 27.44 feet; thence S 62°46'33"E 199.11 feet; thence S 67°03'30"E 188.72 feet; thence S 62°17'28"E 57.88 feet; thence S 64°49'14"E 23.72 feet; thence S 69°59'13"E 28.32 feet; thence S 81°03'12"E 75.35 feet; thence S 79°16'48"E 41.65 feet; thence S 71°17'53"E 61.75 feet; thence S 72°59'02"E 36.42 feet; thence S 80°21'04"E 42.71 feet; thence N 88°20'02"E 64.70 feet; thence N 82°04'18"E 89.35 feet; thence N 83°19'16"E 139.92 feet; thence N 87°17'02"E 280.47 feet; thence N 75°43'19"E 61.16 feet; thence N 65°01'15"E 71.15 feet; thence N 67°35'18"E 51.61 feet; thence N 73°07'12"E 78.85 feet; thence N 80°16'43"E 50.90 feet; thence N 85°25'52"E 109.45 feet; thence N 72°15'59"E 63.55 feet; thence N 76°06'01"E 62.90 feet; thence S 80°40'19"E 41.17 feet; thence S 69°59'56"E 77.38 feet; thence S 74°21'48"E 103.21 feet; thence S 80°13'58"E 54.73 feet; thence N 89°00'39"E 68.23 feet; thence N 87°39'17"E 63.53 feet; thence S 89°36'06"E 60.63 feet; thence N 76°43'37"E 69.16 feet; thence N 86°46'55"E 42.27 feet to the beginning being 460.19 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 26 November 2007.

ECOVEST-DOJ_0226917

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises the fourth step. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0226925

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject
which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the
assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful
development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties
may have special topography that lends itself well to development (Lakes, Creeks, Mountains,
Bluffs). Sales of these properties may be limited not because of market conditions but because of
physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf
course. These types of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF,
income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under
current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property.
The Subject Property is located in an area that has become popular for country type subdivisions
that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas.
In order to accommodate these features, the land has to have suitable characteristics for
development, such as a valley with level to moderately sloping land for home and amenity
construction.  Additionally, access to main line utilities is important.  This property does not
adjoin any golf courses, or National Parks or Forests, but examples of each are in close
proximity.

Extraction and Allocation are methods that involve improved properties and they are not
appropriate in this case.

ECOVEST-DOJ_0226926

Excerpts from Myers Cove Appraisal

## Identification of the Subject Property

The subject property consists of one parcel located at the end of Sink Road outside of McMinnville in Warren County, Tennessee. The site contains 460.19+- acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Myers Cove Investments, LLC

## Taxes



## Improvements

None

ECOVEST-DOJ_0226930

Excerpts from Myers Cove Appraisal

Site Data

- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":          On-Site: No; Adjacent: No
- Observed noticeable odors:          On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 460.19 +- acres, of which approximately 460.19 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0226945

# Excerpts from appraisal of: Myrtle Cove Resort

# Document ID: ECOVEST-DOJ_0143459

Excerpts from Myrtle Cove Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Myrtle Cove Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Myrtle Cove Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

1

ECOVEST-DOJ_0143459

Excerpts from Myrtle Cove Resort Appraisal

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct.  No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions.  I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the

Excerpts from Myrtle Cove Resort Appraisal

intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 5, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 5, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Unencumbered** | | |
| Before Value | 63.24 | $75,701,261 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 5, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Encumbered** | | |
| Total After Value | 63.24 | $401,184 |

The value of the easement gift as of December 5, 2017 is as follows and is based upon the before and after value method.



| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 63.24 | $75,701,261 |
| Less | | |
| Total After Value (Encumbered) | 63.24 | $401,184 |
| **Value of the Easement** | rounded | **$75,300,000** |

The encumbered property also includes two (2) reserved building sites that allow for the construction of either two residences or one resort building, but not both. While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an

ECOVEST-DOJ_0143461

Excerpts from Myrtle Cove Resort Appraisal

additional value over that of the per acre value of the encumbered property. It should be noted that these sites are not build ready and will incur some development costs to make them so. I have decided that an additional value of $150,000 per site that will be added to the after value of the property, in order to adjust for the reserved rights afforded to the building sites. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                     State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0143462

Excerpts from Myrtle Cove Resort Appraisal

## Table of Contents

Certification ........................................................................................................................... 7

Summary of the Appraisal ..................................................................................................... 8

Assumptions and Limiting Conditions .................................................................................. 9

Legal Descriptions and Maps ............................................................................................... 12

INTRODUCTION: ................................................................................................................ 25

Scope of the Assignment ....................................................................................................... 26

    *Competency Provision* ........................................................................................................ 30

    *Appraisal of the Larger Parcel:* ...................................................................................... 31

    *Identification of the Subject Property* ............................................................................ 32

    *Prior Sales History* .......................................................................................................... 32

    *The Subject is not listed for sale.* .................................................................................... 32

    *Ownership* ......................................................................................................................... 32

    *Improvements* .................................................................................................................... 32

    *Taxes* ................................................................................................................................. 32

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ............................ 34

SECTION I. ........................................................................................................................... 52

APPRAISAL OF THE BEFORE VALUE ............................................................................ 52

    *Highest and Best Use Analysis:* ....................................................................................... 53
        a)   Legally Permissible ................................................................................... 54
        b)   Physically Possible .................................................................................... 54
        c)   Financially Feasible .................................................................................. 54
        d)   Maximally Productive ............................................................................... 55
        e)   Sufficiency of Demand .............................................................................. 55
        Conclusion ...................................................................................................... 55

    *Land Valuation:* ................................................................................................................ 57
        Discounted Retail Sales Approach ................................................................. 58

SECTION II. .......................................................................................................................... 92

APPRAISAL OF THE AFTER VALUE ............................................................................... 92
        a)   Legal permissibility ................................................................................ 111
        b)   Physical possibility and suitability ......................................................... 111
        c)   Financial feasibility ................................................................................ 111
        d)   Maximum productivity ............................................................................ 111
        e)   Sufficiency of demand ............................................................................ 111
        Conclusion: .................................................................................................. 112

    *Land Valuation* ............................................................................................................... 113
        Sales Comparison Approach ........................................................................ 113

    *Estimate of the After Value:* ........................................................................................... 118

ECOVEST-DOJ_0143463

Excerpts from Myrtle Cove Resort Appraisal

**Reconciliation** ................................................................................................................**124**

**Addenda** ....................................................................................................................................**125**

    Qualifications ....................................................................................................................125
    License ..............................................................................................................................125
    Myrtle Cove Resort Unit Plans .......................................................................................125
    Cost Estimates ..................................................................................................................125
    Development Letters .........................................................................................................125
    Property Deed ...................................................................................................................125
    Demographic Reports .......................................................................................................125
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............125
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ...........................................................................................................................................125
    Crystal Lagoon Information and Supporting Documents .................................................125
    Bowden Report – Before Scenario ...................................................................................125
    Easement ...........................................................................................................................125
    Baseline ............................................................................................................................125

ECOVEST-DOJ_0143464

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III          State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0143465

Excerpts from Myrtle Cove Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located on the west side of the Conway Bypass and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | October 12, 2017 |
| **Date of Value Estimates:** | December 5, 2017 |
| **Date of Donation:** | December 5, 2017 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 63.24 Acres |
| **Easement:** | 63.24 Acres |
| **Reserved:** | Two Reserved Building Sites |
| **Total:** | 63.24 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC       EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0143466

Excerpts from Myrtle Cove Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0143467

Excerpts from Myrtle Cove Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0143468

Excerpts from Myrtle Cove Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0143469

Excerpts from Myrtle Cove Resort Appraisal

## Legal Descriptions and Maps

ALL AND SINGULAR, THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND, SITUATE, LYING AND BEING IN HORRY COUNTY, SOUTH CAROLINA, MORE PARTICULARLY SHOWN AND DESIGNATED AS "PARCEL D2" CONTAINING 2,754,770 SQ. FT., 63.24 AC., MORE OR LESS AS SHOWN ON A MAP OR PLAT PREPARED BY DDC ENGINEERS, ENTITLED "MAP OF PARCEL 'D2' CONTAINING 63.26+/− ACRES, CITY OF NORTH MYRTLE BEACH, HORRY COUNTY, SOUTH CAROLINA, SUBDIVISION EXHIBIT, PREPARED FOR: MYRTLE COVE RESORT", DATED JULY 16, 2015, AND RECORDED _____, IN PLAT BOOK _____, AT PAGE _____, IN THE OFFICE OF THE REGISTER OF DEEDS FOR HORRY COUNTY, SOUTH CAROLINA, REFERENCE TO WHICH IS HEREBY MADE FOR A MORE COMPLETE DESCRIPTION (THE "PLAT")

TOGETHER WITH A NON−EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND THE INSTALLATION, MAINTENANCE AND REPAIR OF UTILITIES IN ACCORDANCE WITH THAT CERTAIN EASEMENT AGREEMENT BY AND AMONG COTERRA CHESTUNUT, LLC, MYRTLE HOLDING COMPANY, LLC, AND REACH 9, LLC, RECORDED FEBRUARY 2, 2015, IN DEED BOOK 3296, AT PAGE 1155, IN THE PUBLIC RECORDS OF HORRY COUNTY, SOUTH CAROLINA, WHICH EASEMENT IS APPURTENANT TO AND RUNNING WITH THE ABOVE DESCRIBED PROPERTY.

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL AND PONT BEING MARKED BY HAVING 1/2" IRON REBAR FOUND AND HAVING SC STATE PLANE COORDINATES OF N 721,078.20 AND E 2,672,772.03 THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY DIAMOND GRANDE RESORT, LLC TO THE WEST BY THE SUBJECT TRACT, THE FOLLOWING BEARINGS AND DISTANCES:

S 70° 37' 39" E 737.34' TO 1/2" IRF
S 19° 26' 53" W 99.64' TO 1/2" IRF
S 12° 25' 07" E 862.52' TO 1/2" IRF
S 37° 20' 29 E 1431.03' TO A CALCULATED POINT.

THENCE A LINE BOUNDED TO THE SOUTH BY ATLANTIC INTRACOASTAL WATERWAY AND BOUNDED TO THE NORTH BY THE SUBJECT PROPERTY THE FOLLOWING BEARING AND DISTANCE:

S 52° 41' 43" W 105.14' TO A CALCULATED POINT.
S 52° 40' 57" W 1023.20" TO A CALCULATED POINT.

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY REACH 9, LLC AND BOUNDED TO THE EAST BY THE SUBJECT PROPERTY THE FOLLOWING BEARINGS AND DISTANCES:

N 37° 19' 03" W 1340.21' TO A CALCULATED POINT
N 77° 25' 20" W 180.92' TO A CALCULATED POINT

THENCE A LINE BOUNDED TO THE WEST BY LANDS NOW OR FORMERLY OWNED BY COTERRA CHESTNUT, LLC THE FOLLOWING BEARINGS & DISTANCES:

N 47° 52' 38" W 19.65' TO A CALCULATED POINT (L1)
N 10° 45' 11" W 75.61' TO A CALCULATED POINT (L2)
N 13°04'31" E 111.87' TO A CALCULATED POINT (L3)
N 01° 55' 36" E 35.29' TO A CALCULATED POINT (L4)
N 18° 21'31" W 65.60' TO A CALCULATED POINT (L5)
N 18° 52' 30' E 27.42' TO A CALCULATED POINT (L6)
N 76° 31' 01" E 12.82' TO A CALCULATED POINT (L7)
S 48° 36' 59" E 13.00' TO A CALCULATED POINT (L8)
S 74° 30' 32" E 82.19' TO A CALCULATED POINT (L9)
S 70° 09' 50" E 46.89' TO A CALCULATED POINT (L10)
N 63° 14' 00" E 77.18' TO A CALCULATED POINT (L11)
N 21° 29' 08" E 54.23' TO A CALCULATED POINT (L12)
N 29° 29' 58" W 36.37' TO A CALCULATED POINT (L13)
N 70° 48'32" E 37.81' TO A CALCULATED POINT (L14)
N 37° 51' 43" E 76.26' TO A CALCULATED POINT (L15)
N 71° 22' 52" W 27.78' TO A CALCULATED POINT (L16)
N 87° 37' 37" W 55.03' TO A CALCULATED POINT (L17)
N 02° 19' 45" W 23.95' TO A CALCULATED POINT (L18)
N 21° 03' 01" E 44.58' TO A CALCULATED POINT (L19)

ECOVEST-DOJ_0143470

Excerpts from Myrtle Cove Resort Appraisal

N 72° 38' 46" E 25.19' TO A CALCULATED POINT (L20)
S 36° 14' 22" E 35.35' TO A CALCULATED POINT (L21)
N 84° 29' 13" E 34.52' TO A CALCULATED POINT (L22)
N 69° 36' 38" E 48.42' TO A CALCULATED POINT (L23)
N 12° 29' 03" W 102.34' TO A CALCULATED POINT (L24)
N 52° 16' 30" W 14.14' TO A CALCULATED POINT (L25)
N 68° 55' 38" W 26.80' TO A CALCULATED POINT (L26)
N 05° 19' 48" W 31.92' TO A CALCULATED POINT (L27)
N 34° 28' 58" E 22.91' TO A CALCULATED POINT (L28)
N 61° 38' 53" E 77.88' TO A CALCULATED POINT (L29)
N 76° 53' 38" E 14.00' TO A CALCULATED POINT (L30)
S 34° 29' 18" E 15.95' TO A CALCULATED POINT (L31)
S 06° 30' 26" W 54.28' TO A CALCULATED POINT (L32)
S 58° 35' 25" E 30.04' TO A CALCULATED POINT (L33)
N 55° 31' 11" E 35.03' TO A CALCULATED POINT (L34)
N 02° 06' 31" E 76.80' TO A CALCULATED POINT (L35)
N 57° 57' 57" W 33.82' TO A CALCULATED POINT (L36)
N 02° 21' 27" W 56.74' TO A CALCULATED POINT (L37)
N 54° 18' 56" W 55.02' TO A CALCULATED POINT (L38)
S 68° 21' 28" W 32.71' TO A CALCULATED POINT (L39)
S 25° 09' 12" W 30.38' TO A CALCULATED POINT (L40)
S 02° 34' 05" W 19.66' TO A CALCULATED POINT (L41)
S 69° 37' 21" W 26.98' TO A CALCULATED POINT (L42)
N 47° 19' 55" W 54.50' TO A CALCULATED POINT (L43)
N 26° 40' 39" W 24.53' TO A CALCULATED POINT (L44)
N 34° 55' 54" E 57.30' TO A CALCULATED POINT (L45)
N 61° 26' 32" E 13.25' TO A CALCULATED POINT (L46)
S 60° 18' 15" E 18.26' TO A CALCULATED POINT (L47)
N 88° 40' 53" E 33.02' TO A CALCULATED POINT (L48)
N 12° 44' 44" E 54.88' TO A CALCULATED POINT (L49)
N 63° 12' 16" W 37.56' TO A CALCULATED POINT (L50)
N 82° 00' 02" W 43.70' TO A CALCULATED POINT (L51)
N 89° 54' 58" W 59.73' TO A CALCULATED POINT (L52)
N 51° 21' 15" W 31.36' TO A CALCULATED POINT (L53)
N 29° 06' 33" W 70.02' TO A CALCULATED POINT (L54)
N 11° 54' 29" E 64.57' TO A CALCULATED POINT (L55)
N 37° 30' 10" W 64.95' TO A CALCULATED POINT (L56)
N 76° 52' 58" W 41.48' TO A CALCULATED POINT (L57)
N 43° 47' 58" W 67.33' TO A CALCULATED POINT (L58)
N 60° 25' 25" W 33.97' TO A CALCULATED POINT (L59)
N 88° 26' 28" W 45.51' TO A CALCULATED POINT (L60)
N 25° 55'12" W 22.14' TO A CALCULATED POINT (L61)
N 61° 01' 01" E 20.05' TO A CALCULATED POINT (L62)
N 41° 55' 01" E 14.59' TO A CALCULATED POINT (L63)
N 61° 25' 31" W 30.25' TO A CALCULATED POINT (L64)
N 13° 19' 38" W 29.82' TO A CALCULATED POINT (L65)
N 24° 04' 03" E 40.09' TO A CALCULATED POINT (L66)
N 60° 00' 18" E 37.13' TO A CALCULATED POINT (L67)
N 10° 02' 02" W 29.79' TO A CALCULATED POINT (L68)
N 67° 59' 45" W 94.65' TO A CALCULATED POINT (L69)
N 51° 11' 18" W 56.47' TO A CALCULATED POINT (L70)
N 05° 28' 10" W 78.51' TO A CALCULATED POINT (L71)
N 34° 56' 43" W 41.39' TO A CALCULATED POINT (L72)
N 09° 03' 23" E 30.57' TO A CALCULATED POINT (L73)
N 77° 37' 33" E 26.38' TO A CALCULATED POINT (L74)
S 89° 56' 02" E 27.09' TO A CALCULATED POINT (L75)
N 02° 17' 15" E 60.69' TO A CALCULATED POINT (L76)
N 37° 04' 28" W 29.33' TO A CALCULATED POINT (L77)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE
FOLLOWING BEARINGS AND DISTANCES:

N 60° 24' 34" E 167.75' TO 1/2" IRON REBAR FOUND
N 60° 26' 15" E 132.70' TO 1/2" IRON REBAR FOUND

THENCE BACK TO THE POINT OF BEGINNING TRACT CONTAINS 63.24 ACRES.

ECOVEST-DOJ_0143471

Excerpts from Myrtle Cove Resort Appraisal

Area Data

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources, the Marshall and Swift Valuation Service, and the RS Means Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 63.24 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0143485

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0143486

Area Data

**Identification of the Subject Property**

The Subject Property is located on the west side of the Conway Bypass and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 63.24 acres.

*Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found that the property was sold by Reach 9, LLC to Seabiscuit Holdings, LLC on December 23, 2015 for $3,078,240.  A copy of the deed is located in the addenda.

I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property intends to acquire its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. It is my opinion that the seller of the property lacked the expertise, the resources, and the willingness to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Myrtle Cove Resort, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0143490

Excerpts from Myrtle Cove Resort Appraisal

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:        On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 63.24 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0143504

Excerpts from Myrtle West Resort Appraisal

# Excerpts from appraisal of: Myrtle West Resort

# Document ID: ECOVEST-DOJ_0047202

Excerpts from Myrtle West Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Myrtle West Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:    Conservation Easement Appraisal
        Myrtle West Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

ECOVEST-DOJ_0047202

Excerpts from Myrtle West Resort Appraisal

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of November 3, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of November 3, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 27.5 | $42,587,132 |

The value of the Subject Property, subject to a perpetual conservation easement as of November 3, 2016 is:

ECOVEST-DOJ_0047203

Excerpts from Myrtle West Resort Appraisal

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 27.5 | $349,250 |

The value of the easement gift as of November 3, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 27.5 | $42,587,132 |
| Less | | |
| Total After Value (Encumbered) | 27.5 | $349,250 |
| **Value of the Easement** | rounded | **$42,238,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site. While these sites do maintain limited building rights, as defined by the easement, the limited access to the property, limits the value above that of the encumbered property. It should also be noted that these lots are not build ready and will require such things as access, lot clearing, and utility installation. Due to these facts, I do not feel that these sites warrant any additional value above that of the overall per acre value of the encumbered tract. No enhancement needed.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

ECOVEST-DOJ_0047204

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                     State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0047205

Excerpts from Myrtle West Resort Appraisal

## Table of Contents

**Certification** ......................................................................................................................... 7

**Summary of the Appraisal** ..................................................................................................... 8

**Assumptions and Limiting Conditions** ................................................................................. 9

**Legal Descriptions and Maps** .............................................................................................. 12

**INTRODUCTION:** ............................................................................................................... 24

**Scope of the Assignment** ...................................................................................................... 25

*Competency Provision* .............................................................................................................. 29

*Appraisal of the Larger Parcel:* ................................................................................................ 30

*Identification of the Subject Property* ....................................................................................... 31

*Prior Sales History* ................................................................................................................... 31

*Ownership* ................................................................................................................................. 31

*Myrtle West Resort, LLC* .......................................................................................................... 31

*Improvements* ........................................................................................................................... 31

*Taxes* ........................................................................................................................................ 31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* .......................................... 33

**SECTION I** ........................................................................................................................... 52

**APPRAISAL OF THE BEFORE VALUE** ............................................................................ 52

*Highest and Best Use Analysis:* ............................................................................................... 53
   a)    Legally Permissible ............................................................................................ 54
   b)    Physically Possible ........................................................................................... 54
   c)    Financially Feasible ......................................................................................... 54
   d)    Maximally Productive ...................................................................................... 55
   e)    Sufficiency of Demand ..................................................................................... 55
   Conclusion ............................................................................................................. 55

*Land Valuation:* ........................................................................................................................ 56
   Discounted Retail Sales Approach .......................................................................... 56

**SECTION II** .......................................................................................................................... 116

**APPRAISAL OF THE AFTER VALUE** ............................................................................... 116

*Highest and Best Use Analysis:* ............................................................................................... 132
   a)    Legal permissibility .......................................................................................... 133
   b)    Physical possibility and suitability .................................................................... 133
   c)    Financial feasibility ........................................................................................... 133
   d)    Maximum productivity ...................................................................................... 133
   e)    Sufficiency of demand ....................................................................................... 133
   Conclusion: ............................................................................................................. 134

*Land Valuation* ......................................................................................................................... 135
   Sales Comparison Approach ................................................................................... 135

*Estimate of the After Value:* ..................................................................................................... 140

ECOVEST-DOJ_0047206

Excerpts from Myrtle West Resort Appraisal

**Reconciliation** ......................................................................................................................**146**

**Addenda** ................................................................................................................................**147**

    Qualifications ......................................................................................................................147
    License ...............................................................................................................................147
    Myrtle West Resort Unit Plans.............................................................................................147
    RS Means Cost Estimates ....................................................................................................147
    Development Letters ...........................................................................................................147
    Demographic Reports .........................................................................................................147
    Market Area Articles ..........................................................................................................147
    Crystal Lagoons Information and Articles ..............................................................................147
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............147
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    .......................................................................................................................................147
    Bowden Report – Before Scenario.........................................................................................147
    Easement ...........................................................................................................................147
    Baseline ............................................................................................................................147

ECOVEST-DOJ_0047207

Excerpts from Myrtle West Resort Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0047208

Excerpts from Myrtle West Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Backstage Blvd, west of US Highway 501 and north of the Intracoastal Waterway in Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | November 3, 2016 |
| **Date of Donation** | November 3, 2016 |
| **Property Rights Appraised:** | Before:  Fee Simple Interest<br>After:  Fee Simple Interest Subject to Easement |
| **Zoning:** | RC (Resort Commercial) |
| **Site:** | 27.5 Acres |
| **Easement:** | 27.5 Acres |
| **Reserved:** | One Residential Building Site and One Recreational Building Site |
| **Total:** | 27.5 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:  Residential Development<br>After:  Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275 |

ECOVEST-DOJ_0047209

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0047210

Excerpts from Myrtle West Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0047211

Excerpts from Myrtle West Resort Appraisal

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0047212

**Legal Descriptions and Maps**

Said 27.43 acre parcel being more fully described as follows:

**BEGINNING AT A ½" iron pipe**, said pipe being on the southern right of way of Backstage Boulevard located 1,284.3 feet west of the right of way of Outlet Boulevard,

Thence with the with the property of Bluegreen Vacations Unlimited, Inc. and Harbour Lights Common Area, South 42°54'30" East for a distance of 811.00 feet to a 1/2" iron pipe;

Thence with the northern right of way of the Atlantic Intracoastal Waterway, South 47°04'47" West for a distance of 1,468.07 feet to a 1/2" iron pipe;

Thence with the property of Horry County a Body Politic for the next two (2) calls, (1) North 42°54'11" West for a distance of 741.38 feet to a 1/2" iron pipe;

Thence, (2) South 47°05'49" West for a distance of 50.00 feet to a 1/2" iron pipe;

Thence with the property of Grand Strand Water and Sewer Authority for the next two (2) calls, (1) North 42°54'11" West for a distance of 50.00 feet to a 1/2" iron pipe;

Thence, (2) South 47°05'49" West for a distance of 50.00 feet to a 1/2" iron pipe;

Thence with the property of RR Development South I, LLC, North 42°53'51" West for a distance of 19.60 feet to a 1/2" iron pipe;

Thence with the southern right of way of Backstage Boulevard, North 47°04'48" East for a distance of 1,567.99 feet to a 1/2" iron pipe;

the **POINT OF BEGINNING**.

**CONTAINING:** 1,195,038 square feet or 27.43 acres of land, more or less.

ECOVEST-DOJ_0047213

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 27.5 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0047227

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0047228

Excerpts from Myrtle West Resort Appraisal

## Identification of the Subject Property

The subject is located off Backstage Blvd., west of US Highway 501 and north of the Intracoastal Waterway in Myrtle Beach, Horry County, South Carolina. The site contains 27.5 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Myrtle West Resort, LLC

### Improvements

None

### Taxes

**Owner Data:**

| | |
|---|---|
| TMS | 1720005267 |
| PIN | 42600000018 |
| Legal Description | W/S HWY 501; PARCEL 1 ; |
| Owner | MYRTLE WEST RESORT LLC |
| Billing Street | 9005 KINGS RD |
| Billing City | MYRTLE BEACH |
| Billing State | SC |
| Billing Zip | 29572 |
| District | 600 - SOCASTEE |
| Book | 3863 |
| Page | 2749 |

**2015 Parcel Values:**

| | |
|---|---|
| Residential Land | $0.00 |
| Residential Improved Land | $0.00 |
| Farm Land | $1,710,000.00 |
| Farm Improved | $0.00 |
| Farm Use | $1,350.00 |
| Other Land | $0.00 |
| Other Improved | $0.00 |
| Taxable Total | $1,350.00 |

**Market Values**

| | |
|---|---|
| Residential Land | $0.00 |
| Residential Building | $0.00 |
| Farm Land | $1,710,000.00 |
| Farm Building | $0.00 |
| Other Land | $0.00 |
| Other Building | $0.00 |
| Total Market Value | $1,710,000.00 |

ECOVEST-DOJ_0047232

Excerpts from Myrtle West Resort Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 27.5 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0047245

# Excerpts from appraisal of: Neuse Harbor

# Document ID: ECOVEST-DOJ_0190386

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

## February 1, 2019

Neuse Harbor LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:     Conservation Easement Appraisal
        Neuse Harbor, LLC
        77.88 acre tract, New Bern, Craven County, North Carolina


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or  other guidance.*

1

CLAUD CLARK III, PC

ECOVEST-DOJ_0190386

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:

*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement.

For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics)*

*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

ECOVEST-DOJ_0190387

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
*(ii) Fair Market Value of property before and after restriction.  If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 77.88-acre conservation easement in Craven County, North Carolina. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

Excerpts from Neuse Harbor Appraisal

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Belinda Sward with Strategic Solutions in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 4, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fair Market Value of the Subject Before the Easement Fee Simple | 77.88 | $36,550,683 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 4, 2018 is:

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value After the Easement Fee Simple | 77.88 | $233,640 |

The encumbered property also includes four reserved residential building zones and one community building zone. In theory, if taken as separate components of the valuation, the building area and the remaining eased area that cannot be improved have different values.  These sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement.  It should be noted that these areas are not build ready and will incur some development costs to make them so. I have decided that these

ECOVEST-DOJ_0190389

properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

The Fair Market Value of the easement gift as of December 4, 2018 is as follows and is based upon the before and after method. The total Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $36,550,683. The total Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $233,640. Using the before and after method, the total Fair Market Value of the Conservation Easement is $36,317,000 (rounded).

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement | 77.88 | $36,550,683 |
| Total Fair Market Value After the Easement | 77.88 | $233,640 |
| **Fair Market Value of the Easement (rounded)** | | **$36,317,000** |

Fair Market Value of the Conservation Easement on the effective date is:

***THIRTY-SIX MILLION THREE HUNDRED SEVENTEEN THOUSAND DOLLARS***

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
NC License #A7692 G

ECOVEST-DOJ_0190391

Table of Contents

*Certification* ...................................................................................................................9

**Certification of Appraiser**...........................................................................................9

**Summary of the Appraisal**.........................................................................................11

**Assumptions and Limiting Conditions** ....................................................................12

**Legal Descriptions and Maps** ...................................................................................15

**INTRODUCTION:** ....................................................................................................31

**Scope of the Assignment**...........................................................................................32

    *Identification of the Subject Property* .....................................................................36

    *Prior Sales History*..................................................................................................36

    *Ownership* ...............................................................................................................36

    *Improvements* ..........................................................................................................36

    *Taxes* .......................................................................................................................36

    *Neighborhood Data – Craven County, North Carolina*...........................................39

**SECTION I** ................................................................................................................52

**APPRAISAL OF THE BEFORE VALUE** ...............................................................52

    *Highest and Best Use Analysis:*...............................................................................53

        a)    *Legally Permissible* ...............................................................................54

        b)    *Physically Possible* .................................................................................54

        c)    *Financially Feasible* ...............................................................................54

        d)    *Maximally Productive* ............................................................................55

        e)    *Sufficiency of Demand* ...........................................................................55

        Conclusion ...................................................................................................55

    *Land Valuation:*.......................................................................................................58

        *Discounted Retail Sales Approach* .............................................................58

**SECTION II** ...............................................................................................................96

**APPRAISAL OF THE AFTER VALUE** .................................................................96

    *Highest and Best Use Analysis:*.............................................................................113

        a)    Legal permissibility ................................................................................114

        b)    Physical possibility and suitability ........................................................114

        c)    Financial feasibility ...............................................................................114

        d)    Maximum productivity ...........................................................................114

        e)    Sufficiency of demand ............................................................................115

        Conclusion: .................................................................................................115

    *Land Valuation* ......................................................................................................116

        Sales Comparison Approach ........................................................................116

    *Estimate of the After Value:* ..................................................................................123

ECOVEST-DOJ_0190392

Excerpts from Neuse Harbor Appraisal

**Reconciliation**................................................................................................................**129**

**Addenda**.....................................................................................................................**131**
    Qualifications ...........................................................................................131
    License ....................................................................................................131
    Deed and Title Documents.......................................................................131
    Unit Plans................................................................................................131
    Cost Estimates.........................................................................................131
    Development Letters ................................................................................131
    Demographic Reports ..............................................................................131
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............131
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ................................................................................................................131
    Crystal Lagoon Information and Supporting Documents ............................131
    Strategic Solutions Report – Before Scenario ...........................................131
    Easement.................................................................................................131
    Baseline...................................................................................................131

ECOVEST-DOJ_0190393

Excerpts from Neuse Harbor Appraisal

*Certification*

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0190394

Excerpts from Neuse Harbor Appraisal

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 21, 019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
NC License #A7692 G

ECOVEST-DOJ_0190395

Excerpts from Neuse Harbor Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off US Hwy 17 in New Bern, Craven County, North Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | February 1, 2019 |
| **Date of Property Inspection:** | January 21, 2019 |
| **Date of Value Estimates:** | December 4, 2018 |
| **Date of Donation** | December 4, 2018 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:        Fee Simple Interest Subject to Easement |
| **Zoning:** | R-8 and C-3 |
| **Site:** | 77.88 Acres |
| **Easement:** | 77.88 Acres |
| **Reserved:** | Four residential building areas and one community building area totaling 5 acres and remaining part of the easement |
| **Total:** | 77.88 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:      Residential Development<br>After:        Recreational / Green Space with Five Reserved Building Zones totaling 5 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0190396

Excerpts from Neuse Harbor Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of North Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0190397

Excerpts from Neuse Harbor Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

ECOVEST-DOJ_0190398

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0190399

**Legal Descriptions and Maps**

EXHIBIT "A"

**LEGAL DESCRIPTION**
OF
**OLD BEAR, LLC TRACT**

Doc No: 10090883
Bk 3554 Pg 1840

BEGINNING AT A POINT IN THE EASTERN RIGHT OF WAY LINE OF U.S. HIGHWAY 17, SAID POINT BEING LOCATED SOUTH 20°53'14" WEST A DISTANCE OF 7,157.44' FROM HOGS MONUMENT "RESORT" (GRID COORDINATES N:429891.70, E:2599319.30 (NAD83(2001)). SAID POINT ALSO BEING THE TRUE POINT AND PLACE OF BEGINNING OF THE HEREIN DESCRIBED TRACT.

THENCE SOUTH 83°23'18" EAST A DISTANCE OF 145.28' TO A POINT;
THENCE SOUTH 06°16'26" WEST A DISTANCE OF 250.13' TO A POINT;
THENCE SOUTH 83°17'09" EAST A DISTANCE OF 108.77' TO A POINT;
THENCE SOUTH 06°38'04" WEST A DISTANCE OF 437.15' TO A POINT;
THENCE NORTH 89°24'17" EAST A DISTANCE OF 644.55' TO A POINT;
THENCE SOUTH 32°09'26" EAST A DISTANCE OF 46.12' TO A POINT;
THENCE NORTH 50°51'40" EAST A DISTANCE OF 315.32' TO A POINT;
THENCE SOUTH 32°15'20" EAST A DISTANCE OF 312.36' TO A POINT;
THENCE SOUTH 29°07'10" WEST A DISTANCE OF 91.49' TO A POINT;
THENCE SOUTH 02°09'48" EAST A DISTANCE OF 50.34' TO A POINT;
THENCE SOUTH 20°19'36" EAST A DISTANCE OF 89.56' TO A POINT;
THENCE SOUTH 05°39'13" EAST A DISTANCE OF 52.64' TO A POINT;
THENCE SOUTH 15°28'58" WEST A DISTANCE OF 68.15' TO A POINT;
THENCE SOUTH 11°39'58" WEST A DISTANCE OF 13.62' TO A POINT;
THENCE SOUTH 04°07'32" WEST A DISTANCE OF 354.88' TO A POINT;
THENCE SOUTH 07°30'43" WEST A DISTANCE OF 183.36' TO A POINT;
THENCE SOUTH 16°08'02" WEST A DISTANCE OF 90.99' TO A POINT;
THENCE SOUTH 15°23'45" EAST A DISTANCE OF 38.55' TO A POINT;
THENCE SOUTH 16°13'15" EAST A DISTANCE OF 51.95' TO A POINT;
THENCE SOUTH 34°17'47" WEST A DISTANCE OF 52.06' TO A POINT;
THENCE SOUTH 45°52'21" WEST A DISTANCE OF 43.27' TO A POINT;
THENCE SOUTH 28°05'15" WEST A DISTANCE OF 46.08' TO A POINT;
THENCE NORTH 83°56'59" WEST A DISTANCE OF 25.34' TO A POINT;
THENCE SOUTH 07°05'26" WEST A DISTANCE OF 73.38' TO A POINT;
THENCE SOUTH 19°01'12" EAST A DISTANCE OF 14.78' TO A POINT;
THENCE SOUTH 09°50'52" EAST A DISTANCE OF 10.47' TO A POINT;
THENCE SOUTH 06°00'03" WEST A DISTANCE OF 36.88' TO A POINT;
THENCE SOUTH 24°13'06" WEST A DISTANCE OF 108.90' TO A POINT;
THENCE SOUTH 90°30'43" WEST A DISTANCE OF 473.39' TO A POINT;
THENCE SOUTH 61°16'08" WEST A DISTANCE OF 30.36' TO A POINT;
THENCE SOUTH 64°49'08" WEST A DISTANCE OF 102.60' TO A POINT;
THENCE SOUTH 76°46'44" WEST A DISTANCE OF 92.49' TO A POINT;
THENCE SOUTH 41°52'49" WEST A DISTANCE OF 134.68' TO A POINT;
THENCE SOUTH 23°40'23" WEST A DISTANCE OF 167.84' TO A POINT;
THENCE SOUTH 17°12'31" WEST A DISTANCE OF 66.00' TO A POINT;
THENCE NORTH 12°55'37" WEST A DISTANCE OF 48.96' TO A POINT;
THENCE NORTH 48°23'20" WEST A DISTANCE OF 111.22' TO A POINT;
THENCE SOUTH 80°38'38" WEST A DISTANCE OF 152.55' TO A POINT;
THENCE SOUTH 41°21'12" WEST A DISTANCE OF 52.10' TO A POINT;
THENCE SOUTH 03°06'04" WEST A DISTANCE OF 81.15' TO A POINT;
THENCE SOUTH 26°30'14" WEST A DISTANCE OF 104.60' TO A POINT;
THENCE NORTH 06°11'03" EAST A DISTANCE OF 63.88' TO A POINT;
THENCE SOUTH 10°56'11" WEST A DISTANCE OF 269.36' TO A POINT;
THENCE SOUTH 05°30'42" WEST A DISTANCE OF 503.16' TO A POINT;
THENCE SOUTH 07°01'54" WEST A DISTANCE OF 39.75' TO A POINT;
THENCE SOUTH 53°37'51" EAST A DISTANCE OF 36.30' TO A POINT;
THENCE NORTH 84°17'14" EAST A DISTANCE OF 37.66' TO A POINT;
THENCE NORTH 40°30'56" EAST A DISTANCE OF 29.60' TO A POINT;
THENCE NORTH 07°48'25" WEST A DISTANCE OF 22.06' TO A POINT;
THENCE NORTH 13°38'04" EAST A DISTANCE OF 20.27' TO A POINT;

Page 1 of 2

ECOVEST-DOJ_0190400

## EXHIBIT "A"

Doc No: 10030683
Bk 3554 Pg 1541

THENCE NORTH 81°31'36" EAST A DISTANCE OF 19.79' TO A POINT;
THENCE SOUTH 71°22'37" EAST A DISTANCE OF 11.14' TO A POINT;
THENCE SOUTH 15°36'44" EAST A DISTANCE OF 11.64' TO A POINT;
THENCE SOUTH 01°28'22" WEST A DISTANCE OF 177.15' TO A POINT;
THENCE SOUTH 35°49'03" WEST A DISTANCE OF 164.81' TO A POINT;
THENCE NORTH 27°34'48" WEST A DISTANCE OF 90.67' TO A POINT;
THENCE NORTH 67°42'15" WEST A DISTANCE OF 68.41' TO A POINT;
THENCE NORTH 78°47'27" WEST A DISTANCE OF 114.40' TO A POINT;
THENCE NORTH 18°57'14" WEST A DISTANCE OF 176.33' TO A POINT;
THENCE NORTH 69°18'57" WEST A DISTANCE OF 479.82' TO A POINT;
THENCE NORTH 12°59'15" WEST A DISTANCE OF 515.19' TO A POINT;
THENCE NORTH 01°54'20" WEST A DISTANCE OF 155.70' TO A POINT;
THENCE NORTH 02°11'52" EAST A DISTANCE OF 242.96' TO A POINT;
THENCE NORTH 20°26'39" WEST A DISTANCE OF 127.90' TO A POINT;
THENCE NORTH 24°13'17" WEST A DISTANCE OF 116.11' TO A POINT;
THENCE NORTH 34°05'26" WEST A DISTANCE OF 214.74' TO A POINT;
THENCE WITH A CURVE TURNING TO THE LEFT WITH AN ARC LENGTH OF 8.19', WITH A RADIUS
OF 3142.75', WITH A CHORD BEARING OF NORTH 39°52'34" EAST, WITH A CHORD LENGTH OF
8.19' TO A POINT;
THENCE WITH A COMPOUND CURVE TURNING TO THE LEFT WITH AN ARC LENGTH OF 2019.4'', 
WITH A RADIUS OF 3142.75', WITH A CHORD BEARING OF NORTH 21°23'39" EAST, WITH A
CHORD LENGTH OF 1994.93' TO A POINT,
WHICH IS THE TRUE POINT AND PLACE OF BEGINNING; CONTAINING 77.88 ACRES



Page 2 of 2

864

16

ECOVEST-DOJ_0190401

The cost approach to Fair Market Value utilizes reproduction or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data. The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely

ECOVEST-DOJ_0190418

Excerpts from Neuse Harbor Appraisal

on creditable sources such as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 77.88-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach Appraisal of Conservation Easements, Appraisal of Land

Intended User

The term "intended user" is defined by USPAP as: "The client and any other party as identified, by name or type, as users of the appraisal, appraisal review, or consulting report, by the appraiser based on communication with the client at the time of the assignment".

This appraisal has been prepared for Neuse Harbor, LLC, The IRS, and the client's tax advisors.

Intended Use

ECOVEST-DOJ_0190419

**Identification of the Subject Property**

The subject is located off US Hwy 17 in New Bern, Craven County, North Carolina.

*Prior Sales History*

There have been no qualified sales or transfers of the subject property within the last three years. The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

*Ownership*

Neuse Harbor, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0190421

Introduction

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  - On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  - On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  - On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 77.88 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0190433

# Excerpts from appraisal of:
# New River Preserve

# Document ID:
# ECOVEST-DOJ_0123857

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 26, 2014

Jack Sawyer
Alston & Bird, LLP
1201 West Peachtree Street NW, #4200
Atlanta, GA 30309
Jack.sawyer@alston.com

RE:     Conservation Easement Appraisal
        New River Preserve (471 acre tract), Hilton Head Lakes, Hwy 278, Jasper County, SC

Dear Mr. Sawyer:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0123857

Excerpts from New River Preserve Appraisal

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 26, 2014, and before the Subject Property is encumbered by the easement is as follows:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 471 | $39,335,296 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 26, 2014 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Zone | 471 | $1,221,000 |

ECOVEST-DOJ_0123858

The value of the easement gift as of December 26, 2014 is as follows and is based upon the before and after value method. In determining the market nature of a conservation easement, the before and after method is a recognized technique.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 471 | $39,335,296 |
| Less | | |
| Total After Value (Encumbered) | 471 | $1,221,000 |
| | | |
| **Value of the Easement** | rounded | **$38,114,000** |

The Subject Property has six reserved building sites, one lodge and five home sites, within a 22+- acre-building zone. This zone remains part of the eased property and, therefore is subject to the rules and restrictions of the easement; however, since these six sites within this zone do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0123859

Claud Clark III                         State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0123860

Excerpts from New River Preserve Appraisal

## Table of Contents

Certification ................................................................................................................... 7

Summary of the Appraisal .............................................................................................. 8

Assumptions and Limiting Conditions ........................................................................... 9

Legal Descriptions and Maps ....................................................................................... 12

INTRODUCTION: ........................................................................................................ 26

Scope of the Assignment .............................................................................................. 27

    *Competency Provision* ............................................................................................... *31*

    *Appraisal of the Larger Parcel:* ................................................................................ *32*

    *Identification of the Subject Property* ....................................................................... *33*

    *Prior Sales History* ................................................................................................... *33*

    *Ownership* .................................................................................................................. *33*

    *Improvements* ............................................................................................................. *33*

    *Taxes* .......................................................................................................................... *33*

    *Neighborhood Data – Jasper County, South Carolina* ............................................. *35*

SECTION I ..................................................................................................................... 50

APPRAISAL OF THE BEFORE VALUE ..................................................................... 50

    *Highest and Best Use Analysis:* ................................................................................ *51*
        *a)*   *Legally Permissible* ..................................................................................... *52*
        *b)*   *Physically Possible* ..................................................................................... *52*
        *c)*   *Financially Feasible* ................................................................................... *52*
        *d)*   *Maximally Productive* ................................................................................. *53*
        *e)*   *Sufficiency of Demand* ................................................................................ *53*
        Conclusion ...................................................................................................... 53

    *Land Valuation:* ........................................................................................................ *54*
        *Discounted Retail Sales Approach* ................................................................ *54*

    *Estimate of the Before Value.* ................................................................................. *115*

SECTION II .................................................................................................................. 116

APPRAISAL OF THE AFTER VALUE ...................................................................... 116
        a)   Legal permissibility ..................................................................................... 133
        b)   Physical possibility and suitability .............................................................. 133
        c)   Financial feasibility ..................................................................................... 133
        d)   Maximum productivity .................................................................................. 133
        e)   Sufficiency of demand .................................................................................. 133
        Conclusion: ................................................................................................... 134

    *Land Valuation* ....................................................................................................... *135*
        Sales Comparison Approach ......................................................................... 135

    *Estimate of the After Value:* ................................................................................... *157*

ECOVEST-DOJ_0123861

**Reconciliation**..................................................................................................................**163**

**Addenda**..........................................................................................................................**165**

    License ...................................................................................................................168
    Construction Cost Estimates ...............................................................................169
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............176
    Bowden Report .....................................................................................................195
    Easement and Baseline Documents......................................................................196

ECOVEST-DOJ_0123862

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                          State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0123863

Excerpts from New River Preserve Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the north side of U.S. 278, approximately three miles east of Interstate 95 outside of Hardeeville, Jasper County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 26, 2014 |
| **Date of Value Estimates:** | December 26, 2014 |
| **Date of Donation** | December 26, 2014 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | EDD, Economic Development District |
| **Site:** | 471 +- Acres |
| **Easement:** | 471 +- Acres |
| **Reserved:** | Building Zone with One Lodge Site and Five Home Sites |
| **Total:** | 471 +- Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:    Residential Development<br>After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0123864

Excerpts from New River Preserve Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0123865

Excerpts from New River Preserve Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0123866

Excerpts from New River Preserve Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0123867

Excerpts from New River Preserve Appraisal

**Legal Descriptions and Maps**

New River Preserve, LLC
Legal Description

ALL that certain piece, parcel or tract of land, situate, lying and being in the City of Hardeeville, Jasper County, South Carolina, shown and designated as  containing 471.48 acres, more or less, on that certain plat entitled "A Plat of New River Preserve, Garden Boulevard, Hilton Head Lakes North, A Portion of TMS 042-00-06-042, City of Hardeeville, Jasper County, South Carolina" dated May 23, 2014, prepared by Cook Land Surveying, certified by Donald R. Cook, Jr., P.L.S. (SC No. 19010), and recorded in the Office of the Register of Deeds for Jasper County, South Carolina ("Jasper County Records") in Plat Volume _____ at Page _____. For a more detailed description as to the metes and bounds, courses and distances, reference is had to the aforementioned recorded plat.

TM:    A portion of 042-00-06-042

ECOVEST-DOJ_0123868

Excerpts from New River Preserve Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 471 +- acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0123884

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0123885

**Identification of the Subject Property**

The Subject Property is located on the north side of U.S. Route 278, approximately three miles east of Interstate 95 in Hardeeville, Jasper County, South Carolina.  The site contains 471+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

New River Preserve, LLC

*Improvements*

None

*Taxes*

Individual lots were assessed at an average price of $600. It was derived after an analysis of bulk lot assessments.

ECOVEST-DOJ_0123889

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                On-Site: No; Adjacent: No
- Observed distressed vegetation:            On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:                 On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 471+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0123904

Excerpts from North Bay Cove Appraisal

Excerpts from appraisal of:
North Bay Cove

Document ID:
ECOVEST-DOJ_0065163

Excerpts from North Bay Cove Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

North Bay Cove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
North Bay Cove, LLC
28.04 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

ECOVEST-DOJ_0065163

Excerpts from North Bay Cove Appraisal

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust172,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 20, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 20, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 28.04 | $46,172,176 |

ECOVEST-DOJ_0065164

The value of the Subject Property, subject to a perpetual conservation easement as of December 20, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 28.04 | $194,864 |

The value of the easement gift as of December 20, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 28.04 | $46,172,176 |
| Less Total After Value (Encumbered) | 28.04 | $194,864 |
| **Value of the Easement** | rounded | **$45,977,000** |

The encumbered property also includes one (1) reserved building for either one residence or one resort. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that the lot is not a build ready lot and will incur some development costs to make it so. The site will be constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee

ECOVEST-DOJ_0065165

organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0065166

## Table of Contents

Certification ...................................................................................................................... 7

Summary of the Appraisal ................................................................................................ 8

Assumptions and Limiting Conditions ............................................................................ 9

Legal Descriptions and Maps ......................................................................................... 12

INTRODUCTION: ........................................................................................................... 23

Scope of the Assignment ................................................................................................ 24

    *Competency Provision* .............................................................................................. 28

    *Appraisal of the Larger Parcel:* ............................................................................. 29

    *Identification of the Subject Property* ...................................................................... 30

    *Prior Sales History* ................................................................................................... 30

    *Ownership* .................................................................................................................. 30

    *Improvements* ............................................................................................................ 30

    *Taxes* ......................................................................................................................... 30

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ....................... 32

SECTION I ....................................................................................................................... 51

APPRAISAL OF THE BEFORE VALUE ......................................................................... 51

    *Highest and Best Use Analysis:* ............................................................................... 52
        a)   Legally Permissible ........................................................................... 53
        b)   Physically Possible ............................................................................ 53
        c)   Financially Feasible .......................................................................... 53
        d)   Maximally Productive ........................................................................ 54
        e)   Sufficiency of Demand ...................................................................... 54
        Conclusion ................................................................................................ 54

    *Land Valuation:* ....................................................................................................... 55
        Discounted Retail Sales Approach ............................................................ 55

SECTION II ...................................................................................................................... 121

APPRAISAL OF THE AFTER VALUE ............................................................................ 121

    *Highest and Best Use Analysis:* ............................................................................... 136
        a)   Legal permissibility ......................................................................... 137
        b)   Physical possibility and suitability ................................................... 137
        c)   Financial feasibility .......................................................................... 137
        d)   Maximum productivity ....................................................................... 137
        e)   Sufficiency of demand ...................................................................... 137
        Conclusion: .............................................................................................. 138

    *Land Valuation* ........................................................................................................ 139
        Sales Comparison Approach ..................................................................... 139

    *Estimate of the After Value:* ..................................................................................... 144

Reconciliation ................................................................................................................. 150

ECOVEST-DOJ_0065167

Excerpts from North Bay Cove Appraisal

**Addenda**............................................................................................................................**151**

    Qualifications ...............................................................................................................151

    License ........................................................................................................................151

    North Bay Cove Unit Plans...........................................................................................151

    Cost Estimates.............................................................................................................151

    Development Letters .....................................................................................................151

    Demographic Reports ...................................................................................................151

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............151

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue ................................................................................................................151

    Crystal Lagoon Information and Supporting Documents ...................................................151

    Bowden Report – Before Scenario...................................................................................151

    Easement ....................................................................................................................151

    Baseline ......................................................................................................................151

ECOVEST-DOJ_0065168

Excerpts from North Bay Cove Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6878 CG

893

ECOVEST-DOJ_0065169

**Summary of the Appraisal**

**Property Type:**               Conservation Easement

**Location:**                    The subject is located off Bourne Trail, south of Carolina
                                 Bays Pkwy and north of the Intracoastal Waterway in
                                 North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:**   To estimate, for federal and state income tax purpose, the
                                 market value of the conservation easement.

**Function of the Appraisal:**   To estimate the market value of a conservation easement.

**Date of the Appraisal Report:** January 2, 2017

**Date of Value Estimates:**     December 20, 2016

**Date of Donation**             December 20, 2016

**Property Rights Appraised:**   Before:     Fee Simple Interest
                                 After:      Fee Simple Interest Subject to Easement

**Zoning:**                      R-4I (Inland Multi-Family Residential)

**Site:**                        28.04 Acres

**Easement:**                    28.04 Acres

**Reserved:**                    One Residential Building Site

**Total:**                       28.04 Acres

**Improvements:**                None

**High and Best Use**            Before:     Residential Development
**of Site as Though Vacant:**    After:      Recreational / Green Space

**Appraiser:**                   Claud Clark III as an Employee and Sole Owner of
                                 Clark ~ Davis, PC          EIN 63-1075275

ECOVEST-DOJ_0065170

Excerpts from North Bay Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0065171

Excerpts from North Bay Cove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0065172

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0065173

**Legal Descriptions and Maps**

ALL THAT CERTAIN PARCEL AS SHOWN ON A PLAT ENTITLED "BOUNDARY ADJUSTMENT/SUBDIVISION PLAT OF WARD SUBDIVISION TRACTS 1 & 2 FOR WATERWAY-RUST, LLC" DATED SEPTEMBER 2, 2015, REVISED SEPTEMBER 9, 2015 BY THE BRIGMAN COMPANY AND RECORDED SEPTEMBER 17, 2015 IN THE HORRY COUNTY REGISTER OF DEEDS OFFICE IN PLAT BOOK 267, PAGE 265.

BEGINNING AT A POINT ON THE NORTH EASTERN CORNER OF SAID PARCEL, POINT BEING MARKED BY A 5/8" IRON PIPE AND HAVING SOUTH CAROLINA STATE PLANE COORDINATES OF N-734,600.62 AND E-2,694,333.76.  THENCE A LINE BORDERED TO THE NORTH BY LANDS NOW OR FORMERLY OWNED BY PALMETTO MAIN STREET PARTNERS THE FOLLOWING BEARING S AND DISTANCES:
S 64° 02' 24" W 424.55 TO A 3/4" IRON PIPE
S 63° 54' 45" W 151.55' TO A 2" IRON PIPE
S 65° 49' 01" W 67.26 TO A 1/2" IRON PIPE FOUND
S 65° 53' 06" W 7.00' TO A 1/2" IRON PIPE
THENCE A LINE BORDERED TO THE WEST BY THE REMAINDER OF THE WARD TRACT OWNED NOW OR FORMERLY BY WATERWAY-RUST, LLC, THE FOLLOWING BEARING AND DISTANCE:
S 25° 10' 39" E 2042.40' TO A CALCULATED POINT
THENCE A LINE BORDERED TO THE SOUTH BY THE ATLANTIC INTRACOASTAL WATERWAY THE FOLLOWING BEARINGS AND DISTANCES:
N 59° 49' 19" E 29.41' TO A CALCULATED POINT
N 56° 32' 13" E 169.00' TO A CALCULATED POINT
N 56° 32' 13" E 387.00' TO A CALCULATED POINT
THENCE  A LINE BORDERED ON THE EAST BY LANDS NOW OR FORMERLY OWNED BY PELICAN BAY SUBDIVISION THE FOLLOWING BEARINGS AND DISTANCES:
N 23° 28' 57" W 388.78' TO A 1/2" IRON PIPE FOUND
N 26° 41' 48" W 108.99' TO A 1/2" IRON REBAR FOUND
N 23° 12' 33" W 171.23' TO A 1/2" IRON REBAR FOUND
N 23° 06' 00" W 124.99' TO A 1/2" IRON REBAR FOUND
N 22° 39' 19" W 125.05' TO A 1/2" IRON REBAR FOUND
N 22° 35' 53" W 125.20 TO A 1/2" IRON REBAR FOUND
N 22° 39' 25" W 923.91' BACK TO A 5/8" IRON REBAR FOUND
AND POINT OF BEGINING.  TRACT CONTAINS 28.04 ACRES.

ECOVEST-DOJ_0065174

Excerpts from North Bay Cove Appraisal

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 28.04 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0065187

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0065188

Excerpts from North Bay Cove Appraisal

Introduction

**Identification of the Subject Property**

The subject is located off Bourne Trail, south of Carolina Bays Pkwy and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 28.04 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

North Bay Cove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0065192

Excerpts from North Bay Cove Appraisal

Site Data

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:                On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 28.04 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0065205

# Excerpts from appraisal of: Ocean Grove Resort

# Document ID: ECOVEST-DOJ_0051546

Excerpts from Ocean Grove Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Ocean Grove Resort, LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Ocean Grove Resort, LLC
       225.5 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0051546

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of November 21, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of November 21, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 225.5 | $81,553,913 |

2

ECOVEST-DOJ_0051547



The value of the Subject Property, subject to a perpetual conservation easement as of November 21, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 225.5 | $960,800 |

The value of the easement gift as of November 21, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 225.5 | $81,553,913 |
| Less | | |
| Total After Value (Encumbered) | 225.5 | $960,800 |
| | | |
| **Value of the Easement** | rounded | **$80,593,000** |

The encumbered property also includes one (1) reserved recreational building site and up to three (3) reserved residential building sites or up to three (3) reserved resort building sites, for a total of four (4) reserved sites. While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an additional value over that of the per acre value of the encumbered property. It should be noted that these lots are not build ready lots and will incur some development costs to make them so. All of these sites will constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the

ECOVEST-DOJ_0051548

donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0051549

Excerpts from Ocean Grove Resort Appraisal

## Table of Contents

Certification ........................................................................................................................................... 7

Summary of the Appraisal ..................................................................................................................... 8

Assumptions and Limiting Conditions ................................................................................................ 9

Legal Descriptions and Maps .............................................................................................................. 12

INTRODUCTION: ................................................................................................................................ 24

Scope of the Assignment ...................................................................................................................... 25

*Competency Provision* ..................................................................................................................... 29

*Appraisal of the Larger Parcel:* ...................................................................................................... 30

*Identification of the Subject Property* ............................................................................................ 31

*Prior Sales History* .......................................................................................................................... 31

*Ownership* ........................................................................................................................................ 31

*Improvements* ................................................................................................................................... 31

*Taxes* ................................................................................................................................................. 31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ............................................ 35

SECTION I ............................................................................................................................................ 54

APPRAISAL OF THE BEFORE VALUE ........................................................................................... 54

*Highest and Best Use Analysis:* ....................................................................................................... 55
    a)    Legally Permissible .................................................................................................... 56
    b)    Physically Possible .................................................................................................... 56
    c)    Financially Feasible ................................................................................................... 56
    d)    Maximally Productive ............................................................................................... 57
    e)    Sufficiency of Demand .............................................................................................. 57
    Conclusion .......................................................................................................................... 57

*Land Valuation:* ................................................................................................................................ 58
    Discounted Retail Sales Approach ..................................................................................... 58

SECTION II ........................................................................................................................................... 113

APPRAISAL OF THE AFTER VALUE ............................................................................................. 113

*Highest and Best Use Analysis:* ....................................................................................................... 129
    a)    Legal permissibility ................................................................................................... 130
    b)    Physical possibility and suitability ........................................................................... 130
    c)    Financial feasibility ................................................................................................... 130
    d)    Maximum productivity .............................................................................................. 130
    e)    Sufficiency of demand ............................................................................................... 130
    Conclusion: ......................................................................................................................... 131

*Land Valuation* .................................................................................................................................. 132
    Sales Comparison Approach ............................................................................................... 132

*Estimate of the After Value:* ............................................................................................................ 137

Reconciliation ....................................................................................................................................... 143

ECOVEST-DOJ_0051550

Excerpts from Ocean Grove Resort Appraisal

**Addenda**................................................................................................................................**144**

    Qualifications.............................................................................................................................144

    License.....................................................................................................................................144

    Ocean Grove Resort Unit Plans ..................................................................................................144

    Cost Estimates..........................................................................................................................144

    Development Letters....................................................................................................................144

    Demographic Reports .................................................................................................................144

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............144

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    .................................................................................................................................................144

    Crystal Lagoon Information and Supporting Documents ....................................................................144

    Bowden Report – Before Scenario.................................................................................................144

    Easement .................................................................................................................................144

    Baseline...................................................................................................................................144

ECOVEST-DOJ_0051551

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III        State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0051552

Excerpts from Ocean Grove Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on Water Tower Road and Coates Road, north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | November 21, 2016 |
| **Date of Donation** | November 21, 2016 |
| **Property Rights Appraised:** | Before:  Fee Simple Interest<br>After:  Fee Simple Interest Subject to Easement |
| **Zoning:** | R2A Resort Residential |
| **Site:** | 225.5 Acres |
| **Easement:** | 225.5  Acres |
| **Reserved:** | Four (4) reserved building sites; 1 recreational, and up to 3 residential or up to 3 resort |
| **Total:** | 225.5 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:  Residential Development<br>After:  Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC           EIN 63-1075275 |

ECOVEST-DOJ_0051553

Excerpts from Ocean Grove Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0051554

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0051555

Excerpts from Ocean Grove Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0051556

**Legal Descriptions and Maps**

Legal Description - Ocean Grove Resort

All and singular that certain piece, parcel or tract of land lying and situate in the City of North Myrtle Beach, Horry County, South Carolina and being referenced a plat entitled "Map of 225.50 ± Total Acres - Boundary, Subdivision & Combination Plat" prepared for Ocean Grove Resort, LLC by DDC Engineers, Inc. dated May 13, 2016 and being more particularly described as follows:

Beginning at a 1/2" iron pipe being the southeast intersection of Water Tower Road and Long Bay Road; thence with the eastern right-of-way of Water Tower Road the following metes and bounds; N 30°59'46" E, 1471.60' to a 1/2" iron pipe; thence N 30°56'17" E, 90.39' to a 1/2" iron pipe; thence N 30°52'31" E, 168.88' to a 1/2" rebar; thence along a curve to the left having an arc length of 223.80', a radius of 918.45' and a chord of N 24°20'41" E, 223.25' to a 1/2" iron pipe being the common corner between SLF IV / SBI Sandridge, LLC and Shirley B. Quick, et al; thence with said parties common line; N 86°23'55" E, 418.13' to a concrete monument found being the common corner between SLF IV / SBI Sandridge, LLC, Shirley B. Quick, et al and R. L. Bell, Inc.; thence with the common line between SLF IV / SBI Sandridge, LLC, R. L. Bell, Inc. and Kenneth Jelis; S 28°41'52" W, 317.52' to a 1/2" iron pipe located on the northern right-of-way of Coates Road being the common corner between SLF IV / SBI Sandridge, LLC and Kenneth Jelis; thence running across Coates Road; S 27°52'52" W, 58.96' to a concrete monument found; thence S 03°00'16" E, 15.40' to a 1/2" iron pipe located on the southern right-of-way of Coates Road; thence with the southern right-of-way of Coates Road; N 77°47'57" E, 2431.10' to a 1/2" rebar being the common corner between SLF IV / SBI Sandridge, LLC & John Emory Coates; thence with said parties common line the following metes and bounds; S 26°53'17" E, 394.01' to a 1/2" iron pipe; thence N 60°58'59" E, 278.55' to a 1/2" rebar; thence N 02°31'52" E, 701.11' to a 1/2" iron pipe; thence N 19°10'55" E, 361.23' to a 1/2" iron pipe; thence S 62°28'44" E, 558.25' to a 1/2" rebar; thence N 23°29'03" E, 243.38' to a 1/2" rebar being the common corner between SLF IV / SBI Sandridge, LLC, John Emory Coates and Joseph L. Coates; thence with the common line between SLF IV / SBI Sandridge, LLC and Joseph L. Coates; N 23°29'03" E, 165.23' to a 1/2" rebar being the common corner between SLF IV / SBI Sandridge, LLC, Joseph L. Coates, Richard E. Bell and Margaret Thompson; thence with the common line between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson; S 72°14'36" E, 562.92' to a 1/2" rebar; thence with the common line of SLF IV / SBI Sandridge, LLC; S 20°37'12" W, 4518.41' to a 1/2" rebar being the common corner between SLF IV / SBI Sandridge, LLC, Grand Strand Water & Sewer Authority and Azalea Bay Resort, LLC; thence with the common line between SLF IV / SBI Sandridge, LLC and Azalea Bay Resort, LLC, the following metes and bounds; N 16°23'51" W, 1625.79' to a 1/2" rebar; thence S 73°27'27" W, 2011.41' to a 1/2" rebar; thence N 25°00'14" W, 449.97' to a 1/2" rebar; thence S 74°48'50" W, 900.15' to a 1/2" rebar located on the eastern right-of-way of Long Bay Road; thence with the right-of-way of Long Bay Road along a curve to the left, having an arc length of 97.51' a radius of 350.00' and a chord of N 31°22'44"W, 97.19 to a 1/2" rebar; thence N 39°20'42" W, 433.44' to the Point of Beginning and having an area of 225.50 acres, more or less.

This property is bounded on the north by Shirley B. Quick, Coates Road, John Emory Coates, Richard E. Bell and Margaret Thompson, on the east by SLF IV / SBI Sandridge, LLC, Kenneth Jelis and Coates Road, on the south by Grand Strand Water & Sewer Authority and Azalea Bay Resort, LLC and on the west by Long Bay Road, Water Tower Road, John Emory Coates and Joseph L. Coates.

ECOVEST-DOJ_0051557

Excerpts from Ocean Grove Resort Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources, as well as national valuation services, such as RS Means and Marshall and Swift.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 225.5 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0051571

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0051572

Excerpts from Ocean Grove Resort Appraisal

## Identification of the Subject Property

The subject is located on Water Tower Road and Coates Road, north of Highway 31 and the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 225.5 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Ocean Grove Resort, LLC

### Improvements

None

### Taxes

Tax Information

| | |
|---|---|
| Name: | SLF IV/SBI SANDRIDGE LLC |
| Address: | 2092 OAK STREET STE 290 MYRTLE BEACH SC 29577 3196 |
| Tax Year: | 2015 |
| District/Levy: | 550 / 185.5 |
| City/Levy: | NM / 039.3 |
| Total Appraisal: | 68,043 |
| Total Assessed: | 4,080 |

| Assessment Ratio: | Land Appraisal: | Building Appraisal: |
|---|---|---|
| 6% | 68,043 | 0 |

Property Information

| | |
|---|---|
| Record Type: | Real Estate |
| Map Number: | 129-00-07-596 |
| PIN: | 348-07-02-0092 |
| Acres: | 3.43 |
| Description: | WATER TOWER & COATES RD |

Taxes

| | |
|---|---|
| County Tax: | $756.84 |
| City Tax: | $160.34 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Total Taxes: | $917.18 |
| Total Paid: $917.18 | |

ECOVEST-DOJ_0051576

Excerpts from Ocean Grove Resort Appraisal

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No

- Observed staining of soils:                          On-Site: No; Adjacent: No
- Observed distressed vegetation:                On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

  On-Site: No; Adjacent: No

- Observed noticeable odors:                        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 225.5 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0051591

Excerpts from Piney Cumberland Appraisal

# Excerpts from appraisal of: Piney Cumberland

# Document ID: ECOVEST-DOJ_0233863

Excerpts from Piney Cumberland Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

March 18, 2013

Peter Hardin
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:   Conservation Easement Piney Cumberland
Van Buren County, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Hardin:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*Foothills Land Conservancy*
*373 Ellis Avenue*
*Maryville, TN 37804*

ECOVEST-DOJ_0233863

Excerpts from Piney Cumberland Appraisal

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 26, 2012, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 439.86 | $10,352,165 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 26, 2012 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 439.86 | $500 | $219,930 |

The subject property has one (1) reserved site. The lot may not be severed from the master tract, nor may the master tract be divided. Based upon the review of other easements, the value of this site does not warrant a value over and above the price per acre. There is no enhancement.

The value of the easement gift as of December 26, 2012 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 439.86 | | $10,352,165 |
| Less | | | |
| After Value (Encumbered) | 439.86 | $500 | $219,930 |
| Value of the Easement | | rounded | $10,132,000 |

ECOVEST-DOJ_0233864

Excerpts from Piney Cumberland Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

The after valuation is made under the assumption that the easement has been granted.  It has not been granted.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0233865

Excerpts from Piney Cumberland Appraisal

## Table of Contents

Certification ............................................................................................................................... 6

Summary of the Appraisal ............................................................................................................ 7

Assumptions and Limiting Conditions ........................................................................................ 8

Legal Descriptions and Maps ...................................................................................................... 11

INTRODUCTION: ....................................................................................................................... 16

*Scope of the Assignment* ....................................................................................................... 17

*Competency Provision* ........................................................................................................... 21

*Appraisal of the Larger Parcel:* ............................................................................................ 22

*Identification of the Subject Property* ................................................................................. 23

*Prior Sales History* .............................................................................................................. 23

*Ownership* .............................................................................................................................. 23

*Improvements* ......................................................................................................................... 23

*Taxes* ...................................................................................................................................... 23

*General Area Analysis* .......................................................................................................... 32

SECTION I ................................................................................................................................... 42

APPRAISAL OF THE BEFORE VALUE .................................................................................. 42

*Highest and Best Use Analysis:* ........................................................................................... 43
    a)   *Legally Permissible* ................................................................................................... 44
    b)   *Physically Possible* ..................................................................................................... 44
    c)   *Financially Feasible* .................................................................................................. 44
    d)   *Maximally Productive* ............................................................................................... 45
    e)   *Sufficiency of Demand* .............................................................................................. 45
    Conclusion ........................................................................................................................ 45
    Hypothetical Condition ................................................................................................... 45

*Land Valuation:* ..................................................................................................................... 46

SECTION II .................................................................................................................................. 67

APPRAISAL OF THE AFTER VALUE ..................................................................................... 67

*Highest and Best Use Analysis:* ........................................................................................... 77
    a)   Legal permissibility ..................................................................................................... 78
    b)   Physical possibility and suitability ............................................................................. 78
    c)   Financial feasibility ..................................................................................................... 78
    d)   Maximum productivity ................................................................................................ 78
    e)   Sufficiency of demand ................................................................................................. 78
    Conclusion: ....................................................................................................................... 79

*Land Valuation:* ..................................................................................................................... 80
    Sales Comparison Approach ........................................................................................... 80

Reconciliation ............................................................................................................................... 93

Addenda ........................................................................................................................................ 94

ECOVEST-DOJ_0233866

QUALIFICATIONS......................................................................................................... 95
License....................................................................................................................... 97
Land Planner's Certification...................................................................................... 98
Engineer's Letter on Soil Conditions....................................................................... 99
Deeds and Tranfer Instruments................................................................................ 101
Easement and Baseline Documents ......................................................................... 114

ECOVEST-DOJ_0233867

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                         State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0233868

Excerpts from Piney Cumberland Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Brockdale Road near Spencer in Van Buren, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | March 18, 2013 |
| **Date of Value Estimates:** | December 26, 2012 |
| **Date of Donation** | December 26, 2012 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 439.86 Acres |
| **Easement:** | 439.86 Acres |
| **Reserved:** | 1 reserved site (2.30 acres); may not be severed |
| **Total:** | 439.86 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use of Site as Though Vacant:** | Before:  Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0233869

Excerpts from Piney Cumberland Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0233870

Excerpts from Piney Cumberland Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0233871

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0233872

Excerpts from Piney Cumberland Appraisal

**Legal Descriptions and Maps**

Lying and being in the Fourth (4th) Civil District of Van Buren County, Tennessee, and being more particularly described as follows:

**The following is a description of a portion of the Piney Cumberland Resources property located off of the Park Road and Brockdale Road in the 4th Civil District of Van Buren County, Tennessee (Reference RB56 Page 45 and Tax Map 75 Parcel 18.00)**

Beginning on a coal car rail being the northeastern corner of this described parcel as well as being in the western boundary line of the Long Branch Lakes property; thence going with the said Long Branch Lake property S 04°21'32" W 850.51 feet to a stone; thence leaving the Long Branch property and going with the Calvin Haggard property S 05°36'33" W 2095.52 feet to a stone; thence leaving Haggard and going with the Eddie Oaks property S 05°19'51" W 1285.18 feet to a coal car rail; thence leaving Oaks and going with the Lester Allison property S 39°56'57" E 112.44 feet to a point in the center of a creek (location of the creek was generated from a USGS topographic map and has not been field verified); thence leaving Allison and generally following the meanders of the said creek N 86°08'16" W 114.94 feet; thence S 70°54'23" W 177.44 feet; thence S 52°15'12" W 126.42 feet; thence S 77°46'30" W 197.97 feet; thence N 87°42'34" W 80.68 feet; thence N 69°04'32" W 117.38 feet; thence N 67°22'48" W 125.76 feet; thence S 87°23'51" W 71.01 feet; thence S 47°17'26" W 57.05 feet; thence S 20°13'29" W 65.29 feet; thence S 48°21'59" W 116.49 feet; thence N 88°56'21" W 174.16 feet; thence S 75°57'50" W 93.07 feet; thence S 76°14'21" W 162.67 feet; thence S 36°31'44" W 108.35 feet; thence S 07°18'21" W 126.79 feet; thence S 01°47'28" W 141.38 feet to a point in the creek; thence leaving the creek and going with the Kenneth Wood property N 86°37'37" W 1654.77 feet to a set stone; thence N 83°09'28" W 2139.50 feet to a ½" pipe (found); thence continuing with Wood and Gary Hall N 05°42'24" E 455.35 feet to a coal car rail; thence leaving Wood and Hall and going with the Paul Taylor property N 05°55'13" E 1360.13 feet to a 20" red oak; thence leaving Taylor and going with the Alan and Jeff Pettit property S 85°18'57" E 2106.52 feet to a set stone; thence continuing with the same N 04°48'26" E 3234.99 feet to a coal car rail; thence leaving Pettit and going with the Allen Nichols property S 84°48'42" E 1068.57 feet to a 4" wood fence post; thence leaving Nichols and going with the Billy Helton property S 86°47'47" E 936.81 feet to a 1/2" pipe (found); thence leaving Helton and going with the Calvin Haggard property S 85°23'51" E 1152.95 feet to the beginning being 439.86 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 23 September 2011.

BEING a part of the same property conveyed to the Grantor herein by deed of record in Book RB 63, Page 837 in the Register of Deeds Office for Van Buren County, Tennessee.

FOR FURTHER REFERENCE, see deed of record in Book RB 56, Page 45 in the Register of Deeds Office for Van Buren County, Tennessee.

ECOVEST-DOJ_0233873

Excerpts from Piney Cumberland Appraisal

Introduction

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises Step 4. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0233880

Excerpts from Piney Cumberland Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These type of properties are best evaluated using a DCF method.   The specific state park information will follow in the DCF explanation later in the report.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF, income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of significance is proximity to other recreational features such as national and state forests and parks.  This property is very close to Fall Creek Falls State Park and Bledsoe State Forest.

ECOVEST-DOJ_0233881

Excerpts from Piney Cumberland Appraisal

**Identification of the Subject Property**

The subject property consists of one parcel located of Brockdale Road near Spencer in Van Buren County, Tennessee. The site contains 439.86+- acres.

**Prior Sales History**

The Subject is not listed for sale. The following is a detailed description of the sales history of the Subject Property for the last three years, a copy of the deeds are located in the addenda:

> Southeastern Timberland Group, LLC, sold the tract, (containing both the Piney Cumberland tract and the Meadow Creek tract), by deed dated March 18, 2010, to Piney Cumberland Resources, LLC, under deed of record at Book RB56, page 45, Register's Office, Van Buren County, Tennessee, as subsequently restated by instrument dated November 30, 2011, of record at Book RB63, page 837.

> Piney Cumberland, LLC, severed the tract with a conveyance to Meadow Creek Investments, LLC, by deed dated December 29, 2011, of record at Book RB 64, page 296.

**Ownership**

Piney Cumberland Resources, LLC

**Improvements**

None

**Taxes**

The following county tax assessment is of the Subject Property prior to the tract being conveyed to Meadow Creek Investments, LLC.

ECOVEST-DOJ_0233885

Site Data

|  | On-Site: No; Adjacent: No |
| --- | --- |

- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":     On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 439.86 +- acres, of which approximately 439.86 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0233898

# Excerpts from appraisal of: Port Quay Resort

# Document ID: ECOVEST-DOJ_0149896

Excerpts from Port Quay Appraisal

## CLARK ~ DAVIS, PC
### REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Port Quay Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Port Quay Resort, LLC
       389.11 acre tract, Aransas County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0149896

Excerpts from Port Quay Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct. No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions. I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0149897

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of November 30, 2017, and before the Subject Property is encumbered by the easement is as follows:

| Unencumbered | Acres | FMV |
|---|---|---|
| Total Before Value | 389.11 | $57,588,088 |

The value of the Subject Property, subject to a perpetual conservation easement as of November 30, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value | 389.11 | $968,320 |

The value of the easement gift as of November 30, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Total Before Value (Unencumbered) | 389.11 | $57,588,088 |
| Less | | |
| Total After Value (Encumbered) | 389.11 | $968,320 |
| **Value of the Easement** | rounded | **$56,620,000** |

The encumbered property also includes one (1) reserved building zone that allows for three (3) one-acre building areas. These three sites allow for one residence each and one additional residence each that can be no more than ½ the size of the main residence, basically a mother-in-

ECOVEST-DOJ_0149898

law cottage.  While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights and eased site does retain some limited subdivision rights, as defined by the easement; therefore, I feel these sites require an additional value over that of the per acre value of the encumbered property.  It should  be noted that these areas are not build ready and will incur some development costs to make them so. I have decided to value these building areas at $5,000 per acre, or $15,000.  This value will be added to the indicated fair market value of the encumbered property.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                          State Certified General Real Property Appraiser
TX License #TX 1380003

ECOVEST-DOJ_0149899

Excerpts from Port Quay Appraisal

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of the storm on the prospective projects.

Excerpts from Port Quay Appraisal

**CLARK ~ DAVIS, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

September 8, 2017

Adam Lloyd
Ecovest Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

ECOVEST-DOJ_0149901

Excerpts from Port Quay Appraisal

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Port Quay Resort will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.


Very Truly Yours,



Claud Clark III

ECOVEST-DOJ_0149902

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS

626 Elk Run Lane
Earlysville, Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 29, 2017

Mr. Adam Lloyd
EcoVest Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Port Quay, Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will consume the year ahead, but elements such as refining, petrochemicals and shipping will recover in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our society and our economy that continue on as though nothing has happened. Growth in the Texas market is not going to stop. Many corporations continue to migrate to Texas and to expand. The energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump in growth when rebuilding is added to the already existing demand in Texas, among the healthiest in the nation. One can also argue that the Texas' coast location has been in a known hurricane zone for centuries and that the risks associated with the location are baked in and do not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and residential migration will continue to occur. The shore will continue to be a magnet. Hurricane Harvey has no impact on these dynamics. This is the most fundamental truth that should not be forgotten and is a powerful reason to remain bullish on Texas and its coast.

ECOVEST-DOJ_0149903

Excerpts from Port Quay Appraisal

Consequences of the storm that are unanticipated benefits to the proposed development of Port Quay include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Rockport, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019, and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.

Sincerely,

*Ralph S Bowden*

Ralph S. Bowden
President

ECOVEST-DOJ_0149904

Table of Contents

*Certification* .................................................................................................................12

**Summary of the Appraisal** ............................................................................................13

**Assumptions and Limiting Conditions** ........................................................................14

**Legal Descriptions and Maps** .......................................................................................17

**INTRODUCTION:** .......................................................................................................33

**Scope of the Assignment** ..............................................................................................34

*Competency Provision* ..............................................................................................38

*Appraisal of the Larger Parcel:* ...............................................................................39

*Identification of the Subject Property* ......................................................................40

*Prior Sales History* ...................................................................................................40

*The Subject is not listed for sale.* .............................................................................40

*Ownership* .................................................................................................................40

*Improvements* ...........................................................................................................40

*Taxes* .........................................................................................................................40

*Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ..........43

**SECTION I** ....................................................................................................................57

**APPRAISAL OF THE BEFORE VALUE** ...................................................................57

*Highest and Best Use Analysis:* ...............................................................................58
    a)   *Legally Permissible* ......................................................................................59
    b)   *Physically Possible* .......................................................................................59
    c)   *Financially Feasible* .....................................................................................59
    d)   *Maximally Productive* ...................................................................................60
    e)   *Sufficiency of Demand* ..................................................................................60
    Conclusion ...........................................................................................................60

*Land Valuation:* ........................................................................................................63
    *Discounted Retail Sales Approach* .....................................................................63

**SECTION II** ..................................................................................................................91

**APPRAISAL OF THE AFTER VALUE** .....................................................................91

*Highest and Best Use Analysis:* .............................................................................109
    a)   Legal permissibility ......................................................................................110
    b)   Physical possibility and suitability ...............................................................110
    c)   Financial feasibility ......................................................................................110
    d)   Maximum productivity ..................................................................................110
    e)   Sufficiency of demand ...................................................................................111
    Conclusion: .........................................................................................................111

*Land Valuation* .......................................................................................................112
    Sales Comparison Approach ...............................................................................112

*Estimate of the After Value:* ..................................................................................123

ECOVEST-DOJ_0149905

**Reconciliation** ........................................................................................................................**129**

**Addenda** ................................................................................................................................**131**

    Qualifications ...................................................................................................................131
    License ..............................................................................................................................131
    Port Quay Resort Unit Plans ...........................................................................................131
    Cost Estimates ..................................................................................................................131
    Development Letters .........................................................................................................131
    Demographic Reports ......................................................................................................131
    Mineral Assessment Report .............................................................................................131
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue .............131
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue .....................................................................................................................131
    Crystal Lagoon Information and Supporting Documents ................................................131
    Bowden Report – Before Scenario ..................................................................................131
    Easement ..........................................................................................................................131
    Baseline ............................................................................................................................131

ECOVEST-DOJ_0149906

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being  encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.


Claud Clark III                               State Certified General Real Property Appraiser
TX License #TX 4155

ECOVEST-DOJ_0149907

Excerpts from Port Quay Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Port Bay Road and Highway 1069, west of the town of Rockport in Aransas County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Property Inspection:** | June 13, 2017 |
| **Date of Value Estimates:** | November 30, 2017 |
| **Date of Donation:** | November 30, 2017 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 389.11 Acres |
| **Easement:** | 389.11 Acres |
| **Reserved:** | 3 Acre Building Zone located within the easement |
| **Total:** | 389.11 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:   Residential Development<br>After:    Recreational / Green Space with a 3-acre Building Zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0149908

Excerpts from Port Quay Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0149909

Excerpts from Port Quay Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0149910

Excerpts from Port Quay Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0149911

Excerpts from Port Quay Appraisal

## Legal Descriptions and Maps

EXHIBIT "A"

**0000358059**


File No.
County Clark, Aransas County, Texas

389.11 ACRES

THE STATE OF TEXAS}
THE COUNTY OF ARANSAS}

BEING a 389.11 acre tract of land situated in a portion of the William S. Tuten Survey, Abstract No. 202 and a portion of the John Smith Survey, Abstract No. 187, Aransas County, Texas, out of and part of the C.B. Lucas Ranch Subdivision according to the established map or plat thereof as recorded in Volume 2, Page 7 of the Map Records, Aransas County, Texas, and being a portion out of a called 1107.81 acre tract of land described by General Warranty Deed dated March 23, 2007, conveyed from Tidwell Coastal Ranch, Ltd. to Waterfront Land Investments Fund I, L.P. as recorded in Instrument No. 290234 of the Official Public Records, Aransas County, Texas, said 389.11 acre tract being particularly described by metes and bounds as follows:

BEGINNING at a found 5/8" steel rebar marking the intersection of the northwest line of Farm-to-Market No. 1069 (a Variable Width Right-of-Way – 80-foot minimum) and the southwest line of Port Bay Club Road (a 60-foot Right-of-Way) and being the called northeast corner of the aforesaid 1107.81 acre tract for the east corner of the herein described tract;

THENCE, along the northwest right-of-way line of said Farm-to-Market No. 1069, with the southeast line of said 1107.81 acre tract, the following courses and distances:

- South 26°08'49" West, a distance of 1572.85 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 26°01'14" West, a distance of 149.75 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 28°26'05" West, a distance of 38.96 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 29°41'58" West, a distance of 359.27 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 29°59'20" West, a distance of 620.70 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the northwest right-of-way line of said Farm-to-Market No. 1069 and the southeast line of said 1107.81 acre tract for the south corner of the herein described tract;

THENCE, North 60°00'18" West, over and across said 1107.81 acre tract, at a distance of 5583.39 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 5883.39 feet to a corner point marking the west corner of the herein described tract;

THENCE, along the bank of Puerto Bay, with the northwest line of said 1107.81 acre tract, the following courses and distances:

- North 28°32'56" East, a distance of 159.63 feet to an angle point for the herein described tract;

- North 14°48'31" East, a distance of 282.13 feet to an angle point for the herein described tract;

1

ECOVEST-DOJ_0149912

EXHIBIT "A"  

Site No._____
County Clerk, Aransas County, Texas

- South 76°02'24" East, a distance of 220.98 feet to an angle point for the herein described tract;

- North 31°41'32" East, a distance of 416.77 feet to an angle point for the herein described tract;

- North 15°32'37" East, a distance of 264.23 feet to an angle point for the herein described tract;

- North 24°44'06" East, a distance of 295.32 feet to an angle point for the herein described tract;

- North 27°52'57" East, a distance of 205.26 feet to an angle point for the herein described tract;

- North 68°10'55" East, a distance of 575.49 feet to an angle point for the herein described tract;

- North 23°14'31" East, a distance of 380.44 feet to an angle point for the herein described tract;

- North 57°29'51" West, a distance of 283.27 feet to an angle point for the herein described tract;

- North 48°24'51" West, a distance of 275.34 feet to an angle point for the herein described tract;

- North 70°24'35" West, a distance of 233.99 feet to an angle point for the herein described tract;

- North 51°29'52" West, a distance of 140.11 feet to a found 5/8" steel rebar marking the called northwest corner of said 1107.81 acre tract and being along the southwest right-of-way line of said Port Bay Club Road for the north corner of the herein described tract;

**THENCE**, along the southwest right-of-way line of said Port Bay Club Road, with the northwest line of said 1107.81 acre tract, the following courses and distances:
- North 73°38'48" East, a distance of 510.64 feet to a set 5/8" steel rebar marking an angle point for the herein described tract;

- South 87°01'53" East, a distance of 152.13 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 86°50'02" East, a distance of 91.49 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 79°12'57" East, a distance of 46.34 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 71°19'24" East, a distance of 241.77 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 58°49'55" East, a distance of 103.82 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 58°27'21" East, a distance of 1570.03 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

2

Excerpts from Port Quay Appraisal

EXHIBIT "A"



File No. _____
County Clerk, Aransas County, Texas

- South 58°24'41" East, a distance of 2549.30 feet to a found 5/8" steel rebar marking an angle point for the herein described tract;

- South 52°08'54" East, a distance of 1261.79 feet to the **POINT OF BEGINNING, CONTAINING** within these metes and bounds a 389.11 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204)

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in June, 2017 and are true and correct to the best of my knowledge and belief.

07/08/2017

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S22090.00 - Tract 3: 389.11 Acres

3

ECOVEST-DOJ_0149914

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed.  Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader.  The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 389.11 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction

ECOVEST-DOJ_0149930

- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales

ECOVEST-DOJ_0149931

Excerpts from Port Quay Appraisal

Area Data

## Identification of the Subject Property

The subject is located off Port Bay Road and Highway 1069, west of the town of Rockport in Aransas County, Texas. The site contains 389.11 acres.

### *Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years. However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### *Ownership*

Port Quay Resort, LLC

### *Improvements*

None

### *Taxes*

ECOVEST-DOJ_0149935

Site Data

|                                              |                            |
| -------------------------------------------- | -------------------------- |
|                                              | On-Site: No; Adjacent: No  |
| • Observed staining of soils:                | On-Site: No; Adjacent: No  |
| • Observed distressed vegetation:            | On-Site: No; Adjacent: No  |
| • Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk": | |
|                                              | On-Site: No; Adjacent: No  |
| • Observed noticeable odors:                 | On-Site: No; Adjacent: No  |

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 389.11 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0149948

# Excerpts from appraisal of: Punta Vista Grande

# Document ID: ECOVEST-DOJ_0176521

Excerpts from Punta Vista Grande Appraisal

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

February 1, 2019

Punta Vista Grande LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:    Conservation Easement Appraisal
       Punta Vista Grande, LLC
       147.17 acre tract, Jasper County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal
Report presented in accordance with *Section 170(f)(11)(E)(i)*. My opinion of Fair Market Value
is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated
as an appraisal under regulations or other guidance prescribed by the Secretary and conducted
by a qualified appraiser in accordance with generally accepted appraisal standards and any
regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1)
has earned an appraisal designation from a recognized professional appraiser organization or
has otherwise met minimum education and experience requirements set forth in regulations
prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives
compensation, and (3) meets such other requirements as may be prescribed by the Secretary in
regulations or  other guidance.*

1

CLAUD CLARK III, PC

ECOVEST-DOJ_0176521

Excerpts from Punta Vista Grande Appraisal

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows:

*Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement.

For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**

*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

ECOVEST-DOJ_0176522

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*

*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
*(ii) Fair Market Value of property before and after restriction.  If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 127.17-acre conservation easement in Jasper County, South Carolina. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **Fair Market Value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

ECOVEST-DOJ_0176523

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 5, 2018, and Before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| **Fair Market Value of the Subject Before the Easement Fee Simple** | 127.17 | $39,820,053 |
| **Fair Market Value of the Outparcel** | 20 | $6,262,492 |
| **Total Fair Market Value Before the Easement Fee Simple** | 147.17 | $46,082,545 |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 5, 2018 is:

|  | Acres | FMV |
|---|---|---|
| **Fair Market Value of the Subject After the Easement Fee Simple** | 127.17 | $190,755 |
| **Fair Market Value of the Outparcel** | 20 | $6,262,492 |
| **Total Fair Market Value After the Easement Fee Simple** | 147.17 | $6,453,247 |

The encumbered property also includes one reserved residential building zone that allows for the construction of one recreational building and either one residence or one resort building, but not both. In theory, if taken as separate components of the valuation, the building area and the

ECOVEST-DOJ_0176524

remaining eased area that cannot be improved have different values.  This site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided that these properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of these tracts will be included in that of the complete tract. They are not valued as separate components. There is no enhancement.

In addition to the encumbered property, there is a 20-acre outparcel that shares the same ownership as the larger tract.  This outparcel currently has no density associated with it.  However, I believe that once the easement is placed and its density is removed, someone could apply with City of Hardeeville or Jasper County, for density to be applied to this outparcel.  It is reasonable and probable that such a change will occur in the future.  A conservative approach to the valuation of this outparcel is to find a per acre value of the developed tract before the easement is placed and apply that per acre value to this outparcel.  I do not feel that any enhancement to this outparcel is necessary as this tract will most likely be developed in some sort of commercial capacity.  The determined value of this outparcel is $6,262,492, which will be added to both the Before and After value of the larger tract.

The Fair Market Value of the easement gift as of December 5, 2018 is as follows and is based upon the before and after method.  The total Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $46,082,545.  The total Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $6,453,247. Using the before and after method, the total Fair Market Value of the Conservation Easement is $39,629,000 (rounded).

| | Acres | FMV |
|---|---|---|
| Total Fair Market Value Before the Easement | 147.17 | $46,082,545 |
| Total Fair Market Value After the Easement | 147.17 | $6,453,247 |
| **Fair Market Value of the Easement (rounded)** | 147.17 | **$39,629,000** |

Fair Market Value of the Conservation Easement on the effective date is:

***THIRTY-NINE MILLION SIX HUNDRED TWENTY-NINE THOUSAND DOLLARS***

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

ECOVEST-DOJ_0176525

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6768 CG

Excerpts from Punta Vista Grande Appraisal

## Table of Contents

*Certification* ..................................................................................................................... **9**

**Certification of Appraiser** ............................................................................................ **9**

**Summary of the Appraisal** ........................................................................................ **11**

**Assumptions and Limiting Conditions** ..................................................................... **13**

**Legal Descriptions and Maps** ................................................................................... **16**

**INTRODUCTION:** ..................................................................................................... **32**

**Scope of the Assignment** ........................................................................................... **33**

*Identification of the Subject Property* ........................................................................ *38*

*Prior Sales History* ...................................................................................................... *38*

*Ownership* ..................................................................................................................... *38*

*Improvements* ............................................................................................................... *38*

*Taxes* ............................................................................................................................. *38*

*Neighborhood Data –Jasper County, South Carolina* ................................................ *41*

**SECTION I** ................................................................................................................... **54**

**APPRAISAL OF THE BEFORE VALUE** ................................................................. **54**

*Highest and Best Use Analysis:* .................................................................................. *55*
    *a)*   *Legally Permissible* ................................................................................... *56*
    *b)*   *Physically Possible* .................................................................................... *56*
    *c)*   *Financially Feasible* .................................................................................. *56*
    *d)*   *Maximally Productive* ................................................................................ *57*
    *e)*   *Sufficiency of Demand* ............................................................................... *57*
    Conclusion ........................................................................................................ 57

*Land Valuation:* ........................................................................................................... *60*
    *Discounted Retail Sales Approach* ................................................................. 60

**SECTION II** ................................................................................................................. **87**

**APPRAISAL OF THE AFTER VALUE** ..................................................................... **87**

*Highest and Best Use Analysis:* ................................................................................ *107*
    a)   Legal permissibility ...................................................................................... 108
    b)   Physical possibility and suitability ............................................................... 108
    c)   Financial feasibility ....................................................................................... 108
    d)   Maximum productivity .................................................................................. 108
    e)   Sufficiency of demand ................................................................................... 109
    Conclusion: ...................................................................................................... 109

*Land Valuation* .......................................................................................................... *110*
    Sales Comparison Approach ........................................................................... 110

*Estimate of the After Value:* ...................................................................................... *117*

ECOVEST-DOJ_0176527

**Reconciliation**..................................................................................................................**123**

**Addenda**.........................................................................................................................**125**
    Qualifications .........................................................................................................125
    License ...................................................................................................................125
    Deed and Title Documents.......................................................................................125
    Unit Plans ..............................................................................................................125
    Cost Estimates........................................................................................................125
    Development Letters ...............................................................................................125
    Demographic Reports .............................................................................................125
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............125
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ...............................................................................................................................125
    Crystal Lagoon Information and Supporting Documents ............................................125
    Bowden Report – Before Scenario............................................................................125
    Easement ...............................................................................................................125
    Baseline.................................................................................................................125

ECOVEST-DOJ_0176528

*Certification*

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0176529

Excerpts from Punta Vista Grande Appraisal

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 21, 019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0176530

Excerpts from Punta Vista Grande Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off SC Highway 141 in Jasper County, South Carolina, approximately 10 miles from Interstate 95. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | February 1, 2019 |
| **Date of Property Inspection:** | January 21, 2019 |
| **Date of Value Estimates:** | December 5, 2018 |
| **Date of Donation** | December 5, 2018 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | PDD, Planned Development District |
| **Site:** | 147.17 Acres |
| **Easement:** | 127.17 Acres |
| **Reserved:** | One 5-acre Reserved Building Zone located within the easement |
| **Excluded:** | 20 Acre Outparcel |
| **Total:** | 147.17 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:   Residential Development<br>After:     Recreational / Green Space with a 5-acre Building Zone and 20-acre excluded tract |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC         EIN 63-1075275 |

ECOVEST-DOJ_0176531

Excerpts from Punta Vista Grande Appraisal

SS# ***-**-1840 Will be provided to IRS upon request.

ECOVEST-DOJ_0176532

Excerpts from Punta Vista Grande Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0176533

Excerpts from Punta Vista Grande Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

ECOVEST-DOJ_0176534

Excerpts from Punta Vista Grande Appraisal

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0176535

**Legal Descriptions and Maps**

ECOVEST-DOJ_0176536

PROPERTY DESCRIPTION – SOUTHWEST TRACTS B-1 & B-2

ALL THOSE CERTAIN PIECES, PARCELS OR TRACTS OF LAND, SITUATE, LYING AND BEING IN THE CITY OF HARDEEVILLE, JASPER COUNTY, SOUTH CAROLINA, SHOWN AND DESCRIBED AS "SOUTHWEST TRACT B-1", CONTAINING 127.172 ACRES, MORE OR LESS, AND "SOUTHWEST TRACT B-2", CONTAINING 20.000 ACRES, MORE OR LESS, ON THAT CERTAIN PLAT DATED OCTOBER 20, 2017, ENTITLED "SUBDIVISION PLAT SOUTHWEST TRACT B-1 AND SOUTHWEST TRACT B-2 FORMERLY SOUTHWEST TRACT B A PORTION OF EAST ARGENT, CITY OF HARDEEVILLE, JASPER COUNTY, SOUTH CAROLINA" PREPARED FOR PUNTA VISTA GRANDE, LLC, PREPARED BY THOMAS & HUTTON ENGINEERING CO., CERTIFIED BY ROBERT K. MORGAN, III, PLS (SC #26957), AND RECORDED OCTOBER 31, 2017, IN PLAT BOOK 35 AT PAGE 233, IN THE OFFICE OF THE REGISTER OF DEEDS FOR JASPER COUNTY, SOUTH CAROLINA (THE "PLAT"), REFERENCE TO WHICH IS HEREBY CRAVED AS FORMING A PART AND PARCEL HEREOF.

  COMMENCING AT THE NORTHERLY RIGHT OF WAY LINE OF ARGENT BOULEVARD (R/W VARIES) AND THE EASTERLY RIGHT OF WAY LINE OF HAMPTON POINTE LOOP ROAD (150' R/W); THENCE NORTHERLY ALONG HAMPTON POINTE LOOP ROAD RIGHT OF WAY APPROXIMATELY 8,832 FEET TO AN IRON PIPE FOUND; thence N 12°32'45" E, A DSITANCE OF 230.30 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 257.26 FEET, A RADIUS OF 1150.00 FEET, A CHORD LENGTH OF 256.72 FEET, AND A CHORD BEARING N 06°08'14" E TO A POINT; THENCE WITH A COMPOUND CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 33.37 FEET, A RADIUS OF 1150.00 FEET, A CHORD LENGTH OF 33.37 FEET, AND A CHORD BEARING N 01°06'09" W TO A POINT; THENCE N 01°56'02" W, A DSITANCE OF 182.65 FEET TO A POINT; THENCE N 01°56'02" W, A DSITANCE OF 291.34 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 178.28 FEET, A RADIUS OF 985.00 FEET, A CHORD LENGTH OF 178.04 FEET, AND A CHORD BEARING N 03°35'19" E TO A POINT; THENCE N 08°47'33" E, A DSITANCE OF 2289.00 FEET TO A POINT; THENCE S 78°41'30" E, A DSITANCE OF 558.35 FEET TO A POINT; THENCE N 52°27'37" E, A DSITANCE OF 794.19 FEET TO A POINT; THENCE S 70°39'17" E, A DSITANCE OF 679.42 FEET TO A POINT; THENCE S 89°31'48" E, A DSITANCE OF 648.34 FEET TO A POINT; THENCE S 89°31'48" E, A DSITANCE OF 122.18 FEET TO A POINT; THENCE S 10°11'08" W, A DSITANCE OF 7.24 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 138.12 FEET, A RADIUS OF 330.00 FEET, A CHORD LENGTH OF 137.12 FEET, AND A CHORD BEARING S 22°10'35" W TO A POINT; THENCE S 34°10'02" W, A DSITANCE OF 738.32 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 202.32 FEET, A RADIUS OF 530.00 FEET, A CHORD LENGTH OF 201.09 FEET, AND A CHORD BEARING S 45°06'11" W TO A POINT; THENCE S 56°02'19" W, A DSITANCE OF 697.24 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 39.35 FEET, A RADIUS OF 1940.00 FEET, A CHORD LENGTH OF 39.35 FEET, AND A CHORD BEARING S 55°27'27" W TO A POINT; THENCE N 35°07'24" W, A DSITANCE OF 20.00 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 106.55 FEET, A RADIUS OF 1960.00 FEET, A CHORD LENGTH OF 106.54 FEET, AND A CHORD BEARING S 53°19'09" W TO A POINT; THENCE WITH A REVERSE CURVE TURNING TO THE RIGHT, HAVING AN ARC LENGTH OF 376.94 FEET, A RADIUS OF 1355.00 FEET, A CHORD LENGTH OF 375.73 FEET, AND A CHORD BEARING S 59°43'52" W TO A POINT; THENCE WITH A REVERSE CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 67.15 FEET, A RADIUS OF 1960.00 FEET, A CHORD LENGTH OF 67.14 FEET, AND A CHORD BEARING S 66°43'09" W TO A POINT; THENCE S 24°15'44" E, A DSITANCE OF 20.00 FEET TO A POINT; THENCE WITH THE ARC OF A CURVE TURNING TO THE LEFT, HAVING AN ARC LENGTH OF 26.82

ECOVEST-DOJ_0176537

FEET, A RADIUS OF 1940.00 FEET, A CHORD LENGTH OF 26.82 FEET, AND A CHORD BEARING S 65°20'31" W TO A POINT; THENCE S 19°22'51" E, A DSITANCE OF 39.28 FEET TO A POINT; THENCE S 63°37'27" E, A DSTANCE OF 28.28 FEET TO A POINT; THENCE S 10°34'20" E, A DSTANCE OF 25.93 FEET TO A POINT; THENCE S 47°19'01" E, A DSITANCE OF 32.46 FEET TO A POINT; THENCE S 06°12'24" W, A DSITANCE OF 24.31 FEET TO A POINT; THENCE S 24°25'12" E, A DSITANCE OF 19.14 FEET TO A POINT; THENCE S 07°47'23" E, A DSITANCE OF 33.73 FEET TO A POINT; THENCE S 09°21'01" E, A DSITANCE OF 44.84 FEET TO A POINT; THENCE S 06°49'51" E, A DSITANCE OF 25.75 FEET TO A POINT; THENCE S 08°47'12" W, A DSITANCE OF 23.62 FEET TO A POINT; THENCE S 46°30'16" W, A DSITANCE OF 49.56 FEET TO A POINT; THENCE S 07°45'48" E, A DSITANCE OF 51.91 FEET TO A POINT; THENCE S 01°09'05" W, A DSITANCE OF 21.11 FEET TO A POINT; THENCE S 19°01'04" W, A DSITANCE OF 19.76 FEET TO A POINT; THENCE S 06°47'48" W, A DSITANCE OF 47.52 FEET TO A POINT; THENCE S 71°11'26" W, A DSITANCE OF 10.51 FEET TO A POINT; THENCE S 43°58'43" W, A DSITANCE OF 45.20 FEET TO A POINT; THENCE S 15°32'37" W, A DSITANCE OF 42.67 FEET TO A POINT; THENCE S 08°33'47" W, A DSITANCE OF 49.29 FEET TO A POINT; THENCE S 41°50'37" E, A DSITANCE OF 44.39 FEET TO A POINT; THENCE S 51°20'16" E, A DSITANCE OF 59.45 FEET TO A POINT; THENCE S 31°15'06" E, A DSITANCE OF 45.95 FEET TO A POINT; THENCE S 33°19'08" E, A DSITANCE OF 22.75 FEET TO A POINT; THENCE S 01°40'34" E, A DSITANCE OF 7.46 FEET TO A POINT; THENCE S 17°10'43" W, A DSITANCE OF 38.33 FEET TO A POINT; THENCE S 28°50'31" E, A DSITANCE OF 33.25 FEET TO A POINT; THENCE S 16°34'39" E, A DSITANCE OF 22.96 FEET TO A POINT; THENCE S 48°16'34" E, A DSITANCE OF 30.59 FEET TO A POINT; THENCE S 32°40'15" E, A DSITANCE OF 11.31 FEET TO A POINT; THENCE S 07°01'57" E, A DSITANCE OF 12.04 FEET TO A POINT; THENCE S 05°30'00" E, A DSITANCE OF 22.39 FEET TO A POINT; THENCE S 45°18'06" E, A DSITANCE OF 38.80 FEET TO A POINT; THENCE S 44°40'20" W, A DSITANCE OF 36.60 FEET TO A POINT; THENCE S 50°32'18" E, A DSITANCE OF 59.99 FEET TO A POINT; THENCE S 78°43'50" E, A DSITANCE OF 32.05 FEET TO A POINT; THENCE S 16°23'40" E, A DSITANCE OF 31.31 FEET TO A POINT; THENCE S 82°35'50" E, A DSITANCE OF 74.11 FEET TO A POINT; THENCE N 88°00'00" E, A DSITANCE OF 36.66 FEET TO A POINT; THENCE N 88°34'39" E, A DSITANCE OF 19.61 FEET TO A POINT; THENCE N 83°07'25" E, A DSITANCE OF 83.28 FEET TO A POINT; THENCE N 66°38'14" E, A DSITANCE OF 29.99 FEET TO A POINT; THENCE S 56°54'19" E, A DSITANCE OF 15.02 FEET TO A POINT; THENCE S 56°19'54" E, A DSITANCE OF 24.47 FEET TO A POINT; THENCE S 02°58'22" W, A DSITANCE OF 23.14 FEET TO A POINT; THENCE S 56°05'42" E, A DSITANCE OF 67.60 FEET TO A POINT; THENCE S 05°20'33" W, A DSITANCE OF 52.85 FEET TO A POINT; THENCE S 02°28'09" W, A DSITANCE OF 7.15 FEET TO A POINT; THENCE S 42°14'40" E, A DSITANCE OF 22.46 FEET TO A POINT; THENCE S 11°28'35" E, A DSITANCE OF 30.20 FEET TO A POINT; THENCE S 37°56'22" E, A DSITANCE OF 44.22 FEET TO A POINT; THENCE S 71°04'11" E, A DSITANCE OF 26.31 FEET TO A POINT; THENCE S 86°48'33" E, A DSITANCE OF 13.38 FEET TO A POINT; THENCE S 63°45'11" E, A DSITANCE OF 39.49 FEET TO A POINT; THENCE S 69°50'10" E, A DSITANCE OF 43.11 FEET TO A POINT; THENCE S 51°30'00" E, A DSITANCE OF 42.76 FEET TO A POINT; THENCE S 34°37'59" E, A DSITANCE OF 34.91 FEET TO A POINT; THENCE S 21°16'29" E, A DSITANCE OF 38.15 FEET TO A POINT; THENCE S 17°17'22" E, A DSITANCE OF 40.19 FEET TO A POINT; THENCE S 19°48'45" E, A DSITANCE OF 46.76 FEET TO A POINT; THENCE S 17°35'30" E, A DSITANCE OF 50.10 FEET TO A POINT; THENCE S 13°26'35" E, A DSITANCE OF 30.03 FEET TO A POINT; THENCE S 03°51'23" W, A DSITANCE OF 39.12 FEET TO A POINT; THENCE S 12°10'35" E, A DSITANCE OF 30.76 FEET TO A POINT; THENCE S 19°00'29" W, A DSITANCE OF 29.16 FEET TO A POINT; THENCE S 08°18'46" W, A DSITANCE OF 47.70 FEET TO A POINT; THENCE S 11°40'05" W, A DSITANCE OF 39.84 FEET TO A POINT; THENCE S 59°31'31" W, A DSITANCE OF 62.62 FEET TO A POINT; THENCE S 67°03'41" W, A DSITANCE OF 56.08 FEET TO A POINT; THENCE S 61°09'38"

ECOVEST-DOJ_0176538

Excerpts from Punta Vista Grande Appraisal

W, A DSITANCE OF 46.68 FEET TO A POINT; THENCE S 53°11'56" W, A DSITANCE OF 38.23 FEET TO A POINT; THENCE S 40°52'08" W, A DSITANCE OF 51.46 FEET TO A POINT; THENCE S 33°54'38" W, A DSITANCE OF 36.30 FEET TO A POINT; THENCE S 18°45'32" W, A DSITANCE OF 36.29 FEET TO A POINT; THENCE S 15°22'28" W, A DSITANCE OF 43.94 FEET TO A POINT; THENCE S 20°57'56" W, A DSITANCE OF 69.46 FEET TO A POINT; THENCE S 12°39'43" W, A DSITANCE OF 48.27 FEET TO A POINT; THENCE S 33°09'37" W, A DSITANCE OF 39.39 FEET TO A POINT; THENCE S 05°53'37" E, A DSITANCE OF 19.96 FEET TO A POINT; THENCE N 86°59'11" W, A DSITANCE OF 1792.10 FEET TO SAID POINT OF BEGINNING, SAID TRACT OR PARCEL OF LAND CONTAINING 147.172 ACRES.

TOGETHER WITH THE APPURTENANT RIGHTS CONTAINED IN THE MASTER AGREEMENT (EAST ARGENT 3B) RECORDED IN VOLUME 926 AT PAGE 107 AS SUPPLEMENTED BY SUPPLEMENT TO MASTER AGREEMENT RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 961 AT PAGE 77.

TOGETHER WITH THE FOLLOWING WHICH SHALL BE REFERRED TO AS "INSURED EASEMENTS":

TOGETHER WITH A NON-EXCLUSIVE APPURTENANT EASEMENT FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS, EGRESS AND UTILITY INSTALLATION AND MAINTENANCE OVER AND ACROSS THAT AREA IDENTIFIED AS "RELOCATABLE ACCESS AND UTILITY EASEMENT "A"", CONTAINING 11.206 ACRES, MORE OR LESS, AS SHOWN ON THE PLAT, GRANTED BY THAT CERTAIN EASEMENT APPURTENANT [EXHIBIT C] OVER "RELOCATABLE ACCESS AND UTILITY EASEMENT "A" GRANTED BY SLF III-SC EAST ARGENT, LLC TO DEL MAR VISTA DUNES, LLC, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 961 AT PAGE 112.

TOGETHER WITH ALL RIGHTS OF THAT CERTAIN DRAINAGE EASEMENT APPURTENANT AGREEMENT BY AND BETWEEN SLF III-SC EAST ARGENT, LLC, AND COASTAVISTA PALMS, LLC, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 926 AT PAGE 227.

TOGETHER WITH ALL RIGHTS OF THAT CERTAIN DRAINAGE EASEMENT APPURTENANT AGREEMENT BY AND BETWEEN SLF III-SC EAST ARGENT, LLC, AND BELLAVISTA GROVE, LLC, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 926 AT PAGE 602.

TOGETHER WITH ALL RIGHTS OF THAT CERTAIN DRAINAGE EASEMENT APPURTENANT AGREEMENT BY AND BETWEEN SLF III-SC EAST ARGENT, LLC, AND DEL MAR VISTA DUNES, LLC, RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 961 AT PAGE 120.

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR PEDESTRIAN AND VEHICULAR ACCESS, INGRESS, AND EGRESS OVER "150' ACCESS EASEMENT", "FUTURE NEW RIVER PARKWAY 150' R/W (A/K/A HAMPTON POINTE LOOP ROAD)" AS GRANTED BY SLF III - SC EAST ARGENT, LLC BY THAT CERTAIN EASEMENT APPURTENANT [EXHIBIT D] RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 961 AT PAGE 116 PURSUANT TO THE GRANT OF ACCESS EASEMENT FROM JPR PROPERTIES, LLC, DATED NOVEMBER 7, 2007, AND RECORDED IN THE JASPER COUNTY RECORDS IN BOOK 606 AT PAGE 77.

ECOVEST-DOJ_0176539

Excerpts from Punta Vista Grande Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data. The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

ECOVEST-DOJ_0176554

Excerpts from Punta Vista Grande Appraisal

Sales of property in the neighborhood and area will be collected and analyzed. Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 127.17-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones and the excluded 20-acre outparcel.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach Appraisal of Conservation Easements, Appraisal of Land

Intended User

The term "intended user" is defined by USPAP as: "The client and any other party as identified, by name or type, as users of the appraisal, appraisal review, or consulting report, by the appraiser based on communication with the client at the time of the assignment".

ECOVEST-DOJ_0176555

Excerpts from Punta Vista Grande Appraisal

Introduction

## Identification of the Subject Property

The subject is located off SC Highway 141 in Jasper County, South Carolina, approximately 10 miles from Interstate 95.

### Prior Sales History

There have been no qualified sales or transfers of the subject property within the last three years. The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years. However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### Ownership

Punta Vista Grande, LLC

### Improvements

None

### Taxes

ECOVEST-DOJ_0176558

Excerpts from Punta Vista Grande Appraisal

Introduction

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 127.17 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

Excerpts from Queen's Cove Appraisal

# Excerpts from appraisal of: Queen's Cove

# Document ID: ECOVEST-DOJ_0088837

Excerpts from Queen's Cove Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Queens Cove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
Queens Cove, LLC
51.38 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0088837

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 28, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 28, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 51.38 | $61,224,881 |

ECOVEST-DOJ_0088838

Excerpts from Queen's Cove Appraisal

The value of the Subject Property, subject to a perpetual conservation easement as of December 28, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 51.38 | $2,405,408 |

The value of the easement gift as of December 28, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 51.38 | $61,224,881 |
| Less Total After Value (Encumbered) | 51.38 | $2,405,408 |
| **Value of the Easement** | rounded | **$58,819,000** |

The encumbered property also includes the reserved right to build up to sixteen attached or detached residential units within the building zone. While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.

While these residential sites cannot claim ownership of the conservation easement area, they can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 10% enhancement to the reserved building sites.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

ECOVEST-DOJ_0088839

Excerpts from Queen's Cove Appraisal

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

Claud Clark III                          State Certified General Real Property Appraiser
SC License #AB 6768 CG

Excerpts from Queen's Cove Appraisal

## Table of Contents

**Certification** ...................................................................................................................7

**Summary of the Appraisal** ............................................................................................8

**Assumptions and Limiting Conditions** ........................................................................9

**Legal Descriptions and Maps** .....................................................................................12

**INTRODUCTION:** ........................................................................................................24

**Scope of the Assignment** ............................................................................................25

*Competency Provision* ..................................................................................................29

*Appraisal of the Larger Parcel:* ....................................................................................30

*Identification of the Subject Property* ..........................................................................31

*Prior Sales History* .......................................................................................................31

*Ownership* .....................................................................................................................31

*Improvements* ...............................................................................................................31

*Taxes* .............................................................................................................................31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ............................33

**SECTION I** ...................................................................................................................51

**APPRAISAL OF THE BEFORE VALUE** ...................................................................51

*Highest and Best Use Analysis:* ...................................................................................52
    a)   Legally Permissible ...........................................................................................53
    b)   Physically Possible ............................................................................................53
    c)   Financially Feasible ..........................................................................................53
    d)   Maximally Productive .......................................................................................54
    e)   Sufficiency of Demand ......................................................................................54
    Conclusion .............................................................................................................54

*Land Valuation:* ............................................................................................................55
    Discounted Retail Sales Approach ........................................................................55

**SECTION II** .................................................................................................................131

**APPRAISAL OF THE AFTER VALUE** .....................................................................131

*Highest and Best Use Analysis:* .................................................................................145
    a)   Legal permissibility ........................................................................................146
    b)   Physical possibility and suitability .................................................................146
    c)   Financial feasibility ........................................................................................146
    d)   Maximum productivity ....................................................................................146
    e)   Sufficiency of demand .....................................................................................146
    Conclusion: ...........................................................................................................147

*Land Valuation* ...........................................................................................................148
    Sales Comparison Approach .................................................................................148

*Estimate of the After Value:* .......................................................................................153

**Reconciliation** ...........................................................................................................159

ECOVEST-DOJ_0088841

<span style="color:red">Excerpts from Queen's Cove Appraisal</span>

**Addenda** ....................................................................................................................................................**161**

    Qualifications ......................................................................................................................................161

    License ................................................................................................................................................161

    Queens Cove Unit Plans......................................................................................................................161

    Cost Estimates....................................................................................................................................161

    Development Letters ...........................................................................................................................161

    Demographic Reports .........................................................................................................................161

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............161

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ................................................................................................................................................................161

    Crystal Lagoon Information and Supporting Documents .......................................................................161

    Bowden Report – Before Scenario.........................................................................................................161

    Easement ............................................................................................................................................161

    Baseline ..............................................................................................................................................161

ECOVEST-DOJ_0088842

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0088843

Excerpts from Queen's Cove Appraisal

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Frontage Road, southeast of Carolina Bays Pkwy and northeast of Robert M Grissom Pkwy.  It is north of the Intracoastal Waterway in Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 28, 2016 |
| **Date of Donation** | December 28, 2016 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:        Fee Simple Interest Subject to Easement |
| **Zoning:** | RC (Resort Commercial) |
| **Site:** | 51.38 Acres |
| **Easement:** | 51.38 Acres |
| **Reserved:** | One 3.5-acre building zone for sixteen residential units |
| **Total:** | 51.38 Acres |
| **Improvements:** | None |
| **High and Best Use**<br>**of Site as Though Vacant:** | Before:      Residential Development<br>After:        Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0088844

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0088845

Excerpts from Queen's Cove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0088846

Excerpts from Queen's Cove Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0088847

Excerpts from Queen's Cove Appraisal

## Legal Descriptions and Maps

ALL THAT CERTAIN PARCEL AS SHOWN ON PLAT ENTITLED BOUNDARY/
SUBDIVISION SURVEY OF A PORTION OF QUEENS COVE FOR _____
DATED AUGUST 30, 2016, BY THE BRIGMAN COMPANY AND RECORDED
_____ IN THE HORRY COUNTY REGISTER OF DEEDS OFFICE IN
PLAT BOOK _____ PAGE_____.

POINT OF BEGINNING #1

BEGINNING AT A POINT ON THE SOUTH WESTERN CORNER OF SAID PARCEL AND
POINT BEING MARKED BY HAVING 5/8" IRON REBAR SET AND HAVING SC STATE
PLANE COORDINATES OF N704,251.31 AND E 2,653,658.92 THENCE A LINE
BOUNDED TO THE WEST BY GRISSOM PARKWAY TO THE EAST BY THE SUBJECT
TRACT, THE FOLLOWING BEARINGS AND DISTANCES:

N 39° 01' 40" W 11.89' TO 5/8" TO SC DOT MONUMENT
N 34° 45' 03" W 407.08 TO 5/8" IRON REBAR SET
N 30° 53' 26" W 296.63 TO 5/8" TO SC DOT MONUMENT

THENCE A LINE BOUNDED TO THE NORTH BY CAROLINA BAYS PARKWAY FRONTAGE
RD, AND BOUNDED TO THE SOUTH BY THE SUBJECT TRACT, THE FOLLOWING
BEARINGS AND DISTANCES:

N 54° 58' 23 E 152.40' TO A 5/8" IRON REBAR SET

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE
FOLLOWING BEARING N 33° 13' 06" E, CHORD 480.90', RADIUS 648.09', ARC
LENGTH 492.68', DELTA ANGLE 43° 33' 22" TO A 5/8" IRON REBAR SET (C1)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE THE
FOLLOWING BEARINGS AND DISTANCE:

N 58° 12' 39" E 127.86' TO 5/8" IRON REBAR SET

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE
FOLLOWING BEARING N 51° 33' 59" E, CHORD LENGTH 142.08', RADIUS 613.08',
ARC LENGTH 142.40' DELTA ANGLE 13° 18' 30" TO 5/8" IRON REBAR SET (C2)

THENCE A LINE BOUNDED TO THE EAST BY CASTLE PICKNEY DRIVE AND BOUNDED
TO THE WEST BY THE SUBJECT TRACT THE FOLLOWING BEARINGS AND DISTANCES:

S 29° 45' 12" E 351.96 TO 5/8" IRON REBAR SET
S 29° 45' 06" E 315.60 TO 5/8" IRON REBAR SET

THENCE A CURVE BOUNDED TO THE SOUTH BY LAND NOW OR FORMERLY OWNED
BY THE BATTERY ON THE WATERWAY HOA INC AND BOUNDED TO THE NORTH BY
THE SUBJECT TRACT THE FOLLOWING BEARING S 15° 14' 51" W, CHORD LENGTH
28.28', RADIUS 20.00', ARC LENGTH 31.41', DELTA ANGLE 89° 58' 58" TO 5/8"
IRON REBAR SET (C7)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE THE
FOLLOWING BEARINGS AND DISTANCES:

S 60° 14'51" W 78.11' TO IRON REBAR SET
S 08° 32' 10" W 81.45' TO 5/8" IRON REBAR SET
S 29° 45' 09" E 220.98' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY ATLANTIC INTRACOASTAL WATERWAY
AND BOUNDED TO THE NORTH BY THE SUBJECT PROPERTY THE FOLLOWING
BEARING AND DISTANCE:

ECOVEST-DOJ_0088848

Excerpts from Queen's Cove Appraisal

S 60° 15' 18" W 656.51'

THENCE BACK TO POINT OF BEGINNING, TRACT CONTAINS 657, 112 SQ. FT. / 15.09 ACRES

POINT OF BEGINNING #2

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL AND POINT BEING MARKED BY HAVING 5/8" IRON REBAR SET AND HAVING THE SC STATE LINE COORDINATES OF N 705,585.98 AND E 2,653,950.03 THENCE A LINE BOUNDED TO THE WEST BY CASTLE PICKNEY DR AND BOUNDED TO THE EAST BY THE SUBJECT TRACT, THE FOLLOWING BEARINGDS AND DISTANCES:

S 29° 45' 09" E 393.48' TO 5/8" IRON REBAR SET
S 29° 45' 09" E 110.07' TO 5/8" IRON REBAR SET (L7)

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY BATTERY ON THE WATERWAY HOA INC COMMON AREA E1 AND BOUNDED TO THE NORTH BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

N 60° 14' 15" E 908.14' TO A CALCULATED POINT WITHIN THE LAKE

THENCE A LINE BOUNDED TO THE SOUTH BY LANDS NOW OR FORMERLY OWNED BY BATTERY ON THE WATERWAY HOA INC COMMON AREA E2 AND BOUNDED TO THE NORTH BY THE SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

N 60°14' 31" E 898.04' TO A 5/8" IRON REBAR SET.

THENCE A LINE BOUNDED TO THE EAST BY MOULTRIE DRIVE AND BOUNDED TO THE WEST BY THE SUBJECT TRACT, THE FOLLOWING BEARING AND DISTANCE:

N 29° 18' 34" W 964.07' TO 5/8" IRON REBAR SET

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE FOLLOWING BEARING S 78° 09' 46" E CHORD LENGTH 52.72' RADIUS 35.00' ARC LENGTH 59.70' DELTA ANGLE 97° 43' 36" TO A 5/8" IRON REBAR SET (C6).

THENCE A CURVE BOUNDED TO THE NORTH BY CAROLINA BAYS PARKWAY FRONTAGE ROAD AND TO THE SOUTH BY THE SUBJECT TRACT THE FOLLOWING BEARING S 55° 12' 51"W, A CHORD LENGTH 908.47', RADIUS 11671.56', ARC LENGTH 908.47' DELTA ANGLE 4° 27' 39" TO 5/8" IRON REBAR SET (C5)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE, THE FOLLOWING BEARINGS AND DISTANCES:

S 56° 38' 27" W 225.10' TO 5/8" IRON REBAR SET
S 24° 01'22" E 2.00' TO 5/8" IRON REBAR SET

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE FOLLOWING BEARING S 36° 59' 56" W CHORD LENGTH 358.60' RADIUS 533.07' ARC LENGTH 365.73' DELTA ANGLE 39° 18' 35" TO 5/8" IRON REBAR SET (C4)

THENCE A LINE HAVING THE SAME BOUNDS AS THE PREVIOUS CURVE, THE FOLLOWING BEARING AND DISTANCE

S 17° 21' 44" W 231.69' TO 5/8" IRON REBAR SET

THENCE A CURVE HAVING THE SAME BOUNDS AS THE PREVIOUS LINE THE FOLLOWING BEARING S 25° 37' 32" W, CHORD LENGTH 176.39', RADIUS 613.08', ARC LENGTH 177.01', DELTA ANGLE 16° 32' 32" (C3)

THENCE BACK TO THE POINT OF BEGINNING, TRACT CONTAINS 36.29 ACRES

ECOVEST-DOJ_0088849

Excerpts from Queen's Cove Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources, as well as national valuation services, such as RS Means and Marshall and Swift. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 51.38 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0088862

Excerpts from Queen's Cove Appraisal

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id.* The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id.* But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id.* Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0088863

Excerpts from Queen's Cove Appraisal

**Identification of the Subject Property**

The subject is located off Frontage Road, southeast of Carolina Bays Pkwy and northeast of Robert M Grissom Pkwy.  It is north of the Intracoastal Waterway in Myrtle Beach, Horry County, South Carolina. The property is bisected by Castle Pickney Drive. The site contains 51.38 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Queens Cove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0088867

Excerpts from Queen's Cove Appraisal

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 51.38 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0088879

Excerpts from Red Oak Equestrian Appraisal

# Excerpts from appraisal of: Red Oak Equestrian

# Document ID: ECOVEST-DOJ_0332259

Excerpts from Red Oak Equestrian Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

\* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

February 10, 2013

Mr. Edmund Cash, Manager
Red Oak Equestrian, LLC
P.O. Box 2579
Rome, GA 30165

RE:   Conservation Easement Red Oak Equestrian
Dade County, Georgia
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

ECOVEST-DOJ_0332259

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 27, 2012, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 324.90 | $6,619,788 |

Fee Simple subject to a perpetual conservation easement

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 322.90 | $1000 | $322,900 |

The value of the easement gift as of December 27, 2012 is as follows and is based upon the before and after method.

The subject property has two (2) reserved home sites. The property can be subdivided into the same number of parcels as there are building lots. The parcels that result from the subdivision must contain a building area. There is no minimum or maximum size.  These lots do not have existing access and would require considerable effort and financing in order to make them build ready.  Based upon the review of other easements, the value of these sites does not warrant a value over and above the price per acre. There is no enhancement.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 324.90 |  | $6,619,788 |
| Less |  |  |  |
| After Value (Encumbered) | 322.90 | $1,000 | $322,900 |
| Less |  |  |  |
| 2 Reserved Building Sites | 2 | $1,000 | $2,000 |
|  |  |  |  |
| Value of the Easement |  | rounded | $6,295,000 |

ECOVEST-DOJ_0332260

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

I have appraised this property in the last three years; however, it was for the same client.

Respectfully submitted

Claud Clark III                                State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0332261

Table of Contents

Certification ............................................................................................................................ 6

Summary of the Appraisal ...................................................................................................... 7

Assumptions and Limiting Conditions ................................................................................. 8

Legal Descriptions and Maps ............................................................................................... 11

INTRODUCTION: ................................................................................................................. 19

   *Scope of the Assignment* ...................................................................................................... *20*

   *Competency Provision* ......................................................................................................... *24*

   *Appraisal of the Larger Parcel:* .......................................................................................... *25*

   *Identification of the Subject Property* ................................................................................. *26*

   *Prior Sales History* .............................................................................................................. *26*

   *Ownership* ............................................................................................................................. *26*

   *Taxes* ..................................................................................................................................... *26*

   *General Area Analysis:* ........................................................................................................ *27*

   *Neighborhood Data – Chattanooga, TN* ............................................................................. *30*

   *Chattanooga, TN Demographics* ......................................................................................... *33*

SECTION I ............................................................................................................................. 48

APPRAISAL OF THE BEFORE VALUE ............................................................................. 48

   *Highest and Best Use Analysis:* ........................................................................................... *49*
      *a)*   *Legally Permissible* ................................................................................... *50*
      *b)*   *Physically Possible* .................................................................................... *50*
      *c)*   *Financially Feasible* .................................................................................. *50*
      *d)*   *Maximally Productive* ................................................................................ *51*
      *e)*   *Sufficiency of Demand* .............................................................................. *51*
      Conclusion ....................................................................................................... 51
      Hypothetical Condition .................................................................................... 51

   *Land Valuation:* .................................................................................................................... *52*

SECTION II ............................................................................................................................ 74

APPRAISAL OF THE AFTER VALUE ................................................................................. 74
      a)   Legal permissibility ......................................................................................... 88
      b)   Physical possibility and suitability .................................................................. 88
      c)   Financial feasibility ......................................................................................... 88
      d)   Maximum productivity ..................................................................................... 88
      e)   Sufficiency of demand ...................................................................................... 88
      Conclusion: ....................................................................................................... 89

   *Land Valuation:* .................................................................................................................... *90*
      Sales Comparison Approach .............................................................................. 90

Reconciliation ....................................................................................................................... 103

ECOVEST-DOJ_0332262

Excerpts from Red Oak Equestrian Appraisal

**Addenda** .................................................................................................................................... **104**
   QUALIFICATIONS .................................................................................................................. 105
   License .................................................................................................................................... 107
   Ingress and Egress Agreement ................................................................................................ 108
   Engineer's Letter on Soil Conditions ...................................................................................... 116
   Geologist's Letter on Mineral Rights ...................................................................................... 117
   Planning Certificate ................................................................................................................ 121
   Warranty Deeds ...................................................................................................................... 122
   Easement and Baseline Documents ........................................................................................ 138

ECOVEST-DOJ_0332263

Excerpts from Red Oak Equestrian Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

_Claud Clark III_

Claud Clark III                State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0332264

Excerpts from Red Oak Equestrian Appraisal

**Summary of the Appraisal**

**Property Type:** Conservation Easement

**Location:** The subject is largely located in Dade County, Georgia with a small portion in Walker County, Georgia.

**Purposes of the Appraisal:** To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:** To estimate the market value of a conservation easement.

**Date of the Appraisal Report:** February 10, 2013

**Date of Value Estimates:** December 27, 2012

**Date of Donation** December 27, 2012

**Property Rights Appraised:**
Before:    Fee Simple Interest
After:    Fee Simple Interest Subject to Easement

**Zoning:** None

**Site:** 324.90 Acres

**Easement:** 322.90 Acres

**Reserved:** Two Building Sites (2 acres)

**Total:** 324.90 Acres

**Improvements:** Jeep/ATV Trails

**High and Best Use of Site as Though Vacant:**
Before: Residential Development
After:    Hunting or Recreational Use

**Appraiser:** Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC      EIN 63-1075275

ECOVEST-DOJ_0332265

Excerpts from Red Oak Equestrian Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Alabama or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0332266

Excerpts from Red Oak Equestrian Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0332267

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

Excerpts from Red Oak Equestrian Appraisal

## Legal Descriptions and Maps

All that tract and or parcel of land lying and being in portions of Land Lots 143, 144 and 145 of the 18th District and 4th Section of Dade County and Walker County, Georgia, and being more particularly described as follows.

Beginning at the northeast corner of land lot 143; thence with the east line of land lot 143, S00°58'25"W 2675.31' to the southeast corner of land lot 143; thence with the south line of land lot 143, S89°11'53"W 2907.16' to the northeast corner of land lot 145; thence with the east line of land lot 145, S01°03'59"E 2634.25' to the southeast corner of the land lot 145, thence with the south line of land lot 145, S89°14'27"W 1248.92' to the southwest corner of land lot 145, said point being on the Georgia-Alabama State Line; thence along and with the State Line, N 08°39'58" W 2783.07' to the southwest corner of land lot 144; thence continue along and with the State Line, N 08°40'31" W 2585.92' to the northwest corner of land lot 144; thence N 89°12'55" E 45.85'; thence S 37°20'41" E 483.76'; thence S 66°31'18" E 439.65'; thence S 59°31'04" E 694.43'; thence S 67°54'48" E 353.84'; thence S 68°06'21" E 418.29'; thence N 84°14'08" E 406.03'; thence N 47°25'02" E 501.32'; thence N 05°43'21" W 512.42'; thence N 03°57'50" W 345.64'; thence N89°27'55"E 2204.73' to the Point of Beginning, containing 324.90 acres more or less.

ECOVEST-DOJ_0332269

Excerpts from Red Oak Equestrian Appraisal

Introduction

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises the fourth step. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0332279

Excerpts from Red Oak Equestrian Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject
which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the
assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful
development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties
may have special topography that lends itself well to development (Lakes, Rivers, Mountains,
Bluffs). Sales of these properties may be limited not because of market conditions but because of
physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf
course. These types of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF,
income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under
current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property.
The Subject Property is located in an area that has become popular for outdoor recreation
oriented subdivisions that offer amenities such as lakes or rivers, horseback riding, hiking,
varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have
suitable characteristics for development, such as a valley with level to moderately sloping land
for home and amenity construction.   Additionally, access to main line utilities is important.
Another feature of significance is proximity to other recreational features such as national and
state forests and parks.  The specific parks and forests will be discussed in the DCF explanation
later in the report.

Extraction and Allocation are methods that involve improved properties and they are not
appropriate in this case.

ECOVEST-DOJ_0332280

Excerpts from Red Oak Equestrian Appraisal

## Identification of the Subject Property

The subject property consists of one parcel located predominantly in southern Dade County, Georgia, with a small portion located in Walker County, Georgia. The site contains 324.90 +- acres.

## Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

## Ownership

Red Oak Equestrian, LLC

## Taxes





All of the property is taxed by Dade County, even though a small portion is located in Walker County, GA.

## Improvements

None

ECOVEST-DOJ_0332284

Excerpts from Red Oak Equestrian Appraisal

Site Data

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No

- Observed staining of soils:                    On-Site: No; Adjacent: No
- Observed distressed vegetation:            On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":          On-Site: No; Adjacent: No
- Observed noticeable odors:                   On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 324.90 +- acres, of which approximately 324.90 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0332303

Excerpts from River Trace Resort Appraisal

# Excerpts from appraisal of:
# River Trace Resort

# Document ID:
# ECOVEST-DOJ_0030858

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

River Trace Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:   Conservation Easement Appraisal
       River Trace Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 276.95 | $22,252,938 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 276.95 | $498,510 |

ECOVEST-DOJ_0030859

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 276.95 | $22,252,938 |
| Less | | |
| Total After Value (Encumbered) | 276.95 | $498,510 |
| **Value of the Easement** | rounded | **$21,754,000** |

The Subject Property has two (2) reserved residential building sites and two (2) reserved recreational building sites. While these sites do maintain limited building rights, as defined by the easement, the rural location of the property, limits their value above that of the encumbered property. It should also be noted that these lots are not build ready lots and will require development costs to make them so, such as access, lot clearing, and utility installation. Due to these facts, I do not feel that these sites warrant an additional value above that of the overall per acre value of the encumbered tract. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0030860

Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0030861

## Table of Contents

Certification .............................................................................................................................. 7

Summary of the Appraisal ........................................................................................................ 8

Assumptions and Limiting Conditions .................................................................................... 9

Legal Descriptions and Maps ................................................................................................. 12

INTRODUCTION: ................................................................................................................. 24

Scope of the Assignment ......................................................................................................... 25

    *Competency Provision* ................................................................................................... 29

    *Appraisal of the Larger Parcel:* ................................................................................... 30

    *Identification of the Subject Property* ......................................................................... 31

    *Prior Sales History* ....................................................................................................... 31

    *Ownership* ...................................................................................................................... 31

    *Improvements* ................................................................................................................ 31

    *Taxes* .............................................................................................................................. 31

Area Data – Land Between the Lakes ................................................................................... 32

    *Neighborhood Data – Stewart County, TN* ................................................................ 35

SECTION I ............................................................................................................................... 60

APPRAISAL OF THE BEFORE VALUE .............................................................................. 60

    *Highest and Best Use Analysis:* .................................................................................... 61
        *a)*   *Legally Permissible* ............................................................................... 62
        *b)*   *Physically Possible* ................................................................................ 62
        *c)*   *Financially Feasible* ............................................................................. 62
        *d)*   *Maximally Productive* ........................................................................... 63
        *e)*   *Sufficiency of Demand* .......................................................................... 63
        Conclusion .................................................................................................... 63

    *Land Valuation:* ............................................................................................................ 64
        *Discounted Retail Sales Approach* ............................................................. 64

SECTION II ............................................................................................................................. 123

APPRAISAL OF THE AFTER VALUE ................................................................................ 123

    *Highest and Best Use Analysis:* .................................................................................. 140
        *a)*   Legal permissibility .................................................................................. 141
        *b)*   Physical possibility and suitability .......................................................... 141
        *c)*   Financial feasibility ................................................................................. 141
        *d)*   Maximum productivity .............................................................................. 141
        *e)*   Sufficiency of demand ............................................................................... 141
        Conclusion: ................................................................................................. 142

    *Land Valuation* ............................................................................................................ 143
        Sales Comparison Approach ....................................................................... 143

    *Estimate of the After Value:* ........................................................................................ 148

ECOVEST-DOJ_0030862

**Reconciliation**.................................................................................................................**154**

**Addenda**......................................................................................................................................**155**

    Qualifications.............................................................................................................155
    License.......................................................................................................................155
    RS Means Cost Estimate...........................................................................................155
    Development Letters..................................................................................................155
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............155
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ........................................................................................................................155
    Sewer Analysis..........................................................................................................155
    Bowden Report – Before Scenario.............................................................................155
    Easement...................................................................................................................155
    Baseline.....................................................................................................................155

ECOVEST-DOJ_0030863

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                                    State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0030864

Excerpts from River Trace Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located on Kentucky Lake in Stewart County, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purposes, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 276.95 Acres |
| **Easement:** | 276.95 Acres |
| **Reserved:** | Two Residential Building Sites and Two Recreational Building Site |
| **Total:** | 276.95 Acres |
| **Improvements:** | None |
| **High and Best Use** | Before:     Residential Villa and Motor Coach Development |
| **of Site as Though Vacant:** | After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0030865

Excerpts from River Trace Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Kentucky or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0030866

Excerpts from River Trace Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0030867

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0030868

Excerpts from River Trace Resort Appraisal

## Legal Descriptions and Maps

Being the following described real estate, situated within the **Tenth** Civil District of Stewart County, Tennessee, and being that property which was conveyed to Lewis, Record Book 135, Page 456, Record Book 135, Page 470, and Record Book 135, Page 458 and also that property that was conveyed to Morgan Deed Book 294, Page 561, and Deed Book296, Page 199, in the Register's Office of Stewart County, Tennessee, and being more particularly described as follows:

**BEGINNING** at a concrete right-of-way monument found at the northwest corner of this tract, being 81 feet from the center of Old U.S. Highway 79 and being in the south right-of-way of U.S. Highway 79, having Tennessee State Plane, NAD83, Coordinates of North: 776929.6 and East: 1372365.4; runs thence with the right-of-way North 80 degrees 52 minutes 43 seconds East, 248.29 feet to a ½-inch rebar found at the northwest corner of Gray, Deed Book 163, Page 210; thence with Gray as follows:

South 07 degrees 01 minutes 27 seconds West, 294.79 feet to a rock pile;

South 79 degrees 50 minutes 28 seconds East, 514.79 feet to a ½-inch rebar with cap found;

North 15 degrees 27 minutes 52 seconds East, 418.28 feet to an iron pipe found with a witness post at the southwest corner of Middleton, Record Book 154, Page 404; thence with Middleton South 83 degrees 21 minutes 34 seconds East, 575.53 feet to an iron pipe found with a witness post at the southwest corner of Pulley, Record Book 158, Page 199, Tract 2; thence with Pulley South 80 degrees 58 minutes 00 seconds East, 480.73 feet to a 1.5-inch iron pipe found at the southwest corner of Howell, Record Book 173, Page 603; thence with Howell South 81 degrees 47 minutes 22 seconds East, 1288.59 feet to a ½-inch iron pipe found in a rock pile in the west line of Henry, Record Book 31, Page 556, and having Tennessee State Plane, NAD83, Coordinates of North: 776662.7 and East: 1375514.6; thence with Henry South 15 degrees 44 minutes 16 seconds East, 3145.45 feet to an iron pipe found at the base of a steel fence post and being in the north line of Klueter, Record Book 52, Page 746, and having Tennessee State Plane, NAD83, Coordinates of North: 773635.2 and East: 1376367.7; thence with Klueter as follows:

South 56 degrees 14 minutes 12 seconds West, passing an iron pipe found on the east top of bank of a small creek at 59.29 feet, continuing and additional 25.97 feet, a total distance of 85.26 feet to the center of a small creek; thence continuing with Klueter and along the center of the creek as follows:

South 27 degrees 03 minutes 23 seconds East, 34.59 feet;

South 18 degrees 27 minutes 36 seconds West, 124.96 feet;

South 46 degrees 18 minutes 04 seconds East, 118.97 feet;

South 13 degrees 15 minutes 42 seconds East, 77.70 feet to the north right-of-way of Boat Dock Road; thence with the north right-of-way of Boat Dock Road as follows:

South 66 degrees 08 minutes 18 seconds West, 71.30 feet;

South 55 degrees 11 minutes 13 seconds West, 81.39 feet;

South 20 degrees 58 minutes 11 seconds West, 107.25 feet;

South 12 degrees 48 minutes 48 seconds West, 231.78 feet;

South 46 degrees 04 minutes 16 seconds West, 91.88 feet;

South 58 degrees 49 minutes 57 seconds West, 95.40 feet;

South 78 degrees 17 minutes 36 seconds West, 118.14 feet;

North 88 degrees 21 minutes 20 seconds West, 78.90 feet;

North 75 degrees 23 minutes 26 seconds West, 61.30 feet;

ECOVEST-DOJ_0030869

North 50 degrees 07 minutes 31 seconds West, 191.90 feet;

North 88 degrees 02 minutes 42 seconds West, 37.30 feet;

South 47 degrees 57 minutes 01 seconds West, 65.70 feet;

South 14 degrees 42 minutes 36 seconds West, 77.10 feet;

North 78 degrees 25 minutes 49 seconds East, 30.30 feet to a point in the 375-foot contour line; thence with the 375-foot contour line as follows:

South 12 degrees 51 minutes 11 seconds East, 196.25 feet;

South 53 degrees 53 minutes 12 seconds West, 35.15 feet;

South 75 degrees 08 minutes 51 seconds West, 60.16 feet;

South 36 degrees 39 minutes 36 seconds West, 54.23 feet;

South 56 degrees 02 minutes 57 seconds West, 46.23 feet;

South 81 degrees 29 minutes 58 seconds West, 125.88 feet;

South 75 degrees 34 minutes 47 seconds West, 45.76 feet;

North 83 degrees 33 minutes 08 seconds West, 55.86 feet to a ½-inch rebar with cap number 824 found at a steel fence post;

South 87 degrees 59 minutes 59 seconds West, 134.69 feet;

North 80 degrees 54 minutes 47 seconds West, 48.54 feet;

South 77 degrees 05 minutes 20 seconds West, 47.93 feet to a 14-inch hickory;

North 86 degrees 33 minutes 15 seconds West, 49.72 feet;

South 23 degrees 31 minutes 37 seconds West, 37.55 feet;

South 55 degrees 14 minutes 56 seconds West, 54.19 feet to a 5/8-inch iron rod found at the base of a steel fence post with TVA sign 76-74 and the southeast corner of River Trace II Subdivision, Plat Book A, Slide 138, having Tennessee State Plane, NAD83, Coordinates of North: 772381.0 and East: 1374853.8; thence with the River Trace II Subdivision North 02 degrees 02 minutes 20 seconds East, passing a ½-inch rebar with cap found at 337.20 feet, continuing an additional 464.47 feet, a total distance of 801.67 feet to a 5/8-inch rebar found at the base of a steel fence post, having Tennessee State Plane, NAD83, Coordinates of North: 773182.2 and East: 1374882.3; thence continuing with the River Trace II Subdivision and with the north right-of-way of River Tract Drive a portion of the way as follows:

 North 82 degrees 37 minutes 27 seconds West, 579.75 feet to a ½-inch rebar with cap set in the north right-of-way of River Trace Drive; thence with the north right-of-way as follows:

South 21 degrees 50 minutes 02 seconds West, 129.33 feet;

South 07 degrees 47 minutes 52 seconds West, 62.07 feet;

Along with a curve turning to the right with an arc length of 80.48 feet, with a radius of 35.39 feet, with a chord bearing of South 72 degrees 56 minutes 20 seconds West, with a chord length of 64.23 feet;

North 41 degrees 55 minutes 11 seconds West, 116.25 feet;

Along with a curve turning to the left with an arc length of 206.13 feet, with a radius of 667.16 feet, with a chord bearing of North 50 degrees 46 minutes 16 seconds West, with a chord length of 205.31 feet;

North 59 degrees 37 minutes 20 seconds West, 60.52 feet to a point; thence leaving the right-of-way and along the north line of the River Trace II Subdivision as follows:

North 29 degrees 48 minutes 16 seconds East, 6.55 feet to a concrete monument found in a 12-inch corrugated metal pipe;

North 26 degrees 59 minutes 44 seconds West, 298.73 feet to a ½-inch rebar with cap set;

ECOVEST-DOJ_0030870

Excerpts from River Trace Resort Appraisal

South 38 degrees 14 minutes 29 seconds West, 287.67 feet to a TVA concrete monument number 76-7 found;

North 82 degrees 04 minutes 29 seconds West, 917.36 feet to an iron pipe found in the east boundary of Sternard, having Tennessee State Plane, NAD83, Coordinates of North: 773475.6 and East: 1372681.5; thence with Sternard as follow:

North 07 degrees 17 minutes 56 seconds East, 837.53 feet to a ½-inch rebar with cap number 824 found;

North 07 degrees 20 minutes 27 seconds East, 1933.16 feet to a ½-inch rebar with cap found, having Tennessee State Plane, NAD83, Coordinates of North: 776223.6 and East: 1373034.9;

North 75 degrees 42 minutes 00 seconds West, 851.95 feet to a 6-inch pine;

North 36 degrees 06 minutes 46 seconds West, 281.00 feet to a ½-inch rebar with L.I. Smith Cap found;

Along with a curve turning to the left with an arc length of 448.53 feet, with a radius of 353.38 feet, with a chord bearing of North 50 degrees 08 minutes 12 seconds East, with a chord length of 419.02 feet to the Point of Beginning and containing 276.95 Acres, more or less, as surveyed by James Matthew McCrory, Registered Land Surveyor Number 2760, of L.I. Smith & Associates, 302 North Caldwell Street, Paris, TN 38242, on June 21, 2015.  Bearings are based of Tennessee State Plane, NAD 83, Coordinate System.

Excerpts from River Trace Resort Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 276.95 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0030883

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0030884

Excerpts from River Trace Resort Appraisal

## Identification of the Subject Property

The Subject Property is located off River Trace Rd. on Kentucky Lake in Stewart County, Tennessee.  The site contains 276.95 acres.

### Prior Sales History

The Subject Property was purchased by River Trace Resort Holdings, LLC from multiple individual owners in October 2015.  The Subject is not listed for sale.

### Ownership

River Trace Resort Holdings, LLC

### Improvements

None

### Taxes

**RIVER TRACE RESORT PRO-RATION OF REAL ESTATE TAXES FOR 2014**

| PROJECT | ACRES | % OF TOTAL | 2014 TAX | PRO-RATION |
|---|---|---|---|---|
| 091 020.00 | 233.25 | 0.851525993 | $ 3,480.00 | $ 2,963.31 |
| 091 002.02 | 8.67 | 0.03165158 | $ 3,480.00 | $ 110.15 |
| 110 009.06 | 30.00 | 0.10952103 | $ 3,480.00 | $ 381.13 |
| 110 009.07 | 2.00 | 0.00730140 | $ 3,480.00 | $ 25.41 |
| | 273.92 | | | $ 3,480.00 |

**2014 TAX BY TMS**

| | |
|---|---|
| 091 020.00 | $ 1,383.00 |
| 091 002.02 | $ 212.00 |
| 110 009.06 | $ 1,329.00 |
| 110 009.07 | $ 556.00 |
| TOTAL TAX | $ 3,480.00 |

ECOVEST-DOJ_0030888

Site Data

- Observed staining of soils:                      On-Site: No; Adjacent: No
- Observed distressed vegetation:             On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
                                                               On-Site: No; Adjacent: No
- Observed noticeable odors:                     On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 276.95 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0030913

Excerpts from appraisal of:
Riverside Preserve

Document ID:
ECOVEST-DOJ_0091357

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Riverside Preserve LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Riverside Preserve, LLC
      410.64 acre tract, Duplin County, North Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of North Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

Excerpts from Riverside Preserve Appraisal

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 22, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 22, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 410.64 | $24,922,157 |

ECOVEST-DOJ_0091358

Excerpts from Riverside Preserve Appraisal

The value of the Subject Property, subject to a perpetual conservation easement as of December 22, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 410.64 | $1,590,576 |

The value of the easement gift as of December 22, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 410.64 | $24,922,157 |
| Less | | |
| Total After Value (Encumbered) | 410.64 | $1,590,576 |
| **Value of the Easement** | rounded | **$23,332,000** |

The encumbered property also includes three reserved sites designated for specific uses, one of which includes up to six building sites.  While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited rights, as defined by the easement, and therefore, require additional value over that of the per acre value of the encumbered property.  It should be noted that these sites are not build/use ready and will incur some development costs to make them so.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to

ECOVEST-DOJ_0091359

the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                      State Certified General Real Property Appraiser
NC License #A7692

ECOVEST-DOJ_0091360

Excerpts from Riverside Preserve Appraisal

## Table of Contents

Certification .................................................................................................................. 7

Summary of the Appraisal ............................................................................................. 8

Assumptions and Limiting Conditions ......................................................................... 9

Legal Descriptions and Maps ...................................................................................... 12

INTRODUCTION: ....................................................................................................... 22

Scope of the Assignment ............................................................................................. 23

    *Competency Provision* ............................................................................................. 27

    *Appraisal of the Larger Parcel:* ............................................................................. 28

    *Identification of the Subject Property* ..................................................................... 29

    *Prior Sales History* ................................................................................................. 29

    *Ownership* ............................................................................................................... 29

    *Improvements* .......................................................................................................... 29

    *Taxes* ....................................................................................................................... 29

    *Neighborhood Data – Duplin County, North Carolina* ........................................... 31

SECTION I. ................................................................................................................... 45

APPRAISAL OF THE BEFORE VALUE ................................................................... 45

    *Highest and Best Use Analysis:* ............................................................................... 46

        a) Legally Permissible ...................................................................... 47

        b) Physically Possible ....................................................................... 47

        c) Financially Feasible ..................................................................... 47

        d) Maximally Productive ................................................................... 48

        e) Sufficiency of Demand .................................................................. 48

        Conclusion ...................................................................................... 48

    *Land Valuation:* ...................................................................................................... 49

        Discounted Retail Sales Approach .................................................. 49

SECTION II ................................................................................................................. 103

APPRAISAL OF THE AFTER VALUE ..................................................................... 103

    *Highest and Best Use Analysis:* ............................................................................. 122

        a) Legal permissibility .................................................................... 123

        b) Physical possibility and suitability ............................................ 123

        c) Financial feasibility .................................................................... 123

        d) Maximum productivity ................................................................ 123

        e) Sufficiency of demand ................................................................. 123

        Conclusion: .................................................................................... 124

    *Land Valuation* ...................................................................................................... 125

        Sales Comparison Approach ......................................................... 125

    *Estimate of the After Value:* ................................................................................. 130

Reconciliation ............................................................................................................ 136

ECOVEST-DOJ_0091361

**Addenda** .................................................................................................................................**137**

Qualifications ........................................................................................................................137
License .................................................................................................................................137
Riverside Preserve Unit Plans .............................................................................................137
Cost Estimates......................................................................................................................137
Development Letters .............................................................................................................137
Demographic Reports ..........................................................................................................137
Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............137
Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
..................................................................................................................................................137
Lot and Agricultural Comps..................................................................................................137
Bowden Report – Before Scenario .......................................................................................137
Easement ..............................................................................................................................137
Baseline ................................................................................................................................137

ECOVEST-DOJ_0091362

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
NC License #A7692

ECOVEST-DOJ_0091363

Excerpts from Riverside Preserve Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located east of I-40 and south of NC-41 Highway, approximately ten miles east of Wallace, Duplin County, North Carolina.  The property fronts the Northeast Cape Fear River. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 22, 2016 |
| **Date of Donation** | December 22, 2016 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 410.64 Acres |
| **Easement:** | 410.64 Acres |
| **Reserved:** | Three reserved sites for specified uses; six recreational/residential building sites |
| **Total:** | 410.64 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Resort Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0091364

Excerpts from Riverside Preserve Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of North Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0091365

Excerpts from Riverside Preserve Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0091366

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

Excerpts from Riverside Preserve Appraisal

## Legal Descriptions and Maps

### LEGAL DESCRIPTION
### FOR
### RIVERSIDE PRESERVE

COMMENCING AT AN EXISTING G STONE (POINT B) AS SHOWN IN MAP BOOK 27 PAGE 42
OF THE DUPLIN COUNTY REGISTRY. THENCE SOUTH 85°59'18" EAST A DISTANCE OF
297.00' TO A RAILROAD IRON. THENCE SOUTH 42°56'35" WEST A DISTANCE OF 876.62'
TO A RAILROAD IRON. SAID EXISTING RAILROAD IRON BEING THE TRUE POINT AND
PLACE OF BEGINNING OF THE HEREIN DESCRIBED TRACT.

THENCE SOUTH 23°20'56" WEST A DISTANCE OF 520.46' TO A 2" IRON PIPE FOUND;
THENCE SOUTH 58°51'02" EAST A DISTANCE OF 2535.98' TO A 1" IRON PIPE FOUND;
THENCE SOUTH 25°35'16" WEST A DISTANCE OF 2832.09' TO A 1" IRON PIPE FOUND;
THENCE SOUTH 08°34'09" WEST A DISTANCE OF 308.03' TO A 1" IRON PIPE FOUND;
THENCE SOUTH 34°57'04" WEST A DISTANCE OF 797.06' TO A 1" IRON PIPE FOUND;
THENCE SOUTH 77°52'43" WEST A DISTANCE OF 876.30' TO A 2" IRON PIPE FOUND;
THENCE NORTH 23°27'30" WEST A DISTANCE OF 1849.71' TO AN EXISTING G STONE;
THENCE NORTH 23°56'02" EAST A DISTANCE OF 2392.40' TO AN IRON REBAR SET;
THENCE NORTH 74°49'58" WEST A DISTANCE OF 2450.01' TO AN EXISTING G STONE;
THENCE SOUTH 83°18'59" WEST A DISTANCE OF 22.36' TO A POINT AT THE
APPROXIMATE HIGH WATER MARK AT THE SOUTHEASTERN BANK OF THE NORTHEAST CAPE
FEAR RIVER;
THENCE WITH THE EDGEWATER MARK OF THE NORTHEAST CAPE FEAR RIVER AS IT
MEANDERS A CHORD OF NORTH 19°43'41" EAST A DISTANCE OF 2953.17' TO A POINT AT
THE APPROXIMATE HIGH WATER MARK AT THE SOUTHEASTERN BANK OF THE NORTHEAST
CAPE FEAR RIVER;
THENCE NORTH 88°42'45" EAST A DISTANCE OF 14.14' TO AN IRON REBAR FOUND;
THENCE SOUTH 24°56'28" EAST A DISTANCE OF 139.83' TO AN EXISTING G STONE;
THENCE SOUTH 25°01'04" EAST A DISTANCE OF 905.69' TO AN EXISTING G STONE;
THENCE SOUTH 68°51'50" EAST A DISTANCE OF 1636.36' TO A RAILROAD IRON, WHICH
IS THE TRUE POINT AND PLACE OF BEGINNING; CONTAINING 410.64 ACRES



Excerpts from Riverside Preserve Appraisal

Introduction

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 410.64 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0091380

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0091381

Excerpts from Riverside Preserve Appraisal

**Identification of the Subject Property**

The subject is located east of I-40 and south of NC-41 Highway, approximately ten miles east of Wallace, Duplin County, North Carolina.  The property fronts the Northeast Cape Fear River. The site contains 410.64 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Riverside Preserve, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0091385

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:                On-Site: No; Adjacent: No
- Observed distressed vegetation:            On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:                 On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 410.64 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0091397

# Excerpts from appraisal of:
# Rocky Creek Plantation

# Document ID:
# ECOVEST-DOJ_0118764

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 19, 2014

Donald Johnson
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:   Conservation Easement Rocky Creek Plantation
      Chester County, South Carolina
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Johnson:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0118764

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 19, 2014, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 2145.21 | $71,753,465 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 19, 2014 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value – Land Only (Encumbered) | 2145.21 | $1,000 | $2,145,210 |

ECOVEST-DOJ_0118765

Excerpts from Rocky Creek Plantation Appraisal

The value of the easement gift as of December 19, 2014 is as follows and is based upon the before and after value method.  In determining the market nature of a conservation easement, the before and after method is a recognized technique.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 2145.21 |  | $71,753,465 |
| Less |  |  |  |
| After Value (Encumbered) | 2145.21 | $1,000 | $2,145,210 |
|  |  |  |  |
| Value of the Easement |  | rounded | $69,608,000 |

There are seven (7) areas designated for the construction of residences and related residential uses. The property can be subdivided into the same number of parcels as there are building lots. The parcels that result from the subdivision must contain a building area. There is no minimum or maximum size.  Based upon the review of other easements, the value of these sites does not warrant a value over and above the price per acre. There is no enhancement.

ECOVEST-DOJ_0118766

Excerpts from Rocky Creek Plantation Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0118767

Table of Contents

Certification ................................................................................................................................7

Summary of the Appraisal ..........................................................................................................8

Assumptions and Limiting Conditions .....................................................................................9

Legal Descriptions and Maps ...................................................................................................12

INTRODUCTION: .....................................................................................................................26

Scope of the Assignment ...........................................................................................................27

    *Competency Provision* ..............................................................................................................*31*

    *Appraisal of the Larger Parcel:* ............................................................................................*32*

    *Identification of the Subject Property* ....................................................................................*33*

    *Prior Sales History* .................................................................................................................*33*

    *Ownership* ...............................................................................................................................*33*

    *Improvements* ..........................................................................................................................*33*

    *Taxes* .......................................................................................................................................*33*

    *Neighborhood Data – Greater Charlotte, North Carolina* ...................................................*35*

SECTION I. ................................................................................................................................44

APPRAISAL OF THE BEFORE VALUE ................................................................................44

    *Highest and Best Use Analysis:* ............................................................................................*45*

        *a)*    *Legally Permissible* .................................................................................................*46*

        *b)*    *Physically Possible* .................................................................................................*46*

        *c)*    *Financially Feasible* ...............................................................................................*46*

        *d)*    *Maximally Productive* ..............................................................................................*47*

        *e)*    *Sufficiency of Demand* .............................................................................................*47*

        Conclusion ...................................................................................................................47

    *Land Valuation:* ......................................................................................................................*48*

        *Discounted Retail Sales Approach* ...............................................................................*48*

SECTION II ..............................................................................................................................116

APPRAISAL OF THE AFTER VALUE .................................................................................116

    *Highest and Best Use Analysis:* ..........................................................................................*131*

        *a)*    Legal permissibility ...................................................................................................132

        *b)*    Physical possibility and suitability ............................................................................132

        *c)*    Financial feasibility ...................................................................................................132

        *d)*    Maximum productivity ...............................................................................................132

        *e)*    Sufficiency of demand ................................................................................................132

        Conclusion: ................................................................................................................133

    *Land Valuation* .....................................................................................................................*134*

        Sales Comparison Approach ......................................................................................134

    *Estimate of the After Value:* .................................................................................................*161*

Reconciliation ...........................................................................................................................162

**Addenda**............................................................................................................................................**163**

    Qualifications.............................................................................................................................163
    License......................................................................................................................................163
    Land Design Letters...................................................................................................................163
    POA Letter and Budget..............................................................................................................163
    Bond Funding Documents..........................................................................................................163
    Reasonableness Analysis Letter..................................................................................................163
    Addendum to the Market Analysis and Developmental Recommendations Report ......................163
    Certificate of Good Standing ......................................................................................................163
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............163
    Easement...................................................................................................................................163
    Baseline....................................................................................................................................163

ECOVEST-DOJ_0118769

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- The reported analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of the report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized members.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                           State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0118770

Excerpts from Rocky Creek Plantation Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the west side of Interstate 77, south of Richburg in Chester County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 19, 2014 |
| **Date of Value Estimates:** | December 19, 2014 |
| **Date of Donation** | December 19, 2014 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | EDD, Economic Development District |
| **Site:** | 2145.21 Acres |
| **Easement:** | 2145.21 Acres |
| **Reserved:** | Seven (7) reserved areas. |
| **Total:** | 2145.21 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:    Residential Development<br>After:     Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0118771

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4).). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0118772

Excerpts from Rocky Creek Plantation Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0118773

Excerpts from Rocky Creek Plantation Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0118774

Excerpts from Rocky Creek Plantation Appraisal

**Legal Descriptions and Maps**

ECOVEST-DOJ_0118775

LEGAL

## EXHIBIT "A"
### TRACT 1:
#### (Interstate Land & Timber, LLC to Rocky Creek Plantation, LLC)

Commencing at the S.C. Grid monument "Green Briar"; thence with a bearing of S 3°30'49" W, and a distance of 9492.45', to a point; thence with a bearing of S 70°34'26" W, and a distance of 1703.91', to a point; thence with a bearing of S 42°50'38" E, and a distance of 3721.39', to the **POINT OF BEGINNING** of the tract descried herein;

Thence with a bearing of S 42°50'38" E, and a distance of 799.11', to a point on the western Right of Way of I-77;

thence with said Right of Way the following eleven (11) calls:

1) thence with a bearing of S 0°58'03" E, and a distance of 2568.70', to a point;
2) thence with a bearing of S 7°21'19" W, and a distance of 101.84', to a point;
3) thence with a bearing of S 0°43'02" E, and a distance of 99.57', to a point;
4) thence with a bearing of S 9°36'56" E, and a distance of 101.13', to a point;
5) thence with a bearing of S 0°58'23" E, and a distance of 8489.15', to a point;
6) thence with an Arc to the Left, having a Radius of 11600.82', and a Length of 588.62', and being Chorded by a bearing of S 2°31'35" E, and a distance of 588.56' to a point;
7) thence with a bearing of S 2°46'54" W, and a distance of 407.63', to a point;
8) thence with an Arc to the Left, having a Radius of 11679.16', and a Length of 411.13', and being Chorded by a bearing of S 6°58'23" E, and a distance of 411.11' to a point;
9) thence with a bearing of S 23°25'08" E, and a distance of 210.49', to a point;
10) thence with an Arc to the Left, having a Radius of 11624.16', and a Length of 1808.56', and being Chorded by a bearing of S 13°23'13" E, and a distance of 1806.73' to a point;
11) thence with a bearing of S 17°51'16" E, and a distance of 1051.26', to a point;

thence with a bearing of S 42°46'19" W, and a distance of 574.06', to a point;
thence with a bearing of S 10°28'34" E, and a distance of 316.48', to a point;
thence with a bearing of S 32°28'34" E, and a distance of 730.00', to a point;
thence with a bearing of S 45°58'34" E, and a distance of 706.00', to a point;
thence with a bearing of S 30°31'26" W, and a distance of 794.68', to a point;
thence with a bearing of S 27°33'27" E, and a distance of 171.60', to a point;
thence with a bearing of S 23°26'33" W, and a distance of 778.50', to a point;
thence with a bearing of S 78°36'49" W, and a distance of 1562.06', to a point;
thence with a bearing of N 65°08'32" W, and a distance of 309.74', to a point;
thence with a bearing of N 84°02'41" W, and a distance of 891.00', to a point;
thence with a bearing of N 41°07'49" W, and a distance of 288.90', to a point;
thence with a bearing of N 55°48'57" W, and a distance of 257.17', to a point;
thence with a bearing of N 85°33'13" W, and a distance of 494.18', to a point;
thence with a bearing of N 2°14'27" E, and a distance of 284.18', to a point;
thence with a bearing of N 17°02'18" W, and a distance of 559.57', to a point;
thence with a bearing of S 42°32'37" W, and a distance of 622.83', to a point;
thence with a bearing of S 9°40'25" E, and a distance of 284.71', to a point;
thence with a bearing of S 27°07'24" W, and a distance of 3264.24', to a point;
thence with a bearing of S 3°29'52" W, and a distance of 2065.35', to a point in Hwy 97;
thence with said Hwy a bearing of N 70°17'05" W, and a distance of 1006.07', to a point;
thence with a bearing of N 5°53'02" E, and a distance of 3190.38', to a point;

ECOVEST-DOJ_0118776

Excerpts from Rocky Creek Plantation Appraisal

thence with a bearing of S 60°12'58" W, and a distance of 886.27', to a point;
thence with a bearing of N 21°56'26" W, and a distance of 833.00', to a point;
thence with a bearing of S 66°00'08" E, and a distance of 446.00', to a point;
thence with a bearing of N 88°44'52" E, and a distance of 209.00', to a point;
thence with a bearing of N 48°44'52" E, and a distance of 71.00', to a point;
thence with a bearing of S 86°15'08" E, and a distance of 177.00', to a point;
thence with a bearing of N 52°29'52" E, and a distance of 242.00', to a point;
thence with a bearing of N 85°44'52" E, and a distance of 125.00', to a point;
thence with a bearing of N 59°14'52" E, and a distance of 145.00', to a point;
thence with a bearing of N 28°59'52" E, and a distance of 211.50', to a point;
thence with a bearing of N 65°44'52" E, and a distance of 450.00', to a point;
thence with a bearing of N 40°59'52" E, and a distance of 300.00', to a point;
thence with a bearing of N 35°59'52" E, and a distance of 500.00', to a point;
thence with a bearing of N 27°59'52" E, and a distance of 300.00', to a point;
thence with a bearing of N 34°14'52" E, and a distance of 170.00', to a point;
thence with a bearing of N 9°44'52" E, and a distance of 462.00', to a point;
thence with a bearing of N 59°44'52" E, and a distance of 66.20', to a point;
thence with a bearing of N 47°38'26" W, and a distance of 898.63', to a point;
thence with a bearing of N 51°39'10" W, and a distance of 990.75', to a point;
thence with a bearing of N 8°47'47" E, and a distance of 1556.87', to a point;
thence with a bearing of N 34°28'38" W, and a distance of 2442.16', to a point;
thence with a bearing of N 19°23'16" E, and a distance of 999.75', to a point;
thence with a bearing of N 71°36'44" W, and a distance of 321.00', to a point;
thence with a bearing of N 85°36'44" W, and a distance of 373.00', to a point;
thence with a bearing of S 77°20'10" W, and a distance of 865.76', to a point in Old Mill Road;
thence with said road the following twenty (20) calls:
  1) thence with a bearing of N 19°50'03" E, and a distance of 253.38', to a point;
  2) thence with a bearing of N 28°40'28" E, and a distance of 227.00', to a point;
  3) thence with a bearing of N 35°36'28" E, and a distance of 181.31', to a point;
  4) thence with a bearing of N 40°16'28" E, and a distance of 451.00', to a point;
  5) thence with a bearing of N 39°55'50" E, and a distance of 1310.19', to a point;
  6) thence with an Arc to the Left, having a Radius of 1400.00', and a Length of 579.98', and being Chorded by a bearing of N 28°03'46" E, and a distance of 575.84' to a point;
  7) thence with a bearing of N 16°11'41" E, and a distance of 632.65', to a point;
  8) thence with an Arc to the Right, having a Radius of 1871.00', and a Length of 943.69', and being Chorded by a bearing of N 30°38'39" E, and a distance of 933.72' to a point;
  9) thence with a bearing of N 45°05'37" E, and a distance of 1129.06', to a point;
  10) thence with an Arc to the Left, having a Radius of 3180.00', and a Length of 431.34', and being Chorded by a bearing of N 41°12'28" E, and a distance of 431.01' to a point;
  11) thence with a bearing of N 37°19'19" E, and a distance of 819.98', to a point;
  12) thence with an Arc to the Left, having a Radius of 1833.00', and a Length of 788.45', and being Chorded by a bearing of N 24°59'57" E, and a distance of 782.39' to a point;
  13) thence with a bearing of N 12°40'35" E, and a distance of 284.85', to a point;

8870.93\EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO ROCKY CREEK

ECOVEST-DOJ_0118777

Excerpts from Rocky Creek Plantation Appraisal

14) thence with an Arc to the Right, having a Radius of 3069.00', and a Length of 401.68', and being Chorded by a bearing of N 16°25'34" E, and a distance of 401.39' to a point;

15) thence with a bearing of N 20°10'32" E, and a distance of 1422.75', to a point;

16) thence with an Arc to the Right, having a Radius of 1083.00', and a Length of 840.21', and being Chorded by a bearing of N 42°24'04" E, and a distance of 819.30' to a point;

17) thence with a bearing of N 64°37'36" E, and a distance of 194.61', to a point;

18) thence with an Arc to the Left, having a Radius of 1424.00', and a Length of 1402.51', and being Chorded by a bearing of N 36°24'39" E, and a distance of 1346.51' to a point;

19) thence with a bearing of N 8°11'43" E, and a distance of 2152.77', to a point;

20) thence with an Arc to the Right, having a Radius of 1151.00', and a Length of 591.65', and being Chorded by a bearing of N 22°55'17" E, and a distance of 585.16' to the **POINT OF BEGINNING** and containing 2129.856 Acres.

The above-described property conveyed herein has the following derivation:

1.  Being a portion of the property conveyed to Interstate Land & Timber, LLC by Deed of Blue Sky Timber Properties, LLC dated October 28, 2003 and recorded in Deed Book 850 at Page 136 in the Office of the Clerk of Court for Chester County, South Carolina;

2.  Being all of that certain tract of land conveyed to Interstate Land & Timber, LLC by Deed of John Hancock Life Insurance Company, dated January 11, 2006 and recorded January 25, 2006 in Deed Book 907 at Page 94 in the Office of the Clerk of Court for Chester County, South Carolina;

3.  Being all that property conveyed to Interstate Land & Timber, LLC by Deed of Lamar H. Kelsey, III, Special Referee for Chester County, South Carolina, dated May 19, 2006 and recorded May 26, 2006 in Book 917 at Page 19 in the Office of the Clerk of Court for Chester County, South Carolina; and,

4.  Being all of that tract of land conveyed to Interstate Land & Timber, LLC by Deed of John Hancock Life Insurance Company, dated February 18, 2004 and recorded March 15, 2004 in Book 860 at Page 74 in the Office of the Clerk of Court for Chester County, South Carolina.

Being a portion of Tax Parcel Number: 117-00-00-006.

ECOVEST-DOJ_0118778

Excerpts from Rocky Creek Plantation Appraisal

<u>TRACT 1A</u>

(Longview Enterprises, LLC to Rocky Creek Plantation, LLC)

Beginning at a pipe located at the southwesterly corner of that certain 241.53 acre, more or less, tract of land conveyed to Longview Enterprises Associates, LLC by Deed of Plum Creek Timberlands, L.P. by Deed dated December 22, 2006 and recorded in Book 932 at Page 43 in the Office of the Clerk of Court for Chester County, South Carolina, said pipe also being located at the southernmost corner of the aforementioned tract of land conveyed by Plum Creek Timberlands, L.P. and running thence from said Beginning Point North 37-26-54 East 28.43 feet to a point located in the westerly margin of the 330 foot wide right-of-way of Interstate 77; thence with the westerly margin of the right-of-way of Interstate 77 and with the arc of a circular curve to the right having a radius of 22,753.90 feet, an arc distance of 248.57 feet, said arc being subtended by a chord having a chord bearing of North 17-34-04 West and a chord distance of 248.57 feet; thence continuing with the westerly margin of the right-of-way of I-77 North 17-52-50 West 1,659.70 feet to a rebar; thence South 42-46-19 West 574.06 feet to a point; thence South 10-28-34 East 316.48 feet to a point; thence South 32-28-34 East 730 feet to a point; thence South 45-58-34 East 706 feet to the point and place of beginning as shown on a survey of Carolina Surveyors, Inc. dated December 20, 2012.

And being a portion of the tract conveyed to Longview Enterprises Associates, LLC by Deed of Plum Creek Timberlands, L.P. by Deed dated December 22, 2006 and recorded in Deed Book 932 at Page 43 in the Office of the Clerk of Court for Chester County, South Carolina, said property being that portion of said tract located west of the westerly margin of Interstate 77.

Being a portion of Tax Parcel Number: 128-00-00-002.

ECOVEST-DOJ_0118779

Excerpts from Rocky Creek Plantation Appraisal

*Introduction*

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 2145.21 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach. In searching the market

ECOVEST-DOJ_0118791

Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0118792

Excerpts from Rocky Creek Plantation Appraisal

Introduction

**Identification of the Subject Property**

The Subject Property is located on the west side of Interstate 77, south of Richburg in Chester County, South Carolina.  The site contains 2145.21+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Rocky Creek Plantation, LLC

*Improvements*

None

*Taxes*

Individual lots were assessed at an average price of $360. It was derived after an analysis of bulk lot assessments.

ECOVEST-DOJ_0118796

Excerpts from Rocky Creek Plantation Appraisal

Site Data

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:        On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 2145.21+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0118805

# Excerpts from appraisal of:
# Sanibel Resort

# Document ID:
# ECOVEST-DOJ_0012950

Excerpts from Sanibel Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ǂ
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

Sanibel Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:    Conservation Easement Appraisal
        Sanibel Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

ECOVEST-DOJ_0012950

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 28.53 | $54,798,677 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 28.53 | $264,222 |

ECOVEST-DOJ_0012951

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 28.53 | $54,798,677 |
| Less | | |
| Total After Value (Encumbered) | 28.53 | $264,222 |
| **Value of the Easement** | rounded | **$54,534,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site. These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these two sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered. These sites are not build ready and would incur development costs. There is no enhancement. This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0012952

Claud Clark III                           State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0012953

## Table of Contents

Certification .................................................................................................................................. 7

Summary of the Appraisal ............................................................................................................ 8

Assumptions and Limiting Conditions ........................................................................................ 9

Legal Descriptions and Maps ..................................................................................................... 12

INTRODUCTION: ........................................................................................................................ 26

Scope of the Assignment ............................................................................................................ 27

    *Competency Provision* ...................................................................................................... *31*

    *Appraisal of the Larger Parcel:* ......................................................................................... *32*

    *Identification of the Subject Property* ................................................................................ *33*

    *Prior Sales History* ............................................................................................................ *33*

    *Ownership* ........................................................................................................................... *33*

    *Improvements* ..................................................................................................................... *33*

    *Taxes* ................................................................................................................................... *33*

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ................................ *37*

SECTION I. ................................................................................................................................... 52

APPRAISAL OF THE BEFORE VALUE ..................................................................................... 52

    *Highest and Best Use Analysis:* ......................................................................................... *53*
        *1.*   *Legally Permissible* ................................................................................................. *54*
        *2.*   *Physically Possible* .................................................................................................. *54*
        *3.*   *Financially Feasible* ................................................................................................ *54*
        *4.*   *Maximally Productive* .............................................................................................. *55*
        *5.*   *Sufficiency of Demand* ............................................................................................. *55*
        Conclusion ...................................................................................................................... 55

    *Land Valuation:* .................................................................................................................. *56*
        *Discounted Retail Sales Approach* ................................................................................ 56

SECTION II ................................................................................................................................. 126

APPRAISAL OF THE AFTER VALUE ...................................................................................... 126

    *Highest and Best Use Analysis:* ....................................................................................... *142*
        1.   Legal permissibility .................................................................................................. 143
        2.   Physical possibility and suitability ........................................................................... 143
        3.   Financial feasibility .................................................................................................. 143
        4.   Maximum productivity .............................................................................................. 143
        5.   Sufficiency of demand .............................................................................................. 143
        Conclusion: .................................................................................................................. 144

    *Land Valuation* ................................................................................................................. *145*
        Sales Comparison Approach ........................................................................................ 145

    *Estimate of the After Value:* ............................................................................................ *167*

Reconciliation ............................................................................................................................ 173

ECOVEST-DOJ_0012954

Excerpts from Sanibel Resort Appraisal

**Addenda** .................................................................................................................................... **174**

    Qualifications ................................................................................................................... 174

    License ............................................................................................................................. 174

    Sanibel Resort Unit Plans ............................................................................................... 174

    RS Means Cost Estimates ............................................................................................... 174

    Development Letters ........................................................................................................ 174

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............. 174

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
........................................................................................................................................ 174

    Bowden Report – Before Scenario .................................................................................. 174

    Easement ......................................................................................................................... 174

    Baseline ........................................................................................................................... 174

ECOVEST-DOJ_0012955

Excerpts from Sanibel Resort Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

2. I am not a person described in Treasury Regulation 1.170A-12(c)(5)(iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

3. The statements of fact contained in this report are true and correct.

4. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

5. I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

6. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

8. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

9. I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

10. I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

11. I am not, nor have I ever been, barred from testifying before the IRS.

12. I have prepared an appraisal of the Subject Property in the last five (5) years.

13. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

14. As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

15. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0012956

Excerpts from Sanibel Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located off Old Sanders Drive, just south of the Highway 31 and Robert Edge Parkway interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | R2-A (Mid-Rise Multifamily Residential) and R4 (Resort Residential) |
| **Site:** | 28.53 Acres |
| **Easement:** | 28.53 Acres |
| **Reserved:** | One Residential Building Site and One Recreational Building Site |
| **Total:** | 28.53 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0012957

Excerpts from Sanibel Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES
ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its
intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical
services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is
addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are
signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and
exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this
appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or
other media, without the express and written consent of the appraiser. Neither may reference be made in such a public
communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real
Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics
enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the
analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this
report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not
liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real
Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The
comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or
public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and
knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and
its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit
labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden
Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural,
mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The
property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not
possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is
based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would
render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to
discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It
is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such
abatement necessary to correct any condition found.

ECOVEST-DOJ_0012958

Excerpts from Sanibel Resort Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0012959

Excerpts from Sanibel Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

Excerpts from Sanibel Resort Appraisal

**Legal Descriptions and Maps**

ALL THAT CERTAIN PARCEL COMPRISED OF A PORTION OF TAX MAP NUMBERS
144-00-01-018, -012 & -122.  SAID PARCEL DEFINED ON PLAT RECORDED WITH THE
HORRY COUNTY REGISTER OF DEEDS IN PLAT BOOK 267, PAGE 180
BEGINING AT A POINT ON THE NORTHEASTERN CORNER OF SAID PARCEL, POINT
BEING MARKED BY 5/8" IRON REBAR AND HAVING SC STATE PLANE
COORDINATES OF" NORTHING-736085.73 AND EASTING-2700206.06.
THENCE A LINE BORDERED ON THE EAST BY LANDS NOW OR FORMERLY OWNED
BY DIVERSIFIED EXECUTIVE, MB, LLC THE FOLLOWING BEARINGS AND
DISTANCES:
S 08° 48' 33" E 931.42' TO A 1/2" IRON PIPE
S 12° 22' 03" E 187.61' TO A 1/2" IRON PIPE
S 12° 41' 23" E 49.06' TO A 5/8" IRON REBAR (L17)
THENCE LINE PROCEEDS TO THE WEST BORDERED TO THE SOUTH BY THE
ATLANTIC INTRACOASTAL WATERWAY AND TO THE NORTH BY THE SUBJECT
PARCEL, THE FOLLOWING BEARINGS AND DISTANCES:
S 69° 30' 01" W 248.34' TO A 5/8" IRON REBAR
S 69° 26' 52" W 574.86' TO A 5/8" IRON REBAR
N 20° 33' 05" W 29.99' TO A 5/8" IRON REBAR (l18)
S 69° 27' 09" W 75.57' TO A 5/8" IRON REBAR (l19)
S 69° 28' 33" W 36.52' TO A 5/8" IRON REBAR (L20)
THENCE LINE TURNS TO THE NORTH AND IS BORERED ON THE WEST BY LANDS
NOW OR FORMERLY OWNED BY SANIBEL HARBOUR, LLC AND TO THE EAST BY
THE SUBJECT PARCEL.  SAID LINE PROCEEDS THE FOLLOWING BEARINGS AND
DISTANCES:
N 60° 17' 59" W 183.46 TO A 1/2" IRON REBAR
N 15° 46' 42" W 88.63' TO A 1/2" IRON REBAR (L21)
N 04° 04' 48" W 56.98' TO A 5/8" IRON REBAR  (L22)
N 10° 20' 54" W 39.05' TO A 5/8" IRON REBAR (L23)
N 25° 47' 26" W 56.66' TO A 1/2" IRON REBAR (L24)
N 13° 27' 44" W  76.24' TO A 1/2" IRON REBAR (L25)
N 17° 39' 11" W 97.57' TO A 1/2" IRON REBAR (L26)
N 12° 16' 10" W 88.89' TO A 1/2" IRON REBAR (L27)
N 14° 59' 54" E 76.73' TO A 5/8" IRON REBAR (L28)
N 03° 03' 55" E 68.44' TO A 5/8" IRON REBAR (L29)
N 18° 16' 26" W 54.65' TO A 5'/8" IRON REBAR (L30)
N 07° 01' 54" E 55.53 TO A 5/8" IRON REBAR (L31)
N 18° 16' 26" W 165.29' TO A 1/2" IRON REBAR
N 72° 01' 42" E 56.76' TO A 5/8" IRON REBAR (L1)
N 81° 17' 52" E 64.73' TO A 5/8" IRON REBAR (L2)
N 64° 47' 30" E 29.40' TO A 5/8" IRON REBAR (L3)
N 64° 47' 30" E 51.32' TO A 5/8" IRON REBAR (L4)
N 53° 06' 21" E 37.13' TO A 5/8" IRON REBAR (L5)
S 52° 52' 17" E 21.54' TO A 5/8" IRON REBAR (L6)
N 81° 54' 27" W 20.11' TO A 5/8" IRON REBAR (L7)
N 64° 51' 43" E 38.70' TO 5/8"  IRON REBAR (L8)
N 41° 29' 19" E 29.66' TO A 5/8" IRON REBAR (L9)

ECOVEST-DOJ_0012961

N 22° 51' 47" E 89.98' TO A 5/8" IRON REBAR (L10)
N 19° 44' 42" E 61.88' TO A 5/8" IRON REBAR (L11)
N 12° 13' 58" E 42.36' TO A 5/8" IRON REBAR (L12)
N 01° 55' 38" W 24.24' TO A 5/8" IRON REBAR (L13)
N 16° 24' 28" W 47.74' TO A 5/8" IRON REBAR (L14)
THENCE THE LINE IS BORDERED TO THE NORTH BY LANDS NOW OR FORMERLY
OWNED BY PERMENTER BROTHERS HOLDINGS, LLC AND TO THE SOUTH BY
SUBJECT PARCEL.
N 80° 30' 19" E 139.23' TO A 5/8" IRON REBAR
N 80° 30' 19" E 21.90' TO 5/8" IRON REBAR (L15)
N 80° 30' 19" E 28.10" TO A 5/8" IRON REBAR (L16)
N 80° 30' 19" E 133.50' TO A 5/8" IRON REBAR
N 80° 30' 19" E 340.17' TO A 5/8" IRON REBAR
SAID REBAR BEING THE POINT OF BEGINING

ECOVEST-DOJ_0012962

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 28.53 acres.

There are several methods of valuing vacant land.
1.     Sales Comparison Approach
2.     Land Residual Method (DCF) (Developers method)
3.     Extraction
4.     Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0012977

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0012978

Excerpts from Sanibel Resort Appraisal

## Identification of the Subject Property

The Subject Property is located off Old Sanders Drive, just south of the Highway 31 and Robert Edge Parkway interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 28.53 acres.

### Prior Sales History

There has been no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Sanibel Harbour, LLC

### Improvements

None

### Taxes

| Owner Data: | | 2015 Parcel Values: | |
|---|---|---|---|
| TMS | 1440001122 | Residential Land | $0.00 |
| PIN | 3490000019 | Residential Improved Land | $0.00 |
| Legal Description | SANIBEL HARBOUR, PH ONE TR | Farm Land | $0.00 |
| Owner | SANIBEL HARBOUR LLC | Farm Improved | $0.00 |
| Billing Street | 900E 6TH AVE S | Farm Use | $0.00 |
| Billing City | NORTH MYRTLE BEACH | Other Land | $635,278.00 |
| Billing State | SC | Other Improved | $0.00 |
| Billing Zip | 29582-3319 | Taxable Total | $635,278.00 |
| District | 550 - N MYRTLE BEACH | | |
| Book | 3419 | **Market Values** | |
| Page | 1808 | Residential Land | $0.00 |
| | | Residential Building | $0.00 |
| | | Farm Land | $0.00 |
| | | Farm Building | $0.00 |
| | | Other Land | $372,600.00 |
| | | Other Building | $0.00 |
| | | Total Market Value | $372,600.00 |

ECOVEST-DOJ_0012982

Excerpts from Sanibel Resort Appraisal

Site Data

1.  According to the current owner, there are no environmental issues or problems concerning the subject land.
2.  The physical inspection of the Subject Property provided no indications of environmental issues concerning the property.  However, the appraiser is not trained in the detection of such materials.
3.  For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject.  This is an assumption of the appraisal.  **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
4.  The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
5.  Observed or reported current or past use of hazardous material "in bulk":
    On-Site: No; Adjacent: No
6.  Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
    On-Site: No; Adjacent: No
7.  Observed staining of soils:        On-Site: No; Adjacent: No
8.  Observed distressed vegetation:        On-Site: No; Adjacent: No
9.  Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
    On-Site: No; Adjacent: No
10. Observed noticeable odors:        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 28.53 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0012996

# Excerpts from appraisal of: Santo Bay Resort

# Document ID: ECOVEST-DOJ_0170095

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Santo Bay Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Santo Bay Resort, LLC
      461.64-acre tract, Calhoun County, Texas

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of Texas for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0170095

Excerpts from Santo Bay Resort Appraisal

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct. No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions. I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0170096

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the **fair market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 27, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 27, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Unencumbered** | | |
| Before Value | 461.64 | $77,166,188 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 27, 2017 is:

| | Acres | FMV |
|---|---|---|
| **Encumbered** | | |
| Total After Value | 461.64 | $1,151,018 |

The value of the easement gift as of December 27, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 461.64 | $77,166,188 |
| Less | | |
| Total After Value (Encumbered) | 461.64 | $1,151,018 |
| **Value of the Easement** | rounded | **$76,015,000** |

The encumbered property also includes one (1) reserved building zone that allows for one home site. This site allows for one residence and one additional residence that can be no more than ½

ECOVEST-DOJ_0170097

the size of the main residence, basically a mother-in-law cottage.  While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement; therefore, I feel this site requires an additional value over that of the per acre value of the encumbered property.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided to value this building area at $5,000 per acre, or $20,000.  This value will be added to the indicated fair market value of the encumbered property.  There is no enhancement.

he attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                                 State Certified General Real Property Appraiser
TX License #TX 4154

ECOVEST-DOJ_0170098

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each serve to comment on the impact of the storm on the prospective projects.

ECOVEST-DOJ_0170099

Excerpts from Santo Bay Resort Appraisal

**CLARK ~ DAVIS, P.C.**
REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

September 8, 2017

Adam Lloyd
Ecovest Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

ECOVEST-DOJ_0170100

Excerpts from Santo Bay Resort Appraisal

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Santo Bay Resort will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

ECOVEST-DOJ_0170101

### RALPH STEWART BOWDEN, Inc.
#### REAL ESTATE COUNSELORS
626 Elk Run Lane
Earlysville, Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 29, 2017

Mr. Adam Lloyd
EcoVest Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Santo Bay, Hurricane Harvey and the Texas Coastal Market

Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will consume the year ahead, but elements such as refining, petrochemicals and shipping will recover in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our society and our economy that continue on as though nothing has happened. Growth in the Texas market is not going to stop. Many corporations continue to migrate to Texas and to expand. The energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump in growth when rebuilding is added to the already existing demand in Texas, among the healthiest in the nation. One can also argue that the Texas' coast location has been in a known hurricane zone for centuries and that the risks associated with the location are baked in and do not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and residential migration will continue to occur. The shore will continue to be a magnet. Hurricane Harvey has no impact on these dynamics. This is the most fundamental truth that should not be forgotten and is a powerful reason to remain bullish on Texas and its coast.

ECOVEST-DOJ_0170102

Excerpts from Santo Bay Resort Appraisal

Consequences of the storm that are unanticipated benefits to the proposed development of Santo Bay include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019, and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue.

Sincerely,

*Ralph S Bowden*

Ralph S. Bowden
President

ECOVEST-DOJ_0170103

## Table of Contents

**Certification** ................................................................................................................12

**Summary of the Appraisal** ..........................................................................................13

**Assumptions and Limiting Conditions** ......................................................................14

**Legal Descriptions and Maps** ....................................................................................17

**INTRODUCTION:** ........................................................................................................30

**Scope of the Assignment** ............................................................................................31

*Competency Provision* ..................................................................................................35

*Appraisal of the Larger Parcel:* ...................................................................................36

*Identification of the Subject Property* ..........................................................................37

*Prior Sales History* ......................................................................................................37

*The Subject is not listed for sale.* ................................................................................37

*Ownership.* ....................................................................................................................37

*Improvements.* ..............................................................................................................37

*Taxes.* ...........................................................................................................................37

*Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ..............42

**SECTION I.** ...................................................................................................................57

**APPRAISAL OF THE BEFORE VALUE** .......................................................................57

*Highest and Best Use Analysis:* ..................................................................................58
    a)    Legally Permissible .........................................................................59
    b)    Physically Possible .........................................................................59
    c)    Financially Feasible ........................................................................59
    d)    Maximally Productive .....................................................................60
    e)    Sufficiency of Demand ...................................................................60
    Conclusion .......................................................................................60

*Land Valuation:* ...........................................................................................................63
    Discounted Retail Sales Approach .................................................63

**SECTION II** ................................................................................................................100

**APPRAISAL OF THE AFTER VALUE** ........................................................................100

*Highest and Best Use Analysis:* ................................................................................119
    a)    Legal permissibility ......................................................................120
    b)    Physical possibility and suitability ...............................................120
    c)    Financial feasibility ......................................................................120
    d)    Maximum productivity ..................................................................120
    e)    Sufficiency of demand ..................................................................121
    Conclusion: .....................................................................................121

*Land Valuation* ...........................................................................................................122
    Sales Comparison Approach .........................................................122

*Estimate of the After Value:* ......................................................................................133

ECOVEST-DOJ_0170104

**Reconciliation**.................................................................................................................**139**

**Addenda**........................................................................................................................**141**

    Qualifications ...............................................................................................................141
    License ........................................................................................................................141
    Santo Bay Resort Unit Plans ........................................................................................141
    Cost Estimates .............................................................................................................141
    Development Letters .....................................................................................................141
    Demographic Reports ...................................................................................................141
    Mineral Assessment Report ..........................................................................................141
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............141
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ..................................................................................................................................141
    Crystal Lagoon Information and Supporting Documents ...................................................141
    Bowden Report – Before Scenario .................................................................................141
    Easement .....................................................................................................................141
    Baseline ......................................................................................................................141

ECOVEST-DOJ_0170105

Excerpts from Santo Bay Resort Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                         State Certified General Real Property Appraiser
TX License #TX 4154

ECOVEST-DOJ_0170106

Excerpts from Santo Bay Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located on the south side of State Highway 185 and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | June 13, 2017 |
| **Date of Value Estimates:** | December 27, 2017 |
| **Date of Donation** | December 27, 2017 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 461.64 Acres |
| **Easement:** | 461.64 Acres |
| **Reserved:** | One Reserved Building Zone located within the easement |
| **Total:** | 461.64 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:     Recreational / Green Space with one 4-acre building zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0170107

Excerpts from Santo Bay Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0170108

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0170109

Excerpts from Santo Bay Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0170110

Excerpts from Santo Bay Resort Appraisal

## Legal Descriptions and Maps

EXHIBIT "A"

#### 461.64 ACRES

THE STATE OF TEXAS}
THE COUNTY OF CALHOUN}

BEING a 461.64 acre tract of land situated in a portion of the Cleto Garcia Survey, Abstract No. 14 and a portion of the Faustino Albarado Survey, Abstract No. 1, Calhoun County, Texas, being comprised of portions of Lot 3, Section 1; Lot 4, Section 2; Lots 1 & 4, Section 5, Lots 2 & 3, Section 6; Lots 2 & 3, Section 7; and Lots 1 & 2, Section 8, Block "B" of the Calhoun County Cattle Company Subdivision of the Port O'Connor Pasture Plat of said subdivision recorded in Volume 1, Page K, of the Deed Records, Calhoun County, Texas, and being a part of that remaining called 12,228.52 acre tract of land as described by Special Warranty Deed with Vendor's Lien dated March 27, 2015, conveyed from Texas Ranch Holdings, LLC to Texas Coastal Ranches, Inc. as recorded in Instrument No. 142897 of the Official Public Records, Calhoun County, Texas, said 461.64 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the south line of State Highway No. 185 (a Variable Width Right-of-Way), being along the north line of the aforesaid 12,228.52 acre tract, same being the north line of a Right-of-Way Easement, described as Part II, a called 8.163 acre tract of land, conveyed to the State of Texas as recorded in Volume 263, Page 509 of the Deed Records, Calhoun County, Texas for the northeast corner of the herein described tract, from which a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the northwest corner of a called 399.19 acre tract of land conveyed to TCR Land Holdings, LLC as recorded in Instrument No. 149121 of the Official Public Records, Calhoun County, Texas bears North 83°58'28" East, a distance of 3547.94 feet;

THENCE, South 25°50'49" East, departing the south right-of-way line of said State Highway No. 185, over and across said 12,228.52 acre tract, a distance of 9839.76 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner of the herein described tract;

THENCE, S 64°09'11" W, continuing across said 12,228.52 acre tract, a distance of 575.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner for the herein described tract;

THENCE, S 25°50'49" E, continuing across said 12,228.52 acre tract, a distance of 750.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner for the herein described tract;

THENCE, N 64°09'11" E, continuing across said 12,228.52 acre tract, a distance of 450.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner for the herein described tract;

THENCE, S 25°50'49" E, continuing across said 12,228.52 acre tract, at a distance of 1203.29 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 1504.39 feet to a point along the southeasterly line of said 12,228.52 acre tract marking the southeast corner of the herein described tract;

THENCE, South 62°05'55" West, along the southeasterly line of said 12,228.52 acre tract, a distance of 1544.86 feet to a point along the southeasterly line of said 12,228.52 acre tract and being the southeast

Page 1 of 2

ECOVEST-DOJ_0170111

Excerpts from Santo Bay Resort Appraisal

EXHIBIT "A"

corner of a called 333.33 acre tract of land conveyed to Mike C. Williams as recorded in Instrument No. 143573 of the Official Public Records, Calhoun County, Texas marking the south most corner of the herein described tract;

THENCE, N 25°50'49" W, over and across said 12,228.52 acre tract, with the northeast lines of the aforesaid 333.33 acre tract and a called 1290.82 acre tract of land conveyed to Banrich, Inc. as recorded in Instrument No. 139824 of the Official Public Records, Calhoun County, Texas, at a distance of 335.02 feet passing a found 5/8" steel rebar with yellow cap stamped "URBAN SURVEYING, INC.", continuing at a distance of 3849.44 feet passing a found 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the north corner of said 333.33 acre tract, same being the east most corner of a 100-foot Roadway Easement as described by instrument recorded in Instrument Nos. 142554, 142846, & 142896 of the Official Public Records, Calhoun County, Texas, continuing at a distance of 12737.24 feet passing a found 5/8" steel rebar with yellow cap stamped "URBAN SURVEYING, INC." along the south line of the aforesaid Right-of-Way Easement, and continuing for a total distance of 12751.06 feet to a found 5/8" steel rebar with yellow cap stamped "URBAN SURVEYING, INC." marking the northeast corner of the aforementioned 1290.82 acre tract for the northwest corner of the herein described tract;

THENCE, North 83°58'28" East, along the south right-of-way line of said State Highway No. 185, with the north line of said 12,228.52 acre tract and said Right-of-Way Easement, a distance of 1773.97 feet to the POINT OF BEGINNING, CONTAINING within these metes and bounds a 461.64 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in May, 2017 and are true and correct to the best of my knowledge and belief.

_____  05/26/2017
Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S21864.02 - Tract 3: 461.64 Acres

Page 2 of 2

ECOVEST-DOJ_0170112

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 461.64 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction

ECOVEST-DOJ_0170126

- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.  The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales

ECOVEST-DOJ_0170127

Area Data

## Identification of the Subject Property

The subject is located off of State Highway 185 (Adams Street) and north of the Intracoastal Waterway, just west of Port O'Connor, Calhoun County, Texas. The site contains 461.64 acres.

### Prior Sales History

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years. However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### Ownership

Santo Bay Resort, LLC

### Improvements

None

### Taxes

ECOVEST-DOJ_0170131

Site Data

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:             On-Site: No; Adjacent: No
- Observed distressed vegetation:         On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:              On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 461.64 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0170147

# Excerpts from appraisal of: Seavista Resort

# Document ID: ECOVEST-DOJ_0026636

**CLARK ~ DAVIS, PC**
**REAL ESTATE APPRAISERS**
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ǂ
Certified General Real Property Appraiser

Writer's Email: Claud@ClarkAppraisals.com

December 15, 2015

Seavista Resort, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention: Mr. Robert M. McCullough

RE: Conservation Easement Appraisal
    Seavista Resort

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0026636

Excerpts from Seavista Resort Appraisal

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 29 | $55,379,424 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 29 | $264,950 |

CLARK ~ DAVIS, PC

2

ECOVEST-DOJ_0026637

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 29 | $55,379,424 |
| Less Total After Value (Encumbered) | 29 | $264,950 |
| **Value of the Easement** | rounded | **$55,114,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site.  These sites remain part of the eased property and, therefore are subject to the rules and restrictions of the easement; however, these two sites do have limited building rights, as defined in the easement, and as such, retain a value above that of the per acre value of the property once it is encumbered.  These sites are not build ready and would incur development costs.  There is no enhancement.  This valuation is detailed in the After Section of this appraisal report.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

ECOVEST-DOJ_0026638

Respectfully submitted

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6768 CG

## Table of Contents

**Certification** .................................................................................................................................... 7

**Summary of the Appraisal** .......................................................................................................... 8

**Assumptions and Limiting Conditions** ...................................................................................... 9

**Legal Descriptions and Maps** ................................................................................................... 12

**Subject Pictures** ........................................................................................................................ 22

**INTRODUCTION** ..................................................................................................................... 23

**Scope of the Assignment** ........................................................................................................... 24

*Competency Provision* .......................................................................................................... 28

*Appraisal of the Larger Parcel:* ............................................................................................ 29

*Identification of the Subject Property* ................................................................................... 30

*Prior Sales History* ............................................................................................................... 30

*Ownership* .............................................................................................................................. 30

*Improvements* ......................................................................................................................... 30

*Taxes* ...................................................................................................................................... 30

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ...................................... 32

**SECTION I** ................................................................................................................................. 50

**APPRAISAL OF THE BEFORE VALUE** ................................................................................ 50

*Highest and Best Use Analysis* .............................................................................................. 51

  a)   Legally Permissible ...................................................................................................... 52
  b)   Physically Possible ....................................................................................................... 52
  c)   Financially Feasible ...................................................................................................... 53
  d)   Maximally Productive ................................................................................................... 53
  e)   Sufficiency of Demand .................................................................................................. 53
  Conclusion .............................................................................................................................. 53

*Land Valuation:* ..................................................................................................................... 54

  Discounted Retail Sales Approach ......................................................................................... 54

**SECTION II** ............................................................................................................................. 119

**APPRAISAL OF THE AFTER VALUE** ................................................................................. 119

  a)   Legal permissibility ..................................................................................................... 136
  b)   Physical possibility and suitability .............................................................................. 136
  c)   Financial feasibility ..................................................................................................... 136
  d)   Maximum productivity ................................................................................................ 136
  e)   Sufficiency of demand ................................................................................................. 136
  Conclusion: ........................................................................................................................... 137

*Land Valuation* .................................................................................................................... 138

  Sales Comparison Approach ................................................................................................ 138

*Estimate of the After Value* ................................................................................................. 160

ECOVEST-DOJ_0026640

**Reconciliation**................................................................................................................................**166**

**Addenda**.......................................................................................................................................**168**

ECOVEST-DOJ_0026641

Excerpts from Seavista Resort Appraisal

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
State Certified General Real Property Appraiser
SC License #AB 6878 CG

1123

ECOVEST-DOJ_0026642

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located off Robert Edge Parkway, just southwest of the Highway 31 and Robert Edge Parkway interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 15, 2015 |
| **Date of Value Estimates:** | December 15, 2015 |
| **Date of Donation** | December 15, 2015 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | Combination of R-2A (Mid-Rise Multifamily Residential District) and R-4 (Resort Residential District) |
| **Site:** | 29 Acres |
| **Easement:** | 29 Acres |
| **Reserved:** | One Residential Building Site and One Recreational Building Site |
| **Total:** | 29 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:    Residential Development<br>After:    Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0026643

Excerpts from Seavista Resort Appraisal

## Assumptions and Limiting Conditions

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

### Limited Publication, Distribution, and Use of This Report

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

### Limited Disclosure to the Public through the Media

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

### Limited Disclosure of the Report by the Appraiser

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

### Information Furnished is Assumed to be Accurate

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

### Limited Use of Exhibits

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

### No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

ECOVEST-DOJ_0026644

Excerpts from Seavista Resort Appraisal

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0026645

Excerpts from Seavista Resort Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0026646

Excerpts from Seavista Resort Appraisal

**Legal Descriptions and Maps**

ALL THAT CERTAIN PARCEL AS SHOWN ON A PLAT
ENTITLED"BOUNDARY/SUBDIVISON SURVEY OF A PORTION OF PERMENTER
BROTHERS HOLDING, LLC FOR PERMENTER BROTHERS HOLDINGS, LLC" DATED
AUGUST 28, 2015, BY THE BRIGMAN COMPANY AND RECORDED IN THE HORRY
COUNTY REGSITER OF DEEDS OFFICE IN PLAT BOOK 267, PAGE 264.

BEGINIING AT A POINT ON THE NORTH EASTERN CORNER OF SAID PARCEL,
POINT BEIGN MARKED BY A 5/8" IRON REBAR AND HAVING SOUTH CAROLINA
STATE PLANE COORDINATES OF N-735,617.01 AND E-2,699,189.25.  THENCE A LINE
BORDERED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY SANIBEL
RESORTS THE FOLLOWING BEARING S AND DISTANCES:
S 18° 16' 26" E 128.68' TO A 5/8" IRON REBAR
S 18° 16' 25" E 36.61' TO A 5/8" IRON REBAR (L48)
S 07° 01' 50" W 15.14' TO A 5/8" IRON REBAR (L49)
S 07° 01' 55" W 40.39' TO A 5/8" IRON REBAR (L50)
S 18° 16' 26" E 54.65' TO A 5/8" IRON REBAR (L51)
S 03° 03' 55" W 68.44' TO A 5/8" IRON REBAR (L52)
S 14° 59' 54" W 76.73' TO A 5/8" IRON REBAR (L53)
S 12° 16' 10" E 88.89' TO A 5/8" IRON REBAR (L54)
S 17° 39' 11" E 97.57' TO A 1/2" IRON REBAR (L55)
S 13° 27' 44" E 76.24' TO A 1/2" IRON REBAR (L56)
S 25° 47' 26" E 56.66' TO A 5/8" IRON REBAR (L57)
S 10° 20' 54" E 39.05' TO A 5/8" IRON REBAR (L58)
S 04° 04' 48" E 56.98' TO A 1/2" IRON REBAR (L59)
S 15° 46' 42" E 88.63' TO A 1/2" IRON REBAR (L60)
S 60° 17' 59" E 183.46' TO A 5/8" IRON REBAR
THENCE A LINE BORDERED TO THE SOUTH BY THE ATLANTIC INTRACOASTAL
WATERWAY THE COLLOWING BEARINGS AND DISTANCES:
S 69° 27' 08" W 937.67' TO A 5/8" IRON REBAR
S 69° 29' 18" W 39.87' TO A 5/8" IRON REBAR
THENCE A LINE BORDERED TO THE WEST BY PROPERTY NOW OR FORMERLY
OWNED BY PERMENTER BROTHERS HOLDINGS, LLC THE FOLLOWING BEARING
AND DISTANCE:
N 23° 32' 25" W 1749.49' TO A 5/8" IRON REBAR
THENCE A LINE BORDERED TO THE NORTH BY LANDS NOW OR FORMERLY
OWNED BY PERMENTER BROTHERS HOLDINGS, LLC THE FOLLOWING BEARINGS
AND DISTANCES:
S 39° 18' 39" E 12.74' TO A CALCULATED POINT (L1)
S 58° 05' 35" E 28.97' TO A CALCULATED POINT (L2)
S 63° 15' 44" E 28.18' TO A CALCULATED POINT (L3)
S 64° 05' 18" E 30.98' TO A CALCULATED POINT (L4)
S 57° 23' 29" E 29.39' TO A CALCULATED POINT (L5)
S 75° 47' 04" E 37.18' TO A CALCULATED POINT (L6)
S 78° 46' 50" E 33.56' TO A CALCULATED POINT (L7)
S 80° 14' 53" E 30.58' TO A CALCULATED POINT (L8)

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0026647

N 81° 11' 10" E 43.73' TO A CALCULATED POINT (L9)
S 61° 10' 34" E 30.64' TO A CALCULATED POINT (L10)
S 56° 18' 53" E 32.36" TO A CALCULATED POINT (L11)
S 57° 06' 18" E 27.58' TO A CALCULATED POINT (L12)
S 76° 12' 04" E 27.50' TO A CALCULATED POINT (L13)
S 68° 45' 53" E 23.30' TO A CALCULATED POINT (L14)
S 73° 34' 25" E 29.78' TO A CALCULATED POINT (L15)
S 74° 35' 11" E 38.34' TO A CALCULATED POINT (L16)
S 80° 29' 40" E 26.10' TO A CALCULATED POINT (L17)
S 74° 44' 52" E 33.49' TO A CALCULATED POINT (L18)
S 75° 41' 44" E 23.31' TO A CALCULATED POINT (L19)
S 73° 54" 09' E 22.25' TO A CALCULATED POINT (L20)
S 52° 00' 25" E 22.14' TO A CALCULATED POINT (L21)
S 44° 58' 59" E 23.82' TO A CALCULATED POINT (L22)
S 53° 40; 03" E 26.23' TO A CALCULATED POINT (L23)
S 62° 17' 34" E 27.59" TO A CALCULATED POINT (L24)
S 63° 06' 32" E 24.36' TO A CALCULATED POINT (L25)
S 67° 13' 05" E 24.20' TO A CALCULATED POINT (L26)
S 67° 45" 52" E 23.04' TO A CALCULATED POINT (L27)
S 75° 16' 23" E 26.16' TO A CALCULATED POINT (L28)
S 80° 47' 37" 3 33.50' TO A CALCULATED POINT (L29)
S 80° 28' 21" E 21.69' TO A CALCULATED POINT (L30)
S 67° 52' 13" E 22.03' TO A CALCULTED POINT (L31)
S 64° 58' 49" E 115.54' TO A CALCULATED POINT (L32)
S 70° 35' 35" E 14.19' TO A CALULATED POINT (L33)
S 77° 13' 01" E 22.73' TO A CALCULATED POINT (L34)
S 84° 10' 45" E 26.92' TO A CALCULATED POINT (L35)
S 89° 46' 26" E 30.41' TO A CALCULATED POINT (L36)
N 86° 55' 49" E 29.13' TO A CALCULATED POINT (L37)
N 83° 53' 16" W 42.17' TO A CALCULATED POINT (L38)
N 82° 29' 22" E 34.27' TO A CALCULATED POINT (L39)
N 81° 19' 57" E 35.43' TO A CALCULATED POINT (L40)
N 65° 24' 33" E 26.48' TO A CALCULATED POINT (L41)
N 65° 43' 56" E 28.00' TO A CALCULATED POINT (L42)
N 62° 37' 59" E 33.87' TO A CALCULATED POINT (L43)
N 59° 46' 11" E 25.18' TO A CALCULATED POINT (L44)
N 64° 28' 44" E 23.07' TO A CALCULATED POINT (L45)
N 77° 24' 32" E 20.96' TO A CALCULATED POINT (L47)
THENCE BACK TO POINT OF BEGINING.  TRACT CONTAINS 29.03 ACRES

ECOVEST-DOJ_0026648

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 29 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0026660

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or

ECOVEST-DOJ_0026661

Excerpts from Seavista Resort Appraisal

### Identification of the Subject Property

The Subject Property is located off Robert Edge Parkway, just southwest of the Highway 31 and Robert Edge Parkway interchange, and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.  The site contains 29 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Permenter Brothers Holdings, LLC

### Improvements

None

### Taxes

Notice #: 269976143    Status: ████  Date Paid: 03/25/15

| Tax Information | Property Information | Taxes |
|---|---|---|
| **Name:** PERMENTER BROTHERS HOLDINGS LL | **Record Type:** Real Estate | **County Tax:** $125.36 |
| **Tax Year:** 2014 | **Map Number:** 144-00-01-018 | **City Tax:** $0.00 |
| **Assessment Value:** 610 | **Tax ID:** | **Other Fees:** $84.08 |
| **District/Levy:** 500 / 205.5 | **Market Value:** 15,140 | **Residential Exemption:** $0.00 |
| **City/Levy:** / 0 | **Description:** OLD GEORGETOWN RD & OCEAN DRIVE | **Homestead Exemption:** $0.00 |
| | | **Other Exemptions:** $0.00 |
| | | **Local Option Credit:** $0.00 |
| | | **Penalty:** $12.54 |
| | | **Cost:** $0.00 |
| | | **Total Taxes:** $221.98 |
| | | **Total Paid:** $221.98 |

ECOVEST-DOJ_0026665

**Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
                              On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
                              On-Site: No; Adjacent: No
- Observed staining of soils:        On-Site: No; Adjacent: No
- Observed distressed vegetation:    On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
                              On-Site: No; Adjacent: No
- Observed noticeable odors:         On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 29 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0026678

Excerpts from Shining Star Appraisal

# Excerpts from appraisal of: Shining Star

# Document ID: ECOVEST-DOJ_0333870

Excerpts from Shining Star Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

\* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

June 1, 2013

Mr. Tom Vande Guchte, Manager
Shining Star Properties XI, LLC
1000 Las Brisas Court
Wake Forest, NC 27587

RE:     Conservation Easement Shining Star
        Caswell County, NC
        Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
        Market Value of the Easement Gift

To Whom It May Concern:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

North American Land Trust
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

ECOVEST-DOJ_0333870

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 27, 2012, and before the subject property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 507.57 | $5,270,341 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 27, 2012 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value (Encumbered) | 497.55 | $1,500 | $746,325 |

The value of the easement gift as of December 27, 2012 is as follows and is based upon the before and after method.

The subject property has one (1) reserved site. While this site cannot claim ownership of the conservation easement area, it may enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 20% enhancement to the reserved lot.

The property is also improved with a 3 bedroom/3bathroom residence in average condition that is valued by the tax assessor at $166,801.  In the Highest and Best use of the Before state, the improvements will be removed and thus have no value.  In the Highest and Best use of the After state, the improvements retain the value assessed by the tax assessor and are thus deducted accordingly on the following page.

ECOVEST-DOJ_0333871

Excerpts from Shining Star Appraisal

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 507.57 |  | $5,270,341 |
| Less |  |  |  |
| After Value (Encumbered) | 497.55 | $1,500 | $746,325 |
| Reserved Building Area | 10.02 | $3,000 | $30,060 |
| 20% Enhancement on Reserved Land |  |  | $6,012 |
| Present Improvements |  |  | $166,801 |
|  |  |  |  |
| Value of the Easement |  | rounded | $4,321,000 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
NC License #A7692

ECOVEST-DOJ_0333872

## Table of Contents

Certification .......................................................................................................................... 6

Summary of the Appraisal ...................................................................................................... 7

Assumptions and Limiting Conditions .................................................................................. 8

Legal Descriptions and Maps .............................................................................................. 11

INTRODUCTION: ............................................................................................................... 25

    *Scope of the Assignment* ................................................................................................ 26

    *Competency Provision* ................................................................................................... 30

    *Appraisal of the Larger Parcel:* .................................................................................... 31

    *Identification of the Subject Property* ........................................................................... 32

    *Prior Sales History* ....................................................................................................... 32

    *Ownership* ...................................................................................................................... 32

    *Taxes* .............................................................................................................................. 32

    *General Area Analysis:* ................................................................................................. 33

    *Neighborhood Data – Caswell County, North Carolina* ............................................... 34

    *Caswell County, NC Demographics* .............................................................................. 37

SECTION I. ........................................................................................................................... 53

APPRAISAL OF THE BEFORE VALUE ........................................................................... 53

    *Highest and Best Use Analysis:* ..................................................................................... 54
        *a)*    *Legally Permissible* .................................................................................. 55
        *b)*    *Physically Possible* .................................................................................. 55
        *c)*    *Financially Feasible* ................................................................................. 55
        *d)*    *Maximally Productive* .............................................................................. 56
        *e)*    *Sufficiency of Demand* ............................................................................. 56
        Conclusion ...................................................................................................... 56
        Hypothetical Condition .................................................................................. 56

    *Land Valuation:* .............................................................................................................. 58

SECTION II ........................................................................................................................... 89

APPRAISAL OF THE AFTER VALUE .............................................................................. 89
        a)    Legal permissibility ..................................................................................... 104
        b)    Physical possibility and suitability .............................................................. 104
        c)    Financial feasibility ..................................................................................... 104
        d)    Maximum productivity ................................................................................. 104
        e)    Sufficiency of demand .................................................................................. 104
        Conclusion: ................................................................................................... 105

    *Land Valuation:* ............................................................................................................ 107
        Sales Comparison Approach ........................................................................ 107

    *Summary, Sale and Acquisition of Properties Encumbered with Perpetual Conservation Easements* ........... 155

    *Estimate of the After Value:* .......................................................................................... 158

ECOVEST-DOJ_0333873

**Reconciliation**......................................................................................................................................**164**

**Addenda**.................................................................................................................................................**166**

    QUALIFICATIONS ...........................................................................................................167
    License ...............................................................................................................................169
    Deed and Title....................................................................................................................170
    Easement and Baseline Documents.....................................................................................180

ECOVEST-DOJ_0333874

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
NC License #A7692

State Certified General Real Property Appraiser

ECOVEST-DOJ_0333875

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Worsham Road outside Ruffin in Caswell County, North Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | June 1, 2013 |
| **Date of Value Estimates:** | December 27, 2012 |
| **Date of Donation** | December 27, 2012 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 507.57 +- Acres |
| **Easement:** | 497.55 +- Acres |
| **Reserved:** | 10.02 Acres |
| **Total:** | 507.57 +- Acres |
| **Improvements:** | Residence, Old Barn/Shed, Jeep/ATV Trails |
| **High and Best Use of Site as Though Vacant:** | Before:  Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0333876

Excerpts from Shining Star Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Alabama or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0333877

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0333878

Excerpts from Shining Star Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0333879

Excerpts from Shining Star Appraisal

**Legal Descriptions and Maps**

Legal Description
Orientation of the following description is magnetic north per Map Book 11, page 62.
Calls are from maps referenced at the end of this description.

Beginning at an existing iron having coordinates of NORTHING=976,565.36, EASTING=1,851,742.24 (NSRS2007) with a combined scale factor=1.0000625386; thence with a bearing of N 04°23'20" E a distance of 3818.35 feet to an existing iron having coordinates of NORTHING=980,205.31, EASTING=1,851,801.00 (NSRS2007) with a combined scale factor=1.0000625386;

thence with a bearing of N 04°23'20" E passing a new iron pin at 687.20 feet for a total distance of 715.40 feet to a point in Hogan's Creek;
thence with a bearing of N 84°24'13" E a distance of 48.77 feet to a point in Hogan's Creek;
thence with a bearing of S 60°37'27" E a distance of 76.87 feet to a point in Hogan's Creek;
thence with a bearing of S 79°22'07" E a distance of 120.79 feet to a point in Hogan's Creek;
thence with a bearing of N 80°19'59" E a distance of 171.09 feet to a point in Hogan's Creek;
thence with a bearing of N 73°34'25" E a distance of 184.44 feet to a point in Hogan's Creek;
thence with a bearing of N 59°19'08" E a distance of 152.13 feet to a point in Hogan's Creek;
thence with a bearing of N 75°00'17" E a distance of 182.36 feet to a point in Hogan's Creek;
thence with a bearing of N 83°12'51" E a distance of 62.43 feet to a point in Hogan's Creek;
thence with a bearing of N 73°07'35" E a distance of 102.17 feet to a point in Hogan's Creek;
thence with a bearing of N 56°35'32" E a distance of 109.22 feet to a point in Hogan's Creek which is
N 10°04'49" E a distance of 30.67 feet from an existing iron pin;

thence continuing with the center of Hogan's Creek and witnessed by various computed points on the south bank of said creek 10 courses:
     N 41°58'14" E a distance of 20.96 feet to a point;
     N 59°06'20" E a distance of 210.86 feet to a point;
     N 23°57'52" E a distance of 212.53 feet to a point;
     N 63°05'09" E a distance of 345.02 feet to a point;
     N 84°24'39" E a distance of 154.05 feet to a point;
     N 89°27'13" E a distance of 305.70 feet to a point;
     N 86°26'32" E a distance of 154.66 feet to a point;
     S 68°06'43" E a distance of 116.51 feet to a point;
     S 70°03'01" E a distance of 156.60 feet to a point;
     S 72°37'17" E a distance of 271.78 feet to a point being in John's Branch and offset south of Hogan's Creek referencing the center of Hogan's Branch and John's Branch as the property line;

Thence continuing with the center of John's Branch 39 courses:
     S 24°38'51" E a distance of 106.00 feet to a mathematical point;
     S 21°19'27" W a distance of 55.81 feet to a mathematical point;
     S 35°19'11" E a distance of 29.35 feet to a mathematical point;
     S 05°45'29" W a distance of 104.98 feet to a mathematical point;
     S 22°22'02" E a distance of 51.98 feet to a mathematical point;

ECOVEST-DOJ_0333880

S 06°08'34" E a distance of 162.65 feet to a mathematical point;
S 06°58'05" W a distance of 72.81 feet to a point;
S 13°21'30" W a distance of 35.80 feet to a mathematical point;
S 15°27'15" E a distance of 31.97 feet to a mathematical point;
S 34°54'31" W a distance of 58.64 feet to a mathematical point;
S 03°19'42" E a distance of 139.90 feet to a mathematical point;
S 24°47'08" E a distance of 55.05 feet to a mathematical point;
S 15°20'23" W a distance of 48.84 feet to a mathematical point;
S 28°43'09" E a distance of 84.72 feet to a mathematical point;
S 66°24'57" E a distance of 89.50 feet to a mathematical point;
S 15°23'52" E a distance of 120.41 feet to a mathematical point;
S 15°22'02" E a distance of 96.65 feet to a mathematical point;
S 38°08'52" E a distance of 77.88 feet to a mathematical point;
S 09°41'28" W a distance of 52.56 feet to a mathematical point;
S 06°09'23" E a distance of 91.17 feet to a mathematical point;
S 20°06'07" E a distance of 49.70 feet to a mathematical point;
S 23°00'55" W a distance of 59.98 feet to a mathematical point;
S 31°48'32" E a distance of 44.76 feet to a mathematical point;
S 03°33'54" E a distance of 133.91 feet to a mathematical point;
S 08°40'56" E a distance of 172.40 feet to a mathematical point;
S 32°59'23" W a distance of 31.81 feet to a mathematical point;
S 04°01'08" E a distance of 136.72 feet to a point;
S 06°47'20" E a distance of 125.27 feet to a mathematical point;
S 21°18'47" W a distance of 22.93 feet to a mathematical point;
S 45°41'40" E a distance of 48.25 feet to a mathematical;
S 02°55'04" W a distance of 153.05 feet to a mathematical point;
S 04°14'37" E a distance of 258.55 feet to a mathematical point;
S 09°17'46" E a distance of 110.53 feet to a mathematical point;
S 26°56'52" W a distance of 17.29 feet to a mathematical point;
S 07°45'29" E a distance of 109.83 feet to a mathematical point;
S 05°27'07" E a distance of 77.98 feet to a mathematical point;
S 04°20'34" E a distance of 251.71 feet to a mathematical point;
S 39°26'32" E a distance of 15.38 feet to an existing iron;
S 29°13'12" E a distance of 96.33 feet to a mathematical point being the intersection of a branch from the southeast;

Thence continuing with the center of John's Branch 14 courses:

S 20°10'34" W a distance of 113.13 feet to a mathematical point;
S 35°45'14" W a distance of 205.61 feet to a mathematical point;
N 74°38'37" W a distance of 110.56 feet to a mathematical point;
S 36°45'05" W a distance of 97.82 feet to a mathematical point;
S 08°37'18" E a distance of 115.72 feet to a mathematical point;
S 22°15'47" W a distance of 105.43 feet to a mathematical point;
S 49°20'17" W a distance of 149.55 feet to a mathematical point;
S 12°58'35" W a distance of 251.31 feet to a mathematical point;
S 28°48'39" W a distance of 255.00 feet to a mathematical point;
S 46°48'42" W a distance of 268.28 feet to a mathematical point;
S 39°16'52" W a distance of 420.24 feet to a mathematical point;

ECOVEST-DOJ_0333881

S 84°33'53" W a distance of 126.73 feet to a mathematical point;
S 12°23'05" W a distance of 225.11 feet to a mathematical point;
S 16°39'24" E a distance of 158.82 feet to a mathematical point;

thence following the old stream course to the southwest with a bearing of S 36°46'01" W a distance of 108.79 feet to an existing iron which is S 58°50'39" E a distance of 185.61 feet from an existing iron;

thence following the old stream course with a bearing of S 23°48'08" W a distance of 160.32 feet to an existing iron;
thence following the old stream course with a bearing of S 11°04'49" E a distance of 222.10 feet to an existing iron in John's Branch;

thence a line in the general direction of John's Branch but not following with a bearing of S 09°01'12" E a distance of 1893.84 feet to an existing iron;
thence with a bearing of N 85°55'27" W a distance of 1929.21 feet to a point 4.05 feet south of an existing iron;
thence with a bearing of N 85°55'27" W a distance of 899.44 feet to an existing iron;
thence with a bearing of N 03°01'01" E a distance of 328.66 feet to an existing iron;
thence with a bearing of N 87°03'26" W a distance of 487.15 feet to a mathematical point in Worsham Road which is S 86°58'38" W a distance of 173.67 feet from an existing iron west of Worsham Road;
thence continuing with Worsham Road 7 courses:
     N 31°13'34" E a distance of 240.97 feet to a mathematical point;
     N 13°35'34" E a distance of 674.31 feet to a mathematical point;
     N 07°57'34" E a distance of 464.85 feet to a mathematical point;
     N 15°56'34" E a distance of 207.42 feet to a mathematical point;
     N 05°54'34" E a distance of 194.82 feet to a mathematical point;
     N 43°38'34" E a distance of 82.31 feet to a mathematical point;
     N 82°26'34" E a distance of 147.51 feet to a mathematical point;

thence leaving Worsham Road with a bearing of N 02°56'38" E a distance of 40.00 feet to an existing iron;
thence with a bearing of N 02°56'38" E a distance of 153.02 feet to the point of beginning containing 507.6 acres more or less according to deeds and recorded plats (Map Book 15, page 963 and Map Book 15 page 679).

ECOVEST-DOJ_0333882

Introduction

The highest and best use analysis is then completed (Step 3). This analysis addresses the site as if vacant and as improved, if improved.

An opinion of the land value is then developed and comprises the fourth step. Value of the land may be processed through the use of comparable sales and in the case of improved property; this process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and Marshall and Swift Valuation Service. Cost developed is compared with local data. Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

The initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

ECOVEST-DOJ_0333896

Excerpts from Shining Star Appraisal

Introduction

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject
which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the
assignment is limited to land only.

I performed a diligent search for comparable land sales that met the requirements for a successful
development such as the Subject Property, and did not find any.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties
may have special topography that lends itself well to development (Lakes, Rivers, Mountains,
Bluffs). Sales of these properties may be limited not because of market conditions but because of
physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf
course. These types of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF,
income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under
current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property.
The Subject Property is located in an area that has become popular for outdoor recreation
oriented subdivisions that offer amenities such as lakes or rivers, horseback riding, hiking,
varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have
suitable characteristics for development, such as a valley with level to moderately sloping land
for home and amenity construction.   Additionally, access to main line utilities is important.
Another feature of significance is proximity to other recreational features such as national and
state forests and parks.  The specific parks and forests will be discussed in the DCF explanation
later in the report.

Extraction and Allocation are methods that involve improved properties and they are not
appropriate in this case.

ECOVEST-DOJ_0333897

Excerpts from Shining Star Appraisal

### *Identification of the Subject Property*

The subject property consists of one parcel located off Worsham Road outside Ruffin in Caswell County, North Carolina. The site contains 507.57 +- acres.

### *Prior Sales History*

The property was sold by the MacKenzie Family Trust, LLC to Shining Star Properties XI, LLC on October 7, 2011 for $1,862,500.  A copy of this deed is located in the addenda.

### *Ownership*

Shining Star Properties XI, LLC

### *Taxes*

Property Card 0006.00.00.0024.0000          http://arcims.webgis.net/nc/caswell/propCard.asp?pid=0006.00.00.0024.0000

### *Improvements*

3 bedroom/3 bathroom residence in average condition and an old barn/shed

ECOVEST-DOJ_0333901

Site Data

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 507.57 +- acres, of which approximately 507.57 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0333920

Excerpts from South Bay Cove Appraisal

# Excerpts from appraisal of: South Bay Cove

# Document ID: ECOVEST-DOJ_0034544

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington ǂ
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 15, 2015

South Bay Cove, LLC
2200 Century Parkway - Suite 550
Atlanta, Georgia 30345

Attention:  Mr. Robert M. McCullough

RE:   Conservation Easement Appraisal
      South Bay Cove

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

1

CLARK ~ DAVIS, PC

ECOVEST-DOJ_0034544

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the *fair market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 15, 2015, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 15, 2015 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 27.5 | $50,837,900 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 15, 2015 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 27.5 | $349,250 |

ECOVEST-DOJ_0034545

Excerpts from South Bay Cove Appraisal

The value of the easement gift as of December 15, 2015 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 27.5 | $50,837,900 |
| Less | | |
| Total After Value (Encumbered) | 27.5 | $349,250 |
| **Value of the Easement** | rounded | **$50,489,000** |

The Subject Property has one (1) reserved residential building site and one (1) reserved recreational building site. While these sites do maintain limited building rights, as defined by the easement, the limited access to the property, limits the value above that of the encumbered property. It should also be noted that these lots are not build ready and will require such things as access, lot clearing, and utility installation. Due to these facts, I do not feel that these sites warrant any additional value above that of the overall per acre value of the encumbered tract. No enhancement needed.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

3

ECOVEST-DOJ_0034546

Excerpts from South Bay Cove Appraisal

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0034547

Table of Contents

Certification ...................................................................................................................... 7

Summary of the Appraisal ............................................................................................... 8

Assumptions and Limiting Conditions ........................................................................... 9

Legal Descriptions and Maps ......................................................................................... 12

INTRODUCTION: ........................................................................................................... 22

Scope of the Assignment ................................................................................................. 23

    *Competency Provision* ...................................................................................................... 27

    *Appraisal of the Larger Parcel:* ...................................................................................... 28

    *Identification of the Subject Property* .............................................................................. 29

    *Prior Sales History* .......................................................................................................... 29

    *Ownership* ......................................................................................................................... 29

    *South Bay Cove, LLC* ........................................................................................................ 29

    *Improvements* .................................................................................................................... 29

    *Taxes* ................................................................................................................................. 29

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ............................. 31

SECTION I. ...................................................................................................................... 49

APPRAISAL OF THE BEFORE VALUE ...................................................................... 49

    *Highest and Best Use Analysis:* ....................................................................................... 50
        a)   *Legally Permissible* ................................................................................................ 51
        b)   *Physically Possible* ................................................................................................ 51
        c)   *Financially Feasible* .............................................................................................. 51
        d)   *Maximally Productive* ............................................................................................ 52
        e)   *Sufficiency of Demand* ........................................................................................... 52
        Conclusion .................................................................................................................... 52

    *Land Valuation:* ................................................................................................................ 53
        *Discounted Retail Sales Approach* .............................................................................. 53

SECTION II ..................................................................................................................... 113

APPRAISAL OF THE AFTER VALUE ......................................................................... 113

    *Highest and Best Use Analysis:* ....................................................................................... 129
        a)   Legal permissibility ................................................................................................. 130
        b)   Physical possibility and suitability .......................................................................... 130
        c)   Financial feasibility ................................................................................................. 130
        d)   Maximum productivity ............................................................................................. 130
        e)   Sufficiency of demand .............................................................................................. 130
        Conclusion: .................................................................................................................. 131

    *Land Valuation* ................................................................................................................. 132
        Sales Comparison Approach ....................................................................................... 132

    *Estimate of the After Value:* ............................................................................................. 154

ECOVEST-DOJ_0034548

Excerpts from South Bay Cove Appraisal

**Reconciliation** ........................................................................................................................**160**

**Addenda** .................................................................................................................................**161**

    Qualifications ........................................................................................................................161
    License ..................................................................................................................................161
    South Bay Cove Unit Plans ..................................................................................................161
    RS Means Cost Estimates ....................................................................................................161
    Development Letters .............................................................................................................161
    Market Area Articles ...........................................................................................................161
    Crystal Lagoons Information and Articles ..........................................................................161
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............161
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    .............................................................................................................................................161
    Bowden Report – Before Scenario ......................................................................................161
    Easement ..............................................................................................................................161
    Baseline ...............................................................................................................................161

ECOVEST-DOJ_0034549

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the continuing education program for Designated Members of the Appraisal Institute.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                              State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0034550

Excerpts from South Bay Cove Appraisal

**Summary of the Appraisal**

**Property Type:** Conservation Easement

**Location:** The subject is located east of Highway 31 and west of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina.

**Purposes of the Appraisal:** To estimate, for federal and state income tax purpose, the market value of the conservation easement.

**Function of the Appraisal:** To estimate the market value of a conservation easement.

**Date of the Appraisal Report:** December 15, 2015

**Date of Value Estimates:** December 15, 2015

**Date of Donation:** December 15, 2015

**Property Rights Appraised:** Before:   Fee Simple Interest
After:    Fee Simple Interest Subject to Easement

**Zoning:** R-4 (Resort Residential)

**Site:** 27.5 Acres

**Easement:** 27.5 Acres

**Reserved:** One Residential Building Site and One Recreational Building Site

**Total:** 27.5 Acres

**Improvements:** None

**High and Best Use**
**of Site as Though Vacant:** Before:   Residential Development
After:    Recreational / Green Space

**Appraiser:** Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275

ECOVEST-DOJ_0034551

Excerpts from South Bay Cove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0034552

Excerpts from South Bay Cove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0034553

Excerpts from South Bay Cove Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0034554

Excerpts from South Bay Cove Appraisal

**Legal Descriptions and Maps**

LEGAL DESCRIPTION

ALL THAT CERTAIN PARCEL AS SHOWN ON A PLAT ENTITLED "BOUNDARY ADJUSTMENT/SUBDIVISION PLAT OF WARD SUBDIVISION TRACTS 1 & 2 FOR WATERWAY-RUST, LLC" DATED SEPTEMBER 2, 2015, REVISED SEPTEMBER 9, 2015 BY THE BRIGMAN COMPANY AND RECORDED SEPTEMBER 17, 2015 IN THE HORRY COUNTY REGISTER OF DEEDS OFFICE IN PLAT BOOK 267, PAGE 265.

BEGINIING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCEL, POINT BEING MARKED BY A 2" IRON PIPE AND HAVING SOUTH CAROLINA STATE PLANE COORDINATES OF N-734,093.48 AND E-2,693,247.48. THENCE A LINE BORDERED TO THE NORTH BY LANDS NOW OR FORMERLY OWNED BY PALMETTO MAIN STREET PARTNERS THE FOLLOWING BEARING S AND DISTANCES:
N 65° 53' 33" E 357.41 TO A REBAR W/ CAP
N 65° 53' 06" E 198.54' TO A 5/8" IRON REBAR
N 65° 53' 06" E 7.00' TO A 1/2" IRON PIPE
THENCE A LINE BORDERED TO THE EAST BY THE REMAINDER OF THE WARD TRACT OWNED NOW OR FORMERLY BY WATERWAY-RUST, LLC, THE FOLLOWING BEARING AND DISTANCE:
S 25° 10' 39" E 2042.40' TO A CALCULATED POINT
THENCE A LINE BORDERED TO THE SOUTH BY THE ATLANTIC INTRACOASTAL WATERWAY THE FOLLOWING BEARINGS AND DISTANCES:
S 59° 49' 19" W 192.07' TO A CALCULATED POINT
S 57° 47' 40" W 77.50' TO A CALCULATED POINT
S 50° 42' 13" W 300.00 TO A CALCULATED POINT
S 70° 00' 46" W 14.50' TO A CALCULATED POINT
THENCE A LINE BORDERED ON THE WEST BY LANDS NOW OR FORMERLY OWNED BY LONG BAY MARINA THE FOLLOWING BEARINGS AND DISTANCES:
N 26° 12' 16 W 799.39' TO A 1" IRON PIPE FOUND
N 23° 31' 14" W 1352.02' BACK TO 2" IRON PIPE AND POINT OF BEGINING. TRACT CONTAINS 27.46 ACRES.

ECOVEST-DOJ_0034555

Excerpts from South Bay Cove Appraisal

The fifth step in the process is the processing of one or more of the approaches to value. These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost. This cost is often obtained from local sources and The Marshall and Swift Valuation Service. Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based. Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach. Sales of similar lots from similar neighborhoods and areas will be collected and analyzed. Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property. Owing to the nature of the work, inspection phase may take a number of visits. Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 27.5 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach. In searching the market

ECOVEST-DOJ_0034567

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0034568

Excerpts from South Bay Cove Appraisal

**Identification of the Subject Property**

The subject is located south of Highway 31 and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 27.5 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

South Bay Cove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0034572

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:   On-Site: No; Adjacent: No
- Observed distressed vegetation:   On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:   On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 27.5 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0034584

Excerpts from Tortuga Trace Appraisal

Excerpts from appraisal of:
Tortuga Trace

Document ID:
ECOVEST-DOJ_0179870

# CLAUD CLARK III, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 21, 2019

Tortuga Trace LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:     Conservation Easement Appraisal
        Tortuga Trace, LLC
        393.44 acre tract, Aransas County, Texas


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Qualified Appraisal Report presented in accordance with *Section 170(f)(11)(E)(i).* My opinion of Fair Market Value is premised upon the Assumptions and Limiting Conditions contained within this report.

*Section 170(f)(11)(E)(i) provides that a qualified appraisal means an appraisal that is (1) treated as an appraisal under regulations or other guidance prescribed by the Secretary and conducted by a qualified appraiser in accordance with generally accepted appraisal standards and any regulations or other guidance prescribed by the Secretary.*

*Section 170(f)(11)(E)(ii) provides that the term qualified appraiser means an individual who (1) has earned an appraisal designation from a recognized professional appraiser organization or has otherwise met minimum education and experience requirements set forth in regulations prescribed by the Secretary, (2) regularly performs appraisals for which the individual receives compensation, and (3) meets such other requirements as may be prescribed by the Secretary in regulations or  other guidance.*

1

ECOVEST-DOJ_0179870

I have the met the minimum education and experience requirements. I regularly perform appraisals for which I am compensated.

*Section 170(f)(11)(E)(iii) provides that an individual will not be treated as a qualified appraiser with respect to any specific appraisal unless that individual (1) demonstrates verifiable education and experience valuing the type of property subject to the appraisal, and (2) has not been prohibited from practicing before the Secretary 330(c) of Title 31 of the United States Code at any time during the 3-year period ending on the date of the appraisal.*

I have verifiable education and experience in valuing the type of property that is the subject of this appraisal. I have not been barred from practicing before the Secretary at any time during the 3-year period ending on the date of this appraisal.

The definition of Fair Market Value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: *Fair Market Value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.*

The conservation easement audit guide gives instructions for estimating the Fair Market Value of a conservation easement (not of property). The conservation easement audit guide provides a clearer solution to the appraisal problem of estimating the Fair Market Value of a Conservation Easement. For the readers' information, I have included an excerpt from the Conservation Easement Audit Techniques Guide.

**Conservation Easement Audit Techniques Guide**
**Revision Date – January 24, 2018**

**"Before and After Method" (*IRS in italics*)**
*In theory, the best evidence of FMV of a conservation easement is the sale price of easements comparable to the donated easement. An appraiser should research the market to determine if there is a substantial record of sales of comparable easements; however, in most instances, there are no substantial record of comparable sales.*

*If there is no substantial record of comparable easement sales, which is usually the case, the "before and after" approach to valuing a conservation easement is used.*

*FMV of the property before the easement*
*Less: FMV of the property after the easement*
*Equals FMV of the conservation easement*

*In essence, an appraiser must determine the highest and best use (HBU) and the corresponding FMV of the subject property twice; first, without regard to the conservation easement ("before" value), and then again after considering the specific restrictions imposed on the property by the deed ("after" value).*

*In determining the "before" value of the property, an appraiser must consider the current use of the property but also objectively assess the likelihood that the property would be developed absent the*

2

ECOVEST-DOJ_0179871

*conservation easement restriction. Existing zoning, conservation, historic preservation, or other laws and restriction may limit the property's potential HBU. Treas. Reg. § 1.170A-14(h)(3)(ii).*
*In determining the "after" value of the property, an appraiser must consider both the specific restrictions imposed by the conservation easement being valued and the specific restrictions imposed by easements on any "comparable" properties.*

The key word is *comparable* sales of conservation easements. Since we did not find a substantial record of sales of easements comparable to the donated property, we have adopted the "before and after" approach to valuing the donated easement.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) *Fair Market Value of property before and after restriction.  If before and after valuation is used, the Fair Market Value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.*

I followed the guidelines of the IRS to determine the Fair Market Value of the easement. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Code and the Treasury.

The intended use of the appraisal is for estimating the Fair Market Value of a 393.44-acre conservation easement in Aransas County, TX. Intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. Intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the Fair Market Value of a perpetual easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***Fair Market Value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual conservation easement thereon**.**

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results but is used for the purpose of analysis.

3

ECOVEST-DOJ_0179872

Excerpts from Tortuga Trace Appraisal

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the Fair Market Value of the fee simple interest of the Subject Property as of December 6, 2018, and Before the Subject Property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| **Total Fair Market Value Before the Easement Fee Simple** | 393.44 | **$71,705,602** |

The Fair Market Value of the fee simple interest of the Subject Property subject to a perpetual conservation easement as of December 6, 2018 is:

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Encumbered Land Fair Market Value After the Easement | 393.44 | $1,800 | $708,192 |
| **Total Fair Market Value After the Easement Fee Simple (rounded)** | 393.44 | | **$708,192** |

The encumbered property also includes one (1) reserved building zone that permits three building sites. Each building site allows for one residence and one additional residence that cannot exceed one half of the size of the main residence, such as a mother-in-law cottage. In theory, if taken as separate components of the valuation, the building area and the remaining eased area that cannot be improved

4

ECOVEST-DOJ_0179873

have different values.  This site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights and the eased property does retain some limited subdivision rights, as defined by the easement.  It should be noted that this area is not build ready and will incur some development costs to make it so. I have decided that these properties do not warrant any additional value over that of the balance of the eased area, but I do feel that they do add to the value of the total tract; therefore, the value of this tract will be included in that of the complete tract. It is not valued as a separate component. There is no enhancement.

The Fair Market Value of the easement gift as of December 6, 2018 is as follows and is based upon the before and after method.  The Fair Market Value of the Subject Property before it was encumbered by the Conservation Easement was $71,705,602.  The Fair Market Value of the Subject Property after the encumbrance by a Conservation Easement was $708,192.  Using the before and after method, the Fair Market Value of the Conservation Easement is $70,997,000 (rounded).

| | Acres | Price/Acre | FMV |
|---|---|---|---|
| Total Fair Market Value Before the Easement | 393.44 | | $71,705,602 |
| Total Fair Market Value After the Easement | 393.44 | $1,800 | $708,192 |
| **Fair Market Value of the Easement** | | | **$70,997,000** |

Fair Market Value of the Conservation Easement on the effective date is:

***SEVENTY MILLION NINE HUNDRED NINETY-SEVEN THOUSAND DOLLARS***

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A and or 6701.

To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

ECOVEST-DOJ_0179874

Excerpts from Tortuga Trace Appraisal

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

6

ECOVEST-DOJ_0179875

Hurricane Harvey Comments

Following are two letters. One is written by me and the second is from Ralph Bowden. Each  serve to comment on the impact of Hurricane Harvey in 2017 on the prospective projects.

7

ECOVEST-DOJ_0179876

## CLAUD CLARK III, P.C.
### REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010

Claud Clark III

Writer's Email:   Claud@ClarkAppraisals.com

December 6, 2018

Adam Lloyd Ecovest
Capital

The following is a commentary based on my experience from other storms on Hurricane Harvey hitting the Texas Coast in August 2017.

My experience is that older and many times underinsured properties on the water are not repaired  or rebuilt but are sold to developers that see an opportunity to assemble smaller lots into a larger property to build larger developments. The slowdown is short lived. It is usually related to infrastructure repairs.

See below for a real-life example.

I have lived and worked on the Gulf Coast most of my life and have been through many  hurricanes.

Gulf Shores and Orange Beach Alabama are resort areas on the Gulf of Mexico in Baldwin  County, Alabama.

According to the National Weather Service…

- Frederic (1979) was the first hurricane to directly strike Mobile County and Baldwin County since the 1930s.
- It set an all-time record low pressure at Mobile's airport.
- Damage costs were around $2.3 billion at the time.
- It still had hurricane-force winds near Meridian, Mississippi.
- Nearly a foot of rain fell in Jackson County, Mississippi.
- Mobile Bay saw up to 10 feet of storm surge while some Gulf Beaches saw up  to 15 feet.
- A half a million people in the region evacuated and that helped to keep the death toll to around a half-dozen, directly from Frederic.
- Some people were without electricity in Mobile for months.

Prior to the storm, both communities (Gulf Shores and Orange Beach) were comprised of single family houses on 50-100 wide lots. The houses were typically 1500 SF on a 50-foot lot. They  were wood sided with asphalt shingle roofs. Usually a 3/2 arrangement.

8

ECOVEST-DOJ_0179877

The houses were leveled. Immediately the developers came in and assembled the lots into wider lots and built condos… What had been $100,000 houses became $300,000 vacant lots. There are only a few houses on the beach today. It is high rise condos.

Specifically, Tortuga Trace will progress as planned with only slight delays for infrastructure repair. I think that the aggressive marketing program will still prove to be effective. This is based on my appraisal experience as well has having lived in a hurricane zone most of my life.

Very Truly Yours,

Claud Clark III

9

ECOVEST-DOJ_0179878

# RALPH STEWART BOWDEN, Inc.
## REAL ESTATE COUNSELORS
626 Elk Run Lane  Earlysville,
Virginia 22936
434 974 7611 / 434 409 3216 (cell)
E-mail: rsbclub@msn.com

August 31, 2017

Mr. Adam Lloyd  EcoVest
Capital, LLC
3424 Peachtree Rd. NE, # 1550
Atlanta, GA 30326

Re: Hurricane Harvey and the Texas Coastal Market  Dear Mr. Lloyd:

Thank you for your call to discuss the impacts of hurricane Harvey on the results of our Strategic Planning Market Analysis completed earlier this year. Natural disasters such as this can be temporarily overwhelming and disruptive. One cannot ignore the fact that the disruption will   consume the year ahead, but elements such as refining, petrochemicals and shipping will recover  in a few months.

While everything has temporarily changed in coastal Texas, there are many constants in our  society and our economy that continue on as though nothing has happened. Growth in the Texas  market is not going to stop. Many corporations continue to migrate to Texas and to expand. The  energy industry is not going to move somewhere else.

While it may sound Pollyanna-ish to point to the legends that post hurricane is the best time to  buy waterfront land, it does not ignore that economists (NYT 8/30/17 "Hurricane to Cost Tens of Billions, but a Quick Recovery Is Expected") are already predicting a quick recovery and a bump  in growth when rebuilding is added to the already existing demand in Texas, among the  healthiest in the nation. One can also argue that the Texas' coast location has been in a known  hurricane zone for centuries and that the risks associated with the location are baked in and do  not appear to be an impediment, at all.

One thing that is relatively absolute, the demographics of demand do not change because of a storm. Retirement is gaining multi-year momentum.  Millennials are starting to buy Boomer's houses, unleashing millions in acquisition funds for retirement real estate. Tourism and  residential migration will continue to occur. The shore will continue to be a magnet. Hurricane  Harvey has no impact on these dynamics. This is the most fundamental truth that should not be  forgotten and is a powerful reason to remain bullish on Texas and its coast.

10

ECOVEST-DOJ_0179879

Consequences of the storm that are unanticipated benefits to the proposed development include the elimination of obsolete, cheap residential inventory. Infrastructure will be refreshed to contemporary standards. Roads will be improved. The area will be even more beautiful than it was before. The quality of the area will improve. The area will become more valuable. Port O'Connor, already a charming town, will be better than ever.

Given the histories of every other part of the coastal market, both Gulf and Atlantic, this is the time to secure a position in the market and to proceed to develop a resort style residential development that can begin to close sales in late 2018- 2019 and tap into the strong currents of demand within Texas and the surrounding region.

Our original opinions have not been weakened and have not changed. The fundamentals that supported our original conclusions have not changed. Future potential is actually marginally improved, if tradition holds.

Please let me know if I can shed further light on this issue. Sincerely,

*Ralph S Bowden*

Ralph S. Bowden President

11

ECOVEST-DOJ_0179880

# Table of Contents

Certification of Appraiser ........................................................................................................................ 14

Summary of the Appraisal ....................................................................................................................... 16

Assumptions and Limiting Conditions ................................................................................................... 17

Legal Descriptions and Maps .................................................................................................................. 20

INTRODUCTION ..................................................................................................................................... 38

Scope of the Assignment ......................................................................................................................... 39
    *Competency Provision* .......................................................................................................................... 41

*Identification of the Subject Property* .................................................................................................... 43

*Prior Sales History* ................................................................................................................................. 43

*Ownership* ............................................................................................................................................... 43

*Improvements* .......................................................................................................................................... 43

*Property Tax Information* ....................................................................................................................... 43

    *Neighborhood Data – The Texas Coastal Bend (Gulf of Mexico Coastline)* ...................................... 46

SECTION I ................................................................................................................................................. 60

APPRAISAL OF THE BEFORE VALUE ................................................................................................ 60

*Highest and Best Use Analysis:* ............................................................................................................. 61
    a)   *Legally Permissible* .......................................................................................................................... 63
    c)   *Financially Feasible* ......................................................................................................................... 63
    d)   *Maximally Productive* ....................................................................................................................... 64
    e)   *Sufficiency of Demand* ...................................................................................................................... 64
    *Conclusion* ......................................................................................................................................... 64

*Land Valuation:* ...................................................................................................................................... 67
    *Discounted Retail Sales Approach* ...................................................................................................... 67

*Estimate of the Before Value.* .................................................................................................................. 101

SECTION II ............................................................................................................................................... 102

APPRAISAL OF THE AFTER VALUE .................................................................................................... 102
    b)   *Physical possibility and suitability* .................................................................................................. 121
    c)   *Financial feasibility* .......................................................................................................................... 121
    d)   *Maximum productivity* ....................................................................................................................... 121

12

ECOVEST-DOJ_0179881

*Conclusion:* ........................................................................................................................................ *122*

*Land Valuation* .................................................................................................................................. *123*
    *Sales Comparison Approach* ........................................................................................................ *123*

*Estimate of the After Value:* ........................................................................................................... *132*

**Reconciliation** ................................................................................................................................ **138**

**Addenda** ........................................................................................................................................... **140**
    *Qualifications* ................................................................................................................................ *140*
    *License* ........................................................................................................................................... *140*
    *Deed and Title Documents* ........................................................................................................... *140*
    *Unit Plans* ...................................................................................................................................... *140*
    *Cost Estimates* ............................................................................................................................... *140*
    *Development Letters* ...................................................................................................................... *140*
    *Demographic Reports* .................................................................................................................... *140*
    *Mineral Assessment Report* .......................................................................................................... *140*
    *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue* ............................. *140*
    *Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal  Revenue* .......... *140*
    *Crystal Lagoon Information and Supporting Documents* ............................................................... *140*
    *Bowden Report – Before Scenario* ................................................................................................ *140*
    *Easement* ........................................................................................................................................ *140*
    *Baseline* .......................................................................................................................................... *140*

13

ECOVEST-DOJ_0179882

**Certification of Appraiser**

I certify that, to the best of my knowledge and belief:

1. I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal pursuant to Treasury Regulations Section 1.170A-13(c)(3)(ii)(F), I am qualified to make appraisals of real property encumbered by a conservation easement. I have not been barred from testifying before the IRS.

2. I have not been prohibited from practicing before the IRS by the Secretary under Section 330(c) of Title 31, United States Code, at any time during the three-year period ending on the date of the appraisal.

3. I am not a person described in Treasury Regulation 1.170A-13(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

4. The statements of fact contained in this report are true and correct.

5. The reported analyses, opinions, and conclusions limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

6. I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

7. My compensation is not contingent upon the reporting of a predetermined Fair Market Value or direction in Fair Market Value that favors the cause of the client, the amount of the Fair Market Value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised Fair Market Value of the property, nor has the fee in any way been contingent upon the appraised Fair Market Value.

8. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

9. I understand that a substantial or gross valuation misstatement resulting from an appraisal of the Fair Market Value of property that the appraiser knows, or reasonably should have known, to be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

10. I understand that an intentionally false or fraudulent overstatement of the Fair Market Value of the property described in this appraisal or appraisal summary may subject me to a civil penalty under Section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

14

ECOVEST-DOJ_0179883

Excerpts from Tortuga Trace Appraisal

11. I, Claud Clark III, have made a personal inspection of the Subject Property on January 18, 2019 and have developed the Fair Market Value.

12. No one provided significant real property appraisal assistance to the person signing this certification.

13. I have not prepared an appraisal of the Subject Property in the last five (5) years.

14. As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

15. To the knowledge of the undersigned, other than as provided in the subject easement and the farm lease, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including, for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

16. I am not closely related to the contemplated transaction and I will not receive a benefit in connection with the donation described herein.

Claud Clark III
State Certified General Real Property Appraiser
TX License #TX 1380003

15

ECOVEST-DOJ_0179884

Excerpts from Tortuga Trace Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Highway 1069, west of the town of Rockport in Aransas County, Texas. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the fair market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the fair market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 21, 2019 |
| **Date of Property Inspection:** | January 18, 2019 |
| **Date of Value Estimates:** | December 6, 2018 |
| **Date of Donation** | December 6, 2018 |
| **Property Rights Appraised:** | Before: Fee Simple Interest<br>After: Fee Simple Interest Subject to Easement |
| **Zoning:** | No zoning |
| **Site:** | 393.44 Acres |
| **Easement:** | 393.44 Acres |
| **Reserved:** | 10.36 Acre Building Zone located within the easement |
| **Total:** | 393.44 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before: Residential Development<br>After: Recreational / Green Space with a 10.36-acre Building Zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Claud Clark III, PC        EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request |

16

ECOVEST-DOJ_0179885

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Texas or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Claud Clark III, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.

The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

17

ECOVEST-DOJ_0179886

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Fair Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Fair Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Fair Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

18

ECOVEST-DOJ_0179887

Excerpts from Tortuga Trace Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Fair Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue, we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0179888

## Legal Descriptions and Maps

393.44 ACRES

THE STATE OF TEXAS}
THE COUNTY OF ARANSAS}

BEING a 393.44 acre tract of land situated in a portion of the William S. Tuten Survey, Abstract No. 202, out of and part of the C.B. Lucas Ranch Subdivision according to the established map or plat thereof as recorded in Volume 2, Page 7 of the Map Records, Aransas County, Texas, and being a portion out of a called 1107.81 acre tract of land described by General Warranty Deed dated March 23, 2007, conveyed from Tidwell Coastal Ranch, Ltd. to Waterfront Land Investments Fund I, L.P. as recorded in Instrument No. 290234 of the Official Public Records, Aransas County, Texas, said 393.44 acre tract being particularly described by metes and bounds as follows:

BEGINNING at a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." along the northwest line of Farm-to-Market No. 1069 (a Variable Width Right-of-Way – 80-foot minimum) and the southeast line of the aforesaid 1107.81 acre tract for the east corner of the herein described tract, from which a found 5/8" steel rebar marking the intersection of the northwest right-of-way line of said Farm-to-Market No. 1069 and the southwest line of Port Bay Club Road (a 60-foot Right-of-Way) and being the east corner of said 1107.81 acre tract bears North 28°57'52" East, a distance of 2740.23 feet;

THENCE, along the northwest right-of-way line of said Farm-to-Market No. 1069, with the southeast line of said 1107.81 acre tract, the following courses and distance

- South 29°59'20" West, a distance of 484.44 feet to a found 5/8" steel rebar with cap stamped "BRUNDRETT" marking an angle point along the common line of said 1107.81 acre tract and said Farm-to-Market No. 1069 for an angle point of the herein described tract;

- South 29°59'37" West, a distance of 626.04 feet to a found 5/8" steel rebar with cap marking an angle point along the common line of said 1107.81 acre tract and said Farm-to-Market No. 1069 for an angle point of the herein described tract;

- South 29°55'15" West, a distance of 1498.22 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking the south corner of the herein described tract;

THENCE, departing the northwest right-of-way of said Farm-to-Market No. 1069, over and across said 1107.81 acre tract, the following courses and distances:
- North 60°04'34" West, a distance of 121.34 feet to a point of tangency for the herein described tract;

- with a curve turning to the left having an arc length of 203.85 feet, with a radius of 811.41 feet, with a delta angle of 14°23'39", having a chord bearing of North 67°16'24" West, and a chord length of 203.31 feet to a point of tangency for the herein described tract;

- North 74°28'13" West, a distance of 225.06 feet to a point of curvature to the right for the herein described tract;

- with a curve turning to the right having an arc length of 220.03 feet, with a radius of 2257.91 feet, with a delta angle of 05°35'00", having a chord bearing of North 71°40'43" West, and a chord length of 219.94 feet to a point of tangency for the herein described tract;

1

20

ECOVEST-DOJ_0179889

- North 70°33'50" West, a distance of 439.98 feet to a point of curvature to the right for the herein described tract;

- with a curve turning to the right having an arc length of 109.97 feet, with a radius of 2110.82 feet, with a delta angle of 02°59'06", having a chord bearing of North 89°04'17" West, and a chord length of 109.95 feet to a point of compound curvature to the right for the herein described tract;

- with a compound curve turning to the right having an arc length of 327.62 feet, with a radius of 348.62 feet, with a delta angle of 54°09'16", having a chord bearing of North 40°30'06" West, and a chord length of 315.56 feet to a point of reverse curvature to the left for the herein described tract;

- with a reverse curve turning to the left having an arc length of 492.25 feet, with a radius of 349.99 feet, with a delta angle of 80°35'02", having a chord bearing of North 53°42'59" West, and a chord length of 452.67 feet to a point of tangency for the herein described tract;

- South 85°59'30" West, a distance of 443.41 feet to a point of curvature to the right for the herein described tract;

- with a curve turning to the right having an arc length of 219.98 feet, with a radius of 1785.56 feet, with a delta angle of 07°03'32", having a chord bearing of South 89°31'16" West, and a chord length of 219.84 feet to a point of compound curvature to the right for the herein described tract;

- with a compound curve turning to the right having an arc length of 274.62 feet, with a radius of 891.80 feet, with a delta angle of 17°38'36", having a chord bearing of North 76°07'40" West, and a chord length of 273.53 feet to a point of compound curvature to the right for the herein described tract;

- with a compound curve turning to the right having an arc length of 164.43 feet, with a radius of 197.20 feet, with a delta angle of 47°46'30", having a chord bearing of North 43°25'07" West, and a chord length of 159.71 feet to a point of compound curvature to the right for the herein described tract;

- with a compound curve turning to the right having an arc length of 111.26 feet, with a radius of 815.56 feet, with a delta angle of 07°48'59", having a chord bearing of North 17°37'22" West, and a chord length of 111.17 feet to a point of tangency for the herein described tract;

- North 13°42'52" West, a distance of 252.40 feet to a point of curvature to the left for the herein described tract;

- with a curve turning to the left having an arc length of 204.77 feet, with a radius of 234.18 feet, with a delta angle of 50°06'02", having a chord bearing of North 38°47'56" West, and a chord length of 198.31 feet to a point of tangency for the herein described tract;

- North 64°50'57" West, a distance of 223.34 feet to a point for the herein described tract;

- North 66°13'03" West, a distance of 219.99 feet to a point of curvature to the right for the herein described tract;

2

21

ECOVEST-DOJ_0179890

Excerpts from Tortuga Trace Appraisal

- with a curve turning to the right having an arc length of 219.91 feet, with a radius of 2084.65 feet, with a delta angle of 06°02'39", having a chord bearing of North 63°11'48" West, and a chord length of 219.81 feet to a point of tangency for the herein described tract;

- North 59°05'37" West, a distance of 110.00 feet to a point of curvature to the left for the herein described tract;

- with a curve turning to the left having an arc length of 220.01 feet, with a radius of 802.40 feet, with a delta angle of 15°42'34", having a chord bearing of North 66°56'54" West, and a chord length of 219.32 feet to a point of compound curvature to the left for the herein described tract;

- with a compound curve turning to the left having an arc length of 172.56 feet, with a radius of 1086.84 feet, with a delta angle of 09°05'37", having a chord bearing of North 79°20'59" West, and a chord length of 172.31 feet to a point of tangency for the herein described tract;

- North 83°53'48" West, a distance of 267.62 feet to a point of curvature to the left for the herein described tract;

- with a curve turning to the left having an arc length of 20.85 feet, with a radius of 596.99 feet, with a delta angle of 02°00'03", having a chord bearing of North 84°53'49" West, and a chord length of 20.85 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an exterior corner for the herein described tract;

- North 04°06'09" East, a distance of 150.00 feet to a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." marking an interior corner for the herein described tract;

- North 80°44'33" West, at a distance of 304.82 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 1144.82 feet to a point along the northwest line of said 1107.81 acre tract and being the approximate shoreline of Puerto Bay (a.k.a. Port Bay) for the west most corner of the herein described tract;

**THENCE**, along the northwest line of said 1107.81 acre tract, with the approximate shoreline of Puerto Bay (a.k.a. Port Bay), the following courses and distances:

- North 15°33'24" East, a distance of 117.09 feet to a point for the herein described tract;

- North 23°31'49" East, a distance of 118.54 feet to a point for the herein described tract;

- North 41°37'15" East, a distance of 148.42 feet to a point for the herein described tract;

- North 42°50'14" East, a distance of 140.42 feet to a point for the herein described tract;

- North 23°19'10" East, a distance of 226.28 feet to a point for the herein described tract;

- North 41°11'05" East, a distance of 180.17 feet to a point for the herein described tract;

- North 46°52'34" East, a distance of 165.03 feet to a point for the herein described tract;

- North 16°49'16" East, a distance of 85.71 feet to a point for the herein described tract;

3

22

ECOVEST-DOJ_0179891

- North 18°59'28" East, a distance of 109.57 feet to a point for the herein described tract;

- North 15°12'31" East, a distance of 412.56 feet to a point for the herein described tract;

- North 37°28'10" East, a distance of 748.66 feet to a point for the herein described tract;

- North 40°52'29" East, a distance of 201.14 feet to a point for the herein described tract;

- North 39°57'13" East, a distance of 122.90 feet to a point for the herein described tract;

- North 37°58'23" East, a distance of 174.34 feet to a point for the herein described tract;

- North 32°45'33" East, a distance of 301.69 feet to a point for the herein described tract;

- North 28°32'56" East, a distance of 151.97 feet to a point for the north corner of the herein described tract;

THENCE, South 60°00'18" East, over and across said 1107.81 acre tract, at a distance of 300.00 feet passing a set 5/8" steel rebar with yellow plastic cap stamped "URBAN SURVEYING, INC." for reference and continuing for a total distance of 5883.39 feet to the **POINT OF BEGINNING, CONTAINING** within these metes and bounds a 393.44 acre tract of land, more or less.

Basis of bearing is based on the Texas State Plane Coordinate System (NAD 83), South Central Zone (4204).

Reference is made to that Plat accompanying this Legal Description.

The foregoing legal description and accompanying survey plat were prepared from an actual survey made on the ground under my supervision in August, 2017 and are true and correct to the best of my knowledge and belief.

_____  09/26/2017

Urban Surveying, Inc.
By: Michael K. Williams
Registered Professional Land Surveyor
Texas No. 6616

S22090.02 - Tract 2: 393.44 Acres

4

23

ECOVEST-DOJ_0179892

Excerpts from Tortuga Trace Appraisal

Introduction

The cost approach to Fair Market Value utilizes reproduction or replacement cost.  This cost is often obtained from local sources and Marshall and Swift Valuation Service.  Cost developed is compared with local data.  Sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a Fair Market Value statement. The role of the income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that Fair Market Value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final Fair Market Value statement is developed which reflects the main elements of the data.  The merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 7.

The eighth and final step in an appraisal comprises reporting the findings to the client or reader. Report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

An appraisal is only an opinion of Fair Market Value, based on the information that can be uncovered during the time permitted. In the process, the appraiser will develop several Fair Market Value estimates, which he will weigh and finally correlate into a final Fair Market Value estimate or range of Fair Market Values, depending on the requirements of the assignment. An appraiser can only estimate Fair Market Value; he can examine the data and exercise his judgment to arrive at an educated opinion of Fair Market Value. It is not a fact. Scope and goal of the appraisal report are outlined at this point. Appraisal will include the accumulation of information, sales, neighborhood and area data, as they relate to Fair Market Value and the property rights, which are described in the report. The typical appraisal of minable properties involves one or two approaches.

In the following sections of the report, I have estimated the Fair Market Value of the Subject Property both before and after the donation of the easement utilizing all of the applicable approaches to Fair Market Value. Then, consistent with the principles of easement appraising, I have subtracted the estimated subject Fair Market Value after the easement from the estimated Fair Market Value before the easement, and then made a deduction to reflect the cost of constructing the additional space in the potential Subject Property before the easement. The result of this calculation is the estimated Fair Market Value of the easement.

Since the property is vacant land with underlying development Fair Market Value, we have used the sales comparison approach and the income approach to Fair Market Value. The Cost Approach was not considered.

Sales of property in the neighborhood and area will be collected and analyzed.  Sale properties accumulated share with the subject the highest and best use, which is generally comparable to that of the appraised subject. Obtainable comparable sales sometimes require expanding the search into nearby counties and gathering older data when no recent sales are available. We rely on creditable sources such

CLAUD CLARK III,

1193

40

ECOVEST-DOJ_0179909

Excerpts from Tortuga Trace Appraisal

Introduction

as local and county sites, real estate agents in the areas, and sites such as CoStar for comparable sale data; we have not personally inspected these sales.

The initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

The report is divided into three sections.

Section I of the report, which deals with the unencumbered fee estate.

Section II of the report, which deals with the encumbered fee estate.

Section III of the report, which deals with reconciliation.

Sales were drawn from the area.

Highest and Best Use of the 393.44-acre portion of the Subject Property is substantially limited once encumbered by easement. Development is now perpetually prohibited, except in designated building zones.

*Competency Provision*

Based on my experience in appraising similar properties, I have the required data and experience to complete this appraisal in accordance with the competency provision of the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Foundation.

I completed the Valuation of Conservation Easements Certificate Program.

I have prepared many conservation easement appraisals over the last twenty years.

Specific education relative to the assignment are:

The Income Approach, The Cost Approach, Highest and Best Use, Market Approach
Appraisal of Conservation Easements, Appraisal of Land

Intended User

The term "intended user" is defined by USPAP as: "The client and any other party as identified, by name or type, as users of the appraisal, appraisal review, or consulting report, by the appraiser based on communication with the client at the time of the assignment".

This appraisal has been prepared for Tortuga Trace, LLC, The IRS, and the client's tax advisors.

Intended Use

CLAUD  CLARK III,

1194

ECOVEST-DOJ_0179910

Excerpts from Tortuga Trace Appraisal

**Identification of the Subject Property**

The subject is located off Highway 1069, west of the town of Rockport in Aransas County, Texas. The site contains 393.44 acres.

*Prior Sales History*

The Subject is not currently listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found  no sales of the subject property within the past three years.  However, I am aware that the  majority equity owner of the entity that is the proposed donor of the conservation easement  affecting the subject property recently acquired its 95% ownership in that entity. I do not think  that a purchase of a membership interest in a partnership reflects the intent of the IRS Code.  (Note: A membership interest is not the sale of the property.) The seller of the property lacked  both the expertise and the resources to ascertain or command the maximum potential value of the  property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii)  Fair market value of property before and after restriction.  If before and after valuation is  used, the fair market value of the property before contribution of the conservation restriction  must take into account not only the current use of the property, but also an objective assessment  of how immediate or remote the likelihood is that the property, absent the restriction, would in  fact be developed, as well as any effect from zoning, conservation, or historic preservation laws  that already restrict the property's potential highest and best use.

*Ownership*

Tortuga Trace, LLC

*Improvements*

None

*Property Tax Information*

CLAUD  CLARK III,

ECOVEST-DOJ_0179912

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:              On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:               On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 393.44 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

CLAUD CLARK III,

1196

56

ECOVEST-DOJ_0179925

# Excerpts from appraisal of: Trout Creek

# Document ID: ECOVEST-DOJ_0224553

Excerpts from Trout Creek Appraisal

1

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington f
Certified General Real Property Appraiser

Writer's Email: Claud@ClarkAppraisals.com

January 23, 2012

Mr. Edmund Cash, Manager
Trout Creek, LLC
10 Long Branch Road
Spencer, TN, 38585

Dear Mr. Cash:

RE: Conservation Easement Trout Creek
Spencer, Tennessee
Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 20, 2011, and before the subject property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 154.3 | $7,077,000 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 20, 2011 is:

| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 154.3 | $350 | $54,000 |

There are two (2) building sites not owned by the entity granting the easement that are outside of the boundary of the easement. There is no enhancement issue to these building sites, as they are not owned by a related party, as defined by the IRS. The entire tract is eased and there is no contiguous land to be considered, and thus no enhancement value. These sites have no current access roads and are to be accessed via an easement provided by the property. See the legal description located in the report for a description of this easement.

The value of the easement gift as of December 20, 2011 is as follows and is based upon the before and after value.

| | | | |
|---|---|---|---|
| Fee Simple Interest        Before | 154.3 | | $7,077,000 |
| Less | | | |
| Fee Simple Interest with Encumbrance | 154.3 | $350 | $54,000 |
| Value of the Easement | | rounded | $7,023,000 |

CLARK ~ DAVIS, PC

2

ECOVEST-DOJ_0224554

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                          State Certified General Real Property Appraiser
TN License #4693

ECOVEST-DOJ_0224555

Table of Contents

**Certification** ...................................................................................................................6

**Summary of the Appraisal** ..........................................................................................7

**Assumptions and Limiting Conditions** ......................................................................8

**Legal Descriptions and Maps** ....................................................................................11

**INTRODUCTION:** .......................................................................................................18

   *Scope of the Assignment* .........................................................................................19

   *Competency Provision* ............................................................................................23

   *Appraisal of the Larger Parcel:* ...........................................................................24

   *Identification of the Subject Property* ...................................................................25
      Prior Sales History .......................................................................................25
      Ownership ......................................................................................................25
      Taxes ..............................................................................................................25
      Improvements ................................................................................................25

   *Neighborhood Data – Middle Tennessee* ...............................................................26

   *Van Buren County, TN Demographics* ...................................................................28

   *General Area Analysis:* ..........................................................................................31

**SECTION I.** ..................................................................................................................37

**APPRAISAL OF THE FEE SIMPLE INTEREST** .....................................................37

   *Highest and Best Use Analysis:* .............................................................................38
      a)   *Legally Permissible* .............................................................................39
      b)   *Physically Possible* ..............................................................................39
      c)   *Financially Feasible* ............................................................................39
      d)   *Maximally Productive* ..........................................................................40
      e)   *Sufficiency of Demand* .........................................................................40
      Conclusion .....................................................................................................40
      Hypothetical Condition .................................................................................40

   *Land Valuation:* ......................................................................................................41

**SECTION II** .................................................................................................................56

**APPRAISAL OF THE EASEMENT** ...........................................................................56

   *Highest and Best Use Analysis:* .............................................................................57
      a)   Legal permissibility .................................................................................58
      b)   Physical possibility and suitability ..........................................................58
      c)   Financial feasibility ................................................................................58
      d)   Maximum productivity ............................................................................58
      e)   Sufficiency of demand .............................................................................58
      Conclusion: ....................................................................................................59

   *Land Valuation:* ......................................................................................................60
      Sales Comparison Approach ........................................................................60

**Reconciliation** ............................................................................................................80

ECOVEST-DOJ_0224556

Excerpts from Trout Creek Appraisal

**Addenda**..................................................................................................................................**82**

    QUALIFICATIONS OF CLAUD CLARK III ...............................................................83

    License ......................................................................................................................85

    Planning Certificate...................................................................................................86

    Long Branch Lakes Amenities Use Agreement: .........................................................87

    Easement and Baseline Documents...........................................................................92

ECOVEST-DOJ_0224557

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III
TN License #4693

State Certified General Real Property Appraiser

CLARK ~ DAVIS, PC

6

ECOVEST-DOJ_0224558

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located near Spencer, Tennessee. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 23, 2012 |
| **Date of Value Estimates:** | December 20, 2011 |
| **Date of Donation** | December 20, 2011 |
| **Property Rights Appraised:** | Before:  Fee Simple Interest<br>After:   Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 154.3 Acres |
| **Easement:** | 154.3 Acres |
| **Reserved:** | 0 |
| **Total:** | 154.3 |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use<br>of Site as Though Vacant:** | Before: Residential Development<br>After:   Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0224559

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0224560

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0224561

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0224562

**Legal Descriptions and Maps**

LEGAL

The following is a description of the Trout Creek LLC property located in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB12 Page 702 and WD15 Page 956)

Beginning on a painted rock being the southwestern corner of the property herein described; thence going with the Walden Ridge LLC property N 08°39'13" E 1657.06 feet to a steel fence post; thence N 82°22'22" W 609.35 feet to a steel fence post; thence N 42°59'58" W 99.59 feet to the southern right-of-way of Land Branch Lane; thence leaving the Walden Ridge property and going with the said Lane N 85°28'01" E 51.33 feet; thence N 64°19'34" E 166.31 feet; thence N 66°56'02" E 103.69 feet; thence N 73°58'06" E 288.79 feet; thence N 75°02'38" E 137.92 feet; thence N 85°43'52" E 96.76 feet; thence S 84°24'30" E 59.50 feet; thence S 76°12'59" E 12.82 feet; thence S 68°01'29" E 83.61 feet; thence S 67°28'44" E 156.49 feet; thence S 77°26'33" E 84.53 feet; thence N 89°21'56" E 44.02 feet; thence leaving Long Branch Lane and going with The Village of Trout Creek S 00°21'52" E 575.06 feet; thence S 42°18'04" E 262.20 feet; thence S 71°57'20" E 213.44 feet; thence N 67°47'39" E 443.16 feet; thence N 42°10'02" E 21.47 feet to a point; thence S 89°07'27" E 58.56 feet; thence S 83°54'11" E 187.71 feet; thence S 86°26'44" E 177.14 feet; thence N 85°19'25" E 160.04 feet; thence N 88°41'36" E 118.60 feet to an iron pin; thence leaving the said Villages of Trout Creek and going with The Homesites of Trout Creek of Long Branch Lakes at Fall Creek Falls generally following the meanders of a creek S 25°44'32" E 196.57 feet; thence S 56°27'24" E 147.85 feet; thence S 06°54'10" W 178.88 feet; thence S 22°25'25" E 141.88 feet; thence S 77°59'33" E 181.04 feet; thence N 60°02'59" E 346.68 feet; thence S 61°46'43" E 126.96 feet; thence S 49°20'52" E 379.66 feet; thence N 44°25'10" E 151.27 feet; thence S 87°33'34" E 231.77 feet; thence N 84°03'51" E 284.32 feet; thence S 79°03'34" E 240.85 feet; thence S 65°08'10" E 218.01 feet; thence N 86°26'32" E 90.85 feet; thence S 42°31'04" E 144.23 feet; thence S 04°52'10" W 128.68 feet; thence S 55°58'57" E 247.04 feet to a point in the creek; thence leaving Trout Creek and going with The Homesites of The Lakes of Long Branch Lakes at Fall Creek Falls S 39°39'35" E 969.52 feet to an iron pin at the end of Camp Creek Drive; thence along a curve turning to the left having an arc length of 97.43 feet, and a radius of 50.00 feet, with a chord of S 27°56'38" E 82.73 to an iron pin; thence leaving Camp Creek Drive and continuing with The Lakes S 15°38'24" W 124.67 feet to an iron pin; thence leaving The Lakes and going with the aforementioned Walden Ridge LLC property N 81°36'02" W 5547.89 feet to the beginning being 159.30 acres as surveyed by Christopher M. Vick R.L.S. #2164 on 14 March 2001 (revised 26 June 2006).

ECOVEST-DOJ_0224563

**Less and Except the following Building Areas:**

**Building Area 1:**
Beginning on a painted rock being the southwestern corner of the Longbranch Lakes Property LLC (LBL) property; thence N 65°31'58" E 905.52 feet to the point of beginning being the northwestern corner of the tract herein described; thence running with the proposed road S 68°26'57" E 146.64 feet; thence S 80°53'15" E 64.04 feet to a point; thence leaving the said road and going with the remainder of the Longbranch Lakes property S 04°29'47" W 458.31 feet to a point; thence leaving LBL and going with the Walden Ridge LLC property N 81°36'02" W 324.88 feet to a point; thence leaving the Walden Ridge property and again running with the remainder of the LBL property N 18°25'23" E 499.03 feet to the beginning being 2.88 acres.

**Building Area 2:**
Beginning on a painted rock being the southwestern corner of the Longbranch Lakes Property LLC (LBL) property; thence N 26°29'19" E 1040.84 feet to the point of beginning being the southeastern corner of the tract herein described; thence running with the remainder of the Longbranch Lake property S 84°03'06" W 329.42 feet to a point; thence leaving LBL and going with the Walden Ridge LLC property N 08°39'13" E 469.85 feet to a point; thence leaving Walden Ridge property and running the southern edge of the proposed road S 42°16'17" E 351.05 feet; thence S 22°45'10" E 33.41 feet; thence S 03°14'04" E 140.01 feet to the beginning being 2.14 acres.

The above descriptions were derived from a master plan of the Trout Creek future development and have only been paper located and not physically surveyed by Vick Surveying LLC.

The following is a description of the easement through a portion of the Trout Creek LLC property located in the 3rd Civil District of Van Buren County, Tennessee. (Reference Warranty Deed Book RB12 Page 702)

**Easement Leading from Long Branch Lane to Building Area # 1 and 2.**
The following is a description of the center of a 50 foot wide easement; beginning on the southern edge of Long Branch Lane; thence running with the center of a proposed road S 10°40'22" E 370.75 feet; thence S 08°39'13" W 236.08 feet; thence along a curve having an arc length of 66.66 feet, with a radius of 75.00 feet, and a chord of S 16°48'32" E 64.49 feet; thence S 42°16'17" E 303.44 feet; thence along a curve having an arc length of 51.10 feet, with a radius of 75.00 feet, and a chord of S 22°45'10" E 50.12 feet; thence S 03°14'04" E 273.67 feet; thence S 23°53'10" E 234.21 feet; thence S 43°40'20" E 203.27 feet; thence S 68°26'57" E 253.00 feet; thence S 80°53'15" E 60.92 feet to a point in the center of the proposed road.

The above descriptions were derived from a master plan of the Trout Creek future development and have only been paper located and not physically surveyed by Vick Surveying LLC.

ECOVEST-DOJ_0224564

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining properties which are generally similar to the subject
which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for country type subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another feature of

ECOVEST-DOJ_0224573

Introduction

## Identification of the Subject Property

The subject property consists of one parcel located in Van Buren County, Tennessee. The site contains 154.3+- acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

Trout Creek, LLC

### Taxes



### Improvements

None

ECOVEST-DOJ_0224577

Excerpts from Trout Creek Appraisal

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":          On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 154.3 +- acres, of which approximately 154.3 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

CLARK ~ DAVIS, PC                                                          35

ECOVEST-DOJ_0224587

Excerpts from Tupelo Grove Appraisal

Excerpts from appraisal of:
Tupelo Grove

Document ID:
ECOVEST-DOJ_0167318

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Tupelo Grove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com


RE:   Conservation Easement Appraisal
      Tupelo Grove
      49.94-acre Tract, Horry County, South Carolina


Dear Mr. McCullough:


At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Strategic Solutions in valuing the Subject Property.  If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct.  No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions.  I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0167319

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 28, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 28, 2017 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 49.94 | $50,480,275 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 28, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value | 49.94 | $1,594,316 |

The value of the easement gift as of December 28, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 49.94 | $50,480,275 |
| Less | | |
| Total After Value (Encumbered) | 49.94 | $1,594,316 |
| **Value of the Easement** | rounded | **$48,886,000** |

The encumbered property also includes one (1) reserved residential building site, which allows for up to twenty attached or detached residential units.  While this site remains part of the eased

ECOVEST-DOJ_0167320

property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property. It should be noted that this lot is not a build ready lot and will incur some development costs to make it so. I have taken the Before value and divided it by the number of proposed units before the placement of the perpetual easement. This valuation takes into account developmental costs, as well as profit. This provided a per unit value of $84,134, which multiplied by the number of allowed units after the placement of the perpetual easement, creates an after value of the reserved site of $1,514,412, which will then be added to the After value of the property. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0167321

Excerpts from Tupelo Grove Appraisal

## Table of Contents

Certification ........................................................................................................................... 7

Summary of the Appraisal ...................................................................................................... 8

Assumptions and Limiting Conditions .................................................................................. 9

Legal Descriptions and Maps ............................................................................................... 12

INTRODUCTION: ................................................................................................................ 23

Scope of the Assignment ....................................................................................................... 24

*Competency Provision* ......................................................................................................... 29

*Appraisal of the Larger Parcel:* ......................................................................................... 30

*Identification of the Subject Property* ............................................................................... 31

*Prior Sales History* ............................................................................................................. 31

*The Subject is not listed for sale.* ....................................................................................... 31

*Ownership* ............................................................................................................................ 31

*Improvements* ...................................................................................................................... 31

*Taxes* .................................................................................................................................... 31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ................................. 34

SECTION I. ............................................................................................................................ 48

APPRAISAL OF THE BEFORE VALUE .............................................................................. 48

*Highest and Best Use Analysis:* .......................................................................................... 49
    a)    Legally Permissible .................................................................................. 50
    b)    Physically Possible ................................................................................... 50
    c)    Financially Feasible ................................................................................. 50
    d)    Maximally Productive .............................................................................. 51
    e)    Sufficiency of Demand ............................................................................ 51
    Conclusion .................................................................................................... 51

*Land Valuation:* .................................................................................................................. 54
    Discounted Retail Sales Approach ............................................................... 54

SECTION II. .......................................................................................................................... 85

APPRAISAL OF THE AFTER VALUE ................................................................................. 85
    a)    Legal permissibility ................................................................................. 102
    b)    Physical possibility and suitability ......................................................... 102
    c)    Financial feasibility ................................................................................. 102
    d)    Maximum productivity ............................................................................ 102
    e)    Sufficiency of demand ............................................................................ 103
    Conclusion: .................................................................................................. 103

*Land Valuation* ................................................................................................................... 104
    Sales Comparison Approach ........................................................................ 104

*Estimate of the After Value:* .............................................................................................. 111

ECOVEST-DOJ_0167322

**Reconciliation**..................................................................................................................**117**

**Addenda**..........................................................................................................................**119**

    Qualifications ...............................................................................................................119
    License .......................................................................................................................119
    Tupelo Grove Unit Plans...............................................................................................119
    Cost Estimates.............................................................................................................119
    Development Letters ....................................................................................................119
    Demographic Reports ..................................................................................................119
    Horry County Zoning Definition.....................................................................................119
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............119
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    .................................................................................................................................119
    Strategic Solutions Report – Before Scenario ..................................................................119
    Easement ....................................................................................................................119
    Baseline......................................................................................................................119

ECOVEST-DOJ_0167323

Excerpts from Tupelo Grove Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                        State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0167324

Excerpts from Tupelo Grove Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located at the intersection of River Oaks Drive and Portwest Drive in Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | October 12, 2017 |
| **Date of Value Estimates:** | December 28, 2017 |
| **Date of Donation** | December 28, 2017 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | PDD, Planned Development District |
| **Site:** | 49.94 Acres |
| **Easement:** | 49.94 Acres |
| **Reserved:** | One 3.5-acre Reserved Building Zone located within the easement |
| **Total:** | 49.94 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:      Residential Development<br>After:      Recreational / Green Space with a 3.5-acre Building Zone |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC      EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request. |

ECOVEST-DOJ_0167325

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted, and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0167326

Excerpts from Tupelo Grove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business-related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0167327

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements, and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0167328

**Legal Descriptions and Maps**

ALL AND SINGULAR that certain piece, parcel or tract of land, situate, lying and being in Horry County, South Carolina, containing 49.94 acres, more or less and being shown and described "New Parcel" on "Subdivision/Combination Survey of Carolina Waterway Plantation Tracts A & B, Phase IV & Tract A located at Myrtle Beach, Horry County, South Carolina" surveyed and mapped by Spartina Land Surveying dated October 27, 2017, recorded November 3, 2017 in the Office of the Register of Deeds for Horry County in Plat Book 278 at page 117, which plat is incorporated herein and made a part hereof by reference.

ECOVEST-DOJ_0167329

Excerpts from Tupelo Grove Appraisal

Area Data

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 49.94 acres.

There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)

ECOVEST-DOJ_0167342

Excerpts from Tupelo Grove Appraisal

Area Data

- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.

**Before and After Method of Valuation of a Conservation Easement**

The following was extracted from the IRS code and not only supports, but mandates an assessment of the property's highest and best use.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
**(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.**

The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution."

ECOVEST-DOJ_0167343

Excerpts from Tupelo Grove Appraisal

Area Data

## Identification of the Subject Property

The Subject Property is located at the intersection of River Oaks Drive and Portwest Drive in Myrtle Beach, Horry County, South Carolina. The site contains 49.94 acres.

### *Prior Sales History*

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years. However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### *Ownership*

Tupelo Grove, LLC

### *Improvements*

None

### *Taxes*

ECOVEST-DOJ_0167348

Excerpts from Tupelo Grove Appraisal

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:  On-Site: No; Adjacent: No
- Observed distressed vegetation:  On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:  On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 49.94 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0167362

# Excerpts from appraisal of: Turkey Creek Resort

# Document ID: ECOVEST-DOJ_0160558

Excerpts from Turkey Creek Resort Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 12, 2018

Turkey Creek Resort LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Turkey Creek Resort
      232.76 acres, Georgetown County, SC

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

Extraordinary Assumption: is defined by USPAP as: an assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

1

ECOVEST-DOJ_0160558

Hypothetical conditions and Extraordinary Assumptions:

*Hypothetical Condition: As of the date of value, the subject property is not encumbered with a conservation easement; however, it will be supposed in the valuation of the subject before encumbrance that the conservation easement does not exist and after encumbrance that the conservation easement does exist.*

*Hypothetical Condition: This appraisal is made under a hypothetical condition that certain improvements (as shown in the development plan) are made to the Subject Property that are assumed to be in place when, in fact, they are not.*

*Extraordinary Assumption: I have relied on a strategic planning market analysis from Ralph Stewart Bowden, Inc. in valuing the Subject Property. If those conclusions are found to be incorrect, this appraisal will be amended by the appraiser.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that all necessary permits (including those related to zoning) could be obtained to develop the property according to the development plan.*

*Extraordinary Assumption: As of the date of value, the appraisal was made under the assumption that the future ownership is not a related party to the current owner.*

The property information provided by the owners, representatives of the owners, and public sources is deemed to be accurate and correct. No guarantee is made regarding such information. Any changes to the facts, conditions, or assumptions relied upon in this appraisal may require review and result in changes to the analysis and conclusions. I reserve the right to review, and revise, if necessary, the analyses and conclusions.

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction. If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax

ECOVEST-DOJ_0160559

advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 18, 2017, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 18, 2017 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 232,76 | $41,188,091 |

The value of the Subject Property, subject to a perpetual conservation easement as of December 18, 2017 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value (Encumbered and Excluded) | 232.76 | $465,520 |

The value of the easement gift as of December 18, 2017 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 232.76 | $41,188,091 |
| Less | | |
| Total After Value (Encumbered) | 232.76 | $465,520 |
| **Value of the Easement** | rounded | **$40,723,000** |

The encumbered property also includes four (4) reserved residential building sites, which allow for the construction of one residence.  While these sites remain part of the eased property and are

ECOVEST-DOJ_0160560

subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement. It should be noted that these lots are not a build ready lot and will incur significant development costs to make them so, such as access, clearing, and utilities.  Due to these facts, and considering the expenses that would be required to develop the Subject's reserved sites and the restrictions of the easement, I have decided that these lots do not warrant an additional per acre value over that of the easement.  There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

Excluding the conservation easement, which is the subject of this appraisal report, to the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                         State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0160561

Table of Contents

Certification ........................................................................................................................... 7

Summary of the Appraisal ....................................................................................................... 8

Assumptions and Limiting Conditions .................................................................................... 9

Legal Descriptions and Maps ................................................................................................ 12

INTRODUCTION: .................................................................................................................. 26

Scope of the Assignment ....................................................................................................... 27

    *Competency Provision* ........................................................................................................ 32

    *Appraisal of the Larger Parcel:* ......................................................................................... 33

    *Identification of the Subject Property* ................................................................................ 34

    *Prior Sales History* ............................................................................................................ 34

    *The Subject is not listed for sale.* ...................................................................................... 34

    *Ownership* .......................................................................................................................... 34

    *Improvements* ..................................................................................................................... 34

    *Taxes* .................................................................................................................................. 34

    *Neighborhood Data – The Grand Strand (Coastal South Carolina)* ................................. 37

SECTION I. ........................................................................................................................... 49

APPRAISAL OF THE BEFORE VALUE ............................................................................... 49

    *Highest and Best Use Analysis:* ......................................................................................... 50

        a)   Legally Permissible ..................................................................................... 51

        b)   Physically Possible ...................................................................................... 51

        c)   Financially Feasible ..................................................................................... 51

        d)   Maximally Productive .................................................................................. 52

        e)   Sufficiency of Demand ................................................................................. 52

        Conclusion ........................................................................................................ 52

    *Land Valuation:* ................................................................................................................. 55

        Discounted Retail Sales Approach ................................................................... 55

SECTION II. .......................................................................................................................... 95

APPRAISAL OF THE AFTER VALUE ................................................................................... 95

        a)   Legal permissibility ................................................................................... 114

        b)   Physical possibility and suitability ............................................................ 114

        c)   Financial feasibility ................................................................................... 114

        d)   Maximum productivity ............................................................................... 114

        e)   Sufficiency of demand ............................................................................... 115

        Conclusion: ..................................................................................................... 115

    *Land Valuation* ................................................................................................................ 116

        Sales Comparison Approach ........................................................................... 116

    *Estimate of the After Value:* ............................................................................................ 123

ECOVEST-DOJ_0160562

**Reconciliation**.................................................................................................................**129**

**Addenda**.......................................................................................................................**130**

    Qualifications ............................................................................................................130
    License ......................................................................................................................130
    Turkey Creek Resort Unit Plans ................................................................................130
    Cost Estimates..........................................................................................................130
    Development Letters ..................................................................................................130
    Demographic Reports ...............................................................................................130
    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............130
    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue
    ......................................................................................................................................130
    Bowden Report – Before Scenario ............................................................................130
    Easement ..................................................................................................................130
    Baseline ....................................................................................................................130

ECOVEST-DOJ_0160563

Excerpts from Turkey Creek Resort Appraisal

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications (background, experience, education and membership in professional associations), I am qualified to make appraisals of real property such as that of the property which is being valued, both before and after being  encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0160564

Excerpts from Turkey Creek Resort Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The Subject Property is located at the intersection of Pennyroyal Road and Sunfish Street in Georgetown County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 12, 2018 |
| **Date of Inspection:** | October 12, 2017 |
| **Date of Value Estimates:** | December 18, 2017 |
| **Date of Donation** | December 18, 2017 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | PD, Planned Development District |
| **Site:** | 232.76 Acres |
| **Easement:** | 230.99 Acres |
| **Excluded:** | 1.77 Acres |
| **Reserved:** | Four Reserved Building Zones located within the easement |
| **Total:** | 232.76 Acres |
| **Improvements:** | None |
| **High and Best Use<br>of Site as Though Vacant:** | Before:    Residential Development<br>After:      Recreational / Green Space with four 2-acre Building Zones and six excluded lots totaling 1.77 acres |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC       EIN 63-1075275<br>SS# ***-**-1840 Will be provided to IRS upon request |

ECOVEST-DOJ_0160565

Excerpts from Turkey Creek Resort Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0160566

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0160567

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0160568

Excerpts from Turkey Creek Resort Appraisal

**Legal Descriptions and Maps**

REAL PROPERTY

All that certain piece, parcel or tract of land lying, being and situate in the County of Georgetown, State of South Carolina, shown and described on the plat recorded in the Office of the Register of Deeds for Georgetown County, South Carolina in Plat Book 639 at page 7. Said plat is incorporated herein by reference. Said tract of land is bordered on the North by lands now or formerly of Oliver F. Cooper, as shown on said plat; on the East by Turkey Creek the center of Turkey Creek noted as being the line, as shown on said plat; on the South by Pennyroyal Memorial Gardens and by Pennyroyal Road, as shown on said plat, and on the West by Sunfish Street, as shown on said plat.

ECOVEST-DOJ_0160569

Excerpts from Turkey Creek Resort Appraisal

Area Data

process is typically a part of the cost approach to value. Valuation of the land may also be processed through the Discounted Cash Flow Analysis (DCF) for those property types when the Highest and Best Use is development.  Comparable sales may be used, if applicable.

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 232.76 acres.

There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)

ECOVEST-DOJ_0160585

Excerpts from Turkey Creek Resort Appraisal

Area Data

- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find any in the normal course of business.  I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none.

**Before and After Method of Valuation of a Conservation Easement**

The following was extracted from the IRS code and not only supports, but mandates an assessment of the property's highest and best use.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)
**(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.**

The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution."

ECOVEST-DOJ_0160586

Area Data

## Identification of the Subject Property

The Subject Property is referred to as Turkey Creek Resort and is located at the intersection of Pennyroyal Road and Sunfish Street in Georgetown County, South Carolina. The site contains 232.76 acres.

### Prior Sales History

The Subject is not listed for sale.

In accordance with USPAP Standard 1-5, I conducted a search of the public records and found no sales of the subject property within the past three years.  However, I am aware that the majority equity owner of the entity that is the proposed donor of the conservation easement affecting the subject property recently acquired its 95% ownership in that entity. I do not think that a purchase of a membership interest in a partnership reflects the intent of the IRS Code. (Note: A membership interest is not the sale of the property.) The seller of the property lacked both the expertise and the resources to ascertain or command the maximum potential value of the property through the establishment of a plan for development that was maximally productive.

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

### Ownership

Turkey Creek Resort, LLC

### Improvements

None

### Taxes

ECOVEST-DOJ_0160591

Appraisal of the Before Value

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:      On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:           On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 232.76 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0160605

# Excerpts from appraisal of:
# Waterway Grove

# Document ID:
# ECOVEST-DOJ_0095500

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

Waterway Grove LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
      Waterway Grove, LLC
      30.41 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

ECOVEST-DOJ_0095500

Jurisdictional Exception is used when the IRS regulations, as promulgated by the Treasury Department and through Tax Court opinions, override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the regulations state:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust172,*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of December 28, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of December 28, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 30.41 | $61,631,524 |

2

ECOVEST-DOJ_0095501

Excerpts from Waterway Grove Appraisal

The value of the Subject Property, subject to a perpetual conservation easement as of December 28, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 30.41 | $198,656 |

The value of the easement gift as of December 28, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 30.41 | $61,631,524 |
| Less Total After Value (Encumbered) | 30.41 | $198,656 |
| **Value of the Easement** | rounded | **$61,433,000** |

The encumbered property also includes one (1) reserved building for either one residence or one resort. While this site remains part of the eased property and is subject to the rules and restrictions of the easement, it does maintain limited building rights, as defined by the easement, and therefore, requires an additional value over that of the per acre value of the encumbered property.  It should be noted that the lot is not a build ready lot and will incur some development costs to make it so. The site will be constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to

ECOVEST-DOJ_0095502

the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0095503

## Table of Contents

**Certification** .................................................................................................................................................7

**Summary of the Appraisal** .............................................................................................................................8

**Assumptions and Limiting Conditions** .........................................................................................................9

**Legal Descriptions and Maps** .....................................................................................................................12

**INTRODUCTION:** ........................................................................................................................................23

**Scope of the Assignment** ..............................................................................................................................24

*Competency Provision* ....................................................................................................................................28

*Appraisal of the Larger Parcel:* ....................................................................................................................29

*Identification of the Subject Property* ............................................................................................................30

*Prior Sales History* .........................................................................................................................................30

*Ownership* ......................................................................................................................................................30

*Improvements* .................................................................................................................................................30

*Taxes* ...............................................................................................................................................................30

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ...............................................................32

**SECTION I** ...................................................................................................................................................52

**APPRAISAL OF THE BEFORE VALUE** .....................................................................................................52

*Highest and Best Use Analysis:* ......................................................................................................................53
   a)     Legally Permissible .............................................................................................................54
   b)     Physically Possible .............................................................................................................54
   c)     Financially Feasible ...........................................................................................................54
   d)     Maximally Productive ........................................................................................................55
   e)     Sufficiency of Demand .......................................................................................................55
   Conclusion ...........................................................................................................................................55

*Land Valuation:* ..............................................................................................................................................56
   Discounted Retail Sales Approach .......................................................................................................56

**SECTION II** .................................................................................................................................................132

**APPRAISAL OF THE AFTER VALUE** ......................................................................................................132

*Highest and Best Use Analysis:* ....................................................................................................................148
   a)     Legal permissibility ...........................................................................................................149
   b)     Physical possibility and suitability .....................................................................................149
   c)     Financial feasibility ............................................................................................................149
   d)     Maximum productivity .......................................................................................................149
   e)     Sufficiency of demand ........................................................................................................149
   Conclusion: ...........................................................................................................................................150

*Land Valuation* ..............................................................................................................................................151
   Sales Comparison Approach ..................................................................................................................151

*Estimate of the After Value:* ..........................................................................................................................156

**Reconciliation** .............................................................................................................................................162

ECOVEST-DOJ_0095504

Excerpts from Waterway Grove Appraisal

**Addenda**..........................................................................................................................................**163**

    Qualifications ...........................................................................................................................163

    License .....................................................................................................................................163

    Waterway Grove Unit Plans.....................................................................................................163

    Cost Estimates.........................................................................................................................163

    Development Letters .................................................................................................................163

    Demographic Reports ..............................................................................................................163

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............163

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ..................................................................................................................................................163

    Crystal Lagoon Information and Supporting Documents ...........................................................163

    Bowden Report – Before Scenario............................................................................................163

    Easement .................................................................................................................................163

    Baseline ...................................................................................................................................163

ECOVEST-DOJ_0095505

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis.  Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.  Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.  I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                                    State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0095506

Excerpts from Waterway Grove Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located south of Carolina Bays Pkwy and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | December 28, 2016 |
| **Date of Donation** | December 28, 2016 |
| **Property Rights Appraised:** | Before:      Fee Simple Interest<br>After:       Fee Simple Interest Subject to Easement |
| **Zoning:** | R4 (Resort Residential) and R-4I (Inland Multi-Family Residential) |
| **Site:** | 30.41 Acres |
| **Easement:** | 30.41 Acres |
| **Reserved:** | One Residential Building Site |
| **Total:** | 30.41 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:      Residential Development<br>After:       Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC         EIN 63-1075275 |

ECOVEST-DOJ_0095507

Excerpts from Waterway Grove Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

<u>Limited Publication, Distribution, and Use of This Report</u>

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

<u>Limited Disclosure to the Public through the Media</u>

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

<u>Limited Disclosure of the Report by the Appraiser</u>

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

<u>Information Furnished is Assumed to be Accurate</u>

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

<u>Limited Use of Exhibits</u>

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

<u>No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions</u>

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0095508

Excerpts from Waterway Grove Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

## Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

## Limited Use of Component Values

The distribution of the total value in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

## Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

## Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

## Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

## Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0095509

Excerpts from Waterway Grove Appraisal

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0095510

**Legal Descriptions and Maps**

## LEGAL DESCRIPTION

ALL THAT CERTAIN PARCEL AS SHOWN ON PLAT ENTITLED BOUNDARY / SUBDIVISION SURVEY OF A PORTION OF PERMENTER BROTHERS HOLDINGS, LLC FOR PERMENTER BROTHERS HOLDINGS, LLC DATED AUGUST 28, 2015, BY THE BRIGMAN COMPANY AND IN PLAT BOOK 267, PAGE 264.

BEGINNING AT A POINT ON THE NORTH WESTERN CORNER OF SAID PARCELAND POINT BEING MARKED BY HAVING 5/8" IRON REBAR SET AND HAVING SC STATE PLANE COPRDINATES OF N 735,341.72 E 2,697,173.54

THENCE A LINE BOUNDED TO THE NORTH BY PARCEL NOW OR FORMERLY OWNED BY CAMILLIA STATION, LLC TO THE SOUTH BY SUBJECT TRACT, THE FOLLOWING BEARINGS AND DISTANCES:

N 66°34'26" E 29.56'
N 68°19'38" E 857.13' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE EAST BY LANDS NOW OR FORMERLY OWNED BY SEA VISTA RESORT, LLC AND BOUNDED TO THE WEST BY SUBJECT TRACT THE FOLLOWING BEARING AND DISTANCE:

S 23°32'26" E 1504.12' TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE SOUTH BY THE ATLANTIC INTRACOASTAL WATERWAY AND BOUNDED TO THE NORTH BY THE FOLLOWING BEARINGS AND DISTANCES:

S 69°29'18" W 448.09' TO 5/8" IRON REBAR SET
S 69°29'11" W 439.39 TO 5/8" IRON REBAR SET

THENCE A LINE BOUNDED TO THE WEST BY ARCADIAN QUAY, LLC AND BOUNDED TO THE EAST BY THE SUBJECT PROPEPTY THE FOLLOWING BEARING AND DISTANCE:

N 23°32'26" W 1485.24 TO 5/8" IRON REBAR SET

THENCE BACK TO SAID POINT OF BEGINNING.  TRACT CONTAINS 30.41 ACRES.

ECOVEST-DOJ_0095511

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources, RS Means, and The Marshall and Swift Valuation Service.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 30.41 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0095524

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0095525

Excerpts from Waterway Grove Appraisal

**Identification of the Subject Property**

The subject is located south of Carolina Bays Pkwy and north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 30.41 acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Waterway Grove, LLC

*Improvements*

None

*Taxes*

ECOVEST-DOJ_0095529

Site Data

- The physical inspection of the Subject Property provided no indications of environmental issues concerning the property.  However, the appraiser is not trained in the detection of such materials.
- For the purpose of this assignment, no known environmental issues, problems, or costs are assumed to affect the subject.  This is an assumption of the appraisal. **Please review the limiting conditions section of this report concerning the environmental disclaimer in this report.**
- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:          On-Site: No; Adjacent: No
- Observed distressed vegetation:          On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:          On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 30.41 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0095542

# Excerpts from appraisal of: White Oak Equestrian

# Document ID: ECOVEST-DOJ_0225003

Excerpts from White Oak Equestrian Appraisal

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

* Certified in AL, FL, MS, GA, CO
† Certified in AL, GA

Writer's Email:   Claud@ClarkAppraisals.com

January 24, 2012

Mr. Edmund Cash, Manager
White Oak Equestrian, LLC
P.O. Box 2579
Rome, GA 30165

Dear Mr. Cash:

RE:   Conservation Easement White Oak Equestrian
      Dade County, Georgia
      Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
      Market Value of the Easement Gift

Dear Mr. Cash:

At your request, I have conducted the inspections, investigations, and complete analysis
necessary to appraise the above referenced real property. The appraisal is a Summary Report
presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional
Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and
Limiting Conditions contained within this report. This report has been prepared, to the best of
my knowledge, to the standards and requirements of the Internal Revenue Service. The definition
of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market
value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which
the property would change hands between a willing buyer and a willing seller, neither being
under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual
conservation easement for federal income tax purposes. The intended users are the donors and
the IRS for the purpose of estimating the fair market value of an easement donated to the:

ECOVEST-DOJ_0225003

Excerpts from White Oak Equestrian Appraisal

North American Land Trust
100 Hickory Hill Road
P.O. Box 467
Chadds Ford, PA 19317

I made a study of the parcel that is legally described in the easement documents for estimating the *market value* of the *fee simple ownership interest*, *"before"* and *"after"* the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2011, and before the subject property is encumbered by the easement is as follows:

| | Acres | FMV |
|---|---|---|
| Fee Simple Interest | 231.1 | $4,853,188 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2011 is:

| | | | |
|---|---|---|---|
| Fee Simple Interest with Encumbrance | 227.1 | $1000 | $227,100 |

The subject property has two (2) reserved home sites. While the home sites cannot claim ownership of the conservation easement area, they can enjoy the privacy that the easement presents. A similar instance is a golf course fronting lot. Typically, these lots offer a better view and privacy on one side of the lot. I have compared the golf course lots to non-golf course lots. The premium paid has ranged from 5 to 20%. I have also analyzed lots out west that abut state lands or parks. These tracts also sell for a premium in the range of 10 to 20%. For these reasons, I am applying a 20% enhancement to the reserved lots.

The value of the easement gift as of December 30, 2011 is as follows and is based upon the before and after method.

ECOVEST-DOJ_0225004

Excerpts from White Oak Equestrian Appraisal

| | | | |
|---|---|---|---|
| Fee Simple Interest | Before | 231.1 | $4,853,188 |
| Less | | | |
| Fee Simple Interest with Encumbrance | | 227.1 | $1000 | $227,100 |
| Less | | | |
| Two Lots with Enhancement | | | $96,000 |
| Value of the Easement | | rounded | $4,530,088 |

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.

Respectfully submitted

Claud Clark III                    State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0225005

## Table of Contents

**Certification** ................................................................................................................ 6

**Summary of the Appraisal** ........................................................................................ 7

**Assumptions and Limiting Conditions** .................................................................... 8

**Legal Descriptions and Maps** ................................................................................. 11

**INTRODUCTION:** .................................................................................................. 18

   *Scope of the Assignment* ...................................................................................... 19

   *Competency Provision* .......................................................................................... 23

   *Appraisal of the Larger Parcel:* .......................................................................... 24

   *Identification of the Subject Property* ................................................................. 25
      Prior Sales History ....................................................................................... 25
      Ownership .................................................................................................... 25
      Improvements .............................................................................................. 25

   *General Area Analysis:* ........................................................................................ 26

   *Neighborhood Data – Chattanooga, TN* ............................................................. 29

   *Chattanooga, TN Demographics* ........................................................................ 32

**SECTION I** ............................................................................................................... 40

**APPRAISAL OF THE FEE SIMPLE INTEREST** ................................................ 40

   *Highest and Best Use Analysis:* ........................................................................... 41
      *a)*    *Legally Permissible* ......................................................................... 42
      *b)*    *Physically Possible* .......................................................................... 42
      *c)*    *Financially Feasible* ......................................................................... 42
      *d)*    *Maximally Productive* ...................................................................... 43
      *e)*    *Sufficiency of Demand* ..................................................................... 43
      Conclusion ................................................................................................... 43
      Hypothetical Condition ................................................................................ 43

   *Land Valuation:* ................................................................................................... 44

**SECTION II** .............................................................................................................. 62

**APPRAISAL OF THE EASEMENT** ....................................................................... 62

      a)    Legal permissibility ........................................................................... 65
      b)    Physical possibility and suitability .................................................... 65
      c)    Financial feasibility ........................................................................... 65
      d)    Maximum productivity ...................................................................... 65
      e)    Sufficiency of demand ....................................................................... 65
      Conclusion: .................................................................................................. 66

   *Land Valuation:* ................................................................................................... 67
      Sales Comparison Approach ........................................................................ 67

**Reconciliation** ......................................................................................................... 88

**Addenda** ................................................................................................................... 90

Excerpts from White Oak Equestrian Appraisal

*QUALIFICATIONS OF CLAUD CLARK III*.................................................................................................*91*

*License*.........................................................................................................................................*93*

*Planning Certificate*....................................................................................................................*94*

*Easement and Baseline Documents*.............................................................................................*95*

ECOVEST-DOJ_0225007

## Certification

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the subject property, and have participated in the Final Market analysis and conclusions of this report.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III    State Certified General Real Property Appraiser
GA License #322927

ECOVEST-DOJ_0225008

## Summary of the Appraisal

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located in Dade County, Georgia. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 24, 2012 |
| **Date of Value Estimates:** | December 30, 2011 |
| **Date of Donation** | December 30, 2011 |
| **Property Rights Appraised:** | Before:   Fee Simple Interest<br>After:     Fee Simple Interest Subject to Easement |
| **Zoning:** | None |
| **Site:** | 231.1 Acres |
| **Easement:** | 227.1 Acres |
| **Reserved:** | Two 2-acre Building Sites |
| **Total:** | 231.1 Acres |
| **Improvements:** | Jeep/ATV Trails |
| **High and Best Use<br>of Site as Though Vacant:** | Before: Residential Development<br>After:    Hunting or Recreational Use |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of<br>Clark ~ Davis, PC            EIN 63-1075275 |

ECOVEST-DOJ_0225009

Excerpts from White Oak Equestrian Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES*
*ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of Tennessee or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0225010

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0225011

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved subject property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved subject property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0225012

Excerpts from White Oak Equestrian Appraisal

Introduction

**Legal Descriptions and Maps**

A Tract of land lying and being in the SE ¼ of Land Lot No. 138, Land Lot No. 139, and the east 20 acres of Land Lot 141, in the 18th District and 4th Section of Dade County, Georgia, being more particularly described as follows; (Reference Deed Book 281 Pg 328 and 330 and Deed Book 337 Pg 163)

Beginning at the Southeast corner of said land lot 142; Thence with the South Line of said Land Lots 142 and 141, S 89° 12' 55" W, 3002.42 feet a point on the South line of Land Lot 141.

Thence, N 00°34'49" W, 2783.39 feet to a point on the North line of said Land Lot 141.

Thence, with the North Line of said Land Lots 141 and 142, S 88° 51' 48" E, 1699.46 feet the SW corner of the SE ¼ of said land lot 138.

Thence, with the West Line of said SE ¼, N00° 57'26"E, 1293.09 feet to the NW corner of said SE ¼.

Thence, with the North Line of said SE ¼, S89° 38'01"E, 1361.61 feet to the NE corner of said SE ¼.

Thence, with the East Line of said SE ¼ and said Land Lot 142, S 00° 44'46" W, 3992.94 feet to the Point of Beginning. (containing 231.1 acres more or less)

ECOVEST-DOJ_0225013

Excerpts from White Oak Equestrian Appraisal

Introduction

The appraised subject consists of undeveloped land. There are several methods of valuing vacant land.

- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach. In searching the market Area, emphasis will be placed on obtaining properties which are generally similar to the subject which have sold during the recent past.

The attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

Discounted Cash Flow

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Mountain Lots). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest. These type of properties are best evaluated using a DCF method.

The land residual method is an income approach using a discounted cash flow (DCF). In a DCF income and expenses are determined over a sellout period.

The first step is to estimate the retail value of the lots and the absorption of those lots under current market conditions.

I am using the land residual method to estimate the fair market value of the Subject Property. The Subject Property is located in an area that has become popular for outdoor recreation oriented subdivisions that offer amenities such as lakes, horseback riding, hiking, varying lot sizes and wooded vistas. In order to accommodate these features, the land has to have suitable characteristics for lake development such as a valley with level to moderately sloping land for home and amenity construction. Additionally, access to main line utilities is important. Another

CLARK ~ DAVIS, PC

21

ECOVEST-DOJ_0225023

Excerpts from White Oak Equestrian Appraisal

## Identification of the Subject Property

The subject property consists of one parcel located in Dade County, Georgia. The site contains 231.1+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

White Oak Equestrian, LLC

*Taxes*



*Improvements*

None

ECOVEST-DOJ_0225027

Excerpts from White Oak Equestrian Appraisal

Site Data

|  |  | On-Site: No; Adjacent: No |
| --- | --- | --- |
| • | Observed staining of soils: | On-Site: No; Adjacent: No |
| • | Observed distressed vegetation: | On-Site: No; Adjacent: No |
| • | Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk": | On-Site: No; Adjacent: No |
| • | Observed noticeable odors: | On-Site: No; Adjacent: No |

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the subject property.*
*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the subject property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the subject property, as it is vacant land.

Conclusion:

The subject property consists of approximately 231.1 +- acres, of which approximately 231.1 +- acres are effectively usable land.

The shape and topography of the subject property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0225040

# Excerpts from appraisal of: White Sands Village

# Document ID: ECOVEST-DOJ_0056022

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

January 2, 2017

White Sands Village, LLC
C/O
Bob McCullough
EcoVest Capital, Inc.
Monarch Tower
3424 Peachtree Rd, NE, Suite 1550
Atlanta Ga. 30346
bmccullough@ecovestcap.com

RE:   Conservation Easement Appraisal
White Sands Village, LLC
181.2 acre tract, Horry County, South Carolina

Dear Mr. McCullough:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is an Appraisal Report presented in accordance with Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of fair market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the USPAP, the Standards of Professional Appraisal Practice of the Appraisal Institute and the requirements of the State of South Carolina for certified appraisers.

This appraisal is made under a hypothetical condition that certain improvements are made to the Subject Property that are assumed to be in place when in fact they are not.

Hypothetical Condition is defined as: a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

1

ECOVEST-DOJ_0056022

Jurisdictional Exception is used when the IRS Code as promulgated by the Treasury Department and through Tax Court opinions to override USPAP. This is primarily used as the standard relating to the Highest and Best Use in which the Code states:

§ 1.170A-14 26 CFR Ch. I (4-1-03 Edition)

(ii) Fair market value of property before and after restriction.  If before and after valuation is used, the fair market value of the property before contribution of the conservation restriction must take into account not only the current use of the property, but also an objective assessment of how immediate or remote the likelihood is that the property, absent the restriction, would in fact be developed, as well as any effect from zoning, conservation, or historic preservation laws that already restrict the property's potential highest and best use.

This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth-in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended user recognizes that any information furnished by the appraiser does not constitute investment, accounting, legal or tax advice. The intended user is not relying on the appraiser with respect to the economic or tax considerations of intended user relating to an investment, in particular the possibility of the intended user receiving a charitable deduction. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

I made a study of the parcel that is legally described in the easement documents for estimating the ***fair market value*** of the ***fee simple ownership interest***, ***"before"*** and ***"after"*** the establishment of a perpetual Conservation Easement thereon**.**

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the fair market value of the fee simple interest of the Subject Property as of November 21, 2016, and before the Subject Property is encumbered by the easement is as follows:

The Fee Simple value of the Subject Property as of November 21, 2016 is:

| Unencumbered | Acres | FMV |
|---|---|---|
| Before Value | 181.2 | $77,492,023 |

ECOVEST-DOJ_0056023



The value of the Subject Property, subject to a perpetual conservation easement as of November 21, 2016 is:

| Encumbered | Acres | FMV |
|---|---|---|
| Total After Value – Land and Reserved Sites | 181.2 | $889,920 |

The value of the easement gift as of November 21, 2016 is as follows and is based upon the before and after value method.

| | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 181.2 | $77,492,023 |
| Less Total After Value (Encumbered) | 181.2 | $889,920 |
| **Value of the Easement** | rounded | **$76,602,000** |

The encumbered property also includes one (1) reserved recreational building site and up to three (3) reserved residential building sites or up to three (3) reserved resort building sites, for a total of four (4) reserved sites. While these sites remain part of the eased property and are subject to the rules and restrictions of the easement, they do maintain limited building rights, as defined by the easement, and therefore, require an additional value over that of the per acre value of the encumbered property. It should be noted that these lots are not build ready lots and will incur some development costs to make them so. All of these sites will constructed within the noted Building Zone. There is no enhancement.

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the

ECOVEST-DOJ_0056024

Excerpts from White Sands Village Appraisal

donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted

_Claud Clark III_

Claud Clark III                                State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0056025

Excerpts from White Sands Village Appraisal

## Table of Contents

Certification ................................................................................................................................... 7

Summary of the Appraisal ............................................................................................................. 8

Assumptions and Limiting Conditions ......................................................................................... 9

Legal Descriptions and Maps ...................................................................................................... 12

INTRODUCTION: ...................................................................................................................... 24

Scope of the Assignment ............................................................................................................. 25

*Competency Provision* ................................................................................................................ 29

*Appraisal of the Larger Parcel:* ................................................................................................ 30

*Identification of the Subject Property* ...................................................................................... 31

*Prior Sales History* .................................................................................................................... 31

*Ownership* ................................................................................................................................... 31

*Improvements* .............................................................................................................................. 31

*Taxes* ........................................................................................................................................... 31

*Neighborhood Data – The Grand Strand (Coastal South Carolina)* ....................................... 34

SECTION I ................................................................................................................................... 53

APPRAISAL OF THE BEFORE VALUE ................................................................................... 53

*Highest and Best Use Analysis:* ................................................................................................ 54
  a)   Legally Permissible ............................................................................................................ 55
  b)   Physically Possible ............................................................................................................ 55
  c)   Financially Feasible ........................................................................................................... 55
  d)   Maximally Productive ........................................................................................................ 56
  e)   Sufficiency of Demand ...................................................................................................... 56
  Conclusion ............................................................................................................................... 56

*Land Valuation:* .......................................................................................................................... 57
  Discounted Retail Sales Approach .......................................................................................... 57

SECTION II .................................................................................................................................. 112

APPRAISAL OF THE AFTER VALUE ...................................................................................... 112

*Highest and Best Use Analysis:* ................................................................................................ 128
  a)   Legal permissibility ........................................................................................................... 129
  b)   Physical possibility and suitability .................................................................................... 129
  c)   Financial feasibility ........................................................................................................... 129
  d)   Maximum productivity ...................................................................................................... 129
  e)   Sufficiency of demand ....................................................................................................... 129
  Conclusion: .............................................................................................................................. 130

*Land Valuation* ........................................................................................................................... 131
  Sales Comparison Approach .................................................................................................... 131

*Estimate of the After Value:* ...................................................................................................... 136

Reconciliation ............................................................................................................................... 142

ECOVEST-DOJ_0056026

**Addenda**.................................................................................................................................**143**

    Qualifications ................................................................................................................... 143

    License .............................................................................................................................. 143

    White Sands Village Unit Plans ....................................................................................... 143

    Cost Estimates .................................................................................................................. 143

    Development Letters ......................................................................................................... 143

    Demographic Reports ....................................................................................................... 143

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............ 143

    Kiva Dunes Conservation, LLC, E. A. Drummond, Tax Matters Partner v. Commissioner of Internal Revenue

    ................................................................................................................................... 143

    Crystal Lagoon Information and Supporting Documents ................................................. 143

    Bowden Report – Before Scenario .................................................................................. 143

    Easement .......................................................................................................................... 143

    Baseline ............................................................................................................................ 143

ECOVEST-DOJ_0056027

## *Certification*

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- No one provided significant real property appraisal assistance to the person signing this report.

- I am not, nor have I ever been, barred from practicing or testifying before the IRS.

- I have not prepared an appraisal of the Subject Property in the last five (5) years.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, I, Claud Clark III, have completed the Standards and Ethics Education Requirements for Practicing Affiliates of the Appraisal Institute.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                         State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0056028

Excerpts from White Sands Village Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located off Coates Road, south of Highway 90 and west of Champions Blvd.  It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | January 2, 2017 |
| **Date of Value Estimates:** | November 21, 2016 |
| **Date of Donation** | November 21, 2016 |
| **Property Rights Appraised:** | Before:    Fee Simple Interest<br>After:    Fee Simple Interest Subject to Easement |
| **Zoning:** | R2A Resort Residential |
| **Site:** | 181.2 Acres |
| **Easement:** | 181.2 Acres |
| **Reserved:** | Four (4) reserved building sites; 1 recreational, and up to 3 residential or up to 3 resort |
| **Total:** | 181.2 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:    Residential Development<br>After:    Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC          EIN 63-1075275 |

ECOVEST-DOJ_0056029

Excerpts from White Sands Village Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b) (4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0056030

Excerpts from White Sands Village Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

### Value Limited to Legal Uses

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

### Limited Use of Component Values

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

### Limited Access to Auxiliary and Related Studies

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

### Value Limited to Real Estate Unless Otherwise Specified

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

### Limitations of a Value Estimate in a Dynamic Market

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

### Competent Management Assumed

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0056031

**Assumptions for Proposed Improvements**

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c.  Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

**Currency Basis**

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

**Word Case**

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

**Limitation of Data Used**

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

**The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

**Hazardous Waste**

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0056032

Excerpts from White Sands Village Appraisal

**Legal Descriptions and Maps**

Legal Description - White Sands Village

All and singular that certain piece, parcel or tract of land lying and situate in the City of North Myrtle Beach, Horry County, South Carolina and being referenced a plat entitled "Map of 181.20 ± Total Acres - Boundary, Subdivision & Combination Plat" prepared for White Sands Village, LLC by DDC Engineers, Inc. dated May 23, 2016 and being more particularly described as follows:

Beginning at a 1/2" iron pipe located on the southern right-of-way of S. C. Highway 90 and being the common corner between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and a 66' Road Easement; thence with the southern right-of-way of  S. C. Highway #90, S 65°00'47" E, 69.27' to a 1/2" iron pipe being the common corner between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and a 66' Road Easement; thence with said parties common line and easement the following metes and bounds; S 22°40'39" W, 1183.64' to a 1/2" iron pipe; thence S 26°00'50" W, 624.31' to a 1/2" iron pipe; thence with the common line between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson; S 72°16'30" E, 986.94' to a 1/2" iron pipe being the common corner between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and William E. Gore, III; thence with the common line between SLF IV / SBI Sandridge, LLC and William E. Gore, III the following metes and bounds; S 17°47'02" W, 682.98' to a 1 1/2" iron pipe; thence S 64°30'16" E, 962.94' to a 1/2" rebar; thence with the common line of SLF IV / SBI Sandridge, LLC the following metes and bounds; S 25°29'21" W, 919.51' to a 1/2" rebar; thence S 73°37'12" W, 208.26' to a 1/2" rebar; thence S 31°23'15" W, 268.48' to a 1/2" rebar; thence S 65°55'52" W, 234.86' to a 1/2" rebar; thence S 47°29'23" W, 677.15' to a 1/2" rebar; thence S 71°07'18" W, 172.96' to an angle iron being the common corner between SLF IV / SBI Sandridge, LLC and Grand Strand Water & Sewer Authority; thence with said parties common line the following metes and bounds, S 84°03'11" W, 233.59' to an angle iron; thence S 87°44'59" W, 161.98' to an angle iron; thence S 76°25'08" W, 215.36' to an angle iron; thence S 77°51'54" W, 209.46' to an angle iron; thence S 83°51'23" W, 112.24' to an angle iron; thence S 60°08'36" W, 1560.56' to a 1/2" rebar; thence with the common line of SLF IV / SBI Sandridge, LLC, N 20°37'12" E, 4518.41' to a 1/2" rebar being the common corner between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson; thence with said parties common line, S 72°14'36" E, 662.26' to a 1/2" iron pipe also being the common corner of a 66' Road Easement; thence with the common line between SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and a 66' Road Easement the following metes and bounds, N 26°00'30" E, 631.78' to a 1/2" iron pipe; thence N 22°31'00" E, 1184.62' to the Point of Beginning and having an area of 181.20 acres, more or less.

This property is bounded on the north by S. C. Highway #90, Richard E. Bell and Margaret Thompson and William E. Gore, III, on the west by SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and Azalea Bay Resort, LLC, on the east by SLF IV / SBI Sandridge, LLC, Richard E. Bell and Margaret Thompson and William E. Gore, III and on the south by Grand Strand Water & Sewer Authority.

ECOVEST-DOJ_0056033

Excerpts from White Sands Village Appraisal

The fifth step in the process is the processing of one or more of the approaches to value.  These are: a) the cost approach, b) sales comparison approach, and c) the income approach.

The cost approach to value utilizes reproduction/or replacement cost.  This cost is often obtained from local sources, as well as national valuation services, such as RS Means and Marshall and Swift.  Cost developed is compared with local data.

The sales comparison approach entails a review and analysis of sales of comparable properties and concludes with a correlation of market data where relevant material is brought together and summarized into a value statement.

The role of the (DCF) income approach is to develop the present worth of an income stream, which the property can generate with its highest and best use. This approach is based largely on the concept that value, in effect, is the present worth of future rights to income.

Following completion of the appraisal, which will include processing of the approaches, as dictated by the circumstances, the process is finished through the reconciliation or correlation.

In the reconciliation (correlation), a final value statement is developed which reflects the main elements of the data.

In the reconciliation, the merits and limitations of each approach are reviewed and weighed. Reconciliation (or data correlation) is Step 6.

The seventh and final step in an appraisal comprises reporting the findings to the client or reader. The report concludes with a certification, as well as assumptions and limiting conditions upon which the certification is based.  Reports are of varying length and content.

In the appraisal of the subject, the approach which will be used for the before value is the income approach utilizing a discounted cash flow. The value for the after value is the sales comparison approach.  Sales of similar lots from similar neighborhoods and areas will be collected and analyzed.  Sale properties accumulated, share with the subject the highest and best use, which is generally comparable to that of the appraised subject.

Initial phase of the assignment starts with an inspection of the property.  Owing to the nature of the work, inspection phase may take a number of visits.  Chief objective of these inspections is to locate and identify all portions of the property, which support highest and best use.

Appraised subject consists of 181.2 acres.

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Comparison Approach.  In searching the market

ECOVEST-DOJ_0056047

area, emphasis will be placed on obtaining lot sales which are generally similar to the subject which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the assignment is limited to land only.

I made a search for development parcels similar to the Subject Property. I was not able to find any in the normal course of business. I used databases, such as LoopNet; I interviewed developers; and I looked for new developments on the ground and on the internet and found none. The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land Residual Method (DCF) when comparable sales are not available. The entire judgment is included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a conservation easement is "the fair market value of the [easement] at the time of the contribution." *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a substantial record of sales of easements comparable to the donated easement . . . the fair market value of the donated easement is based on the sales prices of such comparable easements." *Id*. But if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the fair market value . . . is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." *Id*. Finding the before and after values requires a determination of the property's income-producing potential. To this end, appraisers will generally construct discounted cash-flow models, which estimate the present value of a property by estimating future revenue (in this case, revenue from lot sales) and discounting it based on the cost of capital.

Land Residual Method (DCF)

Certain properties are unique and distinct from others in the immediate area. These properties may have special topography that lends itself well to development (Lakes, Creeks, Views). Sales of these properties may be limited not because of market conditions but because of physical or locational aspects. Some properties may adjoin a National Park or Forest, or golf course. These types of properties are best evaluated using a DCF method.

ECOVEST-DOJ_0056048

Excerpts from White Sands Village Appraisal

## Identification of the Subject Property

The subject is located off Coates Road, south of Highway 90 and west of Champions Blvd.  It is north of the Intracoastal Waterway in North Myrtle Beach, Horry County, South Carolina. The site contains 181.2 acres.

### Prior Sales History

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

### Ownership

White Sands Village, LLC

### Improvements

None

### Taxes

## Tax Information

| Name: | SLF IV/SBI SANDRIDGE LLC |
|---|---|
| Address: | 2002 OAK STREET STE 200 MYRTLE BEACH SC 29577 3196 |
| Tax Year: | 2015 |
| District/Levy: | 550 / 185.5 |
| City/Levy: | NM / 039.3 |
| Total Appraisal: | 39,750 |
| Total Assessed: | 2,390 |
| Assessment Ratio: | Land Appraisal: | Building Appraisal: |
| 6% | 39,750 | 0 |

## Property Information

| Record Type: | Real Estate |
|---|---|
| Map Number: | 129-00-07-007 |
| PIN: | 348-00-00-0019 |
| Acres: | 282.69 |
| Description: | 3600' W/S COATS RD TR A & B |

## Taxes

| County Tax: | $443.35 |
|---|---|
| City Tax: | $93.93 |
| Fees: | $0.00 |
| Residential Exemption: | $0.00 |
| Homestead Exemption: | $0.00 |
| Other Exemptions: | $0.00 |
| Local Option Credit: | $0.00 |
| Total Taxes: | $537.28 |
| Total Paid: $537.28 | |

ECOVEST-DOJ_0056052

Excerpts from White Sands Village Appraisal

Site Data

On-Site: No; Adjacent: No

- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:

  On-Site: No; Adjacent: No
- Observed staining of soils:                          On-Site: No; Adjacent: No
- Observed distressed vegetation:                On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":

  On-Site: No; Adjacent: No
- Observed noticeable odors:                        On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 181.2 acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0056066

# Excerpts from appraisal of:
# Wilderness Lake

# Document ID:
# ECOVEST-DOJ_0113645

# CLARK ~ DAVIS, PC
## REAL ESTATE APPRAISERS
646 River Route
Magnolia Springs, AL 36555
Phone 251-988-1010
Fax 251-988-1011

Established 1991

Claud Clark III *
Certified General Real Property Appraiser
Kathy P. Davis
Certified Residential Appraiser
Laura Fullington †
Certified General Real Property Appraiser

Writer's Email:   Claud@ClarkAppraisals.com

December 30, 2013

Donald Johnson
Sirote and Permutt, P.C.
P.O. Box 55727
Birmingham, AL 35255-5727

RE:    Conservation Easement Wilderness Lake
       Chester County, South Carolina
       Appraisal of Market Value before the Conveyance; Market Value after the Conveyance;
       Market Value of the Easement Gift

Dear Mr. Johnson:

At your request, I have conducted the inspections, investigations, and complete analysis necessary to appraise the above referenced real property. The appraisal is a Summary Report presented in accordance with Standards Rule 2-2(b) of the Uniform Standards of Professional Appraisal Practice (USPAP). My opinion of market value is premised upon the Assumptions and Limiting Conditions contained within this report. This report has been prepared, to the best of my knowledge, to the standards and requirements of the Internal Revenue Service. The definition of fair market value as set forth in Treasury Reg. 1.170A-1(c) (2) is as follows: Fair market value, as defined in section 1.170A-1(c) (2) of the Income Tax Regulations is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.

The intended use of the appraisal is for estimating the fair market value of a perpetual conservation easement for federal income tax purposes. The intended users are the donors and the IRS for the purpose of estimating the fair market value of an easement donated to the:

*North American Land Trust*
*100 Hickory Hill Road*
*P.O. Box 467*
*Chadds Ford, PA 19317*

1

ECOVEST-DOJ_0113645

I made a study of the parcel that is legally described in the easement documents for estimating the **market value** of the **fee simple ownership interest**, **"before"** and **"after"** the establishment of a perpetual Conservation Easement thereon.

Based upon my market research, inspection of the subject, its environs, comparable properties, subsequent analyses, and professional judgment, I formed the opinion that the market value of the fee simple interest of the Subject Property as of December 30, 2013, and before the Subject Property is encumbered by the easement is as follows:

|  | Acres | FMV |
|---|---|---|
| Before Value (Unencumbered) | 2,202.08 | $59,393,877 |

The Fee Simple of the Subject Property subject to a perpetual conservation easement as of December 30, 2013 is:

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| After Value – Land Only (Encumbered) | 2,202.08 | $1,000 | $2,202,080 |

There are eleven (11) areas designated for the construction of residences and related residential uses. The property can be subdivided into the same number of parcels as there are building lots. The parcels that result from the subdivision must contain a building area. There is no minimum or maximum size.  Based upon the review of other easements, the value of these sites does not warrant a value over and above the price per acre.
There is no enhancement.

The value of the easement gift as of December 30, 2013 is as follows and is based upon the before and after value.

|  | Acres | Value/Acre | FMV |
|---|---|---|---|
| Before Value | 2,202.08 |  | $59,393,877 |
| Less | | | |
| After Value (Encumbered) | 2,202.08 | $1,000 | $2,202,080 |
| | | | |
| Value of the Easement | | rounded | $57,192,000 |

ECOVEST-DOJ_0113646

Excerpts from Wilderness Lake Appraisal

I am a Qualified Appraiser as defined under Section 1.170A-13(c) (5).

The attached report is a "qualified appraisal report" as that term is defined in applicable Internal Revenue Service regulations (Section 1.170A-12(c) (3)) and was prepared for your use.

I certify that I have no future or present interest in the Subject Property. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, or would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Please refer to additional certifications found in the attached report.


Respectfully submitted


Claud Clark III                    State Certified General Real Property Appraiser
SC License #AB 6768 CG

ECOVEST-DOJ_0113647

Excerpts from Wilderness Lake Appraisal

## Table of Contents

Certification ...................................................................................................................... 6

Summary of the Appraisal .................................................................................................. 7

Assumptions and Limiting Conditions .............................................................................. 8

Legal Descriptions and Maps .......................................................................................... 11

INTRODUCTION: ........................................................................................................... 29

Scope of the Assignment .................................................................................................. 30

    *Competency Provision* ............................................................................................... 34

    *Appraisal of the Larger Parcel:* ................................................................................ 35

    *Identification of the Subject Property* ....................................................................... 36

    *Prior Sales History* .................................................................................................... 36

    *Ownership* .................................................................................................................. 36

    *Improvements* ............................................................................................................. 36

    *Taxes* .......................................................................................................................... 36

    *Neighborhood Data – Greater Charlotte, North Carolina* ...................................... 38

SECTION I ....................................................................................................................... 47

APPRAISAL OF THE BEFORE VALUE ....................................................................... 47

    *Highest and Best Use Analysis:* ................................................................................ 48

        *a)*    *Legally Permissible* ................................................................................... 49

        *b)*    *Physically Possible* ................................................................................... 49

        *c)*    *Financially Feasible* ................................................................................. 49

        *d)*    *Maximally Productive* ............................................................................... 50

        *e)*    *Sufficiency of Demand* .............................................................................. 50

        Conclusion ......................................................................................................... 50

    *Land Valuation:* ......................................................................................................... 51

        *Discounted Retail Sales Approach* .................................................................. 51

SECTION II ................................................................................................................... 110

APPRAISAL OF THE AFTER VALUE ........................................................................ 110

    *Highest and Best Use Analysis:* .............................................................................. 127

        a)    Legal permissibility ......................................................................................... 128

        b)    Physical possibility and suitability ................................................................. 128

        c)    Financial feasibility ........................................................................................ 128

        d)    Maximum productivity ..................................................................................... 128

        e)    Sufficiency of demand ..................................................................................... 128

        Conclusion: ...................................................................................................... 129

    *Land Valuation* ........................................................................................................ 130

        Sales Comparison Approach ............................................................................ 130

    *Estimate of the After Value:* .................................................................................... 157

Reconciliation ................................................................................................................ 158

ECOVEST-DOJ_0113648

**Addenda**..................................................................................................................................**159**

    QUALIFICATIONS OF CLAUD CLARK III ............................................................160

    License ....................................................................................................................162

    Land Design Letters ................................................................................................163

    POA Letter and Budget ..........................................................................................178

    Bond Funding Documents.......................................................................................192

    Market Analysis and Development Recommendations ............................................219

    Addendum to Market Analysis and Development Recommendations Report...............239

    Developer's Agreement .........................................................................................240

    Trout Ranch, LLC; Michael D. Wilson, Tax Matters Partner v. Commissioner of Internal Revenue ............251

    Easement and Baseline Documents.........................................................................270

ECOVEST-DOJ_0113649

Excerpts from Wilderness Lake Appraisal

**Certification**

I certify that, to the best of my knowledge and belief:

- I hold myself out to the public as a real estate appraiser and perform appraisals on a regular basis. Because of my qualifications, as described in this appraisal, I am qualified to make appraisals of real property encumbered by a conservation easement.

- I am not a person described in Treasury Regulation 1.170A-12(c) (5) (iv) in relation to (1) the property that is the subject of this report, (2) the owners of the property that is the subject of this report, or (3) the donee organization.

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analysis, opinion, and conclusion.

- I have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

- My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event. Further, my fee has not been based in whole or in part upon a percentage of the appraised value of the property, nor has the fee in any way been contingent upon the appraised value.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice. I certify that I have no future or present interest in the Subject Property.

- I understand that a substantial or gross valuation misstatement resulting from an appraisal of the value of property that the appraiser knows, or reasonably should have known, would be used in connection with a return or claim for refund, may subject the appraiser to a civil penalty under Section 6695A.

- I understand that an intentionally false or fraudulent overstatement of the value of the property described in this appraisal or appraisal summary may subject to a civil penalty under section 6701 for aiding and abetting an understatement of tax liability, and, moreover that I may have appraisals disregarded pursuant to 31 U.S.C. 3330(c).

- I, Claud Clark III have made a personal inspection of the Subject Property, and have participated in the Final Market analysis and conclusions of this report.

- I am not, nor have I ever been, barred from testifying before the IRS.

- I have prepared an appraisal of the Subject Property in the last five (5) years.

- To the knowledge of the undersigned, there is no agreement or understanding entered into (or expected to be entered into) by or on behalf of the donors that relate to the use, sale or disposition of the donated property, including for example, the terms of any agreement or understanding that temporarily or permanently restricts a donee's right to use or dispose of the donated property, earmarks donated property for a particular use, or reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund raising) any right to the income from the donated property or to the possession of the property, including the right to acquire the property by purchase or otherwise, or to designate the person having the income, possession, or right to acquire the property.

Claud Clark III                            State Certified General Real Property Appraiser
SC License #AB 6878 CG

ECOVEST-DOJ_0113650

Excerpts from Wilderness Lake Appraisal

**Summary of the Appraisal**

| | |
|---|---|
| **Property Type:** | Conservation Easement |
| **Location:** | The subject is located just west of Interstate77, along the west side of Old Mill Road, south of Richburg in Chester County, South Carolina. |
| **Purposes of the Appraisal:** | To estimate, for federal and state income tax purpose, the market value of the conservation easement. |
| **Function of the Appraisal:** | To estimate the market value of a conservation easement. |
| **Date of the Appraisal Report:** | December 30, 2013 |
| **Date of Value Estimates:** | December 30, 2013 |
| **Date of Donation** | December 30, 2013 |
| **Property Rights Appraised:** | Before:     Fee Simple Interest<br>After:      Fee Simple Interest Subject to Easement |
| **Zoning:** | EDD, Economic Development District |
| **Site:** | 2202.08 Acres |
| **Easement:** | 2202.08 Acres |
| **Reserved:** | Eleven (11) reserved areas. |
| **Total:** | 2202.08 Acres |
| **Improvements:** | None |
| **High and Best Use of Site as Though Vacant:** | Before:     Residential Development<br>After:      Recreational / Green Space |
| **Appraiser:** | Claud Clark III as an Employee and Sole Owner of Clark ~ Davis, PC        EIN 63-1075275 |

ECOVEST-DOJ_0113651

Excerpts from Wilderness Lake Appraisal

**Assumptions and Limiting Conditions**

*PLEASE NOTE THAT THE ACCEPTANCE AND/OR USE OF THIS APPRAISAL AND REPORT CONSTITUTES ACCEPTANCE OF THE FOLLOWING TERMS AND CONDITIONS:*

**Limited Publication, Distribution, and Use of This Report**

Possession of this report or any copy thereof does not carry with it the right of publication, nor may it be used for other than its intended use; the physical report(s) remain the property of the appraiser for the use of the client, the fee being for analytical services only. Any person or corporation other than the client thereof cannot use this report or a copy or party to whom it is addressed without the written consent of this appraisal firm and then only in its entirety. The authentic copies of this report are signed in blue ink. Other copies are unauthorized and may be incomplete or altered.

This appraisal consists of "trade secrets and commercial or financial information" which is privileged and confidential and exempted from disclosure under 5 U.S.C. 552(b)(4). ). Notify the appraiser(s) signing the report of any request to reproduce this appraisal in whole or in part.

**Limited Disclosure to the Public through the Media**

No part of the contents of this report may be conveyed to the public through advertising, public relation efforts, news, sales, or other media, without the express and written consent of the appraiser. Neither may reference be made in such a public communication to the Appraisal Institute or the MAI designation.

This appraisal is to be used only in its entirety and no part is to be used without the whole report.

**Limited Disclosure of the Report by the Appraiser**

The appraiser agrees not to divulge the material (valuation) content of this report. The exceptions are as required by The Real Estate Appraisal Board of the State of South Carolina or the Appraisal Institute as they may request, in confidence, for ethics enforcement; or by a court of law or body with the power of subpoena. This means that the appraiser will keep secret the analytical findings and conclusions for the property or properties being appraised. The appraiser agrees not to give a copy of this report to anyone other than the client or his designee unless requested in writing by the client.

**Information Furnished is Assumed to be Accurate**

No responsibility is assumed for the accuracy of information furnished by the client, his designee, or public records. We are not liable for such information or the work of possible subcontractors. Be advised that some of the people associated with the Real Estate Appraisal Office of Clark ~ Davis, PC and any associates possibly signing the report are independent contractors. The comparable data relied upon in this report has been confirmed with one or more parties familiar with the transaction, and/or public records, and/or some other form of affidavit; all are considered appropriate for inclusion to the best of our judgment and knowledge.

**Limited Use of Exhibits**

The sketches, maps and other exhibits shown as part of this report are included to assist the reader in visualizing the property and its various attributes. These exhibits are not necessarily to scale. Site plans should not be confused with surveys. Only an exhibit labeled "survey" and signed by a surveyor should be relied upon as a survey.

**No Responsibility Assumed for Legal, Engineering, Environmental Financial, Structural, Mechanical, Hidden Components or Soil Conditions**

No responsibility is assumed for matters legal in character or nature, or matters of survey, or of any architectural, structural, mechanical or engineering nature. No opinion is rendered as to the title, which is presumed to be good and merchantable. The property is appraised as if free and clear, unless otherwise stated in particular parts of this report.
The appraiser has inspected as far as possible, by observation, the land and the improvements thereon; however, it was not possible to personally observe conditions beneath the soil or hidden structural and certain other components. This appraisal is based on the assumption that there are no hidden or apparent conditions of the property site, subsoil, or structures, which would render it more or less valuable. No responsibility is assumed for any such conditions or for any expertise or engineering to discover them.

The appraiser does not have the environmental expertise necessary to make judgments as to the acceptability of these concerns. It is recommended that an environmental expert be consulted and an environmental abatement firm estimate the cost of any such abatement necessary to correct any condition found.

ECOVEST-DOJ_0113652

Excerpts from Wilderness Lake Appraisal

Mechanical components within the improvements have not been critically inspected and no representations are made herein as to these matters unless specifically stated in this report. All mechanical components are assumed to be in operable condition and considered standard for properties of the subject type. Conditions of heating, cooling, ventilation, electrical and plumbing equipment is considered to be commensurate with the condition of the balance of the improvements unless otherwise stated. No judgment is made as to the adequacy of insulation, type of insulation or energy efficiency. The value estimate considers that no such conditions that would cause a loss of value exist.

The land or soil of the area being appraised appears firm; however, the exact character of the soil and subsoil is not known. The appraiser does not warrant against problems arising from soil or subsoil conditions.

The legal description used in this report is assumed to be correct as furnished by the client or his designee. The legal description may have been developed by the appraiser from information from other sources, such as Tax Assessor's records. In any event, the legal description is to assist in the identification of the property to be appraised and must not be used otherwise.

**Value Limited to Legal Uses**

This appraisal is based on the premise that there is full compliance with all applicable federal, state and local environmental regulations and laws unless otherwise stated in the report. We have assumed all applicable zoning, building and use regulations and restrictions have been obeyed unless otherwise stated in the report. All required licenses, consents, permits or other legislative or administrative approvals are assumed to have been obtained or renewed for any use considered in the value estimate.

**Limited Use of Component Values**

The distribution of the total valuation in this report between land and improvements applies only under the existing or proposed program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and may be invalid if so used.

**Limited Access to Auxiliary and Related Studies**

No environmental impact studies, special market studies, highest and best use studies or feasibility studies have been made or requested unless otherwise specified in an agreement for services or in this report. The appraiser reserves the unlimited right to alter, amend, revise or rescind any of the statements, findings, opinions, values, estimates or conclusions upon any subsequent such study or analysis or previous study or analysis subsequently becoming known to him.

**Value Limited to Real Estate Unless Otherwise Specified**

Furnishings, equipment or other business related items not typically considered as part of the real estate are not normally valued. These items have been disregarded with only the real estate being considered in the value estimate unless otherwise stated in this report.

**Limitations of a Value Estimate in a Dynamic Market**

The Market Value estimate is made within the context of a dynamic real estate market and is subject to change with the passage of time. Value is highly related to exposure, time, promotional effort, and terms of sale, motivation and conditions surrounding the offering. This value estimate has sought to consider the productivity and relative attractiveness of the property physically and economically in the marketplace.

The "Estimate of Market Value" in this appraisal report is not based in whole or in part upon the race, color or national origin of the present owners or occupants of the properties in the vicinity of the property being appraised.

In cases of appraisals involving the capitalization of income benefits, the estimate of Market Value is a reflection of such benefits, as well as, the appraiser's interpretation of income, yields and other factors derived from general and specific market information. Such estimates are as of the date of the estimate of value; they are subject to change as the market is naturally dynamic.

**Competent Management Assumed**

It is assumed that the property, which is the subject of this report, will be under prudent and competent ownership and management, neither inefficient nor excessive.

ECOVEST-DOJ_0113653

## Assumptions for Proposed Improvements

If the property being appraised contains any proposed improvements or repairs, whether on site or off of the site, these improvements and/or repairs are expected to be completed in a good and workmanlike and timely manner and according to information submitted and/or considered by the appraiser. In cases of proposed construction, the appraised value and conditions are subject to change upon inspection of the property after construction is completed, if any material differences are found to exist. The estimate of Market Value is as of the date shown in the report, as proposed, and as if completed and operating at the levels shown and projected in the report.

In order to fully disclose all pertinent data and ensure that the reader and/or user of the report is fully aware that the
a. The improved Subject Property does not yet, in fact, exist as of the date of the appraisal;
b. The analysis performed to develop the estimate of value is based on a hypothesis, specifically that the improved Subject Property is assumed to exist when, in fact, it does not exist;
c. Certain events need to occur, as disclosed in the report, before the property appraised with the proposed improvements will in fact exist; and
d. The appraisal does not address unforeseeable events that could alter the proposed property improvements and/or the market conditions reflected in the analyses.

## Currency Basis

The value estimated and as reported herein is in U.S. Dollars on the basis of the banking and currency exchange prevailing as of the date of appraisal.

## Word Case

Words used herein whether in the singular or plural shall be considered both, singular or plural as the case may apply and as appropriate for the intent of the circumstances.

## Limitation of Data Used

The information contained herein, including any data, estimates, or opinions, furnished by others, to the appraiser, are not guaranteed, but were gathered from sources believed to be reliable. Since every appraisal consists, in part of data, which are legally "hearsay evidence," the appraiser reserves the right to revise the report including the value estimate to the extent justified by subsequent discovery of any additional and/or inaccuracies in such data.

## The Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detail analysis of the requirements of the ADA could reveal that this property is not in compliance with one or more of the requirements of the act. If so, this fact could negatively affect the value of this property. Since we have no direct evidence relating to this issue we did not consider possible non-compliance with the requirements of the ADA in estimating the value of the property.

## Hazardous Waste

Unless otherwise stated in this report, the appraiser did not observe the existence of hazardous material, which may or may not be present on the property. The appraiser has no knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of substances such as asbestos, urea-formaldehyde foam insulation or other potentially hazardous materials may affect the value of the property. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The client is urged to retain an expert is this field, if desired.

ECOVEST-DOJ_0113654

Excerpts from Wilderness Lake Appraisal

**Legal Descriptions and Maps**

ECOVEST-DOJ_0113655

Excerpts from Wilderness Lake Appraisal

LEGAL

---

Chicago Title Company, LLC                                    ALTA Commitment Form
Commitment Number: 12-08196CH

### EXHIBIT "A"
(Interstate Land & Timber, LLC to Wilderness Lake, LLC)

Commencing at the S.C. Grid monument "Green Briar"; thence with a bearing of S 3°30'49" W, and a distance of 9492.45', to a point; thence with a bearing of S 70°34'26" W, and a distance of 1703.91', to the **POINT OF BEGINNING** of the tract described herein;

Thence with a bearing of S 42°50'38" E, and a distance of 3721.39', to a point in the centerline of Old Mill Road;

thence with said road the following sixteen (16) calls:

1) Thence with an Arc to the Left, having a Radius of 1151.00', and a Length of 591.65', and being Chorded by a bearing of S 22°55'17" W, and a distance of 585.16' to a point;
2) thence with a bearing of S 8°11'43" W, and a distance of 2152.77', to a point;
3) thence with an Arc to the Right, having a Radius of 1424.00', and a Length of 1402.51', and being Chorded by a bearing of S 36°24'39" W, and a distance of 1346.51' to a point;
4) thence with a bearing of S 64°37'36" W, and a distance of 194.61', to a point;
5) thence with an Arc to the Left, having a Radius of 1083.00', and a Length of 840.21', and being Chorded by a bearing of S 42°24'04" W, and a distance of 819.30' to a point;
6) thence with a bearing of S 20°10'32" W, and a distance of 1422.75', to a point;
7) thence with an Arc to the Left, having a Radius of 3069.00', and a Length of 401.68', and being Chorded by a bearing of S 16°25'34" W, and a distance of 401.39' to a point;
8) thence with a bearing of S 12°40'35" W, and a distance of 284.85', to a point;
9) thence with an Arc to the Right, having a Radius of 1833.00', and a Length of 788.45', and being Chorded by a bearing of S 24°59'57" W, and a distance of 782.39' to a point;
10) thence with a bearing of S 37°19'19" W, and a distance of 819.98', to a point;
11) thence with an Arc to the Right, having a Radius of 3180.00', and a Length of 431.34', and being Chorded by a bearing of S 41°12'28" W, and a distance of 431.01' to a point;
12) thence with a bearing of S 45°05'37" W, and a distance of 1129.06', to a point;
13) thence with an Arc to the Left, having a Radius of 1871.00', and a Length of 943.69', and being Chorded by a bearing of S 30°38'39" W, and a distance of 933.72' to a point;
14) thence with a bearing of S 16°11'41" W, and a distance of 632.63', to a point;
15) thence with an Arc to the Right, having a Radius of 1400.00', and a Length of 579.98', and being Chorded by a bearing of S 28°03'46" W, and a distance of 575.84' to a point;
16) thence with a bearing of S 39°55'50" W, and a distance of 1310.19', to a point;

thence with a bearing of N 86°32'08" W, and a distance of 1591.55', to a point;
thence with a bearing of N 23°26'28" E, and a distance of 1144.27', to a point;
thence with a bearing of N 25°09'32" W, and a distance of 61.64', to a point;
thence with a bearing of N 5°17'42" W, and a distance of 103.11', to a point;
thence with a bearing of N 1°36'20" W, and a distance of 92.30', to a point;

1670.97EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO WILDERNESS LAKE

ECOVEST-DOJ_0113656

Excerpts from Wilderness Lake Appraisal

thence with a bearing of N 26°14'23" E, and a distance of 161.97', to a point;
thence with a bearing of N 16°06'10" E, and a distance of 60.89', to a point;
thence with a bearing of N 24°40'35" W, and a distance of 165.51', to a point;
thence with a bearing of N 43°01'32" W, and a distance of 69.42', to a point;
thence with a bearing of N 54°42'13" W, and a distance of 68.85', to a point;
thence with a bearing of S 86°12'42" W, and a distance of 60.84', to a point;
thence with a bearing of N 47°28'50" W, and a distance of 82.83', to a point;
thence with a bearing of N 15°54'20" W, and a distance of 298.49', to a point;
thence with a bearing of N 57°32'56" W, and a distance of 105.63', to a point;
thence with a bearing of S 71°36'56" W, and a distance of 147.74', to a point;
thence with a bearing of N 57°20'32" W, and a distance of 270.50', to a point;
thence with a bearing of S 87°12'06" W, and a distance of 255.78', to a point;
thence with a bearing of S 23°50'04" W, and a distance of 293.31', to a point;
thence with a bearing of S 84°42'45" W, and a distance of 90.19', to a point;
thence with a bearing of S 29°00'38" W, and a distance of 84.93', to a point;
thence with a bearing of N 76°28'20" W, and a distance of 320.04', to a point;
thence with a bearing of N 12°47'45" E, and a distance of 2233.77', to a point;
thence with a bearing of N 14°02'49" E, and a distance of 1304.90', to a point in Peden
Bridge Road;
thence with said road a bearing of S 57°08'54" E, and a distance of 708.57', to a point;
thence with said road a bearing of S 57°10'54" E, and a distance of 315.79', to a point;
thence with a bearing of S 70°18'54" E, and a distance of 138.50', to a point in a gravel
drive;
thence with said drive a bearing of S 62°53'00" E, and a distance of 463.52', to a point;
thence with a bearing of N 37°54'25" E, and a distance of 1256.36', to a point;
thence with a bearing of N 40°59'12" W, and a distance of 305.35', to a point;
thence with a bearing of S 45°36'23" W, and a distance of 65.48', to a point;
thence with a bearing of N 33°22'26" W, and a distance of 1364.79', to a point;
thence with a bearing of S 70°58'04" W, and a distance of 944.24', to a point;
thence with a bearing of S 73°01'23" W, and a distance of 2800.79', to a point;
thence with a bearing of N 20°07'41" W, and a distance of 1945.37', to a point;
thence with a bearing of N 70°47'19" E, and a distance of 532.29', to a point;
thence with a bearing of N 6°00'11" E, and a distance of 836.07', to a point;
thence with a bearing of N 65°19'34" W, and a distance of 817.52', to a point;
thence with a bearing of N 9°40'31" W, and a distance of 143.67', to a point;
thence with a bearing of N 61°14'23" W, and a distance of 267.08', to a point;
thence with a bearing of N 13°57'50" W, and a distance of 362.70', to a point;
thence with a bearing of N 13°58'15" W, and a distance of 1096.50', to a point;
thence with a bearing of N 80°04'45" E, and a distance of 2764.27', to a point;
thence with a bearing of S 52°16'15" E, and a distance of 141.74', to a point;
thence with a bearing of N 89°15'45" E, and a distance of 180.40', to a point;
thence with a bearing of N 34°25'45" E, and a distance of 270.85', to a point;
thence with a bearing of N 5°51'15" W, and a distance of 205.70', to a point;
thence with a bearing of N 55°55'45" E, and a distance of 161.30', to a point;
thence with a bearing of N 38°08'45" E, and a distance of 215.35', to a point;
thence with a bearing of N 74°51'45" E, and a distance of 131.03', to a point;

DOC 22 EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO WILDERNESS LAKE

ECOVEST-DOJ_0113657

Excerpts from Wilderness Lake Appraisal

thence with a bearing of N 4°06'15" W, and a distance of 62.00', to a point;
thence with a bearing of N 82°38'15" W, and a distance of 197.00', to a point;
thence with a bearing of N 81°56'15" W, and a distance of 181.00', to a point;
thence with a bearing of N 79°04'15" W, and a distance of 408.64', to a point;
thence with a bearing of S 88°32'55" W, and a distance of 57.90', to a point;
thence with a bearing of N 12°06'45" W, and a distance of 274.36', to a point;
thence with a bearing of N 2°53'58" W, and a distance of 119.35', to a point;
thence with a bearing of N 13°53'58" W, and a distance of 242.99', to a point;
thence with a bearing of N 37°03'58" W, and a distance of 222.90', to a point;
thence with a bearing of N 48°32'45" W, and a distance of 287.98', to a point;
thence with a bearing of N 59°29'31" W, and a distance of 270.00', to a point;
thence with a bearing of N 33°15'45" W, and a distance of 922.90', to a point;
thence with a bearing of N 51°37'50" E, and a distance of 228.48', to a point;
thence with a bearing of N 88°31'50" E, and a distance of 3366.05', to a point;
thence with a bearing of N 54°10'53" E, and a distance of 679.08', to a point;
thence with a bearing of S 26°58'14" E, and a distance of 201.73', to a point;
thence with a bearing of S 27°55'52" E, and a distance of 299.09', to a point;
thence with a bearing of S 20°15'58" E, and a distance of 143.49', to a point;
thence with a bearing of S 16°32'19" E, and a distance of 193.56', to a point;
thence with a bearing of S 16°21'23" E, and a distance of 141.79', to a point;
thence with a bearing of S 1°09'57" E, and a distance of 125.26', to a point;
thence with a bearing of N 84°39'18" E, and a distance of 572.61', to a point;
thence with a bearing of N 4°37'52" W, and a distance of 857.43', to a point;
thence with a bearing of S 45°15'22" E, and a distance of 1903.03', to a point;
thence with a bearing of N 46°19'04" E, and a distance of 874.81', to a point;
thence with a bearing of N 55°00'24" E, and a distance of 897.97', to a point;
thence with a bearing of N 49°52'42" E, and a distance of 493.60', to a point;
being the **POINT OF BEGINNING** and containing 2219.688  Acres (USFT).


**Less and Except the following four (4) out parcels:**


**Out Parcel 1**

Commencing at the S.C. Grid monument "Green Briar"; thence with a bearing of S 24°17'40" W, and a distance of 14088.79', to the **POINT OF BEGINNING** of the tract described herein;
thence with a bearing of N 24°37'36" E, and a distance of 545.74', to a point;
thence with a bearing of S 64°54'22" E, and a distance of 471.80', to a point;
thence with a bearing of S 24°37'37" W, and a distance of 355.91', to a point;
thence with a bearing of N 54°21'58" W, and a distance of 75.90', to a point;
thence with a bearing of N 65°16'58" W, and a distance of 356.51', to a point;
thence with a bearing of N 62°58'09" W, and a distance of 40.78', to the **POINT OF BEGINNING** and containing 5.998 Acres (USFT).


3838.97\EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO WILDERNESS LAKE

ECOVEST-DOJ_0113658

Excerpts from Wilderness Lake Appraisal

### Out Parcel 2

Commencing at the S.C. Grid monument "Green Briar" thence with a bearing of S 21°04'41" W, and a distance of 14203.86', to the **POINT OF BEGINNING** of the tract described herein;

thence with a bearing of N 28°03'48" E, and a distance of 325.00', to a point;
thence with a bearing of S 52°33'40" E, and a distance of 473.97', to a point;
thence with a bearing of S 40°01'19" W, and a distance of 77.93', to a point;
thence with a bearing of S 18°47'12" W, and a distance of 128.54', to a point;
thence with a bearing of N 67°13'09" W, and a distance of 57.89', to a point;
thence with a bearing of N 59°29'05" W, and a distance of 80.45', to a point;
thence with a bearing of N 76°22'03" W, and a distance of 87.52', to a point;
thence with a bearing of S 40°01'04" W, and a distance of 78.69', to a point;
thence with a bearing of N 49°58'56" W, and a distance of 210.00', to a point;
thence with a bearing of N 41°23'34" W, and a distance of 30.91', to the **POINT OF BEGINNING** and containing 3.016 Acres (USFT).

### Out Parcel 3

Commencing at the S.C. Grid monument "Green Briar" thence with a bearing of S 17°37'27" W, and a distance of 14653.51', to the **POINT OF BEGINNING** of the tract described herein;

thence with a bearing of N 84°12'38" E, and a distance of 134.42', to a point;
thence with a bearing of S 64°18'10" E, and a distance of 150.80', to a point;
thence with a bearing of S 85°42'48" E, and a distance of 107.60', to a point;
thence with a bearing of S 71°56'09" E, and a distance of 74.04', to a point;
thence with a bearing of S 66°41'09" E, and a distance of 144.96', to a point;
thence with a bearing of S 56°56'09" E, and a distance of 244.58', to a point;
thence with a bearing of S 43°11'51" W, and a distance of 293.94', to a point;
thence with a bearing of N 59°05'22" W, and a distance of 146.68', to a point;
thence with a bearing of N 63°30'22" W, and a distance of 485.98', to a point;
thence with a bearing of N 6°22'22" W, and a distance of 198.46', to the **POINT OF BEGINNING** and containing 4.575 Acres (USFT).

### Out Parcel 4

Commencing at the S.C. Grid monument "Green Briar" thence with a bearing of S 18°02'36" W, and a distance of 14863.55', to the **POINT OF BEGINNING** of the tract described herein;

thence with a bearing of S 63°35'51" E, and a distance of 406.06', to a point;
thence with a bearing of S 63°33'27" E, and a distance of 240.29', to a point;
thence with a bearing of S 58°24'27" E, and a distance of 154.22', to a point;
thence with a bearing of S 48°43'33" W, and a distance of 121.99', to a point;
thence with a bearing of S 38°23'33" W, and a distance of 109.87', to a point;
thence with a bearing of N 62°26'33" W, and a distance of 396.41', to a point;
thence with a bearing of N 62°26'33" W, and a distance of 403.75', to a point;

DPR070EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO WILDERNESS LAKE

ECOVEST-DOJ_0113659

Excerpts from Wilderness Lake Appraisal

thence with a bearing of N 42°34'00" E, and a distance of 227.41', to the **POINT OF BEGINNING** and containing 4.112 Acres (USFT).

The above-described property conveyed herein has the following derivation:

1. Being a portion of the property conveyed to Interstate Land & Timber, LLC by Deed of Blue Sky Timber Properties, LLC dated October 28, 2003 and recorded in Deed Book 850 at Page 136 in the Office of the Clerk of Court for Chester County, South Carolina; and,

2. Being all of the property conveyed to Interstate Land & Timber, LLC by Deed of Edward Linsica Calkins and Martha Rae Calkins, dated January 30, 2004 and recorded February 2, 2004 in Deed Book 857 at Page 3 in the Office of the Clerk of Court for Chester County, South Carolina.

Being a portion of Tax Parcel Number: 117-00-00-006.

1200.9?\EXHIBIT A INTERSTATE LAND AND TIMBER LLC TO WILDERNESS LAKE

ECOVEST-DOJ_0113660

Excerpts from Wilderness Lake Appraisal

There are several methods of valuing vacant land.
- Sales Comparison Approach
- Land Residual Method (DCF) (Developers method)
- Extraction
- Allocation

Comparative analysis is the essence of the Sales Approach.  In searching the market
Area, emphasis will be placed on obtaining lot sales which are generally similar to the subject
which have sold during the recent past.

Attributes of the comparable sales are:

1. Reasonably comparable area

2. Generally comparable zoning

3. Approximately comparable highest and best use

4. Similar topography and orientation to use

5. Arm's length sales, which have no atypical terms and were in cash or cash equivalency

Though three approaches to value are potentially applicable, in the instance of this appraisal, the
assignment is limited to land only.

I made a search for development parcels similar to the Subject Property.  I was not able to find
any in the normal course of business.  I used databases, such as LoopNet; I interviewed
developers; and I looked for new developments on the ground and on the internet and found
none.  The following is an excerpt from the case of *Trout Ranch, LLC; Michael D. Wilson, Tax
Matters Partner v. Commissioner of Internal Revenue*, which justifies the use of the Land
Residual Method (DCF) when comparable sales are not available.  The entire judgment is
included in the addenda.

> The experts worked under the framework for valuing conservation easements set forth in the
> Treasury regulations. Treas. Reg. § 1.170A-14(h)(3)(i). Under this framework, the value of a
> conservation easement is "the fair market value of the [easement] at the time of the contribution."
> *Id*. The regulations prescribe two methods for ascertaining fair market value: "If there is a
> substantial record of sales of easements comparable to the donated easement . . . the fair market
> value of the donated easement is based on the sales prices of such comparable easements." *Id*. But
> if no substantial record of sales is available, "as a general rule (but not necessarily in all cases) the
> fair market value . . . is equal to the difference between the fair market value of the property it
> encumbers before the granting of the restriction and the fair market value of the encumbered
> property after the granting of the restriction." *Id*. Finding the before and after values requires a
> determination of the property's income-producing potential. To this end, appraisers will generally
> construct discounted cash-flow models, which estimate the present value of a property by
> estimating future revenue (in this case, revenue from lot sales) and discounting it based on the
> cost of capital.

ECOVEST-DOJ_0113676

Excerpts from Wilderness Lake Appraisal

**Identification of the Subject Property**

The Subject Property is located just west side of Interstate77, along the west side of Old Mill Road, south of Richburg in Chester County, South Carolina.  The site contains 2202.08+- acres.

*Prior Sales History*

There is no sale involving the tract within the last three years. The Subject is not listed for sale.

*Ownership*

Wilderness Lake, LLC

*Improvements*

None

*Taxes*

Individual lots were assessed at an average price of $360. It was derived after an analysis of bulk lot assessments.

ECOVEST-DOJ_0113680

Excerpts from Wilderness Lake Appraisal

Site Data

- The Subject Property is not considered to be located in an earthquake hazard or other hazard prone region, and this is not a significant issue in regard to the valuation of this real estate. This is a condition of the assignment.

The overall rating of the perceived environmental issues, earthquake, and other hazard characteristics for the Subject Property is considered to be good.

Environmental Checklist:
- Observed or reported current or past use of hazardous material "in bulk":
  On-Site: No; Adjacent: No
- Observed above-ground storage tanks, underground storage tanks, sumps or 55-gallon drums which may contain hazardous materials:
  On-Site: No; Adjacent: No
- Observed staining of soils:            On-Site: No; Adjacent: No
- Observed distressed vegetation:        On-Site: No; Adjacent: No
- Observed evidence of activities which may involve the use, handling, or disposal of hazardous materials "in bulk":
  On-Site: No; Adjacent: No
- Observed noticeable odors:             On-Site: No; Adjacent: No

*The individual performing this Environmental Checklist is not liable for failure to detect or identify possible environmental factors and hazards on the Subject Property.*

*This Environmental Checklist, as well as, this entire report must not be considered, under any circumstances, to be an environmental site assessment of the Subject Property, as would be otherwise performed by an environmental professional.*

Site Improvements:

There are no on-site improvements on the Subject Property, as it is vacant land.

Conclusion:

The Subject Property consists of approximately 2202.08+- acres.

The shape and topography of the Subject Property has the physical characteristics to support the proposed development.

ECOVEST-DOJ_0113689